# LEASON ELLIS

One Barker Avenue, Fifth Floor
White Plains, New York 10601
t. 914.288.0022
f. 914.288.0023

Cameron S. Reuber
Senior Associate
Reuber@LeasonEllis.com

June 26, 2014

**VIA ECF AND EMAIL**

The Honorable Cathy S. Seibel
United States District Judge, S.D.N.Y.
300 Quarropas Street
White Plains, New York 10601
chambersnysdseibel@nysd.uscourts.gov

          Re:    *The Wave Studio, LLC v. General Hotel Management Ltd., et al.*,
                Civil Action No. 13-cv-09239 (CS) (SDNY)

Dear Judge Seibel:

       We represent Plaintiff The Wave Studio, LLC in the above-referenced civil action. We write pursuant to Rule 1(A) of Your Honor's Individual Rules to respond to the pre-motion letter of Defendant General Hotel Management Ltd. ("GHM") as ordered by the Court on June 20, 2014. *See Dkt*. 51.  As an initial matter, GHM failed to advise the undersigned of its intention to seek the requested relief prior to seeking a pre-motion conference.  If it had done so, GHM would have learned that Plaintiff has no objection to litigating the issue of GHM's purported rights to use and distribute Plaintiff's intellectual property *before* addressing the purported rights of any other Defendants deriving therefrom, *i.e.,* the need for a pre-motion conference could have been obviated in favor of a joint proposal or stipulation.  In any event, Plaintiff's response is as follows.

**Response to GHM's Factual and Legal Allegations**

       As stated in Plaintiff's Amended Complaint, the subject-matter of this case comprises photographs authored by Plaintiff's principal, Junior Lee ("Ms. Lee"), and transferred to Plaintiff via written assignment.  The nature of Ms. Lee's photography business is promotional in nature. Generally, Ms. Lee is commissioned by her clientele to photograph certain items, personnel, sites, or facilities, modify the images as necessary, and deliver the final product for approval.  Ms. Lee is usually compensated via the client's purchase of branded marketing materials that incorporate her photographs (*i.e.,* the client purchases the marketing materials designed and manufactured by Ms. Lee, inclusive of a limited license to distribute the marketing materials *in toto* – but <u>not</u> the individual components thereof).  Ms. Lee specifically reserves all rights to her works that are not otherwise expressly transferred pursuant to a written agreement. One of the rights she reserves is the total ownership of the photographs (including the copyright in and to the same).  *Dkt*. 7 at ¶¶ 70-75.

       From December 2000, Ms. Lee was exclusively commissioned by GHM to shoot a series of photographs at certain hotels managed by GHM for advertising, promotion, and documentation purposes.  On or around August 2003, Ms. Lee shared the photographs with GHM and demanded payment, which GHM repeatedly refused to honor without cause.  Ultimately, after litigation, GHM and Ms. Lee amicably resolved the dispute through the granting of mutual releases, but the settlement did <u>not</u> provide for the transfer of any rights to GHM concerning <u>any</u> photographs, which rights remained exclusively-owned by Ms. Lee (and later transferred by written assignment to Plaintiff).  Moreover, the settlement did <u>not</u> include any license or permission for GHM to distribute any materials to third-parties for use in promotion of GHM's businesses.  *Id*.

The Honorable Cathy S. Seibel
June 26, 2014
Page 2

As the Court likely gleaned by reviewing Plaintiff's complaint and GHM's pre-motion letter, Plaintiff and GHM have very different views of the facts in this case − and most especially differ on the legal conclusions deriving therefrom. For instance, Plaintiff agrees that GHM commissioned Ms. Lee between approximately 1993 and 2007 to photograph, develop, and supply GHM with marketing materials for certain GHM-managed hotels. *Dkt*. 50, GHM's Pre-Motion Letter, at 1. Plaintiff, however, vehemently disagrees that Ms. Lee was "*paid for the right to use the marketing materials and photographs to promote and market the hotels*." *Id*. In actuality, Plaintiff can supply ample proof that GHM cannibalized, without notice, the individual components (*e.g.,* photographs) of the materials produced by Ms. Lee and supplied to GHM. Moreover, Plaintiff can prove that GHM never sought to purchase (or otherwise secure) the "case dispositive" rights it now purports to own, *i.e.,* to use the cannibalized materials via unfettered distribution to third-parties. In other words, GHM commissioned Ms. Lee to *produce* its marketing materials, but GHM did not purchase any *ownership* interest in what was produced prior to pirating its individual components.

Ms. Lee's business model does not meaningfully differ from how traditional television shows are produced. That is, if a network wants to attract public viewership, it can commission a producer to produce a pilot television program. After the pilot is produced, delivered, and broadcast, the network does not thereby secure an ownership interest in the broadcasted program, or any component thereof (*e.g.,* its characters), merely by virtue of its commissioning or the broadcast. Instead, the network is granted only the contracted-for rights to the program and possesses no rights to use the pilot, in whole or in part, beyond the scope of the contract. The producer, unless a transfer agreement states otherwise, retains all right, title, and interest to the pilot, its characters, any derivative works (*e.g.,* additional episodes, spin-offs, *etc*.), and all other rights as a matter of law.

GHM cannot validly dispute Ms. Lee's exclusive rights to her photographs because the U.S. Copyright Act of 1976 provides that copyright ownership "vests initially in the author of the work." 17 U.S.C. § 201(a). As a general rule, the author is the party who actually creates the work, *i.e.,* the person who translates an idea into a fixed, tangible expression entitled to copyright protection. § 102. The Copyright Act further grants the copyright holder "exclusive" rights to use and to authorize the use of her work in six qualified ways, *including reproduction of the copyrighted work in copies*. § 106. "Anyone who violates any of the exclusive rights of the copyright owner," that is, anyone who trespasses into her exclusive domain by using (or purporting to authorize the use of) the copyrighted work in one of the qualified ways set forth in the statute, "is an infringer of the copyright." § 501(a). An author *can* transfer her rights in whole or in part, but the Copyright Act specifically requires that said transfers be made *in writing* to be valid. § 204(a). The writing requirement "is not unduly burdensome; it necessitates neither protracted negotiations nor substantial expense." *Effects Assocs., Inc. v. Cohen,* 908 F.2d 555, 557 (9th Cir. 1990), *cert. denied,* 498 U.S. 1103, 111 S.Ct. 1003, 112 L.Ed.2d 1086 (1991). "The rule is really quite simple: if the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so." *Id.* Moreover, the Ninth Circuit has reasoned that "§ 204 ensures that the creator of a work will not give away [her] copyright inadvertently and forces a party who wants to use the copyrighted work to negotiate with the creator to determine precisely what rights are being transferred and at what price. Most importantly, § 204 enhances predictability and certainty of copyright ownership—Congress' paramount goal when it revised the Act in 1976. Rather than look to the courts every time they disagree as to whether a particular use of the work violates their mutual understanding, parties need only look to the writing that sets out their respective rights." *Id*.

Here, GHM's pre-motion letter freely concedes that it did not author any of the photographs at issue, but nevertheless expressly avers that it owns "the right to use and distribute the photographs to market GHM-managed hotels." *Dkt*. 50, at 2. Accordingly, GHM is required by 17 U.S.C. § 204 to possess a writing that precisely sets out the claimed "rights to use and distribute" Plaintiff's photographs. Tellingly, GHM's pre-motion letter fails to (i) attach such a writing for the Court to review in advance of the requested pre-motion conference, or otherwise (ii) disclose to the Court the precise extent of the rights GHM now claims to own (which necessarily must include rights to grant third-parties, *i.e.,* the other Defendants, the same rights as GHM so as to be "case dispositive"). *Id*. at 3.

Instead, the only writings that GHM references in its pre-motion letter are unpaid invoices from Ms. Lee and an undisclosed Settlement Agreement purporting to resolve same (*i.e.,* GHM does not contend that its alleged rights derive from Ms. Lee via transfer effected by paid-in-full invoices purporting to function as transfer agreements, but rather from settlement of GHM's unpaid bills with Ms. Lee whereby mutual releases were granted). *Id*. Indeed, if the above contentions were not troubling enough, GHM further infers that the Settlement Agreement's "broad release language" somehow operates to grant GHM affirmative property rights in works it did not create. Such contentions appear dubious at best, especially as, somewhat bizarrely, GHM further claims that "because Ms. Lee did not advise GHM of [Plaintiff's] U.S. copyrights, the Settlement Agreement does not expressly refer to them." *Id*. Ergo, GHM is asking the Court to accept either (a) unpaid invoices, or (b) the Settlement Agreement releasing GHM's obligation satisfy its burden of proof under 17 U.S.C. § 204 (*i.e.,* the writing transferring GHM's "case-dispositive" rights), while simultaneously acknowledging that no meeting of the minds existed between the contracting parties when the Settlement Agreement was executed insofar as the U.S. copyright registrations at issue in this case are concerned.

**Conclusion**

In sum, GHM maintains this case is "frivolous" because it owns affirmative property rights to "use and distribute" Plaintiff's registered photographs − rights which the Copyright Act requires to have been transferred from author (Ms. Lee) to copier (GHM) via a written instrument identifying precisely what rights were transferred, when the transfer was effected, and at what price. Resolution of such a dispute should not take very long. Accordingly Plaintiff is amenable to staying all proceedings as to all other Defendants besides GHM while the Plaintiff and GHM litigate the issue of whether GHM owns "use and distribution" rights to Plaintiff's copyrighted works.

Wherefore, based on the foregoing, we look forward to discussing the parameters of GHM's requested relief, as well as a case management plan for litigating GHM's purported rights, during the scheduled pre-motion conference. If you have any questions in the interim, please do not hesitate to contact me.

Very truly yours,

Cameron S. Reuber

cc:   All Counsel of Record via ECF

{04892/606459-000/01179480.1}