# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

THE WAVE STUDIO, LLC,

               Plaintiff,

vs.

GENERAL HOTEL MANAGEMENT, LTD. et al.,

               Defendants.

Civil Action No. 13-cv-09239-CS-PED

*Document Filed Electronically*

Oral Argument Requested

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GENERAL HOTEL MANAGEMENT, LTD.'S MOTION FOR SUMMARY JUDGMENT

---

**CHIESA SHAHINIAN & GIANTOMASI PC**
One Boland Drive
West Orange, NJ 07052
(973) 325-1500
Attorneys for Defendant
General Hotel Management, Ltd.

On the Brief:
Howard J. Schwartz, Esq.
Abigail J. Remore, Esq.
Ilana Levin, Esq.

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS & PROCEDURAL HISTORY ........................................4

SUMMARY JUDGMENT STANDARD .....................................................................7

LEGAL ARGUMENT...................................................................................................8

     I.       PLAINTIFF DOES NOT HAVE STANDING TO ASSERT A
             CLAIM FOR COYPRIGHT INFRINGEMENT AGAINST GHM
             OR ANY OTHER DEFENDANT...................................................................8

           A.     Singapore is the country with the most significant
                  relationship to the photographs, and, thus, Singapore law
                  must apply to determine issues of ownership of rights in the
                  photographs..............................................................................8

           B.     Under Singapore law, the party commissioning and paying
                  for a photograph owns the copyright in that photograph...........................12

     II.     ON PROCEDURAL GROUNDS, THIS CASE HAS NOTHING
             TO DO WITH THE STATE OF NEW YORK AND MUST BE
             DISMISSED. ...............................................................................18

           A.     New York is an inappropriate venue for adjudicating this
                  case and Plaintiff's case must be dismissed under the *forum
                  non conveniens* doctrine. ...........................................................18

           B.     This Court lacks personal jurisdiction over GHM and the
                  hotels are indispensable parties to the litigation. ......................23

     III.    EVEN IF THE PLAINTIFF OWNED THE PHOTOGRAPHS,
             GHM AND THE HOTELS HAD THE RIGHT, UNDER AN
             IMPLIED LICENSE TO USE AND DISTRIBUTE THE
             PHOTOGRAPHS IN ANY WAY THEY SAW FIT TO MARKET
             THE HOTELS. ...........................................................................28

     IV.    EVEN IF UNITED STATES LAW APPLIED TO DETERMINE
             OWNERSHIP, PLAINTIFF DOES NOT HAVE STANDING TO
             ASSERT A CLAIM OF INFRINGEMENT OF NINE OF THE
             REGISTRATIONS DUE TO FATAL ERRORS IN ITS CHAIN
             OF TITLE. ..................................................................................31

           A.     Plaintiff is not entitled to a presumption of validity of eleven
                  of the registrations claimed to be infringed in this action,

i

**TABLE OF CONTENTS (cont'd)**

**Page**

and, with respect to the remaining registrations, that presumption is rebuttable.................................................................32

B.   There are fatal errors in the chain of title of nine of Plaintiff's registrations that were not corrected prior to the institution of this lawsuit. ........................................................34

CONCLUSION................................................................................................39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..................................................................................................7, 8

*Arista Records LLC v. Lime Group LLC*,
   784 F.Supp.2d 398 (S.D.N.Y. 2011) ...................................................................8

*Benefield v. Pfizer Inc.*,
   103 F. Supp. 3d 449, 457 (S.D.N.Y. 2015) ........................................................39

*Bridgeman Art Gallery, Ltd. v. Corel Corp.*,
   36 F.Supp.2d 191 (S.D.N.Y. 1999) ...............................................................10, 11

*Bridgeman Art Library, Ltd. v. Corel Corp.*,
   25 F. Supp. 2d 421 (S.D.N.Y. 1998) .................................................................10

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).............................................................................................7

*Christopher Bede Studio Limited v. United Portraits Limited*
   [1958].................................................................................................................15

*Dae Han Video Productions, Inc. v. Kuk Dong Oriental Food, Inc.*,
   19 U.S.P.Q.2d 1294 (D.Md.1990) ....................................................................10

*Deutsche Zentral-Genossenschaftsbank AG v. HSBC North America Holdings,*
   *Inc.*,
   No. 12 Civ. 4025, 2013 WL 6667601 (S.D.N.Y. Dec. 17, 2013) ....................12

*Doe v. Delaware State Police*,
   939 F. Supp. 2d 313 (S.D.N.Y. 2013) ..............................................................24

*Durham Industries, Inc. v. Tomy Corp.*,
   630 F.2d 905 (2d Cir. 1980) .............................................................................33

*Dynamic Solutions, Inc. v. Planning and Control, Inc.*,
   646 F.Supp. 1329 (S.D.N.Y. 1986) ...................................................................33

*Entral Group Inter., LLC v. Honey Café on 5th, Inc.*,
   No. 05-CV-2290, 2006 WL 3694584 (E.D.N.Y. Dec. 14, 2006).......................9

*Gaia Technologies, Inc. v. Reconversion Technologies, Inc.*,
   93 F.3d 774 (Fed. Cir. 1996) ............................................................................38

## TABLE OF AUTHORITIES

<u>Page</u>

*Graham v. James,*
    144 F.3d 229 (2d Cir. 1998) ...............................................................29

*Holtzbrinck Publ'g Holdings, L.P. v. Vyne Commc'ns, Inc.,*
    No. 97 CIV. 1082, 2000 WL 502860 (S.D.N.Y. Apr. 26, 2000)...........30

*International Media Films, Inc. v. Lucas Entertainment, Inc.,*
    703 F.Supp.2d 456 (S.D.N.Y. 2010) ...................................................32

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.,*
    153 F.3d 82 (2d Cir. 1998) ..................................................8, 9, 10, 11

*Keane Dealer Servs., Inc. v. Harts,*
    968 F. Supp. 944 (S.D.N.Y. 1997) .......................................................31

*Kopolowitz v. Deepdene Hotel & Tennis Club,*
    464 F. Supp. 677 (S.D.N.Y. 1979) .......................................................25

*Lipton v. The Nature Co.,*
    781 F. Supp. 1032 (S.D.N.Y. 1992) .....................................................27

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986)...............................................................................8

*Newmark v. Lawrence Hosp. Center,*
    No. 07-cv-2861, 2008 WL 5054731 (S.D.N.Y. Oct. 20, 2008) .............7

*Night Hawk Ltd. v. Briarpatch, Ltd., L.P.,*
    No. 03 Civ. 1382, 2003 WL 23018833 (S.D.N.Y. Dec. 23, 2003) .......27

*Nun v. Teletronics Pacing Sys., Inc.,*
    93 CIV. 5434, 1994 WL 361488 (S.D.N.Y. July 11, 1994).................20

*Palacios v. The Coca-Cola Co.,*
    757 F. Supp. 2d 347 (S.D.N.Y. 2010) ....................................21, 22, 23

*PocketMedicine.com, Inc. v. John Wiley & Sons, Inc.,*
    No. 04 Civ. 8369, 2006 WL 785283 (S.D.N.Y. Mar. 23, 2006) ..........27

*Professional LED Lighting, Ltd. v. AAdyn Technology, LLC,*
    88 F. Supp. 3d 1356, 1370 (S.D. Fl. 2015)...........................................37

*Psihoyos v. Pearson Educ., Inc.,*
    855 F. Supp. 2d 103 (S.D.N.Y. 2012) ..............................................29, 30

*RIGroup LLC v. Trefonisco Mgmt. Ltd.,*
    949 F. Supp. 2d 546 (S.D.N.Y. 2013) ............................................*passim*

# TABLE OF AUTHORITIES

**Page**

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC,*
 450 F.3d 100 (2d Cir. 2006) ........................................................................................24

*Sonera Holding B.V. v. Cukurova Holding A.S.,*
 750 F.3d 221 (2d Cir. 2014) ........................................................................................24

*Triple Tee Golf, Inc. v. Nike, Inc.,*
 No. 4:04-cv-302-A, 2007 WL 4260489 (N.D. Tex. Aug. 10, 2007) .....................38

*Tripmasters, Inc. v. Hyatt Int'l Corp.,*
 696 F. Supp. 925 (S.D.N.Y. 1988) ..............................................................................25

*Van Cleef & Arpels Logistics, S.A. v. Jewelry, et. al.,*
 547 F. Supp. 2d 356 (S.D.N.Y. 2008) ........................................................................11

*Van Cleef & Arpels Logistics, S.A. v. Landau Jewelry,*
 583 F. Supp. 2d 461 (S.D.N.Y. 2008) ........................................................................11

*Viacom Int'l, Inc. v. Kearney,*
 212 F.3d 721 (2d Cir. 2000) ........................................................................................26

*Wang Choong Li v. Wong Wan Chin*
 [2015].............................................................................................................................13

*Welinsky v. Resorts of the World D.N.V.,*
 839 F.2d 928 (2d Cir. 1988) ........................................................................................25

**Statutes**

17 U.S.C. § 410(c) ...............................................................................................10, 32, 33, 34

17 U.S.C. § 411(b)(2) ........................................................................................................34

17 U.S.C. § 501(b) ........................................................................................................26, 37

Copyright Act (Cap 63, 2006 Rev Ed) ...................................................................12, 14, 20

**Other Authorities**

Compendium Of U.S. Copyright Office Practices.........................................................10, 37

Fed. R. Civ. P. 44.1 ........................................................................................................12

Fed. R. Civ. P. 56(c) ..........................................................................................................7

Nimmer On Copyright § 12.03 ...........................................................................................26

N.Y. C.P.L.R. § 301...........................................................................................................24

## PRELIMINARY STATEMENT

This is a bizarre, ill-founded and ill-conceived lawsuit brought in the Southern District of New York by Lee Kar Yin, aka Junior Lee ("Ms. Lee"), a citizen of Malaysia domiciled in Singapore, on behalf of various business entities in Singapore (the "Singapore Wave Entities") owned by her. For approximately 10 years until 2008, Ms. Lee was a photographer who worked as an independent contractor at the request of General Hotel Management, Ltd. ("GHM"), primarily in Singapore, on behalf of hotels managed by GHM throughout Southeast Asia to, among other things, take pictures of the hotels for the purposes of marketing the hotels.

Ms. Lee's primary, if not exclusive, contact at GHM was Ralf Ohletz Graf von Plettenburg ("Mr. Ohletz"), one of the founders and a senior Vice President of GHM. During the time Ms. Lee worked with Mr. Ohletz on behalf of the hotels, Ms. Lee never mentioned the word copyright to Mr. Ohletz and never claimed to Mr. Ohletz that she owned any rights in the photographs of the hotels. Mr. Ohletz, a German citizen residing in Thailand and a well-recognized and highly respected executive with 40 years' experience in the luxury hotel industry, has not been employed by GHM since 2010. Nonetheless, he agreed to be deposed in Singapore on September 23, 2015 and testified that he had great admiration for Ms. Lee. He also testified that he could not understand how Ms. Lee could possibly make the claim that she owned the copyrights in the photographs. Mr. Ohletz testified clearly and openly that: (1) the hotels paid for the photographs which Ms. Lee delivered to the hotels; (2) no hotel would pay for the photographs if the hotels did not own the copyright; and (3) if Ms. Lee, at the time she was working under his auspices, claimed ownership in the copyrights, he would have immediately stopped working with her.

According to Plaintiff, the authors of the photographs are the Singapore Wave Entities, all located in Singapore. The place of first publication of the photographs was Singapore. The

country of origin was Singapore. Singapore law applies to determine ownership of the copyright in the photographs. Under Singapore statute, the commissioning party of a photograph (the party paying for the photograph) owns the copyright. Thus, Plaintiff fails to prove ownership of the copyrights because it is undisputed that the hotels – or in certain limited circumstances, GHM – in each and every case, for each and every photograph, paid for the photographs and were the commissioning parties. There is no contract that grants the copyright to the Singapore Wave Entities to override Singapore law, as set forth in further detail in the enclosed Declaration of Dr. Stanley Lai, SC, a dean of the Singapore intellectual property bar.

In order to try and defeat Singapore statutory law, Ms. Lee alleges that she filed copyright registrations in the United States in 2010 and 2011 for photographs the Singapore Wave Entities took from 2001 to 2007. But registration certificates alone have no impact when ownership of the copyright is challenged.

Further, at least nine of her registrations are hopelessly defective. It is nearly impossible to overstate the convoluted, interconnected mish mosh of documents at issue, but it appears that days before dissolving two of the Singapore Wave Entities, Ms. Lee claims to have assigned out all alleged copyrights from the entity to be dissolved. Additionally, it turns out that the assignment document dated, for example, in 2007, really was not created in 2007 but was backdated to 2007. Thus, when Ms. Lee went to the United States Embassy to have the assignment notarized in order to file the assignment with the United States Copyright Office, the notary refused to notarize the document as 2007, but notarized in 2012, the date Ms. Lee actually wrote and executed the assignment. Some of the copyright applications were filed by Singapore Wave Entities that were dissolved at the time. These applications claimed ownership of photographs the entities never owned, and alleged ownership of photographs had been expressly

assigned out of the entities before they were dissolved – the entity didn't even own anything to register.  Ms. Lee's first attempt to create a paper trail to create an illusion that she owned the copyrights in the photographs was this group of assignments.

Compounding this mess created by Ms. Lee, she admitted the ineffectiveness of her assignments and, after her deposition on May 21, 2015 then filed an amazing document.  In this astonishing document dated September 4, 2015, executed and recorded with the United States Copyright Office during this litigation and given to GHM's lawyers less than 24 hours before Ms. Lee's continued deposition on September 9, 2015, Ms. Lee, like the Gilda Radner character Emily Litella from Saturday Night Live, said "Never mind."  Ms. Lee claimed all of the previous assignments are wrong and void *ab initio*.  Ms. Lee's second attempt to create the illusion that she owned copyrights was to create the amazing document during this very litigation to undo her own historical, even if backdated, record by using the magical words void *ab initio*.  Ms. Lee and the Singapore Wave Entities never owned the copyrights to the hotel photographs.

This case never should have been brought in the Southern District of New York.  The only connection to this District is that Plaintiff's former lawyer was located here.  Plaintiff is, at best, a paper LLC, formed merely to be a plaintiff, with no employees, no office, no business activities (except the filing of lawsuits), no bank accounts and no real existence.  Ms. Lee herself filed an affidavit asserting that the Southern District was not convenient for her (compared to her other lawsuits filed in the Northern District of California).  No witnesses for the Plaintiff, the Singapore Wave Entities, GHM or the hotels are located in New York (or even in the United States).  No facts occurred in New York regarding any of the allegations in the Amended Complaint.  This is the epitome of a case which must be dismissed on the grounds of *forum non conveniens*.

## STATEMENT OF FACTS & PROCEDURAL HISTORY

Plaintiff filed this lawsuit alleging copyright infringement of a number of photographs of luxury hotel properties taken between 2001 and 2007. (Declaration of Abigail J. Remore, dated February 12, 2016 ("Remore Decl.") at Ex A. ("Compl.") at ¶¶ 73, 77.) Plaintiff has brought suit against approximately eighty defendants, most of which are in the travel or hospitality industry in one way or another, and, according to the Plaintiff, reproduced, displayed or distributed Plaintiff's photographs, without authorization, to "promote and advertise bookings to the boutique and high-end hotels" featured in the photographs. (Compl. ¶ 94, 97-156.)

However, Plaintiff is not the entity that first took the photographs at issue. According to the Plaintiff, Ms. Lee, or one of four of the Singapore Wave Entities she was a principal of, was commissioned by GHM, on behalf of the luxury hotels it manages or managed at the time, to take photographs of the hotels for the purposes of advertising and promoting the properties. (Compl. ¶¶ 71, 73.) Ms. Lee is a Malaysian citizen domiciled in Singapore. General Hotel Management, Ltd.'s Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("GHM's 56.1 St.") ¶ 1.) GHM has its principal place of business and its headquarters in Singapore and has no employees in the United States. (GHM's 56.1 St. ¶ 15.) Ms. Lee's primary contact at GHM was Mr. Ohletz, who was at the time GHM's Vice President and worked out of their Singapore Office. (Remore Decl. at Ex. E at 7:1-9.) Plaintiff does not have any employees that conduct business or reside in the United States and does not own or lease office space in the United States. (GHM's 56.1 St. ¶¶ 12-14.) The hotels photographed are or were located in Vietnam, Thailand, Malaysia, Indonesia, Taiwan, Singapore, Italy, India, Oman, the Bahamas and Florida. (GHM's 56.1 St. ¶ 47.) In most cases, Mr. Ohletz was present at these photo shoots. (Remore Decl. at Ex. E at 15:9-16.) Ms. Lee and the Singapore Wave Entities commonly utilized the services of a photographer (or as Ms. Lee referred to him – a cameraman)

named Masano Kawana to assist with the photo shoots. (GHM's 56.1 St. ¶¶ 28-29.)

Ms. Lee and/or the Singapore Wave Entities then provided the photographs (that were first published in Singapore) to GHM and to the hotels. (GHM's 56.1 St. ¶ 39.) The Singapore Wave Entities were paid directly by the hotels, and between 2001 and 2007, charged and were paid approximately $250,000.00 for photography related goods and services. (Remore Decl. at ¶ 11.)

Ms. Lee and the Singapore Wave Entities worked with GHM, Mr. Ohletz and the GHM-managed hotels for at least ten years. (GHM's 56.1 St. ¶ 22.) During that time, Ms. Lee never asserted ownership rights over the photographs to Mr. Ohletz or GHM, apart from boilerplate, generic, small-print language contained at the bottom of production estimates provided to the hotel (that were signed less than half the time). (GHM's 56.1 St. ¶¶ 25, 30, 33.) The Singapore Wave Entities never separately billed the hotels for license fees for use of the photographs in connection with marketing collateral that utilized the photographs. (GHM's 56.1 St. ¶¶ 42-43.) Furthermore, when Ms. Lee or the Singapore Wave Entities provided GHM and the hotels with the photographs, they never communicated that there were limits on the ways those photographs could be used. (GHM's 56.1 St. ¶¶ 35, 41.) If Ms. Lee had asserted ownership rights in the photographs, attempted to charge separate license fees, or attempted to limit the ways that GHM and the hotels could use the photographs she provided to them, she – and the Singapore Wave Entities – would have immediately been fired. (GHM's 56.1 St. ¶¶ 32, 36.)

In 2010, after Ms. Lee stopped doing work with GHM and the hotels, Ms. Lee sued GHM in Singapore for unpaid invoices. (Compl. ¶ 74.) During the time that the Singapore suit was being litigated and a settlement negotiated, without disclosing to GHM or the hotels, the Singapore Wave Entities obtained seventeen copyright registrations from the United States

Copyright Office for the photographs and – according to the Plaintiff – assigned them to the Plaintiff. (Compl. ¶¶ 77-78).[1] Until the filing of this lawsuit – five years from the date of last publication of the allegedly infringed photographs – neither Ms. Lee, nor the Singapore Wave Entities, nor Plaintiff, ever contacted GHM, the hotels or any of the other defendants to object to use of the photographs in connection with marketing the hotels or to request that the defendants or the hotels cease using the photographs. (GHM's 56.1 St. ¶ 44.) Indeed, at least in 2002, 2006 and 2007, Ms. Lee was aware that photographs that were allegedly owned by either her or one of the Singapore Wave Entities were being displayed on the internet and/or provided to third parties for use in marketing the hotels and did not object. (GHM's 56.1 St. ¶¶ 45-46.)

This lawsuit was first initiated on December 31, 2013. Plaintiff filed its First Amended Complaint, now the operative pleading in this lawsuit, on April 23, 2014. (Compl.) On July 3, 2014, the Court ordered that discovery in the suit be stayed as to the additional 58 individuals or entities named as defendants in this suit. (GHM's 56.1 St. ¶ 8.) Following the entry of that order, Plaintiff filed eight nearly identical lawsuits in the Northern District of California, naming 21 additional defendants. (GHM's 56.1 St. ¶ 6.) Aside from one of those lawsuits that evidently settled (although GHM has no information regarding the status of that case), all of those lawsuits were transferred to this Court. All have been consolidated with the instant proceeding, and all of the defendants are now stayed as well. (GHM's 56.1 St. ¶ 7.) Discovery has been taken as to a preliminary threshold issue (whether GHM had a right to use and distribute the photographs as it saw fit) between Plaintiff and GHM, and the discovery period has now closed. GHM now moves for summary judgment on a number of issues, specifically that (1) Singapore law applies to determine ownership of the works alleged to be infringed; (2) under Singapore law, Plaintiff

---

[1] The intricacies of these registrations and assignments will be outlined in more detail in Section IV, below.

does not have standing to assert its claims against GHM or any other defendant because it is not the owner of any of the photographs; (3) the Southern District of New York is not the proper forum for this lawsuit; (4) Plaintiff lacks personal jurisdiction over GHM and the hotels (only one of which is named as a defendant) are indispensable parties to this litigation; (5) even if Plaintiff owned the photographs, GHM and the hotels had an implied license to use and distribute the photographs; and (6) even if United States law applied to determine ownership of the photographs, there are fatal errors in Plaintiff's chain of title for over half of the copyright registrations claimed in this case.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 330 (1986); FED. R. CIV. P. 56(c). An issue is considered "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* "On a motion for summary judgment, courts must 'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" *Newmark v. Lawrence Hosp. Center,* No. 07-cv-2861, 2008 WL 5054731 at *3 (S.D.N.Y. Oct. 20, 2008) (citing *Anderson*, 477 U.S. at 255).

The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 317. "The burden then shifts to the nonmoving party to present evidence sufficient to satisfy every element of the claim." *Newmark*, 2008 WL 5054731 at *3 (citing *Holcomb v. Iona College,* 521 F.3d 130, 137 (2d Cir. 2008)). The nonmoving party

must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256-57. Accordingly, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (citations omitted).

## LEGAL ARGUMENT

In order to prevail on a claim for copyright infringement, the Plaintiff must establish two prongs: (1) that it owns a valid copyright; and (2) that the Defendants have engaged in unauthorized copying or distribution of that protected work. *See Arista Records LLC v. Lime Group LLC,* 784 F.Supp.2d 398, 423 (S.D.N.Y. 2011). Plaintiff's claim in this case fails at the first prong because Plaintiff cannot prove that it is the owner of valid copyrights in the photographs. In addition, assuming Plaintiff was the owner of the copyrights, Plaintiff fails at the second prong because the alleged copying and distribution of the photographs was authorized by an implied license. Finally, even if Plaintiff is able to meet the test for copyright infringement, this Court is not the proper venue for such a claim to be decided.

I.  **PLAINTIFF DOES NOT HAVE STANDING TO ASSERT A CLAIM FOR COYPRIGHT INFRINGEMENT AGAINST GHM OR ANY OTHER DEFENDANT.**

   A.  **Singapore is the country with the most significant relationship to the photographs, and, thus, Singapore law must apply to determine issues of ownership of rights in the photographs.**

"Copyright is a form of property, and the usual rule is that the interests of the parties in property are determined by the law of the state with 'the most significant relationship' to the property and the parties. *Itar-Tass Russian News Agency v. Russian Kurier, Inc.,* 153 F.3d 82, 90 (2d Cir. 1998) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 222 (1971))

(hereinafter "*Itar-Tass*").  Relevant factors to be considered in determining which state has the most significant relationship to the works include the nationality of the authors, the place of initial publication of the work and the country of origin of the work in accordance with the Berne Convention. *Id.* at 90-91; *see also Entral Group Inter., LLC v. Honey Café on 5th, Inc.*, No. 05-CV-2290, 2006 WL 3694584 at *4 (E.D.N.Y. Dec. 14, 2006).

According to Plaintiff, the authors of the photographs are one of four Singapore Wave Entities – all of which are (or were) organized and were at one time existing under the laws of Singapore and headquartered in Singapore.  (GHM's 56.1 St. ¶ 3.)  The principal of each entity is Ms. Lee, who is domiciled in Singapore.  It is undisputed that GHM is headquartered in Singapore and, from Singapore, manages hotels based primarily in Southeast Asia.  (GHM's 56.1 St. ¶ 4.)  On all seventeen of the registration applications filed in the United States by the Singapore Wave Entities, Singapore is listed by Ms. Lee as the nation of first publication of all of the claimed photographs.  (GHM's 56.1 St. ¶ 19.)  Plaintiff has admitted that the works were first published in Singapore.  (GHM's 56.1 St. ¶ 18.)  Furthermore, the country of origin of the works is Singapore.  (GHM's 56.1 St. ¶ 20.)  Under the Berne Convention, to which the United States and Singapore are both parties, the country of origin is considered to be, in the case of works first published in a country that is a party to the Berne Convention, that country.  Berne Convention for the Protection of Literary & Artistic Works, art. 5(4)(a).[2]  As referenced above, Plaintiff has not only admitted that the photographs were first published in Singapore, but has also admitted that the country of origin of the works is Singapore in conformance with the Berne Convention.  (GHM's 56.1 St. ¶ 20.)  Applying these basic, undisputed facts to the *Itar-Tass* test – that the authors of the works are or were Singapore entities, that the works were first published

---

[2]  Available at: http://www.wipo.int/treaties/en/ip/berne/.

in Singapore and that the country of origin of the works is Singapore – Singapore is the state

with the most significant relationship to the photographs.

   *Itar-Tass* establishes that the issuance of a certificate – that is, registration in the United

States of a copyright – has <u>NO</u> import in determining <u>ownership</u> of a work (despite Plaintiff's

argument in its pre-motion letter):

> To the extent that [*Dae Han Video Productions, Inc. v. Kuk Dong Oriental Food, Inc.*, 19 U.S.P.Q.2d 1294 (D.Md.1990)] applied the U.S. work-for-hire doctrine simply because copyright certificates had been issued by the United States Copyright Office, it relied on unpersuasive ground. <u>Issuance of the certificate is not a determination concerning applicability of the work-for-hire doctrine or a resolution of any issue concerning ownership.</u>"

*Itar-Tass Russian News Agency*, 153 F.3d at 89 n.5 (emphasis added).   The United States

Compendium of Copyright Office Practices relies on *Itar-Tass* when it states that "courts may

look to the law of a foreign country where ownership of the work was established or transferred

in cases where questions are raised concerning foreign ownership and copyright origin <u>even in</u>

<u>the context of a U.S. infringement action</u>."   U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S.

COPYRIGHT OFFICE PRACTICES, § 102.6 (3d ed. 2014) (citation omitted) (emphasis added).

   Courts in the Second Circuit have repeatedly applied the *Itar-Tass* principle to foreign

works that are registered in the United States.[3]   In *Bridgeman Art Library, Ltd. v. Corel Corp.,* 25

---

[3]   To the extent Plaintiff will attempt to argue that the certificates of registration are prima facie evidence of validity of its copyright, including ownership, that presumption is rebuttable. *Bridgeman Art Gallery, Ltd. v. Corel Corp.*, 36 F.Supp.2d 191, 200 (S.D.N.Y. 1999). Additionally, that presumption does not apply when the registration is made more than three years after the original publication of the work.   17 U.S.C.A. §410(c) (2015).   In its First Amended Complaint, Plaintiff alleged infringement of photographs contained within seventeen different copyright registrations.   Of those seventeen registrations, at least eleven were registered more than five years after the claimed date of first publication of the photographs contained therein. (GHM's 56.1 St. ¶¶ 49-59.)   Plaintiff is thus not entitled to a presumption of validity or a presumption of ownership of any of the approximately 2,300 photographs contained within those eleven copyright registrations.   Even for the remaining six registrations, the presumption is easily

F. Supp. 2d 421 (S.D.N.Y. 1998), this Court applied the *Itar-Tass* analysis to determine that the law of the United Kingdom determined the interest of the parties in the photographs, even though the Plaintiff had obtained a United States certificate of registration for a derivative work that contained all or substantially all of those works.  Upon reconsideration the Court stated, with respect to the issuance of a United States certificate of registration:

> No one disputes that most photographs are copyrightable.  In consequence, <u>the issuance of a certificate of registration for a photograph proves nothing.</u>  And while the certificate is prima facie evidence of the validity of the copyright, including the originality of the work, the presumption is not irrebuttable.

*Bridgeman Art Library, Ltd. v. Corel Corp.* 36 F.Supp.2d 191, 200 (S.D.N.Y. 1999) (Court held that originality of the work was at issue, not ownership) (emphasis added).

In *Van Cleef & Arpels Logistics, S.A. v. Jewelry, et. al.*, 547 F. Supp. 2d 356 (S.D.N.Y. 2008), this Court applied *Itar-Tass* to determine that, despite the Plaintiff's holding a United States copyright registration, French law applied to the question of ownership of a design created in France, by a French Company, by French nationals.  Following a motion for reconsideration of that holding, the Court adhered to its original decision.  *Van Cleef & Arpels Logistics, S.A. v. Landau Jewelry,* 583 F. Supp. 2d 461, 463, 466 (S.D.N.Y. 2008) ("Under Second Circuit law, international copyrights are subject to a bifurcated choice of law analysis.  When determining the initial owner of a copyright, a court must look to the law of the country in which the work originated.").  There is no dispute that Singapore has the most significant relationship to the property at issue, and, under *Itar-Tass*, Singapore law must apply to determine ownership of the allegedly infringed photographs.  Registration of works in the United States does not defeat an *Itar-Tass* analysis.

---

rebutted, as the original copyright claimants were not the rightful owners of the work under Singapore law when the applications were filed.

**B.    Under Singapore law, the party commissioning and paying for a photograph owns the copyright in that photograph.**

Under Singapore law, [4] the hotels – not the Plaintiff or Ms. Lee or the Singapore Wave Entities – are the owners of the photographs because they commissioned and paid for the photographs, and the language in Plaintiff's production estimate does not override Section 30(5) of the Singapore Copyright Act. Generally, under Singapore law, the author or creator of a work is the first copyright owner. Copyright Act (Cap 63, 2006 Rev Ed) (hereinafter "S. Cop. Act.") s 30(2)[5]. In connection with photographs, "author" is defined under Singapore law as "the person who took the photograph." S. Cop. Act. s 7(1). However, in connection with photographs, Section 30(5) of the Singapore Copyright Act states that that ownership of a copyright in commissioned photographs vests in the commissioning party, specifically providing that:

> [W]here –
> (a) a person makes, for valuable consideration, an agreement with another person for the taking of a photograph, the painting or drawing of a portrait or the making of an engraving by the other person; and
> (b) the work is made in pursuance of the agreement,
> The first mentioned person shall be entitled to any copyright subsisting in the work by virtue of this Part, except that if the work is required for any particular purpose, that purpose shall be communicated to that other person and that other person shall be entitled to restrain the doing, otherwise than for that particular purpose, of any act comprised in the copyright in the work.

In this case, the copyrights in and to photographs are at issue, and the determination of ownership falls directly within Section 30(5). (Declaration of Dr. Stanley Lai, SC, dated

---

[4] "In determining foreign law, the court may consider any relevant material or source… whether or not submitted by a party or admissible under the Federal Rules of Evidence." FED. R. CIV. P. 44.1. The Court has broad discretion to determine both (i) at what stage of the case to resolve issues of foreign law; and (ii) what evidence to take into account to resolve questions of foreign law. *Deutsche Zentral-Genossenschaftsbank AG v. HSBC North America Holdings, Inc.*, No. 12 Civ. 4025, 2013 WL 6667601 at *7 (S.D.N.Y. Dec. 17, 2013) (citations omitted).
[5] Available at http://statutes.agc.gov.sg/.

February 12, 2016 ("Lai Decl." at ¶ 12.)  The undisputed facts establish that the hotels managed by GHM commissioned the Singapore Wave Entities to take photographs of the hotels for use in marketing those hotels.  (Remore Decl. at ¶ 21; Lai Decl. at ¶ 16.)  Indeed, Plaintiff alleges that fact in its First Amended Complaint.  (Compl. ¶ 73.)  The production estimates were sent to the hotels.  In some instances, the hotels signed the production estimates.  The hotels were then billed by the Singapore Wave Entities and the hotels paid those invoices.  (Remore Decl. ¶ 27.) Payments to the Singapore Wave Entities for photography totaled over $250,000.00.   The Singapore Wave Entities delivered the photographs in CD-ROM form to the hotels. (Remore Decl. ¶ 39.)  The Singapore Wave Entities never asked for the CD-ROMS or the photographs to be returned.  The commissioning parties – here, the hotels – are the owners of the copyrights in the photographs under Section 30(5).[6]  (Lai Dec. ¶¶ 16, 42.)  *See Wang Choong Li v. Wong Wan Chin* [2015] 4 SLR 41 (Lai Dec. at Ex. 2).[7]  GHM's former vice president and the primary contact for Ms. Lee while she was working for GHM and the hotels, Mr. Ohletz, testified that because they paid for the photographs, the hotels owned the photographs.[8]

---

[6] The fact that Ms. Lee and/or the Singapore Wave Entities subcontracted with a photographer, Masano Kawana, to physically push the button and take the pictures does not change this analysis.  (Lai Decl. ¶ 15.)  GHM considered Mr. Kawana, not Ms. Lee or the Singapore Wave Entities, to be the photographer, as Mr. Kawana actually took the photographs.  (Remore Decl. at Ex. E at 17:23-24.)

[7] The Court held that a respondent who had engaged a photographer to take pre-wedding photographs for the respondent and her husband were the owners of copyright in the photographs by reason of Section 30(5), and that it is not necessary that words like "commission" be used for the court to find that a commissioning arrangement was present, but instead "what matters is the legal characterization that may be attributed when all the facts and circumstances are looked at."

[8] Q: Okay.  So, during the time of the 10 years that you had final authority over Junior for the products that were to be delivered to you on behalf of the hotels, what was your understanding of who owned the photos?
A: The hotel.
Q: And why?
A: The hotel paid for it.  (Remore Decl. at Ex. E at 13-19).  *See also* Remore Decl. at Ex. E, 82:4-87:8.

Section 30(5) can be modified or excluded by agreement between the parties. S. Cop. Act. s 30(3). Plaintiff argues that generic boilerplate Reservation of Rights Language contained in small print at the bottom (underneath the signature line) of production estimates provided to the hotels is sufficient to override the statute under 30(3) and vest copyright ownership in the photographs in the Singapore Wave Entity that was commissioned to take the photographs.[9]

As set forth by Dr. Lai, under Singapore law the Reservation of Rights Language used by the Singapore Wave Entities is merely a "broad catch-all provision that is used generically" and would not be sufficient to override the general rule of Section 30(5) – that the commissioning hotel parties were the owners of the copyrights in the photographs. (Lai Decl. ¶ 20.) First, under Section 30(5), neither Ms. Lee or any of the Singapore Wave Entities were the owners of the intellectual property rights, and thus, they had no rights to "reserve." (Lai Decl. ¶ 20.) A simple reservation of rights is certainly different from a sale or a transfer of rights, or a waiver of GHM's rights under Singapore law, which is what Plaintiff is asserting.

Second, in order for a commissioning agreement to exclude the operation of Section 30(5), it must clearly identify the works for which Ms. Lee and/or the Singapore Wave Entities would retain ownership and "to state in no uncertain terms that the copyright in the photographs belong to the [Singapore Wave] Entity named in the agreement." (Lai Decl. ¶ 20.) The Reservation of Rights Language in the production estimates produced by Plaintiff is not clear or specific. Indeed, the generic language was even included in production estimates for jobs having nothing whatsoever to do with photography or design. (Remore Decl. at Ex. F.) Cases from Commonwealth jurisdictions that would be considered highly persuasive in Singapore Courts

---

[9] That language states "[w]e reserve the intellectual property copyright to all designs / soft copies / material / photographs / projects undertaken" (hereinafter the "Reservation of Rights Language") and "[w]e will proceed on the basis that this estimate is wholly acceptable unless advised to the contrary in writing before the work is undertaken." (GHM's 56.1 St. ¶ 25.)

have addressed similar issues. (Lai Decl. ¶ 21.)  *See Christopher Bede Studio Limited v. United Portraits Limited* [1958] NZLR 250 (Lai Decl. ¶¶ 22-23 and at Ex. 5.)[10]  In addition, under Singapore law, where – as here – a contract term is vague and ambiguous, the clause is construed against the party seeking to enforce it.  (Lai Decl. ¶ 24.)

Significantly, even though the Reservation of Rights Language is Plaintiff's sole written expression upon which it claims copyright ownership, less than half of the production estimates produced by the Plaintiff were signed.  (Remore Decl. ¶ 10.)  Additionally, Ms. Lee's primary contact at GHM, Mr. Ohletz, testified that if Ms. Lee had called this boilerplate Reservation of Rights Language to his attention, he and GHM would have stopped working with her.  (Remore Decl. at Ex. E, 95:6-8; 110:23-111:11.)

Despite Plaintiff's allegation in Paragraph 73 of its Complaint, it is undisputed that there is no single master agreement or other written document that sets out the terms and conditions for the commissioning arrangement between the Singapore Wave Entities and the properties managed by GHM.  (GHM's 56.1 St. ¶ 23.)  More realistically, Ms. Lee and Mr. Ohletz had developed a pattern of conduct over the ten years that they worked together.  (Lai Decl. ¶ 25.) Under Singapore Law, the terms governing the relationship between the parties would generally have to be inferred by the conduct between the parties, including the intention of the parties involved and the common practice in the industry (Lai Decl. ¶ 25.)  In that analysis, a number of

---

[10]  In the *Christopher Bede Studio* case, the court ruled that the following language was sufficiently specific to oust the statute:

> *Copyright:* In consideration of your supplying me with proofs of at least 80% of the photographs taken by your photographer, which proofs shall be *black and white fadeless prints instead of red daylight proofs,* I agree that the copyright in all photographs taken or supplied by you shall be owned by you.  I understand that the term copyright means that only you have the right to print, copy or reproduce in any shape, form, or colour, any of the photographs taken or supplied to me by you.

factors establish under Singapore Law that the hotels owned the copyright in the photographs and that the small print generic Reservation of Rights Language at the bottom of the production estimates did not change the statutory basis for ownership by the hotels.

First, less than half of the production estimates produced in discovery in this proceeding were signed, and Ms. Lee never specifically called the small print Reservation of Rights Language to the attention of Mr. Ohletz or to the hotel representatives she was working with. The only example Ms. Lee gave of potentially advising Mr. Ohletz is an offhand mention, set forth below:

> Q: Okay. So would you agree that you reserved all the rights to the work that you created? Do you agree with that?
> A: Yes.
> Q: And you agree that's an important thing to communicate to the hotel or to GHM?
> A: Yes. And I did communicate.
> Q: Okay. And in what way did you communicate that?
> A: I said, "Ral[f], all this are Wave's work." I'm not referring to just photographs, all of them.
> Q: Okay. And was that one specific conversation you had?
> A: No, one or two. And then he said, "Yeah, yeah."

(Remore Decl. at Ex. C, 96:19- 97:13.) Stating "all this are Wave's work" cannot be considered a clear intent to oust the Singapore statute. The statement is ambiguous and worthless as an attempt to establish ownership of a copyright. Mr. Ohletz concurred that "if [copyright ownership] would have come up, if she would have acted upon it, it would have been the last time I would have been working with her." (Remore Decl. at Ex. E, 95:6-8.)

Second, Mr. Ohletz testified that in all dealings with Ms. Lee the parties never proceeded on the basis that the properties managed by GHM were not the copyright owners or that use of the photographs would be subject to a license from the Singapore Wave Entities or Ms. Lee. (Remore Decl. at Ex. E, 21:24-23:24, 25:21-26:21; 28:9-12; 33:22-34:24.) The Singapore Wave

Entities did not separately invoice GHM or the properties for individual license fees for the photographs that were used in connection with marketing collateral ordered by GHM or the properties, and there is nothing in writing indicating that the hotels or GHM itself were ever charged license fees for authorized use of the photographs. (GHM's 56.1 St. ¶¶ 42-43.) The lack of license fees establish that the hotels owned the photographs upon payment.

With respect to the industry norms in Singapore, according to Dr. Lai, it would be unusual for a party like a hotel to pay substantial fees (in excess of $250,000.00) for photographs or photography services if the party would not own the copyright and have the right to make further use of the photographs. (Lai Decl. ¶27.) Similarly, Mr. Ohletz, who has over forty years of experience in the luxury hotel industry, testified that it would be a very unusual practice for hotels to do business with a photographer who claimed to own the intellectual property rights to images that the hotels paid for. (Remore Decl. at Ex. E at 24:21-25:12). Mr. Ohletz stated that this practice would be "absolutely unacceptable because in the hotel business you have to use materials that you produce and pay for in numerous forms." (Remore Decl. at Ex. E at 24:21-25:12). Mr. Ohletz further testified that it would be "absolutely unheard of" and "totally counterproductive" to have to get a license from a photographer every time a property wanted to use an image taken by a photographer hired and paid by the property. (Remore Decl. at Ex. E at 111:20-112:3). Plaintiff has not shown – and cannot show – that there was any meeting of the minds between the Singapore Wave Entities and the hotels or GHM as to the displacement of the statutory rule under Singapore law that ownership of a copyright in commissioned photographs vests in the commissioning party.

For the reasons set forth above, under Singapore law:

(i)     Photographs that were commissioned by the hotels through GHM (as agent) are owned by the commissioning party as the first owner of the

copyright and not the photographer by operation of Section 30(5) of the [Singapore Copyright] Act.

(ii)     The language used in the production estimate does not exclude nor modify the operation of Section 30(5) in the commissioning agreement between GHM (acting on behalf of the hotels) and the respective Wave business entities. Further, it is also unlikely that a finding of an inference would be made under Singapore law that it was a term of the oral agreement between the parties (since there was no master agreement) that the copyright in the Photographs would vest in the respective [Singapore Wave Entity] and not the hotels.

(Lai Decl. ¶ 42.)

## II.    ON PROCEDURAL GROUNDS, THIS CASE HAS NOTHING TO DO WITH THE STATE OF NEW YORK AND MUST BE DISMISSED.

Even if the Court finds an issue of fact as to the ownership of the copyrights under Singapore law, the Complaint should be dismissed for several procedural reasons, all of which are rooted in the simple fact that this litigation has absolutely nothing to do with the State of New York.  First, New York is an inappropriate venue for adjudicating this litigation and the Complaint should be dismissed under the *forum non conveniens* doctrine.  Second, the Court lacks personal jurisdiction over GHM because, contrary to Plaintiff's allegations in the Complaint, GHM does not conduct business in New York.  Finally, the hotels, as the owners of the photograph copyrights, are indispensable parties to this litigation under Federal Rule of Civil Procedure 19 but likely are not subject to service of process in New York.  The Court should dismiss Plaintiff's claims because proceeding without the hotels would impair the hotels' ownership in the copyrights.

### A.    New York is an inappropriate venue for adjudicating this case and Plaintiff's case must be dismissed under the *forum non conveniens* doctrine.

The Court should dismiss the case on grounds of *forum non conveniens* because this action has absolutely no connection to New York and instead must be litigated in Singapore. The judicial test for whether a case should be dismissed for *forum non conveniens* is well-

established in the Second Circuit:

> At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public interests implicated in the choice of forum.

*RIGroup LLC v. Trefonisco Mgmt. Ltd.*, 949 F. Supp. 2d 546, 551 (S.D.N.Y. 2013) (quoting *Norex Petroleum Ltd. v. Access Indus., Inc.,* 416 F.3d 146, 153 (2d Cir. 2005)). Each of the three steps overwhelmingly favors dismissal of the action by this Court.

In step one, the degree of deference accorded to the plaintiff's choice of forum "moves on a sliding scale depending on several relevant considerations." *Id.* (quoting *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001) (en banc)). The plaintiff's choice is given more deference "the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States." *Id.* (quoting *Iragorri*, 274 F.3d at 72). The plaintiff's choice is given less deference "the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons." *Id.* (quoting *Iragorri*, 274 F.3d at 72). Notably, "shell companies are not entitled to the full measure of 'home forum' deference." *Id.* at 552 (citation omitted). Additionally, "courts have held that the deference to an American citizen or resident plaintiff's choice of forum is significantly diminished where the lawsuit arises from business that the plaintiff conducted abroad." *Id.*

In this case, Plaintiff's choice of the Southern District of New York as its forum is entitled to no deference. Plaintiff "exists" in New York only on paper. It does not have any employees who conduct business in the United States, much less in New York. It does not own or lease any office space in the United States, much less in New York. It conducts no business

whatsoever in New York. (GHM's 56.1 St. ¶¶ 12-14.) Rather, Plaintiff is merely a sham entity created, at the same address as its original attorney, to forum shop for Plaintiff's original lawyer's convenience. Plaintiff's lawyer's location is not a basis for venue. *Nun v. Teletronics Pacing Sys., Inc.,* 93 CIV. 5434, 1994 WL 361488, at *2 (S.D.N.Y. July 11, 1994) ("Plaintiff has failed to advance any reason for litigating this case in the Southern District of New York other than that his attorneys are located here, a factor that, considered alone, carries little weight."). And, ironically, Plaintiff's current attorney is located in California. The only "business" Plaintiff has conducted in New York is filing this lawsuit. As a shell company, Plaintiff has no bona fide connection to New York. Furthermore, the business Plaintiff conducted that gave rise to this lawsuit – photographic services for foreign hotels – occurred abroad. None of the photographs were taken in New York. Thus, the Court should give little deference to Plaintiff's choice of forum. *See RIGroup LLC*, 949 F. Supp. 2d at 552–53 (giving little deference to plaintiff's choice of forum where one plaintiff was merely a holding company, there was no evidence that plaintiffs conducted business in the United States, and there was evidence of forum-shopping).

With respect to step two, a defendant's proposal of an alternative forum is "adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Id.* at 553 (quoting *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003)). Singapore is a more than adequate forum for adjudicating this litigation. GHM, the only relevant defendant as to the threshold issue, is headquartered in Singapore and thus is clearly amenable to service of process there. Additionally, Singapore is a modern, first world country with a sophisticated legal system, based on English law, and an effective, progressive judiciary. Singapore provides a statutory framework for protecting copyrights and permits infringement lawsuits. *See generally,* S. Cop. Act. Pt. V. Furthermore,

Plaintiff has already demonstrated its own confidence in Singapore as an adequate alternative forum because it has previously sued GHM in Singapore as recently as 2010. Therefore, the second step favors dismissing this action for *forum non conveniens*. *See RIGroup LLC,* 949 F. Supp. 2d at 554 (determining that Russia was adequate alternative forum on basis of expert affidavit's statements that defendants would be subject to jurisdiction in Russia and plaintiffs' claims are cognizable under Russian law); *Palacios v. The Coca-Cola Co.,* 757 F. Supp. 2d 347, 357 (S.D.N.Y. 2010) (finding that Guatemala was adequate alternative forum on basis of expert testimony that "Guatemalan law recognizes substantially equivalent claims for at least ten of the twelve causes of action").

Finally, the relevant private and public interests weigh heavily in favor of litigating this action in Singapore rather than New York. The "relevant private interest factors, which concern the convenience of the litigants, are (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *RIGroup LLC,* 949 F. Supp. 2d at 555–56 (citing *Iragorri,* 274 F.3d at 73–74). "[C]ourts have regularly concluded that where most of the witnesses and documentary evidence reside in a foreign country, conducting trial in the U.S. could impose such significant burdens on the parties that dismissal is favored." Id. at 556 (quotation omitted) (citing cases).

This is precisely such a case.[11] Plaintiff's principal resides in Singapore.[12] GHM is

---

[11] Discovery has been conducted only with respect to the threshold issue. Should this Court deny summary judgment on the threshold issue, the parties will need to continue discovery, including, as discussed below, of individuals and entities residing in foreign countries. Thus, the location of the witnesses and documentary evidence is relevant as a factor to consider under the *forum non conveniens* doctrine.

headquartered in Singapore.  None of the key witnesses in this litigation have any connection to New York.  Masano Kawana, the photographer hired by Plaintiff to take the photographs of the foreign hotels, does not reside in or conduct business in New York.  According to his website, he resides in Singapore.[13]  The general managers of the various foreign hotels, who signed Plaintiff's production estimates and negotiated with Plaintiff, presumably continue to reside in the foreign countries where the hotels are located.  Plaintiff's accountant, who dissolved the Singapore Wave Entities and prepared legal documents regarding Plaintiff's purported assignments, resides in Singapore.  (Remore Decl. at Ex. C at 188:1-3.)  The cost of these witnesses appearing at depositions and at trial will be astronomical.  See *Palacios*, 757 F. Supp. 2d at 361–62 (finding that the cost involved in transporting numerous foreign witnesses to New York supports dismissal).

In contrast, Plaintiff has not identified a single witness who resides in or has any connection to New York.  The only participant in this litigation for whom New York is a convenient forum is Plaintiff's previous attorney, who is no longer a participant in this litigation. Thus, the private interest factors undeniably favor dismissal of this case.  *See RIGroup LLC,* 949 F. Supp. 2d at 556–57 (finding that the location of witnesses, almost all of whom reside in Russia, favors dismissal of action); *Palacios*, 757 F. Supp. 2d at 362 ("Because Guatemala remains the true focus of this litigation, and the bulk of the relevant evidence remains in Guatemala, the Court finds that the private interest factors tilt decidedly in favor of dismissal." (quotation omitted)).

The public interest factors likewise support dismissal of this action.  Such factors include

---

[12]  Indeed, Plaintiff's principal has previously attested to the inconvenience of New York as a forum, given her residency in Singapore. (Remore Decl. at Ex. T at ¶ 4.)

[13]  http://www.irieeyes-pictures.com/

"(1) the administrative burden on the congested court being asked to handle a dispute arising from another forum; (2) the burden of jury duty on the people of a community which has no relation to the litigation; (3) the local interest in having localized controversies decided at home; and (4) the burden of applying foreign law." *RIGroup LLC*, 949 F. Supp. 2d at 558 (quoting *Iragorri*, 274 F.3d at 74). The people residing in the Southern District of New York bear no relation to this litigation; as detailed above, the single "connection" the case has to this District is that Plaintiff's previous attorney's office is located in the district. Thus, the "local interest" factor and the "burden of jury duty" factor both weigh heavily in favor of dismissing this action. *Id.* at 558 (finding that "local interest" factor and "burden of jury duty" factor weigh in favor of Russian forum because the alleged misconduct took place in Russia); *Palacios*, 757 F. Supp. 2d at 362–63 (finding that "[t]he dominant Guatemalan contacts identified above diminish any purported connection to the New York jury pool" and "gives rise to a Guatemalan interest in local adjudication"). In sum, this litigation has no connection to New York, Singapore is an adequate alternative forum, and the Court should dismiss this action on grounds of *forum non conveniens*.

    **B.**    **This Court lacks personal jurisdiction over GHM and the hotels are indispensable parties to the litigation.**

The Court should also dismiss the Amended Complaint because it lacks personal jurisdiction over GHM under New York law. Additionally, the hotels, all but one of which are not named defendants in this action, are the owners of the photograph copyrights and thus are indispensable parties to this litigation under Federal Rule of Civil Procedure 19. Proceeding without the hotels as defendants would impair their ownership in the copyrights. Accordingly, rather than dismissing only GHM, this Court should dismiss Plaintiff's entire Complaint.

"The plaintiff bears the burden of establishing the court's personal jurisdiction over a

particular defendant." *Doe v. Delaware State Police*, 939 F. Supp. 2d 313, 321 (S.D.N.Y. 2013) (citing *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)). Whether an out-of-state corporation such as GHM is subject to the personal jurisdiction of a federal district court is determined by the law of the state in which the court sits, in this case, New York law. *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 102–03 (2d Cir. 2006).

Under N.Y. C.P.L.R. § 301, the Court "may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." New York courts have required plaintiffs seeking to invoke personal jurisdiction under § 301 to demonstrate that the defendant "has engaged in such a continuous and systematic course of 'doing business' in New York that a finding of its 'presence' in New York is warranted." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (quoting *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 565 N.E.2d 488 (N.Y. 1990)).

Plaintiff's Complaint alleges generally that "this Court has personal jurisdiction over the Defendants, as all are domiciled in, or have done business in this district." (Compl. ¶ 7.) With respect to GHM, Plaintiff alleges that "GHM targets New York residents to book accommodation and other hospitality services at the Hotels when they travel to those vacation destinations." (Compl. ¶ 10.) At the deposition of Plaintiff's principal, when repeatedly asked about this allegation, Ms. Lee could not support it. Her responses alternated between claiming her attorney knew the answers and explaining, incomprehensibly, that in her understanding many infringements take place in the United States. (Remore Decl. at Ex. C at 215:17-218:15.)

To the extent Plaintiff intends to rely on the fact that GHM has a non-exclusive sales representation office located in New York, under well-established New York law, this is insufficient for the Court to exercise personal jurisdiction over GHM. In the context of foreign

defendant hotels that have New York sales representatives, New York courts have repeatedly held that "no jurisdiction will lie unless the foreign defendant's New York representative . . . engage[s] in all the activities the foreign entity could do here by its own officials." *Tripmasters, Inc. v. Hyatt Int'l Corp.,* 696 F. Supp. 925, 932–33 (S.D.N.Y. 1988) (discussing cases). The courts have particularly focused on "whether the New York representative has the authority to make confirmed reservations on behalf of the foreign defendant." *Id.* at 932–34 (finding no jurisdiction under § 301 where sales representative office "had no power to confirm or even take requests for reservations"); *see also Kopolowitz v. Deepdene Hotel & Tennis Club,* 464 F. Supp. 677, 679–80 (S.D.N.Y. 1979) (finding plaintiff failed to establish personal jurisdiction over foreign hotel defendant because "[t]here is no evidence . . . that [New York sales representative] had the absolute authority to confirm reservations"); *Welinsky v. Resorts of the World D.N.V.,* 839 F.2d 928, 928–30 (2d Cir. 1988) (finding personal jurisdiction under § 301 because foreign hotel was "doing business in New York through its local booking agent," which "markets its rooms and services and has the authority to make and confirm reservations without checking with the defendant").

In this case, GHM's New York sales representative office could not "engage in all the activities [the hotels] could do here by its own officials," and particularly had no "authority to make confirmed reservations on behalf of" the hotels. *Tripmasters,* 696 F. Supp. at 932–33. Only the hotels – not the New York sales representative and not even GHM itself – can confirm reservations. Declaration of Monica Chloe Chng, dated February 11, 2016, ¶ 6. Consequently, the Court should dismiss Plaintiff's claims against GHM for lack of personal jurisdiction.

Additionally, the Court should dismiss Plaintiff's claims in their entirety because the hotels, as the owners of the copyrights, are indispensable parties that are not subject to service of

process in New York. Federal Rule of Civil Procedure 19 provides "a two-step test for determining whether the court must dismiss an action for failure to join an indispensable party." *Viacom Int'l, Inc. v. Kearney,* 212 F.3d 721, 724 (2d Cir. 2000). First, the court determines "whether an absent party belongs in the suit." *Id.* Under Rule 19(a), an absent party is necessary where:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

If the absent party is deemed necessary, but joinder "is not feasible for jurisdictional or other reasons," for example the party is not subject to service of process, then "the court must finally determine whether the party is 'indispensable'" under Rule 19(b). *Viacom,* 212 F.3d at 724–25. Rule 19(b) directs the court to consider:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

If the party is deemed indispensable under this analysis, the action must be dismissed. *Viacom,* 212 F.3d at 725; *see also* 17 U.S.C. § 501(b) ("The court may require the joinder, and shall permit the intervention, of any person having or claiming an interest in the copyright.").

In copyright cases, when the validity of an absent party's claimed copyright is at issue, that absent party is generally considered necessary under Rule 19(a). *See* 3 MELVILLE B. NIMMER AND DAVID NIMMER, NIMMER ON COPYRIGHT § 12.03 ("It would seem that joinder

should occur if an issue is raised as to the validity of the copyright upon which the rights of the persons to be joined, as well as those of the plaintiff, rest."). Courts in this district have deemed absent parties to be necessary under Rule 19(a) under these circumstances. *See PocketMedicine.com, Inc. v. John Wiley & Sons, Inc.*, No. 04 Civ. 8369, 2006 WL 785283, at *4 (S.D.N.Y. Mar. 23, 2006) ("It is familiar law that the copyright owner is an indispensable party to a suit where the validity of the copyright is in issue." (quoting *First Fin. Mktg. Servs. Grp., Inc. v. Field Promotions, Inc.*, 286 F. Supp. 295, 298 (S.D.N.Y. 1968))); *Night Hawk Ltd. v. Briarpatch, Ltd., L.P.*, No. 03 Civ. 1382, 2003 WL 23018833, at *3 (S.D.N.Y. Dec. 23, 2003) ("Absent special circumstances joinder should be required in cases challenging the validity of the copyright upon which rest the rights of the person to be joined and should not be required if the only issue is whether the defendant engaged in unlawful copying." (quoting *Wales Indus. Inc. v. Hasbro Bradley, Inc.*, 612 F. Supp. 510 (S.D.N.Y. 1985))); *Lipton v. The Nature Co.*, 781 F. Supp. 1032, 1035 (S.D.N.Y. 1992) (finding absent party to be indispensable because "the validity of his copyright is directly at stake" in infringement action).

As explained above, the hotels that hired the Singapore Wave Entities to take the photographs and paid them for taking the photographs, are the owners of the photographs. GHM's motion for summary judgment raises a question as to the validity of Plaintiff's alleged ownership of the photographs. To resolve Plaintiff's infringement claims on the merits, this Court will necessary determine who owns the copyrighted photographs. Should the Court decide that Plaintiff is the copyright owner, the hotels' claimed ownership in the copyrights will be impaired. Therefore, the hotels are necessary parties under Rule 19(a)(B)(i).[14]

However, joinder is not likely feasible under Rule 19 because the hotels presumably are

---

[14] Of course, the Court may decide Plaintiff does not own the copyrights, as argued above, without impacting the hotels' rights.

not subject to service of process or jurisdiction in New York.  (Indeed, if they were, Plaintiff almost certainly would have sued them as well.)  The hotels are located in various foreign countries, such as Oman, Vietnam, Indonesia, and Thailand, and do not conduct business in New York.  Because the hotels are necessary parties not subject to service of process in New York, the Court must determine "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  FED. R. CIV. P. 19(b).

The Court should dismiss this action in the absence of the hotels as parties.  If the Court were to determine that Plaintiff owns the copyrights and Defendants infringed the copyrights, such a judgment would immensely prejudice the hotels, which are the copyright owners.  A judgment against Defendants, which would necessarily determine that Plaintiff owns the copyrights, could not be fashioned to lessen or avoid such prejudice to the hotels.  Additionally, if the Court were to dismiss this action under Rule 19(b), Plaintiff's alternative remedy would be more than adequate:  Suit could be brought against the hotels in the foreign countries in which they are located, all of which have a far stronger interest in this litigation than does New York. Plaintiff's failure to join the hotels as parties simply highlights this litigation's utter lack of connection to New York.

### III.  EVEN IF THE PLAINTIFF OWNED THE PHOTOGRAPHS, GHM AND THE HOTELS HAD THE RIGHT, UNDER AN IMPLIED LICENSE TO USE AND DISTRIBUTE THE PHOTOGRAPHS IN ANY WAY THEY SAW FIT TO MARKET THE HOTELS.

Even if Plaintiff could prove it owns a valid copyright in the photographs, which it cannot, GHM and the hotels had an implied license, based on the parties' course of conduct, to use the photographs and distribute them as they saw fit.  Because Ms. Lee and the Singapore Wave Entities authorized the use and distribution of its photographs through this implied license, Defendants cannot be held liable for infringement or for distributing the photographs without

authorization. *See Psihoyos v. Pearson Educ., Inc.*, 855 F. Supp. 2d 103, 119 (S.D.N.Y. 2012) ("[I]f Defendants can show that the copying was authorized, . . . then they will not be held liable [for copyright infringement]."); *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998) ("A copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement." (citations omitted)).

A license may be "implied from conduct." *Graham*, 144 F.3d at 235 (quotation omitted). Courts in the Second Circuit have considered various tests to determine whether a copyright owner has granted an implied license by course of conduct. Traditionally, courts have focused on whether the "copyright owner creates a work at the request of the licensee and with the intention that the licensee exploit it." *Psihoyos*, 855 F. Supp. 2d at 120 (quoting *Weinstein Co. v. Smokewood Entm't Grp., LLC*, 664 F. Supp. 2d 332, 344 (S.D.N.Y. 2009)). However, "courts in this Circuit and elsewhere routinely have relaxed" this test and "instead focus on the oft-stated principle that 'consent given in the form of mere permission or lack of objection is also equivalent to a nonexclusive license and is not required to be in writing.'" *Id.* at 121 (quoting *Keane Dealer Servs., Inc. v. Harts*, 968 F. Supp. 944, 947 (S.D.N.Y. 1997) and discussing cases). Other courts consider whether the copyright owner "delivered the work with the intent that the licensee copy and distribute it." *Id.* at 122 (discussing cases).

Under any of these formulations, Ms. Lee's conduct at all times demonstrated her understanding that GHM and the hotels would use the photographs and distribute them – an understanding she has disclaimed for the first time in this litigation. First, Ms. Lee created the photographs at the request of GHM and the hotels. She never sent a cease and desist letter to GHM despite knowing since 2002 that GHM was using her photographs on its website. (Remore Decl. at Ex. C at 107:18-108:17). Indeed, under some circumstances, the hotels and/or GHM

even directly told her what specific things they needed photographs of. (Remore Decl. at Exs. H, I, J, K.) Second, Ms. Lee's intention that GHM and the hotels use and distribute the photographs is evidenced in several ways. She understood that the purpose of the photographs of the hotels was to market the hotels. (GHM's 56.1 St. ¶ 21.) Without a license to use and distribute the photographs in order to market the hotels, the photographs were of "minimal value" to the hotels, indicating the existence of an implied license. *Psihoyos*, 855 F. Supp. 2d at 123 (quoting *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 559 (9th Cir. 1990)); see also Holtzb*rinck Publ'g Holdings, L.P. v. Vyne Commc'ns, Inc.*, No. 97 CIV. 1082, 2000 WL 502860, at *4–5 (S.D.N.Y. Apr. 26, 2000) (finding implied license to use software code in a website because "the codes and files were intended for [defendant's] use for the website. Otherwise, the code would serve no function" for defendant and the work would be "worthless"). Additionally, the Singapore Wave Entities were paid substantial sums for taking the photographs and providing them to both GHM and the hotels via CD-ROMS. Courts have noted that "[t]he fact that the parties contemplated the payment of significant amounts of money for particular works speaks to their intent that a license to use that work be transferred." *Psihoyos*, 855 F. Supp. 2d at 123.

The images on those CD-ROMS did not contain any markings or notifications indicating that the copyrights in the images were owned by Ms. Lee or the Singapore Wave Entities or that the images were not to be used without authorization from Ms. Lee or the Singapore Wave Entities. (GHM's 56.1 St. ¶ 40.) When the CD-ROMS were provided to GHM and the hotels, neither Ms. Lee nor the Singapore Wave Entities indicated, either in writing or orally, that the Singapore Wave Entities owned the copyrights or that there were limitations on the use of the photographs that were contained on the CD-ROMS. (GHM's 56.1 St. ¶ 41.) Neither Ms. Lee nor the Singapore Wave Entities asked for the CD-ROMS to be returned.

Finally, since 2002, Ms. Lee was aware that photographs allegedly taken by the Singapore Wave Entities were being used on GHM's website and, since 2005, certain hotels' websites that were visible to the general public (Remore Decl. at Ex. C at 113:3-114:1.) She also was aware in at least 2006 and 2007 that her photographs were being provided to third parties for the purposes of marketing the hotels. (Remore Decl. at Exs. G, L.) Despite her knowledge, she never asserted ownership in those photographs when the sites were created by the Singapore Wave Entities and she never placed any limitations on their use. She also did not – until filing this lawsuit – object to use of the photographs on any website that the Singapore Wave Entities did not create. (Remore Decl. at Ex. C at 102:16-18; 103:1-7; 104:5-105:5; 105:15-20; 108:13-17.) Indeed, Ms. Lee testified in her deposition that she was simply "too tired" to look at any websites of GHM or the hotels prior to 2011 to determine whether the photographs were being used without her authorization. (Remore Decl. at Ex. C at 114:15-115:18.) Ms. Lee's "knowledge of, and acquiescence in" GHM and the hotel's use of the photographs constituted an implied license for such use. *Keane*, 968 F. Supp. at 947 (holding that knowledge of use of software and acquiescence in such use constitute implied license).

Because Ms. Lee's conduct has consistently evidenced an intention that GHM and the hotels use and distribute the photographs as they saw fit, GHM and the hotels had an implied license and the Defendants cannot be held liable for infringement.

## IV.    EVEN IF UNITED STATES LAW APPLIED TO DETERMINE OWNERSHIP, PLAINTIFF DOES NOT HAVE STANDING TO ASSERT A CLAIM OF INFRINGEMENT OF NINE OF THE REGISTRATIONS DUE TO FATAL ERRORS IN ITS CHAIN OF TITLE.

Though Plaintiff asserts that it was assigned the rights in and to the allegedly infringed photographs, as set forth above, such assignments are invalid because under Singapore law none of the purported assignors – whether the Singapore Wave Entities or Ms. Lee – had any rights to

assign. Even worse, the copyright claimants listed in the registrations claimed to be infringed in this case were not the proper owners of any of the works contained within those registrations under Singapore law. Even assuming that United States law applies to the ownership analysis, Plaintiff cannot overcome the errors in the chain of title for at least nine of the copyright registrations at issue.

"[A] transferee plaintiff in a copyright infringement action must prove that the copyright was properly transferred to the plaintiff." *International Media Films, Inc. v. Lucas Entertainment, Inc.*, 703 F.Supp.2d 456, 463 (S.D.N.Y. 2010) (citation omitted).

> The defendants do not have to prove that [a third party] is in fact the owner of the copyright to prevail on its motion. In fact it is possible for the [work] to be in the public domain. It is the plaintiff who bears the burden of proving that its chain of title is valid.

*Id.*, at 465. Assuming *arguendo* that Ms. Lee or any of the Singapore Wave Entities were the owners of the photographs (which as set forth above, they were not and are not), Plaintiff has not met its burden of proving that its chain of title to at least nine of the registrations at issue is valid.

### A. Plaintiff is not entitled to a presumption of validity of eleven of the registrations claimed to be infringed in this action, and, with respect to the remaining registrations, that presumption is rebuttable.

As set forth above, though a certificate of registration is considered prima facie evidence of the validity of the copyright, including the ownership therein, that presumption does not apply when the registration is made more than five years after the original publication of the work. 17 U.S.C. §410(c) (2015). Plaintiff is not entitled to a presumption of validity for any of the following eleven registrations – covering over 2,300 photographs – that were registered more than five years after the claimed date of first publication or creation of the works listed therein: (1) The Wave Design Unpublished 2005(C); (2) The Wave Design Unpublished 2005(D); (3) Wave-S Unpublished; (4) Wave-S 2001; (5) Wave-S 2002; (6) Wave-S 2003; (7) Wave-S 2004;

(8) The Wave Pte. 2005(A); (9) The Wave Design 2005; (10) Wave-S 2002(B); and (11) Wave-S 2004(B). (GHM's 56.1 St. ¶¶ 49-59.) The evidentiary weight to be accorded the foregoing registrations is in the discretion of the Court. 17 U.S.C. §410(c) (2015).

Even for the remaining registrations that were registered within five years, that presumption is rebuttable. *See Durham Industries, Inc. v. Tomy Corp.,* 630 F.2d 905, 908 (2d Cir. 1980) ("It is clear, however, that a certificate of registration creates no irrebuttable presumption of copyright validity. Where other evidence in the record casts doubt on the question, validity will not be assumed."); *see also Dynamic Solutions, Inc. v. Planning and Control, Inc.,* 646 F.Supp. 1329, 1337 (S.D.N.Y. 1986) ("Presentation of a registration certificate thus relieves the plaintiff of proving the many facts necessary to show ownership and validity 'unless the defendant, by effectively challenging them, shifts the burden of so doing to the plaintiff.'").

As set forth in more detail in GHM's Statement of Material Facts, two of the Singapore Wave Entities, Wave-S and The Wave Pte. Ltd., were dissolved and ceased doing business on or before August 1, 2008 – more than two years before the first applications for Copyright Registration were filed. (GHM's 56.1 St. ¶¶ 60, 67-68, 70.) These two entities – that were no longer actively conducting business in Singapore or anywhere in the world, had been formally dissolved and stricken off from the register in accordance with Singapore law,[15] had no assets and did not own rights in any photographs – were listed as copyright claimants in the following nine registrations at the time the applications were filed: (1) The Wave Pte. Unpublished setai 182; (2) Wave-S Unpublished; (3) Wave-S 2001; (4) Wave-S 2002; (5) Wave-S 2003; (6) Wave-

---

[15] We note that Plaintiff alleges – metaphysically (and perhaps only in Plaintiff's counsel's imagination) – that the entities did exist at these times as dissolved entities. (*See, e.g.* Remore Decl. Ex. B at 34, 151.)

S 2004; (7) The Wave Pte. 2005(A); (8) Wave-S 2002(B); and (9) Wave-S 2004(B).  (GHM's 56.1 St. ¶¶ 60-70.)[16]  Ms. Lee signed the applications, at the time that they were filed, on behalf of these dissolved entities when, in fact, they owned no assets.  (GHM's 56.1 St. ¶¶ 60-70.)

**B.**    **There are fatal errors in the chain of title of nine of Plaintiff's registrations that were not corrected prior to the institution of this lawsuit.**

Following the application for the seventeen copyright registrations that are the subject of the instant proceeding, Ms. Lee, the Singapore Wave Entities and Plaintiff entered into a number of convoluted agreements evidently intended to assign rights in all of the photographs at issue to Plaintiff so that Plaintiff could institute lawsuits in the United States based on alleged infringements of the photographs that neither Ms. Lee nor the Singapore Wave Entities owned in the first place.[17]  To begin with, an assignment agreement was entered into claiming an effective date of February 15, 2007 – prior to the dissolution of Wave-S – containing language stating that Wave-S's right, title and interest in and to the copyright in a number of photographs was assigned to The Wave Design Pte. Ltd.  (Remore Decl. at Ex. M.)  Despite this assignment, Wave-S nonetheless claimed ownership of all of those photographs in its copyright registrations, filed in 2010 and 2011.  (GHM's 56.1 St. ¶¶ 71-72.)  Similarly, an assignment agreement was entered into claiming an effective date of July 28, 2008 – two days before the formal dissolution of The Wave Pte. Ltd. – containing language stating that The Wave Pte. Ltd.'s right, title and interest in and to the copyright in a number of other photographs was assigned to The Wave

---

[16] Of these nine registrations, only one is entitled to a rebuttable presumption of validity under 17 U.S.C. §410(c) because it was registered within five years of publication.

[17] Given the serious questions about Plaintiff's registrations and recordation of documents with the Copyright Office, should the Court reach the chain of title issue in deciding this Motion, referral to the Register of Copyrights under 17 U.S.C. §411(b)(2) may be required.  ("In any case in which inaccurate information [as described in §411(b)(1)] is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration.")

Studio Pte. Ltd. (Remore Decl. at Ex. N; GHM's 56.1 St. ¶ 68.) Despite this assignment, The Wave Pte. Ltd. nonetheless claimed ownership of all of those photographs in its copyright registrations, filed in 2010 and 2011. (GHM's 56.1 St. ¶¶ 76-77.) Ms. Lee has since admitted that each of these two assignment agreements were backdated, and actually drafted and signed for the first time in 2012. (GHM's 56.1 St. ¶¶ 73, 78).

Next, Plaintiff entered into agreements with the Singapore Wave Entities signed in November of 2011 that purported to assign rights in the registrations to Plaintiff. (Remore Decl. at Exs. O and P.) Two of these agreements were signed by Wave-S and The Wave Pte. Ltd. – years after the entities were no longer in business and had been formally stricken off from the register under Section 344 of the Companies Act in Singapore and after Wave-S and The Wave Pte. Ltd. had assigned their rights in and to the photographs claimed in its registrations to The Wave Design Pte. Ltd. and The Wave Studio Pte. Ltd. (according to the effective date that Ms. Lee put on her agreements). (GHM's 56.1 St. ¶¶ 74-75, 79-80.) Then in 2013, a document was entered into (and recorded with the United States Copyright Office) that Plaintiff intended to assign "everything" from Ms. Lee and the Singapore Wave Entities to The Wave Studio LLC (Remore Decl. at Ex. Q; Remore Decl. at Ex. C at 72:19-22). This document was signed by Ms. Lee as the owner on behalf of The Wave Pte. Ltd. and Wave-S when those entities were no longer in business and had been formally stricken off from the register under Section 344 of the Companies Act in Singapore. (GHM's 56.1 St. ¶¶ 82-83.)

At Plaintiff's first deposition as to the threshold issue in this proceeding – which was more than sixteen months after Plaintiff filed its original Complaint alleging ownership in the photographs – Ms. Lee was thoroughly questioned about the errors in Plaintiff's chain of title due to the foregoing agreements and their effect on the ownership rights in the photographs. As

a direct result of this line of questioning, on September 4, 2015, a document titled "Declaration of Lee Kar Yin and Nunc Pro Tunc Copyright Assignments to the Wave Studio" was recorded with the United States Copyright Office (hereinafter the "2015 Declaration").[18] This document was provided to GHM's counsel less than twenty-four hours prior to Ms. Lee's continued deposition. (Remore Decl. ¶ 23.) The 2015 Declaration states that "upon information and belief" the 2007, 2008 and 2011 assignments were "made in error" and are "void *ab initio*." (Remore Decl. at Ex. R). When questioned about these supposed errors, Ms. Lee could only testify that they were wrong because they were not necessary. (Remore Decl. at Ex. D at 309:20-311:7.)

In her first deposition, Ms. Lee stated that though the entities were dissolved at the time the applications were filed, she listed them as copyright claimants because they were the company that did the work. (Remore Decl. at Ex. C at 87:3-12.) Ms. Lee has since changed her argument, and now alleges that The Wave Pte. Ltd. and Wave-S were not the proper copyright claimants (and instead the claimants should have been Ms. Lee as an individual), and alleges that the 2015 Declaration corrects all of the prior chain of title errors that were brought to her attention by GHM. (*See, e.g.* Remore Decl. at Ex. B at Nos. 14, 61.) Ms. Lee, the Singapore Wave Entities, Plaintiff and Plaintiff's various counsel have chosen to inundate the United States Copyright Office with paperwork for recording without confirming in all instances whether the

---

[18] At her continued deposition, Ms. Lee testified as follows:
Q: When did you come to the belief that Exhibits H and I and the other Exhibits in deposition Exhibit 17 were null and void?
A: Actually, thank you for pointing it out during deposition one. I wouldn't know because copyright registration is not required in Singapore. I have never gone through any of this. What you call assignment, or recordation, I have never done any of this before. So, we spent such a long time going through all this documents during the first deposition, it made me think that what is wrong with my, what is wrong with my registration? What did I do wrong? (Remore Decl. at Ex. D at 330:17-331:7.)

documents do what they are intended to do – provide the public with constructive notice of the document recorded.[19]  However, "[t]he fact that a document has been recorded is not a determination by the U.S. Copyright Office concerning the validity or effect of that document. That determination can only be made by a court of law." COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES, § 3205.

Only the "legal or beneficial owner of an exclusive right under a copyright" may "institute an action for any infringement of that particular right <u>while he or she is the owner of it.</u>" 17 U.S.C. §501(b) (2015) (emphasis added).  "<u>A nunc pro tunc assignment executed after litigation is commenced 'cannot retroactively solve the standing problem that existed at the time the action was filed.</u>'" *Professional LED Lighting, Ltd. v. AAdyn Technology, LLC,* 88 F. Supp. 3d 1356, 1370 (S.D. Fl. 2015) (quoting *Triple Tee Golf, Inc. v. Nike, Inc.,* No. 4:04-cv-302-A, 2007 WL 4260489 at *22 (N.D. Tex. Aug. 10, 2007) (emphasis added).

> "As a general matter, parties should possess rights before seeking to have them vindicated in court. Allowing a subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue. Parties could justify the premature initiation of an action by averring to the court that their standing through assignment is imminent. Permitting non-owners and licensees the right to sue, so long as they eventually obtain the rights they seek to have redressed, would enmesh the judiciary in abstract disputes,

---

[19]  Indeed, the United States Copyright Office specifically cautions against unscrupulously recording documents, stating:

> "Members of the general public who submit documents for recordation cannot expect the Office to screen a document for even obvious errors or discrepancies.  Therefore, parties are strongly advised to review and scrutinize any document to ensure that the document is legally sufficient to accomplish the purpose for which it is intended before it is submitted for recordation."

COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES, § 3205.  Plaintiff obviously could not be bothered with such a simple straightforward task, and instead has required GHM to engage in needless, time wasting and duplicative discovery to attempt to analyze and unravel the tangled web of Plaintiff's chain of title in these registrations (which is Plaintiff's burden in the first instance).

> risk multiple litigation, and provide incentives for parties to obtain
> assignments in order to expand their arsenal and the scope of litigation.
> Inevitably, delay and expense would be the order of the day."

*Gaia Technologies, Inc. v. Reconversion Technologies, Inc.*, 93 F.3d 774, 780 (Fed. Cir. 1996)

(holding that a nunc pro tunc assignment agreement of patent and trademark rights executed after

the institution of the lawsuit but made effective prior to the filing of the suit was insufficient to

confer standing on the plaintiff retroactively) (quoting *Procter & Gamble Co. v. Paragon Trade*

*Brands, Inc.* 917 F. Supp. 305, 310 (D. Del. 1995)). Plaintiff's actions to this point show that it

could (and presumably would) at any moment decide even the 2015 Declaration no longer serves

its intended purpose – to convey standing on the Plaintiff to sue for infringement for these nine

registrations – and simply file a new document to "fix" such errors, no matter how much time

has passed since Plaintiff initiated its lawsuits. Indeed, throughout her deposition and continued

deposition, Ms. Lee flip-flopped on the issues of who prepared which assignment agreement and

what each was meant to say (and why it may contradict what it actually said).[20] Her explanations

of these assignment agreements should be given little, if any, weight.[21]

Because at least some of these agreements and declarations were entered into in

---

[20] By way of one example only, during her first deposition in May of 2015, Ms. Lee was "sure"
her attorney, John Jennison, prepared the 2008 Wave Pte. to The Wave Studio Pte. Assignment,
but at her continued deposition, changed her testimony and advised that she prepared it herself.
(Remore Decl. at Ex. C at 47:17-49:12; 66:20-22; Remore Decl. at Ex. D at 254:22- 256:11.)
Even on the same date during her continued deposition, Ms. Lee contradicts herself, in one
breath saying that it is her intention that from the year 2000 through 2010 she individually owned
all the copyrights for Wave-S, and in another stating that it was her intention during that time
period, that the copyrights actually belonged to the companies. (Remore Decl. at Ex. D at
319:21-320:9; 331:20-331:25.)

[21] *See, e.g. Triple Tee Golf, Inc.,* 2007 WL 4260489 at *16 ("No rational fact finder would give
any credence to a witness who played a shell game such as Gillig did on the assignment subject.
He should have been the most knowledgeable person on the subject on any assignment he might
have made to plaintiff, and his testimony should have been straightforward and definitive. It was
anything other than that. Obviously, he was making things up as he went along.")

Singapore, it is necessary to evaluate this issue under Singapore law as well.[22] A similar analysis applies under Singapore law. Under Singapore law, an assignment would only be deemed void *ab initio* if (i) there is a common mistake which renders a contract void *ab initio* at common law; or (ii) if there is a unilateral mistake and the other non-mistaken party had actual knowledge that the other party was operating under a mistake. (Lai Decl. ¶ 36.) No evidence suggests that the parties were genuinely operating under a common mistake or that there was a unilateral mistake by either the assignor or the assignee and actual knowledge by the non-mistaken party. (Lai Decl. ¶ 41.) In addition, courts in Singapore are generally reluctant to declare agreements void *ab initio,* because the law "places as its paramount policy concern that of upholding contracts." (Lai Decl. ¶ 37.) Thus, under Singapore law, the 2015 Declaration that unilaterally declares that the previous assignments entered into between the respective Singapore Wave Entities were entered in error and void *ab initio* would not be valid and "would not be effective to 'correct' the errors in chain of title after the fact." (Lai Decl. ¶ 41.) Under either United States or Singapore law, Plaintiff's chain of title is fatally flawed.

## CONCLUSION

Based on the foregoing, GHM respectfully requests an Order:

1.     Granting summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and dismissing Plaintiff's Complaint in its entirety with prejudice because under Singapore law, Ms. Lee, the Singapore Wave Entities and Plaintiff are not the owners of any of the photographs contained within the seventeen copyright registrations alleged to be infringed in

---

[22] "For contract claims, New York courts apply 'the 'center of gravity' or 'grouping of contacts' choice of law theory.' The most significant contacts in this analysis are 'the place of contracting, negotiation and performance; the location of the subject matter of the contract; and the domicile of the contracting parties.'" *Benefield v. Pfizer Inc.*, 103 F. Supp. 3d 449, 457 (S.D.N.Y. 2015) (citations omitted).

this action;

    2.    Dismissing Plaintiff's Complaint in its entirety with prejudice under the doctrine of *forum non conveniens* action because New York is an inappropriate venue for adjudicating this case;

    3.    Dismissing Plaintiff's Complaint in its entirety with prejudice pursuant to Rule 19 of the Federal Rules of Civil Procedure because the hotels managed by GHM are indispensable parties to this litigation;

    4.    Granting summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and dismissing Plaintiff's Complaint with prejudice as to nine of the seventeen copyright registrations alleged to be infringed in this action; and

    5.    Awarding such other and further relief as the Court may deem just and proper.

CHIESA SHAHINIAN & GIANTOMASI PC
Attorneys for Defendant
General Hotel Management, Ltd.

By: _____
      HOWARD J. SCHWARTZ

Dated:  February 12, 2016