HOWARD J. SCHWARTZ
CHIESA SHAHINIAN & GIANTOMASI PC
One Boland Drive
West Orange, NJ 07052
Telephone: 973-325-1500
Attorneys for Defendant
General Hotel Management Ltd.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE WAVE STUDIO, LLC,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL HOTEL MANAGEMENT LTD. *et al.*,<br><br>Defendants. | Case No.: 13-cv-09239 (CS) (PED)<br><br>**DEFENDANT GENERAL HOTEL MANAGEMENT, LTD.'S STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1** |

**PLEASE TAKE NOTICE** that, pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 56.1, defendant General Hotel Management, Ltd. ("GHM") submits that the following material facts are not genuinely disputed.

**I.   GENERAL BACKGROUND AND ALLEGATIONS FROM COMPLAINT.**

1.   The Plaintiff, The Wave Studio, LLC ("Plaintiff"), filed this lawsuit alleging copyright infringement of photographic works allegedly created by its principal, Lee Kar Yin (aka Junior Lee, hereinafter "Ms. Lee"), who is a Malaysian citizen currently domiciled in Singapore. (First Amended Complaint (hereinafter "Complaint"), attached as Ex. A to Declaration of Abigail J. Remore, dated February 12, 2015 ("Remore Decl.") at ¶¶1-2, 9).

2. Ms. Lee was commissioned either by hotel management and promotional agencies, or by hotel and travel locations directly, to photograph elite hotel properties and destination locales. (Complaint at ¶3).

3. Ms. Lee is or was also the principal of several entities that were organized under the laws of Singapore and are, or were, domiciled in Singapore, including (1) Wave-S; (2) The Wave Pte. Ltd.; (3) The Wave Studio Pte. Ltd.; and (4) The Wave Design Pte. Ltd. (hereinafter, collectively, the "Singapore Wave Entities"). (Complaint at ¶77).

4. GHM manages a small group of luxury hotels and resorts, primarily in Southeast Asia. (Complaint at ¶10; Declaration of Monica Chloe Chng, dated February 11, 2016 at ¶4).

5. In addition to GHM, Plaintiff has named 58 individuals or entities as Defendants in the instant lawsuit, as well as unknown entities named by Plaintiff "Does 1 through 100." (Complaint at ¶¶11-69).

6. In addition to the instant lawsuit, Plaintiff also filed the following eight additional complaints in the Northern District of California, naming 21 additional Defendants: (i) 15-cv01364; (ii) 15-cv-00814; (iii) 15-cv-00354; (iv) 15-cv-00952; (v) 14-cv-01342; (vi) 15-cv-00818; (vii) 15-cv-00239; and (viii) 15-cv-01341 (hereinafter the "NDCA Lawsuits").

7. Aside from one of the foregoing NDCA Lawsuits, 14-cv-01342, all of the remaining NDCA Lawsuits were transferred to the Southern District of New York and are currently consolidated with the instant lawsuit.

8. The Court has stayed discovery in this lawsuit and all consolidated lawsuits, as to all other named defendants (hereinafter the "Stayed Defendants") except GHM. (Dkt. No. 67.)

9. The Plaintiff alleges that the Singapore Wave Entities obtained United States copyright registrations for photographs of various properties allegedly taken by Ms. Lee or the Singapore Wave Entities at the direction of GHM. (Complaint at ¶77.)

10. Plaintiff alleges that all right title and interest in and to the Registrations was assigned by Ms. Lee to Plaintiff on November 11, 2011. (Complaint at ¶78.)

## II. SINGAPORE IS THE STATE WITH THE MOST SIGNIFICANT RELATIONSHIP TO THE PHOTOGRAPHS AND THE PARTIES.

11. None of the authors of any of the photographs are citizens of the United States of America. (Remore Decl. at Ex. B at No. 1).

12. Plaintiff does not have and never had any employees that conduct business in the United States of America. (Remore Decl. at Ex. B at No. 208).

13. Plaintiff does not have and never had any employees that reside in the United States of America. (Remore Decl. at Ex. B at No. 209).

14. Plaintiff does not own or lease and never owned or leased any office space in the United States of America. (Remore Decl. at Ex. B at No. 210).

15. GHM has its principal place of business and its headquarters in Singapore, and it is organized under the laws of the British Virgin Islands. (Complaint at ¶10).

16. The Singapore Wave Entities that supposedly took the photographs alleged to be infringed in this action are based in Singapore. (Remore Decl. at Ex. C at 206:17).

17. When each of the applications for the Registrations were filed with the United States Copyright Office, the copyright claimant and author was listed, on each, as one of the Singapore Wave Entities. (Remore Decl. at Ex. S).

18. All of the photographs that Plaintiff asserts have been infringed in this action were first published in Singapore. (Remore Decl. at Ex. B at No. 2).

19. Singapore is listed by the Singapore Wave Entities as the nation of first publication of each and every one of the photographs that are included in the Registrations. (Remore Decl. at Ex. S).

20. The country of origin of all of the photographs that Plaintiff asserts have been infringed in this action is Singapore. (Remore Decl. at Ex. B at 4).

### III. PROPERTIES MANAGED BY GHM COMMISSIONED MS. LEE AND/OR THE SINGAPORE WAVE ENTITIES TO TAKE PHOTOGRAPHS OF THE PROPERTIES MANAGED BY GHM FOR USE IN MARKETING THOSE PROPERTIES.

21. Ms. Lee and/or the Singapore Wave Entities were commissioned by hotels managed by GHM to take photographs of the hotels for advertising, marketing and promotion purposes. (Complaint at ¶73; Remore Decl. at Ex. E at 34:16-35:14).

22. Ms. Lee and/or the Singapore Wave Entities worked with GHM and its properties for more than ten years. (Remore Decl. at Ex. E at 13:17-24).

23. No single, master contract between GHM and Ms. Lee and/or the Singapore Wave entities exists, despite the allegations in paragraph 73 of the Complaint. (Complaint at ¶73; Remore Decl. at Ex. C at 89:14-23).

24. Once Ms. Lee was assigned a project, whether it was a photo shoot or the printing of marketing collateral, she would prepare and submit a production estimate to the hotel. (Remore Decl. at Ex. C at 94:5-22; Remore Decl. at Ex. E at 79:2-5).

25. Those production estimates included the following language:

    i. "We reserve the intellectual property copyright to all designs / soft copies / material / photographs / projects undertaken"; and

    ii. "We will proceed on the basis that this estimate is wholly acceptable unless advised to the contrary in writing before the work is undertaken."

(Remore Decl. at Ex. F).

26. Ms. Lee never specifically called this language to the attention of Mr. Ohletz or to the general managers. (Remore Decl. at Ex. E at 111:7-11).

27. The hotels paid all of the Singapore Wave Entities directly. (Complaint at ¶73).

28. The Singapore Wave Entities hired the services of Masano Kawana (via his corporation, Irieyes), who was the photographer. (Remore Decl. at Ex. E at 17:13-15; 23:11-13).

29. Mr. Kawana physically pressed the button on the camera to capture the images. (Remore Decl. at Ex. C at 178:22-23).

IV. **UNTIL FILING THE INSTANT LAWSUIT, MS. LEE NEVER ASSERTED OWNERSHIP RIGHTS OVER THE PHOTOGRAPHS TO HER PRIMARY CONTACT AT GHM, OR ANY OF THE GENERAL MANAGERS OF THE PROPERTIES THAT THE PHOTOGRAPHS WERE OF. IF MS. LEE HAD DONE SO, GHM AND THE HOTELS WOULD HAVE IMMEDIATELY CEASED DOING BUSINESS WITH HER AND THE SINGAPORE WAVE ENTITIES.**

30. During the ten years that Ms. Lee worked with Mr. Ohletz, Ms. Lee never told Mr. Ohletz that she believed she owned any of the rights to any of the photographs or

5

designs in brochures created by the Singapore Wave Entities. (Remore Decl. at Ex. E at 21:24-22:9).

31. Ms. Lee claims only to have said "all this are Wave's work." (Remore Decl. at Ex. C at 97:5-6).

32. If she had asserted ownership in the photographs, GHM and the properties would have promptly ceased their working relationship with Ms. Lee. (Remore Decl. at Ex. E at 21:24-23:24).

33. Ms. Lee never, at any point during the ten years that she worked with Mr. Ohletz, told Mr. Ohletz that she owned any copyright or other intellectual property rights in any of the photographs that Mr. Kawana took with her or that were included in any of the work she contributed to the projects she worked on with Mr. Ohletz. (Remore Decl. at Ex. E at 25:14-21).

34. Even after Ms. Lee was paid by the hotels, she never claimed to Mr. Ohletz that she had ownership rights in the photographs or any of the marketing materials featuring those photographs. (Remore Decl. at Ex. E at 28:9-12).

35. Ms. Lee never advised Mr. Ohletz that there was a limit to the ways or media that the hotels could use the photographs allegedly taken by the Singapore Wave Entities. (Remore Decl. at Ex. E at 30:10-14).

36. An arrangement limiting the ways the hotels could use the photographs would have been totally unacceptable to Mr. Ohletz. (Remore Decl. at Ex. E at 30:10-14).

37. It would be a very unusual practice for hotels to do business with a photographer who claimed to own the intellectual property rights in photographs that the hotels paid for. (Remore Decl. at Ex. E at 24:21-25:12).

38. For a photographer to own copyrights to photographs of marketing pictures commissioned by a hotel is unacceptable, unheard of and counterproductive because in the hotel business, the materials that the hotels produce and pay for must be used in numerous forms. (Remore Decl. at Ex. E at 24:21-25:12, 111:20-112:3).

### V. MS. LEE AND THE SINGAPORE WAVE ENTITIES WERE AWARE THAT THE PURPOSE OF THE PHOTOGRAPHS WAS TO MARKET THE PROPERTIES AND BEHAVED AS THOUGH GHM AND THE PROPERTIES MANAGED BY GHM HAD A RIGHT TO USE AND DISTRIBUTE THE PHOTOGRAPHS IN ANY WAY THEY SAW FIT.

39. Ms. Lee or the Singapore Wave Entities sent copies of the photographs that were taken of the hotels to GHM and to the hotels. (Remore Decl. at Ex. C at 132:11-133:6; Remore Decl. at Ex. E at 28:23-29:23).

40. The images provided to GHM and/or the properties did not contain any markings or notifications indicating that the copyrights in the images were owned by Ms. Lee or the Singapore Wave Entities or that they were not to be used without authorization from Ms. Lee or the Singapore Wave Entities. (Remore Decl. at Ex. C at 138:21-139:1).

41. After Ms. Lee and/or the Singapore Wave Entities provided the photographs to GHM and the hotels, she and/or they never indicated to GHM or the hotels that there were limitations on the use of the photographs that were contained on the CD-ROMs. (Remore Decl. at Ex. E at 10-14).

42. The Singapore Wave Entities did not separately invoice GHM or the hotels for individual license fees for the photograph used in connection with marketing collateral ordered by GHM or the hotels. (Remore Decl. at Ex. C at 135:14-16).

43. There is nothing in writing indicating that GHM or the properties were ever charged license fees for the use of the photographs. (Remore Decl. at Ex. C at 135:14-136:14).

44. Ms. Lee never notified GHM that she objected to the use of her photographs or photographs owned by the Singapore Wave Entities or Plaintiff that she saw on their website until the institution of this lawsuit. (Remore Decl. at Ex. C at 108:13-17; Remore Decl. at Ex. B at Nos. 263-281).

45. Ms. Lee was aware as early as 2002 that her photographs were being used on a website that neither Ms. Lee nor the Singapore Wave Entities created and did not notify GHM that she objected to the use of the photographs in that way. (Remore Decl. at Ex. C at 105:24-108:17).

46. Ms. Lee was aware as early as 2006 that certain of her photographs were being provided to third parties, such as Interior Design Magazine, American Airlines and Conde Nast Traveler and did not object. (Remore Decl. at Exs. G & L).

**VI. NEITHER THE UNITED STATES NOR THE STATE OF NEW YORK HAVE SUBSTANTIAL TIES TO THE PARTIES NAMED IN THIS ACTION, THE EVENTS GIVING RISE TO PLAINTIFF'S CLAIMS, OR THE PROPERTY THAT IS THE SUBJECT OF THIS ACTION.**

47. The photographs that the Plaintiff alleges were infringed in this action were taken in Italy, India, Oman, Vietman, Thaland, Malaysia, Indonesia, Taiwan, Singapore, the Bahamas and Florida. (Complaint at ¶10).

## VII. AT LEAST ELEVEN OF THE REGISTRATIONS AT ISSUE IN THIS ACTION, COVERING OVER 2,300 PHOTOGRAPHS, WERE ISSUED MORE THAN FIVE YEARS AFTER THE FIRST PUBLICATION OF THE WORKS CONTAINED THEREIN.

48. A total of seventeen copyright registrations, listed below, are claimed in the instant lawsuit, covering over 3000 photographs in total (hereinafter, collectively, the "Registrations"):

   i. VAu 1-055-458, titled The Wave Design Pte. Ltd. Unpublished photographs 2005 (C) setai429 - setai803 (hereinafter "The Wave Design Unpublished 2005(C)");

   ii. VAu 1-055-459, titled The Wave Design Pte. Ltd. Unpublished photographs 2005 (D) setai960 - setai1179 (hereinafter "The Wave Design Unpublished 2005(D)");

   iii. VAu 1-057-927, titled The Wave Pte. Unpublished setai 182 (hereinafter "The Wave Pte. Unpublished");

   iv. VAu 1-060-180, titled The Wave Design Pte. Ltd. unpublished setai0183; 0184 (hereinafter "The Wave Design Unpublished 180");

   v. VAu 1-060-182, titled Wave-s unpublished setai959 (hereinafter "Wave-S Unpublished");

   vi. VA 1-432-324, titled Wave-s Photographs 2001 (hereinafter "Wave-S 2001");

   vii. VA 1-432-325, titled Wave-s Photographs 2002 (hereinafter "Wave-S 2002");

viii. VA 1-432-326, titled The Wave Design Pte. Ltd. Photographs 2007 (A) (hereinafter "The Wave Design 2007(A)");

ix. VA 1-432-327, titled The Wave Design Pte. Ltd. Photographs 2007 (B) (hereinafter "The Wave Design 2007(B)");

x. VA 1-432-328, Titled Wave-s Photographs 2003 (hereinafter "Wave-S 2003");

xi. VA 1-432-329, titled Wave-s Photographs 2004 (hereinafter "Wave-S 2004");

xii. VA 1-432-330, titled The Wave Design Pte. Ltd. Photographs 2006 (hereinafter "The Wave Design 2006");

xiii. VA 1-432-331, titled The Wave Pte. Ltd. Photographs 2005 (A) (hereinafter "The Wave Pte. 2005(A)";

xiv. VA 1-432-332, titled The Wave Design Pte. Ltd. Photographs 2005 (hereinafter "The Wave Design 2005");

xv. VA 1-432-336, titled Wave-s Photographs 2002 (B) (hereinafter "Wave-S 2002(B)");

xvi. VA 1-758-524, titled Wave-s Photographs 2004 (B) (hereinafter "Wave-S 2004(B)"); and

xvii. VA 1-765-854, titled The Wave Design Pte. Ltd. published legian 121 (hereinafter "The Wave Design Legian 121").

(Complaint at ¶77; Remore Decl. at Ex. S).

49. The Wave Design Unpublished 2005(C) was registered with the United States Copyright Office on February 18, 2011 and covers 375 photographs all claiming a date of creation of 2005. (Complaint at ¶77; Remore Decl. at Ex. S).

50. The Wave Design Unpublished 2005(D) was registered with the United States Copyright Office on February 18, 2011 and covers 375 photographs all claiming a date of creation of 2005. (Complaint at ¶77; Remore Decl. at Ex. S).

51. Wave-S Unpublished was registered with the United States Copyright Office Remore December 30, 2010 and covers 1 photograph claiming a date of creation of 2004. (Complaint at ¶77; Remore Decl. at Ex. S).

52. Wave-S 2001 was registered with the United States Copyright Office on December 28, 2010 and covers 67 photographs all claiming a date of first publication of 2001. (Complaint at ¶77; Remore Decl. at Ex. S).

53. Wave-S 2002 was registered with the United States Copyright Office on December 28, 2010 and covers 183 photographs all claiming a date of first publication of 2002. (Complaint at ¶77; Remore Decl. at Ex. S).

54. Wave-S 2003 was registered with the United States Copyright Office on December 29, 2010 and covers 139 photographs all claiming dates of first publication between March 18 and November 3, 2003. (Complaint at ¶77; Remore Decl. at Ex. S).

55. Wave-S 2004 was registered with the United States Copyright Office on December 29, 2010 and covers 462 photographs all claiming dates of first publication between March 12 and October 20, 2004. (Complaint at ¶77; Remore Decl. at Ex. S).

56. The Wave Pte. 2005(A) was registered with the United States Copyright Office on December 30, 2010 and cover 327 photographs all claiming dates of first

publication between January 18 and June 15, 2005. (Complaint at ¶77; Remore Decl. at Ex. S).

57. The Wave Design 2005 was registered with the United States Copyright Office on December 30, 2010 and covers 394 photographs all claiming dates of first publication between July 6 and October 8, 2005. (Complaint at ¶77; Remore Decl. at Ex. S

58. Wave-S 2002(B) was registered with the United States Copyright Office on January 5, 2011 and covers 13 photographs all claiming a date of first publication of July 12, 2002. (Complaint at ¶77; Remore Decl. at Ex. S).

59. Wave-S 2004(B) was registered with the United States Copyright Office on February 18, 2011 and covers 14 photographs all claiming a date of first publication of May 30, 2004. (Complaint at ¶77; Remore Decl. at Ex. S).

**VIII. THERE ARE ERRORS IN THE CHAIN OF TITLE TO AT LEAST NINE OF THE SEVENTEEN REGISTRATIONS THAT, EVEN IF THEY WERE PROPERLY CORRECTED WITH THE UNITED STATES COPYRIGHT OFFICE, WERE NOT CORRECTED UNTIL OVER TWENTY MONTHS AFTER PLAINTIFF FILED ITS COMPLAINT.**

60. Wave-S ceased doing business prior to August 1, 2008. (Remore Decl. at Ex. B at Nos. 16-21, 118).

61. Copyright registration numbers VA 1-432-324 and VA 1-432-325 have effective dates of registration of December 28, 2010 and, when they were filed, listed "Wave-s employer for hire of Masano Kawana" as the Author and "WAVE-S" as the claimant. (Complaint at ¶77; Remore Decl. at Ex. S; Remore Decl. at Ex. B at Nos. 70, 73, 83, 86).

62. Copyright registration number VA 1-432-329 has an effective date of registration of December 29, 2010 and, when it was filed, listed "Wave-S" as the author and copyright claimant. (Complaint at ¶77; Remore Decl. at Ex. S; Remore Decl. at Ex. B at Nos. 42, 45).

63. Copyright registration number VA 1-432-328 has an effective date of registration of December 29, 2010 and, when it was filed, listed Wave-S as the author as an employer for hire of Masano Kawana and "Wave-S" as the copyright claimant. (Complaint at ¶77; Remore Decl. at Ex. S; Remore Decl. at Ex. B at Nos. 56, 59).

64. Copyright registration number VAu 1-060-182 has an effective date of registration of December 30, 2010 and, when it was filed, listed "Wave-S" as the author and the copyright claimant. (Complaint at ¶77; Remore Decl. at Ex. S; Remore Decl. at Ex. B at Nos. 28, 31).

65. Copyright registration number VA 1-432-336 has an effective date of registration of January 1, 2011 and, when it was filed, listed "Wave-S" as the author and the copyright claimant. (Complaint at ¶77; Remore Decl. at Ex. S; Remore Decl. at Ex. B at Nos. 96, 97).

66. Copyright registration number VA 1-432-524 has an effective date of registration of February 18, 2011 and, when it was filed, listed "Wave-S" as the author and the copyright claimant. (Complaint at ¶77; Remore Decl. at Ex. S; Remore Decl. at Ex. B at Nos. 105, 106).

67. On the dates that the applications that matured into copyright registration numbers VA 1-432-324, VA 1-432-325, VA 1-432-329, VA 1-432-328, VAu 1-060-182, VA 1-432-336 and VA 1-432-524 were filed with the United States Copyright Office,

Wave-S was no longer doing business in Singapore or anywhere in the world, had been formally dissolved and stricken off from the register under section 344 of the companies Act in Singapore, had no assets, and did not own any rights in any photographs, including the photographs claimed in the registrations. (Remore Decl. at Ex. B at Nos. 16-27, 32-33, 40-41, 46-47, 54-55, 61, 64-65, 74-75, 82, 87-88, 95, 98-99, 107-108).

68. The Wave Pte. Ltd. stopped doing business as of August 1, 2008 and as of that date had no inclination to continue operating the business. (Remore Decl. at Ex. C at 44;15-45:12; Remore Decl. at Ex. B at Nos. 115-116, 120).

69. Copyright registration numbers VA 1-432-331 and VAu 1-057-927 have effective dates of registration of December 30, 2010 and, when they were filed, listed "The Wave Pte. Ltd." as the author and the copyright claimant. (Complaint at ¶77; Remore Decl. at Ex. S; Remore Decl. at Ex. B at Nos. 145, 148, 159, 162).

70. On the dates that the applications that matured into copyright registration numbers VA 1-432-331 and VAu 1-057-927 were filed with the United States Copyright Office, The Wave Pte. Ltd. was no longer doing business in Singapore or anywhere in the world, had been formally dissolved and stricken off from the register under section 344 of the companies Act in Singapore, had no assets, and did not own any rights in any photographs, including the photographs claimed in the registrations. (Remore Decl. at Ex. B at Nos. 120-125, 127-134, 149-150, 157-158, 163-164, 171-172).

71. Wave-S, as the assignor, and The Wave Design Pte. Ltd., as the assignee, executed an assignment agreement that listed an effective date of February 15, 2007, which contains language stating that Wave-S's right title and interest in and to the copyright in the following works was assigned to The Wave Design Pte. Ltd.: setai001-

setai-041; setai337-setai350; setai959; muscat001-muscat029; muscat030-muscat148; leela001-leela160; chiangmai001-chiangmai075; phuket001-phuket041; phuket042; legianclub001-legianclub015; legianclub016; legianclub017-legianclub022; legianclub023-legianclub034; legian001-legian006; legian007-legian025; legian026-legian065; legian122; chediclub001-chediclub140; chediclub141; lalu001-lalu026; lalu027-lalu158 (hereinafter the "2007 Wave-S to The Wave Design Assignment"). (Remore Decl. at Ex. B at Nos. 6-8; Remore Decl. at Ex. M).

72. The works listed in the 2007 Wave-S to The Wave Design Assignment are included in copyright registration numbers VA 1-432-324, VA 1-432-325, VA 1-432-329, VA 1-432-328, VAu 1-060-182, VA 1-432-336 and VA 1-432-524. (Remore Decl. at Ex. B at Nos. 29-30, 43-44, 57-58, 71-72, 83-84).

73. The 2007 Wave-S to The Wave Design Assignment was not drafted or signed in 2007 as dated, but instead was drafted and signed for the first time in 2012. (Remore Decl. at Ex. B. at Nos. 9-13).

74. Wave-S, as the assignor, and Plaintiff, as the assignee, executed an assignment agreement that contains language stating that Wave-S's right title and interest in and to copyright registration numbers VA 1-432-324, VA 1-432-325, VA 1-432-329, VA 1-432-328, VAu 1-060-182, VA 1-432-336 and VA 1-432-524 was assigned to Plaintiff (hereinafter the "2011 Wave-S to Plaintiff Assignment"). (Remore Decl. at Ex. O; Remore Decl. at Ex. B at Nos. 173-174).

75. The 2011 Wave-S to Plaintiff Assignment was signed by Ms. Lee on behalf of Wave-S as the assignor on November 11, 2011, when Wave-S was no longer in

business and had been formally stricken off from the register under section 344 of the companies Act in Singapore. (Remore Decl. at Ex. B at Nos. 175-177).

76. The Wave Pte. Ltd., as the assignor, and The Wave Studio Pte. Ltd., as the assignee, executed an assignment agreement that listed an effective date of July 28, 2008, which contains language stating that The Wave Pte. Ltd.'s right title and interest in and to the copyright in the following works was assigned to The Wave Studio Pte. Ltd.: setai042-setai181; setai182; datai001-datai104; andaman001-andaman066; seahst001-seahst017 (hereinafter the "2008 Wave Pte. to The Wave Studio Pte. Assignment"). (Remore Decl. at Ex. N; Remore Decl. at Ex. B at Nos. 135-137).

77. The works listed in the 2008 Wave Pte. to The Wave Studio Pte. Assignment are included in copyright registration numbers VA 1-432-331 and VAu 1-057-927. (Remore Decl. at Ex. B at Nos. 145-146, 160-161).

78. The 2008 Wave Pte. to The Wave Studio Pte. Assignment was not drafted or signed in 2008 as dated, but instead was drafted and signed for the first time in 2012. (Remore Decl. at Ex. B. at Nos. 138-142).

79. The Wave Pte. Ltd., as the assignor, and Plaintiff, as the assignee, executed an assignment agreement that contains language stating that The Wave Pte. Ltd.'s right title and interest in and to copyright registration numbers VA 1-432-331 and VAu 1-057-927 was assigned to Plaintiff (hereinafter the "2011 Wave Pte. to Plaintiff Assignment"). (Remore Decl. at Ex. P; Remore Decl. at Ex. B at Nos. 182-183).

80. The 2011 Wave Pte. to Plaintiff Assignment was signed by Ms. Lee on behalf of The Wave Pte. Ltd. as the assignor on November 11, 2011, when The Wave Pte. Ltd. was no longer in business and had been formally stricken off from the register

under section 344 of the companies Act in Singapore. (Remore Decl. at Ex. B at Nos. 184-186).

81. On April 22, 2013, a document titled "Declaration of Dissolution of Wave-S and Transfer of copyrights to Lee Kar Yin, Declaration of Dissolution of the Wave Pte. Ltd. and Transfer of Copyrights to Lee Kar Yin, Declaration of Change of Name of the Wave Design Pte. Ltd. To the Wave Studio Pte. Ltd., and The Transfer of All Copyrights and Nunc Pro Tunc Assignment of Copyrights to The Wave Studio, LLC" was recorded in the United States Copyright Office (hereinafter "The 2013 Declaration"). (Remore Decl. at Ex. Q; Remore Decl. at Ex. B at No. 191).

82. The 2013 Declaration was signed by Lee Kar Yin as the owner on behalf of The Wave Pte. Ltd. on January 7, 2013, when The Wave Pte. Ltd. was no longer in business and had been formally stricken off from the register under section 344 of the companies Act in Singapore. (Remore Decl. at Ex. B at Nos. 192-194).

83. The 2013 Declaration was signed by Lee Kar Yin as the owner on behalf of Wave-S on January 7, 2013, when Wave-S was no longer in business and had been formally stricken off from the register under section 344 of the companies Act in Singapore. (Remore Decl. at Ex. B at Nos. 196-198).

84. Plaintiff recognized what it claims to be errors in the 2007 Wave-S to The Wave Design Assignment, the 2008 Wave Pte. to The Wave Studio Pte. Assignment, 2011 Wave-S to Plaintiff Assignment, the 2011 Wave Pte. to Plaintiff Assignment and the 2013 Declaration as a direct result of questions asked by GHM's counsel at Plaintiff's first deposition that took place on May 21, 2015. (Remore Decl. at Ex. D at 330:17-331:7).

17

85. Thereafter, on September 4, 2015, a document titled "Declaration of Lee Kar Yin and Nunc Pro Tunc Copyright Assignments to the Wave Studio" was recorded in the United States Copyright Office (hereinafter the "2015 Declaration"). (Remore Decl. at Ex. R; Remore Decl. at Ex. B at No. 200).

86. The 2015 Declaration states that, "upon information and belief" the 2007 Wave-S to The Wave Design Assignment, the 2008 Wave Pte. to The Wave Studio Pte. Assignment, 2011 Wave-S to Plaintiff Assignment and the 2011 Wave Pte. to Plaintiff Assignment were "made in error" and are "*void ab initio.*" (Remore Decl. at Ex. R).

CHIESA SHAHINIAN & GIANTOMASI PC
Attorneys for Defendant
General Hotel Management Ltd.

Dated: February 12, 2016

By: _____
HOWARD J. SCHWARTZ