**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

THE WAVE STUDIO, LLC, a New York
Limited Liability Corporation,

                Plaintiff,

      v.

GENERAL HOTEL MANAGEMENT, et al.,

                Defendants.

**CASE NO. 7:13-cv-09239-CS-PED**

*Document Filed Electronically*

Oral Argument Requested

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF THE WAVE STUDIO, LLC'S
CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
SUMMARY JUDGEMENT MOTION OF DEFENDANT GENERAL HOTEL
MANAGEMENT**

---

**COBALT LLP**
918 Parker Street, Bldg. A21
Berkeley, CA 94710
(510) 841-9800
*Attorneys for Plaintiff*
*The Wave Studio, LLC*

On the Brief:
Vijay K. Toke
Nate A. Garhart

## TABLE OF CONTENTS

**Page**

Introduction ...................................................................................................................1

Factual Background ........................................................................................................2

Summary Judgment Standard ......................................................................................10

Argument .....................................................................................................................11

   A. This Case Is Properly Before This Court ..............................................................11

     1. This Court Has Personal Jurisdiction Over GHM ............................................11

     2. This Court Is Not An Inconvenient Forum ......................................................13

        a) GHM's over two-year delay in claiming *forum non conveniens* is
        dispositive ...................................................................................................14

        b) Plaintiff's choice of forum is entitled to significant deference .............15

        c) Singapore is not an adequate alternative forum....................................16

        d) The private factors favor Plaintiff's chosen forum................................17

        e) The public factors favor Plaintiff's chosen forum .................................18

     3.The Hotels Are Not Indispensable Parties .......................................................19

   B. Plaintiff Is the Valid Owner Of The Copyrights To The Photographs ........................22

     1. Under Both U.S. And Singapore Law, The Wave Entities Were The Owners Of
     The Copyrights To The Photographs Prior To Their Valid Assignment Of Those
     Rights To Plaintiff ...............................................................................................22

        a) Under Singapore copyright law, the Wave Entities owned the
        copyrights to the Photographs prior to assignment to Plaintiff................23

        b) The Wave Entities owned the copyrights to the Photographs under U.S.
        law ..............................................................................................................29

        c) U.S. law applies as to copyright ownership...........................................31

**TABLE OF CONTENTS (cont'd)**

2. Plaintiff's Chain of Title Has Been Perfected Under Singapore and U.S. Law ......................................................................................................32

    a) The case law cited by GHM regarding later-filed assignments is inapposite and actually supports Plaintiff's standing................................33

3. GHM's Challenges To Plaintiff's Copyright Registrations Do Not Affect Plaintiff's Ownership Rights ...............................................................34

C. There Is No Basis For GHM's Claim That It An Implied License To Freely Distribute The Photographs To Third Parties Or To Have Those Third Parties Further Distribute The Photographs ......................................................................................36

Conclusion ..........................................................................................................40

## TABLE OF AUTHORITIES

**Cases**                                                                                               **Page**

*Bassett v. Mashantucket Pequot Tribe,*
204 F.3d 343, 358 (2d. Cir. 2000)................................................................................20,21

*Byrne v. British Broadcasting Corp.,*
131 F.Supp.2d 229, 238 (S.D.N.Y. 2001) ..........................................................................19

*CJ Products LLC v. Snuggly Plushes LLC,*
809 F.Supp.2d 127 (E.D.N.Y. 2011) ...................................................................................30

*Costello Publishing Co. v. Rotelle,*
670 F.2d 1035, 1043 (D.C. Cir. 1981)..................................................................................21

*Datastorm Technologies, Inc. v. Excalibur Communications, Inc.,*
888 F.Supp. 112 (N.D.Cal.1995) ..........................................................................................35

*Effects Assocs., Inc. v. Cohen,*
908 F.2d 555, 558 (9th Cir. 1990) ........................................................................................36

*Frink America,*
961 F.Supp. at 406 ...........................................................................................................20,21

*Genpharm Inc. v. Pliva-Lachema a.s.,*
361 F.Supp.2d 49, 59 (E.D.N.Y. 2005) ................................................................................14

*Graham v. James,*
144 F.3d 229 (2d Cir. 1998)..................................................................................................39

*Hamilton v. Atlas Turner, Inc.,*
197 F.3d 58, 60 (2d Cir. 1999)..............................................................................................12

*Harris v. Emus Records Corp.,*
734 F.2d 1329, 1335 (9th Cir. 1984) ....................................................................................35

*In re Complaint of Rationis Enters. Inc.*, of Panama,
210 F.Supp.2d 421, (S.D.N.Y. 2002) ...................................................................................12

*In re Hellas Telecommunications (Luxembourg) II SCA,*
535 B.R. 543, (S.D.N.Y. 2015) ........................................................................................14,16

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*In re Peregrine Entertainment, Ltd.,*
16 U.S.P.Q.2d 1017 (C.D.Cal.1990) ...................................................................................34

*Irragori v. United Techs. Corp.,*
274 F.3d 65, 74-75 (2d Cir. 2001) .................................................................13,14,15,16

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.,*
153 F.3d 82 (2d Cir. 1998) ...........................................................................................29,30

*Jacobs v. Felix Bloch Erben Verlag Fur Buhne Film Und Funk KG,*
160 F.Supp.2d 722, 731-32 (S.D.N.Y. 2001) ........................................................12,13

*Keane Dealer Servs., Inc. v. Harts,*
968 F.Supp.944, 947 (S.D.N.Y. 1997) ......................................................................39

*Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah,*
184 F.Supp.2d 277, 301 (S.D.N.Y. 2001) ................................................................17

*Marvel Characters, Inc. v. Kirby,*
726 F.3d 119, 134 (2d Cir. 2013) .............................................................................21,22

*Owens-Illinois, Inc. v. Meade,*
 1999186 F.3d 43544 Fed.R.Serv.3d 502 ..............................................................20

*Psihoyos v. Pearson Educ., Inc.,*
855 F.Supp.2d 103 (S.D.N.Y. 2012) .........................................................................39

*PT United Can Co. Ltd. v. Crown Cork & Seal Co.,*
138 F.3d 65, 73 (2d Cir. 1998) .................................................................................16

*R. Maganlal & Co. v. M.G. Chem. Co.,*
942 F.2d 164, 167 (2d Cir. 1991).............................................................................13

*RiGroup LLC v. Trefonisco Mgmt. Ltd.,*
949 F.Supp.2d 546 (S.D.N.Y. 2013) ........................................................................15

*Seoul Broadcasting System Intern., Inc. v. Young Min Ro,*
784 F.Supp.2d 611, 614-15 (E.D.Va. 2011) ............................................................30

*SHL Imaging, Inc. v. Artisan House, Inc,*
117 F.Supp.2d 301, 317 (S.D.N.Y. 2000) ...........................................................36,37,38

# TABLE OF AUTHORITIES

**Cases**                                                                                                   **Page**

*SmithKline Beecham Healthcare, L.P. v. Watson Pharms. Inc.,*
211 F.3d 21, 25 (2d Cir. 2000) .......................................................................36

*State of Georgia v. Pennsylvania R. Co.,*
324 U.S. 439, 463 (1945) ...........................................................................20,21

*Urantia Foundation v. Maaherra,*
114 F.3d 955, 963 (9th Cir.1997) ...................................................................35

*Utopia Provider Sys., Inc. v. Pro–Med Clinical Sys., L.L.C.,*
2008 WL 4938420, at *1 (S.D.Fla. Nov. 18, 2008) ......................................34

*Van Cleef & Arpels Logistics, S.A. v. Landau,*
547 F.Supp.2d 356, 360 (S.D.N.Y. 2008) ....................................................30

*Wilson v. Eckhaus,*
349 Fed.Appx. 649, 650 (2d Cir. 2009) .........................................................13

*Wiwa v. Royal Dutch Petroleum Co.,*
226 F.3d 88, 100 (2d Cir. 2000) ................................................................13,16

*World Thrust Films Inc. v. Int'l Family Entm't Inc.
1996* WL 605957, at *4 (S.D.Fla. Aug. 1, 1996) ...........................................34

**Statutes**

17 U.S.C. § 201.........................................................................................31,33

17 U.S.C. § 410.........................................................................................30,36

17 U.S.C. § 411 .............................................................................................34

Singapore Copyright Act Section 30(5)................................................... *passim*

## TABLE OF AUTHORITIES

**Rules**                                                                                                          **Page**

Federal Rule of Civil Procedure 12(h).............................................................................................12

Federal Rule of Civil Procedure 19(a)........................................................................................19,20

Federal Rule of Civil Procedure 19(b)............................................................................................19

N.Y. C.P.L.R. Section 301...............................................................................................................13

## I.    INTRODUCTION

The only issue currently before the court on the parties' cross-motions for summary judgment is whether Plaintiff has established ownership of valid copyrights to the photographs at issue in this case. The undisputed material facts establish the answer is yes. Contrary to the assertions of Defendant General Hotel Management ("GHM"), this is a straightforward, classic copyright infringement case.

At this point, however, the only issue this Court need decide is whether Plaintiff is the threshold issue of copyright ownership. Given the protectability of the Photographs is not in dispute, the Court need only determine whether Plaintiff owns the copyrights to the Photographs. Notwithstanding GHM's attempts at misdirection to make this case look more complex than it is, when stripped of all of the white noise, the undisputed material facts of this case establish Plaintiff's ownership of the Photographs' copyright and set forth a straightforward claim for copyright infringement against all Defendants.

As a secondary matter, in its motion GHM claims, well over two years into this litigation, that it is not subject to personal jurisdiction in this District. This "hail Mary" claim is untimely and fails on its merits. GHM has an active sales office targeting New York and other American consumers in this District, and it has litigated this case vigorously for over two years. Any personal jurisdictional challenges, therefore, have long been forfeited. (Chng. Depo., 98:24 to 102:13, Ex. D to Toke Decl.)

Likewise, GHM's *forum non conveniens* challenge fails both due to delay and on the merits. Contrary to GHM's argument, this Court must consider *forum non conveniens* as to all the defendants, not just GHM. With nearly 80 Defendants located in the U.S. (and many in New York), GHM ignores the unavoidable fact that this case over U.S. copyright infringements

1

simply cannot be litigated in Singapore (or anywhere else outside the United States for that matter) because the near entirety of the Defendants are not subject to service of process or jurisdiction there.  Further, the multi-factor test for *forum non conveniens* strongly supports denial of GHM's motion.

Finally, GHM makes an unsupported argument that the hotels it managed (and which were the subject matter of the Photographs) (the "Hotels") are indispensable parties to this litigation.  Not only does this argument improperly assume the hotels own the copyrights to the photographs (which is not supported), but the Hotels would be deemed joint tortfeasors with GHM, which are never indispensable parties.

This Court should therefore deny GHM's motion for summary judgment in its entirety and grant Plaintiff's motion for summary judgment and rule that it is the owner of valid copyrights in the Photographs.

## II.     FACTUAL BACKGROUND

### *Plaintiff The Wave Studio LLC*

Plaintiff, The Wave Studio, LLC, is a limited liability company organized under the laws of the State of New York, with its principal place of business at One Barker Avenue, #542, White Plains, New York 10601. (Declaration of Abigail J. Remore, dated February 12, 2016 ("Remore Decl.") at Ex. A ("FAC") at ¶ 8.)  Plaintiff is a business entity operated by photographer Lee Kar Yin, also known as Jr Lee, a Malaysian citizen currently domiciled in Singapore. (FAC at ¶ 8.)  Ms. Lee creates original works, including photographic works, for businesses worldwide using her original works and retains ownership of all rights, title, and interest in and to the works. (FAC at ¶ 8.)  The Wave Studio, LLC was formed to hold, manage, and control the U.S. intellectual property rights to these works, including, but not limited to,

several U.S. copyright registrations. (FAC at ¶ 8.)

### Ms. Lee's history with Defendant GHM

From approximately 1995 through 2007, Ms. Lee was asked to create various marketing collaterals (e.g., brochures, flyers, banners, etc.) for various properties under the management of GHM. (Declaration of Lee Kar Yin, filed herewith, dated March 14, 2016 ("Lee Decl.") at ¶ 7.) Through various entities she owned and described in greater detail below (the "Wave Entities"), Ms. Lee produced such collaterals in response to each order placed over this period of time. (Lee Decl. at ¶¶ 7-8.) The Wave Entities were the exclusive vendor hired to create the entirety of the branding and related marketing collaterals and guest experience for GHM-managed hotels, including brochures, banners, posters, flyers, press-kits, folders, magazine and press-ad-to-paper carriers, cake packaging, wine and decanter labels, amenities kits (e.g., toothbrush, shower cap, toiletry boxes), aprons, beach towels, keycards and holders, greeting cards, welcome cards, welcome back cards, postcards and packaging, location maps, umbrellas, matchboxes, notepads, pencils, drink coasters, property signages (e.g., main hotel signage, room nos. carpark, restaurant, library, the club, male and female toilets, fire escapes, lifts, lift buttons), and decals for hotel-owned vehicles (collectively, "Marketing Collateral"). (Lee Decl. at ¶ 7; Declaration of Vijay K. Toke, filed herewith, dated March 14, 2016 ("Toke Decl.") at Ex. C ("Ohletz Depo") at 14:12-15:8; 33:3-21; 45:14-46:16). Orders were most typically placed by GHM on behalf of the Hotels. (Lee Decl. at ¶ 7.)

Most orders placed by GHM over the years were for Marketing Collateral that did not require any photographs. (Lee Decl. at ¶ 8.) In order to fill those orders placed by GHM that did require photographic images, Ms. Lee conducted photo shoots at each of the various Hotels because GHM did not have adequate library of images to complete the requested Marketing

3

Collateral. (Lee Decl. at ¶ 8; Toke Decl., Ex. A ("Lee May Depo") at 88:22-89:5.) As is

customary in the industry, Ms. Lee charged for her time and expenses for each such photoshoot.

(Lee Decl. at ¶ 9; see Exemplar Production Estimate, Ex. E to Lee Decl.) It was from these

photo shoots that the Photographs at issue were produced.

### *The Relevant Contractual Documents*

For nearly thirteen years, GHM and the Hotels worked with Ms. Lee and the Wave

Entities in the same manner: (1) a request for work was made; (2) the Wave Entities sent a

production estimate (or revised estimates if negotiations continued), (3) terms were agreed to as

reflected in the final production estimate; (4) the work was completed by the Wave Entities; and

(5) the Hotels paid for the work (Ohletz Depo at 89:8-90:20, attached as Ex. C to Toke Decl.;

Lee Decl. ¶ 11; see exemplar Production Estimates, Ex. E to Lee Decl.) Each production

estimate was reviewed by the respective Hotel and GHM and then approved. (Ohletz Depo at

69:22-70:5, attached as Ex. C to Toke Decl.) GHM's Vice President, Ralf Ohletz, reviewed each

such production estimate and was aware of the terms in these production estimates under which

the Wave Entities would fulfill orders placed with it. (Ohletz Depo at 69:22-70:5, attached as

Ex. C to Toke Decl.)

These production estimates, all no more than a page or two in length, set forth the nature

of each order and contained a handful of bullet-pointed terms, including the following two key

terms:

*"We reserve the intellectual property copyright to all designs/soft*
*copies/material/photography/projects undertaken."*

and

*"We will proceed on the basis that this estimate is wholly acceptable unless advised to the*
*contrary in writing before the work is undertaken."*

(Lee Decl. Ex. E; Ohletz Depo at 90:21-91:21, attached as Ex. C to Toke Decl.)

The Wave Entities contracted with a cameraman, Masano Kawana, to assist in taking the Photographs. (Lee Decl. at ¶ 9; Lee May Depo at 168:4-23; Ohletz Depo at 17:13-24; 22:11-23:13.) As the creative director of the Wave Entities, Ms. Lee decided all aspects of each Photograph—i.e., creative direction/concept, lighting, subject matter, angle, styling, shutter speed, exposure, etc.—and directed Mr. Kawana to capture the image when in her determination the image was properly framed and set. (Lee Decl. at ¶ 5; Lee May Depo at 177:16-179:22). The Wave Entities entered into agreements with Mr. Kawana that granted the copyrights for the Photographs with the Wave Entities. (Lee Decl. at Ex. D.) As a belt-and-suspenders approach, Mr. Kawana also executed a confirmatory assignment in 2013 confirming that at the time of the creation of the Photographs, it was the understanding and intention of Mr. Kawana that the copyrights were to be owned by Ms. Lee (since she was the owner of the Wave Entities).[1] (See Ex. M to Exhibit R of Remore Decl.)

After each photoshoot, Ms. Lee would complete post-production work on the raw Photographs obtained from the shoot (roughly 7 hours per photograph), and the edited Photographs were subsequently provided to the respective Hotel and to GHM on a CD-ROM to make reordering of marketing collaterals requiring photographs easier on a going forward basis. (Lee Decl. at ¶¶ 13, 19; Lee May Depo, Ex. A to Toke Decl. at 131:22-133.16; 138:14-20.) Each of these "proprietary" libraries of Photographs—as GHM's Director and head of legal labeled them in an email to Ms. Lee—provided the Hotels and GHM with a library of photographs from which they could select images for subsequent orders. (Lee Decl. at ¶ 13; Lee May Depo at 133:11-17; Lee Decl. at Ex. F.)

---

[1] This assignment was recorded with the U.S. Copyright Office on May 20, 2015.

The Wave Entities were paid approximately S$250,000 (Singapore Dollars) for the Photography services provided over the ten-year period they worked with the GHM-managed Hotels. (Declaration of Stanley Lai, dated February 12, 2016 ("Lai Decl.") at ¶ 6; Lee Decl. at ¶ 19; Remore Decl. at ¶ 11.) Over half of this amount was hard costs of travel, expenses, and wages. (Lee Decl. at ¶ 19.) Therefore, the Wave Entities received only about S$125,000 for over 2,000 published Photographs. (Lee Decl. at ¶ 19.) Each Photograph took an average of seven hours of post-production work to complete. (Lee Decl. at ¶ 19.). Therefore, at an appropriate exchange rate for the period, the Wave Entities were paid a mere US$45per Photograph for both the photo shoot and post-production time.  (Lee Decl. at ¶ 19.)

Between 2006 and 2007, while the GHM-Wave Entities exclusive business dealings were still ongoing, GHM informed Ms. Lee of promotional placements of Wave-owned Photographs in a few magazines (such as *Interior Design Magazine*). (Remore Decl. at Exs. G and L; Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("GHM MPA") at pg. 31.) Given these were limited placements and typically only involved one or two Photographs, Ms. Lee approved such uses of the Photographs without need for a license fee and provided the Wave Entities' required photo attribution. (Lee Decl. at ¶ 20.)

### *GHM's and the other Defendants' infringement of Plaintiff's copyrights*

Between 2007 and 2008, without any formal notice, GHM stopped working with Ms. Lee and the Wave Entities. At some point thereafter, unbeknownst to Ms. Lee, and without notification or approval, GHM disseminated the digital Photographs to numerous third parties and, further, began using them on a new GHM website not created by a Wave Entity or Ms. Lee. (Lee Dec., ¶ 21; Amex letter brief to Court dated July 7, 2015, ECF Dkt. No. 43, attached as Ex. E to Toke Decl.). In turn, some of these third parties, many of whom are defendants this action,

further disseminated the Photographs to other third parties.[2]  (See Amex letter brief to Court

dated July 7, 2015, ECF Dkt. No. 43, attached as Ex. E to Toke Decl.).  As a result of GHM's

significant and unauthorized widespread dissemination of the Photographs, the Photographs are

now displayed on numerous third party websites without Plaintiff's authorization or

compensation and continue to be seen daily by thousands of users.  (FAC at ¶ 112.)

### *The Ownership of the Copyrights to the Photographs In Singapore*

As previously noted, Ms. Lee operated her business under several Wave Entities. (Lee

Decl. at ¶¶ 2-6.)  They are as follows:

(1) Wave-S, a sole proprietorship formed under Singapore law on February 21, 1994 and

dissolved on February 21, 2007. (Lee Decl. at ¶ 2; Remore Decl. at Ex. R.)  Under Singapore

law, all assets of Wave-S automatically reverted to Ms. Lee, the sole proprietor of Wave-S as of

the date of dissolution (i.e., February 21, 2007). (Declaration of Gordon Ionwy David Llewelyn,

filed herewith, dated March 14, 2016 ("Llewelyn Decl.") at ¶ 76.)

(2) Wave Entity was The Wave Private Ltd., which was formed on February 8, 2002 and

dissolved on August 1, 2008. (Lee Decl. at ¶ 3; Exs. D and E to Corrective Assignment (Remore

Decl. at Ex. R.))  The Wave Private Ltd. was owned by Ms. Lee and a Singaporean citizen

named Chua Kiat Hong (Mr. Hong was an owner only nominally and as a favor because Ms. Lee

understood at the time that Singaporean corporations had to have at least one Singaporean citizen

as an owner). (Lee Decl. at ¶ 3; Exs. D and E to Corrective Assignment (Remore Decl. at Ex.

R.))  As part of a corporate meeting to dissolve the corporation on August 1, 2008, Wave Private

Ltd. assigned all assets, tangible and intangible, of the corporation to Ms. Lee. (Lee Decl. at ¶ 3;

Exs. D and E to Corrective Assignment (Remore Decl. at Ex. R.))  Therefore, as of August 1,

---

[2] Indeed, numerous defendants have sought indemnity from GHM for Photographs they received
and used without Plaintiff's authorization.  (Toke Decl. at Ex. F)

2008, Ms. Lee owned all of the assets previously held by The Wave Private Ltd. (Lee Decl. at ¶ 4; Exs. D and E to Corrective Assignment (Remore Decl. at Ex. R.); Llewelyn Decl. at ¶ 76.)

(3) Wave Entity was formed as The Wave Design Private Ltd. on July 1, 2005. (Lee Decl. at ¶ 5; Ex. F to Corrective Assignment (Remore Decl. at Ex. R.)) On July 27, 2007, The Wave Design Private Ltd. changed its name to The Wave Studio Private Ltd. (Lee Decl. at ¶ 5; Ex. G to Corrective Assignment (Remore Decl. at Ex. R.)) The Wave Studio Private Ltd. still exists and is in operation today. (Lee Decl. at ¶ 5) Ms. Lee was (and remains) the sole shareholder of The Wave Design Private Ltd. (now called The Wave Studio Private Ltd.). (Lee Decl. at ¶ 5; Ex. G to Corrective Assignment (Remore Decl. at Ex. R.))

Taken together, under Singapore law, as of August 1, 2008, the assets of Wave-S and Wave Private Ltd. were owned by Ms. Lee and the assets of The Wave Studio Private Ltd. (fka The Wave Design Private Ltd.) were owned by that entity. (Llewelyn Decl. at ¶¶ 76, 78; Lee Decl. at ¶¶ 4-5.) These assets comprised all of the copyrights to the Photographs. (Llewelyn Decl. at ¶¶ 76, 78; Lee Decl. at ¶ 2-6; Remore Decl., Ex. R.)

### *The Copyright Registrations*

The Wave Entities obtained copyright registrations from the United States Copyright Office for the Photographs (collectively and individually, "Copyrighted Works"). (Remore Decl. at Ex. A.) As explained below, all of the copyright registrations for the Photographs have been duly assigned to, and are now owned by, Plaintiff. (Lee Decl. at ¶ 10; Remore Decl. at Ex. R.)

### *The Assignments to Plaintiff The Wave Studio LLC*

On or about September 15, 2011, Ms. Lee formed Plaintiff The Wave Studio LLC for the purposes of enforcing the copyrights of the Wave Entities against U.S. infringements. (Lee May Depo at 18:22-21:2; FAC at ¶ 8.) Ms. Lee and the Wave Entities entered into a series of

8

assignments to effectuate this purpose. (Corrective Assignment, (Remore Decl. at Ex. R))  As part of that process, Ms. Lee executed a number of assignments in 2011:  (1) November 11, 2011 assignments by The Wave Private Ltd. and Wave-S to Plaintiff (the "2011 Wave-S and Wave Private Ltd. Assignments"); (2) An assignment from Wave-S to The Wave Studio Private Ltd., drafted in 2011 but backdated by Ms. Lee to 2007, and an assignment from The Wave Private Ltd. to The Wave Studio Private Ltd., drafted in 2011 but backdated by Ms. Lee to 2008 (collectively referred to as the "Erroneous Backdated Assignments); (3) A November 11, 2011 assignment from Ms. Lee to Plaintiff (the "Lee Catchall Assignment"); (4) A November 11, 2011 assignment from The Wave Design Private Ltd. (which by that time had changed its name to The Wave Studio Private Ltd.) to Plaintiff (the "Wave Design Assignment") (See Corrective Assignment (Remore Decl. at Ex. R.))

The 2011 Wave-S and Wave Private Ltd. Assignments, the Lee Catchall Assignment, and the Wave Design Assignment were recorded with the U.S. Copyright Office on or about November 15, 2011. (Exs. J, K, L to Corrective Assignment (Remore Decl. at Ex. R.)) During the course of this litigation, however, Plaintiff learned that the 2011 Wave-S and Wave Private Ltd. Assignments, as well as the Erroneous Backdated Assignments, were ineffective, and therefore void *ab initio*, because at the time they were created Wave-S and Wave Private Ltd. had been dissolved years prior and their assets already transferred to Ms. Lee by operation of Singapore law or corporate resolution. (Lee Decl. at ¶¶ 23-31; Toke Decl. at Ex. B ("Lee Sept. Depo") at 297:22 to 331:19.)

### *The Corrections to The Assignments*

Plaintiff determined that the Lee Catchall Assignment required clarification because, though it was a valid and effective assignment, it referenced the ineffective 2011 Wave-S and

9

Wave Private Ltd. Assignments. (Lee Decl. at ¶ 29.)  Plaintiff also learned that the Wave Design Assignment, while valid and effective, required clarification because it named the Assignor by its prior name, The Wave Design Private Ltd., instead of its then current name, The Wave Studio Private Ltd. (Lee Decl. at ¶ 29)  Plaintiff attended to those clarifications.

As is the appropriate course of action, Plaintiff created a Corrective Assignment setting forth this the foregoing chronology and clarifying the assignments (the "Corrective Assignment"). (Lee Decl. at ¶¶ 23-31; Lee Sept. Depo at 297:22 to 331:19; Corrective Assignment (Remore Decl. at Ex. R.))  The Corrective Assignment merely explained that the erroneous assignments were unnecessary and ineffective and corrected typographical errors in the Lee Catchall Assignment and the Wave Design Assignment in order to establish the chain of title was clear. (Lee Decl. at ¶ 29; Lee Sept. Depo at 297:22 to 331:19; Remore Decl. at Ex. R.)

In the process of preparing the Corrective Assignment, Plaintiff learned that the claimant in some of the copyright registrations for the Photographs inadvertently listed the incorrect claimant. (Lee Decl. at ¶ 32.)  Accordingly, contemporaneous to the recordation of the Corrective Assignment, Plaintiff filed corrections with the Copyright Office to correct these inadvertent errors for the record. (Lee Decl. at ¶ 32; Ex. I to Lee Decl.)  Thus, the Photographs are protected under U.S. copyright law and ownership is properly recorded.

## III.    SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty*

*Lobby*, 477 U.S. 242, 250 (1986).  The moving party has the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The substantive law determines which facts are material to the outcome of a particular litigation.  *Robinson v. Random House, Inc.*, 877 F.Supp. 830, 835 (S.D.N.Y. 1995)(citing *Anderson*, 477 U.S. at 250).  In determining whether summary judgment is appropriate, a court must resolve all ambiguities, and draw all reasonable inferences against the moving party.  *Robinson*, 877 F.Supp. at 835 (citing *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

If the moving party meets its initial burden, the burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. Proc. 56(e).  Only when it is apparent, however, that no rational finder of fact "could find in favor of the non-moving party because the evidence to support its case is so slight" should summary judgment be granted.  *Gallo v. Prudential Residential Services, Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir. 1994).

## IV.    ARGUMENT

### A.    This Case Is Properly Before This Court.

GHM raises two arguments against the jurisdiction of this Court:  lack of personal jurisdiction and *forum non conveniens*.  Both fail as a matter of law.

#### 1.    This Court Has Personal Jurisdiction Over GHM.

While GHM is subject to personal jurisdiction, as further discussed below, after more than two years of vigorous litigation, it has forfeited any lack of personal jurisdiction defense.

11

Under Federal Rule of Civil Procedure 12(h), a party waives defenses based on lack of personal jurisdiction, improper venue, insufficient process, and insufficient service of process if it fails to raise such defenses in a Rule 12 motion to dismiss prior to filing a responsive pleading. Fed. R. Civ. Proc. 12(h). Further, a party forfeits a personal jurisdiction defense, even if raised in its answer, for failure to promptly raise the defense by motion. *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 60 (2d Cir. 1999) (Defendant waived personal jurisdiction because it engaged in extensive discovery and failing to move to dismiss despite multiple opportunities); *In re Complaint of Rationis Enters. Inc.*, of Panama, 210 F.Supp.2d 421, (S.D.N.Y. 2002) (Defendant forfeited personal jurisdiction defense under New York long-arm statute because of less than two year delay in seeking relief and engagement in discovery). GHM has forfeited on both grounds.

GHM has had the opportunity to move to dismiss for lack of personal jurisdiction in response to two versions of the complaint. Indeed, it has engaged in extensive written discovery, repeated motion practice, two settlement conferences, and several hearings over the last nearly 30 months, making evident the foregoing motion is "hail Mary" attempt to wiggle out from under liability on procedural grounds. GHM has forfeited a personal jurisdiction defense, and the court should deny GHM's motion for summary judgment for lack of personal jurisdiction.

Even considering GHM's untimely motion, GHM has a sales office that targets New York residents and attempts to increase GHM's business amongst American consumers. Chng. Depo., 98:24 to 102:13. GHM's server for its website also appears to be in the United States. See Ex. G to Toke Decl. Such contacts constitute "doing business" in New York and are sufficient to exercise jurisdiction over GHM. See, e.g., *Jacobs v. Felix Bloch Erben Verlag Fur Buhne Film Und Funk KG*, 160 F.Supp.2d 722, 731-32 (S.D.N.Y. 2001) (conducting regular

business within New York can qualify as "doing business" under N.Y. C.P.L.R. Section 301 for the exercise of jurisdiction over GHM.

### 2.    This Court Is Not An Inconvenient Forum.

For over two years GHM has demonstrated that this forum is far from inconvenient. It's vigorous defense and extensive discovery belie any complaints of inconvenience. A defendant raising *forum non conveniens* bears the burden of proving inconvenient forum. *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 100 (2d Cir. 2000) ("The defendant has the burden to establish that an adequate alternative forum exists and then to show that the pertinent factors 'tilt[] strongly in favor of trial in the foreign forum'")(quoting R. Maganlal & Co. v. M.G. Chem. Co., 942 F.2d 164, 167 (2d Cir. 1991)). Moreover, a defendant "does not carry the day simply by showing the existence of an adequate alternative forum. The burden on a defendant seeking dismissal for forum non conveniens is heavy because "the plaintiff's choice of forum should rarely be disturbed." *Jacobs v. Felix Bloch Erben Verlag Fur Buhne Film Und Funk KG*, 160 F.Supp.2d 722, 742 (S.D.N.Y. 2001). The action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable." *Irragori v. United Techs. Corp.*, 274 F.3d 65, 74-75 (2d Cir. 2001).

In considering whether a Plaintiff's chosen forum is susceptible to a *forum non conveniens* challenge, courts in this Circuit apply a three-part analysis: (1) the level of deference afforded Plaintiff's chosen forum, (2) whether the challenging party has established there is an adequate alternative forum, and (3) weighing public and private factors. *Wilson v. Eckhaus*, 349 Fed.Appx. 649, 650 (2d Cir. 2009). The private factors are (a) the relative ease of access to sources of proof, (b) The availability of compulsory process for attendance of unwilling witnesses, (c) The cost of obtaining attendance of willing witnesses, and (d) all other practical

13

problems that make trial of a case easy, expeditious, and inexpensive. *Iragorri*, 274 F.3d at 73-74, . The public factors are (a) the administrative burden on the congested court being asked to handle a dispute arising from another forum, (b) the burden of jury duty on the people of the community which has no relation to the litigation, (c) The local interest in having localized controversies decided at home, and (d) the burden of applying foreign law. *Id.* at 74. In applying this three-part analysis, GHM has failed to meet its burden, and its significant delay in bringing this claim proves it is not only not inconvenienced by this forum but is in fact barred from raising such a claim. Plaintiff's chosen forum is appropriate, and GHM's motion to dismiss for forum non conveniens should be denied.

a)      **GHM's over two-year delay in claiming** *forum non conveniens* **is dispositive.**

GHM has unequivocally demonstrated that it is capable of mounting a defense in this Court. Its motion for summary judgment as to *forum non conveniens* should be denied because of GHM's delay alone. Delay in bringing a motion for *forum non conveniens* warrants denial of a late-filed motion. *In re Hellas Telecommunications (Luxembourg) II SCA*, 535 B.R. 543, (S.D.N.Y. 2015) (one year delay in bringing *forum non conveniens* motion belied the assertion the venue was inconvenient); *Genpharm Inc. v. Pliva-Lachema a.s.*, 361 F.Supp.2d 49, 59 (E.D.N.Y. 2005). Here, GHM has been before this Court for nearly two and a half years, engaging in extensive deposition discovery here and abroad, comprehensive written discovery (including nearly 300 Requests for Admissions, as well as comprehensive interrogatories and document requests), two settlement conferences, numerous hearings and motion practice, scheduling conferences, and discovery disputes. GHM has therefore failed to establish that Singapore would be an adequate forum, and its motion for summary judgment for *forum non conveniens* should be denied on this grounds alone.

14

**b)** **Plaintiff's choice of forum is entitled to significant deference.**

Plaintiff is a holding company formed under New York law prior to the onset of this case and located within this District for the purpose of enforcing the copyrights in the Photographs against defendants that have infringed those copyrights in the United States. As such, it is entitled to deference under the law. Plaintiff is located in New York, within this District, and Wave is a legitimate company currently engaged in the business of enforcing its intellectual property against U.S. infringements. Plaintiff is not a "shell" company.

As a New York company with an address within this District formed before this action was filed, Plaintiff is entitled to great deference in its home forum. *Iragorri*, 274 F.3d at 71. The case cited by GHM that shell corporations are afforded little deference in forum selection is inapposite to the facts here and does not apply. See *RiGroup LLC v. Trefonisco Mgmt. Ltd.*, 949 F.Supp.2d 546 (S.D.N.Y. 2013). In *RiGroup*, the corporate plaintiff was not in business at the time of the alleged fraud perpetrated on it and its company was resurrected pursuant to the fraud, giving it no bearing on the case or claims being made. By contrast, Plaintiff is a holding company founded in 2011 for the enforcement of IP rights it owns in the US. Enforcement companies for the licensing and enforcement of copyright-protected images are commonplace and as legitimate a corporate entity as any other. The foregoing corporate purpose is sufficient to establish is as a legitimate and going concern. No other inquiry need be made.

That Plaintiff chose its home forum vitiates any claims of forum shopping. Further, there is no evidence of forum shopping. Plaintiff's chosen forum would allow for adjudicating against the defendant(s). *Iragorri*, 274 F.3d at 73. Nearly all of defendants are located in the United States, and a number are located in New York, and this forum is appropriate as to the other defendants. *See In re Hellas*, 535 B.R. at 592 (the fact that most defendants were located in the

15

U.S. supported great deference to Plaintiff's forum); see also, *Iragorri*, 274 F.3d at 73.

Therefore, Plaintiff's chosen forum is entitled to significant deference.

### c)    Singapore is not an adequate alternative forum.

Singapore is an inadequate forum for this matter, and GHM has failed to establish why this case should be moved there. GHM bears the burden of proving that Singapore is an available alternative forum. *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 100 (2d Cir. 2000). An alternative forum is adequate if: (1) the defendants are subject to service of process there and (2) the forum permits litigation of the subject matter of the dispute. *In re Hellas*, 535 B.R. at 592. A court cannot dismiss an action for *forum non conveniens* grounds unless it "satisfy[ies] itself that the litigation may be conducted elsewhere against ***all*** defendants." *PT United Can Co. Ltd. v. Crown Cork & Seal Co.*, 138 F.3d 65, 73 (2d Cir. 1998) (emphasis added). GHM has failed to establish that Singapore is an adequate alternative.

GHM argues that: (1) it (GHM), the only relevant defendant *for the threshold issue of ownership*, is subject to service of process in Singapore and (2) Singapore is a first world country with a sophisticated legal system based on English law. While Plaintiff agrees Singapore has a sufficiently developed legal system, in a transparent attempt at sleight of hand, GHM ignores the glaring fact that it is not alone in this litigation (despite the case being stayed as to the other defendants for the time being) and that almost all of the defendants are American companies running websites catering to American consumers. GHM's focus on the threshold issue of ownership for this purpose is inappropriate. This case is not just about the threshold issue, and this Court must consider all the defendants' convenience, not just GHM's.

GHM has therefore not established that the other defendants are subject to service of process in Singapore. Nor can it. As almost exclusively American (or North American)

16

companies doing business in the U.S., the other Defendants are not likely subject to service of process in Singapore to enforce copyright infringement occurring in the U.S.  Nor has GHM even attempted to state that they are.  Forcing Plaintiff to go to Singapore to litigate this case would undoubtedly lead to a personal jurisdiction battle with the other nearly 80 Defendants where no such issue exists in this District.  Moreover, a Singapore court has no jurisdiction to adjudicate a case dealing with copyright infringement occurring in the United States.  GHM has therefore failed to establish there is an adequate alternative forum and GHM's *forum non conveniens* argument fails for this reason alone.  The remaining factors also favor denial of GHM's motion.

### d)      The private factors favor Plaintiff's chosen forum.

With the majority of defendants located in the U.S., the relative ease of access to sources of proof favors litigating in this District.  GHM's motion focuses on the handful of witnesses located in multiple countries outside the United States but ignores the vast majority of the potential witnesses for the rest of the nearly 80 defendants, who are undoubtedly located in the United States.  While litigating in Singapore might make it easier to subpoena the handful of witnesses in Singapore, it would not be any easier to subpoena the other foreign witnesses GHM mentions than from this District.  *Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah*, 184 F.Supp.2d 277, 301 (S.D.N.Y. 2001)(fact that alternative forum would require plaintiff to forgo the ability to subpoena U.S.-based witnesses disfavored dismissal for inconvenient forum).

Moreover, even if Singapore were a viable forum, requiring over eighty defendants to transport documents and to Singapore is far more inconvenient.  It would also then place Plaintiff at the significant disadvantage of not being able to subpoena any witnesses but the few GHM mentions that are in Singapore.  By contrast, the burden on GHM to litigate in this District is far

less, which GHM has already demonstrated with its vigorous defense in this case. Thus, this District provides for much easier access to proof than Singapore.

Witnesses of the parties located in this District, can be also be compelled to testify by this District. Other U.S.-based defendants will likely be able to produce their witnesses more easily in this District than Singapore. As Singapore is not a signatory to the Hague Convention for service of process, compelling testimony of such witnesses will be difficult and such evidence will be rendered unavailable. Thus, this District is the more convenient forum.

<strong>e)      The public factors favor Plaintiff's chosen forum.</strong>

GHM has submitted no evidence regarding the relative court congestion between Singapore and this District. There is no reason to believe that a Singapore court would be more advantageous for adjudicating this case than this District. This factor is neutral.

This District has an interest in adjudicating copyright infringement perpetrated in the United States and in New York. GHM improperly focuses only on its witnesses for the threshold issue but ignores the fact that this case also involves the receipt/obtaining of the Photographs and infringement by the other Defendants. With nearly eighty other defendants, the near entirety of which are located in the United States, there are numerous witnesses located in the United States that would support venue in this District. A number of the defendants are also located within New York, further cementing the connection with Plaintiff's chosen forum. Thus, there is more than sufficient local interest in addressing infringement perpetrated in the U.S. by American and foreign companies doing business in the U.S. Given these connections to this forum, there is no concern over burdening jurors with a case unrelated to this District.

GHM argues that this forum is less convenient because it may have to apply Singapore law. Even assuming GHM is correct that Singapore law should apply to the threshold issue,

18

having to apply a foreign country's law alone will not support a *forum non conveniens* argument. *Byrne v. British Broadcasting Corp.*, 131 F.Supp.2d 229, 238 (S.D.N.Y. 2001) (applying law of foreign common law jurisdiction -- such as England -- places no significant burden on New York district courts)  Singapore is a common law jurisdiction based on English law, similar to the American legal system.  American courts, and this District, routinely apply the law of common law countries.  It should be noted that Singapore does not allow for jury trials in civil matters. Llewelyn Decl. at ¶15.  This is a significant difference from litigation in the United States and may support denial of GHM's motion.  See, *id*. (suggesting lack of jury trial in United Kingdom would support denying *forum non conveniens* challenge).  GHM's motion should be denied.

### 3.     The Hotels Are Not Indispensable Parties.

In a third unsupported procedural challenge, GHM erroneously claims that the Hotels are indispensable parties under Federal Rule of Civil Procedure 19(b), warranting dismissal.  As a threshold matter, GHM's motion presupposes that the Hotels are the owners of the copyrights to the Photographs, an issue yet to be decided by the Court.  Therefore, based on this fact alone, the motion under Rule 19 should be denied on this alone.  But even setting this in appropriate presumption aside, the Hotels are not indispensable parties.

To be an indispensable party under FRCP 19(b), a party must first be a "required" party under FRCP 19(a), which it is if the court cannot accord complete relief among existing parties in their absence or that if that party claims an interest relating to the subject matter of the action and is so situated that disposing of the action in the person's absence may either impede or impair that party from protecting its interest or leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations of the interest.  Fed. R. Civ. P. 19(a).  The Hotels are not "required" parties as a matter of law under FRCP 19.

Whether or not the Hotels are determined to be the copyright owners, they are not indispensable parties. If the Hotels are determined to be the owners of the copyrights to the Photographs and that Plaintiff has no enforceable rights, then the case will in all likelihood be dismissed, and all parties to the litigation would receive the same relief. But if Plaintiff is determined to be the owner of the copyrights to the Photographs or to some enforceable right under the copyrights, then the Hotels would simply be other joint tortfeasors. Joint tortfeasors, are never indispensable parties. *State of Georgia v. Pennsylvania R. Co.*, 324 U.S. 439, 463 (1945); *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 358 (2d. Cir. 2000); *Frink America*, 961 F.Supp. at 406. Thus, regardless of the outcome on the threshold ownership issue, the Hotels do not qualify as "required" parties under Rule 19, and GHM's motion fails as to Rule 19. But even if the Court somehow determines the Hotels are "required," the Court must still apply the factors in FRCP 19(b), which asks whether, in good equity and conscience, the action should proceed among the existing parties or should be dismissed. Courts are loathe to dismiss cases under FRCP 19(b). *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435 (4th Cir. 1999)("Courts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result.") In applying FRCP 19(b) the court must consider: (a) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (b) the extent to which any prejudice could be lessened or avoided by (i) protective provisions in the judgment, (ii) shaping the relief, and (iii) other measures; (c) whether the judgment rendered in the person's absence would be adequate; and (d) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Applying these factors, dismissal is not appropriate and the Hotels are not indispensable parties. First, once again, if the Hotels are determined to be the owners of the copyrights to the Photographs and Plaintiff has no remaining interest in those copyrights, then the Hotels will in no way be prejudiced because the action will be dismissed as to all parties. If, on the other hand, Plaintiff is determined to be the owner of the copyrights to the Photographs (or some enforceable right under them), then the Hotels would merely be joint tortfeasors, who are never indispensable parties. *State of Georgia*, 324 U.S. at 463; *Bassett*, 204 F.3d at 358; *Frink America*, 961 F.Supp. at 406. Plaintiff is well within its rights to choose which tortfeasors to sue and which not to. *Bassett*, 204 F.3d at 358 ("Courts have long held [that] in ... **copyright** infringement cases, any member of the distribution chain can be sued as an alleged joint tortfeasor.... Since joint tortfeasors are jointly and severally liable, the victim ... may sue ... as few of the alleged wrongdoers as he chooses; those left out of the lawsuit ... are not **indispensable parties**.")(emphasis in original)(Citing *Costello Publishing Co. v. Rotelle*, 670 F.2d 1035, 1043 (D.C. Cir. 1981). Therefore, there is no potential prejudice to GHM, the Hotels, or any other parties if the Hotels are not joined.

Moreover, where a party's or parties' interests are represented by other parties in the case, those absent parties are not indispensable. *See Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 134 (2d Cir. 2013). Here, GHM is vigorously advocating for the Hotels, and their interests are directly aligned. Plus, the Setai, one of the Hotels, is also a defendant and will no doubt defend its interests once the stay is lifted. Since the Setai is similarly situated on the issue of copyright ownership to the other Hotels, and GHM is fully aligned with the Hotels' position (and in fact has been spearheading it), the other non-joined Hotels' interests are well-protected by GHM and the Setai. Dismissal under such circumstances is inappropriate.

21

The case law cited by GHM is also inapposite and does not support dismissal under Rule 19(b). Each of the cases cited for the proposition that the owner of the copyright is an indispensable party involved a wholly different situation—where the *validity* of the copyrights are at issue and the owner is not involved. Here, there is no dispute that the Photographs are protected by copyright. The only question is who *owns* those copyrights. That issue can be determined with no prejudice to the Hotels because the Court has before it the relevant contractual documents between the Wave Entities and the Hotels as well as the testimony of the party, GHM, the Hotel's managing agent that was primarily responsible for the orders placed with the Wave Entities. Thus, there is no prejudice to the Hotels from not being joined. And, as noted above, because GHM's and the Setai's interests are completely aligned with the Hotels' interests, the Hotels' interests are being well-represented in their absence. In that sense, all of the Hotels' interests are being represented by the same attorneys, counsel for GHM, which eliminates to the "vanishing point" any risk of prejudice to the Hotels by not joining them or dismissing this action. *Marvel Characters*, 726 F.3d at 134. GHM's motion under Rule 19 should be denied.

### B. Plaintiff Is the Valid Owner Of The Copyrights To The Photographs.

#### 1. Under Both U.S. And Singapore Law, The Wave Entities Were The Owners Of The Copyrights To The Photographs Prior To Their Valid Assignment Of Those Rights To Plaintiff.

To support a claim for copyright infringement, the copyright owner must prove that it owns a valid copyright and that the defendants have copied original elements of the copyright-protected works. *Van Cleef & Arpels Logistics, S.A. v. Landau*, 547 F.Supp.2d 356, 360 (S.D.N.Y. 2008). The only issue currently before the court is the first element. It is undisputed that the Photographs are original, expressive works of authorship capable of copyright

22

protection. GHM asserts that Singapore law applies to the threshold question of ownership. While Plaintiff contends that U.S. law applies, the question is immaterial because the result is the same under both countries' laws: Plaintiff is the owner of the copyrights to the Photographs. Therefore, regardless of choice of law, the undisputed evidence establishes that Plaintiff owns a valid copyright in the Photographs.

a)    **Under Singapore copyright law, the Wave Entities owned the copyrights to the Photographs prior to assignment to Plaintiff.**

Plaintiff submits in support of this opposition and its own cross-motion the declaration of its Singapore law expert, Professor David Llewelyn. Professor Llewelyn is one of the world's leading authorities of Singapore (and English) intellectual property law. (Llewelyn Decl., ¶¶ 2-10). He teaches Singapore intellectual property law at the Singapore Management University and is on the faculty of Kings College in the United Kingdom. He has taught and lectured extensively on issues of Singapore intellectual property, and his writings have been cited with approval by Singapore courts. He has also recently been appointed to serve with the IP Office of Singapore (the equivalent of the USPTO and U.S. Copyright Office combined) to render decisions on issues of Singapore intellectual property law. He is regularly called upon to opine on issues of Singapore intellectual property law.

As explained by Professor Llewelyn, under Singapore law, the author of a work is generally the owner of the copyright. Section 30(5) of the Singapore Copyright Act provides an exception to the general rule. Stating that the copyrights to photographs commissioned directly with a photographer are owned by the commissioner of the works, and based on the documentary and testimonial evidence, Professor Llewelyn concludes that a Singapore court would hold in this case that Section 30(5) does not apply, or does not impede Plaintiff's infringement claims for the following reasons: (a) Section 30(5) does not apply in a subcontractor situation (as exists in

23

this case) where the party commissioning the photographs is not in contractual privity with the actual photographer; (b) even if Section 30(5) applies to the commissioning of a photograph, it can be contracted around by the parties; and (c) even if the parties to the commissioning of photographs have not contracted around Section 30(5), the commissioner may only use the commissioned work (s) for the stated purpose and use beyond that purpose is actionable infringement.

> (1)     Section 30(5) does not apply to a situation where the author of photographs is a subcontractor and there is no contractual privity between the commissioner and the author.

The Singapore courts have made clear that Section 30(5) only applies to a direct contractual relationship between the commissioner of a photograph and the photographer. (Llewelyn Decl., ¶¶ 38-41). It does not apply where the commissioner of photographs has hired a third party who then subcontracts with a photographer for the taking of photographs. *Id.* Such is the case here, and GHM is incorrect as a matter of law that Section 30(5) as between the Hotels and the Wave Entities.

As GHM itself concedes in its motion, Mr. Kawana was the photographer who took the Photographs, and that the Wave Entities had subcontracted to have Mr. Kawana take the Photographs. GHM MSJ at p. 13, fn. 6. Professor Llewelyn concludes for the purposes of Singapore law that though Mr. Kawana took the Photographs at the direction of Ms. Lee, he was nonetheless the author of the Photographs, a conclusion with which GHM agrees. GHM also concedes that neither it nor the Hotels had any contractual relationship with Mr. Kawana; he served only as the Wave Entities' subcontractor to take the Photographs. (Ohletz Depo., 17:13-15, 23:8-13, 24:10-20, attached as Ex. C to Toke Decl.). Moreover, the Wave Entities' contracts

24

with Mr. Kawana specifically state that Mr. Kawana may not have a direct contractual relationship with the Hotels or GHM. (See Ex. D to Lee Decl.).

As Professor Llewelyn explains, the Singapore courts in the very case upon which GHM relies as binding precedent on the issue of ownership, reached two very different conclusions with respect to two sets of photographs at issue in the case. The first set was created where the Appellant in the case had directly contracted with a photographer to take some pre-wedding photographs. This set of photographs the Singapore court held were subject to Section 30(5) and the copyrights to them belonged to the commissioner.

The court reached the opposition conclusion—that Section 30(5) did not apply— where the Appellant had contracted with the Respondent for various wedding services, amongst them wedding photography, for which the Respondent subcontracted with a photographer. The court concluded that Section 30(5) did not apply to the subcontractor scenario and that the copyright to those photographs was owned by either the Respondent or the photographer, depending on their contractual relationship. In other words, Section 30(5) applied as between the service provider (i.e., the Respondent) and the photographer but it did not apply as to the commissioner of the photographs and the service provider. The latter is the situation here.

GHM concedes the Wave Entities provided various services for the provision of marketing collaterals to GHM-managed hotels, which included photography services, for which the Wave Entities subcontracted with Mr. Kawana. (Ohletz Depo., 24:10-20, attached as Ex. C to Toke Decl.; GHM MPA at p.13, fn. 6; Lai Decl. at ¶¶ 7, 15,). The undisputed evidence indicates that there was no contractual relationship between GHM or the Hotels and Mr. Kawana. Therefore, under clear and recent Singapore precedent, Section 30(5) would not apply as between the Hotels, GHM, and the Wave Entities.

At the same time, Section 30(5) would apply as between the Wave Entities and Mr. Kawana. (Llewelyn Decl., ¶¶ 25-29). In addition, Mr. Kawana signed a confirmatory assignment confirming that at the time the Photographs were created, it was understood and agreed between Mr. Kawana and his company and Ms. Lee that the copyrights to them were owned by Ms. Lee (as the owner of the Wave Entities). (Kawana Assignment, attached as Ex. Ex. M to Ex. R to Remore Decl.).

GHM's motion ignores this critical factual distinction, which Singapore law makes clear in the cited case. Thus, under the very Singapore law cited by GHM with favor, Section 30(5) would establish that the Wave Entities, not GHM or the Hotels, were the owners of the copyrights to the Photographs.

> (2)     Even if Section 30(5) does apply to the Photographs as to GHM or the Hotels, the parties contracted around that section and the Wave Entities retained the copyrights in the Photographs.

Even if Section 30(5) were to apply to the Photographs as to the Hotels and the Wave Entities, the parties contracted around it. Section 30(3) of the Singapore Copyright Act of 1987 allows for parties to contract around Section 30(5). (Llewelyn Decl., ¶48) As Professor Llewelyn explains, under Singapore law and the undisputed facts, a Singapore court would rule that the parties contracted around Section 30(5). (Llewelyn Decl., ¶ ¶ 48-61)

As Professor Llewlyn's declaration notes, GHM admitted that it and the Hotels reviewed every production estimate and that the estimates included the clear Reservations Clause, as Professor Llewelyn calls it. GHM conceded that it was aware of this language but viewed it as "fine print." (Ohletz Depo., 110:11 to 111:11, Ex. C to Toke Decl.; Llewelyn Decl., ¶¶ 54-56). Under principles of Singapore law, these clauses were clear and unambiguous. (Llewelyn Decl., ¶¶ 51-53) Professor Llewelyn concludes Singapore law would hold that GHM and the Hotels

26

were on notice of and were bound by these clear, unambifuous terms.  (Llewelyn Decl., ¶¶ 51-59)

By contrast, GHM's position strains both the facts and law.  First, GHM's expert's opinion requires this court to ignore (and in fact completely discount as meaningless) hundreds of production estimates, which GHM concedes:  (a) were reviewed and approved by GHM and the Hotels, (b) were in many instances signed by a representative of the Hotels, (c) were all honored and paid for, and (d) contained the reservations clause that gave copyright ownership with the Wave Entities.  Dr. Lai also ignores the testimony of Mr. Ohletz that he was aware of the reservations clause but that it was "fine print."

Dr. Lai's opinion further ignores the correspondence of GHM's Director and head of legal affairs in which he makes clear that GHM viewed the Photographs as the Wave Entities' "proprietary" library of images and indicated that the Wave Entities could pursue infringement actions against a third party who was using some of the Photographs without authorization.  (Llewelyn Decl., ¶¶ 45-46; Exhibits F and G to Lee Decl.).  Further, GHM's proffered evidence of GHM's subjective understanding is irrelevant and flies in the face of the clear language of the production estimates.[3]  This evidence should ignored as immaterial.  However, if the Court determines such facts are in fact material, then there remain genuine disputes over those facts.

In short, GHM's strained interpretation of the facts and law requires this Court to ignore clear Singapore precedent, hundreds of documents, and the plain language of the contractual documents between the parties.  Thus, this Court should reject GHM's expert's opinion, and hold

---

[3] Mr. Ohletz's testimony also does not refute the term reserving the copyrights with the Wave Entities.  Instead, Mr. Ohletz says that he was aware of the term and viewed it as fine print and in any event Ms. Lee never "brought it up" or never "acted upon it." (Ohletz Depo., 110:22 to 112:7, Ex. C to Toke Decl.).  This testimony indicates that Mr. Ohletz and GHM knew of the terms of the agreement but chose to ignore them.

that even if Section 30(5) were to somehow apply between the Hotels, GHM, and the Wave Entities, the parties contracted around it and the Wave Entities retained all copyrights to the Photographs.

> (3)    Even if Section 30(5) applies and the parties did not effectively contract around it, Wave had the right to veto distribution of the Photographs to third parties.

As Professor Llewelyn explains, Section 30(5) reserves rights with the author for uses beyond the stated purpose for the original work. (Llewelyn Decl., ¶¶ 62-68)  This clause acts as a veto power for the creator of the work to prevent uses of the copyrighted work that fall outside the communicated purpose.  The Photographs were created for the understood purpose in ongoing orders marketing collaterals for the Hotels.  Even taking a more expansive view that the Photographs were created to market the Hotels generally, at the time of their creation, this would not encompass new, unforeseen, or unprecedented uses that the creator had not been apprised of.

Such a rule allows for the creator to have the chance to exploit any unforeseen value in the photograph.  As Professor Llewelyn concludes, wide exploitation of the Photographs on the Internet, which was not widely practiced at the time the Photographs were created, could not have been foreseen and, at the very least, GHM was obligated to inform the Wave Entities of its intention to so widely distribute the Photographs. (Llewelyn Decl., ¶¶ 66-68)

GHM claims that its informing Ms. Lee of its provision of a photograph to a magazine indicates that the Wave Entities understood that they did not own the copyrights to the Photographs.  Hardly.  It merely indicates that a further use of the Photograph was communicated to the creator, and the creator consented.  To suggest that such isolated provision of one-off photos is the same as widely disseminating the Photographs en masse to hundreds of third party websites without informing the Wave Entities is an entirely different matter, one that

even under the Section 30(5) would lead to liability for GHM. (Llewelyn Decl., ¶¶ 66-67) Ms. Lee was not aware of GHM's widespread and unauthorized distribution of the Photographs for many years, and no consent was given for such use.

GHM seems to suggest that the Wave Entities were handsomely paid for the Photographs, claiming that it was paid over S$250,000 for the Photographs. (MSJ at Page 5; Remore Decl. at ¶ 11). While this does not undermine the veto power vested in Section 30(5), GHM's conclusion is wholly misleading. This gross figure, paid over a ten year period, does not deduct the costs Wave incurred, which account for well over half of that gross amount. For 2000 published photos, that amounts to less S$60 or less per photo (about the equivalent of US$45 at most) and does not take into account the time for the photoshoot and post-production (about 7 hours per photo) by Wave personnel. (Lee Decl., 19) Therefore to say that the Wave Entities were handsomely paid for unfettered copyright ownership of the Photographs is simply untrue and is, at the very least, disputed by Wave.

Thus, even if Section 30(5) applied and the parties did not contract around it, Plaintiff would still be entitled to stop the use complained of in this action.

### b)    U.S. law applies as to copyright ownership.

GHM's assertion that Singapore law applies to the issue of copyright ownership in this case is unsupported. The case cited by GHM, *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82 (2d Cir. 1998) is inapplicable as the application of foreign law applied only to unregistered works, not registered works such as Plaintiff's. Where the works at issue are registered, the statutory presumption of ownership and validity under 17 U.S.C. Section 410(c) applies. *See, Seoul Broadcasting System Intern., Inc. v. Young Min Ro*, 784 F.Supp.2d 611, 614-

29

15 (E.D.Va. 2011) (distinguishing *Itar-Tass* because it did not involve registered works and noting that Section 410(c) should apply to the registered works at issue).

In fact, in *Seoul Broadcasting*, the Eastern District of Virginia went on to note that even in the *Itar-Tass* case, the Second Circuit properly did not disturb the district court's recognition of the applicability of the statutory presumption of ownership for those plaintiffs who did in fact have registered copyrights in the foreign works at issue. Because Wave has copyright registrations for all the works at issue, the statutory presumption of ownership and validity applies, even under the precedent cited by GHM. That Singapore was the country of first publication does not affect this outcome, and is even less relevant since the vast majority of the defendants in this case are located in the United States.

The *Bridgeman* case cited by GHM noted that the certificate of registration did not affect the copyrightability of the transparencies at issue. The issue of whether U.S. law would govern where all the works at issue were registered was not brought before, nor decided by, the court. Likewise, the *Van Cleef & Arpels* case cited by GHM did not address or consider whether the ownership of copyright registrations would affect the choice of law issue. Therefore, it is of limited value.

The U.S. copyright laws are meant to protect copyright holders from copyright infringement perpetrated in the United States. Where a copyright owner has obtained registrations and recorded the basis for its ownership interest—as is the case here—those registrations are entitled to a presumption of validity. 17 U.S.C § 410. And even if the first publication of a work is more than five years prior to registration, courts still retain discretion to presume validity. *CJ Products LLC v. Snuggly Plushes LLC*, 809 F.Supp.2d 127 (E.D.N.Y. 2011)(exercising discretion to apply presumption of validity to copyright registrations issued

more than five years after first publication of works).  Because Plaintiff has recorded its basis for

ownership with the Copyright Office, this Court should presume the validity of Plaintiff's

copyright registrations under U.S. law.

<blockquote>c)      **The Wave Entities owned the copyrights to the Photographs under U.S. law.**</blockquote>

Under U.S. law, absent a written agreement to the contrary, the author of a work is the

owner of the copyright.  17 U.S.C. § 201 ("Copyright in a work protected under this title vests

initially in the author or authors of the work").  Additionally, a copyright owner may freely

assign or otherwise transfer the rights to copyrights.  17 U.S.C. § 201(d).  Here, the ownership of

the copyrights is quite clear.

As between the Hotels and the Wave Entities, the relevant Wave Entity owned the

copyrights from the outset because there was no contractual document to the contrary.  No

assignment or Work Made for Hire agreement was signed. The only documents that were

exchanged in writing were production instruments, which specifically reserved the copyrights

with the relevant Wave entity.  These works were then validly assigned to Plaintiff, as further

described below.

Further, as between the Wave entities and Mr. Masano Kawana ("Masano"), ownership

of the copyright by the relevant Wave Entity is also straightforward.  Mr. Kawana executed an

agreement with each Wave Entity vesting copyright with the relevant Wave Entity.

Additionally, in an abundance of caution, Mr. Kawana also entered into a Memorandum of

Understanding and Ownership on or around October 1, 2013, whereby he confirmed that all

photographs resulting from the 2000-2007 shoots he participated in for Ms. Lee and the various

Wave Entities were intended to be work made for hire for Ms. Lee, and that the copyrights in

those Photographs were exclusively owned by Ms. Lee at the time of their creation.  Ms. Lee in

turn correctly assigned all copyrights owned by herself and The Wave Studio Private Ltd., the only remaining Wave Entity to Wave Studio LLC as of November 11, 2011. Thus, the Wave Entities were the owners of the copyrights to the Photographs under U.S. law as well.

### 2. Plaintiff's Chain of Title Has Been Perfected Under Singapore and U.S. Law.

GHM claims that Plaintiff's chain of title is fatally interrupted. GHM is incorrect. As explained below, Plaintiff was validly assigned the rights to the copyrights to the Photographs. Only three Wave Entities were ever created: Wave-S (a sole proprietorship), The Wave Private Ltd. (a Singapre corporation), and The Wave Design Private Ltd. (a Singapore Corporation that changed its name to The Wave Studio Private Ltd). The Wave Studio Private Ltd. is still in operation.

When Wave-S dissolve in February 21, 2007, under operation of Singapore law, the assets went to Ms. Lee automatically by operation of Singapore law. (Llewelyn Decl., ¶¶ 74-78) Likewise, prior to its dissolution on August 1, 2008, by corporate resolution its assets, tangible and intangible, were assigned to Ms. Lee prior to dissolution. Therefore, as of August 1, 2008, Ms. Lee was the owner of all the assets, including copyrights, for Wave-S and Wave Private Ltd. The Wave Design Studio, formed in 2005, changed its name on July 25, 2007 to The Wave Studio Private Ltd. That company still exists today.

On November 11, 2011, the Lee Catchall Assignment transferred all the copyrights to the Photographs formerly owned by Wave-S and The Wave Private Ltd. to Plaintiff. On that same date under the Wave Design Assignment, The Wave Design Private Ltd. (which was actually called The Wave Studio Private Limited at the time) assigned all of its copyright rights to Plaintiff. Though that assignment incorrectly used the former name of the company—i.e., The Wave Design Private Ltd.—it was otherwise effective because it was the correct entity and held

32

those assets.  Between the Lee Catchall Assignment and The Wave Studio Assignment, all the

copyright assets of Wave-S, Wave Private Ltd., and The Wave Studio Private Ltd. (fka The

Wave Design Private Ltd.) had been effectively transferred to Plaintiff.

There were also a number of other assignments created in 2011 that were created on

behalf of the then already dissolved Wave-S and The Wave Private Ltd. (the "Erroneous

Assignments").  These Erroneous Assignments were all simply prepared and executed in error

thinking that they were necessary, when they weren't.  But they were all ineffective and

meaningless because at that time they were prepared in 2011, Wave-S and The Wave Private Ltd

were dissolved and had no assets to assign.  See 17 USC § 201 ("A transfer of copyright

ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a

note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed

or such owner's duly authorized agent.").  They were therefore an irrelevant red herring created

by mistake.  They can and should be ignored as ineffective, meaningless documents.

Because Plaintiff learned of the erroneous nature of the Erroneous Assignments and name

mistake on the Wave Studio Assignment and entered into the Corrective Assignment to clarify

the record to show the clean chain of title that was created by the Lee Assignment and the Wave

Studio Assignment (the "Corrective Assignment").  Therefore, the Corrective Assignment to

Wave Studio LLC simply clarified and corrected certain facts to reflect this accurate chain of

title.  This chain of title has, therefore, been correctly identified in the relevant nine U.S.

Copyright Registrations.

> a)   **The case law cited by GHM regarding later-filed assignments
> is inapposite and actually supports Plaintiff's standing.**

The case law cited by GHM regarding later-filed assignments is inapposite and

distinguishable.  First, GHM is incorrect that *Professional LED Lighting, Ltd. v. AAdyn*

*Technology, LLC* stands for the proposition that *nunc pro tunc* corrective copyright assignments executed after litigation is commenced are not valid to establish standing. That case dealt with the narrow issue of whether an assignment *of the right to sue* by the copyright holder to a third-party non-owner or licensee, on its own, was sufficient to convey standing to that third party.

The facts differ greatly here. The Corrective Assignment merely clarified the already clear chain of title by explaining why the Erroneous Assignments recorded with the Copyright Office were not effective. It did not alter the chain of title already put in place. In fact, *Professional LED Lighting* even confirms that standing exists when "the copyright owner . . . [has] such status *at the time of the alleged infringement.*" *(citing World Thrust Films Inc. v. Int'l Family Entm't Inc. 1996* WL 605957, at *4 (S.D.Fla. Aug. 1, 1996)). *Emphasis Added.* Such is the case here. Additionally, *Professional LED Lighting* even acknowledges the well-settled principle that *nunc pro tunc* corrective copyright assignments are routine and notes that it is well-settled that a written assignment need not be contemporaneous with the transfer. (*Professional LED Lighting, Ltd. v. AAdyn Technology, LLC citing Utopia Provider Sys., Inc. v. Pro–Med Clinical Sys., L.L.C.,* 2008 WL 4938420, at *1 (S.D.Fla. Nov. 18, 2008)).

Moreover, as discussed above, the Corrective Assignment did not alter the two effective assignments made in 2011—the Lee Assignment and the Wave Design Assignment. Rather, the Corrective Assignment merely clarified that the Erroneous Assignments were ineffective and corrected the incorrect name of the Assignor on the Wave Design Assignment. The Lee Assignment and Wave Design Assignment were, and still are, operative.

### 3.    GHM's Challenges To Plaintiff's Copyright Registrations Do Not Affect Plaintiff's Ownership Rights.

Registrations are not a prerequisite to standing in an action for infringement of copyrights in foreign works covered by the Berne Convention.   17 U.S.C. § 411.  *See In re Peregrine*

*Entertainment, Ltd.*, 16 U.S.P.Q.2d 1017 (C.D.Cal.1990). Accordingly, Plaintiff's standing does not turn on whether the copyright registrations are valid. No such registration is in fact legally required in this case. In any case, the Registrations at hand are valid. Each Registration correctly identifies the copyrightable subject mark, as well as author and claimant in each instance.

If any errors were made in the Registration Certificates, they were inadvertent and Ms. Lee was unaware of them when she signed the Copyright Applications. She truthfully completed the applications with the information available to her at the time. She had no intention to mislead defendants or defraud the Copyright Office. In fact, as soon as Ms. Lee became aware of potential errors in the Registration Certificates, she corrected them by filing Forms CA Supplemental Registrations with the Copyright Office.

The case law is overwhelming that "[i]nadvertent mistakes on registration certificates do not bar copyright infringement actions, unless the alleged infringer has relied to its detriment on the mistake, or the claimant intended to defraud the Copyright Office by making the misstatement." *Urantia Foundation v. Maaherra*, 114 F.3d 955, 963 (9th Cir.1997*), citing Nimmer*, § 7.20 at 7–201 and n. 6 ("[A] misstatement or clerical error in the registration application if unaccompanied by fraud will not invalidate the copyright or render the registration certificate incapable of supporting an infringement action."). See also, *Datastorm Technologies, Inc. v. Excalibur Communications, Inc.*, 888 F.Supp. 112 (N.D.Cal.1995). Fraud on the Copyright Office requires an intent to defraud by the copyright holder and prejudice to the infringing party, which are clearly not present here. *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984).

In sum, the law does not require perfection, but instead bases its requirements on principles of fair and non-formalistic administration of the copyright laws, which are the guiding

principles here.  Additionally, Defendants' argument that Plaintiff may not claim prima facie evidence of validity of the copyright and the facts stated in the Certificates because some registrations were obtained five years or more after the first publication of the relevant works, is wholly inapposite.  Indeed, even in cases when the Copyright Registration Certificate is obtained five years or more after publication, the court still has discretion to give evidentiary weight to the certificate of a registration. 17 U.S.C. § 410(c). Additionally, in this case, Plaintiff has already clearly established the validity of the copyright at issue, and its ownership of those copyrights, through a straightforward chain of title. The question of presumption, therefore, is irrelevant.

**C.    There Is No Basis For GHM's Claim That It An Implied License To Freely Distribute The Photographs To Third Parties Or To Have Those Third Parties Further Distribute The Photographs.**

There is no dispute that neither GHM nor the Hotels had an express license to use the Photographs as they saw fit.  Therefore, GHM argues the wholly unsupported—and quite simply unprecedented—position it had an implied license to freely distribute the Photographs through multiple levels of sublicensing.  This is not the case and far exceeds the scope of implied licenses granted by any court.

In this Circuit, implied licenses are only found in "narrow circumstances" where "one party 'created' a work at the [other's] request and handed it over, intending that [the other] copy and distribute it]'" *SmithKline Beecham Healthcare, L.P. v. Watson Pharms. Inc.*, 211 F.3d 21, 25 (2d Cir. 2000).  Such implied licenses are created where an author creates a work with knowledge and intent that the work would be used by another for a specific purpose. *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir. 1990).  Courts do not find implied licenses where, as here, the nature of the use is contested. *SHL Imaging, Inc. v. Artisan House, Inc.*, 117 F.Supp.2d 301, 317 (S.D.N.Y. 2000).

36

In *SHL Imaging*, in fact, this Court granted summary judgment on copyright liability to a copyright plaintiff, where the defendant claimed it had an implied license to allow it to use photographs it purchased from a photographer for use in color slides for their sales force in a subsequently created catalogue. *Id*. at 303. This Court ruled that such a use by the defendant constituted copyright infringement because the photographs were purchased for one marketing use, and the defendant published the photographs in another, unauthorized marketing use. *Id*. at 318.

Similarly, here, GHM argues that it had an implied license to distribute Wave's Hotel Photographs, which were created for use in various marketing collateral ordered from Wave. The Photographs were created for use in creating market collaterals for GHM-managed properties as part of an ongoing exclusive relationship between GHM and Ms. Lee, the owner of the Wave Entities. (Lee Decl. at ¶ 7; ("Ohletz Depo") at 14:12-15:8; 33:3-21; 45:14-46:16, Ex. C to Toke Decl.). Wave never authorized GHM to use any of the images, designs, logos, or Photographs that were created by Wave for any other purpose other than to order and reorder marketing collaterals for GHM-managed Hotels. Thus, under *SHL Imaging*, GHM and Hotels had a license to use Photographs as incorporated into the various marketing collaterals ordered by GHM or the Hotels and no more.

In fact, GHM knew the limitations on its license. For example, when Wave learned of unauthorized use of Wave-created intellectual property by the Nam Hai in Vietnam, Ms. Lee complained to the head of GHM, Hans Jenni, who immediately had such infringing collaterals pulled and ordered that no GHM-managed properties were to use Ms. Lee's work. (Lee May Depo., 141:12 to 143:14, attached as Ex. A to Toke Decl.).

37

Similarly, GHM advised Ms. Lee in 2006 and 2007 of placements of one-off Photographs in various magazines, asking for Ms. Lee's preferred attribution.[4] (See Exs G and L to Remore Decl.) Ms. Lee authorized such uses by GHM because they were limited and in print and attributed ownership of the Photographs depicted to Ms. Lee. Thus, even GHM understood it could not use any of the Wave Entities' intellectual property outside of marketing collaterals ordered through Ms. Lee, belying GHM's implied license theory.

Notwithstanding this understanding, after it stopped working with Ms. Lee, GHM then began its broad, unauthorized, and uncommunicated provision of the Photographs to numerous third parties, who in turn further disseminated them to yet other third parties. Such broad use of the Photographs is clearly far different than Marketing Collaterals that incorporated photography. This sweeping departure from the original purpose of the Photographs would indisputably fall outside of any such implied license. In fact, this Court has already recognized the limitations on such an implied license theory in ruling on Defendant American Express's Motion to Stay on August 19, 2015, holding that American Express's use of the Photographs would fall outside any implied license theory that GHM could argue.

Indeed, if *SHL Imaging* limited an implied license to using a photograph in the marketing collateral it was purchased for but not a subsequent, separate marketing collateral of similar kind, then surely GHM's wide distribution of the Photographs to numerous third parties for unfettered use on hundreds of websites would not fall within any implied license obtained by the purchase of marketing design services from the Wave Entities. To grant such a broad license would allow

---

[4] Ironically, GHM cites the correspondence relating to these magazine placements amount to an implied license to provide the images without limitation to whomever they saw fit with sublicensing rights down infinite levels. That is not a "narrowly circumscribed" implied license and cannot follow from *SHL Imaging*.

parties to exploit the value in a copyrighted work far beyond the contemplated use without adequately paying for such value.

The other case law cited by GHM is likewise inapposite. In each instance, the implied license, narrowly prescribed, allowed for the use of the copyrighted work for the initial purpose for which it was created. *Psihoyos v. Pearson Educ., Inc.*, 855 F.Supp.2d 103 (S.D.N.Y. 2012)(fact issues remained on whether implied license existed for exact same type of use based on previous license); *Graham v. James*, 144 F.3d 229 (2d Cir. 1998)(whether implied license existed based on previous license for same use); *Keane Dealer Servs., Inc. v. Harts*, 968 F.Supp.944, 947 (S.D.N.Y. 1997)(implied license existed because copyright owner knew and failed to object to use by purchaser of software).

Here, the Photographs were created as part of the exclusive business relationship under which Wave created marketing collaterals for GHM-managed Hotels. There was no intention to permit GHM to provide the Photographs to other third parties who would then give them to yet other third parties and so on until the Photographs were widely used on disparate websites wholly unknown to GHM or Plaintiff.

Moreover, GHM's assertions that the Wave Entities did not object to the images displayed on GHM's website since 2002 are an impossibility. This misconstrues and takes out of context Wave's testimony. In fact, the GHM website Wave created was not even completed until 2005, and Wave only first learned of the infringement of its Photographs in 2012. (Lee Decl., ¶ 22; Lee September Depo., 256:12-15, 289:6 to 290:15, Ex. B to Toke Decl.) Thus, it did not know of or authorize any such use since 2002 as GHM erroneously asserts. It first learned of GHM's infringement in 2012, contemplated its best course of action, and determined to file suit to enforce its rights. No implied license could exist under these circumstances.

Even if GHM could successfully claim as a matter of law it had an implied license to use the photos on its own website, that does not support the claim of an implied license to then distribute the Photographs down multiple sublicensing levels, as this Court recognized at the hearing on Defendant American Express's motion to stay on August 19, 2015.  Moreover, even if such a broad (and frankly unprecedented) implied license existed, GHM has admitted that any such implied license would end at the time it stopped managing a particular Hotel.  (Chng Depo., 178:5 to 180:4, Ex. D to Toke Decl.)  Over the years, GHM stopped managing the majority of the Hotels.  (Chng Depo., 87:14 to 91:10, Ex. D to Toke Decl.)  Thus, once GHM had stopped managing a particular Hotel, GHM and the third parties to whom it gave the Photographs of that Hotel would be liable for infringement, to which GHM's Person Most Knowledgeable admitted. (Chng Depo., 178:5 to 180:4, Ex. D to Toke Decl.)

## V.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny GHM's Motion For Summary Judgment in its entirety and grant Plaintiff's Motion for Summary Judgment that it (a) is the owner of the Copyright in the Photographs and (b) has standing to bring this action.

Respectfully submitted.

Dated: March 14, 2016

COBALT LLP
By:_____
Nate A. Garhart
Vijay K. Toke (Pro Hac Vice)
COBALT LLP
918 Parker Street, Bldg. A21
Berkeley, CA 94710
*Attorneys for Plaintiff*
*The Wave Studio, LLC*