UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE WAVE STUDIO, LLC, a New York Limited Liability Corporation,

    Plaintiff,

v.

GENERAL HOTEL MANAGEMENT, et al.,

    Defendants.

CASE NO. 7:13-cv-09239-CS-PED

---

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1

**PLEASE TAKE NOTICE** that, pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 56.1, Plaintiff The Wave Studio, LLC ("Wave") submits that the following material facts are not genuinely disputed.

### I. GENERAL BACKGROUND AND ALLEGATIONS FROM COMPLAINT

1. The Plaintiff, The Wave Studio, LLC ("Plaintiff"), filed this lawsuit alleging copyright infringement of photographic works allegedly created by its principal, Lee Kar Yin (aka Junior Lee, hereinafter "Ms. Lee"), who is a Malaysian citizen currently domiciled in Singapore. (First Amended Complaint (hereinafter "Complaint"), attached as Ex. A to Declaration of Abigail J. Remore, dated February 12, 2015 ("Remore Decl.") at ¶¶1-2, 9).

2. Ms. Lee was commissioned either by hotel management and promotional agencies, or by hotel and travel locations directly, to create branding designs and concepts, including photographs for elite hotel properties and destination locales. (Complaint at ¶3; Declaration of Lee Kar Yin, "Lee Decl.," filed and served herewith, at ¶¶ 1, 7).

3. Ms. Lee is or was also the principal of several entities that were organized under

1

the laws of Singapore and are, or were, domiciled in Singapore, including (I) Wave-S; (2) The Wave Pte. Ltd.; (3) The Wave Studio Pte. Ltd.; and (4) The Wave Design Pte. Ltd. (hereinafter, collectively, the "Wave Entities"). (Complaint at ¶77).

4. Defendant General Hotel Management ("GHM") manages a small group of luxury hotels and resorts, primarily in Southeast Asia but also including properties in the Middle East, Europe, and the United States. (Complaint at ¶10; Declaration of Monica Chloe Chug, dated February 11, 2016 at ¶4).

5. In addition to GHM, Plaintiff has named 58 individuals or entities as Defendants in the instant lawsuit, as well as unknown entities named by Plaintiff "Does 1 through I 00." (Complaint at ¶¶11-69).

6. In addition to the instant lawsuit, Plaintiff also filed the following eight additional complaints in the Northern District of California, naming 21 additional Defendants: (i) 15-cv01364; (ii) 15-cv-00814; (iii) 15-cv-00354; (iv) 15-cv-00952; (v) 14-cv-01342; (vi) 15-cv-00818; (vii) 15-cv-00239; and (viii) 15-cv-01341 (hereinafter the "NDCA Lawsuits").

7. Aside from one of the foregoing NDCA Lawsuits, 14-cv-01342, all of the remaining NDCA Lawsuits were transferred to the Southern District of New York and are currently consolidated with the instant lawsuit.

8. Nearly all of the named defendants in this action and the NDCA Lawsuits are American companies being accused by Plaintiff of copyright infringement in the United States. (Complaint at ¶¶ 9 – 92; Complaints filed in the NDCA Lawsuits)

9. A number of the defendants in this action and NDCA Lawsuits have principal places of business located within the State of New York. (Complaint at ¶¶ 11, 20, 21, 34, 35, 37, 53, 56, 65, 66, 67, 68, 71, 76, 88, 92; Complaints filed in the NDCA Lawsuits)

10. The Court has stayed discovery in this lawsuit and all consolidated lawsuits, as to all other named defendants (hereinafter the "Stayed Defendants") except GHM. (Dkt. No. 67)

11. The Plaintiff alleges that the Singapore Wave Entities obtained United States copyright registrations for photographs of various properties ("the "Photographs") allegedly taken by Ms. Lee or the Singapore Wave Entities at the direction of GHM. (Complaint at ¶77)

12. Ms. Lee is also the principal of Plaintiff, The Wave Studio LLC, a New York limited liability company, which serves as a holding company for the enforcement of the copyrights (including related U.S. Copyright registrations) to the Photographs. (Complaint at ¶ 8; Lee Decl. at ¶ 6)

13. Defendant GHM maintains a sales office in New York, New York, which is dedicated to building brand awareness and sales for GHM-managed properties in New York as well as other parts of the United States. (Deposition of Monica Chng, "Chng Depo.," attached as Ex. D to Declaration of Vijay Toke, "Toke Decl.," filed and served herewith, at 98:24 to 102:13)

14. Defendant GHM's servers are located in Provo, Utah. (See domain name report for www.ghmhotels.com, attached as Ex. G to Toke Decl.)

15. Plaintiff alleges that all right title and interest in and to the Registrations was assigned by Ms. Lee and The Wave Studio Private Limited to Plaintiff as of November 11, 2011. (Complaint at ¶78; Ex. R to Remore Decl., Declaration of Gordon Ionwy David Llewelyn, filed herewith, dated March 14, 2016 ("Llewelyn Decl."), at ¶¶ 74-78)

16. From approximately 1995 through 2007, Ms. Lee was asked to create various marketing collaterals (e.g., brochures, flyers, banners, etc.) for various properties under the management of GHM. (Declaration of Lee Kar Yin, filed herewith, dated March 14, 2016 ("Lee Decl.") at ¶ 7.)

17. Through the "Wave Entities" Ms. Lee produced branding designs and marketing collaterals in response to each order placed over this period of time by GHM and/or the Hotels. (Lee Decl. at ¶¶ 7-8.)

18. Orders placed for marketing collaterals were most typically placed by GHM on behalf of the Hotels. (Lee Decl. at ¶ 7.)

19. The Wave Entities were the exclusive vendor hired to create the entirety of the branding and related marketing collaterals and guest experience for GHM-managed hotels, including brochures, banners, posters, flyers, press-kits, folders, magazine and press-ad-to-paper carriers, cake packaging, wine and decanter labels, amenities kits (e.g., toothbrush, shower cap, toiletry boxes), aprons, beach towels, keycards and holders, greeting cards, welcome cards, welcome back cards, postcards and packaging, location maps, umbrellas, matchboxes, notepads, pencils, drink coasters, property signages (e.g., main hotel signage, room nos. carpark, restaurant, library, the club, male and female toilets, fire escapes, lifts, lift buttons), and decals for hotel-owned vehicles (collectively, "Marketing Collateral"). (Lee Decl. at ¶ 7; Declaration of Vijay K. Toke, filed herewith, dated March 14, 2016 ("Toke Decl.") at Ex. C ("Ohletz Depo") at 14:12-15:8; 33:3-21; 45:14-46:16).

20. Most orders placed by GHM over the years were for Marketing Collateral that did not require any photographs. (Lee Decl. at ¶ 8.)

21. In order to fill those orders placed by GHM that did require photographic images, Ms. Lee conducted photo shoots at each of the various Hotels because GHM did not have adequate library of images to complete the requested Marketing Collateral. (Lee Decl. at ¶ 8; Toke Decl., Ex. A ("Lee May Depo") at 88:22-89:5.)

22. To fulfill orders that would require photography, Ms. Lee conducted photo shoots

4

of the Hotels, charging for her time and expenses for each such photoshoot. (Lee Decl. at ¶ 9; see Exemplar Production Estimate, Ex. E to Lee Decl.)

### *The Relevant Contractual Documents*

23. For nearly thirteen years, GHM and the Hotels worked with Ms. Lee and the Wave Entities in the same manner: (1) a request for work was made; (2) the Wave Entities sent a production estimate (or revised estimates if negotiations continued), (3) terms were agreed to as reflected in the final production estimate; (4) the work was completed by the Wave Entities; and (5) the Hotels paid for the work (Ohletz Depo at 89:8-90:20, attached as Ex. C to Toke Decl.; Lee Decl. ¶ 11; see exemplar Production Estimates, Ex. E to Lee Decl.)

24. These production estimates, all no more than a page or two in length, set forth the nature of the collaterals or services being provided and contained in addition a handful of bullet-pointed terms, which included the following two key terms:

*"We reserve the intellectual property copyright to all designs/soft copies/material/photography/projects undertaken."*

And

*"We will proceed on the basis that this estimate is wholly acceptable unless advised to the contrary in writing before the work is undertaken."*

(Lee Decl. Ex. E; Ohletz Depo at 90:21-91:21, attached as Ex. C to Toke Decl.; Remore Decl. at Ex. F)

25. Each production estimate was reviewed by the respective Hotel and GHM and then approved. (Ohletz Depo at 69:22-70:5, attached as Ex. C to Toke Decl.)

26. GHM's Vice President, Ralf Ohletz, reviewed each such production estimate and was aware of the terms in these production estimates under which the Wave Entities would fulfill orders placed with it. (Ohletz Depo at 69:22-70:5, attached as Ex. C to Toke Decl.)

27. The Wave Entities contracted with a cameraman, Masano Kawana, to assist in taking the Photographs. (Lee Decl. at ¶ 9; Lee May Depo at 168:4-23; Ohletz Depo at 17:13-24; 22:11-23:13.)

28. As the creative director of the Wave Entities, Ms. Lee decided all aspects of each Photograph—i.e., creative direction/concept, lighting, subject matter, angle, styling, shutter speed, exposure, etc.—and directed Mr. Kawana to capture the image when in her determination the image was properly framed and set. (Lee Decl. at ¶ 5; Lee May Depo at 177:16-179:22).

29. The Wave Entities contracted with a cameraman, Masano Kawana, to assist in taking the Photographs. (Lee Decl. at ¶ 9; Lee May Depo at 168:4-23; Ohletz Depo at 17:13-24; 22:11-23:13.)

30. Mr. Kawana also executed a confirmatory assignment in 2013 confirming that at the time of the creation of the Photographs, it was the understanding and intention of Mr. Kawana that the copyrights were to be owned by Ms. Lee (since she was the owner of the Wave Entities). (See Ex. M to Exhibit R of Remore Decl.)

31. After each photoshoot, Ms. Lee would complete post-production work on the raw Photographs obtained from the shoot (roughly 7 hours per photograph), and the edited Photographs were subsequently provided to the respective Hotel and to GHM on a CD-ROM to make reordering of marketing collaterals requiring photographs easier on a going forward basis. (Lee Decl. at ¶¶ 13, 19; Lee May Depo, Ex. A to Toke Decl. at 131:22-133.16; 138:14-20.)

32. Each of these "proprietary" libraries of Photographs—as GHM's Director and head of legal labeled them in an email to Ms. Lee—provided the Hotels and GHM with a library of photographs from which they could select images for subsequent orders. (Lee Decl. at ¶ 13; Lee May Depo at 133:11-17; Lee Decl. at Ex. F.)

6

33. The Wave Entities were paid approximately S$250,000 (Singapore Dollars) for the Photography services provided over the seven-year period between 2000 and 2007 when they worked provided photography services for the GHM-managed Hotels. (Declaration of Stanley Lai, dated February 12, 2016 ("Lai Decl.") at ¶ 6; Lee Decl. at ¶ 19; Remore Decl. at ¶ 11.)

34. Over half of the amount paid to the Wave Entities for photography services was hard costs of travel, expenses, and wages. (Lee Decl. at ¶ 19.)

35. The Wave Entities received only about S$125,000 for over 2,000 published Photographs, less when counting the additional approximately 1,000 unpublished photos. (Lee Decl. at ¶ 19.)

36. Each Photograph took an average of seven hours of post-production work to complete, meaning the Wave Entities were paid approximately S$62 (roughly US$45 at the time) per Photograph for the each photoshoot and the extensive post-production work required to complete the Photographs. (Lee Decl. at ¶ 19.)

37. After completion of the work done on each order, Ms. Lee would send an invoice to the respective Hotels, all of which the Hotels paid the Wave Entities directly. (Complaint at ¶73)

38. Between 2006 and 2007, while the GHM-Wave Entities exclusive business dealings were still ongoing, GHM informed Ms. Lee of promotional placements of Wave-owned Photographs in a few magazines (such as *Interior Design Magazine*). (Remore Decl. at Exs. G and L; Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("GHM MPA") at pg. 31.)

39.     Ms. Lee approved these one-off uses of the Photographs in magazines that GHM informed her of and provided the correct photo attribution required for that approval. (Lee Decl. at ¶ 20.)

40.     Because the placements in magazines GHM informed Ms. Lee of were limited placements in a magazine, and typically only involved use of one or a few Photographs each time, Wave had no objection to such use and did not request or require any license fee for such limited promotional use. (Lee Decl. at ¶ 20.)

### *GHM's and the other Defendants' infringement of Plaintiff's copyrights*

41.     At some point after GHM stopped working with Ms. Lee and the Wave Entities, unbeknownst to Ms. Lee, GHM disseminated the Photographs to numerous third parties and began using without authorization a number of the Photographs on a new GHM website that no Wave Entity or Ms. Lee created. (Lee Dec., ¶ 21; Amex letter brief to Court dated July 7, 2015, ECF Dkt. No. 43, attached as Ex. E to Toke Decl.).

42.     Third parties to whom GHM gave Photographs, many of whom are defendants this action, further disseminated the Photographs to yet other third parties. (See Amex letter brief to Court dated July 7, 2015, ECF Dkt. No. 43, attached as Ex. E to Toke Decl.)

43.     Numerous defendants have sought indemnity from GHM for Photographs they received and used without Plaintiff's authorization. (Toke Decl. at Ex. F)

44.     As a result of the rampant infringement of the Photographs by GHM and unrelated third parties, the Photographs have been displayed on numerous websites without Plaintiff's authorization or compensation and continue to be seen by thousands of users on a daily basis. (FAC at ¶ 112.)

45. The Wave Entities obtained copyright registrations from the United States Copyright Office for the Photographs (collectively and individually, "Copyrighted Works"). (collectively and individually, "Copyrighted Works"). (Remore Decl. at Ex. A.)

46. All of the copyright registrations for the Photographs have been duly assigned to, and are now owned by, Plaintiff. (Lee Decl. at ¶ 10; Remore Decl. at Ex. R.; Llewelyn Decl. at ¶¶ 74-78)

### *The Ownership of the Copyrights to the Photographs In Singapore*

47. There were several Wave Entities under which Ms. Lee operated her business. (Lee Decl. at ¶¶ 2-6.)

48. Wave-S, a sole proprietorship was formed under Singapore law on February 21, 1994 and dissolved on February 21, 2007. (Lee Decl. at ¶ 2; Remore Decl. at Ex. R.; Remore Decl. at Ex. B at Nos. 16-21, 118)

49. Under Singapore law, all assets of Wave-S automatically reverted to Ms. Lee, the sole proprietor of Wave-S as of the date of dissolution (i.e., February 21, 2007). (Llewelyn Decl. at ¶ 76.)

50. The Wave Private Ltd. was formed on February 8, 2002 and dissolved on August 1, 2008. (Lee Decl. at ¶ 3; Exs. D and E to Corrective Assignment (Remore Decl. at Ex. R.))

51. As part of a corporate meeting to dissolve the corporation on August 1, 2008, Wave Private Ltd. first assigned all assets, tangible and intangible, of the corporation to Ms. Lee. (Lee Decl. at ¶ 3; Exs. D and E to Corrective Assignment (Remore Decl. at Ex. R.))

52. As of August 1, 2008, Ms. Lee owned all of the assets of The Wave Private Ltd. (Lee Decl. at ¶ 4; Exs. D and E to Corrective Assignment (Remore Decl. at Ex. R.); Llewelyn Decl. at ¶ 76.)

9

53. The Wave Design Private Ltd. was formed on July 1, 2005. (Lee Decl. at ¶ 5; Ex. F to Corrective Assignment (Remore Decl. at Ex. R.))

54. On July 27, 2007, The Wave Design Private Ltd. changed its name to The Wave Studio Private Ltd. (Lee Decl. at ¶ 5; Ex. G to Corrective Assignment (Remore Decl. at Ex. R.))

55. The Wave Studio Private Ltd. still exists and is in operation today. (Lee Decl. at ¶ 5)

56. Ms. Lee was (and remains) the sole shareholder of The Wave Design Private Ltd. (now called The Wave Studio Private Ltd.). (Lee Decl. at ¶ 5; Ex. G to Corrective Assignment (Remore Decl. at Ex. R.))

57. Under Singapore law, as of August 1, 2008, the assets of Wave-S and Wave Private Ltd. were owned by Ms. Lee and the assets of The Wave Studio Private Ltd. (fka The Wave Design Private Ltd.) were owned by The Wave Studio Private Ltd., which comprised all of the copyrights to the Photographs owned by those two entities. (Llewelyn Decl. at ¶¶ 76, 78; Lee Decl. at ¶¶ 2-6; Remore Decl., Ex. R.)

58. On or about September 15, 2011, Ms. Lee formed Plaintiff The Wave Studio LLC for the purposes of holding, administering, and enforcing the copyrights of the Wave Entities against U.S. infringements. (Lee May Depo at 18:22-21:2; FAC at ¶ 8; Lee Decl. at ¶ 6.)

59. Ms. Lee and the Wave Entities entered into a series of assignments to effectuate this purpose. (Corrective Assignment, (Remore Decl. at Ex. R)) As part of that process, Ms. Lee executed a number of assignments in 2011:

- November 11, 2011 assignments by The Wave Private Ltd. and Wave-S to Plaintiff (the "2011 Wave-S and Wave Private Ltd. Assignments")

10

- An assignment from Wave-S to The Wave Studio Private Ltd., which was drafted in 2011 but backdated by Ms. Lee to 2007, and an assignment from The Wave Private Ltd. to The Wave Studio Private Ltd., which was drafted in 2011 but backdated by Ms. Lee to 2008 (collectively referred to as the "Erroneous Backdated Assignments).

- A November 11, 2011 assignment from Ms. Lee to Plaintiff (the "Lee Catchall Assignment")

- A November 11, 2011 assignment from The Wave Design Private Ltd. (which by that time had changed its name to The Wave Studio Private Ltd.) to Plaintiff (the "Wave Design Assignment")

(Corrective Assignment (Remore Decl. at Ex. R.))

60.     The 2011 Wave-S and Wave Private Ltd. Assignments, the Lee Catchall Assignment, and the Wave Design Assignment were recorded with the U.S. Copyright Office on or about November 15, 2011. (Exs. J, K, L to Corrective Assignment (Remore Decl. at Ex. R.))

61.     During the course of this litigation, Plaintiff learned that the 2011 Wave-S and Wave Private Ltd. Assignments, as well as the Erroneous Backdated Assignments, were ineffective, and therefore void *ab initio*, because at the time they were created Wave-S and Wave Private Ltd. had been dissolved years prior and their assets already transferred to Ms. Lee by operation of Singapore law or corporate resolution. (Lee Decl. at ¶¶ 23-31; Toke Decl. at Ex. B ("Lee Sept. Depo") at 297:22 to 331:19.)

62.     Plaintiff determined that the Lee Catchall Assignment needed to be clarified because, though it was a valid and effective assignment, it referenced the ineffective 2011 Wave-S and Wave Private Ltd. Assignments. (Lee Decl. at ¶ 29.)

11

63. Plaintiff also learned that the Wave Design Assignment, while valid and effective, needed clarification because it named the Assignor by its prior name, The Wave Design Private Ltd., instead of its current name, The Wave Studio Private Ltd. (Lee Decl. at ¶ 29)

64. The Erroneous Backdated Assignments were not signed in 2007 and 2008 respectively but rather they were drafted and signed for the first time in 2012. (Remore Decl. at Ex. B. at Nos. 9-13 and 138-142).

65. To clarify these errors and make sure the record with the Copyright Office showed the clear chain of title created by the Lee Catchall Assignment and the Wave Design Assignment, Plaintiff created a Corrective Assignment setting forth this chronology and clarifying the assignments (the "Corrective Assignment"). (Lee Decl. at ¶¶ 23-31; Lee Sept. Depo at 297:22 to 331:19; Corrective Assignment (Remore Decl. at Ex. R.))

66. The Corrective Assignment merely made clear that the erroneous assignments were unnecessary and ineffective because the entities that they entered into and clarified the errors made in the Lee Catchall Assignment and the Wave Design Assignment in order to clarify that the chain of title was clear. (Lee Decl. at ¶ 29; Lee Sept. Depo at 297:22 to 331:19; Remore Decl. at Ex. R.)

67. On September 4, 2015, the Corrective Assignment was recorded in the United States Copyright Office. (Remore Decl. at Ex. R; Remore Decl. at Ex. B at No. 200).

68. In the process of preparing the Corrective Assignment, Plaintiff learned that the claimant in some of the copyright registrations for the Photographs inadvertently listed the incorrect claimant. (Lee Decl. at ¶ 32.)

69. Contemporaneously with the recordation of the Corrective Assignment, Plaintiff filed corrections with the Copyright Office to correct these inadvertent errors for the record. (Lee Decl. at ¶ 32; Ex. I to Lee Decl.)

70. The form corrections filed with the Copyright Office corrected the registrations to replace Ms. Lee Kar Yin as the claimant for registrations that had originally erroneously listed Wave-S or The Wave Private Ltd. as the claimant and replaced the name The Wave Studio Private Ltd. instead of The Wave Design Private Ltd. to reflect the company's correct name at the time the applications were filed. (Lee Decl. at ¶ 32; Ex. I to Lee Decl.)

Respectfully submitted.

Dated: March 14, 2016                   COBALT LLP

                                        By: _____
                                        Nate A. Garhart
                                        Vijay K. Toke (Pro Hac Vice)
                                        COBALT LLP
                                        918 Parker Street, Bldg. A21
                                        Berkeley, CA 94710

                                        *Attorneys for Plaintiff*
                                        *The Wave Studio, LLC*