**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

THE WAVE STUDIO, LLC,

               Plaintiff,

vs.

GENERAL HOTEL MANAGEMENT, LTD.
et al.,

               Defendants.

Civil Action No. 13-cv-09239-CS-PED

*Document Filed Electronically*

Oral Argument Requested

---

**DEFENDANT GENERAL HOTEL MANAGEMENT, LTD.'S REPLY MEMORANDUM**
**OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN**
**OPPOSITION TO PLAINTIFF THE WAVE STUDIO, LLC'S CROSS MOTION FOR**
**SUMMARY JUDGMENT**

---

**CHIESA SHAHINIAN & GIANTOMASI PC**
One Boland Drive
West Orange, NJ  07052
(973) 325-1500
Attorneys for Defendant
General Hotel Management, Ltd.

On the Brief:
Howard J. Schwartz, Esq.
Abigail J. Remore, Esq.
Ilana Levin, Esq.

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................1

LEGAL ARGUMENT ...........................................................................................7

I.   PLAINTIFF'S OPPOSITION AND CROSS-MOTION RELIES
     UPON A SHAM DECLARATION AND HEARSAY
     DOCUMENTS. ...........................................................................................7

     A.   Plaintiff's contradictions regarding the author of the
          Photographs. ...................................................................................9

     B.   Plaintiff's contradictions regarding the ownership and
          assignment of rights in and to the Photographs alleged to be
          infringed in this proceeding. ..........................................................12

     C.   Plaintiff's fantastic assertions regarding the editing of the
          Photographs. ..................................................................................14

     D.   Other infirmities in Ms. Lee's declaration...................................15

II.  IN ADDITION TO MS. LEE'S SHAM DECLARATION,
     PLAINTIFF ATTEMPTS TO RELY ON DOCUMENTS THAT
     ARE NOT CURRENTLY BEFORE THE COURT, AND EVEN IF
     THEY WERE, WOULD BE INADMISSIBLE. ....................................17

     A.   The 2013 "Confirmatory Assignment" allegedly executed
          by Masano Kawana is inadmissible hearsay. .............................17

     B.   Production estimates Plaintiff relies on as its "contracts" are
          not before this Court, and even if they were, are hearsay,
          and inadmissible under FED. R. EVID. 1006. ...........................19

III. PLAINTIFF'S ARGUMENTS FAIL TO CONFER STANDING
     ON PLAINTIFF TO ASSERT ITS CLAIMS FOR COPYRIGHT
     INFRINGEMENT. ....................................................................................20

     A.   Plaintiff's attempt to rely on case law that is not binding on
          this Court does not defeat an analysis under *Itar-Tass* which
          unmistakably holds that Singapore Law applies to determine
          ownership of the copyrights in the works at issue....................20

     B.   The analysis of Plaintiff's "expert", Professor Llewelyn,
          relies on erroneous factual assumptions, contains inaccurate
          legal analysis and should be given little weight. ......................22

C.    Plaintiff misconstrues the contents of the communications with Kendall Oei, and even if Plaintiff stated their contents accurately, they should be accorded little weight. ...................25

D.    Professor Llewelyn's conclusions of Singapore law are misconceived and incorrect. ...................26

IV.    PLAINTIFF'S PROCEDURAL ARGUMENTS ARE UNSOUND ...................27

A.    Plaintiff's arguments regarding *forum non conveniens* are unsound. ...................27

B.    Plaintiff's arguments regarding personal jurisdiction are unsound. ...................30

C.    Plaintiff's arguments that the hotels are not indispensable parties are unsound. ...................32

V.    PLAINTIFF'S ARGUMENTS THAT THERE WAS NO IMPLIED LICENSE FOR GHM OR THE HOTELS TO USE THE PHOTOGRAPHS AS THEY SAW FIT TO MARKET THE HOTELS ARE TENUOUS AND INACCURATE. ...................33

VI.    PLAINTIFF'S UNSUPPORTED ARGUMENTS FAIL TO OVERCOME THE FATAL ERRORS IN PLAINTIFF'S CHAIN OF TITLE, WHICH HAVE BECOME EVEN MORE COMPLICATED NOW THAT PLAINTIFF IS ARGUING THAT MR. KAWANA IS THE AUTHOR. ...................37

CONCLUSION ...................38

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*,
    944 F.2d 971 (2d Cir. 1991) ..................................................................................12, 24

*Byrne v. Broadcasting Corp.*,
    132 F. Supp. 2d 229 (S.D.N.Y. 2001) ............................................................28

*Covelman v. Hotel St. Regis*,
    No. 14-cv-5757, 2016 WL 762661 (D.N.J. Feb. 25, 2016)....................................30

*Delaney v. Bank of Am. Corp.*,
    766 F.3d 163 (2d Cir. 2014) ......................................................................17

*Desiano v. Warner-Lambert & Co.*,
    467 F.3d 85 (2d Cir. 2006) ........................................................................21

*Durham Indus., Inc. v. Tomy Corp.*,
    630 F.2d 905 (2d Cir. 1980) ......................................................................20

*Dynamic Solutions Inc. v. Planning and Control, Inc.*
    646 F.Supp. 1329 (S.D.N.Y. 1986) ..............................................................20

*Genpharm Inc. v. Pliva-Lachema a.s.*,
    361 F. Supp. 2d 49 (E.D.N.Y. 2005) ........................................................29, 30

*Hawkins v. Steingut*,
    829 F.2d 317 (2d Cir. 1987) ......................................................................21

*In re Hellas Telecomm. (Luxembourg) II SCA*,
    535 B.R. 543 (S.D.N.Y. 2015) ....................................................................29

*Kopolowitz v. Deepdene Hotel & Tennis Club*,
    464 F. Supp. 677 (S.D.N.Y. 1979) ..............................................................30

*Marvel Characters, Inc. v. Kirby*,
    726 F.3d 119 (2d. Cir. 2013) ......................................................................33

*Moll v. Telesector Resources Grp., Inc.*,
    760 F.3d 198 (2d Cir. 2014) ........................................................................7

*Montgomery Cnty. Maryland v. Metromedia Fiber Network*,
    326 B.R. 483 (S.D.N.Y. 2005) ....................................................................21

*Perma Research & Dev. Co. v. Singer Co.*,
    410 F.2d 572 (2d Cir. 1969) ........................................................................7

*RIGroup LLC v. Trefonisco Mgmt. Ltd.*,
  949 F. Supp. 2d 546 (S.D.N.Y. 2013) ................................................................27

*Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.*,
  769 F.3d 807 (2d Cir. 2014) ................................................................10

*Seoul Broad. Sys. Int'l, Inc. v. Young Min Ro*,
  784 F. Supp. 2d 611 (E.D. Va. 2011) ................................................................22

*SHL Imaging, Inc. v. Artisan House, Inc.*,
  117 F. Supp. 2d 301 (S.D.N.Y. 2000) ................................................................35, 36

*Tripmasters, Inc. v. Hyatt Int'l Corp.*,
  696 F. Supp. 925 (S.D.N.Y. 1988) ................................................................30

*Welinsky v. Resorts of the World D.N.V.*,
  839 F.2d 928 (2d Cir. 1988) ................................................................30

**Statutes**

17 U.S.C. § 410(c) ................................................................22

17 U.S.C. § 501(b) ................................................................12

Section 32(1) of the Legal Profession Act ................................................................23

Section 33(1) of the Legal Profession Act ................................................................23

Section 30(5) of the Singapore Copyright Act ................................................................1, 4, 5, 6, 26

**Other Authorities**

COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 405 ................................................................37

COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 2305 ................................................................18

FED. R. EVID. 801 ................................................................17, 25

FED. R. EVID. 802 ................................................................17

FED. R. EVID. 803 ................................................................18, 19

FED. R. EVID. 1005 ................................................................19

FED. R. EVID. 1006 ................................................................19

N.Y. C.P.L.R. § 301 ................................................................30, 31

## PRELIMINARY STATEMENT

The simplest solution is usually the correct one, according to philosophical theory.[1] According to Section 30(5) of the Singapore Copyright Act, the commissioning party owns the copyright in photographs it commissions. The Hotels in question commissioned the Photographs in question. Lee Kar Yin, aka Jr. Lee ("Ms. Lee"), the principal of the various Singapore Wave Entities, delivered CD-ROMs of the Photographs to the Hotels. The Hotels paid the various Singapore Wave Entities for the Photographs. The Hotels own the copyrights.

There is no need for intellectual contortions, for fake assignments, for backdated assignments from non-existing corporations, for copyright registration corrections filed during this very litigation mere days before the deposition of Plaintiff's principal, for reference in Plaintiff's brief to documents not produced in discovery, or for alleged assignments not admissible in evidence. Neither is there need for such nonsense as "Erroneous Backdated Assignments," "Catchall Assignment," "Confirmatory Assignments" or "Corrective Assignments," to use Plaintiff's terms. Defendants and this Court should not have to slog through the various theories advanced by Plaintiff at different times to see if any facts are lurking in the record to support any of Plaintiff's changing theories.

For example, Plaintiff pleaded that (1) Ms. Lee established a widely successful business in travel and hotel photography, including photographing the Hotels (Declaration of Abigail J. Remore, dated February 12, 2016 ("Remore Feb. Decl.") at Ex. A (First Amended Complaint ("Compl.")) ¶ 70); (2) her business was promotional in nature; and (3) she was commissioned by her clientele to photograph certain items. (Compl. ¶ 71). Plaintiff pleaded that Ms. Lee was

---

[1] For example, the Occam's razor principle can be interpreted as stating "Among competing hypotheses, the one with the fewest assumptions should be selected."

commissioned by General Hotel Management, Ltd. ("GHM") to shoot a series of photographs for the Hotels and entered into a single agreement for her to photograph the Hotels and was to be paid by the Hotels (Compl. ¶ 73). Plaintiff pleaded that, on or around August 2003, Ms. Lee submitted her photographs as allegedly agreed and on November 11, 2011, Ms. Lee allegedly assigned all of her right, title and interest in the alleged copyrighted works to Plaintiff. (Compl. ¶¶ 74, 78).

During discovery, Ms. Lee acknowledged that, contrary to the allegation in Compl. ¶ 73, there was no single agreement regarding the Photographs. (*See* Plaintiff's Statement of Material Facts ("Pl.'s 56.1 St.") ¶ 23; Remore Feb. Decl. at Ex. C (Lee May Dep.), 189:14-23). She acknowledged that, contrary to the allegation in Compl. ¶ 74, she had no idea what occurred in August 2003 (Declaration of Abigail J. Remore, dated April 14, 2016 ("Remore April Decl.") at Ex. 1 (Lee May Dep.), 201:19-202:4). Ms. Lee acknowledged that, contrary to the allegation in Compl. ¶ 78, she did not assign all of her right, title and interest to the alleged copyrighted works (she now claims that the assignments were deemed by her to be null and void ab initio because they are allegedly ineffective) (*See* Declaration of Lee Kar Yin ("Lee Decl.") at ¶ 28).

At her first deposition, Ms. Lee acknowledged that she assigned alleged copyrights in photographs allegedly owned by two of the Singapore Wave Entities days before she dissolved each of the entities. Each assignment prior to dissolution rendered her subsequent actions invalid with respect to filing US copyright registrations because the registrant was a non-existing corporation and the assets claimed to be owned in the copyright registrations had previously been assigned. Ms. Lee acknowledged that she backdated those assignments, but she did not admit the assignments – which of course are not pleaded in the First Amended Complaint – were

backdated until confronted with the refusal of a notary at the US Embassy in Singapore to notarize documents in 2012 that were dated four or five years earlier.

Similarly, at her first deposition, Ms. Lee vigorously maintained that she and she alone was the photographer of the Hotel Photographs. She denigrated the work of Masano Kawana ("Mr. Kawana") swearing that he "just pushed the button" on the camera. (Remore Feb. Decl., Ex. C (Lee May Dep.), 178:3-179:6).

In addition to all of the convoluted backdated assignments between and among the various Wave Entities, Ms. Lee was also confronted during her deposition with yet another backdated document: she testified about a document allegedly signed in 2005 which, by the document's own words, stated that copyrights in the Hotel Photographs belong to <u>both</u> Ms. Lee (and the Wave Entities) and Kawana and his business, Irieeyes, a Singapore entity. The 2005 document states that "[a]ll Photographs and rights contained therein, including copyright, remain the sole and exclusive properties of the Design Agency [Wave] and Photographer [Kawana/Irieeyes]". (Lee Decl. at Ex. D). Although dated 2005, the document by its terms referred to photographs taken beginning in 2000. Taking the standard course for scoundrels when confronted by written signed evidence harmful to their position, Ms. Lee testified that the unambiguous words in the 2005 assignment signed by her did <u>not</u> reflect her understanding of the agreement with Mr. Kawana. Rather than acknowledging that she and Kawana/Irieeyes owned the copyrights as set forth in writing, she claimed that only she and/or the Singapore Wave Entities owned the Photographs.

The third phase of Ms. Lee's scheme to claim ownership of copyrights seems to be that her rights depend on yet another theory, notwithstanding everything that was pleaded, notwithstanding her condescending and demeaning description of Mr. Kawana as someone who

3

merely pushed the button, and notwithstanding two corporate dissolutions, at least two backdated assignments, one agreement with Kawana in 2005 which Ms. Lee now swears, despite clear unambiguous language that Kawana/Irieeyes also owned the copyrights, did not accurately reflect Ms. Lee's understanding that she and the Singapore Wave Entities solely owned the Photographs and despite 22 supplementary copyright registrations which were filed in September of 2015 during this very litigation to clarify or correct mistakes in the Plaintiff's previous copyright registrations. Indeed, even the latest version of Plaintiff's "corrected" registrations list the Singapore Wave Entities as the authors, contrary to Plaintiff's new theory that Mr. Kawana was the author. (Lee Decl. at Ex. I). Additionally, these original and corrected copyright registrations, where Mr. Kawana is mentioned at all, say only that Mr. Kawana was an employee for hire. (Remore Feb. Decl. at Ex. S) (Lee Decl. at Ex. I).

The spanking new theory advanced by Plaintiff's expert now is that Mr. Kawana really was the photographer (despite the pleadings, Ms. Lee's sworn deposition testimony and the September 2015 corrected registrations to the contrary), not merely Ms. Lee's button-pusher. The expert abandons any pretense that the backdated assignments matter because he does not mention them in his report. The expert then postulates that because Ms. Lee and the Singapore Wave Entities hired Mr. Kawana, Ms. Lee and the Singapore Wave Entities are the commissioning parties pursuant to Section 30(5) and thereby own the copyright in the Photographs (ignoring the estimates Mr. Kawana sent to Wave where he claimed ownership of the copyright). Miraculously for Plaintiff's expert though, the Hotels who hired Ms. Lee and the Singapore Wave Entities are not the commissioning parties for reasons which seem to be pedantic, arid and beyond any degree of common sense. That is to say, the expert asserts that

Section 30(5) applies to Ms. Lee's (and the Singapore Wave Entities) commissioning of Mr. Kawana but NOT to the Hotels' commissioning of Ms. Lee (and the Singapore Wave Entities).

Needless to say, neither that new theory nor facts supporting it were pleaded in the First Amended Complaint. The Hotels are not named as defendants and Mr. Kawana is not even mentioned in the Amended Complaint as the photographer and necessary source of Plaintiff's alleged copyright ownership.

Plaintiff's expert also tosses in the argument that Mr. Kawana was the author of the Photographs and a signatory to a suspicious hearsay 2013 document between Mr. Kawana and Ms. Lee which allegedly supersedes (or possibly negates) the 2005 document (which stated that the copyrights in the Photographs are owned by both (a) Ms. Lee and her company or companies; and (b) Mr. Kawana or his company. If the expert is correct that Mr. Kawana is the author, then the September 2015 attempts to correct the copyright registrations fail because the Singapore Wave Entities (not Mr. Kawana) are listed as the authors.

The expert argues that the 2013 document is a valid assignment to Ms. Lee. Unfortunately, the 2013 agreement is complete hearsay and inadmissible. Equally unfortunately for Plaintiff, the agreement does not transfer the right to sue for prior infringements under either Singapore or U.S. law, and therefore does not give Plaintiff standing to sue.

Plaintiff has cross-moved for summary judgment. The motion is hopelessly deficient. Plaintiff relies on production estimates between some Singapore Wave Entities and the Hotels, the majority of which are not even signed by representatives of the Hotels. (Remore Feb. Decl. at ¶ 10). Plaintiff wants the Court to recognize these documents as proving that the Singapore Wave Entities "reserved" copyright in "photographs". Obviously, unsigned documents are not binding on the Hotels or GHM. To the extent there are production estimates allegedly signed by

a hotel employee, the production estimates are hearsay. Plaintiff wants the documents, allegedly signed by two non-parties (both the Singapore Wave Entity and the Hotel), to stand for the truth of what Plaintiff claims they assert: that the document is proof that the Singapore Wave Entity reserved copyright in photographs, ousting the application of Section 30(5).

Yet, Plaintiff only submitted three production estimates on its motion, none of which reference photo shoots. (Lee Decl. at Ex. G). The Court cannot consider documents not put forward as exhibits and even if put forward as exhibits, the documents cannot be considered because they are classic hearsay statements.

Further, Plaintiff itself produced two quotations from Mr. Kawana's corporation Irieeyes to Ms. Lee and Wave-s Design Pte. Ltd. dated in 2004 which state "All completed work will be the property of the clients for eternity and worldwide use upon receiving full payment only. However, the copyright of those works should remain to the photographer [Irieeyes and/or Mr. Kawana]." (Remore April Decl. at Exs. 5 and 6). The Irieeyes quotation documents establish that such boilerplate, generic language on a form was ignored by Ms. Lee and the Singapore Wave Entities and was of no legal consequence to them. This is precisely what GHM and Mr. Ohletz asserted about the similar generic language in the Singapore Wave Entities' production estimates.

Thus, under even under Plaintiff's theories, the Singapore Wave Entities did not own the copyright because the Irieeyes quotations asserted that Irieeyes owned the copyright. Additionally, the 2005 agreement said Irieeyes and Wave-S and The Wave Pte. Ltd. both equally owned the copyright. And, as Plaintiff's expert stated in his report, Mr. Kawana and Irieeyes did not allegedly transfer those rights (or more accurately "confirm the assignment") until 2013. Declaration of Gordon Ionwy David Llewelyn, dated March 11, 2016 ("Llewelyn Decl.") ¶ 26.

That alleged confirmation was not recorded in the U.S. copyright office until the day before Ms. Lee's first deposition on May 21, 2015. There is no explanation as to why a document allegedly signed in 2013 was not recorded until 2015 during this litigation. All of those documents are hearsay and cannot establish on this motion that Mr. Kawana and Irieeyes owned, and transferred alleged ownership in, the Photographs to the Singapore Wave Entities or Ms. Lee. Under both U.S. and Singapore law, the 2013 assignment did not transfer the right to sue. Furthermore, Plaintiff's newly argued primacy of Mr. Kawana and Irieeyes significantly adds urgency to GHM's motion to dismiss on *forum non conveniens* grounds.

## LEGAL ARGUMENT

### I.  PLAINTIFF'S OPPOSITION AND CROSS-MOTION RELIES UPON A SHAM DECLARATION AND HEARSAY DOCUMENTS.

Plaintiff and its principal, Ms. Lee, have shown that they are willing to say whatever they want, or believe is necessary, to get what they want, without regard for the truth. Ms. Lee's Declaration dated March 16, 2016 should be given little, if any, weight. *See Moll v. Telesector Resources Grp., Inc.,* 760 F.3d 198, 205 (2d Cir. 2014) ("'[I]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as procedure for screening out sham issues of fact.' Thus, factual issues that a party creates by filing an affidavit crafted to oppose a summary judgment motion that contradicts a party's prior testimony are not 'genuine' issues for trial." (quoting *Perma Research & Dev. Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir. 1969))). Indeed, Ms. Lee's own declaration admits such a contradiction to prior deposition testimony and the creation of a sham issue of fact. By way of one example only, Ms. Lee claims the following in paragraph 22 of her Declaration:

> One point of clarification I would like to make from my deposition in May, 2015, which I also corrected in my deposition on September 9, 2015,

> is that counsel for GHM seemed to be incorrectly suggesting that I was aware GHM was using my Photographs on its website as of 2002. This is not correct. I created a GHM website in 2005 and was not aware at that time of GHM's using any of the Wave photographs on a prior website. **What I meant to say at my deposition was** that at some point in or after 2012 (that is, after my working relationship with GHM and the Hotels ended) I learned for the first time that GHM had started using a new website that neither I nor any of the Wave Entities created for it, which included a number of my Photographs without my knowledge or authorization.

Lee Decl. at ¶ 22. (emphasis added). Ms. Lee testified at her first deposition that in 2002 she was aware that GHM was using her photographs on its website without complaint from her that such use violated her copyright. (Remore Feb. Decl. at Ex. C (Lee May Dep.), 107:9-108:17). This statement is further supported by the documents produced in this case, including a production estimate dated in 2004 for "GHM Website Design." (Remore April Decl. at Ex. 4). Ms. Lee also testified she was aware that the website for the Setai Hotel used her photographs in 2005 without her complaining of copyright infringement. (Remore Feb. Decl. at Ex. C (Lee May Dep.), 113:9-114:1). This establishes as a fact that she knew her photographs were being used on websites on the internet, without any claim by her that she owned the copyright. This destroys her claim that the Hotels could not use the Photographs except for in the marketing collateral. She knew her photographs were being used on websites, and did not complain.

Along similar lines, Ms. Lee attempts in her declaration to correct documents that in her (or her attorney's) view, do not help her case that were brought to her attention by GHM's counsel.[2] Plaintiff's mid-litigation "corrective" assignments and supplementary registrations are similar to Ms. Lee's sham declaration, and should be treated as such. Another sham correction occurred when Ms. Lee swore in her declaration that "GHM disseminated the Photographs to numerous third parties" but testified at her deposition that she had no idea how the Photographs

---

[2] *See, e.g.*, Lee Decl. at ¶¶ 28, 32.

wound up in the hands of said third parties.  (Lee Decl. at ¶ 21; *contrast, e.g.*, Remore April

Decl. at Ex. 2 (Lee Sept. Dep.), 265:5-20; 266:15- 267:5; 274:7-25; 282:18-23).[3]

### A.    Plaintiff's contradictions regarding the author of the Photographs.

Despite Plaintiff's constantly morphing factual and legal theories, Plaintiff's First

Amended Complaint remains the operative pleading in this case.  It explicitly alleges that Ms.

Lee herself (not Mr. Kawana) photographed the Hotels at issue (Compl. ¶ 70).  Plaintiff further

alleges that Ms. Lee was "exclusively commissioned by GHM to shoot a series of photographs at

the Hotels" and that "GHM would arrange for Ms. Lee to photograph certain hotel properties."

(Compl. ¶ 73).  Plaintiff further alleges that the rights in the Photographs at issue remained

exclusively with Ms. Lee.  (Compl. ¶ 75).  The First Amended Complaint completely fails to

allege that Ms. Lee subcontracted with a photographer (or cameraman, depending on how

Plaintiff wishes to characterize him on any given day), Mr. Kawana, through his business entity

Irieeyes Pte. Ltd. ("Irieeyes") to take the Photographs.   The majority of the copyright

registrations dated in 2010 and 2011 alleged to be infringed in this action indicate that one of the

Singapore Wave Entities was an "employer for hire" of Mr. Kawana.  (Remore Feb. Decl. at Ex .

S).  Yet, no work-for-hire agreement between Ms. Lee or any of the Singapore Wave Entities

and Mr. Kawana or Irieeyes executed at the time the Photographs were taken has been produced.

When questioned during her May 2015 deposition, Ms. Lee was adamant that she was the

photographer, and that Mr. Kawana was merely the "cameraman," who pushed the button to

capture an image when she told him to.[4]  Plaintiff further testified that although the document

---

[3]  Plaintiff's attempts to rely on a letter sent by an attorney to the Court to support this factual
claim are improper.  *See* Pl.'s Br. at 6-7.  It is hearsay and not competent admissible factual
evidence.
[4]  For example, at her initial deposition in May 2015, Ms. Lee testified as follows:
A:  He was the cameraman.  I hired him based on that.

that it produced dated 2005 between Irieeyes and Wave-s and The Wave Pte. Ltd. explicitly states that "[a]ll Photographs and rights contained therein, including copyright, remain the sole and exclusive properties of the Design Agency and Photographer," that it was not her intention when she signed the agreement for Irieeyes to own the Photographs.  (Remore Feb. Decl. at Ex. C, (Lee May Dep), 180:8-181:14; Lee Decl. at Ex. D (emphasis added)).  Instead, Ms. Lee stated that the agreement really meant that the relevant Singapore Wave Entity owned all works created, but that Mr. Kawana had the right to use the Photographs on his website, for promotion, for teaching or for exhibition.  (Remore Feb. Decl. at Ex. C (Lee May Dep.), 180:5-182:19).  Ms. Lee testified that it was her intention from the beginning of her relationship with Mr. Kawana and Irieeyes that she or the Singapore Wave Entities owned the copyrights.  (Remore Feb. Decl. at Ex. C (Lee May Dep.) 182:17-183:10).

Of course, her testimony violates the parol evidence rule and should not be considered. *See Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.,* 769 F.3d 807, 815-16 (2d Cir. 2014) ("In New York, it is well settled that extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face." (quotation omitted)).  Plaintiff is offering evidence directly contrary to the unambiguous terms of the 2005 document.  In addition, Plaintiff produced two documents, dated in 2004, evidencing price estimates provided by Irieeyes to Ms. Lee that include language stating that "the copyright of

---

Q: Okay.
A: When I say okay to shoot, he shoots, including the shutter speed, including the composition.
Q: Okay.  So you're there at the same time he is?
A: I photographed those.  He just pushed the button when I say it's okay to push.
...
Q: So is it true that every time Masano physically took a picture, you were there with him, for the photographs that are involved in this lawsuit?
...
A: I am with him, but I would disagree that he physically took the picture.  He just pressed the button when I say it's okay.  (Remore Feb. Decl. at Ex. C (Lee May Dep.), 178:3-179:6)

those works should remain to the photographer [Irieeyes and Kawana]." (Remore April Decl. at Exs. 5 and 6). These documents contradict Ms. Lee's claim that it was the parties' intention as early as the year 2000 that Wave would exclusively own all of the rights to the Photographs.

Ms. Lee further testified that an alleged agreement dated October 1, 2013 (that Mr. Kawana was allegedly paid to sign) was intended to "put in words what it really meant from day one" into writing. (Remore Feb. Decl. at Ex. C (Lee May Dep.), 183:7-10; *see also* Remore April Decl. at Ex. 1 (Lee May Dep), 186:1-187:3; *see also* Remore April Decl. at Ex. 7). Even for Ms. Lee, this document is highly suspicious. It was not produced to GHM with the majority of documents initially produced via hard drive, even though, if the document really existed, it was in existence prior to the institution of this lawsuit and would have been produced with the initial documents. Instead, this document was handed to GHM's lawyers on May 21, 2015 during Ms. Lee's first deposition. (Remore April Decl. at Ex. 1 (Lee May Dep), 184:3-11). Ms. Lee claimed she paid Mr. Kawana $4,000 but no dated corroboration of such a payment has been produced. The document is never mentioned in the First Amended Complaint, nor was it mentioned in any of Lee's voluminous registrations, supplementary registrations or other flailing attempts to claim copyright ownership in the allegedly infringed Photographs.

In any event, the document is inadmissible in this Motion for Summary Judgment because it is complete hearsay. Plaintiff offers it for the truth of what it asserts, that Mr. Kawana and Irieeyes – neither of whom are parties in this case – "hereby confirms assignment to Assignee of all of Assignor's rights, title and interest worldwide, in the Works, together with any and all other rights and interests arising out of, and in connection with, or in relation to the Works, including derivative works."

Finally, the document does not transfer the right to sue for infringements prior to October 1, 2013. It is well-settled and beyond dispute that specific language authorizing the right to sue for prior infringements is required by 17 U.S.C. § 501(b). *See ABKCO Music, Inc. v. Harrisongs Music, Ltd.,* 944 F.2d 971, 980 (2d Cir. 1991) ("[A] copyright owner can assign its copyright but, if the accrued causes of action are not expressly included in the assignment, the assignee will not be able to prosecute them." (citations omitted)). Singapore law is the same on this issue. (Declaration of Dr. Stanley Lai Tze Chang, SC, dated April 13, 2016 ("Lai April Decl.") at ¶ 30).

Plaintiff also asserts that the document attached as Exhibit D to Ms. Lee's declaration in support of its brief specifically states "that Mr. Kawana may not have a direct contractual relationship with the Hotels or GHM." (Pl.'s Br. at 24–25). That Exhibit contains no such language. (*See* Lee Decl. at Ex. D).

### B.    Plaintiff's contradictions regarding the ownership and assignment of rights in and to the Photographs alleged to be infringed in this proceeding.

As set forth in further detail in GHM's Memorandum of Law dated February 12, 2016, Plaintiff's factual assertions relating to the ownership of the allegedly infringed Photographs have been, at best, a tangled web of self-proclaimed mistakes and after-the-fact corrections. Now, with the new arguments asserted in its brief and supporting documents, instead of presenting a "straightforward chain of title," as Plaintiff asserts in its moving papers, the issues of Plaintiff's ownership and standing are even more obtuse.

First, Plaintiff references a "Catchall Assignment" dated November 11, 2011 from Ms. Lee to Plaintiff, and instead of attaching it refers to an exhibit to GHM's papers. (Pl.'s Br. at 9). GHM's papers served on February 12, 2016 contained no such document. To the extent a "Catchall Assignment" dated November 11, 2011 exists, it has not been submitted to the Court on this motion. Plaintiff's brief further cites to numerous documents that are not before the

Court, including Exhibits J, K and L to Plaintiff's "Corrective Assignment." (Pl.'s Br. at 9; Pl.'s 56.1 St. ¶ 60). Plaintiff's citations to these numerous convoluted assignment agreements refer only to the "Corrective Assignment," which was created by Plaintiff and are otherwise not before the Court where Plaintiff claims they are.[5] Plaintiff neglects to cite to any of the actual assignments themselves. Plaintiff has the obligation to place before the Court exhibits it wishes to rely upon.

Second, Plaintiff's change with respect to Mr. Kawana's role as the author and photographer further complicates the issue of ownership of the relevant copyright registrations. Plaintiff now asserts that Mr. Kawana, not Ms. Lee, was the original author of the Photographs, and that his rights were assigned and memorialized via a "confirmatory assignment agreement" executed in 2013. Plaintiff again fails to present this 2013 document to the Court. Plaintiff also references earlier agreements between Mr. Kawana and the Wave Entities, in particular another agreement between the Singapore Wave Entities and Mr. Kawana dated in 2006, though only one, allegedly executed in 2005, has been produced to GHM and is currently before the Court (Lee Decl. at Ex. D) (Llewelyn Decl. at ¶ 26 n. 13). GHM has never seen an agreement dated in 2006 between the Singapore Wave Entities and Mr. Kawana (even though Plaintiff's expert refers to it at ¶ 26 of his declaration).

As set forth above, the 2005 document between Wave-S, The Wave Pte. Ltd. and Irieeyes does not, as Ms. Lee asserts, state that Ms. Lee or the Wave Entities owned all rights to the Photographs. Thus, at the time the relevant applications for copyright registrations were filed in 2010 and 2011 – even under Plaintiff's theory – Mr. Kawana had not assigned his rights

---

[5] The "Corrective Assignment" was created after the onset of this litigation and after the Plaintiff was advised of potential errors in the chain of title. Moreover, it was produced to GHM less than 24 hours before Plaintiff's continued deposition, and thus, minimal discovery has been conducted with respect to the validity of this document. (Remore Feb. Decl. ¶ 23).

(assuming he had any and assuming the 2005 document is valid) in and to the Photographs to Ms. Lee or to any of The Wave Entities; nor was there a work-for-hire agreement in place.  Thus, at the time the copyright applications were filed in 2010 and 2011, Singapore Wave Entities were not the authors as was set forth in the applications.    Furthermore, neither the 2013 "confirmatory" assignment agreement nor the 2005 document, even if considered by the Court, contain the necessary express language assigning the rights to sue.

### C.    Plaintiff's fantastic assertions regarding the editing of the Photographs.

Plaintiff asserts in its papers that the post-production work for the raw photographs obtained from each photo shoot took "roughly 7 hours per photograph." (Pl.'s 56.1 St. ¶ 31, Lee Decl. ¶ 19).  There is no evidence to support that such post-production work actually took that much time per photograph.  Like all of Ms. Lee's claims, this allegation is a complete fantasy.

Ms. Lee has estimated the number of photographs at issue in this litigation to be 2,000, and claimed seven hours of post-production work for each.  That yields 14,000 hours of post-production work.  Simple arithmetic discloses that Ms. Lee is claiming to have worked full time for seven years on these photographs![6]  Ms. Lee's approximation of seven years of full-time work on post-production alone makes no sense, particularly given that Plaintiff has argued throughout this action that photography was merely ancillary to what Plaintiff alleges were the core services of Ms. Lee and the Singapore Wave Entities – creating "the entirety of the branding and related marketing collaterals and guest experience" for elite hotel properties.  (Pl.'s 56.1 St. ¶¶ 19–20).  Spending seven years on post-production work would not have left any time for such core services.

---

[6]  Assuming a forty-hour work week for fifty weeks (accounting for two weeks of vacation time) equals 2,000 man hours per year multiplied by seven years yields the 14,000 hours she claims.

**D.    Other infirmities in Ms. Lee's declaration.**

Plaintiff relies upon the declaration of its principal, Ms. Lee, to support its position in this motion. In addition to the issues with Ms. Lee's declaration discussed in detail above, we respectfully draw the Court's attention to the following additional problems with this sham declaration:

1. Paragraphs 2 and 3 of Ms. Lee's declaration describe that Ms. Lee dissolved certain of the Singapore Wave Entities, and upon dissolution, she owned all assets. But Ms. Lee does not mention that days prior to the dissolution, she transferred alleged ownership in the Photographs out of the companies. *See* Remore Feb. Decl. at Exs. M and N.

2. In Paragraph 9, Ms. Lee states that "the contractual understanding with Mr. Kawana was that I owned all rights to the Photographs taken and that Mr. Kawana retained none.... An example of the agreement... is attached as Exhibit D." Exhibit D directly contradicts Ms. Lee's sworn statement. The document is allegedly signed on March 31, 2005, and is dated "as of" January 1, 2000. This is a hearsay document, offered to prove that Ms. Lee owned the copyrights (as she claimed), even though the document does not support her claim. Additionally, Ms. Lee's claims in Paragraph 9 are parol evidence, statements contradicting the unambiguous terms of a written agreement. Ms. Lee also refers to a "confirmatory assignment," recorded on May 20, 2015 (during this litigation - one day before Ms. Lee's first deposition). She does not attach it as an exhibit, and the document is also inadmissible hearsay.

3. In Paragraph 11, Ms. Lee attaches only three signed production estimates.

4. In Paragraph 12, Ms. Lee improperly swears to the awareness of Mr. Ohletz. She states that each production estimate was reviewed by the respective hotel. There is no such proof, and no citation to any proof. Less than half of the production estimates produced in this action were signed. (Remore Feb. Decl. at ¶ 10).

5. In Paragraph 13, the citation to the term "proprietary library" in the exhibit does not support the conclusion that GHM picked photographs from such a "proprietary library." The expression in the email Exhibit F to Ms. Lee's declaration refers only to photographs of the Lalu Hotel which appeared in the book *Ultimate Spa*. Nor does the use of the term "proprietary library" lead to the inference that Ms. Lee owned the copyright to the photographs of the Lalu.

6. In Paragraphs 14 and 15, Ms. Lee improperly swears to what GHM and the Hotels understood.

7.  In Paragraph 17, Exhibit G does not support the inference that GHM or the Hotels understood that Singapore Wave Entities owned the copyrights to the Photographs. Kendall Oei states in the June 26, 2006, 10:24 a.m. email (which Plaintiff submits to the Court without a Bates Number) "Do you have any documents to show that Waves**/GHM** own the photos?" (emphasis added). This is clearly not an indication that Mr. Oei or GHM understood that the Singapore Wave Entities were the sole owners of the copyrights. In addition, the Photographs referred to in this email string are not of a property that was managed by GHM. (Remore April Decl. at Ex. 3 (Ohletz Dep.), 102:5-103:3).

8.  In Paragraph 18, once again, the cited exhibit does not support Ms. Lee's statement. She says that Exhibit H indicates that Mr. Oei "was very clear that the hotels under GHM management do not own the copyrights to the photographs provided to them." This is incorrect. Mr. Oei instead stated in the June 30, 2006, 4:40 p.m. email (also before the Court without a Bates Number) "[i]n most of our hotel brochures, the photos used are NOT the property of the Owner, but are the property of **GHM**/Waves." (emphasis added). Furthermore, in the June 30, 2006, 6:43 p.m. email (included with Exhibit H), Mr. Oei made the following statements (i) "send them to Junior at Waves Design so she can identify which photos if any belong to **GHM**/Waves"; (ii) "if T*[sic] wishes to make new brochures they must be careful not to use photos **which belong to GHM**. It does not matter that they can reproduce the photos easily, the key point is that they do not have the legal right to use those images"; and (iii) "they should not use any **material belonging to GHM** or mentioning GHM in future marketing collateral." (emphasis added). This is clearly not an indication that Mr. Oei or GHM understood that the Singapore Wave Entities were the sole owners of the copyrights. In addition, the property referred to in this email string is a restaurant, not one of the Hotels whose photographs Plaintiff claims were infringed in this action. Photographs of this restaurant do not appear to be included with any of Plaintiff's claimed registrations. (Compl. at ¶ 77) (Remore Feb. Decl. at Ex. S).

9.  Ms. Lee has no foundational basis to say, as she does in Paragraph 21 of her declaration, that GHM disseminated the Photographs. At her deposition on September 9, 2015, she testified that she had no idea of the relationship between GHM and the various defendants and no idea how certain defendants got copies of the allegedly infringed pictures. (Remore April Decl. at Ex. 2 (Lee Sept. Dep.), 265:5-20; 266:15- 267:5; 274:7-25; 282:18-23).

10. Paragraph 24 states legal conclusions.

11. In Paragraph 26, Ms. Lee waives her attorney-client privilege as to the "Erroneous Backdated Assignments." When she originally testified about these documents, Ms. Lee indicated they were prepared by one of attorneys, and asserted the privilege as to the documents. (*See, e.g.* Remore April Decl. at Ex. 1 (Lee May Dep.), 65:8-67:1). At her continued deposition, Ms. Lee then claimed that her attorney had nothing to do with such documents and that she prepared them herself. (*See, e.g.* Remore Feb. Decl., Ex. D (Lee Sept. Dep. at 254:22-256:11).

In her declaration, Ms. Lee claims that the documents were prepared "at the suggestion of my attorney."

12. Paragraphs 28 and 31 also state legal conclusions.

13. In Paragraph 32, Ms. Lee claims that the documents attached as Exhibit I corrected her earlier incorrect registrations and the incorrect claimants listed therein. As discussed above, however, the documents attached as Exhibit I still list the Singapore Wave Entities, not Mr. Kawana or Irieeyes, as the author.

## II. IN ADDITION TO MS. LEE'S SHAM DECLARATION, PLAINTIFF ATTEMPTS TO RELY ON DOCUMENTS THAT ARE NOT CURRENTLY BEFORE THE COURT, AND EVEN IF THEY WERE, WOULD BE INADMISSIBLE.

### A. The 2013 "Confirmatory Assignment" allegedly executed by Masano Kawana is inadmissible hearsay.

The Court should disregard as inadmissible hearsay the purported "confirmatory assignment" recorded on May 20, 2015 that Plaintiff claims Mr. Kawana executed in 2013 "confirming that at the time of the creation of the Photographs, it was the understanding and intention of Mr. Kawana that the copyrights were to be owned by Ms. Lee." (Pl.'s Br. at 5; Remore April Decl. at Ex. 7). This unauthenticated document is a textbook example of an out-of-court statement intended to prove the truth of the matter asserted in that statement and, therefore, is inadmissible. *See* FED. R. EVID. 801 & 802. Of course, "[m]aterials submitted in support of or in opposition to a motion for summary judgment must be admissible themselves or must contain evidence that will be presented in admissible form at trial." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169–70 (2d Cir. 2014) (quotation omitted) (affirming district court's ruling that inadmissible hearsay could not be considered on motion for summary judgment).

Plaintiff's footnote that Kawana's assignment was recorded by Plaintiff with the U.S. Copyright Office on May 20, 2015 – two years after it was actually signed, during this very litigation, and one day before Ms. Lee's deposition – does not render the document admissible.

*See* Pl.'s Br. at 5 n.1.  To the extent Plaintiff's intention is to rely on the hearsay exception of FED. R. EVID. 803(8) (public records), this exception cannot possibly apply to this document.

Under the public records exception, a record or statement of a public office is admissible if: "(A) it sets out . . . the office's activities . . . and (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." FED. R. EVID. 803(8).  First, Plaintiff did not submit with its motion any public record.  Plaintiff's *reference* to the 2013 "confirmatory assignment," which Plaintiff asserts was recorded with the U.S. Copyright Office, is insufficient.  Second, the public record that Plaintiff alludes to but does not submit has no indicia of trustworthiness.  Most importantly, according to Plaintiff, the 2013 assignment was recorded with the U.S. Copyright Office on May 20, 2015.  Thus, the circumstances under which the public record was created are suspect: it was created a year and a half after commencing this litigation.  Additionally, the U.S. Copyright Office merely records information but does not independently verify such information.  *See* COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 2305 ("The fact that a document has been recorded is not a determination by the U.S. Copyright Office concerning the validity or the effect of that document. . . .  [T]he Office will not attempt to determine whether a document satisfies the legal requirements that may be necessary for it to be effective or enforced.").

For these reasons, and in light of Plaintiff's principal's admitted backdating of documents to conform with her ever-evolving theories about ownership of the Photographs, the assignment ostensibly dated October 1, 2013 and recorded with the U.S. Copyright Office in 2015 lacks any indicia of reliability.  The document is allegedly signed by Mr. Kawana, a non-party, in Singapore, and is not notarized or authenticated in any fashion.  Therefore, even if Plaintiff had

submitted the actual public record it references, such a record would constitute inadmissible hearsay.

The purported "confirmatory assignment" is also not admissible under FED. R. EVID. 1005, which allows for a *copy of a public record* to be introduced as evidence only if "the record or document is otherwise admissible; and the copy is certified as correct in accordance with Rule 902(4) or is testified to be correct by a witness who has compared it with the original." As explained above, Plaintiff only refers to, but does not submit, a copy of any public record. Even if Plaintiff had submitted a copy of the public record it references, for the reasons explained above, this document would be otherwise inadmissible under FED. R. EVID. 803(8). Therefore, the copy of such a public record would not be admissible under FED. R. EVID. 1005.

**B.    Production estimates Plaintiff relies on as its "contracts" are not before this Court, and even if they were, are hearsay, and inadmissible under FED. R. EVID. 1006.**

Plaintiff's reliance on the "hundreds"[7] of production estimates as contractual evidence of its exclusive relationship with GHM is improper. First, Plaintiff has introduced only three such production estimates to the Court in this proceeding. (Lee Decl. at Ex. E). GHM produced one. (Remore Feb. Decl. at Ex. F). This paltry presentation to the Court amounts to less than twenty percent of the approximately twenty five production estimates that were produced in this proceeding, and even less of the "hundreds" of production estimates that Plaintiff asserts exist. (Remore Feb. Decl. ¶ 10). Even if Plaintiff did not wish to present these "hundreds" of production estimates to the Court for the purposes of efficiency, it should have at least complied with FED. R. EVID. 1006, and provided a summary, chart or calculation to prove the content of these voluminous writings, and made the originals or duplicates available for examination and/or

---

[7] *See, e.g.*, Pl.'s Counterstatement to GHM's 56.1 Statement ¶¶ 23, 33.

copying by other parties.  Notwithstanding the foregoing, even if these production estimates were properly before the Court, they would be inadmissible hearsay, as even the signed estimates would have been executed by the general managers of the various Hotels, all but one of which are non-parties, and all but two of which are or were located outside of the United States. Moreover, it does not appear that any of the signatures of the Hotel employees on the signed production estimates that were produced are authenticated in any fashion.  Accordingly, Plaintiff's attempt to rely on these documents as evidence of the contractual agreement between the Hotels and the Singapore Wave Entities should be ignored.

## III.    PLAINTIFF'S ARGUMENTS FAIL TO CONFER STANDING ON PLAINTIFF TO ASSERT ITS CLAIMS FOR COPYRIGHT INFRINGEMENT.

Plaintiff's assertions that the courts may retain discretion to presume validity of registrations issued more than five years following the date of initial publication are irrelevant. *See* Pl.'s Br. at 36.  Even if a presumption of validity applied to all of Plaintiff's copyright registrations (which it does not), that presumption is rebuttable even for registrations issued within five years of publication, and where evidence in the record casts doubt on the validity, it cannot be assumed.  *See Durham Indus., Inc. v. Tomy Corp.,* 630 F.2d 905, 908 (2d Cir. 1980); *see also Dynamic Solutions Inc. v. Planning and Control, Inc.* 646 F.Supp. 1329, 1337 (S.D.N.Y. 1986).  The evidence in the record, analyzed under both Singapore law and United States law, clearly casts doubt on the validity of the registrations, and, at a minimum, shifts the burden of proving the many facts necessary to show ownership to the Plaintiff.

### A.    Plaintiff's attempt to rely on case law that is not binding on this Court does not defeat an analysis under *Itar-Tass* which unmistakably holds that Singapore Law applies to determine ownership of the copyrights in the works at issue.

Plaintiff does not contest that Singapore has the most significant relationship to the Photographs at issue (and again admits that the works were first published in Singapore).  (Pl.'s

Br. at 30). Thus, under the test set forth in *Itar-Tass Russian News Agency v. Russian Kurier, Inc.,* Singapore law must apply to determine ownership of the allegedly infringed Photographs. 153 F.3d 82 (2d Cir. 1998).

The only case that Plaintiff cites for the proposition that *Itar-Tass* does not apply where a work is registered is a case from the Eastern District of Virginia that refers to *Itar-Tass* only as an aside.[8] Plaintiff ignores that the Second Circuit explicitly addressed a circumstance where copyright certificates had been issued, stating that "[i]ssuance of the certificate is not... a resolution of any issue concerning ownership." *Itar-Tass Russian News Agency,* 153 F.3d at 89 n.5.

In addition to the cases cited in GHM's moving papers (that Plaintiff makes a futile attempt to distinguish), in *Cranston Print Works Co. v. J. Mason Prods., a Div. of Ming Ta Supply USA, Inc.,* this Court revisited a case based on the intervening *Itar-Tass* decision. No. 96-CIV-9382, 1998 WL 799171, at *1–2 (S.D.N.Y. Nov. 13, 1998). In its original decision, the court concluded that the plaintiff's valid U.S. copyright registration provided prima facie evidence of ownership which the defendants failed to rebut. *Id.* at *1. Following that initial ruling, *Itar-Tass* was decided, and under its plenary power, the district court elected to review its prior holding. *Id.* at *2. The court held that the application of *Itar-Tass* as to the ownership of the registered work was necessary.[9] *Id.*

---

[8] Plaintiff should be well aware that this Court is bound by the decisions of the Second Circuit, not the decisions of the Eastern District of Virginia. *See Montgomery Cnty. Maryland v. Metromedia Fiber Network,* 326 B.R. 483, 489 (S.D.N.Y. 2005). Indeed, "a district court decision does not 'clearly establish' the law even of its own circuit, much less than of other circuits." *Hawkins v. Steingut,* 829 F.2d 317, 321 (2d Cir. 1987). Quite simply, the Southern District of New York is under no obligation to defer to the Eastern District of Virginia's views on federal law, and is instead permitted – in fact, required – to reach its own conclusions. *Desiano v. Warner-Lambert & Co.,* 467 F.3d 85, 90 (2d Cir. 2006).

[9] However, because the work was first (and only) published in the United States, the court held

Plaintiff's analysis of the holding in *Seoul Broad. Sys. Int'l, Inc. v. Young Min Ro,* 784 F. Supp. 2d 611, 615 (E.D. Va. 2011), is incorrect. In its parenthetical explanation of the case, Plaintiff alleges that the Eastern District of Virginia noted that "Section 401(c) should apply to the registered works at issue." (Pl.'s Br. at 30). The case does not say that. Indeed, the Eastern District of Virginia declined to definitively resolve that question, holding instead that the plaintiffs had submitted ample proof of their ownership under either U.S. or Korean law.[10] *Seoul Broad. Sys. Int'l, Inc.* 784 F. Supp. at 615. Thus, Plaintiff's reliance on this case is misplaced and inaccurate.[11]

### B.    The analysis of Plaintiff's "expert", Professor Llewelyn, relies on erroneous factual assumptions, contains inaccurate legal analysis and should be given little weight.

At the outset, Professor Llewelyn admits he is "not authorised to (and [does] not) advise clients in Singapore on matters of Singapore law." (Llewelyn Decl. ¶ 9). Although Professor Llewelyn may be an expert on intellectual property matters in the United Kingdom, he is not "called to the bar" in Singapore, and apparently has not practiced as a solicitor in England or Wales for the last four years. *Id.* His comments and opinions in relation to, among other things, the principles that would be applied by the Singapore Courts in determining the various legal issues at play should be sharply discounted because he is not authorized to practice law in

---

that American law still governed the question of copyright ownership. *Id.* at *2–3.

[10] "Ultimately, therefore, there simply is no binding precedent in this District as to whether the presumption in 17 U.S.C. § 410(c) applies to works that were produced outside of the United States but later registered with the United States Copyright Office, or whether that presumption is irrelevant because only the law of the situs of creation controls. That matter is currently an open question of law in the Fourth Circuit. However, for the purposes of the instant case, this Court need not definitively resolve that question...." *Seoul Broad. Sys. Int'l, Inc.,* 784 F. Supp. 2d at 615.

[11] In addition, the gratuitous statements by Plaintiff's expert, Professor Llewelyn, regarding choice of law rules in the United States (*see* Llewelyn Decl. ¶ 14) should be afforded no weight, as Professor Llewelyn is not, and does not purport to be, an expert in either choice of law rules or United States law and makes no mention of *Itar-Tass*, the binding law of this jurisdiction.

Singapore or advise on Singapore law. Indeed, had Ms. Lee or the Singapore Wave Entities sought to retain him in Singapore, <u>he could not lawfully represent them or give them advice</u>.[12] Similarly, where Professor Llewelyn provides his opinion as "a matter of law *and practice*," or based on his "experience," his opinion must be considered in light of the fact that Professor Llewelyn has no practical experience in Singapore and is not authorized to practice there. (*See, e.g.*, Llewelyn Decl. ¶¶ 50–51). Plaintiff has offered as an expert on Singapore law someone who cannot practice law – and never has practiced law – in Singapore. Nevertheless, as Plaintiff has proffered Professor Llewelyn as its expert in Singapore law, GHM addresses the merits of his analysis in the Declaration of Dr. Stanley Lai, SC, dated April 13, 2016 ("Lai April Decl.").

As set forth in detail in Dr. Lai's Declaration, Professor Llewelyn's declaration relies on inaccurate factual assumptions, including: (i) that the engagement of the Singapore Wave Entities was always bundled up with other services, such as the production of specific pieces of marketing collateral;[13] (ii) the Singapore Wave Entities and/or Ms. Lee were acting as agents of GHM when they engaged Mr. Kawana;[14] and (iii) the Hotels (or in certain limited circumstances GHM) paid the exact sums specified on every production estimate.[15] (Lai April Decl. at ¶ 3).

---

[12] *See* Section 32(1) of the Legal Profession Act (Chap 161) ("no person shall practise as an advocate and solicitor or do any act as an advocate or solicitor unless (a) his name is on the roll; and (b) he has in force a practising certificate"); *See also* Section 33(1) of the Legal Profession Act (stating that it is an offense for one who is an "unauthorised person" to act for any party in any proceedings in Singapore).

[13] In fact, several of the production estimates produced had nothing to do with photography. (*See, e.g.* Lee Decl. at Ex. E; *see also* Remore Feb. Decl. at Ex. F).

[14] Ms. Lee herself characterizes Mr. Kawana as a subcontractor, merely a "cameraman" who only pushed the button when she told him to. Lee Decl. ¶¶ 9–10.

[15] Payments were made to the Singapore Wave Entities on separate invoices, not on the production estimates, and invoiced sums sometimes differed from the costs estimated in the production estimates.

The October 1, 2013 Memorandum of Understanding and Ownership (the "2013 MOU") does not say what Plaintiff so desperately wants it to say. Plaintiff argues "[i]n addition, Mr. Kawana signed a confirmatory assignment confirming that at the time the Photographs were created, it was understood and agreed between Mr. Kawana and his company and Ms. Lee that the copyrights to them were owned by Ms. Lee (as the owner of the Wave Entities)." (Pl.'s Br. at 26). However, the 2013 MOU states:

> [f]or valuable consideration, receipt of which is hereby acknowledged, Assignor hereby confirms assignment to Assignee of all of Assignor's rights, title and interest worldwide, in the Works, together with any and all other rights and interests arising out of, and in connection with, or in relation to the Works, including derivative works.

(Remore April Decl. at Ex. 7). This is purportedly a confirmation of an unknown assignment, but presumably the 2005 agreement. The 2013 MOU does not assign anything. The 2013 MOU has no definition of when an assignment occurred.

No specific mention of the 2005 agreement, which said that the copyrights were owned by <u>both</u> Wave and Irieeyes, is made. That 2005 agreement was never cancelled or rescinded; the 2013 MOU perhaps (and this is just a guess) confirms some other undocumented prior agreement. The identified Works in the 2013 MOU are photographs taken between 2000 and 2007. This 2013 MOU could not "confirm" the assignment of the photographs taken after 2005, because the 2005 agreement could not have assigned rights after 2005.

The last paragraph of the 2013 MOU waives any claims Irieeyes and/or Mr. Kawana had against Ms. Lee for unpaid invoices. Perhaps that was the real reason Ms. Lee paid Mr. Kawana to sign the 2013 MOU (and there is no proof of payment). The 2013 MOU by its express terms does not transfer the right to sue for any infringements prior to 2013, directly prohibiting Ms. Lee (or any of her various entities) from suing for such alleged infringements. *See ABKCO Music, Inc.,* 944 F.2d at 980.

Professor Llewelyn's declaration relies upon this 2013 MOU as a basis for his conclusion that though Mr. Kawana was the author of the Photographs, he assigned the copyright to Ms. Lee. (Llewelyn Decl. ¶ 79(2)-(3)). Without the existence of the 2013 MOU as evidence, the opinions set forth in Professor Llewelyn's declaration must fail.

### C. Plaintiff misconstrues the contents of the communications with Kendall Oei, and even if Plaintiff stated their contents accurately, they should be accorded little weight.

Plaintiff relies on three instances of email correspondence from Kendall Oei, a former director of GHM, for the proposition that GHM "understood" that the Singapore Wave Entities owned the copyrights in the Photographs. As set forth in detail above, this reliance is inappropriate. Two of the three emails do not reference Wave owning the Photographs on their own. At best, they state "GHM/Waves" own the Photographs – far from a straightforward statement that Wave owns the copyright. The only other reference cited mentions a "proprietary library," not for the purposes of selecting photographs to use in marketing collateral, but for use in a book. Finally, though Plaintiff characterizes Mr. Oei as GHM's "head of legal," Mr. Oei was a banker, not an attorney, and only reviewed legal documents with regards to the negotiation of the management contracts. Mr. Oei did not negotiate vendor contracts like the "contracts" between the Singapore Wave Entities and the Hotels. (Remore April Decl. at Ex. 3 (Ohletz Dep.), 49:8-9, 135:3-13; *see also* Declaration of Vijay K. Toke dated March 14, 2016 ("Toke Decl") at Ex. 7 (Chng Dep.), 31:9-24). Plaintiff has no evidence to suggest that Mr. Oei had any knowledge as to copyright ownership or to the working relationship between Ms. Lee, GHM and the Hotels. This evidence is, at best, weak, and should be given little, if any weight. Nor do Mr. Oei's ambiguous statements rise to the level of an admission. *See* FED. R. EVID. 801(d)(2)(C) (his statements were not within the scope of his employment as a banker, not a copyright specialist).

**D.     Professor Llewelyn's conclusions of Singapore law are misconceived and incorrect.**

Dr. Lai is of the opinion, based upon over 16 years of actual experience practicing intellectual property law in Singapore, that several of Professor Llewelyn's conclusions are misconceived and incorrect. Specifically, Dr. Lai believes that Professor Llewelyn's argument that Section 30(5) would not operate in situations where the person hired to take the photographs in turn retains a subcontractor is contrary to legislative intent and contrary to standard Singapore statutory interpretation. (Lai April Decl. at ¶¶ 8-11).

Moreover, Dr. Lai deems Professor Llewelyn's arguments regarding the "right to veto" provision of 30(5) to be incorrect. Specifically, it is inaccurate that the communication of the particular purpose for which the work is required is a prerequisite for Section 30(5) to apply. (Lai April Decl. at ¶¶ 20-24). Even if the Singapore Wave Entities were commissioned to take the Photographs for a particular purpose that was clearly communicated to Ms. Lee, there is no evidence that such a particular purpose was the production of specific marketing collateral, rather than the specific purpose of marketing the Hotels, particularly in light of the evidence that Ms. Lee knew the Photographs were being used – for example, on GHM's website and the Setai Hotel's website in 2002 or 2005 – and therefore for more than just inclusion in the specific marketing collaterals that she designed.

Finally, based upon his direct and extensive experience, Dr. Lai asserts that if a Singapore Court were adjudicating the current dispute, it would not regard the hearsay production estimates as constituting the terms of the commissioning agreement between the Singapore Wave Entities, GHM and the Hotels. (Lai April Decl. at ¶¶ 25-26). Indeed, if, as Plaintiff now argues, Mr. Kawana was the actual author of the Photographs, the Singapore Wave

Entities would not have had any intellectual property rights in the Photographs to reserve in the first instance. (Lai April Decl. at ¶ 27).

## IV. PLAINTIFF'S PROCEDURAL ARGUMENTS ARE UNSOUND.

### A. Plaintiff's arguments regarding *forum non conveniens* are unsound.

GHM has met its burden in demonstrating that this case should be dismissed on grounds of *forum non conveniens*. First, Plaintiff's choice of forum is entitled to no deference because it is a shell company. *See RIGroup LLC v. Trefonisco Mgmt. Ltd.*, 949 F. Supp. 2d 546, 552 (S.D.N.Y. 2013). Plaintiff's principal testified at her deposition that The Wave Studio, LLC was formed in New York to take advantage of U.S. copyright law, *i.e.* to sue. *See* Remore April Decl., Ex. 1 (Lee May Dep.), 18:23-21:13. Plaintiff's "New York address" is its previous copyright litigation attorney's office. This is not the type of resident plaintiff that is entitled to deference in its home forum. Plaintiff does not dispute that it has no employees who conduct business in the United States, much less in New York; that it does not own or lease any office space in the United States, much less in New York; or that it conducts no business whatsoever in New York. *See* GHM Mov. Br. at 19–20. Plaintiff's only business in New York is to act as a plaintiff in this woe begotten attempt to hit the lottery under U.S. copyright law. Ms. Lee herself has asserted that New York is not convenient. (Remore Feb. Decl. at Ex. T ¶ 4). As such, Plaintiff's choice to sue in the Southern District of New York is entitled to no deference.

Second, Plaintiff has failed to rebut GHM's argument that Singapore is an adequate alternative forum. Plaintiff's unsworn reference to other defendants in this litigation is unpersuasive. (Pl. Br. at 16). The remaining defendants are in this litigation solely for purposes of indemnification for any alleged copyright infringement. Thus, the Court can easily bifurcate this case. In the event that GHM is found liable in Singapore for copyright infringement, this

Court can adjudicate between Plaintiff and the remaining defendants as to indemnification in this district.

Third, as GHM explained in its moving brief, the relevant private factors weigh heavily in favor of litigating this action in Singapore rather than New York. GHM identified several key witnesses who have relevant testimony yet have no connection to New York, including Mr. Kawana. In light of Plaintiff's newly offered theory that Mr. Kawana may have been the photographer and author of the Photographs, Mr. Kawana is a necessary witness. He has not been deposed. His business entity, Irieeyes, is based in Singapore and, thus, is subject to service of process there. In contrast to GHM's specific identification of significant witnesses who would be subject to service of process in Singapore but not in New York, Plaintiff vaguely refers to unidentified "potential witnesses for the rest of the nearly 80 defendants, who are undoubtedly located in the United States." (Pl.'s Br. at 17). Plaintiff fails to present sworn competent evidence to identify a single specific witness who is located in New York, or even the United States, who will have relevant and significant testimony regarding alleged infringement.

Fourth, the relevant public factors likewise favor dismissing this action on grounds of *forum non conveniens*. Once again, Plaintiff makes unsupported references to "numerous witnesses located in the United States" but does not identify a single one. Plaintiff misleadingly states that the lack of jury trial in civil matters in Singapore "may support denial of GHM's motion," and cites *Byrne v. Broadcasting Corp.*, 132 F. Supp. 2d 229 (S.D.N.Y. 2001) (incorrectly cited as 131 F. Supp. 2d 229) for the proposition that "lack of jury trial in United Kingdom would support denying *forum non conveniens* challenge." (Pl.'s Br. at 19). A straightforward reading of this case reveals Plaintiff's mischaracterization: The court simply noted that the public factor concerned with burdening local citizens with jury duty in a litigation

unrelated to the community was <u>neutral</u> in a case where a foreign country did not provide for a jury trial, since there would be no jury duty with which to burden citizens. Thus, Plaintiff's expert's statement that Singapore does not provide for jury trials in civil matters is entirely irrelevant to the analysis.

Plaintiff speciously argues that GHM "delayed" in moving to dismiss on the basis of *forum non conveniens*. Any "delay" in making this motion is due primarily, if not solely, to Plaintiff and its attorney. Since entering his appearance in this matter, counsel for GHM tried continually to move this case forward, particularly by attempting to schedule Ms. Lee's deposition, but was repeatedly stonewalled by Plaintiff's prior counsel and then by Plaintiff's current counsel. Plaintiff's delay in substituting counsel was so prolonged that the Court found it necessary to issue an Order to Show Cause why Plaintiff's prior counsel should not be relieved and warned Plaintiff that its case would be dismissed for failure to prosecute if it failed to substitute counsel. After causing such a profound delay, Plaintiff cannot claim that GHM delayed in moving to dismiss on grounds of *forum non conveniens*.[16]

Finally, any alleged "delay" in making this motion is not, as Plaintiff disingenuously claims, "dispositive." (Pl.'s Br. at 14). The very cases Plaintiff cites in support of this point in fact clearly state that "a motion to dismiss on *forum non conveniens* grounds may be made *at any time*." *In re Hellas Telecomm. (Luxembourg) II SCA*, 535 B.R. 543, 590 (S.D.N.Y. 2015) (emphasis added); *Genpharm Inc. v. Pliva-Lachema a.s.*, 361 F. Supp. 2d 49, 59 (E.D.N.Y.

---

[16] Moreover, GHM's counsel sent a letter dated February 18, 2015, shortly after appearing in this matter, to Plaintiff's prior attorney advising him that Plaintiff's claims were inappropriately filed in the Southern District of New York and would be subject to dismissal on grounds of *forum non conveniens*. (Remore April Decl. at Ex. 10). GHM's counsel also advised Plaintiff's current counsel of this letter (and offered to provide him a copy if needed) via email on April 20, 2015. (Remore April Decl. at Ex. 11). Thus, Plaintiff has been on notice of GHM's intention to move for dismissal on this basis.

2005) ("There appears to be no time limit on when a motion to dismiss on the ground of forum non conveniens can be made." (quotation omitted)).  A delay in bringing a *forum non conveniens* motion is simply "a factor to be considered in the Court's evaluation of whether the forum was convenient." *Genpharm Inc.*, 361 F. Supp. 2d at 59.  Here, the delay was primarily caused by Plaintiff.

### B.    Plaintiff's arguments regarding personal jurisdiction are unsound.

Plaintiff fails to adequately respond to the merits of GHM's motion to dismiss for lack of personal jurisdiction.  As explained in GHM's moving brief, in the specific context of foreign defendant hotels that have New York sales representatives, New York courts have repeatedly held that "no jurisdiction will lie unless the foreign defendant's New York representative . . . engage[s] in all the activities the foreign entity could do here by its own officials," and have specifically focused on "whether the New York representative has the authority to make confirmed reservations on behalf of the foreign defendant." *Tripmasters, Inc. v. Hyatt Int'l Corp.*, 696 F. Supp. 925, 932–34 (S.D.N.Y. 1988) (finding no jurisdiction under N.Y. C.P.L.R. § 301 where sales representative office "had no power to confirm or even take requests for reservations"); *see also Kopolowitz v. Deepdene Hotel & Tennis Club*, 464 F. Supp. 677, 679–80 (S.D.N.Y. 1979); *Welinsky v. Resorts of the World D.N.V.*, 839 F.2d 928, 928–30 (2d Cir. 1988); *Covelman v. Hotel St. Regis*, No. 14-cv-5757, 2016 WL 762661, at *3 (D.N.J. Feb. 25, 2016) (finding no personal jurisdiction over out-of-state hotel where "[e]ven if [the hotel] indeed allows booking on its website for hotels located in New Jersey – which it undisputably does not own or operate – Plaintiff has not demonstrated that [the hotel's] website intentionally targets residents in New Jersey through advertisements or otherwise or that [the hotel] knowingly interacts with residents of New Jersey through its website").  Plaintiff does not even attempt to respond to this line of cases, which are directly on point, or to the certification of GHM's

corporate representative that the sales representative office could not make confirmed reservations on behalf of the hotels represented by GHM.

In light of this line of cases, Plaintiff's vague assertion in its brief (not in any sworn statement) that GHM's sales representative office allegedly "targets New York residents" is simply insufficient. Plaintiff's reference to GHM's website server being located in the United States is bewilderingly irrelevant (and, in any event, provides no ties to New York specifically). Finally, Plaintiff cites to *Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG*, 160 F. Supp. 2d 722 (S.D.N.Y. 2001), for the proposition that the alleged fact that GHM targets New York residents, attempts to increase its business among American consumers and GHM's website appears in the United States can qualify as "doing business" under N.Y. C.P.L.R. § 301. That decision, which <u>dismissed</u> the case for lack of personal jurisdiction, is not remotely similar on the facts (no website was even mentioned in *Jacobs*) and has no bearing on this matter in light of more specific New York case law regarding the exercise of personal jurisdiction over foreign defendant hotels.

Plaintiff erroneously argues that GHM forfeited its defense of lack of personal jurisdiction. First, Plaintiff misleadingly refers to Federal Rule of Civil Procedure 12(h), under which a party waives the defense of lack of personal jurisdiction by, among other actions, failing to include the defense in a responsive pleading. GHM, of course, raised the lack of personal jurisdiction as an affirmative defense in its Answer. *See* Remore April Decl. at Ex. 8.

Second, Plaintiff mischaracterizes GHM's litigation conduct in arguing that GHM forfeited the defense by failing to promptly raise it. As discussed with regard to GHM's defense of *forum non conveniens*, GHM did not "delay" in moving to dismiss for lack of personal

jurisdiction. Any "delay" in this motion is due primarily, if not solely, to Plaintiff and its various attorneys.[17]

### C.    Plaintiff's arguments that the hotels are not indispensable parties are unsound.

Under Rule 19, the Hotels, as the owners of the copyrights, are indispensable parties that are not subject to service of process in New York, and the Court should dismiss this action in their absence. Plaintiff's own emphasis on the hearsay production estimates signed (and sometimes not signed) by Plaintiff and the Hotels highlights the necessity of the Hotels' participation in this litigation. To the extent the Court considers the production estimates as evidence of agreements between Plaintiff and the Hotels as to who owns the copyrights in the Photographs, the various Hotels' understanding of the terms of the production estimates is indisputably crucial to the issue of copyright ownership. Therefore, this case cannot proceed without the Hotels as parties to the action.

Plaintiff misdirects the Court with citations to copyright cases in which the focus is solely on infringement, and argues that joint tortfeasors are not indispensable parties. However, as GHM explained at length in its moving brief, when the validity of an absent party's claimed copyright is at issue, the absent party is generally considered necessary under Rule 19(a). GHM's Mov. Br. at 26–27. This is precisely the case here: The Court must determine who owns the copyrighted Photographs. A determination that Plaintiff is the copyright owner – or that the identity of the copyright owner is a disputed material fact not subject to resolution on the parties' cross-motions for summary judgment – would impair the Hotels' claimed ownership in the copyrights. Therefore, the Hotels are "necessary" parties under Rule 19(a).

---

[17] Additionally, at best, the Court's stay as to discovery was ambiguous as to whether it applied to GHM's ability to move to dismiss for lack of personal jurisdiction. There certainly was a stay in effect.

Plaintiff apparently concedes that joinder of the Hotels is not feasible under Rule 19. Thus, the only remaining question is whether the Hotels are "indispensable" under Rule 19(b). Plaintiff erroneously contends that the Hotels would not suffer prejudice by being absent from this litigation because "GHM is vigorously advocating for the Hotels, and their interests are directly aligned." (Pl.'s Br. at 21). GHM does not manage every hotel whose copyright ownership is disputed through this litigation.

The circumstances in *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d. Cir. 2013) were entirely different. In *Marvel*, the Second Circuit found "no practical prejudice" to two parties "as a result of adjudicating this case in their absence" because the two absent parties were siblings with the two parties actually litigating the case, all four siblings claimed the same interest in their late father's drawings, and all four siblings were represented by the same attorney. *Id.* at 134. Here, in contrast, GHM and the Hotels do not claim the same interest and are not represented by the same attorney. Moreover, Plaintiff is plainly incorrect in arguing that the issue of copyright ownership can be resolved without prejudicing the Hotels because the Court has all the relevant contracts and testimony. As explained above, the Court does not have crucial testimony from the Hotels as to their understanding of the production estimates and, particularly, the reservation of rights language that Plaintiff relies on heavily. In light of Plaintiff's argument that such language demonstrates Plaintiff's ownership of the Photographs, the Hotels' testimony is now even more essential. Therefore, the Hotels are indispensable parties and this action must be dismissed in their absence.

## V. PLAINTIFF'S ARGUMENTS THAT THERE WAS NO IMPLIED LICENSE FOR GHM OR THE HOTELS TO USE THE PHOTOGRAPHS AS THEY SAW FIT TO MARKET THE HOTELS ARE TENUOUS AND INACCURATE.

As discussed in further detail above, Plaintiff's arguments that the purpose of the Photographs was for use in "various marketing collateral ordered from Wave," and thus that

GHM and the Hotels only had a license to use the Photographs as incorporated in the marketing

collaterals themselves, are unavailing. (Pl.'s Br. at 37). Even Plaintiff's own operative pleading

admits that the Photographs of the Hotels were "for advertising, promotion and documentation

purposes." (Compl. ¶ 73). The portions of Mr. Ohletz's deposition cited in Plaintiff's brief fail

to illustrate Plaintiff's alleged argument, and Mr. Ohletz explicitly testified that the purpose of

the Photographs was to market the Hotels.[18] The undisputed facts show that the Singapore Wave

Entities and Ms. Lee – not to mention the Hotels and GHM – knew and intended that the

Photographs would be used for marketing the Hotels. The alleged limitation of use of the

Photographs to only Wave-created marketing collateral is purely a function of Ms. Lee's

imagination, and is flatly denied by the man she most commonly worked with at GHM (who has

no stake in this proceeding), Mr. Ohletz.[19]

---

[18] By way of one example only, Mr. Ohletz's deposition included the following exchange:
Q: Did Junior Lee ever tell you at any point during the 10 years that you had your course of conduct and working relationship with her that the photos could not be used to market the hotels?
A: Well, the whole purpose of this was marketing the hotels. No.
Q: So, she never said that?
A: Well, otherwise, why would I engage her? The whole purpose is it's a marketing tool.
Q: Okay.
...
A: They are not for decorative purposes, like in the room or whatever. Therefore, the entire purpose of this is marketing. It's positioning. And marketing positioning is a big -- it has a big umbrella, it entails all sorts of mediums, including internet and, nowadays, of course, the use of computer – not computer, iPhones and all of that sort of thing, you know. So this is – of course, it's different all the time.
Q: Okay.
A: So I would not see that we would restrict ourselves, as we need to go with the times. To restrict ourselves, doing it only for a brochure or only for a film or only for a specific promotion, I mean, it makes no sense to me. (Remore Feb. Decl., Ex. E (Ohletz Dep.) at 34:16-35:20).
[19] Q: At any time after Junior was paid by the hotels did she then claim to you that she had ownership rights in the photographs or any of the marketing materials?
A: No.
Q: Okay.
A: Because, as I said, we – we took, let's say on average 100 photographs, I don't know exactly, but in this brochure here, which is a very comprehensive brochure, the hotel brochure, we have

Plaintiff's unsubstantiated story about her complaints to Mr. Jenni, the head of GHM, regarding The Nam Hai Hotel marketing materials does not support her assertion that "GHM knew the limitations of its license" in and to the works alleged to be infringed in this case -- the Photographs.  This conversation had nothing to do with photographs, as The Nam Hai Hotel would obviously not have been using photographs of a different hotel to market itself.  If anything, it could be deemed to support Mr. Ohletz's repeated testimony that if Ms. Lee had asserted ownership rights in what she created for GHM, attempted to charge license fees for photographs, or attempted to limit the ways that GHM and the Hotels could use the materials she created for them, she and the Singapore Wave Entities would have immediately been fired.[20]

Plaintiff's reliance on *SHL Imaging, Inc. v. Artisan House, Inc.*, 117 F. Supp. 2d 301 (S.D.N.Y. 2000), is misplaced, as the facts can be easily distinguished from the instant proceeding.  In *SHL Imaging,* the Court specifically acknowledged that because the defendants did not allege that the photographer created the allegedly infringed prints with the intention that the defendants could use them any way they wished, or that the photographer knew or intended that the prints could be used in other ways, but instead only alleged that the photographer "suspected the defendants *might* use the photographs" for a catalogue, there was not sufficient evidence to establish an implied license.  *Id.* at 317.  Plaintiff's own Complaint alleges that the Photographs were intended to be used for "advertising, promotion and documentation purposes."

---

maybe 30 photographs, 40, and the rest we used at liberty for various publications, for various promotions, for in-house, in the lifts and, you know, F&B promotion, etc.
Q:  When you used the expression "at liberty", can you elaborate on what you mean?
A:  Yes.  Once the disk was given, then it was ours and we used all the photos the way we see fit. (Remore Feb. Decl., Ex. E (Ohletz Dep.) at 28:9-24).

[20] Ms. Lee admitted in her deposition that the meeting about The Nam Hai marketing collateral was the last time that she ever met with Mr. Jenni, and just before GHM and GHM-managed hotels stopped working with her.  (Remore April Decl. at Ex. 1 (Lee May Dep.), 141:17-142:19).

(Compl. ¶ 73). The invoice at issue in *SHL Imaging* specifically referenced that the photographs were to be used for negative color prints for use by sales people. *SHL Imaging, Inc.,* 117 F. Supp. 2d at 304. That is not the case here.

Furthermore, Plaintiff's arguments misconstrue GHM's central argument regarding the implied license issue, that GHM **and the Hotels** had an implied license to use the Photographs. Plaintiff has presented no admissible evidence or foundation that GHM itself (and not the Hotels) actually provided the allegedly infringed Photographs to the multiple other defendants in these cases.

In addition, Plaintiff does not provide any case law supporting its assumption that even if GHM or the Hotels had an implied license to use the Photographs on their own websites, they would not have a right to distribute the Photographs "down multiple sublicensing levels." (Pl.'s Br. at 40). Equally disconcerting, Plaintiff argues that the Court recognized the validity of that argument at the hearing on Defendant American Express' motion to stay on August 19, 2015 (though failed to attach the transcript to that hearing with its papers). (Pl.'s Br. at 38, 40). The Court does not make any ruling as to the merits of that argument in any way. (Remore April Decl. at Ex. 9). At best, the Court recognized that to the extent Plaintiff alleged infringement against American Express as to photographs that American Express did not get from either GHM, current or former defendants in the GHM case or the GHM-managed Hotels, "resolution of the implied license issue *would not necessarily* moot plaintiff's claims against Amex." (Remore April Decl. at Ex. 9, 8:10-9:4) (emphasis added). The Court acknowledged that:

> While the existence of a license with respect to GHM *may* not end up affecting AmEx's liability, the existence of a license with respect to the hotels would, *it seems at least plausible an implied license theory with respect to the hotels will be available to Amex*, given that, according to the plaintiff's complaint in the GHM case, Lee was commissioned by GHM to

take photographs of the hotels for promotional purposes, turned them over GHM for that purpose and expected to be paid by the hotels themselves.

(Remore April Decl. at Ex. 9, 9:22-10:6) (emphasis added).

## VI.    PLAINTIFF'S UNSUPPORTED ARGUMENTS FAIL TO OVERCOME THE FATAL ERRORS IN PLAINTIFF'S CHAIN OF TITLE, WHICH HAVE BECOME EVEN MORE COMPLICATED NOW THAT PLAINTIFF IS ARGUING THAT MR. KAWANA IS THE AUTHOR.[21]

Far from clarifying what Plaintiff asserts is a "straightforward chain of title," Plaintiff's moving papers and brand new theory of ownership further cloud the title to the Photographs alleged to be infringed in this action and the copyright registrations that supposedly cover them. (Pl.'s Br. at 1).  Though Plaintiff alleges that it has "corrected" its copyright registrations so that the proper Claimant is listed, now Plaintiff argues that Mr. Kawana is the true author of the Photographs, meaning that the incorrect author – one of the Singapore Wave Entities – is listed on all of Plaintiff's 22 supplementary copyright registrations (even assuming the remainder of the information in the registrations are correct, which GHM does not concede) dated September 2015.    Plaintiff's most recent corrections, signed by Mr. Toke himself, are contradicted by Plaintiff's own expert witness, who argues that Mr. Kawana is the author.

There was no work for hire agreement in place between the Singapore Wave Entities and Mr. Kawana or Irieeyes, so the Singapore Wave Entities could not be the author of the Photographs for the purposes of the U.S. copyright applications.  *See* COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 405.  Though a transferee of rights from an original author can be named as a copyright claimant in certain circumstances, the 2013 MOU had not been

---

[21]    GHM notes that a portion of its February 12, 2016 Memorandum of Law contains two inadvertent typos with respect to a citation to the COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES.  (GHM's Mov. Br. at 37).  Wherever § 3205 is cited, the correct citation is to § **2305**. We apologize for any inconvenience this may cause the Court or our adversary.

executed at the time the relevant copyright applications were filed, so Mr. Kawana had not transferred his rights to the Plaintiff. *Id.* Accordingly, at the time the copyright applications were filed, Mr. Kawana or Irieeyes should have been listed as the author AND the copyright claimant. *Id.* Plaintiff's supplementary registrations filed in 2015 failed to fix this flaw (which Plaintiff likely did not contemplate when it was again morphing its convoluted theory in this case), and thus the copyright registrations discussed in GHM's moving brief are still invalid.[22] The fact that Plaintiff is now claiming Mr. Kawana is the author of the Photographs calls into question the validity of all 17 of the copyright registrations at issue in this action.

Finally, Professor Llewelyn's analysis of the chain of title under Singapore law is inaccurate. According to Dr. Lai, "shareholder resolutions [such as those dissolving Wave-S and The Wave Pte. Ltd.] are insufficient to constitute a valid assignment of copyright" under Singapore law. (Lai April Decl. ¶ 28). In Dr. Lai's experience, if this matter were adjudicated in Singapore, "the complicated state of the multiple assignment agreements... would likely be treated with some circumspection." (Lai April Decl. ¶ 29). Thus, Plaintiff has failed to assert genuine issues of material fact as to the validity of its chain of title in the copyright registrations at issue.

## CONCLUSION

Based on the foregoing, GHM respectfully requests an Order:

1.      Granting GHM's Motion for Summary Judgment on all of the grounds set forth in its February 12, 2016 motion;

---

[22] *See, e.g.*, Ex. I to Lee Decl., document Bates Numbered TWS0355877, where the explanation for the correction in the copyright registration is "An error was made in identifying the author. The identified author The Wave Design Pte. Ltd. changed its name to The Wave Studio PTE. LTD. as of July 27, 2007. Therefore, the correct author should have been identified as The Wave Studio PTE. LTD."

2.    Denying Plaintiff's Cross-Motion for Summary Judgment in its entirety; and

3.    Awarding such other and further relief as the Court may deem just and proper.

CHIESA SHAHINIAN & GIANTOMASI PC
Attorneys for Defendant
General Hotel Management, Ltd.

By: _____
        HOWARD J. SCHWARTZ

Dated:  April 15, 2016

39