# Exhibit 4

# WAVES

36A Sago Street Singapore 059027. T (65) 6227 3700  F (65) 6227 3971

## production estimate

| | |
|---|---|
| client | Mr Hans Jenni – GHM (S) Ltd |
| product | GHM website design |
| version | 1 |
| date | 1st May 2004 |
| description | Designing and overseeing production of GHM new website |

## DESCRIPTION                                                  S $

1.  Designing and overseeing production of GHM website          18,600.00
    Charges include:-

    a. Design Concept
    b. Layout, Art Direction and Typesetting
    c. Research and Infrastructure Planning
    d. Managing and Supervising Interactive Multimedia Scripting
    e. Copywriting ( *English* )
    f. Colour Indication
    g. Studio materials
    h. Misc. *( Transportation, Phone, Fax, Courier & etc )*          50% -
    i. Photo conversion to screen jpeg usage

                                                                 $9300/-

    Optional

    1. Illustrations of Location Map for each individual property @ $180 each
    2. DVD production of Individual Property @ S$1,600 per property
    3. External DVD production charge @ S$1,500 per session
    4. Quicktime Streamed Movie Conversion of Individual Property
    for web tour or download @ S$800.00 per property

estimate prepared by _____   client's approval _____

date _____1st May 2004_____      date _____

• Terms of payment: 50% on commencement, balance on completion.
• In the event of cancellation, all creative & administrative work undertaken to that point is deemed payable.
• This is an estimate only.  A subsequent change in specifications or briefing will necessitate a revised quote.
• We will proceed on the basis that this estimate is wholly acceptable unless advised to the contrary
  in writing before the work is undertaken.
• 2% interest will be charged from due date of all invoices / debit notes until full payment is made.

GHM 00596

# Exhibit 5

**Irieeyes**

# QUOTATION

**To_** Miss Junior Lee
Wave-s Design

**Job No_** WS03062004
**Date_** 10 July 2004

**For_** Photo shooting for GHM hotels in Bali

## Cost & Breakdown_

Period: 12 to 21 July 2004
    (1 day for recce and 7days for photoshooting)
Photography Fee: US$800.00 per day including camera equipment and assistant fee
Recce Fee: Waved
**Total Amount : US$5,600.00**

## Terms_



- 100% to be paid within 30 days of final delivery.

- Return air tickets, visa fee, insurance, excess baggage fee, accommodations, daily laundry and meals for 2 persons from 12 to 21 July will be paid by the clients.

- In the event of cancellation of this assignment, or any delay of more than 3 months, **we will invoice** you for the greater of either: 1) All work completed up to the date of notification, including **expenses**; or 2) 50% of the agreed upon quotation plus expenses.  All uncompleted work **will remain the** property of Irieeyes Pte Ltd.

- All completed work will be the property of the clients for eternity and worldwide use **upon receiving** full payment only. However, the copyright of those works should remain to the photographer.

- Overtime fee will be billed separately if: (a) the working hours is more than 8 hours a day or (b) total duration from the first call time of the day to the wrap time is more than 10 hours. Overtime fee will be billed as double (US$200.00 per overtime)

- Additional charges will be billed separately if: (a) the final creative brief differs from the original requirements or (b) additional services or equipment is needed.

- Remittance by cheque in the above mentioned currency payable to "Irieeyes Pte Ltd".

Thank you for giving us the opportunity to quote on this project. If you have any questions, please do not hesitate to call me at +65-9655-1486 or email at irieeyes@pacific.net.sg.

If this quotation meets with your approval, we will initiate a purchase order.

Yours Sincerely

**Masano Kawana**
**Managing Director & Photographer**

# Exhibit 6

**Irieeyes**

# QUOTATION

**To**_ Mis Junior Lee
     Wave-s Design Pte Ltd.

**Job No**_ WS011104
**Date**_20 Novembef 2004

**For**_Photo shot for The Setai Miami

## Cost & Breakdown_

| | | |
|---|---|---|
| Period: | 10 to 21 December 2004 (to be confirmed) | |
| | (9days for photoshoot/1 day for recce/2days for travel) | |
| Photography Fee: | @US$800.00 /day    x   09 days......US$ 7,200.00 | |
| | (including camera equipment and assistant fee) | |
| Reccee     ; | @ US$400.00/day     x   01day........US$    400.00 | |
| Traveling Day; | @ US$400.00/day     x   02 days......US$    800.00 | |
| ATA Carnet fee | @ US$250.00 | |

    **Total Amount :**      **US$8,650.00**

## Terms _and Condition

- 100% to be paid within 30 days of final delivery.

- Return air tickets, , insurance, excess baggage fee, accommodations, daily laundry and meals for 2 persons during the above mentioned period will be paid by the clients.

- In the event of cancellation of this assignment, or any delay of more than 3 months, we will invoice you for the greater of either: 1) All work completed up to the date of notification, including expenses; or 2) 50% of the agreed upon quotation plus expenses. All uncompleted work will remain the property of Irieeyes Pte Ltd.

- All completed work will be the property of the clients for eternity and worldwide use upon receiving full payment only. However, the copyright of those works should remain to the photographer.

- Overtime fee will be billed separately if: (a) the working hours is more than 8 hours a day or (b) total duration from the first call time of the day to the wrap time is more than 10 hours. Overtime fee will be billed as double (US$200.00 per hour)

- Additional charges will be billed separately if: (a) the final creative brief differs from the original requirements or (b) additional services or equipment is needed.

- Remittance by cheque in the above mentioned currency payable to "Irieeyes Pte Ltd".

Thank you for giving us the opportunity to quote on this project. If you have any questions, please do not hesitate to call me at +65-9655-1486 or email at irieeyes@pacific.net.sg.

If this quotation meets with your approval, we will initiate a purchase order.

Yours Sincerely

**Masano Kawana**
**Managing Director & Executive Photographer**

# Exhibit 7



## CONFIRMATION OF ASSIGNMENT OF COPYRIGHT

KNOW ALL MEN BY THESE PRESENTS that, as reflected in the October 31,

2013, "Memorandum of Understanding and Ownership," Masano Kawana, a Japanese

citizen, and Inleeyes Pte. Ltd., a private limited company of Singapore, confirms the

assignment to Lee Kar Yin "Jr.," a citizen of Malaysia of all rights, titles and interest in

the photographs (collectively known as the "Works") that were created during 2000-2007

shoots, a true and correct copy of which is attached hereto as "Attachment A," the Works

include but are not limited to the copyright registrations which are listed on "Attachment

### MEMORANDUM OF UNDERSTANDING AND OWNERSHIP

This Memorandum of Understanding is made concerning the estate of Lee Kar Yin "Jr.," a citizen of Malaysia, with an address of 46 South Bridge Road #04-01 Kingly Building Singapore 058679 ("Assignee") as it pertains to Masano Kawana, a Japanese citizen with an address of 6 Woking Road #02-04 Singapore 138669 and Inleeyes Pte. Ltd., a private limited company of Singapore (collectively known as "Assignor"), and is intended to confirm the understanding of Assignor and Assignee concerning ownership of all rights and titles to the photographs that were created during all of the 2000-2007 photographic shoots, including The Chedi Phuket, The Laku Sun Moon Lake Taiwan, The Legian and The Club at The Legian Ball, The Chedi Muscat, The Leela Goa, The Chedi Club Ubud Bali, The Chedi Chiang Mai, The Setai Miami, The Datai Langkawi, The Andaman Langkawi, The Nam Hai Hoi An Vietnam, Carcosa Seri Negara Kuala Lumpur, The Chedi Milan, The Serai Club Jimbaran Bali, The Heritage House Mendocino, Langsuan Apartment Bangkok, 32B Seah Street Singapore, GHM Boutique Products and The Fullerton Hotel, Singapore (collectively known as the "Works") and assignments arranged, creatively conceived, made and produced by Assignee, from inception to completion, pursuant thereto and in connection therewith.

Whereas the intent of any and all prior agreements between Assignor and Assignee was that Assignor would have the right to use some of the Works for personal display for photographic competition and personal service promotion, such as his personal websites or personal albums to display, and not for any other use; and

Whereas the effect and intent of any prior agreements between Assignor and Assignee was that the Works as well as the commercial and artistic rights created therein were exclusively owned by Assignee such that Assignor was employed by Assignee for the purpose of assisting with photographic shoots so as to create works made for hire by Assignor for Assignee and that the resulting Works of Assignee and Assignor made thereby were, in fact, works made for hire by Assignor for Assignee for the sole purpose of assisting with photographic shoots directed and supervised by Assignee.

For valuable consideration, receipt of which is hereby acknowledged, Assignee hereby confirms that Assignor has the right to use the original works for personal display for photographic competition and personal service promotion, such as his personal websites or personal albums to display, and not for any other use or publication; and

For valuable consideration, receipt of which is hereby acknowledged, Assignor hereby confirms assignment to Assignee of all of Assignor's rights, title and interest worldwide, in the Works, together with any and all other rights and interests arising out of, and in connection with, or in relation to the Works, including derivative works.

TWS0355828

**Form DCS** (Document Cover Sheet)
For Recordation of Documents under 17 U.S.C. §205
UNITED STATES COPYRIGHT OFFICE

Volume _____ Document _____

Volume _____ Document _____

Date of recordation _____ M _____ D _____ Y _____
[ASSIGNED BY THE COPYRIGHT OFFICE]

Funds received _____

Privacy Act Notice: Sections 205 and 705 of title 17 of the United States Code authorize the Copyright Office to collect the personally identifying information requested on this form in order to process the application for recordation. By providing this information, you are agreeing to routine uses of the information that include publication to give legal notice of your recordation pursuant to 17 U.S.C. §§ 205 and 705. This information will appear in the Office's online Public Catalog. If you do not provide the information requested, recordation may be refused or delayed, and you may not be entitled to certain relief, remedies, and benefits under the copyright law.

**DO NOT WRITE ABOVE THIS LINE · SEE INSTRUCTIONS**

To the Register of Copyrights: Please record the accompanying original document or its properly certified copy.

**1.** First party name given in the document
Masano Kuwana

**2.** First title given in the document
The Wave Design Pte., Ltd. Photographs 2005(B) : Group Registration / Group VA0001432332

**3.** Total number of titles in the document   32

**4.** Return receipt requested
☐ If checked, please enclose a self-addressed postage-paid envelope.

**5.** Electronic title list enclosed
☐ If checked, please enclose an acceptable digital storage medium containing a properly formatted title list.

**6.** Amount of fee calculated   $795.00

**7.** Fee enclosed
☐ Check        ☐ Money order
☑ Fee authorized to be charged to Copyright Office deposit account

Deposit account number   080519

Deposit account name   Jennison & Shultz, P.C.

**8.** Completeness of document
☑ All attachments referenced in this document are included.

☐ One or more attachments referenced in this document is missing but (a) the attachment is completely unavailable for recordation; (b) the attachment is not essential to the identification of the subject matter of the document; and (c) it would be impossible or wholly impracticable to have the parties to the document sign or initial a deletion of the reference to the attachment.

**9.** Certification of photocopied documents
Complete this certification if a photocopy of the original signed document is being submitted instead of the document bearing the actual original signature.

NOTE: This space may not be used for documents that require an official certification.

I declare under penalty of perjury that the accompanying document is a true and correct copy of the original document.

Signature _____   Date   May 18, 2015

Duly authorized agent of   Leo Kar Yiu "Jr."

**10.** Return to
Name   Jennison & Shultz, P.C.

Number/street   2001 Jefferson Davis Hwy.        Apt/suite   1102

City   Arlington        State   VA        Zip   22202

Phone number   703-415-1640        Fax number   703-415-0788

Email   John@jsfirmsonl.nw.com

SEND TO: Library of Congress, Copyright Office-DOC, 101 Independence Avenue SE, Washington, DC 20559-6000

INCLUDE ALL OF THESE TOGETHER: (1) two copies of this form; (2) payment from a deposit account or by check/money order payable to Register of Copyrights; (3) your document; (4) if a return receipt is requested, a self-addressed postage envelope; (5) if enclosing an electronic title list, an acceptable digital storage medium containing a title list in the prescribed format.

FORM DCS  NOVEMBER 2014  Printed on recycled paper

TWS0355829

## CONFIRMATION OF ASSIGNMENT OF COPYRIGHT

KNOW ALL MEN BY THESE PRESENTS that, as reflected in the October 31, 2013, "Memorandum of Understanding and Ownership," Masano Kawana, a Japanese citizen, and Iriceyes Pte. Ltd., a private limited company of Singapore, confirms the assignment to Lee Kar Yin "Jr.," a citizen of Malaysia of all rights, titles and interest in the photographs (collectively known as the "Works") that were created during 2000-2007 shoots, a true and correct copy of which is attached hereto as "Attachment A," the Works include but are not limited to the copyright registrations which are listed on "Attachment B."

IN WITNESS WHEREOF, Lee Kar Yin "Jr.", with respect to all copyrights in and to the works, has caused this document to be executed on this 18 day of May, 2015.

Lee Kar Yin "Jr."

By: _____

TWS0355830

ATTACHMENT A

## MEMORANDUM OF UNDERSTANDING AND OWNERSHIP

This Memorandum of Understanding is made concerning the estate of Lee Kar Yin "Jr.", a citizen of Malaysia, with an address of 46 South Bridge Road #04-01 Kinghi Building Singapore 058679 ("Assignee") as it pertains to Masano Kawana, a Japanese citizen with an address of 6 Woking Road #02-04 Singapore 139669 and Irisayes Pte. Ltd., a private limited company of Singapore (collectively known as "Assignor"), and is intended to confirm the understanding of Assignor and Assignee concerning ownership of all rights and title to the photographs that were created during all of the 2000-2007 photographic shoots, including The Chedi Phuket, The Lalu Sun Moon Lake Taiwan, The Legian and The Club at The Legian Bali, The Chedi Muscat, The Leela Goa, The Chedi Club Ubud Bali, The Chedi Chiang Mai, The Setai Miami, The Datai Langkawi, The Andaman Langkawi, The Nam Hai Hoi An Vietnam, Carcosa Seri Negara Kuala Lumpur, The Chedi Milan, The Serai Club Jimbaran Bali, The Heritage House Mendocino, Langsuan Apartment Bangkok, 32B Scah Street Singapore, GHM Boutique Products and The Fullerton Hotel, Singapore (collectively known as the "Works") and assignments arranged, creatively conceived, made and produced by Assignee, from inception to completion, pursuant thereto and in connection therewith.

Whereas the intent of any and all prior agreements between Assignor and Assignee was that Assignor would have the right to use some of the Works for personal display for photographic competition and personal service promotion, such as his personal websites or personal albums to display, and not for any other use; and

Whereas the effect and intent of any prior agreements between Assignor and Assignee was that the Works as well as the commercial and artistic rights created therein were exclusively owned by Assignee such that Assignor was employed by Assignee for the purpose of assisting with photographic shoots so as to create works made for hire by Assignor for Assignee and that the resulting works of Assignee and Assignor made thereby were, in fact, works made for hire by Assignor for Assignee for the sole purpose of assisting with photographic shoots directed and supervised by Assignee.

For valuable consideration, receipt of which is hereby acknowledged, Assignee hereby confirms that Assignor has the right to use the original works for personal display for photographic competition and personal service promotion, such as his personal websites or personal albums to display, and not for any other use or publication; and

For valuable consideration, receipt of which is hereby acknowledged, Assignor hereby confirms assignment to Assignee of all of Assignor's rights, title and interest worldwide, in the Works, together with any and all other rights and interests arising out of, and in connection with, or in relation to the Works, including derivative works.

Assignor represents and warrants that he has not granted, assigned, mortgaged, pledged or hypothecated any of the rights granted to Assignee hereunder.

Assignor agrees, at the request of Assignee or its successor in interest, to do all lawful acts which may be required for obtaining and enforcing all rights in the Works and to otherwise aid Assignee, or its heirs, assignees, or successors in enforcing Assignee's rights to the Works as reasonably required to carry out or effectuate the purpose and intent of this Agreement.

In consideration of payment of Memorandum of Understanding by Assignee to Assignor, Assignor, with immediate effect, unconditionally and irrevocably waives, releases and discharges Assignee from all Claims. Both Assignor and Assignee confirm and agree that this is a full and final settlement of all potential claims and that there are no other outstanding invoices due and owing by Assignee to Assignor.

IN WITNESS WHEREOF the parties hereto have executed this Assignment as of the effective date.


By _____          Date  01 october 2013
Masano Kawana and Irisayes Pte. Ltd.


By _____          Date  01 OCTOBER 2013
Lee Kar Yin "Jr"

TWS0355831

ATTACHMENT B

| Title | Reg. No. | Date |
|---|---|---|
| The Wave Design Pte. Ltd. Photographs 2005 (B) : Group Registration / Published Photos – 394 Photographs. | VA0001432332 | 2010 |
| The Wave Design Pte. Ltd. Photographs 2005 (B) ; Group Registration, Published Photos – 380 photographs correction to claim VA0001432332 | VA0001432637 | 2010 |
| The Wave Design Pte. Ltd. Photographs 2006 : Group Registration / Published Photos – 362 photographs | VA0001432330 | 2010 |
| The Wave Design Pte. Ltd. Photographs 2007 (A) : Group Registration / Published Photos – 388 photographs | VA0001432326 | 2010 |
| The Wave Design Pte. Ltd. Photographs 2007 (B) : Group Registration / Published Photos – 32 photographs | VA0001432327 | 2007 |
| The Wave Design Pte. Ltd. Unpublished photographs 2005 (C) setai429 - setai803 | VAu001055458 | 2011 |
| The Wave Design Pte. Ltd. Unpublished photographs 2005 (D) setai804 -setai958; setai960 - setai1179 | VAu001055459 | 2011 |
| The Wave Pte., Ltd. Photographs 2005 (A) : Group Registration / Published Photos – 327 photographs. | VA0001432331 | 2010 |
| Wave-S photographs 2001. | VA0001432324 | 2010 |
| Wave-S photographs 2002. | VA0001432325 | 2010 |
| Wave-S Photographs 2002 (B) : Group Registration / Published Photos – 13 photographs | VA0001432336 | 2002 |
| (Wave-S Photographs 2002 ( C ) : Group registration/published photos –6 photographs | VA0001433816 | 2002) |
| Wave-S Photographs 2002 ( C ) : Group registration / published photos – 6 photographs C.O. duplicate cancelled | VA0001917242 | 2002 |
| Wave-S Photographs 2002 - laiui59 | VA0001857705 | 2002 |
| Wave-S Photographs 2003 : Group Registration / Published Photos – 139 | VA0001432328 | 2010 |
| Wave-S Photographs 2004 (B) | VA0001758524 | 2004 |

1

TWS0355832

| | | |
|---|---|---|
| Wave-S Photographs 2004 ( C ) - legian122 | VA0001825431 | 2004 |
| Wave-S Photographs 2004 - chiangmai239. | VA0001842230 | 2004 |
| Wave-S Photographs 2004 (D) - chediclub141 | VA0001825423 | 2004 |
| Wave-S Photographs 2004 : Group Registration / Published Photos - 462 photographs. | VA0001432329 | 2010 |
| Wave-S unpublished setai959. | VAu001060182 | 2004 |
| The Wave Design Pte. Ltd. - Unpublished setai1131 | VAu001144751 | 2013 |
| The Wave Pte. Ltd. Unpublished setai 182. | VAu001057927 | 2005 |
| The Wave Design Pte. Ltd. Unpublished setai0183 : 0184 | VAu001060180 | 2005 |
| The Wave Design Pte. Ltd. Published legian 121. | VA0001765854 | 2006 |
| The Wave Design Pte. Ltd. - Unpublished Photograph setai1180 | VAu001110867 | 2005 |
| The Wave Design Pte. Ltd. - detai105 | VA0001824376 | 2005 |
| The Wave Design Pte. Ltd. - detai104 | VA0001825249 | 2005 |
| The Wave Design Pte. Ltd. detai106<br>correction to title VA0001825249 | CA VA 0001433795 | 2013 |
| The Wave Design Pte. Ltd. - andaman057 | VA0001825264 | 2005 |
| The Wave Design Pte. Ltd. - andaman058 | VA0001829021 | 2005 |
| The Wave Design Pte. Ltd. - bkk018 - bkk025 | VA0001842228 | 2007 |

TWS0355833

2

**Receipt**

Copyright Office
Library of Congress
101 Independence Avenue SE
Washington, DC 20559-6000

No. 1-13QSM5U

Date: 5/20/2015 3:13:06 PM

**Received**

| | | |
|---|---|---|
| Form(s): | 2 DCS | ☐ Search Report |
| Deposit Count: | | ☐ Search |
| Piece Count: | | ☐ Retrieval |
| Type of Deposit: | | ☐ Correspondence |
| Other Enclosures: | REQUEST FOR SPECIAL HANDLING | ☐ Inspection |
| Title: | THE WAVE DESIGN T., LTD. PHOTOGRAPHS | ☐ Photocopies |
| | 2005 (B) GROUP REGISTRATION / GROUP | ☐ Additional Certificate |
| # of Additional Titles: | VA 0001432392 | |
| | | ☐ Certification |
| Priority: | Special Handling | ☐ Secure Test Exam |
| # Of Documents: | 1 | Other: |

Received From: JOHN N JENNISON ESP    Phone:

2001 JEFFERSON DAVIS HWY SUITE 1102

ARLINGTON, VA 22202

Representing:    Phone:

Corresponding Id:

| Fees | | Method of Payment | Amount |
|---|---|---|---|
| No Fee: | ☐ | Check: | |
| Fee to be Determined: | ☐ | Money Order: | |
| Base Fee: | $245.00 | Deposit Account: | 80519 |
| Special Handling Fee: | $550.00 | Deposit Account Name: | Jennison & Shultz PC |
| Secure Test Exam Fee: | $ | | |
| Total Due: | $795.00 | | |
| | | Total Payment: | $795.00 |

**Special Handling**

Delivery Method:    Hold for Pick-Up    Contact:    JENNISON 703-415-1640
Organization:

Picked Up By:
Date:

Notes

Received By:    LGRA

Receipt of material is merely a preliminary step in the registration and/or recordation process. It does not imply that any final determination has been made in the case, or that the material is acceptable for registration.

TWS0355834

# Exhibit 8

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

THE WAVE STUDIO, LLC,

                    Plaintiff,

            v,                                              Case No. 13-cv-09239-CS

GENERAL HOTEL MANAGEMENT LTD.                               ECF CASE
*et al.,*

                    Defendants.

---

## AMENDED[1] ANSWER AND AFFIRMATIVE DEFENSES OF GENERAL HOTEL MANAGEMENT LTD.

        Defendant, General Hotel Management Ltd. ("GHM") pleads as follows in response to the First Amended Complaint [DE 7] ("Complaint"):

        1.      GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 1 of the Complaint and therefore denies them.

        2.      Admitted that this purports to be an action for copyright infringement. The remaining allegations contained in paragraph 2 of the Complaint are denied.

        3.      GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 3 of the Complaint and therefore denies them. Denied that such terms applied to GHM.

        4.      The allegations contained in paragraph 4 of the Complaint are denied.

        5.      Admitted that this purports to be an action under the Copyright Laws of the United States. The remaining allegations contained in paragraph 5 of the Complaint are denied.

---

[1] Amended to add an affirmative defense based on estoppel.

1

6.       GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 6 of the Complaint and therefore denies them.

7.       The allegations contained in paragraph 7 of the Complaint are denied.

8.       The allegations contained in paragraph 8 of the Complaint are denied.

9.       GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 9 of the Complaint and therefore denies them.

10.      Admitted that GHM and/or its affiliates are hotel management companies. The remaining allegations contained in paragraph 10 are denied.

11.      GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 11 of the Complaint and therefore denies them.

12.      GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 12 of the Complaint and therefore denies them.

13.      GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 13 of the Complaint and therefore denies them.

14.      GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 14 of the Complaint and therefore denies them.

15.      GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 15 of the Complaint and therefore denies them.

16.      GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 16 of the Complaint and therefore denies them.

17.      GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 17 of the Complaint and therefore denies them.

18.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 18 of the Complaint and therefore denies them.

19.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 19 of the Complaint and therefore denies them.

20.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 20 of the Complaint and therefore denies them.

21.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 21 of the Complaint and therefore denies them.

22.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 22 of the Complaint and therefore denies them.

23.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 23 of the Complaint and therefore denies them.

24.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 24 of the Complaint and therefore denies them.

25.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 25 of the Complaint and therefore denies them.

26.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 26 of the Complaint and therefore denies them.

27.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 27 of the Complaint and therefore denies them.

28.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 28 of the Complaint and therefore denies them.

29.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 29 of the Complaint and therefore denies them.

30.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 30 of the Complaint and therefore denies them.

31.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 31 of the Complaint and therefore denies them.

32.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 32 of the Complaint and therefore denies them.

33.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 33 of the Complaint and therefore denies them.

34.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 34 of the Complaint and therefore denies them.

35.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 35 of the Complaint and therefore denies them.

36.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 36 of the Complaint and therefore denies them.

37.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 37 of the Complaint and therefore denies them.

38.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 38 of the Complaint and therefore denies them.

39.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 39 of the Complaint and therefore denies them.

4

40.     GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 40 of the Complaint and therefore denies them.

41.     GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 41 of the Complaint and therefore denies them.

42.     GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 42 of the Complaint and therefore denies them.

43.     GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 43 of the Complaint and therefore denies them.

44.     GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 44 of the Complaint and therefore denies them.

45.     GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 45 of the Complaint and therefore denies them.

46.     GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 46 of the Complaint and therefore denies them.

47.     GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 47 of the Complaint and therefore denies them.

48.     GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 48 of the Complaint and therefore denies them.

49.     GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 49 of the Complaint and therefore denies them.

50.     GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 50 of the Complaint and therefore denies them.

21859143v3

51.     GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 51 of the Complaint and therefore denies them.

52.     GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 52 of the Complaint and therefore denies them.

53.     GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 53 of the Complaint and therefore denies them.

54.     GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 54 of the Complaint and therefore denies them.

55.     GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 55 of the Complaint and therefore denies them.

56.     GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 56 of the Complaint and therefore denies them.

57.     GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 57 of the Complaint and therefore denies them.

58.     GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 58 of the Complaint and therefore denies them.

59.     GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 59 of the Complaint and therefore denies them.

60.     GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 60 of the Complaint and therefore denies them.

61.     GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 61 of the Complaint and therefore denies them.

62.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 62 of the Complaint and therefore denies them.

63.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 63 of the Complaint and therefore denies them.

64.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 64 of the Complaint and therefore denies them.

65.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 65 of the Complaint and therefore denies them.

66.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 66 of the Complaint and therefore denies them.

67.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 67 of the Complaint and therefore denies them.

68.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 68 of the Complaint and therefore denies them.

69.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 69 of the Complaint and therefore denies them. GHM denies that it supplied any photographs without Plaintiff's knowledge or authorization.

70.    The allegations contained in paragraph 70 of the Complaint are denied.

71.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 71 of the Complaint and therefore denies them. Denied that such terms applied to GHM.

21859143v3

72.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 72 of the Complaint and therefore denies them. Denied that such terms applied to GHM.

73.    Admitted that Ms. Lee was commissioned to photograph certain hotels managed by GHM's affiliates and that she was paid for her services. The remaining allegations contained in paragraph 73 of the Complaint are denied.

74.    Admitted that the parties executed a Settlement Agreement in April 2011 releasing GHM from any and all claims. The remaining allegations contained in paragraph 74 of the Complaint are denied.

75.    The allegations contained in paragraph 75 of the Complaint are denied.

76.    The allegations contained in paragraph 76 of the Complaint are denied.

77.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 77 of the Complaint and therefore denies them.

78.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 78 of the Complaint and therefore denies them.

79.    The allegations contained in paragraph 79 of the Complaint are denied.

80.    The allegations contained in paragraph 80 of the Complaint are denied.

81.    The allegations contained in paragraph 81 of the Complaint are denied.

82.    The allegations contained in paragraph 82 of the Complaint are denied.

83.    The allegations contained in paragraph 83 of the Complaint are denied.

84.    The allegations contained in paragraph 84 of the Complaint are denied.

85.    The allegations contained in paragraph 85 of the Complaint are denied.

21859143v3

86.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 86 of the Complaint and therefore denies them.

87.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 87 of the Complaint and therefore denies them.

88.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 88 of the Complaint and therefore denies them.

89.    The allegations contained in paragraph 89 of the Complaint are denied.

90.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 90 of the Complaint and therefore denies them.

91.    The allegations contained in paragraph 91 of the Complaint are denied.

92.    The allegations contained in paragraph 92 of the Complaint are denied.

93.    The allegations contained in paragraph 93 of the Complaint are denied.

94.    The allegations contained in paragraph 89 of the Complaint are denied.

95.    GHM re-alleges its responses above as if fully set forth herein.

96.    The allegations contained in paragraph 96 of the Complaint are denied.

97.    The allegations contained in paragraph 97 of the Complaint are denied.

98.    The allegations contained in paragraph 98 of the Complaint are denied.

99.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 99 of the Complaint and therefore denies them.

100.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 100 of the Complaint and therefore denies them.

101.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 101 of the Complaint and therefore denies them.

102.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 102 of the Complaint and therefore denies them.

103.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 103 of the Complaint and therefore denies them.

104.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 104 of the Complaint and therefore denies them.

105.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 105 of the Complaint and therefore denies them.

106.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 106 of the Complaint and therefore denies them.

107.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 107 of the Complaint and therefore denies them.

108.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 108 of the Complaint and therefore denies them.

109.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 109 of the Complaint and therefore denies them.

110.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 110 of the Complaint and therefore denies them.

111.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 111 of the Complaint and therefore denies them.

112.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 112 of the Complaint and therefore denies them.

113.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 113 of the Complaint and therefore denies them.

114.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 114 of the Complaint and therefore denies them.

115.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 115 of the Complaint and therefore denies them.

116.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 116 of the Complaint and therefore denies them.

117.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 117 of the Complaint and therefore denies them.

118.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 118 of the Complaint and therefore denies them.

119.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 119 of the Complaint and therefore denies them.

120.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 120 of the Complaint and therefore denies them.

121.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 121 of the Complaint and therefore denies them.

122.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 122 of the Complaint and therefore denies them.

123.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 123 of the Complaint and therefore denies them.

124.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 124 of the Complaint and therefore denies them.

125.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 125 of the Complaint and therefore denies them.

126.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 126 of the Complaint and therefore denies them.

127.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 127 of the Complaint and therefore denies them.

128.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 128 of the Complaint and therefore denies them.

129.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 129 of the Complaint and therefore denies them.

130.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 130 of the Complaint and therefore denies them.

131.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 131 of the Complaint and therefore denies them.

132.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 132 of the Complaint and therefore denies them.

133.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 133 of the Complaint and therefore denies them.

134.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 134 of the Complaint and therefore denies them.

21859143v3

135.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 135 of the Complaint and therefore denies them.

136.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 136 of the Complaint and therefore denies them.

137.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 137 of the Complaint and therefore denies them.

138.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 138 of the Complaint and therefore denies them.

139.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 139 of the Complaint and therefore denies them.

140.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 140 of the Complaint and therefore denies them.

141.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 141 of the Complaint and therefore denies them.

142.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 142 of the Complaint and therefore denies them.

143.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 143 of the Complaint and therefore denies them.

144.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 144 of the Complaint and therefore denies them.

145.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 145 of the Complaint and therefore denies them.

146.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 146 of the Complaint and therefore denies them.

147.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 147 of the Complaint and therefore denies them.

148.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 148 of the Complaint and therefore denies them.

149.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 149 of the Complaint and therefore denies them.

150.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 150 of the Complaint and therefore denies them.

151.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 151 of the Complaint and therefore denies them.

152.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 152 of the Complaint and therefore denies them.

153.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 153 of the Complaint and therefore denies them.

154.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 154 of the Complaint and therefore denies them.

155.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 155 of the Complaint and therefore denies them.

156.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 156 of the Complaint and therefore denies them.

157.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 157 of the Complaint and therefore denies them. Denied that GHM committed any act of infringement.

158.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 158 of the Complaint and therefore denies them. Denied that GHM committed any act of infringement.

159.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 159 of the Complaint and therefore denies them. Denied that GHM committed any willful act of infringement.

160.    The allegations contained in paragraph 160 of the Complaint are denied.

161.    The allegations contained in paragraph 161 of the Complaint are denied.

162.    GHM re-alleges its responses above as if fully set forth herein.

163.    The allegations contained in paragraph 163 of the Complaint are denied.

164.    The allegations contained in paragraph 164 of the Complaint are denied.

165.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 165 of the Complaint and therefore denies them.

166.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 166 of the Complaint and therefore denies them.

167.    The allegations contained in paragraph 167 of the Complaint are denied.

168.    Admitted that GHM knew that certain Defendants would use the photographs to market certain hotels managed by GHM. The remaining allegations contained in paragraph 168 of the Complaint are denied.

169.    The allegations contained in paragraph 169 of the Complaint are denied.

15

170.   Admitted that GHM knew that certain Defendants would use the photographs to market certain hotels managed by GHM. The remaining allegations contained in paragraph 170 of the Complaint are denied.

171.   The allegations contained in paragraph 171 of the Complaint are denied.

172.   The allegations contained in paragraph 172 of the Complaint are denied.

173.   Admitted that Plaintiff seeks such relief. Denied that Plaintiff is entitled to any relief. The remaining allegations contained in paragraph 173 of the Complaint are denied.

174.   GHM re-alleges its responses above as if fully set forth herein.

175.   The allegations contained in paragraph 175 of the Complaint are denied.

176.   GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 176 of the Complaint and therefore denies them.

177.   The allegations contained in paragraph 177 of the Complaint are denied.

178.   GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 178 of the Complaint and therefore denies them.

179.   GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 179 of the Complaint and therefore denies them.

180.   GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 180 of the Complaint and therefore denies them.

181.   GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 181 of the Complaint and therefore denies them.

182.   GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 182 of the Complaint and therefore denies them.

183.    GHM is without sufficient knowledge to admit or deny the allegations contained in paragraph 183 of the Complaint and therefore denies them.

184.    The allegations contained in paragraph 184 of the Complaint are denied.

185.    The allegations contained in paragraph 185 of the Complaint are denied.

186.    Admitted that Plaintiff seeks such relief. Denied that Plaintiff is entitled to any relief. The remaining allegations contained in paragraph 186 of the Complaint are denied.

GHM denies that Plaintiff is entitled to the relief requested in the WHEREFORE clause of the Complaint.

## AFFIRMATIVE DEFENSES

1.    **Improper Service of Process.** Plaintiff failed to properly serve GHM, a foreign entity, with process in accordance with the Federal Rules of Civil Procedure and/or foreign law.

2.    **Lack of Personal Jurisdiction.** This Court lacks personal jurisdiction over GHM.

3.    **Setoff and Recoupment.** To the extent Plaintiff has any valid claim against GHM, any amount recoverable by Plaintiff should be reduced by any amounts owed by the Plaintiff and/or its affiliates to GHM.

4.    **Statute of Limitations.** Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

5.    **Estoppel.** Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

6.    **Laches.** Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

7.    **Unclean Hands.** Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

17

8.    **Standing.** Plaintiff lacks standing to bring some of the claims set forth in the Complaint.

9.    **Contribution/Indemnification.** The alleged injuries were proximately caused by and contributed to by the acts or omissions of other persons and/or entities, including Plaintiff and its affiliates.

10.    **Digital Millennium Copyright Act.** Plaintiff's claims are barred in whole or in part by the safe harbor provisions in the Digital Millennium Copyright Act.

11.    **License.** Any use of the allegedly infringing photographs by GHM was pursuant to an express or implied license.

12.    **Innocent Infringement.** GHM was not aware and had no reason to believe any of the alleged acts constituted copyright infringement. And use of the allegedly infringing images by GHM was done, if at all, with innocent intent, in that GHM believed in good faith that any such conduct did not constitute an infringement of copyright.

13.    **Lack of Entitlement to Statutory Damages and Attorneys Fees.** Some or all of the copyrights that Plaintiff alleges have been infringed by GHM were not timely registered thus barring Plaintiff from recovering statutory damages or attorneys' fees.

14.    **Improper Joinder of Defendants.** Plaintiff has improperly joined numerous defendants in a single action without commonality as to the transactions or occurrences giving rise to Plaintiff's claims.

15.    **Failure to Register Copyright.** Some or all of the images that Plaintiff alleges have been infringed by GHM were not registered prior to commencement of this action.

18

16.    **Waiver and Abandonment.** To the extent Plaintiff ever had any rights under the Copyright Laws, Plaintiff has waived, abandoned or forfeited any rights previously held under the Copyright Laws.

17.    **Failure to Join Indispensable Parties.** Plaintiff has failed to join parties indispensable to this action including those parties actually engaged to take the photographs.

18.    **Accord and Satisfaction.** Plaintiff's claims are barred due to accord and satisfaction and because the parties settled these claims.

19.    **Improper Venue/Forum Non Conveniens.** The venue for these proceedings is improper and/or another venue, such as Singapore, would be better suited for this case

**DATED:**    July 3, 2014

Respectfully submitted,

By:  /s/ Daniel F. Benavides

Daniel F. Benavides, Esq.
New York Bar No. 4618575
Kenneth R. Hartmann (admitted Pro Hac Vice)
KOZYAK TROPIN & THROCKMORTON, LLP
2525 Ponce de Leon Boulevard, 9th Floor
Miami, FL 33134
T: 305.372.1800
F: 305.372.3508

William Hansen (WH-9446)
Thomas H. Curtin (TC-5753)
LATHROP & GAGE LLP
230 Park Avenue, Suite 2400
New York, NY 10169
T: 212.850.6220
F: 212.850.6221

*Attorneys for General Hotel Management Ltd.*

19

21859143v3

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 18, 2014, a true and correct copy of the foregoing was served upon all counsel of record via the S.D.N.Y.'s Electronic Filing System ("ECF") and served via ECF as well as First-Class mail upon the attorneys for plaintiff The Wave Studio, LLC, at the following address:

Cameron S. Reuber, Esq.
Leason Ellis LLP
One Barker Avenue, Fifth Floor
White Plains, New York 10601


/s/ Thomas H. Curtin
THOMAS H. CURTIN

21859143v3

# Exhibit 9

1

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------------x
     THE WAVE STUDIO, LLC, a New York
 3   Limited Liability Company,
                     Plaintiff,
 4
 5            -against-                      13 Civ. 9239

 6   AMERICAN EXPRESS COMPANY, a New
     York corporation,
 7                   Defendant.
     ------------------------------------x
 8   THE WAVE STUDIO, LLC, a New York
     Limited Liability Company,
 9                   Plaintiff,

10            -against-                      15 Civ. 3420

11   AMERICAN EXPRESS COMPANY, a New
     York corporation,
12                   Defendant.
     ------------------------------------x
13                            United States Courthouse
                              White Plains, New York
14                            August 19, 2015

15   B e f o r e:
                       HON. CATHY SEIBEL,
16                            District Court Judge

17   A P P E A R A N C E S:
     VIJAY K. TOKE
18           Attorney for Plaintiff

19   ANTHONY T. PIERCE
             Attorney for American Express
20
     MATTHEW J. VAN DUSEN
21           Attorney for About, Inc., et al.

22   VACHARAESORN VIVACHARAWONGSE
             Attorney for Setai Owners LLC
23
     AMBIKA K. DORAN
24           Attorney for United Airlines, Inc.

25   ANGELA A. O'DONNELL, RPR
     Official Court Reporter
```

Angela O'Donnell, RPR, 914-390-4025

```
1                    P R O C E E D I N G S

2              THE COURT:  Good morning, everybody.  Make sure

3   our record is clear.  First of all, this is the Wave Studio

4   versus American Express, 15CV3420, as well as the lead case,

5   Wave Studio versus General Hotel Management, 13CV9329.

6              Mr. Toke is here for plaintiff.  Good morning.

7              MR. TOKE:  Good morning, your Honor.

8              THE COURT:  And Ms. Remore for defendant GHM in

9   the lead case.  Good morning to you.

10             MS. REMORE:  Good morning.  And, your Honor, I

11  have Ms. Doran, who represents United, on the line but hung

12  up on her so that you could give me a call back.  May I

13  conference her in right now?

14             THE COURT:  Sure.

15             MS. REMORE:  Thank you.  Just a moment, please.

16             (Pause)

17             MS. REMORE:  Your Honor, we should have Ambika

18  Doran on the line as well.  Ambika, are you there?

19             THE COURT:  Uh-oh.

20             MS. REMORE:  Just a moment.  She's still on hold.

21  Ambika?

22             MS. DORAN:  Yes.

23             MS. REMORE:  Ms. Doran is on the line.  You're on

24  with the Court.

25             THE COURT:  Good morning, Ms. Doran.
```

```
 1              MS. DORAN:  Good morning.

 2              THE COURT:  And then we have Mr. Pierce

 3     representing AmEx.

 4              MR. PIERCE:  Yes, your Honor.

 5              THE COURT:  Mr. Van Dusen representing a number of

 6     GHM's co-defendants, I'll put it that way.

 7              MR. VAN DUSEN:  Correct, your Honor.

 8              THE COURT:  And Mr. Vivacharawongse.

 9              MR. VIVACHARAWONGSE:  Yes, your Honor.

10              THE COURT:  Was that close?

11              MR. VIVACHARAWONGSE:  The "SE" is silent.  Other

12     than that, very close.

13              THE COURT:  Representing Setai, which is also a

14     co-defendant of GHM; right?

15              MR. VIVACHARAWONGSE:  Yes, your Honor.

16              THE COURT:  Good morning to everyone.  Sorry that

17     we're running a little behind.  I have a jury out and they

18     sent a couple of notes this morning.

19              I have letter briefs from plaintiff and American

20     Express regarding American Express' motion to stay the case.

21              First let me ask you, Mr. Toke, anything you want

22     to add that's not covered by your written submission?

23              MR. TOKE:  No, your Honor.

24              THE COURT:  Mr. Pierce, anything from you?

25              MR. PIERCE:  Your Honor, only one point of
```

1    clarification.  In Mr. Toke's letter, I didn't want to

2    bother the Court with a reply, but I do just want to make

3    this on the record.

4          In Mr. Tote's opposition brief, he made the

5    statement that we have admitted that we did not get the

6    photographs from GHM, and while I think our letter is clear

7    that we did not admit that, in fact, we said that there was

8    every indication that they came from GHM, I just want to

9    make that clear to your Honor.

10         THE COURT:  It was, as I read it, that you got

11   the -- well, I'm reading from your letter.  At least three

12   of the American Express branded websites were hosted or

13   managed by current or former defendants in the GHM

14   litigation.  These entities provided all images appearing on

15   those sites.

16         So from that I inferred it wasn't necessarily GHM,

17   it might have been one of the co-defendants of GHM.

18         MR. PIERCE:  Right, but, your Honor, I believe we

19   started that paragraph with there's every indication the

20   third parties that American Express received the photos from

21   came from GHM.

22         THE COURT:  Well they originated with GHM.

23         MR. PIERCE:  That's the point I just want to make

24   sure the Court understands, all this starts with GHM.

25         THE COURT:  Okay.  That I get.  And let me ask, I

Angela O'Donnell, RPR, 914-390-4025

1    guess this is a question for Ms. Remore.  Am I correct that

2    your client's position is not just that your client had an

3    implied license but also that your client was the owner of

4    the photographs?

5              MS. DORAN:  Yes.  That's correct.  There's two

6    separate theories, one of which is the implied license and

7    one is that they're the rightful owner in the first

8    instance.

9              THE COURT:  All right.  And you're due to complete

10    discovery with plaintiff in November; is that correct?

11              MS. DORAN:  That's correct, your Honor.

12              THE COURT:  All right.  So the parties are

13    familiar with the allegations and the procedural history, so

14    I'm not going to go into that at length.  This is a

15    copyright infringement action in which plaintiff alleges

16    that a number of defendants used its copyrighted travel and

17    hotel photographs without permission.  In the lead case,

18    which is 13CV9239, Wave Studio against General Hotel

19    Management or GHM.  Plaintiff alleged that GHM commissioned

20    Junior Lee, plaintiff's principal, to create a series of

21    photographs of hotels under GHM's management for promotional

22    and advertising purposes.  Plaintiff alleged that after Lee

23    submitted the photographs to GHM, GHM distributed them to

24    the other defendants in the GAM case without plaintiff's

25    permission.  These defendants used the photographs and

1    distributed them on to other entities without plaintiff's

2    permission.  Plaintiff alleged that Lee gave the photographs

3    to no one other than GHM except for her lawyer and

4    government agencies.  And this is all from the complaint in

5    the GHM case.

6           Because GHM was the bottleneck through which all

7    of the alleged copyright infringement flowed, I issued an

8    order on July 3 of last year memorializing an oral ruling

9    the day before staying the GHM case as to all defendants

10   except GHM for the purpose of limited discovery and

11   dispositive motion practice between plaintiff and GHM as to

12   GHM's claimed right to use and distribute the photographs.

13   If GHM has such a right much, then the claim against most if

14   not all of the other defendants would be moot.  At that

15   July 2, 2014, conference, both parties recognized that

16   certain defendants didn't get the photographs from GHM and

17   that those defendants might not be affected by the threshold

18   issue of GHM's right to distribute the photos but the case

19   was stayed as to those defendants anyway in contemplation of

20   plaintiff in GHM determining through discovery which parties

21   did and did not get the photos directly from GHM and this

22   was agreed to, albeit when plaintiff had different counsel.

23          In the AmEx case, 15CV3420, plaintiff alleges --

24   by the way that's short for American Express -- plaintiff

25   alleges AmEx used or distributed without plaintiff's

1    permission, photographs that are among the same photographs

2    identified in the GHM case.  At a conference on June 18 of

3    this year, I ordered the AmEx and GHM cases consolidated due

4    to their overlapping factual issues.  AmEx asked that its

5    case be stayed for the same reason it was stayed as to GHM's

6    co-defendants.  Plaintiff opposed and said that it wanted to

7    review any evidence AmEx had that it had received the photos

8    from GHM.  I got letter briefs from AmEx as well as

9    defendant's Orbit's Setai and GHM from the GHM case in

10    support of the stay and from plaintiff opposing it.

11         The Court may decide in its discretion to stay

12    civil proceedings pursuant to the power inherent in every

13    court to control the disposition of the causes on its docket

14    with economy of time and effort for itself, for counsel and

15    for litigants. *Nautilus Neurosciences versus Fares*, 2013

16    Westlaw, 3009488 at *2.  The party seeking the stay bears

17    the burden of establishing its need for one.  *Louis Vuitton*

18    *versus LY USA*, 676 F.3d 83, 97.  Absent a showing of undue

19    prejudice on defendant or interference with his

20    constitutional rights, there's no reason why plaintiff

21    should be delayed in its efforts to diligently proceed to

22    sustain its claim.  That's *Louis Vuitton* at 97.  Courts in

23    this circuit generally consider five factors when deciding

24    whether to grant a stay pending the outcome of a related

25    action.  The private interests of the plaintiffs in

1    proceeding expeditiously with the civil litigation as

2    balanced against the prejudice to the plaintiffs if delayed,

3    the private interest of and burden on the defendants, the

4    interest of the Court, the interest of persons not parties

5    to the litigation and the public interest. *GTFM versus Park*,

6    2002 Westlaw 31890940 at *2 (S.D.N.Y. December 30, 2002).

7    These factors are to be balanced with the principal

8    objective being the avoidance of unfair prejudice.  *American*

9    *Steamship Owners versus Lafarge*, 474 F.Supp. 2d, 474, 482

10   (S.D.N.Y. 2007) affirmed 599 F.3d 102.  The impetus of the

11   stay in the GHM case was GHM's theory as explained at that

12   July 2 conference, that it had at least an implied license

13   to use and distribute the photographs and/or that it owned

14   the photographs outright.  An implied license occurs where

15   one party created a work at the other's request and handed

16   it over intending that the other copy and distribute it.

17   *SmithKlein Beecham versus Watson Pharmaceuticals*, 211 F.3d

18   21, 25.  AmEx has not asserted that it received the

19   photographs directly from GHM, it says that for three of its

20   six websites at issue it received the photographs from the

21   current or former defendants in the GHM case who managed the

22   cites and that for one site which AmEx managed, the GHM

23   managed hotels provided the photographs themselves.  AmEx

24   does not say where the images for the remaining two sites

25   came from, it says those sites are currently owed by time

1    Inc.

2            It therefore appears that resolution of the

3    implied license issue would not necessarily moot plaintiff's

4    claims against AmEx.  AmEx's claim would be mooted, however,

5    by a finding that GHM owns the rights to plaintiff's

6    photographs outright.

7            GHM has framed the threshold issue as to whether

8    it had a right to distribute the photographs either via an

9    implied license or because GHM and/or its managed hotels are

10   the rightful owners of the photographs.  That's document 48.

11   To the extent this issue is in play, which apparently it is,

12   a stay is appropriate.  Obviously if GHM is the rightful

13   owner of the photographs, it can do what it wants with them,

14   including happening them to third parties who hand them to

15   AmEx.

16           Even if AmEx's claims were not going to be mooted

17   by a finding that GHM was the rightful owner of the

18   photographs, however, I would find that a stay is

19   appropriate in order to facilitate the fair and orderly

20   administration of this case which seems to be growing by the

21   day as plaintiff brings new suits against new defendants and

22   they get transferred to me.  While the existence of a

23   license with respect to GHM may not end up affecting AmEx's

24   liability, the existence of a license with respect to the

25   hotels would, it seems at least plausible an implied license

1    theory with respect to the hotels will be available to AmEx,

2    given that, according to the plaintiff's complaint in the

3    GHM case, Lee was commissioned by GHM to take photographs of

4    the hotels for promotional purposes, turned them over to GHM

5    for that purpose and expected to be paid by the hotels

6    themselves.  That's paragraph 74 of the amended complaint in

7    the GHM case.  And, further, that according to GHM's

8    pre-motion letter in 2014, Ms. Lee was paid for the right to

9    use the photos for hotel marketing and knew that they were

10   used for that purpose for years without objecting.  That's

11   document 50 in the GHM case.  *See Pavlica versus Bher*, 397

12   F.Supp. 2d 519, 526 (S.D.N.Y. 2005) which said an implied

13   license to use a copyrighted work may be implied from the

14   parties' conduct.

15        Litigating the claims against AmEx would thus have

16   the effect of lifting the stay currently in place as to the

17   hotel as they would be required to participate in discovery

18   related to AmEx's receipt of the images and it would not

19   make sense to stay as to images AmEx got from hotels but not

20   images it got from other GHM co-defendants.  Additionally,

21   while the discovery currently proceeding between plaintiff

22   and GHM isn't targeted at that issue, it is certain to

23   uncover facts relevant to it.  So completion of discovery

24   between plaintiff and GHM will at least provide a developed

25   factual landscape to help resolve the claims against AmEx

1   and similarly situated defendants more quickly and perhaps

2   promote settlement of them.

3         Accordingly, I find that Court's interest in the

4   ordinary administration of this case and conserving judicial

5   resources and the other defendants' interests in preserving

6   the now year-long stay in the GHM case outweighs any

7   prejudice plaintiff will suffer as a result of staying this

8   case.

9         I note while plaintiff has a substantial interest

10  in the expeditious resolution of its claims, *Volmar*

11  *Distributors versus New York Post* 152FRD 36, 40 (S.D.N.Y.

12  1993), the prejudice to plaintiff is somewhat reduced here

13  because fact discovery as to GHM is scheduled to be

14  completed in November just three months away.  So the end of

15  the stay is in sight.

16        Accordingly, I'm going to grant AmEx's motion to

17  stay pending the resolution of the threshold issues in the

18  GHM case.

19        I also have a similar request from United Airlines

20  in 15CV5392 and we had scheduled a conference for

21  September 4th.  Also, I have a conference on September 9th

22  where AOL, Virgin and Visa, I think are all seeking

23  consolidation and perhaps -- and two out of the three I

24  think are seeking also to have their cases stayed.  We have

25  United on the phone, which is good.  I'd like to move your

1  case to September 9th as well and there the issue will be

2  whether there's anything different about United, AOL, Virgin

3  or Visa that would mean my ruling as to AmEx shouldn't apply

4  to them.

5          So I don't know if, while we have United here, if

6  plaintiff and United want to tell me if there's any

7  difference or if we should just deal with all of this on the

8  9th.

9          MS. DORAN:  Your Honor, I don't believe that there

10 is any difference.  Counsel's in favor of the stay in the

11 sense that United is already a party to the GHM action, you

12 know, for some of the same images.  So, you know, based on

13 what you've just said just now, I see no difference.  United

14 has claims that most, the vast majority of the photographs

15 came ultimately from GHM and so any argument about whether

16 GHM owns the copyrights and the photographs at issue would

17 also operate with respect to the United litigation.

18         THE COURT:  Mr. Toke, why is United sued

19 separately if it's already a defendant in GHM?

20         MR. TOKE:  Your Honor, the liability for this

21 lawsuit is actually for Continental.com and Continental

22 Airlines related liability not United, which of course

23 United and Continental merged and so this lawsuit is as to

24 just Continental, that's why they were sued separately.

25         THE COURT:  All right.  Well that makes sense.

Angela O'Donnell, RPR, 914-390-4025

1    Are you in a position now to give me your views on whether

2    there's any difference between United's -- or former

3    Continental's posture and AmEx's posture?

4             MR. TOKE:  I am not, your Honor, but we will

5    certainly discuss it with United's counsel and if it appears

6    to be the same, then we would have no problem with of course

7    proceeding in the same manner the Court has just ruled with

8    AmEx.

9             THE COURT:  All right, well, for --

10             MR. TOKE:  The only thing I would mention, your

11    Honor, I apologize for interrupting, on September 9 we were

12    scheduled to complete the plaintiff's deposition in New York

13    at I think 10:30 a.m. but the Court set the hearing I think

14    for the conference at 11:30 that morning.  Is it possible or

15    perhaps we could even talk to counsel for GHM about maybe

16    pushing back the time for the deposition or if the Court can

17    move the conference up or to a different date, that would be

18    ideal.

19             THE COURT:  Let me see, let me ask my courtroom

20    deputy to look on September 9th.  We have a whole bunch of

21    Wave cases on for I think it's 11:30.

22             THE CLERK:  11:30, right.

23             THE COURT:  Is there any way we could move them to

24    9:30 or to the end of the day?

25             THE CLERK:  We have a matter on at 10:00, so we

                   Angela O'Donnell, RPR, 914-390-4025

14

1   have a half hour at 9:30.

2            THE COURT:  What is the 10:00?

3            THE CLERK:  Status conference, civil.

4            THE COURT:  All right.  Would it help to move it

5   to 9:30 on the 9th?

6            MR. TOKE:  If we could do it by telephone, your

7   Honor, that would be fine because the deposition is going to

8   be taking place in New York downtown somewhere.

9            THE COURT:  Yeah, I guess there's no reason why

10  you and GHM can't appear by phone, but I'll want everybody

11  else to be here, because more than two people on the phone

12  drives the court reporters mad.

13            All right.  The September 4th conference with

14  respect to United is going to be moved to September 9.  All

15  the September 9th conferences will be at 9:30 rather than

16  11:30.

17            Mr. Toke, could you let everybody who's involved

18  in that September 9 conference know that it's going to be

19  9:30?

20            MR. TOKE:  Yes, your Honor.  We'll provide notice.

21            MS. DORAN:  Your Honor.  My partner, Jim

22  Rosenfeld, will be attending the conference in person.  I

23  don't know his schedule, I suspect September 9 is just fine,

24  but if it's not, we'll let you guys know.

25            THE COURT:  All right, well, I hope somebody can

1   be there that day because I'd like to deal with as many of

2   these cases together as I can.

3           Mr. Van Dusen.

4           MR. VAN DUSEN:  Yes, your Honor.  We represent

5   United as well with Ms. Doran and we also represent all the

6   defendants in the AOL case and all the defendants in the

7   Virgin case, so is it clear that they're all going to be

8   heard on the 9th at 9:30?

9           THE COURT:  Well, I think I got letters from AOL

10  and Virgin, I can't remember if there are other defendants

11  with other counsel in those cases.

12          MR. VAN DUSEN:  There are not, your Honor.

13          THE COURT:  Yes.  AOL, Virgin and Visa I think are

14  right now scheduled for September 9 at 11:30, which is now

15  9:30.

16          MR. VAN DUSEN:  We don't represent Visa, I don't

17  know much about that matter.

18          THE COURT:  Okay.  But, yes, you are correct.

19          All right.  Anything more we should do this

20  morning?

21          MR. PIERCE:  Not from AmEx perspective, your

22  Honor.

23          MR. TOKE:  No, your Honor.

24          THE COURT:  Thank you all.

25          MR. VAN DUSEN:  Thank you.

                Angela O'Donnell, RPR, 914-390-4025

1          MR. TOKE:  Thank you, your Honor.

2          MS. DORAN:  Thank you, your Honor.

3          (Proceedings concluded at 11:38 a.m.)

4                   C E R T I F I C A T E

5    Certified to be a true and correct transcript of the

6    stenographic record to the best of my ability.

7          _____

8       Angela A. O'Donnell, RPR, Official Court Reporter

9    United States District Court, Southern District of New York

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Angela O'Donnell, RPR, 914-390-4025

# Exhibit 10

# WOLFF SAMSON

DAVID SAMSON
ARTHUR D. GOLDSTEIN*
ARMEN SHAHINIAN*
JEFFREY S. CHIESA
FRANCIS J. GIANTOMASI*
GAGE ANDRETTA*
DANIEL A. SCHWARTZ*
JOHN J. SCALLY JR.*
KENNETH N. LAPTOOK*
FREDRIC P. LAVINTHAL
DAVID M. HYMAN*
DAVID L. SCHLOSSBERG
ROGER J. BREENE
BERNARD S. DAVIS
HOWARD J. SCHWARTZ*
PAUL M. COLWELL
ROBERT E. NIES
MORRIS BIENENFELD*
DENNIS M. TOFT
JEFFREY M. GUSSOFF*
LAURENCE M. SMITH
PETER C. NUSSBAUM
ADAM K. DERMAN
JEFFREY M. WERNICK*
A. ROSS PEARLSON*
MICHAEL J. NAUGHTON*
GEORGE A. SPADORO*
JOHN F. CASEY

JAMES D. FERRUCCI
JOHN A. McKINNEY JR.
DARRYL WEISSMAN*
MICHELLE A. SCHAAP
ADAM P. FRIEDMAN*
MITCHELL S. BERKEY*
CATHERINE P. WELLS
JONATHAN BONDY*
SEAN M. AYLWARD
SCOTT A. ZUBER
BEVERLY W. LUBIT*†
JOHN G. VALERI JR.
ROBERT H. CRESPI*
JAMES P. RHATICAN*
JANE HAHN*
JILL D. ROSENBERG*
ROXANNA E. HAMMETT
RONALD L. ISRAEL*
MATTHEW E. BECK*
RHONDA CARNIOL*
ADAM B. CANTOR*
MARGARET WOOD*
DORIT F. KRESSEL*
THOMAS J. TRAUTNER JR
ROBERT L. HORNBY*
STEPHEN A. KISKER*
TRICIA M. GASPARINE
NICOLE F. DIMARIA

COUNSEL

AARON D. BASSAN
JOSEPH ZAWILA
HOWARD K. URMAN
STEVEN S. KATZ*
JUNE S. MELLER*
ANDREW S. KENT*
ERIC J. LEVINE*
STEPHEN G. CORDARO*
DONNA M. BREM
JOHN P. MALONEY*
MARC R. LEPELSTAT*
BRUCE D. ETTMAN*
DANIEL D. BARNES*
DIANA L. BUONGIORNO
CHRISTOPHER R. PALDINO
JOSHUA M. LEE
RICHARD PLUMPTON
DAVID M. DUGAN*
ELISA M. PAGANO
RACHEL C. SANTARLAS*
STEVEN M. DIPASQUO*
MELISSA A. SALIMBENE*
STEVEN J. SHELDON
DAVID FREVERHMAN*
DONALD P. DIRELLA*
GEMMA M. GIANTOMASI*
MICHAEL J. OLIVEIRA*
LISA A. JOHN-BASTA
MATTHEW R. KAPLAN*

OF COUNSEL

THOMAS R. O'BRIEN*
CARL B. LEVY
MYRNA BLUME*

ASSOCIATES

WILLIAM R. FINZIO
DENISE J. PIPERSBURGH*†
MARIE L. MATHEWS*
C. NICOLE SULLIVAN*
DARREN GRZYB*
BETH J. ROTENBERG*
BRIAN KANTAR*
JAMES M. VAN SPLINTER*
CHRISTOPHER W. GEROLD*
MICHAEL T. BARBER*
ELIZABETH C. YOO*
MAURO G. TUCCI JR.*
ARI S. DAVIS*
MICHAEL R. CARUSO*
WILLIAM J. CANNICI JR.*
LAUREN R. TARDANICO*
PATRICK O'REILLY*
LINDSAY A. DISCHLEY*
JOSEPH G. FERISKE*
MARISA A. RAUCHWAY*

MICHAEL K. PLUMB*
MICHAEL G. GORDON*
CELINE L. BARAKAT*
SCOTT C. HOLLANDER*
SCOTT W. LICHTENSTEIN*
SHEILA ANN*
ABIGAIL J. REMORE*
OTHIAMBA N. LOVELACE*
MELISSA A. BROWN
RYAN W. FEDERER*
MINDY P. FOX*
BRIAN P. O'NEILL*
MELISSA F. WERNICK*
REBECCA VALENCIA*
RICHARD A. CHENG*†
FRANK M. GIANTOMASI
ILANA LEVIN*
BRIGITTE M. GLADIS
NEHA BHALANI
MEGAN E. BEDELL*
DAVID FALK*
RYAN P. O'CONNOR*
KATHLEEN A. FAEHNER*

PATENT AGENT

BRYMER H. CHIN
KINZA HECHT*

HOWARD J. SCHWARTZ
One Boland Drive
West Orange, NJ 07052
(973) 530-2031
Fax: (973) 530-2231
hschwartz@wolffsamson.com

\* MEMBER NJ AND NY BARS
▲ MEMBER NY BAR ONLY
† REGISTERED PATENT ATTORNEY
° REGISTERED PATENT AGENT
▼ REGISTERED PATENT AGENT ONLY
MEMBER NJ BAR ONLY UNLESS OTHERWISE DENOTED

February 18, 2015

_Via E-Mail and Regular Mail_
Cameron S. Reuber, Esq.
Leason Ellis LLP
One Barker Avenue
Fifth Floor
White Plains, New York 10601

Re:    **The Wave Studio, LLC v. General Hotel Management, Ltd., et al.,
       Case No. 13-cv-09239**

Dear Cameron:

    We write to advise you that General Hotel Management, Ltd. ("GHM") is considering a motion pursuant to Rule 11 of the Federal Rules of Civil Procedure unless plaintiff The Wave Studio, LLC ("Wave" or "Plaintiff") withdraws its First Amended Complaint. By this letter, we are giving you, and your client, an opportunity to do so before our preparation and service of a formal motion under Fed. R. Civ. P. 11 ("Rule 11").

    As we have previously mentioned to you, continued review of discovery responses[1] in this matter establishes there is no reasonable legal or factual basis for

---

[1]    We note, given the volume of documents produced by Plaintiff (nearly 400,000 pages), that our review of said documents is not completed. The statements contained in this letter are

WOLFF & SAMSON PC
One Boland Drive, West Orange, NJ 07052 • (973) 325-1500 • Fax: (973) 325-1501
140 Broadway, 46th Floor, New York, NY 10005 • (212) 973-0572
128 West State Street, Suite 3, Trenton, NJ 08608 • (609) 396-6645

www.wolffsamson.com                                                        5068177.6

WOLFF SAMSON

Cameron S. Reuber, Esq.
February 18, 2015
Page 2

Wave's assertion of jurisdiction over GHM.  It is telling that we have specifically requested, in writing, that you explain your client's basis for jurisdiction over GHM and that the request has been ignored.  Additionally, it is abundantly obvious to even a casual observer that venue in the Southern District of New York is improper.  Given the inconvenience of the Southern District of New York to not only GHM, the only relevant defendant to the threshold issue, but also Plaintiff's operator and owner, Junior Lee, it appears that this forum was only selected on the basis that Junior Lee somehow perceives United States law to be more favorable to her claims.  Plaintiff's relevant witnesses are likely all in Singapore or elsewhere in Southeast Asia.  The majority of Plaintiff's evidence is likely in Singapore.  It cannot possibly be argued in any reasonable way that the Southern District of New York is convenient to the parties or non-party witnesses.[2]

Rule 11 states that by presenting a pleading to a court, an attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances... it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; the claims, defenses and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law; [and] the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery..." Fed. R. Civ. P. 11(b).  A reasonable investigation of the factual contentions made in Wave's First Amended Complaint prior to its filing would have disclosed, in part, that: (a) Wave has no basis for personal jurisdiction over GHM; (b) venue is improper in the Southern District of New York under the applicable law; (c) forum in the Southern District of New York is improper and incredibly inconvenient, not only for GHM but also for Wave's principal (who is presumably Plaintiff's primary witness); and (d) Singapore is a more than adequate alternative forum.

### Personal Jurisdiction

"The party invoking the jurisdiction of the federal courts bears the burden of establishing the court's jurisdiction over a nonresident defendant." *Ganoe v. Lummis,* 662 F.Supp.718, 723 (S.D.N.Y. 1987). In order to assert general jurisdiction over a nonresident corporate defendant, like GHM, the plaintiff must establish that the defendant "has 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984) (citations omitted).  Whether a foreign corporation is subject to the personal jurisdiction of a

---

based on our knowledge of the underlying facts and document review to date.  GHM expressly reserves all of its rights.

2   As an aside, we note that Wave's actions in filing nearly identical complaints against MasterCard, Visa and American Express in California, despite the stay issued by Judge Seibel, show a disregard for the authority of the Court and an improper attempt to circumvent the Court's order.

WOLFF SAMSON

Cameron S. Reuber, Esq.
February 18, 2015
Page 3

federal district court is determined by the law of the state in which the district court sits. *Sole Resort, S.A. de C.V. v. Allure Resorts Management, LLC*, 450 F.3d 100, 102-3 (2d. Cir. 2006). As such, New York law will provide for the basis of jurisdiction over GHM.

Under New York law, a court may exercise personal jurisdiction over any non-domiciliary, such as GHM, who "in person or through an agent: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or (2) commits a tortious act within the state...; or (3) commits a tortious action without the state causing injury to person or property within the state... if he: (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or (4) owns, uses or possesses any real property situated within the state." N.Y.C.P.L.R. §302(a). Paragraph 7 of Wave's First Amended Complaint states merely that "[t]his Court has personal jurisdiction over the Defendants, as all are domiciled in, or have done business in this district." Wave's sole allegation of jurisdiction over GHM is that it "targets New York residents to book accommodation and other hospitality services at the Hotels when they travel to those vacation destinations." Wave provides no facts that support that New York residents are specifically targeted by GHM in any way.

GHM is, as alleged in the First Amended Complaint, a corporation organized under the laws of the British Virgin Islands with its principal place of business in Singapore. Plaintiff admits in the First Amended Complaint that "GHM specializes in conceptualizing, developing and operating luxury hotels in Southeast Asia." Plaintiff lists only two hotels in the United States that it believes GHM has "managed or promoted," neither of which are in the State of New York. The First Amended Complaint in no way alleges that Plaintiff, which is an entity based in New York, had any business dealings whatsoever with GHM. Instead, Junior Lee, who operates Plaintiff as set forth in the First Amended Complaint and is "a Malaysian citizen currently domiciled in Singapore," allegedly entered into an agreement with GHM, presumably in Singapore, but certainly not in New York. Even throughout the course of the dispute over payment obligations, which was litigated in Singapore and settled in Singapore in April of 2011, GHM had no interaction with Plaintiff in New York. In fact, the latest date of publication of the allegedly infringed photographs, as set forth in the registrations, was in 2007. The latest date that the allegedly infringed photographs were registered with the U.S. Copyright Office was in February of 2011, and the assignment of the copyright registrations to Plaintiff did not take place until November of 2011, seven months following the settlement of the dispute in Singapore between GHM and Junior Lee.

Plaintiff's Articles of Incorporation were not filed with the State of New York until, upon information and belief, September 1, 2011. It was not until then that any contacts between Plaintiff and GHM within the State of New York relating to this dispute were even feasible, let alone could have been reasonably expected by GHM. It is nearly impossible that GHM, when entering into agreements with Junior Lee and/or her various Singapore entities, to take photographs between 2001 and 2007 for properties, primarily

WOLFF  SAMSON

Cameron S. Reuber, Esq.
February 18, 2015
Page 4

in Southeast Asia and not located in the State of New York (and only two of which were located in the United States), to have reasonably been able to anticipate being haled into court in the Southern District of New York.[3]  Wave has simply not alleged any facts which would support the exercise of personal jurisdiction over GHM on the basis of anything more than, at best, "random, fortuitous, or attenuated contacts" by unnamed New York residents searching the internet, and Wave cannot allege such facts.[4] Wave's allegations of personal jurisdiction over GHM had no evidentiary support at the time the First Amended Complaint was filed, and after the opportunity for further investigation and discovery, continue to have no evidentiary support, and no basis in fact or law.  We believe that you knew (or should have known, in the exercise of reasonable diligence) that your client's alleged basis for personal jurisdiction over GHM was contrived.

<u>Venue</u>

        Paragraph 8 of Wave's First Amended Complaint states that "venue properly lies in this Court because Plaintiff's principal place of business is in this judicial district and a substantial part of the events giving rise to the claims occurred in this judicial district." This statement, at best, represents a purposeful and improper mischaracterization of the facts and law in order to make venue "fit" with the forum whose laws Plaintiff believes will most benefit it.  As a general proposition, when the defendants do not all reside in the same state, as is the case here, venue is proper in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.  28 U.S.C. §1391(b).  Plaintiff's location is not even mentioned in that particular rule.  Even if it were, although The Wave Studio, LLC is metaphysically located in the Southern District of New York, it is clear that it is merely a sham entity created, at the same address as your offices, to forum shop.  As we understand it, Plaintiff is merely an organization existing on paper with no employees in New York and no operations in New York (at least no operations unrelated to this lawsuit).

        The photographs at issue were taken in many locations around the world, including Italy, India, Oman, Vietnam, Thailand, Malaysia, Indonesia, Taiwan, Singapore, the Bahamas, Florida and California.  None of the photographs alleged to have been infringed were taken of properties in the Southern District of New York or anywhere in the State of New York.  Plaintiff alleges that the infringements at issue are a result of Junior Lee's (and certainly not Plaintiff's) past working relationship with GHM. Both GHM and Junior Lee are, of course, based in Singapore.  No information has been uncovered to date which shows that any "business" activities of Plaintiff, aside from holding copyright registrations and filing frivolous lawsuits, take place in New York at all.

3    "[T]he plaintiff cannot be the only link between the defendant and the forum.  Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for jurisdiction over him...." *Walden v. Fiore*, 134 S.Ct. 1115, 1122 (2014).
4    *Id.* at 1123 (*citing Burger King Corp v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

WOLFF SAMSON

Cameron S. Reuber, Esq.
February 18, 2015
Page 5

Even if Wave had set forth valid allegations of venue under the general rule, venue is still improper in the Southern District of New York for this copyright infringement action. In accordance with 28 U.S.C. §1400(a), proceedings relating to copyrights "may be instituted in the district in which the defendant or his agent resides or may be found." "A defendant 'may be found' wherever that person is amenable to personal jurisdiction." *Cavu Releasing, LLC v. Fries,* 419 F.Supp.2d 388, 394 (S.D.N.Y. 2005) (citations omitted). As discussed in detail above, Wave cannot allege sufficient facts to prove that GHM or its agent reside in or may be found in New York, and as such, venue is improper. We can only assume that you knew, or should have known, that your client's claimed basis for venue was incorrect.

### *Forum Non Conveniens*

Assuming, for the sake of argument only, that the Southern District of New York were a permissible venue with proper jurisdiction over Plaintiff's claims against GHM, the claim should be dismissed under the doctrine of *forum non conveniens*. The Second Circuit has established a three-part test for motions to dismiss on such grounds, all of which, overwhelmingly and obviously, weigh in GHM's favor, namely: (a) the degree of deference properly accorded the Plaintiff's choice of forum; (b) whether the alternative forum proposed by the Defendant is adequate to adjudicate the parties' dispute; and (c) balancing the private and public interests implicated in the choice of forum. *RIGroup LLC v. Trefonisco Management Ltd.,* 949 F.Supp.2d 546, 551 (S.D.N.Y. 2013) (*citing Norex Petroleum Ltd. v. Access Indus., Inc.,* 416 F.3d 146, 153 (2d. Cir. 2005)).

Plaintiff is not entitled to a presumption in favor of the Plaintiff's choice of forum, because it chose the Southern District of New York only as a means of forum shopping. The degree of deference given to a plaintiff's choice of forum moves on a sliding scale. The greater the plaintiff's *bona fide* connection to the United States and to the forum of choice, the more difficult it will be for a defendant to gain dismissal for *forum non conveniens*. On the other end of the scale, "the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum shopping reasons, the less deference the plaintiff's choice commands." *Id.* (citing the seminal case *Iragorri v. United Techs. Corp.,* 274 F.3d 65 (2d. Cir. 2001)). "[C]ourts have held that the deference to an American citizen or resident plaintiff's choice of forum is significantly diminished where the lawsuit arises from business that the plaintiff conducted abroad." *Id.* at 552. Moreover, "shell companies are not entitled to the full measure of 'home forum' deference." *Id.* The Wave Studio, LLC is a "shell" company, formed at its lawyer's office, solely to be assigned the copyright registrations for photographs relating to Junior Lee and her other companies' work abroad. You have provided no details about Plaintiff's business operations that suggest that it is anything more than a phantom paper company for holding Junior Lee's copyrights. We have uncovered no evidence that Plaintiff engaged in any business activities, other than being assigned the copyright registrations alleged to be infringed, in the United States or elsewhere. Aside from forum shopping (after filing suit against GHM in Singapore, not to mention the newly filed complaints against Visa, MasterCard and American Express in other United States.

WOLFF SAMSON

Cameron S. Reuber, Esq.
February 18, 2015
Page 6

District Courts), Plaintiff, Junior Lee and you should not have expected that any of the
disputes with GHM were appropriate for litigation in the United States. As such, little, if
any deference, should be given the Plaintiff's choice of forum.

"Under the second prong of the [*forum non conveniens*] test, '[a]n alternative
forum is adequate if the defendants are amenable to service of process there, and if it
permits litigation of the subject matter of the dispute." *Palacios v. The Coca-Cola Co.,*
757 F.Supp.2d 347, 354 (S.D.N.Y. 2010) (citation omitted). It is obvious that Singapore
is a more than adequate alternative forum to adjudicate this dispute. Indeed, The Wave
Studio PTE LTD, of which Junior Lee is (or was) a director, has already sued GHM in
Singapore. As mentioned above, GHM, the only relevant defendant as to the threshold
issue, has its headquarters in Singapore, and is clearly amenable to service of process
there. Moreover, Singapore provides a statutory system of copyright protection and a
means to sue infringers. *See Commercial Law (Intellectual Property Law)* s12(1).[5]
Singapore is certainly an adequate alternative forum.

The balance of public and private interest factors weigh overwhelmingly in favor
of dismissal on the basis of *forum non conveniens*. The private interest factors to be
considered include: "(a) ease of access to evidence; (b) availability of compulsory
process; (c) enforceability of a judgment; and (e) all other practical matters that make a
trial 'easy, expeditious and inexpensive.'" *Palacios,* 757 F.Supp.2d at 361 (*citing Gulf
Oil v. Gilbert,* 330 U.S. 501, 508 (1947)). Both Junior Lee's and GHM's main business
locations are in Singapore. The arrangement of the photography sessions of the
various hotels around the globe took place in Singapore (and perhaps other Southeast
Asian countries, but not New York). The vast majority of the witnesses to the acts and
omissions which gave rise to the threshold issue presumably continue to reside in
Singapore or other countries. Whatever conduct allegedly took place in the United
States is dwarfed by the magnitude of the factual and legal links to Singapore. The cost
of the attendance of parties at depositions (or the attendance of the parties' counsel at
depositions, to the extent they take place in Singapore) and at trial is astronomical,
given the over twenty hour plane trip which costs thousands of dollars per person.
Additionally, the cost of obtaining the attendance of non-party witnesses, most of whom
are presumably in Singapore, mitigates in favor of dismissal (to say nothing of the
issues presented by relevant non-party witnesses and issues of international service –
i.e. The Hague Conference Protocols – and the impossibility of compelling trial
testimony in the United States). *See, e.g. RIGroup LLC,* 949 F.Supp.2d at 556-7.

The public interest factors include: "(a) the administrative difficulties of court
congestion; (b) the imposition of jury duty on a community with no relationship to the
litigation; (c) the local interest in resolving local disputes; and (d) the problems
implicated in the application of foreign law." *Palacios,* 757 F.Supp.2d at 362 (citations

---

5    We note that whether Singapore copyright law is identical to U.S. law is irrelevant, as
     showing that the substantive law that would be applied in the alternative forum is less
     favorable to Plaintiff than U.S. law is insufficient to defeat a motion to dismiss on the basis of
     *forum non conveniens*. *Palacios v. The Coca-Cola Co.,* 757 F.Supp.2d 347, 355 (S.D.N.Y.
     2010) (citations omitted).

WOLFF SAMSON

Cameron S. Reuber, Esq.
February 18, 2015
Page 7

omitted).  Setting aside the analysis of whether Singapore Courts are more congested than the Southern District of New York, which is likely neutral, the remaining public interest factors cut squarely in favor of dismissal.  There is little question that the "local interest" factor strongly favors a Singapore forum.  Potential jurors in the Southern District of New York have no relation to the litigation, other than the location of The Wave Studio, LLC.  Finally, a preliminary choice of law analysis indicates that Singapore law is crucial to the threshold issue of ownership of the allegedly infringed copyrights.[6]  As such, forum is not appropriate in the Southern District of New York.  Plaintiff's formation in the state was merely an attempt to "shop" for a forum that you and Junior Lee believed to be more favorable to her.

Accordingly, please carefully consider this letter and withdraw your client's First Amended Complaint by the close of business on March 2, 2015 in order to obviate a further motion for sanctions pursuant to Rule 11.  We trust that, in the event Wave is able to retain substitute counsel prior to that date, this letter will be shared with them, as we do not intend to provide any additional warning to incoming counsel prior to proceeding in accordance with Fed. R. Civ. P. 11(c)(2) in addition to moving to dismiss Wave's First Amended Complaint on the basis of lack of personal jurisdiction, improper venue and *forum non conveniens*.[7]

Very truly yours,

Howard J. Schwartz

HJS:ajr

---

6    "Copyright is a form of property, and the usual rule is that the interests of the parties in property are determined by the law of the state with 'the most significant relationship' to the property and the parties."  *Itar-Tass Russian News Agency v. Russian Kurier, Inc.,* 153 F.3d 82, 90 (2d. Cir. 1998).  Since the works at issue were created by a resident of Singapore at the request of an entity headquartered in Singapore (and were likely first published in Singapore), Singapore law is the appropriate law to determine the issue of ownership.

7    I also again note that you informed me over the phone on Wednesday, January 7, 2015 of your intentions to withdraw from this case, and that you would know by Friday, January 9, 2015 who would be substituting in as counsel.  Despite repeated follow-ups, we have not been advised as to whether substitute counsel has been retained, and to date, a Notice of Appearance has not been filed.  We note that discovery on the threshold issue is scheduled to close on March 2, 2015.  Since we did not hear from you regarding substitute counsel, we have diligently attempted to move forward with the discovery process by noticing Plaintiff's deposition for February 2, 2015.  In response to that notice, you re-affirmed your intentions to withdraw and advised, a mere four days (and only two business days) before Plaintiff's scheduled deposition, that Plaintiff would not appear, and yet provided no information as to who would be substituting as counsel.  We again noticed Plaintiff's deposition for February 23, 2015, addressing your objections to the first notice, and have, to date, received no response from you as to whether or not Plaintiff will be appearing or whether substitute counsel had been retained.  Given the foregoing, it appears highly unlikely, if not impossible, that discovery will be completed as to the threshold matter by the March 2 deadline, solely because of Plaintiff's inaction.

# Exhibit 11

**From:**       Schwartz, Howard J.
**Sent:**       Monday, April 20, 2015 2:29 PM
**To:**         'vijay@cobaltlaw.com'
**Cc:**         Remore, Abigail J.
**Subject:**    GHM/Wave

Vijay,

We would like to schedule the deposition of Junior Lee during the week of May 4-8 in New York City.  I recall that you agreed during a prior call that Ms. Lee would appear for her deposition in New York.  Accordingly, please confirm that she will appear then.

Additionally, please confirm whether you have had a chance to review our letter to Cameron Reuber dated February 18, 2015.  If not, we will be happy to provide you with a courtesy copy.

Finally, we know that you have filed 7 additional complaints in the Northern District of California which are essentially identical to the case which is pending in the Southern District (and to the Mastercard case that was recently dismissed).  Please advise as to whether or not you have:

  a) Advised the assigned judges and opposing counsel in each pending case of Judge Seeborg's October 10, 2014 order granting Mastercard's motion to transfer to the Southern District; and/or
  b) Listed the instant General Hotel Management case or the additional pending Northern District of California cases as Related Cases for the purposes of the local civil rules.  It appears from our review of the available documents online that you have not (aside from mentioning the matters in the Case Management Statements filed in the Visa and American Express matters), but please confirm.

Best,

Howard

**HOWARD J. SCHWARTZ**          website | bio | vCard | offices | email
Member of the Firm                          (973) 530-2031
                                     Fax: (973) 530-2231
                              hschwartz@wolffsamson.com

WOLFF & SAMSON PC
One Boland Drive · West Orange, NJ 07052
140 Broadway, 46th floor | New York, NY 10005

WOLFF · SAMSON

1