## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

THE WAVE STUDIO, LLC,

Plaintiff,

v.

GENERAL HOTEL MANAGEMENT, LTD. *et al.,*

Defendants.

Case No.:  13-cv-09239 (CS) (PED)

**DEFENDANT GENERAL HOTEL MANAGEMENT, LTD.'S COUNTERSTATEMENT TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1**

Pursuant to the Federal Rules of Civil Procedure and Local Civil Rule 56.1, Defendant General Hotel Management, Ltd. ("GHM") hereby responds and submits this Counterstatement to Plaintiff The Wave Studio, LLC's Statement of Material Facts Pursuant to Local Civil Rule 56.1, without admitting that any of Plaintiff's statements are material.

## I.      GENERAL BACKGROUND AND ALLEGATIONS FROM COMPLAINT.

1.      The Plaintiff, The Wave Studio, LLC ("Plaintiff'[sic]), filed this lawsuit alleging copyright infringement of photographic works allegedly created by its principal, Lee Kar Yin (aka Junior Lee, hereinafter Ms. Lee") who is a Malaysian citizen currently domiciled in Singapore. (First Amended Complaint (hereinafter "Complaint"), attached as Ex. A to Declaration of Abigail J. Remore, dated February 12, 201[6] ("Remore Decl.") at ¶¶1-2, 9).

**GHM's response:**      Admitted.

2.      Ms. Lee was commissioned either by hotel management and promotional agencies or by hotel and travel locations directly, to create branding designs and

concepts, including photographs for elite hotel properties and destination locales. (Complaint at ¶3; Declaration of Lee Kar Yin, "Lee Decl.," filed and served herewith, at ¶1,7).

**GHM's response:** Disputed. The photographs were not only commissioned for the purposes of creating "branding designs and concepts." Plaintiff's operative pleading claims that the photographs were for "advertising, promotion and documentation purposes." (Complaint ¶ 73). To the extent paragraph 2, above, refers to Ms. Lee, generally, then GHM is unaware of her business.

3.      Ms. Lee is or was also the principal of several entities that were organized under the laws of Singapore and are, or were, domiciled in Singapore, including (1) Wave-S; (2) The Wave Pte. Ltd.; (3) The Wave Studio Pte. Ltd.; and (4) The Wave Design Pte. Ltd. (hereinafter collectively, the "Wave Entities"). (Complaint at ¶77).

**GHM's response:** Admitted.

4.      Defendant General Hotel Management ("GHM") manages a small group of luxury hotels and resorts, primarily in Southeast Asia but also including properties in the Middle East, Europe, and the United States. (Complaint at ¶10; Declaration of Monica Chloe [Chng], dated February 11, 2016 at ¶4).

**GHM's response:** Disputed. GHM no longer manages all of the hotels listed in Plaintiff's operative pleading. GHM does not manage any hotels in the United States.

5.      In addition to GHM, Plaintiff has named 58 individuals or entities as Defendants in the instant lawsuit, as well as unknown entities named by Plaintiff "Does 1 through 100." (Complaint at ¶¶11-69).

**GHM's response:** Admitted.

2

6.     In addition to the instant lawsuit, Plaintiff also filed the following eight additional complaints in the Northern District of California, naming 21 additional Defendants: (i) 15-cv-01364; (ii) 15-cv-00814; (iii) 15-cv-00354; (iv) 15-cv-00952; (v) 14-cv-01342; (vi) 15-cv-00818; (vii) 15-cv-00239; and (viii) 15-cv-01341 (hereinafter the "NDCA Lawsuits").

**GHM's response:**     Admitted.

7.     Aside from one of the foregoing NDCA Lawsuits, 14-cv-013242, all of the remaining NDCA Lawsuits were transferred to the Southern District of New York and are currently consolidated with the instant lawsuit.

**GHM's response:**     Admitted.

8.     Nearly all of the named defendants in this action and the NDCA Lawsuits are American companies being accused by Plaintiff of copyright infringement in the United States. (Complaint at ¶¶9-92; Complaints filed in the NDCA Lawsuits)

**GHM's response:**     Disputed.  Plaintiff's First Amended Complaint does not specifically allege that any specific individual acts of infringement took place in the United States, only that certain defendants may be located in or transact business in the United States.  Moreover, discovery as to the alleged infringements and their locations has not been conducted, so there is no evidence in the record to support Plaintiff's claim.

9.     A number of the defendants in this action and NDCA Lawsuits have principal places of business located within the State of New York. (Complaint at ¶¶11, 20, 21, 34, 35, 37, 53, 56, 65, 66, 67, 68, 71, 76, 88, 92; Complaints filed in the NDCA Lawsuits)

**GHM's response:**    GHM admits that certain paragraphs of Plaintiff's First Amended Complaint claim that certain defendants have principal places of business located within the State of New York, but disputes to the extent that there is no factual evidence in the record to support Plaintiff's allegations.    In addition, the following paragraphs of the First Amended Complaint cited by Plaintiff above do not claim that any defendant has a principal place of business in the State of New York:    ¶ 11 (alleges principal place of business in Toronto, Canada);    ¶ 20 (alleges business located in West Palm Beach, Florida); ¶ 34 (alleges business located in Dallas, TX); ¶ 35 (alleges business located in Jordan, Utah); ¶ 37 (alleges business located in Chicago, IL); ¶ 56 (alleges business located in Oakland, CA); ¶ 66 (alleges business located in Southlake, TX); and ¶ 67 (alleges business located in Newton, MA).  In addition, paragraphs 71, 76, 88 and 92 of Plaintiff's First Amended Complaint contain no reference to the location of any defendants whatsoever.

10.    The Court has stayed discovery in this lawsuit and all consolidated lawsuits, as to all other named defendants (hereinafter the "Stayed Defendants") except GHM. (Dkt. No. 67)

**GHM's response:**    Admitted.

11.    The Plaintiff alleges that the Singapore Wave Entities obtained United States copyright registrations for photographs of various properties (the "Photographs") allegedly taken by Ms. Lee or the Singapore Wave Entities at the direction of GHM. (Complaint at ¶77)

**GHM's response:**    Admitted.

4

12.    Ms. Lee is also the principal of Plaintiff, The Wave Studio LLC, a New York limited liability company, which serves as a holding company for the enforcement of the copyrights (including related U.S. Copyright registrations) to the Photographs. (Complaint at ¶8; Lee Decl. at ¶6)

**GHM's response:**    Plaintiff's unsupported claims, without citation to or production of the business records of The Wave Studio, LLC, are insufficient to allow GHM to admit to the accuracy of this statement.  For the purposes of Plaintiff's Cross-Motion only, however, GHM will not dispute this claim.

13.    Defendant GHM maintains a sales office in New York, New York, which is dedicated to building brand awareness and sales for GHM-managed properties in New York as well as other parts of the United States. (Deposition of Monica Chng, "Chng Depo.," attached as Ex. D to Declaration of Vijay Toke, "Toke Decl.," filed and served herewith, at 98:24 to 102:13).

**GHM's response:**    Disputed.  GHM contracts with a sales representation office located in New York but does not directly maintain a sales office in New York.  The sales representation office has no authority to confirm reservations on behalf of the hotels managed by GHM.  Only the hotels can confirm said reservations.  (Declaration of Monica Chloe Chng. dated February 11, 2016, filed with GHM's Motion for Summary Judgment, at ¶¶ 5-6) (Toke Decl. at Ex. D at 98:17-21).

14.    Defendant GHM's servers are located in Provo, Utah. (See domain name report for www.ghmhotels.com, attached as Ex. G to Toke Decl.)

**GHM's response:**    Disputed to the extent that the document attached as Exhibit G to the Toke Decl. indicates only "IP Location" in Provo, Utah.

15.    Plaintiff alleges that all right title and interest in and to the Registrations was assigned by Ms. Lee and The Wave Studio Private Limited to Plaintiff as of November 11, 2011. (Complaint at ¶78; Ex. R to Remore Decl., Declaration of Gordon Ionwy David Llewelyn, filed herewith, dated March 14, 2016 ("Llewelyn Decl."), at ¶¶74-78)

**GHM's response:**    Disputed to the extent that citation to the Declaration of Professor Llewelyn, Plaintiff's expert and not a fact witness, is not appropriate to claim as fact.    Further disputed to the extent that paragraph 78 to Plaintiff's Complaint mentions only an assignment from Ms. Lee to Plaintiff and does not address any assignment from The Wave Studio Private Limited.    Admitted that Plaintiff alleges that all right title and interest in and to the Registrations was assigned by Ms. Lee to Plaintiff on November 11, 2011.

16.    From approximately 1995 through 2007, Ms. Lee was asked to create various marketing collaterals (e.g., brochures, flyers, banners, etc.) for various properties under the management of GHM. (Declaration of Lee Kar Yin, filed herewith, dated March 14, 2016 ("Lee Decl. ") at ¶7.)

**GHM's response:**    Disputed to the extent that there is no factual evidence in the record that Ms. Lee's work with GHM began as early as 1995.    Plaintiff's claimed copyright registrations cover only works published between 2001 and 2007.    (Compl. ¶ 77).    Further disputed to the extent that Plaintiff is insinuating that Ms. Lee was only asked to create various marketing collaterals, as Plaintiff's own operative pleading claims that Ms. Lee was commissioned to shoot a series of photographs at the hotels for advertising, promotion and documentation purposes.    (Compl. ¶ 73).

17.     Through the "Wave Entities" Ms. Lee produced branding designs and marketing collaterals in response to each order placed over this period of time by GHM and/or the Hotels. (Lee Decl. at ¶¶7-8)

**GHM's response:**     Disputed.  There is no factual evidence in the record (aside from Ms. Lee's sham declaration) that Ms. Lee only produced work in response to specific orders for marketing collateral.  By way of example only, the Singapore Wave Entities also conducted photo shoots of various hotels and created websites for GHM and various hotels.  (Compl. ¶ 73) (*See, e.g.* Remore Feb. Decl. at Ex. C (Lee May Dep.) at 103:19-20; 113:9-15; *see also* Remore April Decl. at Ex. 4).

18.     Orders placed for marketing collaterals were most typically placed by GHM on behalf of the Hotels. (Lee Decl. at ¶7.)

**GHM's response:**     Disputed.  There is no factual evidence in the record (aside from Ms. Lee's sham declaration) that orders for marketing collaterals were placed by GHM on behalf of the hotels.  In the vast majority of cases, the production estimates for such work were addressed to the hotels, and sent to both GHM and the hotels.  (Remore Feb. Decl. at Ex. C (Lee May Dep.) at 94:5-22; Remore Feb. Decl. at Ex. E (Ohletz Dep.) at 79:2-5).

19.     The Wave Entities were the exclusive vendor hired to create the entirety of the branding and related marketing collateral and guest experience for GHM-managed hotels, including brochures, banners, posters, flyers, press-kits, folders, magazine and press-ad-to-paper carriers, cake packaging, wine and decanter labels, amenities kits (e.g. toothbrush, shower cap, toiletry boxes), aprons, beach towels, keycards and holders, greeting cards, welcome cards, welcome back cards, postcards and packaging, location

maps, umbrellas, matchboxes, notepads, pencils, drink coasters, property signages (e.g., main hotel signage, room nos. carpark, restaurant, library, the club, male and female toilets, fire escapes, lifts, lift buttons), and decals for hotel-owned vehicles (collectively, "Marketing Collateral"). (Lee Decl. ¶7; Declaration of Vijay K. Toke, filed herewith, dated March 14, 2016 ("Toke Decl.") at Ex. C ("Ohletz Depo") at 14:12-15:8; 33:3-21; 45:14-46:16).

**GHM's response:**   Disputed.  First, Ms. Lee's sham affidavit is not sufficient factual evidence to make this claim.   Second, the cited portions of Mr. Ohletz's deposition do not stand for the proposition that the Wave Entities were the "exclusive vendor" of GHM.  Those portions of Mr. Ohletz's testimony discuss only that the benefit of working with Ms. Lee was that she was a "one-stop" solution, not that the Wave Entities were an "exclusive vendor" such that GHM was prohibited from working with another vendor should it have chosen to do so.

20.    Most orders placed by GHM over the years were for Marketing Collateral that did not require any photographs. (Lee Decl. at ¶8.)

**GHM's response:**   Disputed.  There is no factual evidence in the record (aside from Ms. Lee's sham declaration) to support this claim.

21.    In order to fill those orders placed by GHM that did require photographic images, Ms. Lee conducted photo shoots at each of the various Hotels because GHM did not have adequate library of images to complete the requested Marketing Collateral. (Lee Decl. at ¶8; Toke Decl., Ex. A ("Lee May Depo") at 88:22-89:5.)

**GHM's response:**   Disputed.  First, Ms. Lee's sham affidavit is not sufficient factual evidence to make this claim.  Documents produced in this proceeding evidence

8

that photo shoots were not always tied to the production of specific marketing collateral. The Singapore Wave Entities would undertake only a few photo shoots (at most) of a single hotel, and the photographs taken therein would be used for a wide variety of purposes, not just for specific marketing collateral that was the subject of specific orders. (Remore Feb. Decl. at Ex. E (Ohletz Dep.) at 28:14-20).

22.    To fulfill order that would require photography, Ms. Lee conducted photo shoots of the Hotels, charging for her time and expenses for each such photoshoot. (Lee Decl. at ¶9; see Exemplar Production Estimate, Ex. E to Lee Decl.)

**GHM's response:**    Disputed.    First, Ms. Lee's sham declaration is not sufficient factual evidence to make this claim.    Furthermore, none of the three "Exemplar Production Estimates" attached as Exhibit E to Ms. Lee's declaration relate to photo shoots.    Documents produced in this proceeding, including those in Exhibit E to Ms. Lee's declaration, show that photo shoots were not always tied to the production of specific marketing collateral.    The Singapore Wave Entities would undertake only a few photo shoots (at most) of a single hotel, and the photographs taken therein would be used for a wide variety of purposes, not just for specific marketing collateral that was the subject of specific orders.    (Remore Feb. Decl. at Ex. E (Ohletz Dep.) at 28:14-20).

### *The Relevant Contractual Documents*

23.    For nearly thirteen years, GHM and the Hotels worked with Ms. Lee and the Wave Entities in the same manner: (1) a request for work was made; (2) the Wave Entities sent a production estimate (or revised estimates if negotiations continued); (3) terms were agreed to as reflected in the final production estimate; (4) the work was completed by the Wave Entities; and (5) the Hotels paid for the work (Ohletz Depo at

89:8-90;20, attached as Ex. C to Toke Decl.; Lee Decl. ¶11; see Exemplar Production Estimates, Ex. E to Lee Decl.)

      **GHM's response:**    Disputed.    First, Ms. Lee's sham declaration is not sufficient factual evidence to make this claim.  Second, only four production estimates are currently before the Court (and they are inadmissible hearsay).   Third, the Hotels made payment pursuant to invoices provided by the Singapore Wave Entities, not based upon the production estimates.  (Ex. E to Lee Decl., document Bates Numbered GHM 00004) (Remore April Decl. at Ex. 3 (Ohletz Dep.) at 70:4-7).

      24.    These production estimates, all no more than a page or two in length, set forth the nature of the collaterals or services being provided and contained in addition a handful of bullet-pointed terms, which included the following two key terms:

*"We reserve the intellectual property copyright to all designs/soft copies/materials/photography/projects undertaken."*

And

*"We will proceed on the basis that this estimate is wholly acceptable unless advised to the contrary in writing before the work is undertaken."*

(Lee Decl. Ex. E; Ohletz Depo at 90:21-91:21, attached as Ex. C to Toke Decl.; Remore Feb. Decl. at Ex. F)

      **GHM's response:**    Disputed.    Only four production estimates are currently before the Court (and they are inadmissible hearsay).  Furthermore, Ms. Lee testified that the production estimates only used the form described above after 2004.  (Remore Feb. Decl. at Ex. C (Lee May Dep.) at 96:14-17).

      25.    Each production estimate was reviewed by the respective Hotel and GHM and the approved. (Ohletz Depo at 69:22-70:5, attached as Ex. C to Toke Decl.)

**GHM's response:**    Disputed.  Only approximately twenty-five final production estimates were produced in this proceeding, less than half of which were signed. (Remore Feb. Decl. ¶ 10).

26.    GHM's Vice President, Ralf Ohletz, reviewed each such production estimate and was aware of the terms in these production estimates under which the Wave Entities would fulfill order placed with it. (Ohletz Depo at 69:22-70:5, attached as Ex. C to Toke Decl.)

**GHM's response:**    Disputed.  The portion of Mr. Ohletz's deposition cited by the Plaintiff makes no mention of Mr. Ohletz's awareness of the terms contained therein. Mr. Ohletz review of production estimates was limited to budgetary issues.  (*See, e.g.,* Remore Feb. Decl. at Ex. E (Ohletz Dep.) at 79:2-13; Remore April Decl. at Ex. 3 (Ohletz Dep.) at 90:12-16).

27.    The Wave Entities contracted with a cameraman, Masano Kawana, to assist in taking the Photographs. (Lee Decl. at ¶9; Lee May Depo at 168:4-23; Ohletz Depo at 17:13-24; 22:11-23:13.)

**GHM's response:**    Disputed.  Masano Kawana was the photographer.  He took the Photographs, and was not just a cameraman.  (*See, e.g.* Remore April Decl. at Ex. 3 (Ohletz Dep.) at 71:1-14; 75:1-9).

28.    As a creative director of the Wave Entities, Ms. Lee decided all aspects of each Photograph—i.e., creative direction/concept, lighting, subject matter, angle, styling, shutter speed, exposure, etc.—and directed Mr. Kawana to capture the image when in her determination the image was properly framed and set, (Lee Decl. at ¶5; Lee May Depo at 177:16-179:22).

**GHM's response:**    Disputed.  See GHM's response to paragraph 27.

29.    The Wave Entities contracted with a cameraman, Masano Kawana, to assist in taking the Photographs. (Lee Decl. at ¶9; Lee May Depo at 168:4-23; Ohletz Depo at 17:13-24; 22:11-23:13.)

**GHM's response:**    Disputed.  As mentioned in GHM's response to paragraph 27, above, Masano Kawana was the photographer. He took the Photographs, and was not just a cameraman.  (*See* Remore April Decl. at Ex. 3 (Ohletz Dep.) at 71:1-14; 75:1-9).

30.    Mr. Kawana also executed a confirmatory assignment in 2013 confirming that at the time of the creation of the Photographs, it was the understanding and intention of Mr. Kawana that the copyrights were to be owned by Ms. Lee (since she was the owner of the Wave Entities). (See Ex. M to Exhibit of Remore Decl.)

**GHM's response:**    Disputed.  The document cited by Plaintiff is not contained within the Remore February Declaration, and is inadmissible hearsay.  Furthermore, the unambiguous terms of a document executed in 2005 state that "[a]ll Photographs and rights contained therein, including copyright, remain the sole and exclusive property of the Design Agency and Photographer."  Lee Decl. at Ex. D.  Finally, two estimates sent by Mr. Kawana to Ms. Lee in 2004 contain language stating that the copyright in the photographs to be taken remains with the photographer.  (Remore April Decl. at Exs. 5 and 6).

31.    After each photoshoot, Ms. Lee would complete post-production work on the raw Photographs obtained from the shoot (roughly 7 hours per photograph), and the edited Photographs were subsequently provided to the respective Hotel and to GHM on a CD-ROM to make reordering of marketing collaterals requiring photographs easier on a

going forward basis. (Lee Decl. at ¶¶13, 19; Lee May Depo, Ex. A to Toke Decl. at 131:22-133:16; 138:14-20.)

**GHM's response:**    Disputed.    First, Ms. Lee's sham declaration is not sufficient factual evidence to make this claim.  Second, the cited portions of Ms. Lee's deposition make no reference to the length of time spent on post-production work. Finally, mathematically, to spend 7 hours of post-production work for the 2000 photographs that Ms. Lee estimates to be at issue in this litigation would require 14,000 hours of post-production work, essentially requiring Ms. Lee to work full time for seven years to complete only post-production work.  Plaintiff has argued throughout this action that photography services were merely ancillary to what Plaintiff alleges were its "core" services.  It is illogical (and not supported by admissible or credible evidence) that Ms. Lee would work full time solely on post-production of "ancillary" photographs.

32.    Each of these "proprietary" libraries of Photographs—as GHM's Director and head of legal labeled them in an email to Ms. Lee—provided the Hotels and GHM with a library of photographs from which they could select images for subsequent orders. (Lee Decl. at ¶13; Lee May Depo at 133:11-17; Lee Decl. at Ex. F.)

**GHM's response:**    Disputed.  The context of the email is ambiguous regarding what "proprietary" meant or referred to.  The disc of photographs was not solely so that GHM or the hotels could select images for subsequent orders.  Once the disc was given to GHM or the hotels, it was theirs, and they used all the photos in any way they saw fit to market the hotels.  (Remore Feb. Decl. at Ex. E (Ohletz Dep.) at 28:9-24).

33.    The Wave Entities were paid approximately S$250,000 (Singapore Dollars) for the Photography services provided over the seven-year period between 2000

and 2007 when they worked provided[sic] photography services for the GHM-managed Hotels. (Declaration of Stanley Lai, dated February 12, 2016 ("Lai Decl.") at ¶6; Lee Decl. at ¶19; Remore Decl. at ¶11.)

**GHM's response:** Disputed. Ms. Lee's sham declaration is not sufficient factual evidence to make this claim. Admitted only that it appears from a review of just the production estimates and invoices produced in this proceeding that the Singapore Wave Entities were paid <u>at least</u> $250,000 (U.S.) for goods and services related to photography.

34.    Over half of the amount paid to the Wave Entities for photography services was hard costs of travel, expenses, and wages. (Lee Decl. at ¶19.)

**GHM's response:** Disputed. Ms. Lee's sham declaration is not sufficient factual evidence to make this claim.

35.    The Wave Entities received only about S$125,000 for over 2,000 published Photographs, less when counting the additional 1,000 unpublished photos. (Lee Decl. at ¶19.)

**GHM's response:** Disputed. Ms. Lee's sham declaration is not sufficient factual evidence to make this claim.

36.    Each Photograph took an average of seven hours of post-production work to complete, meaning the Wave Entities were paid approximately S$62 (roughly US$45 at the time) per Photograph for each photoshoot and the extensive post-production work required to complete the Photographs. (Lee Decl. at ¶19.)

**GHM's response:** Disputed. First, Ms. Lee's sham declaration is not sufficient factual evidence to make this claim. Second, mathematically, to spend 7 hours

of post-production work for the 2000 photographs that Ms. Lee estimates to be at issue in this litigation would require 14,000 hours of post-production work, essentially requiring Ms. Lee to work full time (2000 per year) for seven years to complete only post-production work. Plaintiff has argued throughout this action that photography services were merely ancillary to what Plaintiff alleges were its "core" services. It is illogical (and not supported by admissible or credible evidence) that Ms. Lee would work full time solely on post-production of "ancillary" photographs.

37.    After completion of the work done on each order, Ms. Lee would send an invoice to the respective Hotels, all of which the Hotels paid the Wave Entities directly. (Complaint at ¶73)

**GHM's response:**    Admitted only that the Singapore Wave Entities were paid by the hotels. Disputed to the extent that all but one of the relevant invoices are not before the Court, nor is evidence that each one of said invoices was paid.

38.    Between 2006 and 2007, while the GHM-Wave Entities exclusive business dealings were still ongoing, GHM informed Ms. Lee of promotional placements of Wave-owned Photographs in a few magazines (such as *Interior Design Magazine*). (Remore Decl. at Exs. G and L; Memorandum of Law in Support of Defendant's Motion for Summary Judgement ("GHM MPA") at pg. 31.)

**GHM's response:**    Disputed to the extent that Plaintiff has produced no evidence of the "exclusivity" of the business dealings between GHM and the Singapore Wave Entities (i.e. that GHM was prohibited from working with another vendor). Further disputed to the extent that Plaintiff mischaracterizes arguments made in GHM's

Motion.  Admitted only that Ms. Lee was aware at least as early as 2006 that certain of her photographs were being provided to third parties.

      39.     Ms. Lee approved these one-off uses of the Photographs in magazines that GHM informed her of and provided the correct photo attribution required for that approval. (Lee Decl. at ¶20.)

      **GHM's response:**    Disputed.  Ms. Lee's sham declaration is not sufficient factual evidence to make this claim.  GHM admits that Ms. Lee approved the described uses without demanding appropriate copyright notice or a license fee.

      40.     Because the placements in magazines GHM informed Ms. Lee of were limited placements in a magazine, and typically only involved use of one or a few Photographs each time, Wave had no objection to such use and did not request or require any license fee for such limited promotional use. (Lee Decl. at ¶20.)

      **GHM's response:**    Disputed.  Ms. Lee's sham declaration is not sufficient factual evidence to make this claim.  Ms. Lee was not entitled to license fees because she did not own the rights to the photographs.

      ***GHM's and the other Defendant's infringement of Plaintiff's copyrights***

      41.     At some point after GHM stopped working with Ms. Lee and the Wave Entities, unbeknownst to Ms. Lee, GHM disseminated the Photographs to numerous third parties and began using without authorization a number of the Photographs on a new GHM website that no Wave Entity or Ms. Lee created. (Lee Decl., ¶21; Amex letter brief to Court dated July 7, 2015, ECF Dkt. No. 43, attached as Ex. E to Toke Decl.)

      **GHM's response:**    Disputed.  Ms. Lee's sham declaration is not sufficient factual evidence to make this claim.  Ms. Lee has admitted that she has no idea of the

relationship between GHM and the various defendants and no idea how certain defendants got copies of the Photographs. (Remore April Decl. at Ex. 2 (Lee Sept. Dep.) at 265:5-20; 266:15-267:5; 274:7-25; 282:18-23). Plaintiff's reliance on a letter sent by an attorney to the Court is improper. It is hearsay and not competent admissible factual evidence.

42.    Third parties to whom GHM gave Photographs, many of whom are defendants in this action, further disseminated the Photographs to yet other third parties. (See Amex letter brief to Court dated July 7, 2015, ECF Dkt. No. 43, attached as Ex. E to Toke Decl.)

**GHM's response:**    Disputed. Plaintiff's reliance on a letter sent by an attorney to the Court is improper. It is hearsay and not competent admissible factual evidence.

43.    Numerous defendants have sought indemnity from GHM for Photographs they received and used without Plaintiff's authorization. (Toke Decl. at Ex. F)

**GHM's response:**    Disputed to the extent that Plaintiff implies, without factual basis or proper foundation, that correspondence relating to indemnity demands admits that photographs were used without Plaintiff's authorization. Admitted only that some defendants have sought indemnity from each other, and/or hotels currently managed by GHM, and/or hotels formerly managed by GHM, and/or GHM directly.

44.    As a result of the rampant infringement of the Photographs by GHM and unrelated third parties, the Photographs have been displayed on numerous websites without Plaintiff's authorization or compensation and continue to be seen by thousands of users on a daily basis. (FAC at ¶112.)

**GHM's response:**    Disputed.    Plaintiff offers no evidentiary proof for this allegation, and no discovery has been conducted as to this issue.

45.    The Wave Entities obtained copyright registrations from the United States Copyright Office for the Photographs (collectively and individually, "Copyrighted Works").

**GHM's response:**    Disputed to the extent that Plaintiff implies, without factual basis or foundation, that that the copyright registrations are valid.

46.    All of the copyright registrations for the Photographs have been duly assigned to, and are now owned by, Plaintiff. (Lee Decl. at ¶10; Remore Decl. at Ex. R; Llewelyn Decl. at ¶¶74-78)

**GHM's response:**    Disputed as this states a legal conclusion, not a fact. Further disputed to the extent that Plaintiff implies, without factual basis or foundation, that the copyright registrations are valid, or that the assignments referenced were or are valid. Ms. Lee's sham declaration is not sufficient factual evidence to make this claim. Furthermore, citation to the declaration of Professor Llewelyn, Plaintiff's expert and not a fact witness, is not appropriate to claim as fact.

### *The Ownership of the Copyrights to the Photographs In Singapore*

47.    There were several Wave Entities under which Ms. Lee operated her business. (Lee Decl. at ¶¶2-6.)

**GHM's response:**    Disputed to the extent that Ms. Lee's sham declaration is not sufficient factual evidence to make this claim.    Otherwise, to the best of GHM's knowledge, admitted.

48.    Wave-S, a sole proprietorship was formed under Singapore law on February 21, 1994 and dissolved on February 21, 2007. (Lee Decl. at ¶2; Remore Decl. at Ex. R.; Remore Decl. at Ex. B at Nos. 16-21, 118)

**GHM's response:**    Disputed to the extent that Ms. Lee's sham declaration is not sufficient factual evidence to make this claim.  Otherwise, to the best of GHM's knowledge, admitted.

49.    Under Singapore law, all assets of Wave-S automatically reverted to Ms. Lee, the sole proprietor of Wave-S as of the date of dissolution (i.e., February 21, 2007). (Llewelyn Decl. at ¶76.)

**GHM's response:**    Disputed as this states a legal conclusion, not a fact. Citation to the declaration of Professor Llewelyn, Plaintiff's expert and not a fact witness, is not appropriate to claim as fact.  Furthermore, an assignment agreement exists, listing an effective date prior to the alleged date of dissolution of Wave-S, that contains language that assigns Wave-S's right, title and interest to a number of photographic works, to another entity.  (Remore Feb. Decl. at Ex. M).

50.    The Wave Private Ltd. Was formed on February 8, 2002 and dissolved on August 1, 2008. (Lee Decl. at ¶3; Exs. D and E to Corrective Assignment (Remore Decl. at Ex. R.)

**GHM's response:**    Disputed to the extent that Ms. Lee's sham declaration is not sufficient factual evidence to make this claim.  Otherwise, to the best of GHM's knowledge, admitted.

51.    As part of a corporate meeting to dissolve the corporation on August 1, 2008, Wave Private Ltd. first assigned all assets, tangible and intangible, of the

corporation to Ms. Lee. (Lee Decl. at ¶3; Exs. D and E to Corrective Assignment (Remore Decl. at Ex. R.)

**GHM's response:**    Disputed.    Ms. Lee's sham declaration is not sufficient factual evidence to make this claim.  Furthermore, the documents allegedly attached to the "Corrective Assignment" are not contained within Exhibit R to the Remore February Declaration.

52.    As of August 1, 2008, Ms. Lee owned all of the assets of The Wave Private Ltd. (Lee Decl. at ¶4; Exs. D and E to Corrective Assignment (Remore Decl. at Ex. R.; Llewelyn Decl. at ¶76.)

**GHM's response:**    Disputed as this states a legal conclusion, not a fact.  Ms. Lee's sham declaration is not sufficient factual evidence to make this claim.  Citation to the declaration of Professor Llewelyn, Plaintiff's expert and not a fact witness, is also not appropriate to claim as fact.  Finally, the documents allegedly attached to the "Corrective Assignment" are not contained within Exhibit R to the Remore February Declaration.

53.    The Wave Design Private Ltd. was formed on July 1, 2005. (Lee Decl. at ¶5; Ex. F to Corrective Assignment (Remore Decl. at Ex. R.)

**GHM's response:**    Disputed to the extent that Ms. Lee's sham declaration is not sufficient factual evidence to make this claim and the documents allegedly attached to the "Corrective Assignment" are not contained within Exhibit R to the Remore February Declaration.

54.    On July 27, 2007, The Wave Design Private Ltd. changed its name to The Wave Studio Private Ltd. (Lee Decl. at ¶5; Ex. G to Corrective Assignment (Remore Decl. at Ex. R.)

**GHM's response:**    Disputed to the extent that Ms. Lee's sham declaration is not sufficient factual evidence to make this claim and the documents allegedly attached to the "Corrective Assignment" are not contained within Exhibit R to the Remore February Declaration.

55.    The Wave Studio Private Ltd. still exists and is in operation today. (Lee Decl. at ¶5)

**GHM's response:**    Disputed to the extent that Ms. Lee's sham declaration is not sufficient factual evidence to make this claim and no factual evidence is before the court that The Wave Studio Private Ltd. is still operating.

56.    Ms. Lee was (and remains) the sole shareholder of The Wave Design Private Ltd. (now called The Wave Studio Private Ltd.). (Lee Decl. at ¶5; Ex. G to Corrective Assignment (Remore Decl. at Ex. R)

**GHM's response:**    Disputed to the extent Ms. Lee's sham declaration is not sufficient factual evidence to make this claim and the documents allegedly attached to the "Corrective Assignment" are not contained within Exhibit R to the Remore February Declaration.

57.    Under Singapore law, as of August 1, 2008, the assets of Wave-S and Wave Private Ltd. were owned by Ms. Lee and the assets of The Wave Studio Private Ltd. (fka The Wave Design Private Ltd.) were owned by The Wave Studio Private Ltd., which comprised all of the copyrights to the Photographs owned by those two entities. (Llewelyn Decl. at ¶¶76,78; Lee Decl. at ¶¶2-6; Remore Decl. at Ex. R.)

**GHM's response:**    Disputed as this states a legal conclusion, not a fact. Citation to the declaration of Professor Llewelyn, Plaintiff's expert and not a fact witness,

is also not appropriate to claim as fact. Ms. Lee's sham declaration is not sufficient factual evidence to make this claim.

58.      On or about September 15, 2011, Ms. Lee formed Plaintiff The Wave Studio LLC for the purposes of holding, administering, and enforcing the copyrights of the Wave Entities against U.S. infringements. (Lee May Depo at 18:22-21:2; FAC at ¶8; Lee Decl. at ¶6.)

**GHM's response:**      Disputed.   Ms. Lee's sham declaration is not sufficient factual evidence to make this claim.  Admitted only that Plaintiff The Wave Studio LLC was formed in or around September 2011.

59.      Ms. Lee and the Wave Entities entered into a series of assignments to effectuate this purpose. (Corrective Assignment, (Remore Decl. at Ex. R)). As part of that process, Ms. Lee executed a number of assignments in 2011:

- November 11, 2011 assignments by The Wave Private Ltd. and Wave-S to Plaintiff (the "2011 Wave-S and Wave Private Ltd. Assignments")

- An assignment from Wave-S to The Wave Studio Private Ltd., which was drafted in 2011 but backdated by Ms. Lee to 2007, and an assignment from The Wave Private Ltd. to The Wave Studio Private Ltd., which was drafted in 2011 but backdated by Ms. Lee to 2008 (collectively referred to as the "Erroneous Backdated Assignments)

- A November 11, 2011 assignment from Ms. Lee to Plaintiff (the "Lee Catchall Assignment")

- A November 11, 2011 assignment from The Wave Design Private Ltd. (which by that time had changed its name to The Wave Studio Private Ltd.) to Plaintiff (the "Wave Design Assignment")

(Corrective Assignment (Remore Decl. at Ex. R.))

**GHM's response:**    Disputed.  No "Catchall Assignment" dated November 11, 2011 is before the Court in this motion.  The citation to the "Corrective Assignment" is not appropriate as it is only Plaintiff's self-created list of such assignments, rather than the actual documents themselves.

60.    The 2011 Wave-S and Wave Private Ltd. Assignments, the Lee Catchall Assignment, and the Wave Design Assignment were recorded with the U.S. Copyright Office on or about November 15, 2011. (Exs. J,K.L to Corrective Assignment (Remore Decl. at Ex. R.))

**GHM's response:**    Disputed.    The documents allegedly attached to the "Corrective Assignment" are not contained within Exhibit R to the Remore February Declaration.

61.    During the course of this litigation, Plaintiff learned that the 2011 Wave-S and Wave Private Ltd. Assignments, as well as the Erroneous Backdated Assignments, were ineffective, and therefore void *ab initio*, because at the time they were created Wave-S and Wave Private Ltd. had been dissolved years prior and their assets already transferred to Ms. Lee by operation of Singapore law or corporate resolution. (Lee Decl. at ¶¶23-31; Toke Decl. at Ex. B ("Lee Sept. Depo") at 297:22 to 331:19.)

**GHM's response:**    Disputed as this states a legal conclusion, not a fact.  Ms. Lee's sham declaration is not sufficient factual evidence to make this claim.  Admitted

only that Plaintiff recognized what it claims to be errors in these documents as a direct result of questions asked by GHM's counsel at Plaintiff's first deposition that took place on May 21, 2015.

62.    Plaintiff determined that the Lee Catchall Assignment needed to be clarified because, though it was a valid and effective assignment, it referenced the ineffective 2011 Wave-S and Wave Private Ltd. Assignments. (Lee Decl. at ¶29.)

**GHM's response:**    Disputed as this states a legal conclusion, not a fact. Furthermore, Ms. Lee's sham declaration is not sufficient factual evidence to make this claim.

63.    Plaintiff also learned that the Wave Design Assignment, while valid and effective, needed clarification because it named the Assignor by its prior name, The Wave Design Private Ltd., instead of its current name, The Wave Studio Private Ltd. (Lee Decl. at ¶29.)

**GHM's response:**    Disputed as this states a legal conclusion, not a fact. Furthermore, Ms. Lee's sham declaration is not sufficient factual evidence to make this claim.

64.    The Erroneous Backdated Assignments were not signed in 2007 and 2008 respectively but rather they were drafted and signed for the first time in 2012. (Remore Decl. at Ex. B. at Nos. 9-14 and 138-142).

**GHM's response:**    Disputed that the backdated assignments were erroneous at the time they were signed, but otherwise admitted.

65.    To clarify these errors and make sure the record with the Copyright Office showed the clear chain of title created by the Lee Catchall Assignment and the Wave

Design Assignment, Plaintiff created a Corrective Assignment setting forth this chronology and clarifying the assignments (the "Corrective Assignment"). (Lee Decl. at ¶¶23-31; Lee Sept. Depo at 297:22 to 331:19; Corrective Assignment (Remore Decl., Ex. R.))

     **GHM's response:**    Disputed as this states a legal conclusion, not a fact. Furthermore, Ms. Lee's sham declaration is not sufficient factual evidence to make this claim.  Admitted that such a document exists and was recorded.

     66.    The Corrective Assignment merely made clear that the erroneous assignments were unnecessary and ineffective because the entities that they entered into and clarified the errors made in the Lee Catchall Assignment and the Wave Design Assignment in order to clarify that the chain of title was clear. (Lee Decl. at ¶29; Lee Sept. Depo at 297:22 to 331:19; Remore Decl. at Ex. R.)

     **GHM's response:**    Disputed as this states a legal conclusion, not a fact. Furthermore, Ms. Lee's sham declaration is not sufficient factual evidence to make this claim.

     67.    On September 4, 2015, the Corrective Assignment was recorded in the United States Copyright Office. (Remore Decl. at Ex. R; Remore Decl. at Ex. B at No. 200).

     **GHM's response:**    Admitted.

     68.    In the process of preparing the Corrective Assignment, Plaintiff learned that the claimant in some of the copyright registrations for the Photographs inadvertently listed the incorrect claimant. (Lee Decl. at ¶32.)

**GHM's response:**    Disputed.    Ms. Lee's sham declaration is not sufficient factual evidence to make this claim.

69.    Contemporaneously with the recordation of the Corrective Assignment, Plaintiff filed corrections with the Copyright Office to correct these inadvertent errors for the record. (Lee Decl. at ¶32; Ex. I to Lee Decl.)

**GHM's response:**    Admitted only that supplementary registrations were filed with the United States Copyright Office.    Otherwise disputed, particularly to the extent Plaintiff implies that such "corrections" were proper, or that errors were "inadvertent."

70.    The form corrections filed with the Copyright Office corrected the registrations to replace Ms. Lee Kar Yin as the claimant for registrations that had originally erroneously listed Wave-S or The Wave Private Ltd. as the claimant and replaced the name The Wave Studio Private Ltd. instead of the Wave Design Private Ltd. to reflect the company's correct name at the time the applications were filed. (Lee Decl. at ¶32; Ex. I to Lee Decl.)

**GHM's response:**    Disputed.    The supplementary registrations do not correct all errors in the allegedly infringed registrations, including, but not limited to, their failure to list the correct author of the photographs, which Plaintiff now argues is Masano Kawana. (*See, e.g.*, Pl.'s Br. at 24 and 26; *see also* Llewelyn Decl. at ¶ 28).

Respectfully submitted.

CHIESA SHAHINIAN & GIANTOMASI PC
Attorneys for Defendant
General Hotel Management Ltd.

By: _____
HOWARD J. SCHWARTZ

Dated: April 14, 2016

26