**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

THE WAVE STUDIO, LLC, a New York
Limited Liability Corporation,

                Plaintiff,

      v.

GENERAL HOTEL MANAGEMENT, et al.,

                Defendants.

**CASE NO. 7:13-cv-09239-CS-PED**

*Document Filed Electronically*

Oral Argument Requested

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

---

**COBALT LLP**
918 Parker Street, Bldg. A21
Berkeley, CA 94710
(510) 841-9800
*Attorneys for Plaintiff*
*The Wave Studio, LLC*

On the Brief:
Vijay K. Toke
Nate A. Garhart

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................1

II. LEGAL ARGUMENT............................................................................................1

    A. The Wave Entities And Ms. Lee Were The Owner Of The Copyrights To The Photographs Prior To The Valid Assignment Of Those Rights To Plaintiff. ......................1

        1. U.S. law applies to the copyright ownership question and establishes the Wave entities as the copyright owners .............................................................................1

        2. The Wave Entities were owners of the copyrights to the Photographs when they were created under Singapore law as well. ......................................................1

        3. The parties' contractual relationship includes estimates, invoices, and a course of conduct, all of which create a contractual relationship subject to the terms of the production estimates. ......................................................................................2

            a. The contractual documents submitted are not hearsay and are admissible. ..............................................................................................3

            b. GHM's attempts to discredit Professor Llewelyn are without merit. .....4

            c. The Wave Entities own the copyrights to the Photographs under Singapore law whether or not §30(5) is applied .........................................5

            d. The contracts between the Wave Entities and Masano Kawana support the Plaintiffs' copyright ownership and right to sue ......................7

    B. Plaintiff's Chain Of Title Is Unbroken .......................................................................8

        1. The assignments setting forth the chain of title are simple and straightforward 8

        2. GHM's attempts to obfuscate what is a straightforward chain of title should be discarded entirely .................................................................................................9

    C. Neither GHM Nor The Hotels Had An Implied License To Freely Disseminate The Wave Photographs To Third Parties ..............................................................................10

    D. GHM'S Attacks On Plaintiff's Copyright Registrations, While Incorrect, Are Irrelevant Because Registrations Are Not Required For Infringement Suits Involving Foreign Works ..................................................................................................................12

E.  GHM'S Arguments Regarding *Forum Non-Conveniens* Are Unavailing ..................13

  1.  Plaintiff's choice of forum is entitled to deference...........................................13

  2.  Even with no deference to Plaintiff's chosen forum, GHM has failed to establish as a matter of law that this forum is inconvenient ..................................14

    a.  Singapore is not an adequate alternative forum .....................................14

    b.  The private and public factors favor this venue....................................15

    c.  The Hotels are not indispensable parties................................................16

F.  GHM Is Subject To Personal Jurisdiction In This District...........................................17

  1.  GHM regularly conducts its business in this District ......................................17

  2.  GHM's delay in challenging personal jurisdiction cannot be attributed to Plaintiff's substituting counsel in this matter.........................................................18

G.  GHM's Unfounded Character Attacks And Transparent Attempts To Undermine The Evidence In Support Of Plaintiff's Motion Are Unavailing.............................................18

III.  CONCLUSION........................................................................................................................**20**

**Cases**                                                                                         **Page**

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*,
944 F.2d 971 (2d Cir. 1991)...................................................................10

*Advanced Processor Techs. LLC v. Atmel Corp.*,
No. 2:12-CV-152-JRG-RSP, 2013 WL 1279053 (E.D. Tex. Mar. 26, 2013) .............................14

*Bassett v. Mashantucket Pequot Tribe*,
204 F.3d 343, 358 (2d. Cir. 2000).............................................................17

*Cf. Smart Skins LLC v. Microsoft Corp.*,
No. 14 CIV. 10149 CM, 2015 WL 1499843 (S.D.N.Y. Mar. 27, 2015) ......................................14

*Crawford v. Franklin Credit Mgmt. Corp.*,
No. 08-CV-6293 KMW, 2015 WL 1378882, at *3 (S.D.N.Y. Mar. 26, 2015)..........................3, 4

*Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*,
697 F.2d 27, 36 (2d Cir. 1982).................................................................20

*Esbin v. Zappier*,
2010 WL 391830 (S.D.N.Y. Feb. 4, 2010)......................................................20

*Fawcett, Isham & Co. v. Osborn, Adams & Co.*,
32 Ill. 411, 425 (1863) .........................................................................10

*Frink America v. Champion Road Mach., Ltd.*,
961 F. Supp. 398, 406 (N.D.N.Y 1997)........................................................17

*In re Barnes & Noble, Inc.*,
743 F.3d 1381 (Fed. Cir. 2014)...............................................................14

*In re Literary Works in Elec. Databases Copyright Litig.*,
509 F.3d 116, 133 (2d Cir. 2007)..............................................................12

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*,
326 U.S. 310, 316 (1945).......................................................................17

*Kenbrooke Fabrics, Inc. v. Holland Fabrics, Inc.*,
602 F. Supp. 151, 153 (S.D.N.Y. 1984) ......................................................13

*Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah*,
184 F.Supp.2d 277, 301 (S.D.N.Y. 2001) ....................................................15

**Cases**                                                                                                      **Page**

*Martinez v. Bloomberg LP*,
740 F.3d 211, 216 (2d Cir. 2014) ............................................................................15

*Masa LLC v. Apple Inc.*,
No. 4:15-CV-00889-AGF, 2016 WL 629263, at *1 (E.D. Mo. Feb. 17, 2016) ..........................14

*Micro Design LLC v. Asus Computer Int'l*,
No. CV 14-837-LPS-CJB, 2015 WL 2089770 (D. Del. May 1, 2015) ........................................14

*Mueller v. Abdnor*,
972 F.2d 931, 937 (8th Cir.1992) ..............................................................................4

*One Treasure Ltd., Inc. v. Richardson*,
202 F. App'x 658, 660 (5th Cir. 2006).........................................................................13

*Picture Patents, LLC v. Aeropostale, Inc.*,
788 F. Supp. 2d 127, 136 (S.D.N.Y. 2011) ..............................................................9, 10

*Planet Software, Inc. v. Games Intern.*, LLC,
334 F. Supp. 2d 425, 436–37 (S.D. N.Y. 2004) ..........................................................13

*SmithKline Beecham Healthcare, L.P. v. Watson Pharms. Inc.*,
211 F.3d 21, 25 (2d Cir. 2000)................................................................................11

*State of Georgia v. Pennsylvania R. Co.*,
324 U.S. 439, 463 (1945)..................................................................................16, 17

*State of N.Y. v. Hendrickson Bros.*,
840 F.2d 1065, 1075 (2d Cir. 1988)............................................................................4

*The Football Ass'n Premier League Ltd. v. YouTube, Inc.*,
633 F. Supp. 2d 159, 162 (S.D.N.Y. 2009) ................................................................12

*Two Pepper Music v. Rhino Records, Inc.*,
173 F.3d 846 (2d Cir.1999).....................................................................................10

*United States v. Backer*,
134 F.2d 533, 535–36 (2d Cir.1943)..........................................................................13

*Walden v. Fiore*,
134 S. Ct. 1115, 1121 (2014).....................................................................................17

**Cases**                                                                                                       **Page**

*Wang Choong Li v. Wong Wan Chin*,
(2015) SGHC 128 ..................................................................................................6, 7

*Wechsler v. Four Seasons Hotels Ltd.*,
No. 13 CIV. 8971 RJS, 2014 WL 2604109, at *2 (S.D.N.Y. June 10, 2014) ..............................15


**Rules**

Federal Rules of Evidence § 1006 ..............................................................................3


**Statutes**

17 U.S.C. § 204 ..................................................................................................20

17 U.S.C. § 411 ..................................................................................................12

37 C.F.R. § 201.4 ................................................................................................20

Singapore Copyright Act § 30(5).......................................................................... *passim*


**Other**

Nimmer on Copyright § 7.20 (1984) .........................................................................13

Patry on Copyright § 17:77......................................................................................13

Patry on Copyright § 5:111......................................................................................20

# I.    INTRODUCTION

Plaintiff's and GHM's cross-motions for summary judgment require this Court to answer two questions:  (1) Does Plaintiff own the copyrights to the Photographs, and (2) does GHM (and the Hotels) have an implied license to disseminate the Photographs to third parties with unlimited sublicensing rights?   The documentary and testimonial evidence in this case establishes as a matter of law that (1) Plaintiff is the owner of the copyrights at issue, and (2) that neither GHM nor the Hotels had an unfettered implied license to disseminate Wave's photos to third parties.   What is also clear: if the facts GHM claims are relevant to resolving these questions are actually material, they are by their nature in dispute and summary judgment is not available to GHM.

# II.    LEGAL ARGUMENT

A.    The Wave Entities And Ms. Lee Were The Owner Of The Copyrights To The Photographs Prior To The Valid Assignment Of Those Rights To Plaintiff.

1.    U.S. law applies to the copyright ownership question and establishes the Wave entities as the copyright owners.

Plaintiff maintains that U.S. law should apply to the issue of copyright ownership in this case.  Although Plaintiff acknowledges the cases cited in its brief are not binding on this Court, they are nevertheless instructive and address the precise situation presented here and explain why the precedent cited by GHM is distinguishable.  The cases cited by GHM, including the Second Circuit cases, do not squarely address the facts in this situation, where the creator of foreign works obtains U.S. copyright registrations for the purposes of enforcing against copyright infringements here in the U.S. perpetrated by American companies.  Under the circumstances here, U.S. law is more appropriately applied.

2.    The Wave Entities were owners of the copyrights to the Photographs when they were created under Singapore law as well.

As set forth in Plaintiff's cross-motion for summary judgment, the undisputed evidence submitted by Plaintiff establishes that: (1) the various Wave Entities owned the copyrights to the Photographs and (2) the Wave Entities and Ms. Lee correctly assigned the copyrights to the Photographs to Plaintiff. GHM's Reply is a failed attempt to discredit Ms. Lee and divert the Court's attention away from the only written documents that governed the contractual relations between the parties to those documents.

Indeed, while GHM protests any explanatory testimony provided by Ms. Lee over the written agreement with Mr. Kawana as inadmissible parol evidence, its entire rebuttal of the plain language in the Wave production estimates is premised on the same type of parol evidence from its former Vice President, Ralf Ohletz. Such parol evidence from Mr. Ohletz (or anyone from the GHM-managed Hotels for that matter) is equally inadmissible. GHM cannot have it both ways. Stripped of that parol evidence, GHM has produced <u>no</u> admissible evidence to refute the plain language of the only written documents setting forth the terms between the Wave Entities and the Hotels.

In contrast, Plaintiff's Motion does not require parol evidence; the contractual documents speak for themselves and together establish Plaintiff's position as a matter of law. To the extent the Court accepts GHM's parol evidence as material to adjudicate the threshold issues presented, Plaintiff disputes such evidence with contradictory evidence from Ms. Lee, precluding summary judgment for GHM.

3.  The parties' contractual relationship includes estimates, invoices, and a course of conduct, all of which create a contractual relationship subject to the terms of the production estimates.

The evidence in this case establishes a standard and clear contractual relationship between the parties. There is no other interpretation to draw from the course of conduct the

parties had over the years. That Plaintiff chose not to inundate the Court with hundreds of pages of documents is a testament to efficiency, not deficiency, as GHM would have the Court believe.

GHM's citation to Federal Rule of Evidence 1006 is inapt. Contrary to GHM's assertion, it is a permissive, not a mandatory rule. Because GHM has acknowledged the language of the production estimates, there is no need to put forth all of them before the Court. Submitting only exemplars of the contractual relationship between Wave and the Hotels will save judicial resources while still evidencing a pattern of dealing and the language of the production estimates. Indeed, such efficiency measures were not lost on GHM's ex-Vice President, Mr. Ohletz, who admitted the language in the exemplar estimates attached as exhibits to his deposition was in the many Wave estimates he reviewed, while calling it "those typical small prints you never read." (Deposition of Ralf Ohletz ("Ohletz Depo.") (Ex. C to Declaration of Vijay K. Toke ("Toke Decl."), 110:11 to 111:11; Declaration of Gordon Iwonwy David Llewelyn dated March 11, 2016 ("Llewelyn Opp. Decl."), ¶¶ 54-56).

The production estimates provided are more than sufficient to establish that if Section 30(5) of the Singapore Copyright Act applies to the contractual relationship between the Wave Entities and the Hotels (it does not, as explained by Professor Llewelyn), the parties clearly contracted around that provision such that the Wave Entities owned the copyrights. Plaintiff nonetheless supplements the production estimates provided to the court with a handful of additional estimates for photography services, all of which have been produced to GHM. (*See* Ex. 3 to Reply Declaration of Lee Kar Yin ("Lee Reply Decl.")).

        a.    The contractual documents submitted are not hearsay and are admissible.

Well-settled case law and common sense dictate that contractual documents are admissible evidence. They are legal documents, have independent legal significance, and by

definition are not hearsay. *See Crawford v. Franklin Credit Mgmt. Corp.*, No. 08-CV-6293 KMW, 2015 WL 1378882, at *3 (S.D.N.Y. Mar. 26, 2015) ("'[A] contract is 'a form of verbal act to which the law attaches duties and liabilities and therefore is not hearsay.'" (quoting *Mueller v. Abdnor*, 972 F.2d 931, 937 (8th Cir.1992)). Further, "[t]he hearsay rule does not exclude relevant testimony as to what the contracting parties said with respect to the making or the terms of an oral agreement." *State of N.Y. v. Hendrickson Bros.*, 840 F.2d 1065, 1075 (2d Cir. 1988) (internal quotations omitted). To find otherwise would provide no method to prove the terms of parties' written agreements before any court.

GHM nonetheless makes the unsupportable argument that the various contractual documents are inadmissible hearsay in an effort to avoid the clear, indisputable language in them. As inconvenient as it is for GHM, those documents unequivocally establish that the Wave Entities owned the copyrights to the Photographs as between themselves and the Hotels or GHM (even assuming Section 30(5) applies).

> b. GHM's attempts to discredit Professor Llewelyn are without merit.

Professor Llewelyn is clearly qualified to render an opinion as an expert in Singapore law. Faced with the uncomfortable fact that Professor Llewelyn pointed out that Dr. Lai's own cited authorities actually establish the Wave Entities' copyright ownership, GHM turns its attack on Plaintiff's expert, arguing that he is not qualified to render an opinion on Singapore copyright law because he is not licensed to practice there. Professor Llewelyn has for years taught Singapore copyright law at one of Singapore's most prestigious universities and has served as its Deputy Dean, independent of his licensure. To suggest he is not qualified is akin to opining, for example, that Stanford University's Professor Mark Lemley, a noted expert on U.S. copyright law, is not qualified to render an expert opinion merely because he is not licensed to practice in a

state in which a particular litigation is pending. In fact, the Singapore Court of Appeal (Singapore's highest court) recently requested that Professor Llewelyn provide it with his opinion on an issue of Singapore copyright law as *amicus curiae*. (Reply Declaration of Gordon Ionwy David Llewelyn ("Llewelyn Reply Dec."), ¶ 2.) If the highest court of Singapore itself seeks Professor Llewelyn's expert opinion on Singapore copyright law for its cases, Plaintiff submits his opinion should be given great deference here.

        c.     The Wave Entities own the copyrights to the Photographs under Singapore law whether or not §30(5) is applied.

Professor Llewellyn explained in his first declaration why, under the very authorities cited by GHM's expert, Section 30(5) did not apply to the agreements between the Wave Entities and the Hotels for photography services but did apply as between the Wave Entities and Mr. Kawana. (Llewellyn Opp. Dec., ¶¶ 25-30.) Professor Llewellyn further explained why, even if Section 30(5) did apply between the Wave Entities and the Hotels, the clear language of the production estimates plainly contracted around that section, positing the copyrights with the Wave Entities. (Id., ¶¶ 48-61.)

Nothing in Dr. Lai's initial or reply declarations refutes Professor Llewellyn's conclusions under Singapore law. Rather, Dr. Lai's first opinion, as Professor Llewellyn's first declaration points out, requires the Court to ignore the plain language of the production estimates that clearly state the Wave Entities would only provide its services under the terms set forth in them and that they reserved the copyrights in any product they created, including photographs. (Llewellyn Opp. Dec., ¶¶ 50-52.) Dr. Lai's opinion instead requires the Court to rely on inadmissible parol evidence provided by GHM's former employee, Ralf Ohletz, the very type of testimony GHM insists is inadmissible when it comes from Ms. Lee. Thus, Dr. Lai's strained interpretation of Singapore law, which contradicts the very authorities he cites, requires this Court to ignore the

only documents setting forth the terms of the Wave Entities' work in favor of inadmissible parol evidence.

In light of this, Dr. Lai's reply declaration asserts Professor Llewellyn's conclusions are incorrect because they are founded on three unsupported assumptions, namely: (i) "the engagement of the respective Wave entity and Lee Kar Yin to take photographs was always 'bundled up' with other services"; (ii) "the respective Wave entity and Lee engaged Masano Kawana in their capacities of agents of [Defendant GHM]"; and (iii) "GHM/hotels paid the exact sums specified on every production estimate." (*See* Reply/Opp. Declaration of Dr. Stanley Lai dated April 13, 2016 ("Lai Reply Dec."), ¶ 3.) As Professor Llewelyn explains, his conclusions do not rely on any of these assumptions. (Id., ¶ 4.)

Indeed, as Professor Llewelyn points out, the fact that the final amount paid for a particular order may have differed in some cases from the initial production estimate (or the fact that some estimates were not signed) does not negate the contractual language in the estimates or the course of conduct of the parties. (Llewelyn Reply Dec., ¶ 4(3).) Further, both Dr. Lai and Professor Llewelyn agree that the Wave Entities were not acting as agents of GHM in hiring Mr. Kawana, a fact that makes even clearer that Section 30(5) would not apply as to the Hotels. (Id., ¶ 4(2).) And as noted by Professor Llewelyn, that the photo shoots appeared on separate production estimates is irrelevant to the issue of copyright ownership.[1] (Id., ¶ 4.)

Dr. Lai offers no other alternative for the course of conduct but to accept Mr. Ohletz's inadmissible parol evidence wholesale and reject the clear language of the production estimates reserving copyrights with the Wave Entities. (Llewelyn Reply Dec., ¶ 5.) Dr. Lai's second

---

[1] That said, the photography was in fact bundled with other services, which GHM has admitted. (Ohletz Depo., 117:9 – 118:9) This admission further supports Professor Llewelyn's assertion that under *Wang Choong Li v. Wong Wan Chin*, (2015) SGHC 128 the Wave Entities were the copyright owners.

declaration further fails to explain away the holding of the *Wang Choong Li* case he himself cites that establishes why Section 30(5) is inapplicable between the Hotels and the Wave Entities. (*See* Id., ¶ 12-17.) Indeed, as Professor Llewelyn explained in this first declaration, Section 30(5) does not apply under *Wang Choong Li* because the Wave Entities (not the Hotels) commissioned the photographs from the author, Mr. Kawana. (Llewelyn Opp. Dec., ¶ 41; Llewelyn Reply Dec., ¶ 10.) In fact, the Wave/Kawana agreements specifically use the word "commission," while the production estimates do not. (*See* Llewelyn Reply Dec., ¶ 6, Ex. 3.) Thus, despite his best efforts, Dr. Lai fails to distinguish his previously cited authorities, which he now keeps actually establish Plaintiff's copyright ownership.

        d.      The contracts between the Wave Entities and Masano Kawana support the Plaintiffs' copyright ownership and right to sue.

The agreements with Mr. Kawana further support the Wave Entities' ownership of the copyrights to the Photographs. Even ignoring Ms. Lee's testimony that the intended agreement with Mr. Kawana provided that the Wave Entities exclusively owned the copyrights, the agreements as read to be most favorable to GHM indicate that the Wave Entities were at least joint owners of the copyrights to the Photographs at the time of their creation.[2] (Llewelyn Reply Dec., ¶ 6.) GHM admits this. (GHM Opp./Reply at 5.) As a joint owner of the copyrights, the Wave Entities held the right to sue and needed no assignment from Mr. Kawana or Irieeyes. Moreover, as Professor Llewelyn makes clear, the 2013 Memorandum of Understanding with Mr. Kawana then ratified the understanding that Ms. Lee and the Wave Entities were sole owners of the copyrights to the Photographs at the time of their creation. (Llewelyn Reply Dec.,

---

[2] These agreements, which by their language apply to all past and future dealings between the Wave Entities and Kawana/Irieeyes, supercede all previous contractual documents under their integration clause. Thus, the copyright ownership provision in them supercedes the two Irieeyes estimates GHM cites to in its Opposition/Reply that purport to give copyright to Mr. Kawana, rendering those estimates moot.

¶ 6.)  The Wave Entities therefore had full rights to enforce the copyrights to the Photographs. (Id., ¶ 7.)  Thus, GHM's arguments that the agreements with Mr. Kawana (and his authorship of the Photographs) complicate the ownership issue fail.

B.     Plaintiff's Chain Of Title Is Unbroken.

1.     The assignments setting forth the chain of title are straightforward.

As Plaintiff's Cross-Motion explains, though admittedly Plaintiff inadvertently created unnecessary and ineffective documents related to copyright ownership, the assignment of copyrights to Plaintiff are in fact quite simple when stripped of those erroneously created (and ineffective) documents.  GHM's opposition once again tries to take advantage of these harmless mistakes to create ambiguity and doubt where none exists.

Throughout the period the Wave Entities created the Photographs, there were three Wave Entities:  (1) The Wave-S (a sole proprietorship dissolved on February 21, 2007), (2) The Wave Private Ltd. (dissolved on August 1, 2008), and (3) The Wave Design Private Ltd. (which changed its name to The Wave Studio Private Ltd. on July 27, 2007 and still exists today). Professor Llewelyn's first declaration sets forth the valid assignments under Singapore law:

- Assignment by operation of law at dissolution of The Wave-S on February 21, 2007 to Ms. Lee as the sole proprietor.  (Llewelyn Opp. Dec., ¶ 76).
- Assignment by corporate resolution dated August 1, 2008 prior to dissolution of The Wave Private Ltd. assigning all assets, intangible and tangible, to Ms. Lee. (Id.)

Pursuant to these assignments, as of August 1, 2008, Ms. Lee owned the copyrights to the Photographs created under contracts between the Hotels and both The Wave-S and The Wave Private Ltd. The Wave Studio Private Ltd. (f/k/a The Wave Design Private Ltd.) owned the rights in the remaining Photographs.  Ms. Lee and The Wave Design Private Ltd. then assigned those copyrights to Plaintiff on November 11, 2011 with assignments recorded with the U.S.

Copyright Office. (*See* Exhibit 1 to Lee Reply Dec., underlying Ex. K.)[3] Thus, as of November

11, 2011, Plaintiff owned all copyrights to all of the Photographs.

        2.     GHM's attempts to obfuscate a straightforward chain of title should be discarded entirely.

During the course of this litigation, GHM pointed out some inaccuracies in the

assignment documents that detracted (but did not negate) the simple, valid, and effective

assignments of the copyrights Plaintiff. Admittedly, these erroneously created documents, at

first blush, made the chain of title appear incorrect because they were inconsistent with the

information listed on Plaintiff's copyright registrations.[4] Specifically, GHM pointed out in its

questioning of Plaintiff that there appeared to be two assignments by Wave-S and two by The

Wave Private Ltd. created in 2011 and 2012, well after those entities had been dissolved and had

already assigned their assets, by corporate act or operation of law, that appeared to cloud title.

(*See* Ex. 1 to Lee Reply Decl., underlying Exs. H-K.) These documents were ultimately

ineffective because the rights they purported to assign were no longer owned by the assignors

(which were also both long-dissolved at the time of the purported conveyance). *See Picture*

*Patents, LLC v. Aeropostale, Inc.*, 788 F. Supp. 2d 127, 136 (S.D.N.Y. 2011), *aff'd,* 469 F. App'x

---

[3] Though the Corrective Assignment filed by Wave in September 2015 has been submitted to the Court, GHM argues the underlying exhibits have not been and should not be considered. Notably, GHM does not argue that the Corrective Assignment is invalid or inaccurate. The Corrective Assignment merely sets forth the chain of title as a standalone document, making the underlying exhibits themselves unnecessary for the court (as illustrated by the fact that GHM itself did not attach the exhibits to the Corrective Assignment when including it as evidence). However, to the extent GHM now challenges the Corrective Assignment because its exhibits have not been provided to the Court, Plaintiff attaches the Corrective Assignment in its entirety as Exhibit 1 to the Reply Declaration of Lee Kar Yin filed herewith, should the Court wish to view each of these assignments. Since GHM has reviewed the documents, deposed Plaintiff on them, and thoroughly addressed them in its motion and opposition/reply, there is no prejudice to GHM from submitting the exhibits to the Corrective Assignment with this reply.

[4] Notably, even giving effect to the erroneously created assignments still establishes a clear chain of title to Plaintiff but merely means that the copyright registrations reflect inaccurate claimant or authorship information, which can be easily corrected with the Copyright Office.

912 (Fed. Cir. 2012) (attempted assignment of intellectual property invalid where assignor had no interest to assign); *Fawcett, Isham & Co. v. Osborn, Adams & Co.*, 32 Ill. 411, 425 (1863). Ms. Lee prepared the Corrective Assignment to set the record straight and clarify any issues with Plaintiff's title. The Corrective Assignment thus simply made clear that the 2011 and 2012 assignments made after the dissolution of Wave-S and the The Wave Private Ltd. were ineffective and should be completely ignored as if they did not exist.[5]

Yet GHM continues to cite these ineffective assignments in an attempt to cloud the clear chain of title. This Court should reject GHM's transparent attempts to improperly create legal significance from inadvertent (and legally irrelevant) errors made by Ms. Lee in ensuring that the chain of title is clear. No such intellectual gymnastics by GHM can change the fact that the 2011 and 2012 purported assignments on behalf of the already dissolved Wave-S and The Wave Private Ltd. were necessarily ineffective and Plaintiff's chain of title is clear.[6]

    C.    Neither GHM Nor The Hotels Had An Implied License To Freely Disseminate The Wave Photographs To Third Parties.

As explained in Plaintiff's Opposition/Motion, courts are naturally circumspect in

---

[5] The Corrective Assignment also clarified that the November 11, 2011 on behalf of The Wave Design Private Ltd., the correct owner of the rights being assigned, should have used the current name of the company on the effective date of the assignment, which had been changed to The Wave Studio Private Ltd. as of July 27, 2007. The assignment was otherwise correct, as the Corrective Assignment makes clear. (See Ex. 1 to Lee Reply Dec., ¶ 25-26; Ex. R to Remore Decl.)

[6] GHM also claims that the 2013 Memorandum of Understanding (MOU) from Mr. Kawana did not explicitly convey the right to sue for past copyright infringements. While Plaintiff disagrees, the MOU did not need to do so. As GHM even admits in its opposition, the 2005 agreement stated that the Wave Entities and Irieyes both owned the copyrights. Thus, there was no need for Wave to receive an assignment of such rights to sue because Wave already owned them. Nonetheless, if the Court determines that such an assignment were necessary under *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971 (2d Cir. 1991) (Plaintiff disagrees the case is applicable), an assignment of such rights may be entered into until trial in a pending case. *Two Pepper Music v. Rhino Records, Inc.*, 173 F.3d 846 (2d Cir.1999); *ABKCO Music*, 944 F.2d at 980. Thus, if an assignment of such rights were needed, Plaintiff could procure an assignment now.

granting implied licenses. *See SmithKline Beecham Healthcare, L.P. v. Watson Pharms. Inc.*, 211 F.3d 21, 25 (2d Cir. 2000), (*See* also Wave Opp./Motion at 35.) GHM's Opposition/Reply provides no basis for reading an implied license that would allow for the dissemination of the Photographs to third parties. First, the cited evidence by Mr. Ohletz that GHM and the Hotels could do as they pleased with the photos is, by GHM's own assertion as to Ms. Lee's contradictory testimony, inadmissible parol evidence and belies the plain language of the production estimates.

Second, GHM's own behavior and admissions establish that neither it nor the Hotels had an implied license to disseminate the Photographs to third parties without permission from Ms. Lee. Mr. Ohletz and Ms. Lee agree that GHM used Ms. Lee as a "one-stop shop" to create the branding and marketing collaterals for the GHM-managed Hotels. (Ohletz Depo., 14:12-15:8, 33:7-33:8, 45:14-45:17, 131:1-131:3; Lee Opp. Dec., ¶ 2.) If GHM believed that it or the Hotels owned the copyrights to the Photographs (or had an implied license to do as they pleased), there would have been no reason to inform Ms. Lee of their dissemination to third parties. Yet GHM did so, informing Ms. Lee of the handful of such disseminations it made until it abruptly stopped working with her.

Similarly, GHM's own legal director, Kendall Oei, informed a formerly GHM-managed property that the Hotels do not own the copyrights to the Photographs but that "GHM/Waves" did.[7] GHM contends these statements are inadmissible hearsay. Not so. They are necessarily

---

[7] As explained in Plaintiff's Opposition/Cross-Motion, Mr. Oei used the "GHM/Waves" construction because some photos he was referring to were not by Wave (and are not at issue here). (Lee Opp. Dec., ¶ 18.) Further, Mr. Oei's reference to Wave's "proprietary" database and pledge to assist Wave in pursuing a copyright infringement suit against the Setai Club in the Setai Miami, which might result in making Wave a "pile of money," further establishes GHM's understanding that the Wave Entities owned the copyrights to the Photographs. (*See* Ex. G to Lee Opp. Dec.) Notably, GHM's founder, Hans Jenni, was copied on such correspondence and

admissible as party admissions since Mr. Oei was the Director of GHM in charge of, among other things, legal contracts for GHM, and thus an exception to the hearsay rule. (*See* Deposition of Monica Chng ("Chng Depo.") (Ex. D to Toke Dec.), 31:9-31:18.) Moreover, even if not offered for their truth, these statements clearly show that GHM itself believed Wave owned the copyrights, a position consistent with the production estimates and GHM's behavior when disseminating Photographs to third parties its cessation of work with Ms. Lee.

GHM's arguments that the parties understood the Photographs could be used by GHM for any marketing of the Hotels is inconsistent with the fact that Ms. Lee was to exclusively create all the branding and marketing collaterals for the Hotels. (*See* Lee Reply Dec., ¶ 6; Ohletz Depo., 45:14-45:17) Accepting GHM's testimony on that point, an implied license for GHM or the Hotels to widely disseminate the Photographs as it and the Hotels pleased would ignore all of the evidence indicating otherwise.

> D.  GHM's Attacks On Plaintiff's Copyright Registrations, While Incorrect, Are Irrelevant Because Registrations Are Not Required For Infringement Suits Involving Foreign Works.

A copyright registration is not required to sue for copyright infringement of foreign works. 17 U.S.C. § 411; *see In re Literary Works in Elec. Databases Copyright Litig.,* 509 F.3d 116, 133 (2d Cir. 2007) (noting section 411(a)'s "explicit exception of foreign works from its reach."); *The Football Ass'n Premier League Ltd. v. YouTube, Inc.*, 633 F. Supp. 2d 159, 162 (S.D.N.Y. 2009) ("Section 411(a) of the Act, which requires preregistration or registration before any copyright infringement suit may be brought, is limited to U.S. works... and thus allows suits to be brought upon foreign works without registration of them."). It is undisputed that the Photographs are foreign works. Therefore, the owner of the copyrights to the Photographs need

never contradicted this understanding.

not have any copyright registrations to pursue this action and any collateral attack on any inadvertent errors in Plaintiff's copyright registrations has no bearing on whether this case can proceed. Thus, even if GHM were correct (it isn't) that the copyright registrations are invalid, it would have no effect on this action.

Nonetheless, GHM is incorrect that the copyright registrations are invalid. Copyright registrations serve the purpose of notice; they do not confer or convey ownership rights. 5 Patry on Copyright § 17:77 ("Registration does not create ownership"); *Planet Software, Inc. v. Games Intern.*, LLC, 334 F. Supp. 2d 425, 436–37 (S.D. N.Y. 2004) (noting that a registration does not supercede a contrary contractual arrangement). A registrant need only do its best to provide accurate information in its registrations, and inadvertent errors in the information provided do not invalidate registrations. *Kenbrooke Fabrics, Inc. v. Holland Fabrics, Inc.*, 602 F. Supp. 151, 153 (S.D.N.Y. 1984) (finding an error in the registration does not invalidate the copyright absent a showing of fraud; citing *United States v. Backer,* 134 F.2d 533, 535–36 (2d Cir.1943); 2 M. Nimmer, Nimmer on Copyright § 7.20, at 7–149 (1984)); *One Treasure Ltd., Inc. v. Richardson*, 202 F. App'x 658, 660 (5th Cir. 2006) ("Immaterial, inadvertent errors in an application for copyright registration do not jeopardize the registrations validity.") While Plaintiff believes any issues with the copyright registrations have been rectified, any remaining inadvertent errors do not invalidate the copyrights. Defendants have been provided notice of the registrations to the Photographs. That is all that is needed. GHM offers no facts or law to the contrary.

    E.    GHM'S Arguments Regarding *Forum Non-Conveniens* Are Unavailing.

        1.    Plaintiff's choice of forum is entitled to deference.

GHM argues Plaintiff's choice of forum is entitled to no deference because it is a shell company. GHM is incorrect. Intellectual property holding and enforcement companies are

legitimate companies with legitimate business models. See, e.g., *Masa LLC v. Apple Inc.*, No. 4:15-CV-00889-AGF, 2016 WL 629263, at *1 (E.D. Mo. Feb. 17, 2016) (denying forum transfer, finding plaintiff non-practicing patent assertion entity's choice in forum was entitled to deference); *Micro Design LLC v. Asus Computer Int'l,* No. CV 14-837-LPS-CJB, 2015 WL 2089770 (D. Del. May 1, 2015) (same); *In re Barnes & Noble, Inc.*, 743 F.3d 1381 (Fed. Cir. 2014) (same); *Advanced Processor Techs. LLC v. Atmel Corp.*, No. 2:12-CV-152-JRG-RSP, 2013 WL 1279053 (E.D. Tex. Mar. 26, 2013) (same); *Cf. Smart Skins LLC v. Microsoft Corp.*, No. 14 CIV. 10149 CM, 2015 WL 1499843 (S.D.N.Y. Mar. 27, 2015). That Plaintiff was formed for the purposes of enforcing the valid and enforceable copyrights of the Wave Entities does not make it an illegitimate company entitled to no deference for its chosen forum. Plaintiff was formed and resides in this District. As such, it is a legitimate concern conducting its business—enforcing the copyrights to the Photographs—in this District.

        2.       Even with no deference to Plaintiff's chosen forum, GHM has failed to establish as a matter of law that this forum is inconvenient.

            a.      Singapore is not an adequate alternative forum.

Plaintiff does not dispute that Singapore has an adequate legal system. It nonetheless is not an adequate alternative forum. Almost every defendant in this case is an American corporation located in the United States, many within this District. GHM's argument that the American Defendants' location is based on an unsworn statement rings hollow. The allegations of the Complaint should suffice, especially since GHM does not contradict those allegations (and this is a motion for *forum non conveniens*, which is most typically brought on the pleadings). The fact that almost all the defendants are American companies is self-evident and should be subject to judicial notice. And due to the stay, Plaintiff has not been allowed to take discovery from these parties. Thus, if the Court will not rely on the uncontradicted allegations of the

Complaint or take judicial notice that nearly every defendant is a U.S.-based company, then Plaintiff should be entitled to conduct limited discovery related to GHM's *forum non conveniens* argument. *Martinez v. Bloomberg LP,* 740 F.3d 211, 216 (2d Cir. 2014) ("In deciding a motion to dismiss for forum non conveniens, a district court normally relies solely on the pleadings and affidavits, though it may order limited discovery." (internal citation omitted))*; Wechsler v. Four Seasons Hotels Ltd.,* No. 13 CIV. 8971 RJS, 2014 WL 2604109, at *2 (S.D.N.Y. June 10, 2014).

To distract from this glaring fact, GHM makes the unsupported statement the American Defendants are only in this litigation for indemnity. On the contrary, the American Defendants are independent infringers subject to separate liability, and indemnity rights they have against GHM further supports venue here, not Singapore. Indeed, in a clumsy attempt at sleight of hand, GHM's opposition argues bifurcation—the threshold issue first litigated in Singapore with GHM, and thereafter indemnity issues litigated here between <u>Plaintiff</u> and the American Defendants—would be a viable option. (GHM Opp./Reply at 27-28.) Such indemnity claims, however, would not be litigated between Plaintiff and the American Defendants but between <u>GHM</u> and those Defendants. Moreover, as Plaintiff points out in its opening brief, the American Defendants would not be subject to service in Singapore, especially for a lawsuit relating to U.S. infringement of U.S. copyrights. Thus, sending the ownership issue to Singapore would not be more convenient; the American Defendants claiming indemnity rights against GHM would adjudicate those claims here. Thus, Singapore is not an adequate alternative forum.

b.    The private and public factors favor this venue.

Even if Singapore were an adequate forum, courts do not substitute one inconvenience for another in a *forum non conveniens* motion. *See, e.g., Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah*, 184 F.Supp.2d 277, 301 (S.D.N.Y. 2001). As explained with

Plaintiff's motion for summary judgment and below, the public and private factors do not support dismissal for inconvenient forum.

GHM's argument that Plaintiff has not identified any specific U.S. witnesses is unavailing. Plaintiff has not identified specific witnesses because it has not been allowed discovery from any of those defendants. But to suggest that U.S.-based companies accused of infringement here. would not have U.S.-based witnesses defies basic reason and demonstrates GHM's willingness to take extreme, unsupportable positions to try and extricate itself from this action.

GHM next argues that the Hotels would have witnesses who could discuss the agreement between them and the Wave Entities. This argument, too, fails as GHM is a victim of its own willingness to discount any evidence it deems unfavorable to it. First, as a procedural matter, the third party witnesses identified by GHM—the Hotels' personnel found in various Southeast Asian countries—are no more subject to service of process in Singapore than in the U.S. Thus, Singapore is no more convenient forum than this District. Second, the testimony GHM states it would elicit—namely the explanation of the terms of the production estimates from the Wave Entities—is by GHM's own admission (regarding Ms. Lee) inadmissible parol evidence. (See GHM Opp./Reply at 10.) Thus, GHM's own assertions establish that such testimony is irrelevant.

Finally, because nearly all of the defendants are American companies being accused of infringing copyrights in the U.S., this dispute is local, and this District has a strong interest in hearing the case.

c.      The Hotels are not indispensable parties.

Neither are the Hotels indispensable parties. First, GHM does not dispute the Hotels are

16

joint tortfeasors, which by definition are not indispensable parties. *See State of Georgia v. Pennsylvania R. Co.,* 324 U.S. 439, 463 (1945); *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 358 (2d. Cir. 2000); *Frink America v. Champion Road Mach., Ltd.,* 961 F.Supp. 398, 406 (N.D.N.Y 1997)*.* Second, GHM has not established why it and the Setai (one of the Hotels) have not and cannot adequately litigate the Hotels' alleged ownership interest since GHM's interests are wholly aligned with the Hotels' alleged ownership of the copyrights. Indeed, GHM is vigorously arguing the Hotels owned the copyrights to the Photographs, just as the Hotels would. Moreover, as explained above, the evidence GHM claims the Hotels will be able to offer about the meaning of the contractual documents at issue is parol evidence.

F.     GHM Is Subject To Personal Jurisdiction In This District.

1.     GHM regularly conducts its business in this District.

The purpose of personal jurisdiction statutes is to prevent parties from instituting an action in a jurisdiction in which the Defendant does not do business nor has sufficient ties. *See Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945); *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). GHM has a sales office in this District that it admits markets the hotels under GHM management to American consumers, including New York residents. (See Chng. Depo., 98:24-100:9) Thus, GHM's New York sales office is precisely the sort of contact that confers jurisdiction here.

GHM's *non sequitur* argument that its New York office does not accept reservations for hotels under its management is irrelevant. GHM is not in the business of taking reservations for hotels. It never has been. It manages and markets high-end hotel properties from its Singapore headquarters and through its worldwide sales offices, including those in San Francisco and New York. (Chng. Depo., 98:24-99:7) Thus, GHM conducts its business in the U.S., and specifically

within this District, and is subject to personal jurisdiction here.

GHM's argument that Plaintiff has no evidence connecting GHM to the U.S. or the dissemination of the Photographs likewise fails. Plaintiff will learn the source of the Photographs once the stay has been lifted as to other defendants. But the fact that GHM has agreed to indemnify numerous Defendants is a strong indication that it was the source of the Photographs for at least some of the Defendants (in fact, a number of defendants have represented as much). This further supports personal jurisdiction over GHM in this district.

        2.        GHM's delay in challenging personal jurisdiction cannot be attributed to Plaintiff's substituting counsel in this matter.

GHM's delay in bringing a personal jurisdiction challenge is telling. While it may have raised personal jurisdiction as an affirmative defense, it has litigated this case for over two years, filing an answer, engaging in repeated motion practice, conducting extensive discovery across the globe, and appearing before this Court numerous times. It did not need any discovery or additional information to file a motion to dismiss under Rule 12(b)(3) when this action was first filed. Yet it did not do so. Complaining now, after such vigorous litigation, wholly undercuts any claim it cannot adequately litigate in this District. Plaintiff's few month delay in early 2015 related to its change of counsel has no bearing on the more than 20 additional months of litigation during which GHM failed to seek relief from the Court under Rule 12.

        G.        GHM's Unfounded Character Attacks And Transparent Attempts To Undermine The Evidence In Support Of Plaintiff's Motion Are Unavailing.

At a loss for countering the clear documentary evidence of Plaintiff's ownership of the copyrights to the Photographs, GHM attempts to undermine Ms. Lee's credibility. Among other things, GHM claims:

- Ms. Lee testified that The Wave Entities were the author of the Photographs
- That Ms. Lee allegedly saw GHM and the Setai use Wave-owned Photographs as

early as 2002
- Ms. Lee's claimed post-production work is grossly exaggerated.
- The timing of filing the Memorandum of Understanding between Ms. Lee and Masano Kawana is suspicious.
- The timing of the corrective assignment was suspicious

GHM's *ad hominem* attacks on Ms. Lee and Plaintiff miss the mark, as Ms. Lee's testimony has been consistent throughout this proceeding. First, while Ms. Lee was the creative mind behind the Photographs, as she testified, who is the author of the Photographs under Singapore copyright law is a legal conclusion to which Ms. Lee, a fact witness could not testify (which GHM itself points out, when convenient). (*See* GHM Opp./Reply at 16-17.) Moreover, GHM itself has asserted that Mr. Kawana was the author of the Photographs under Singapore law. It can hardly complain that Plaintiff agrees with this legal conclusion.

Second, it is no surprise that Ms. Lee saw Wave Photographs on the GHM and Setai websites in the mid-2000s because Wave created those websites and the use was authorized. (*See* Lee Reply Dec, ¶ 7.) Ms. Lee has been consistent in saying she did not see any non-Wave-created website with any Photographs prior to 2012. (*See* Lee Sept. Depo. (Ex. B to Toke Dec.), 289:25-290:15; Lee Opp. Dec. ¶ 22.) Once again GHM seeks to distort the facts to conjure inconsistencies in Plaintiff's testimony where none exist.

Third, GHM attempts to paint Plaintiff's evidence of post-production work done on the Photographs as incredible. GHM ignores the fact that the Wave Entities had several people on staff doing post-production work. The post-production work amounted to 12-16 months' worth of work by Wave's staff over a seven-year period, a reasonable workload by any standard. (*See* Lee Reply Dec., ¶ 5.)

Fourth, without any basis, GHM questions the authenticity of the Kawana Memorandum of Understanding, calling into question the timing of its recordation. The explanation is simple:

The Copyright Act would require notarization if the recordation of the assignment were signed outside of the U.S. 17 U.S.C. 204(b)(1); 37 C.F.R. 201.4. Thus, to avoid this, Plaintiff waited to file the document with the Copyright Office until Ms. Lee was on American soil. Nothing sinister or untoward.

Finally, as explained in Section II.B.2 above, the Corrective Assignment was fully consistent with Plaintiff's copyright ownership and only sought to set forth the chain of title in one place. Contrary to GHM's protestations, such documents are both commonplace and effective to clean up any discrepancies in a chain of title. *See, e.g., Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 36 (2d Cir. 1982) (chain of title issue satisfied by copyright owner's later execution of writing which confirmed the agreement); *Esbin v. Zappier*, 2010 WL 391830 (S.D.N.Y. Feb. 4, 2010) (copyright owner validated earlier transfer of rights through later written agreement); *see also* 2 Patry on Copyright § 5:111 ("….virtually all courts permit written confirmation of an earlier oral agreement to transfer an exclusive right.") (*See also* Llewelyn Reply Dec., ¶ 7.)

### III. CONCLUSION

For the reasons set forth herein, in the memorandum of law in opposition to GHM's motion for summary judgment and in support its Plaintiff's cross-motion, and based on the supporting evidence submitted with both parties' motions, and the pleadings filed in this action, Plaintiff is entitled summary judgment that: (1) it is the owner of the copyrights in the Photographs and (2) that neither GHM nor the Hotels had an implied license to use or disseminate the Photographs to third parties or in any manner not authorized by Plaintiff.

Respectfully submitted.

Dated: May 6, 2016                  COBALT LLP

By:_/s/ Vijay K. Toke_____

Nate A. Garhart
Vijay K. Toke (Pro Hac Vice)
COBALT LLP
918 Parker Street, Bldg. A21
Berkeley, CA 94710
*Attorneys for Plaintiff*
*The Wave Studio, LLC*