UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
THE WAVE STUDIO, LLC,

                               Plaintiff,

                  -against-

GENERAL HOTEL MANAGEMENT LTD. *et al.*,

                            Defendants.
----------------------------------------------------------------x

                                      13-CV-9239 (CS)

                              **OPINION AND ORDER**

<u>Appearances</u>:

Vijay K. Toke
Nate A. Garhart
Cobalt LLP
Berkeley, California
*Counsel for Plaintiff*

Howard J. Schwartz
Abigail J. Remore
Ilana Levin
Chiesa Shahinian & Giantomasi PC
West Orange, New Jersey
*Counsel for Defendant*

<u>Seibel, J.</u>

       Before the Court are the Motion for Summary Judgment of Defendant General Hotel

Management, Ltd. ("GHM"), (Doc. 178), and the Cross-Motion for Summary Judgment of

Plaintiff The Wave Studio, LLC, (Doc. 186).  For the following reasons, Defendant's Motion is

GRANTED and Plaintiff's Cross-Motion is DENIED without prejudice.

**I.**    **<u>Background</u>**

A.    <u>Facts</u>

       The following facts, which are based on Defendant's Local Rule 56.1 Statement and

Plaintiff's Counter-Statement thereto, (Doc. 189 ("GHM 56.1 Stmt. & Resp.")), Plaintiff's Local

Rule 56.1 Statement and Defendant's Counter-Statement thereto, (Doc. 198 ("Wave Studio 56.1 Stmt. & Resp.")), and supporting materials, are undisputed except where noted.[1]

Lee Kar Yin, known as Junior Lee, is the principal of Plaintiff, The Wave Studio, LLC. (GHM 56.1 Stmt. & Resp. ¶ 1.)  Ms. Lee is a Malaysian citizen domiciled in Singapore.  (*Id.*) Plaintiff is organized under the laws of New York and has its principal place of business in White Plains.  (Lee Decl. ¶ 6.)[2]  Plaintiff was created in September 2011 to serve as a holding company for the enforcement of the United States copyrights at issue in this suit.  (Wave Studio 56.1 Stmt. & Resp. ¶¶ 12, 58.)  Plaintiff has never employed anyone that resides in the United States, nor has it ever leased or owned any office space in the United States (although, at one point, Plaintiff did use the office of its former lawyers "as an address").  (GHM 56.1 Stmt. & Resp. ¶¶ 13, 14.)[3]  Ms. Lee is or was also the principal of several other entities organized under

---

[1] Defendant purports to dispute numerous assertions in Plaintiff's Local 56.1 Statement with the following language: "Ms. Lee's sham declaration is not sufficient factual evidence to make this claim." (*See, e.g.*, Wave Studio 56.1 Stmt. & Resp. ¶ 39.)  "[T]he sham affidavit rule . . . prevents a party from submitting an affidavit that contradicts the party's prior deposition testimony in order to raise an issue of fact sufficient to preclude summary judgment." *Rus, Inc. v. Bay Indus., Inc.*, 322 F. Supp. 2d 302, 307 (S.D.N.Y. 2003).  To the extent Ms. Lee's affidavit contradicts her prior testimony, I will disregard it, but such contradictions do not make the entire affidavit a nullity.  *See Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 309-10 (E.D.N.Y. 2013) (considering defendant's declarations to extent no contradiction shown with prior deposition testimony where "Plaintiffs rely mostly on conclusory, unsubstantiated claims that the declarations are 'sham affidavits'"), *aff'd*, 578 F. App'x 51 (2d Cir. 2014); *Torrico v. Int'l Bus. Machines Corp.*, 319 F. Supp. 2d 390, 394 n.2 (S.D.N.Y. 2004) (considering declaration "to the extent it augments, without contradicting, [] deposition testimony, addresses issues not explored thoroughly in that deposition, or finds support in other evidence in the record" and noting "[t]he so called 'sham affidavit' rule does not apply in two situations:  first, where the subsequent sworn statement either does not actually contradict the affiant's prior testimony or addresses an issue that was not, or was not thoroughly, explored in the deposition, and second, where that testimony is contradicted by evidence other than the deponent's subsequent affidavit, for when such other evidence is available, the concern that the proffered issue of fact is a mere 'sham' is alleviated.") (internal quotation marks omitted).  Thus, I will consider undisputed those properly supported factual assertions by Plaintiff that Defendant has not contested either through a showing that they are based on portions of Ms. Lee's affidavit that contradict her testimony or through the citation of other evidence that undermines them.

[2] "Lee Decl." refers to the Declaration of Lee Kar Yin in Support of Plaintiff's Cross-Motion for Summary Judgment, (Doc. 190).

[3] Plaintiff's former law firm, Leason Ellis LLP, is located in White Plains and represented Plaintiff from the inception of this lawsuit on December 31, 2013 until April 22, 2015.  (*See* Docs. 1, 114.)  When Plaintiff was registered with the state of New York on September 1, 2011, it gave Leason Ellis's White Plains office as its address for receipt of process.  Entity Information for The Wave Studio, LLC, NYS DEP'T EDUC. DIV. OF CORPS., https://www.dos.ny.gov/corps/bus_entity_search.html (complete "Search Criteria" form by entering The Wave

the laws of Singapore including:  Wave-S, the Wave Pte. Ltd., the Wave Studio Pte. Ltd., and the Wave Design Pte. Ltd. (collectively the "Wave Entities").  (GHM 56.1 Stmt. & Resp. ¶ 3.)  The Wave Entities are all based in Singapore and allegedly created the photographs at issue in this suit.  (*Id.* ¶ 16.)[4]

Defendant GHM is organized under the laws of the British Virgin Islands and its principal place of business is in Singapore.  (*Id.* ¶ 15.)  GHM manages a small group of luxury hotels and resorts, primarily in Southeast Asia, (*id.* ¶ 4), and denies that it currently manages any hotels in the United States, (Wave Studio 56.1 Stmt. & Resp. ¶ 4).  Plaintiff maintains that GHM operates a sales office in New York City dedicated to building brand awareness and sales for GHM-managed properties, but GHM asserts that it merely contracts with a city-based sales representation office that cannot confirm reservations.  (*Id.* ¶ 13.)

Over a period of several years, the Wave Entities were commissioned to create marketing materials, including photographs, for hotels managed by GHM.  (GHM 56.1 Stmt. & Resp. ¶¶ 21, 22.)  None of the authors of the photographs at issue are citizens of the United States.  (*Id.* ¶ 11.)  The Wave Entities hired Masano Kawana in connection with the photographs at issue, but it is unclear whether he was in fact the photographer or just a factotum for Ms. Lee.  (*Id.* ¶¶ 28-29; Wave Studio 56.1 Stmt. & Resp. ¶ 27.)  Mr. Kawana is a citizen of Japan who apparently is based in Singapore.  (GHM 56.1 Stmt. & Resp. ¶ 11; Lee Decl. Ex. D; Remore Reply Decl. Ex. 7.)[5]  The relevant photographs were taken in Italy, India, Oman, Vietnam, Thailand, Malaysia,

---

Studio, LLC; then complete "Search Criteria" form again; then follow "The Wave Studio, LLC" hyperlink).  I thus infer that Leason Ellis attorneys were involved in forming Plaintiff.

[4] The parties refer to the Wave Entities and/or Ms. Lee somewhat interchangeably.  Because Ms. Lee is the principal of the Wave Entities which created the photographs at issue in this case, my references to the Wave Entities may be taken to include or refer to Ms. Lee as appropriate.

[5] "Remore Reply Decl." refers to the Declaration of Abigail J. Remore in Further Support of Defendant's Motion for Summary Judgment and in Opposition to Plaintiff's Cross-Motion for Summary Judgment, (Doc. 197).

Indonesia, Taiwan, Singapore, the Bahamas, and Florida, (GHM 56.1 Stmt. & Resp. ¶ 47), and were first published in Singapore, (*id.* ¶ 18).

There was no single master contract between GHM and the Wave Entities.  (*Id.* ¶ 23.) After a project was requested, the Wave Entities would submit a production estimate to the relevant hotel.  (*Id.* ¶ 24.)  At least some of the production estimates stated:  "We reserve the intellectual property copyright to all designs/soft copies/material/photographs/projects undertaken," and "We will proceed on the basis that this estimate is wholly acceptable unless advised to the contrary in writing before the work is undertaken."  (*Id.* ¶ 25; *see, e.g.*, Lee Decl. Ex. E, at GHM00003.)  Some of the production estimates were signed by the hotel and some were not.  (Wave Studio 56.1 Stmt. & Resp. ¶ 25.)  It is disputed whether the Wave Entities pointed out this language to any of the hotel general managers or to Ralf Ohletz Graf von Plettenburg ("Mr. Ohletz"), Vice President of GHM.  (GHM 56.1 Stmt. & Resp. ¶ 26; Wave Studio 56.1 Stmt. & Resp. ¶ 26; Remore Decl. Ex. E.)[6]  It is further disputed whether the Wave Entities advised Mr. Ohletz, Hans Jenni, the President and founder of GHM, or Kendall Oei, Director of GHM, that there was any limit on the ways the hotels could use the photographs at issue, (*see, e.g.*, GHM 56.1 Stmt. & Resp. ¶¶ 30, 35), or that the Wave Entities believed they owned any of the photographs or other works created for GHM, (*see, e.g.*, *id.* ¶¶ 30, 31, 43).

After each photo shoot, the Wave Entities would provide edited images to the respective hotels on a CD-ROM.  (Wave Studio 56.1 Stmt. & Resp. ¶ 31.)  The final edited photographs did not contain any markings indicating that the images could not be used without the authorization of the Wave Entities.  (GHM 56.1 Stmt. & Resp. ¶ 40.)  The hotels paid the Wave Entities

---

[6] "Remore Decl." refers to the Declaration of Abigail J. Remore in Support of Defendant's Motion for Summary Judgment, (Doc. 182).

directly upon completion of a project. (*Id.* ¶ 27.) The Wave Entities did not separately invoice GHM or the hotels for individual license fees for the photographs used in the marketing materials they ordered. (*Id.* ¶ 42.)

The Wave Entities did not notify Defendant that they objected to particular uses of the photographs on GHM's website until commencing this lawsuit, but Ms. Lee alleges she brought to the attention of Mr. Jenni of GHM that the Nam Hai hotel was using her work without authorization. (*Id.* ¶¶ 43-45.) As early as 2006, the Wave Entities were aware that GHM provided some of its photographs to third parties, including *Interior Design Magazine*, *Conde Nast Traveler*, and American Airlines. (*Id.* ¶ 46.) Plaintiff asserts that the Wave Entities authorized these uses because Ms. Lee believed them to be limited. (*Id.*)

At some point after GHM and the Wave Entities stopped working together, GHM began using Plaintiff's photographs on a new website and some of Plaintiff's photographs were disseminated to third parties. (Wave Studio 56.1 Stmt. & Resp. ¶¶ 41, 42.)

At the center of this case are seventeen copyrights, registered between December 28, 2010 and February 18, 2011, covering 3000 photographs created by the Wave Entities between 2001 and 2005. (GHM 56.1 Stmt. & Resp. ¶¶ 48-59.)[7] The Wave Entities are listed as the copyright claimants and authors on the Copyright Registrations. (*Id.* ¶ 17.) Plaintiff alleges that all right, title, and interest in and to the Copyright Registrations was assigned to it on November 11, 2011. (*Id.* ¶ 10; Wave Studio 56.1 Stmt. & Resp. ¶ 15.) During the course of this litigation, Plaintiff learned that some of the copyright assignments were ineffective because they were made by entities that had been dissolved years before, and that others needed to be clarified.

---

[7] The seventeen copyrights are: VAu 1-055-458, VAu 1-055-459, VAu 1-057-927, VAu 1-060-180, VAu 1-060-182, VA 1-423-324, VA 1-432-325, VA 1-432-326, VA 1-432-327, VA 1-432-328, VA 1-432-329, VA 1-432-330, VA 1-432-331, VA 1-432-332, VA 1-432-336, VA 1-758-524, VA 1-765-854, (the "Copyright Registrations"). (*Id.* ¶ 48.)

(Wave Studio 56.1 Stmt. & Resp. ¶¶ 61-64.)  In an attempt to rectify these issues, on September 4, 2015, a document titled "Declaration of Lee Kar Yin and Nunc Pro Tun[c] Copyright Assignments to the Wave Studio," (the "2015 Declaration") was recorded in the United States Copyright Office.  (*Id.* ¶ 65; GHM 56.1 Stmt. & Resp. ¶ 85.)  At that same time, Plaintiff filed documents with the Copyright Office to correct registrations that listed an incorrect claimant. (Wave Studio 56.1 Stmt. & Resp. ¶¶ 68, 69.)

B.     Procedural Background

Plaintiff filed the original complaint in this action on December 31, 2013, (Doc. 1), and an Amended Complaint ("AC") on April 23, 2014, (Doc. 7), alleging copyright infringement on the part of GHM, fifty-eight other Defendants (generally, travel-related businesses that maintain websites), and unknown entities "Does 1 through 100," arising out of Defendants' unauthorized use of Plaintiff's photographs, (AC ¶¶ 4-69).  Plaintiff also filed eight additional suits in the Northern District of California naming twenty-one additional Defendants.  (GHM 56.1 Stmt. & Resp. ¶ 6.)  All but one of the Northern District of California suits were transferred to this Court and consolidated with the instant case.  (*Id.* ¶ 7.)  Soon after the AC was filed, GHM suggested that the Court stay the case as to all Defendants except GHM, and that Plaintiff and GHM first litigate the issue of GHM's right to use and disseminate the photographs.  (Doc. 50.)  Its theory was that a finding that GHM had such a right would be case-dispositive as to it and the vast majority of the other Defendants, who allegedly received the photographs from GHM.  (*Id.*)[8] Plaintiff consented, (Doc. 60), and the Court stayed the case as to all Defendants except GHM, (Doc. 67).  Plaintiff and GHM have each moved for summary judgment.

---

[8] Some Defendants have sought indemnity from GHM, each other, and/or hotels currently or formerly managed by GHM for photographs they received and used allegedly without Plaintiff's authorization.  (Wave Studio 56.1 Stmt. & Resp. ¶ 43.)

II.   **Legal Standard**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*  On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to "present evidence sufficient to satisfy every element of the claim."  *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."  *Anderson*, 477 U.S. at 252.  Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other

materials . . . ."  Fed. R. Civ. P. 56(c)(1).  Where an affidavit is used to support or oppose the

motion, it "must be made on personal knowledge, set out facts that would be admissible in

evidence, and show that the affiant . . . is competent to testify on the matters stated."  Fed. R.

Civ. P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d

Cir. 2008).  In the event that "a party fails . . . to properly address another party's assertion of

fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed

for purposes of the motion [or] grant summary judgment if the motion and supporting materials –

including the facts considered undisputed – show that the movant is entitled to it."  Fed. R. Civ.

P. 56(e)(2), (3).

III.  **Discussion**

Both sides seek summary judgment on various grounds, as to GHM's right, or lack

thereof, to use and disseminate the photographs at issue.  (*See, e.g.*, D's Mem. at 8-18, 23-39; P's

Mem. at 11-13, 22-40.)[9]  I need not address most of the issues raised by the parties (*e.g.*,

standing, personal jurisdiction, and implied license) because I am persuaded by GHM's

argument that I should dismiss Plaintiff's claims against it on the ground of *forum non*

*conveniens*.  *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425, 435-36

(2007) (court need not take up jurisdictional issues if it determines that *forum non conveniens*

dismissal is appropriate); *Doe v. Hyland Therapeutics Div.*, 807 F. Supp. 1117, 1133 (S.D.N.Y.

1992) ("Due to this Court's disposition of these cases on *forum non conveniens* grounds, the

question whether plaintiffs have standing to sue need not be reached."); *see also Carijano v.*

*Occidental Petroleum Corp.*, 643 F.3d 1216, 1227 (9th Cir. 2011) ("[T]he district court was not

---

[9] "D's Mem." refers to Defendant's Memorandum of Law in Support of its Motion for Summary Judgment, (Doc. 179); "P's Mem." refers to Plaintiff's Memorandum of Law in Support of its Cross-Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment, (Doc. 187).

required to decide the standing question before ruling on the *forum non conveniens* motion.")
(citing *Sinochem Int'l Co.*, 549 U.S. at 422).

A.    <u>*Forum Non Conveniens*</u>

"The principle of forum non conveniens is simply that a court may resist imposition upon
its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf
Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947). "[F]orum non conveniens [i]s, essentially, a
supervening venue provision, permitting displacement of the ordinary rules of venue when, in
light of certain conditions, the trial court thinks that jurisdiction ought to be declined." *Sinochem
Int'l Co.*, 549 U.S. at 429-30 (internal quotation marks omitted). "The decision to dismiss a case
on *forum non conveniens* grounds lies wholly within the broad discretion of the district court."
*Gundlach v. Int'l Bus. Machs. Corp.*, No. 11-CV-846, 2012 WL 1520919, at *12 (S.D.N.Y. May
1, 2012), *aff'd on other grounds*, 594 F. App'x 8 (2d Cir. 2014).

"Courts must determine and weigh three factors for *forum non conveniens* challenges:  (i)
the degree of deference due to the plaintiff[']s choice of forum; (ii) whether an adequate
alternative forum exists; and (iii) the balance of public and private interests implicated in the
choice of forum." *Guerrini v. Atmel Corp.*, No. 15-CV-2664, 2016 WL 3548238, at *2 (2d Cir.
June 27, 2016) (summary order) (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 70-74 (2d
Cir. 2001)). "[D]efendant bears the burden at steps two and three." *Erausquin v. Notz, Stucki
Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 724 (S.D.N.Y. 2011).

"A motion to dismiss on *forum non conveniens* grounds may be made at any time." *In re
Hellas Telecomms. (Luxembourg) II SCA*, 555 B.R. 323, 345 (Bankr. S.D.N.Y. 2016); *see
Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG*, 160 F. Supp. 2d 722, 742
(S.D.N.Y. 2001) ("[T]he case[]law seems to be clear that *forum non conveniens* motions are not
governed by the same time constraints imposed by Rule 12(h) of the Federal Rules of Civil

Procedure on personal jurisdiction and venue motions."); 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure [hereinafter Federal Practice and Procedure] § 3828 (4th ed. 2016) ("[T]here generally is no time limit on when a motion to dismiss for forum non conveniens must be made.").  "However, in evaluating whether a plaintiff's choice of forum was convenient, the court may consider the defendant's delay in bringing a motion to dismiss on the basis of *forum non conveniens*."  *In re Hellas Telecomms.*, 555 B.R. at 345; *see Genpharm Inc. v. Pliva-Lachema a.s.*, 361 F. Supp. 2d 49, 59 (E.D.N.Y. 2005) (no limit on when *forum non conveniens* motion may be made, but delay is factor in evaluating convenience of forum).

      *a.   Delay*

Plaintiff argues that Defendant's motion for summary judgment based on *forum non conveniens* should be denied because it comes more than two years after the case was initiated. (P's Mem. at 14.)  Defendant's delay in moving to dismiss on *forum non conveniens* grounds is understandable given that it may not have had concrete evidence of Plaintiff's lack of meaningful connections to New York until after engaging in discovery, including deposing Plaintiff's principal, Ms. Lee, on May 21, 2015 and September 9, 2015.  (*See* Remore Decl. Exs. C, D.) Further, as Defendant highlights, Plaintiff's own delay in substituting counsel "was so prolonged that the Court found it necessary to issue an Order to Show Cause why Plaintiff's prior counsel should not be relieved and warned Plaintiff that its case would be dismissed for failure to prosecute if it failed to substitute counsel."  (D's Reply at 29; *see* Docs. 96, 97, 102, 104.)[10]  In addition, in February 2015, GHM alerted Plaintiff in writing of the potential *forum non*

---

[10] "D's Reply" refers to Defendant's Reply Memorandum of Law in Support of its Motion for Summary Judgment and in Opposition to Plaintiff's Cross-Motion for Summary Judgment, (Doc. 195).

*conveniens* ground for dismissal, (Remore Reply Decl. Ex. 10), and in April 2015 GHM emailed

Plaintiff to confirm receipt of the February letter, (*id.* Ex. 11).  *See Rodriguez v. Orion*

*Schiffahrts-Gesellschaft Reith & Co.*, 348 F. Supp. 777, 779 (S.D.N.Y. 1972) (finding no

prejudice to plaintiff from defendant's delay in moving to dismiss on *forum non conveniens*

grounds where plaintiff's "counsel was advised soon after the commencement of the action that

defendant intended to move that the Court decline jurisdiction").  Therefore, while I take into

account that the case has been litigated here for some time in considering the relative

inconvenience of this forum, any delay by Defendant in bringing a motion on the basis of *forum*

*non conveniens* is not a ground for denying GHM's motion.

### b.  *Deference Due to Plaintiff's Choice of Forum*

Turning to the first factor in the *forum non conveniens* analysis, "the degree of deference

given to a plaintiff's forum choice varies with the circumstances."  *Iragorri*, 274 F.3d at 71

(citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981)).

> [T]he greater the plaintiff's or the lawsuit's bona fide connection to the United
> States and to the forum of choice and the more it appears that considerations of
> convenience favor the conduct of the lawsuit in the United States, the more difficult
> it will be to gain dismissal[,] whereas the more it appears that the plaintiff's choice
> of a U.S. forum was motivated by forum-shopping reasons[,] the less deference the
> plaintiff's choice commands.

*In re Optimal U.S. Litig.*, 837 F. Supp. 2d 244, 251 (S.D.N.Y. 2011) (alterations and internal

quotation marks omitted).  "[T]he choice of a United States forum by a foreign plaintiff is

entitled to less deference."  *Iragorri*, 274 F.3d at 71.  Similarly, "shell companies are not entitled

to the full measure of 'home forum' deference."  *RIGroup LLC v. Trefonisco Mgmt. Ltd.*, 949 F.

Supp. 2d 546, 552 (S.D.N.Y. 2013) (citation omitted), *aff'd*, 559 F. App'x 58 (2d Cir. 2014); *id*

("[C]ourts have held that deference to an American citizen or resident plaintiff's choice of forum

is significantly diminished where the lawsuit arises from business that the plaintiff conducted

abroad."); *Broad. Rights Int'l Corp. v. Societe du Tour de France, S.A.R.L.*, 675 F. Supp. 1439, 1446-47 (S.D.N.Y. 1987) ("[W]here the real party in interest is a foreigner and the plaintiff is a United States citizen solely by virtue of its place of incorporation, the plaintiff's choice of forum will carry considerably less weight.").

Plaintiff's principal, Ms. Lee, is a Malaysian citizen domiciled in Singapore, (GHM 56.1 Stmt. & Resp. ¶ 1), the Wave Entities are or were organized under the laws of Singapore, (*id.* ¶ 3), GHM has its principal place of business in Singapore, (*id.* ¶ 15), and the arrangements among them were no doubt centered there.  Plaintiff has never had any employees that reside in the United States or leased or owned any office space here.  (*Id.* ¶¶ 13, 14.)  Mr. Kawana, who worked for the Wave Entities in connection with the photographs created for GHM, is a citizen of Japan apparently based in Singapore.  (*Id.* ¶¶ 11, 28, 29; Lee Decl. Ex. D; Remore Reply Decl. Ex. 7.)  None of the photographs that Plaintiff asserts have been infringed in this action were taken in New York, (GHM 56.1 Stmt. & Resp. ¶ 47), and they were all first published in Singapore, (*id.* ¶ 18).  Plaintiff's only connection to New York is that it is organized under New York law, and it is obvious that that is the case only because the American attorney Ms. Lee originally hired to form Plaintiff and bring these lawsuits happened to have his office in White Plains.  (*See* GHM 56.1 Stmt. & Resp. ¶ 11; Lee Decl. ¶ 6; *see* supra note 3.)  I have no doubt that had Ms. Lee retained an attorney in Bismarck or Nashville, Plaintiff would have been organized under the laws of and brought suit in North Dakota or Tennessee.

Plaintiff does not deny its lack of connections to New York, and there is at least an element of forum shopping in its decision to file suit in this Court.  Plaintiff is admittedly a "holding company formed under New York law prior to the onset of this case and located within this District for the purpose of enforcing the copyrights" to the photographs at issue in this case.

(P's Mem. at 15; *see* Wave Studio 56.1 Stmt. & Resp. ¶¶ 12, 58.)  Although Plaintiff was formed

under New York law, its sole member is Ms. Lee, the real party in interest, who is a foreigner.

*See Broad. Rights Int'l Corp.*, 675 F. Supp. at 1446-47.  She testified at her deposition that

Plaintiff was formed in New York because "the justice system in [the] United States of America

is one of the best to protect the creative works of Wave."  (GHM 56.1 Stmt. & Resp. ¶ 1; Remore

Reply Decl. Ex. 1, at 18:23-19:6.)  Given the absence of meaningful connections between

Plaintiff and the Southern District of New York, and the evidence suggesting forum shopping,

Plaintiff's choice of forum is entitled to little deference.  *See RIGroup LLC*, 949 F. Supp. 2d at

552 ("[T]o the extent that RIGroup USA[, a holding company,] existed as a legal entity at all

during the events in question, its United States status provides no bona fide reason for the

plaintiffs to have sued in this Court, and its choice of this forum deserves little deference.")

(internal quotation marks omitted).[11]

### c. Adequacy of an Alternative Forum

Turning to the second factor in the analysis, "[GHM] bears the burden of establishing that

a presently available and adequate alternative forum exists."  *Abdullahi v. Pfizer, Inc.*, 562 F.3d

163, 189 (2d Cir. 2009).  "In the context of a motion to dismiss for *forum non conveniens,* a

foreign jurisdiction is not adequate unless it will permit [the plaintiff] to litigate the subject

matter of its dispute."  *Royal & Sun All. Ins. Co. of Can. v. Century Int'l Arms, Inc.*, 466 F.3d 88,

95 (2d Cir. 2006) (internal quotation marks omitted).  "[T]he forum non conveniens doctrine

demands that the alternate forum be adequate, not perfect, and not a mirror image of every

substantive and procedural right, remedy and protection potentially available to Plaintiffs' in the

---

[11] The Court does not question the legitimacy of forming a holding company to enforce copyright rights.  The point, however, is that Plaintiff here is a New York company only because that was convenient for former counsel, and that apart from that all-but-random connection, neither Plaintiff (which essentially exists only on paper) nor the instant controversy has any connection to this forum.

American forum of their choice."  *In re Alcon S'holder Litig.*, 719 F. Supp. 2d 263, 272

(S.D.N.Y. 2010); *see* 14D Federal Practice and Procedure § 3828.3 ("[I]t is not unusual for an

alternative forum to be considered adequate even though the federal judge knows that the

proposed tribunal will process the case quite differently, apply significantly different substantive

rules, and provide limited remedies.").

> American courts should be wary of branding other nations' judicial forums as
> deficient in the substance or procedures that their laws contain.  Such denunciations
> . . . risk imposing on our judicial system the burden of serving as courtroom to the
> world for the adjudication of essentially foreign disputes with only nominal
> connections with the United States.

*Corporacion Tim, S.A. v. Schumacher*, 418 F. Supp. 2d 529, 532-33 (S.D.N.Y. 2006), *aff'd*, 223

F. App'x 37 (2d Cir. 2007) (citation omitted).

The parties have submitted declarations from their proffered experts in Singapore law.

(*See* Lai Decl.; Llewelyn Decl.)[12]  Plaintiff's expert, Gordon Ionwy David Llewelyn, explains:

"Copyright is a statutory right in Singapore, which is a common law jurisdiction . . . whose laws

were influenced significantly by U.K." and, more recently, Australian law.  (Llewelyn Decl.

¶ 15.)  Both parties' experts explain that the Singapore Copyright Act governs copyright actions

in Singapore and analyze the facts of this case within that framework.  (*See, e.g.*, *id.* ¶¶ 16-19;

Lai Decl. ¶¶ 11-24.)  Based on a review of the experts' declarations, and the exhibits attached

thereto, (*see, e.g.*, Llewelyn Decl. Ex. 4; Lai Decl. Ex. 2), I am persuaded that Singapore

copyright law is well developed and that Plaintiff can adequately pursue its claims in Singapore.

"Plaintiff agrees Singapore has a sufficiently developed legal system . . . ."  (P's Mem. at 16; *see*

---

[12] "Lai Decl." refers to the Declaration of Dr. Stanley Lai in Support of Defendant's Motion for Summary Judgment,
(Doc. 180); "Llewelyn Decl." refers to the Declaration of Gordon Ionwy David Llewelyn in Support of Plaintiff's
Cross-Motion for Summary Judgment, (Doc. 191).

*also* P's Reply at 14 ("Plaintiff does not dispute that Singapore has an adequate legal system.")[13]
Further, as Defendant notes, "Plaintiff has already demonstrated its own confidence in Singapore
as an adequate alternative forum because it has previously sued GHM in Singapore as recently as
2010."  (D's Mem. at 21; *see* Remore Decl. Ex. C, at 206:4-25.)

Courts decline to find an alternative forum adequate where there are procedural barriers
to bringing a case in that alternative forum.  *See, e.g.*, *Paisola v. GAP Adventures, Inc.*, No. 10-
CV-8920, 2012 WL 1019585, at *2-4 (S.D.N.Y. Mar. 26, 2012) (adopting report and
recommendation finding that no adequate alternative forum existed because claim would be
time-barred under Canadian law).  Neither party has suggested that any such procedural barriers
exist to Plaintiff bringing its claims against GHM, and having them fairly adjudicated, in
Singapore.  In addition, GHM is headquartered in Singapore and is amenable to service there.
(Remore Reply Decl. Ex. 10, at 6.)[14]  Accordingly, I find that Singapore is an adequate
alternative forum.  *See Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 704 (9th Cir.
1995) (affirming district court determination "that the High Court of Singapore is an adequate
alternative forum in which to adjudicate [plaintiff's] United States copyright infringement
claim"); *see also Schijndel v. Boeing Co.*, 263 F. App'x 555, 557 (9th Cir. 2008) (affirming
district court's determination that Singapore was an adequate alternative forum); *Anwar v.
Fairfield Greenwich Ltd.*, 742 F. Supp. 2d 367, 377 (S.D.N.Y. 2010) (Singapore is an adequate
alternative forum).

---

[13] "P's Reply" refers to Plaintiff's Reply Memorandum of Law in Support of its Cross-Motion for Summary
Judgment, (Doc. 200).

[14] Plaintiff focuses much of its opposition on Defendants other than GHM who may not be subject to service of
process in Singapore.  (P's Mem. at 16-17.)  As discussed further below, I need only analyze whether Singapore is
an adequate alternative venue for Plaintiff's claims against GHM.

### d. Balance of Private and Public Interests in the Choice Forum

Having determined that Singapore is an adequate alternative forum, this Court "must proceed to balance public and private interests to determine whether the convenience of the parties and the ends of justice would best be served by dismissing the action." *Murray v. British Broad. Corp.*, 81 F.3d 287, 293 (2d Cir. 1996).

> The private interests to be considered include: the interests of the litigants in having the case tried in a particular forum; the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and, all other practical problems that make trial of a case easy, expeditious and inexpensive. Public interest factors include: court congestion; the interest of forums in having local disputes decided at home; and, the interest in having issues of law decided by courts of the nation whose law is involved.

*Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004) (citation omitted).

The Wave Entities and GHM are or were located in Singapore and all of the Wave Entities are or were incorporated there. (GHM 56.1 Stmt. & Resp. ¶¶ 15, 16.) Ms. Lee has stated that "[w]hile Wave Studio maintains an office in White Plains, New York, all relevant documents and knowledge are in [her] possession in Singapore." (Remore Decl. Ex. T, at ¶ 3.) New York is not even a convenient forum for Plaintiff. Ms. Lee, resides "full-time in Singapore" and travel to New York is expensive and inconvenient for her. (*Id.* Ex. T ¶ 4) ("Travel to San Francisco [would be] far more convenient and considerably less expensive . . . than travel to New York.") The same is true for GHM, which has its principal place of business in Singapore. (GHM 56.1 Stmt. & Resp. ¶ 15.)

With respect to obtaining the attendance of witnesses, Defendant has shown that there are no witnesses located in or even near this forum, and that virtually all witnesses – such as the photographer who worked with Ms. Lee, the accountant who prepared assignments and other

corporate documents for her, and the hotel managers who worked with her (assuming they are still located where the hotels are) – would find Singapore more convenient.  (*Id.* ¶¶ 4, 11; 15; 28; Lee Decl. Ex. D; Remore Decl. Ex. C, at 188:1-3; Remore Reply Decl. Ex. 7.)  Plaintiff, in contrast, has not provided any names of individuals who would be inconvenienced if this case were to proceed in Singapore.  Along these same lines, Plaintiff has not identified anyone located in New York, or even in the United States, whose testimony would be relevant and helpful to proving its claims against GHM.[15]  Therefore, the private interests weigh in favor of dismissal.

Turning to the public interest in adjudicating this case in this Court, the Southern District of New York "is one of the busiest in the country, making it a paradigmatic congested center of litigation," *Tel. Sys. Int'l Inc. v. Network Telecom PLC*, 303 F. Supp. 2d 377, 384 (S.D.N.Y. 2003) (internal quotation marks omitted), but neither side has provided information regarding the speed with which this case could be resolved in Singapore.  Therefore, "[c]ourt congestion is not a significant factor."  *Giro, Inc. v. Berhad*, No. 10-CV-5550, 2011 WL 2183171, at *9 (S.D.N.Y. June 3, 2011) (court congestion not a significant factor where "there is no indication that courts in the United Kingdom or Malaysia would provide a less expeditious forum than this Court").

As discussed above, there is no local interest in this case given that all of the relevant photographs were taken abroad (with the exception of Florida) and first published in Singapore, and presumably all of the relevant agreements were formed there.  (GHM 56.1 Stmt. & Resp. ¶¶ 18, 47.)  That Plaintiff's former attorney was based in New York and Plaintiff was formed as a holding company here is not sufficient to give rise to a local interest in this case.  *See Alamir v. Callen*, 750 F. Supp. 2d 465, 468 (S.D.N.Y. 2010) (dismissing on *forum non conveniens* grounds

---

[15] Indeed, the only individual involved in this controversy with any connection to New York is Plaintiff's former attorney, and he is now out of the case.

where "there is no local interest in having this controversy litigated here.  This is a claim by a French citizen against a domiciliary of Puerto Rico with respect to a prenuptial agreement signed in France in anticipation of a French wedding.  The burdens upon our courts and jurors are sufficient without reaching out to adjudicate disputes related to French marriages, even where the parties for some reason have agreed to New York governing law clauses."); *Tel. Sys. Int'l*, 303 F. Supp. 2d at 384 (dismissing on *forum non conveniens* grounds where "[t]here is no local interest in deciding a dispute over a relationship formed in the United Kingdom, invoices billed in the United Kingdom, and services that were performed by a British company in Afghanistan," given that "nearly all of the material fact witnesses are located in the United Kingdom"); *see also Creative Tech.*, 61 F.3d at 704 ("This is not a case involving the piracy of American made [work] or substantively involving American companies.  As such, the United States' interest in resolving this controversy and the relation of the jury community to this controversy are extremely attenuated and do not sway the balance against dismissal.").  Claims with such "a tenuous connection to this forum . . . do not justify the significant administrative costs that stand to be levied upon this Court, or the burden of jury duty expected to be thrust upon a community substantially distanced from the controversy."  *Tel. Sys. Int'l*, 303 F. Supp. 2d at 384 (internal quotation marks omitted).

The final public interest factor to consider is "the interest in having issues of law decided by courts of the nation whose law is involved."  *Carey*, 370 F.3d at 237.

> Under Second Circuit law, international copyrights are subject to a bifurcated choice of law analysis.  When determining the initial owner of a copyright, a court must look to the law of the country in which the work originated.  However, the scope of the rights that attend copyright ownership is determined by the country in which the copyright is to be enforced.  This is also known as the "national treatment" principle.

*Van Cleef & Arpels Logistics, S.A. v. Landau Jewelry*, 583 F. Supp. 2d 461, 463 (S.D.N.Y.

2008).  Ownership here is likely to be a matter of Singapore Law.  *See Itar-Tass Russian News*

*Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 90-91 (2d Cir. 1998) (ownership determined by law

of state with most significant relationship, as determined by such factors as nationality of authors

and place of first publication).  "While the Court need not definitively resolve the choice of law

issue at this point, the likelihood that foreign law will apply weighs against retention of the

action."  *Ioannides v. Marika Mar. Corp.*, 928 F. Supp. 374, 379 (S.D.N.Y. 1996); *see Tel. Sys.*

*Int'l*, 303 F. Supp. 2d at 384 ("[W]ithout engaging in a full conflict of laws analysis, this Court

finds that there is at least some likelihood that this Court, if it retained the case, would be obliged

to apply English law to a part or to the entire case, a factor that cuts to some degree in

defendants' favor.") (alterations and internal quotation marks omitted).

 Accordingly, the balance of private and public interests weighs in favor of dismissing

Plaintiff's claims against GHM on *forum non conveniens* grounds.

 The first factor – Plaintiff's choice of forum – provides scant support for retaining the

case, and Defendant has demonstrated that the second and third factors militate strongly in favor

of dismissal of Plaintiff's claims against it.  The remaining issue is whether the claims against

the stayed Defendants should prevent a *forum non conveniens* dismissal of the claims against

GHM.

B. <u>Severance and Stay of Related Proceedings</u>

 Federal Rule of Civil Procedure 21 provides that, "on [a] motion or on its own, [a] court

may . . . sever any claim against a party."  Fed. R. Civ. P. 21.  "The decision whether to grant a

severance motion is committed to the sound discretion of the trial court."  *State of N.Y. v.*

*Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (2d Cir. 1988).  "Severed claims become entirely

independent actions to be tried, and judgment entered thereon, independent." *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 502 (S.D.N.Y. 2013) (alteration and internal quotation marks omitted).

> Courts in this Circuit consider the following factors in determining if severance is appropriate:  (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

*Id.* at 502-03.  "Severance requires the presence of only one of these conditions." *Cestone v. Gen. Civer Holdings, Inc.*, No. 00-CV-3686, 2002 WL 424654, at *2 (S.D.N.Y. Mar. 18, 2002). "Courts have cautioned, however, that severance is a procedural device to be employed only in exceptional circumstances." *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 160 (S.D.N.Y. 2009) (alteration and internal quotation marks omitted).

"[T]his Court has broad discretion to sever [Plaintiff's] claims against [GHM] and may do so for a wide variety of reasons," even if "there exist some common question[s] of law and fact" with Plaintiff's claims against other Defendants.  *Erausquin*, 806 F. Supp. 2d at 722.  The Second Circuit "has never required claims to be litigated together on that basis alone.  *Id.*  In particular, courts may exercise their discretion to sever claims to facilitate dismissal on *forum non conveniens* grounds or a transfer of venue.  *See Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968) ("[W]here the administration of justice would be materially advanced by severance and transfer, a district court may properly sever the claims against one or more defendants for the purpose of permitting the transfer of the action against the other defendants, at least in cases where, as here, the defendants as to whom venue would not be proper in the transferee district are alleged to be only indirectly connected to the manipulations which form the main subject matter of the action."); *Erausquin*, 806 F. Supp. 2d at 724 (severing claims against

a particular defendant "largely to facilitate a forum non conveniens dismissal"); *Blum v. Gen. Elec. Co.*, 547 F. Supp. 2d 717, 736-37 (W.D. Tex. 2008) ("[W]ith respect to all other Plaintiffs of German nationality, the Court is convinced that it is in the interest of convenience for the parties for the Court to sever their claims pursuant to Rule 21, and dismiss them pursuant to the doctrine of forum non conveniens.").

In this case, severance is in the interest of judicial economy.  All parties agreed to a stay of Plaintiff's claims against all Defendants but GHM, recognizing that whether or not GHM infringed any of Plaintiff's alleged copyrights will inform the resolution of Plaintiff's claims against the other Defendants who allegedly received Plaintiff's photographs from GHM.  That issue can, for the reasons discussed earlier, be resolved more appropriately and less expensively in Singapore.  Further, to the extent it is resolved in Plaintiff's favor, the remaining claims will involve different witnesses and documents.

Accordingly, Plaintiff's claims against GHM are hereby severed to facilitate dismissal of Plaintiff's claims against GHM on *forum non conveniens* grounds.  Plaintiff's claims against Defendants other than GHM, as well as any cross-claims against GHM, will continue to be stayed pending the resolution of the case between Plaintiff and GHM in Singapore.  *See* Restatement (Second) of Conflict of Laws § 86 cmt. b (1971) ("While the pendency of a foreign action is not a bar to the maintenance of an action in the state of the forum, it may induce the court to grant a stay of the latter action . . . pending the outcome of the first."); *cf. In re Hellas Telecomms.*, 555 B.R. at 342 ("[I]n the context of a *forum non conveniens* dismissal of the named Defendants, the Court could *sua sponte* sever the claims against members of the putative class – and then stay the claims pending the U.K. court's decision.").

**IV.**   <u>**Conclusion**</u>

For the reasons stated above, GHM's Motion for Summary Judgment on Plaintiff's claims against it, (Doc. 178), is GRANTED, and Plaintiff's claims against GHM are dismissed on *forum non conveniens* grounds.  Plaintiff's Cross-Motion for Summary Judgment, (Doc. 186), is DENIED without prejudice.  Plaintiff's claims against the remaining Defendants, and any cross-claims among the Defendants, continue to be stayed in this Court.  Plaintiff and GHM are directed to provide this Court with a status update every three months.  The Clerk of Court is directed to terminate the pending Motions, (Docs. 178, 185, 186, 194).[16]

**SO ORDERED.**

Dated:  March 10, 2017
        White Plains, New York

_____
        CATHY SEIBEL, U.S.D.J.

---

[16] The parties requested oral argument, (Docs. 185, 194), but I do not find it necessary.