```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2
    --------------------------------------x
 3  THE WAVE STUDIO, LLC,

 4                            Plaintiff,

 5                                    13 CV 09239(CS)
        -vs-
 6
    GENERAL HOTEL MANAGEMENT LTD., et al.,
 7
                            Defendants.
 8
    --------------------------------------x
 9
                            United States Courthouse
10                          White Plains, New York

11                          November 29, 2023

12
    Before:  THE HONORABLE CATHY SEIBEL, District Judge
13

14  A P P E A R A N C E S :

15  ROBINS KAPLAN, LLP
        Attorneys for Plaintiff
16      2121 Avenue of the Stars
        Suite 2800
17      Los Angeles, California 90067
    ROMAN M. SILBEFELD
18  GABRIEL BERG

19
    CHIESA, SHAHINIAN & GIANTOMASI, P.C.
20      Attorneys for Defendant, General Hotel Management Ltd
        105 Eisenhower Parkway
21      Roseland, New Jersey 07068
    ABIGAIL J. REMORE
22
    CLAUSEN MILLER, PC
23      Attorneys for Defendant, VFM Leonardo, Inc., et al.
        1 Chase Manhattan Plaza
24      New York, New York 10005
    MATTHEW J. VAN DUSEN
25
```

```
 1  A P P E A R A N C E S:  (CONT.)

 2  STRIKOWSKY, DRACHMAN & SHAPIRO, PLLC
         Attorneys for Defendant, Delta Airlines
 3       111 Broadway
         Suite 1103
 4       New York, New York 10006
    SIM R. SHAPIRO
 5
    MORGAN LEWIS & BOCKIUS, LLP
 6       Attorneys for Defendant, Kayak Software Corporation, et al.
         One Market, Spear Street Tower
 7       San Francisco, California 94105
    CARLA B. OAKLEY
 8
    GOLDBERG SEGALLA, LLP
 9       Attorneys for Defendant, Setai Owners, LLC
         665 Main Street
10       Buffalo, New York 14203
    MATTHEW S. TROKENHEIM
11

12  WEITZMAN LAW OFFICES, LLC
         Attorneys for Defendant, Signature Travel Network, et al.
13       425 Eagle Rock Avenue
         Suite 102
14       Roseland, New Jersey 07068
    KENNETH S. WEITZMAN
15
    NELSON MULLINS
16       Attorneys for Defendant, Emergent Travel, Inc.
         330 Madison Avenue
17       27th Floor
         New York, New York 10017
18  JOHN BAUER

19  FOLEY & LARDNER, LLP
         Attorneys for Defendant, Citibank
20       777 East Wisconsin Avenue
         Milwaukee, Wisconsin 53202
21  KIMBERLY K. DODD
    ROMA PATEL
22
    BRINKS GILSON & LIONE
23       Attorneys for Defendant, American Airlines, Inc.
         455 North Cityfront Plaza Drive
24       Chicago, Illinois 60611
    ANDREW S. McELLIGOTT (Via telephone)
25
```

```
 1  A P P E A R A N C E S:  (CONT.)

 2  DAVIS WRIGHT TREMAINE LLP
         Attorneys for Defendant, United Airlines, Inc., et al.
 3       1633 Broadway
         New York, New York 10019
 4  JAMES E. ROSENFELD (Via telephone)

 5  McCARTER & ENGLISH, LLP
         Attorneys for Defendant, Joe Mazzarella
 6       CityPlace I
         185 Asylum Street
 7       36th Floor
         Hartford, Connecticut 06103
 8  THOMAS J. FINN (Via telephone)

 9  LEWIS ROCA ROTHGERBER, LLP
         Attorneys for Defendant, Visa, Inc.
10       3993 Howard Hughes Parkway
         Suite 600
11       Las Vegas, Nevada 89169
    MICHAEL J. McCUE (Via telephone)
12
    FENWICK & WEST, LLP
13       Attorneys for Defendant, Travix Travel USA, Inc.
         555 California, 12th Floor
14       San Francisco, California 94104
    TODD R. GREGORIAN (Via telephone)
15
    ERICA HOLLAND (Via telephone)
16       Attorneys for Defendant, American Express

17  ERIC FERRANTE (Via telephone)
         Attorneys for Defendant, Cafe Pacific
18
    ALSO PRESENT:
19
    ANNA MENKOVA, POLLOCK COHEN, P.C.
20

21

22

23

24

25
```

1          THE DEPUTY CLERK:  The Honorable Cathy Seibel

2   presiding.  Wave Studio v. General Hotel Management.

3          THE COURT:  Good morning, everyone.  Everyone can have

4   a seat.

5          Let me ask counsel for their experiences.

6          MR. SILBERFELD:  Good morning, Your Honor.  Roman

7   Silberfeld for the plaintiff.

8          THE COURT:  Good morning.

9          MR. BERG:  Gabriel Berg for the plaintiff.

10         THE COURT:  Good morning.

11         MS. PATEL:  Roma Patel for the defendant Citibank.

12         MS. DODD:  Good morning, Your Honor.  Kimberly Dodd

13   for Citibank.  I am not admitted yet.  To the extent Citibank

14   talks, I respectfully allow you to make -- allow me to make an

15   oral motion for *pro hac vice*.

16         THE COURT:  I will admit you for today as long as you

17   take care of that promptly.

18         MS. DODD:  Thank you, Your Honor.

19         THE COURT:  All right.

20         MR. SHAPIRO:  Good morning, Your Honor.  Sim Shapiro

21   from the law office of Strikowsky, Drachman & Shapiro, incoming

22   counsel for Delta.  We are awaiting an executed consent to

23   change attorney.

24         THE COURT:  Okay.

25         MS. REMORE:  Good morning, Your Honor.  Abigail Remore

1  from Chiesa, Shahinian & Giantomasi for defendant General Hotel

2  Management.

3            THE COURT:  Good morning.

4            MR. WEITZMAN:  Good morning, Your Honor.  Kenneth

5  Weitzman, law firm of Weitzman Law Offices on behalf of

6  defendants Signature Travel Network, Frosh International, and

7  Tzell Travel.

8            THE COURT:  Good morning.

9            MR. TROKENHEIM:  Good morning, Your Honor.  Matt

10 Trokenheim of the law firm Goldberg Segalla for defendant Setai

11 Owners LLC.  Good morning.

12           THE COURT:  Good morning.

13           MS. OAKLEY:  Good morning, Your Honor.  Carla Oakley

14 with Morgan Lewis representing defendants Getaroom.com, Kayak

15 Software Corporation, Priceline.com, Hotels Combined, AGIP LLC,

16 Agoda Company, Booking Holdings, Booking.com, Booking.com B.V.,

17 Momondo A/S, and Rocket Travel, and lastly Southwest Airlines.

18           THE COURT:  Good morning.

19           MR. VAN DUSEN:  Good morning, Your Honor.  Matthew Van

20 Dusen from Clausen Miller, P.C.  The first defendant we have is

21 VFM Leonardo, Incorporated.  We have 35 other defendants set

22 forth in our letter, Document 302.  I don't know if the Court

23 needs me to read every one of them.

24           THE COURT:  I don't think it's necessary.  We will --

25 you have incorporated your clients by reference, so thank you.

1              MR. BAUER:  Good morning, Your Honor.  John Bauer from

2    Nelson Mullins, represent Emergent Travel, Inc.

3              THE COURT:  All right.  And I understand we have on

4    the phone Thomas Finn, Andrew McElligott, Michael McCue, Erica

5    Holland, James Rosenfeld, Eric Ferrante and Todd Gregorian.

6              Is there anyone on the phone who I missed?  All right.

7    That's a good sign.

8              Well, I guess it's nice to have you back after all of

9    these years?  And I want to thank plaintiff's side for sending

10   that chart because we were about to reinvent that wheel, and it

11   looks to me that the issues raised in defendants' letters don't

12   really go so much to whether I should be lifting the stay, but

13   what should happen next in the case.

14             And I guess it would be helpful to hear from you,

15   Mr. Silberfeld or Mr. Berg.  The defense is under the impression

16   that the photographs that were at issue in the Singapore

17   litigation are not 100 percent of the photographs that are at

18   issue in this case and related cases; and if they are right

19   about that, how are we going to figure out the difference?  It

20   was not apparent from the Hong Kong decisions.

21             MR. BERG:  Berg, Gabriel.  Thank you for the question,

22   Your Honor.  A couple of responses to it:  One, as you already

23   intimated, we don't think that impacts lifting the stay.  Let's

24   start with that, but what we can say is that discovery will take

25   care of that question very quickly because, first of all, GHM

112923.2                    Proceedings

1  has all of the photographs that were at issue in the Singapore

2  case.  We are in the process, because we are new counsel, of

3  obtaining all of those photographs.  We can identify infringing

4  photographs for every defendant named.  We can't identify yet

5  all of them.  It's a very unusual circumstance in that these

6  photographs were disseminated all over the world to marketing

7  partners, to advertising partners, and they just kept getting

8  sent around the world.

9          So I'm not sure we will ever get them all, but the

10  answer to the question that the defendants were posing is

11  actually the opposite of what they were saying to Your Honor

12  when they obtained the stay.  Not 100 percent of the

13  photographs, but each of them identified many, many photographs

14  that they knew and hoped would be part of GHM's dissemination

15  when -- before the decision was made.

16          THE COURT:  Well, they were hoping, knowing that GHM

17  was the choke point, that the Singapore court would say

18  plaintiffs have no right to these photos and that the whole case

19  would crumble.  Now that the opposite has happened, it seems to

20  me -- I mean, I am inferring that even you, as you are standing

21  here today, aren't in a position to say in any one of your dozen

22  or so complaints, the photos that are attached to this complaint

23  are -- were or were not covered by the Singapore ruling.

24          MR. BERG:  Well, we can say -- we can't say that a

25  hundred percent completely; that's right.  We can say that about

112923.2                         Proceedings

1   probably 90 percent of what was at issue in the GHM case in
2   Singapore.  What we don't know, Your Honor, frankly, is how
3   these photographs got disseminated, whether they all were
4   disseminated by GHM.  We just don't know that yet, and that is
5   what we are hoping to learn in discovery, and we would learn
6   naturally in discovery.

7          THE COURT:  Let me ask defense counsel a question.  I
8   don't know who wants to take the lead, but, Ms. Remore, you are
9   number one, the earliest filed case.  So let me ask you.  And I
10  know your client settled with plaintiff as to the photos that
11  were at issue in Singapore.  The fact that you are still sitting
12  here suggests to me that you think there are additional photos
13  at issue in this case that are not covered by the settlement.

14         MS. REMORE:  Thank you, Your Honor.

15         There's two reasons why I am sitting here today.  One
16  is that Your Honor in the summary judgment decision in 2017 or
17  2018 dismissed only plaintiff's claims against GHM, but no
18  cross-claims amongst the parties, and I believe there is still
19  one pending cross-claim from Mr. Shapiro's client.

20         We in the context of discovery prior to the summary
21  judgment motion tried to, as much as possible, get information
22  from plaintiff's counsel at the time regarding the scope of the
23  photographs, who used what, and were not able to obtain any of
24  that.  So all of the information that I have with respect to the
25  scope of the photographs that are at issue in all of these cases

112923.2                        Proceedings

1  comes from effectively me looking through every copyright

2  registration certificate and writing down the numbers of the

3  photographs and trying to -- and the names of the hotel and

4  trying to figure them out.

5       I do have information I just -- I do have information

6  from the appendix to the Singapore decision about the photo

7  shoots that were at issue in the Singapore action.  Those

8  numbers don't match up with the numbers that I put together as

9  best I could, and so that's where the belief, my understanding,

10 comes from; that there is some lack of overlap one way or the

11 other, and so based on the review of the photo shoots and the

12 copyright registrations, it looks like there might be some photo

13 shoots that maybe were covered in the Singapore action but not

14 in the U.S., and maybe some photo shoots that were covered by

15 the U.S. action, but not by Singapore.  It's just entirely at

16 this point unclear.  So --

17      THE COURT:  Well, I understand why it's important for

18 your client to know that because if it turns out that every

19 photograph at issue in this case was covered by your settlement,

20 then at least then you're only dealing with the cross-claims.

21      But for the other defendants -- and I don't know who

22 wants to answer this -- why does it matter to you which photos

23 were at issue in Singapore?

24      MR. VAN DUSEN:  Your Honor, Van Dusen.

25      Well, if some of the images were not covered, then

1  there may have been different ways they obtained the

2  photographs, and maybe some of them they did have the rights to.

3  The Court over there hasn't decided it because it's not a

4  defined list that matches one to one.  So there could be --

5           THE COURT:  But you are -- are you suggesting that you

6  are bound by what happened in Singapore?

7           MR. VAN DUSEN:  Well, if they had the rights to them

8  there.  We don't really know because, see, we have always

9  understood they were going to be litigated to these pictures,

10 but it looks like they didn't.  It looks likes there's some --

11 as counsel just said a minute ago -- some of them are -- are in

12 this case, and some of them are only in the other case.

13          THE COURT:  Let's say there is a photograph on which

14 your client is being sued, and the court in Singapore found in

15 the GHM litigation that plaintiff is the copyright holder.  Does

16 that mean you can't -- feel like you can't argue differently in

17 this case?

18          MR. VAN DUSEN:  No.

19          THE COURT:  So that's why I guess I am not really

20 understanding.  If your position is that what happened in

21 Singapore is not binding on you, then what difference does it

22 make which pictures were involved in Singapore?

23          MR. VAN DUSEN:  We are not saying that, Your Honor.

24 We are saying that there could be pictures that were not

25 litigated there that they did have the rights to.  That's the

1  problem.  We don't know how they --

2          THE COURT:  That's what we are going to duke out in

3  this case.

4          MR. VAN DUSEN:  Yes.

5          THE COURT:  So why -- what difference does it -- we

6  are going to duke that out with respect to every picture in this

7  case, right?  The Singapore court says -- let's just make it

8  easy.  There is a thousand pictures at issue.  The Singapore

9  court has said 900 of them plaintiff had the right to.  If that

10  decision is not binding on you, we are litigating all thousand

11  in this court, so what difference does it make which 900 the

12  Singapore court was talking about?

13          MR. VAN DUSEN:  If there were some that they did have

14  the rights to, it does make a difference.

15          THE COURT:  Right.  But the Singapore court has said

16  that they have the rights to the 900, but you are saying that's

17  not binding on you.

18          MR. VAN DUSEN:  No.

19          THE COURT:  So why do you need to know which 900 the

20  Singapore court was referring to?

21          MR. VAN DUSEN:  Because we weren't involved in that

22  case.  We don't know if there were certain pictures that were

23  obtained from GHM that the Court would have ruled a different

24  way.

25          We don't know how exactly GHM and Ms. Lee negotiated.

1  We don't have any understanding of how they -- what the contract

2  said and what they did, and that's -- we are just sitting here

3  blindly right now, and that case went on for years without us.

4        THE COURT:  Let me try to get at it a different way

5  because I am not understanding, and maybe it's my fault.

6        What would you do different if you knew which 900 out

7  of the thousand photos were at issue in Singapore?

8        MR. VAN DUSEN:  Well, it would assist in our potential

9  forthcoming cross-claims.  That's one thing.

10       THE COURT:  Because?

11       MR. VAN DUSEN:  Because if the images came to my

12 client and my -- my first client, VFM, they produce a feed, Your

13 Honor.  Let me just explain that real quick.  So we get the

14 images from, say, GHM or leading hotels of the world or things

15 up the line.  We put them in a feed, and then they are

16 distributed out almost like a utility.  Like so when they are

17 distributed, we don't -- we don't obtain the images.  They are

18 all from GHM.  So we need to know exactly if they had the rights

19 to certain ones or not because it affects our claims against

20 them down the line.  So I guess --

21       THE COURT:  I understand you need to know whether GHM

22 had the rights to them.  That part I get.  But if you're saying

23 that the Singapore litigation sheds no light on that because you

24 are not be bound by what the Singapore court decided --

25       MR. VAN DUSEN:  We are just afraid the Singapore court

1  did not decide all the images.  We are not saying what they

2  decided was not right or wrong.  It's just that we don't know

3  that all of the images were actually considered.

4        THE COURT:  So I am sorry I am being stupid, but I am

5  not understanding your argument.  If your view is that what

6  happened in Singapore is not binding on you, it's not binding on

7  me; it's not relevant, then we have a litigation here over all

8  1,000 photos.  And in that event, what difference does it make

9  which 900 the Singapore court ruled on?  You are not accepting

10 their ruling.  You're not bound by their ruling.  So why do you

11 need to know?  We're starting at square one on all 1,000 here.

12 And I am not saying that's correct, but I just -- I think that's

13 your position.  So I'm not understanding why if the Singapore

14 court says plaintiff has the right to 900, and you say that's

15 irrelevant, why do you need to know which 900?

16        MR. VAN DUSEN:  I'm not saying it's irrelevant.  I'm

17 saying we need to know if there is other ones that were not part

18 of the decision there.

19        THE COURT:  And what does the information -- what are

20 you doing with that information?  The hypothetical I am asking

21 you to assume is that there are a thousand photographs at issue

22 in this group of cases, and 900 of them were ruled on in

23 Singapore.  So what effect does this, you think, the Singapore

24 ruling about the 900 have on this case?

25        MR. VAN DUSEN:  No, we are not fighting that.  We are

 1  saying, Your Honor --

 2          THE COURT:  No, what effect do you think the Singapore

 3  ruling as to the 900 has on this group of cases?

 4          MR. VAN DUSEN:  Well, it means the GHM did not have

 5  the rights to them, right?  But I think as Your Honor said --

 6          THE COURT:  It means that's what the Singapore court

 7  found.

 8          MR. VAN DUSEN:  Yes.

 9          THE COURT:  And if that governs in this case is very

10  important.

11          MR. VAN DUSEN:  Correct.

12          THE COURT:  Does it govern in this case?

13          MR. VAN DUSEN:  Well, no, it doesn't.

14          THE COURT:  Okay.  Then it's not important.  This is

15  why I am lost.

16          MR. VAN DUSEN:  I think at the end of the day we just

17  need to know exactly what images are what.  I mean, we are not

18  ready to answer at this point because until we can figure out

19  exactly what images are at issue it makes it --

20          THE COURT:  Doesn't the complaint against your client

21  say what images are at issue?

22          MR. VAN DUSEN:  Some of them do, Your Honor.  The

23  large complaint --

24          THE COURT:  Most of them do, and actually, my law

25  clerk --

1          MR. VAN DUSEN:  I know, Your Honor, this one.  But

2   there's some other complaints that are not written by the first

3   counsel that are not as -- I would say detailed.  Some of them

4   are less detailed with -- in how they are written.

5          THE COURT:  My law clerk found a handful of defendants

6   who -- as to whom there was no physical photograph attached.

7          MR. VAN DUSEN:  Yes, Your Honor.

8          THE COURT:  She found Pegasus, Qantas, WK Travel, AOL,

9   Travelzoo, Swiss Air, Virgin and Virgin Atlantic.

10      Everybody else I think knows what they are being sued on

11  here.

12          Is there anybody else who wants to tell me why --

13  again, using our hypothetical -- why they need to know which 900

14  were the subject of the Singapore decision?

15          MS. REMORE:  Your Honor, if I may, and Remore, Abigail

16  for GHM.  I am not going to speak as to the arguments that my

17  co-defendants are likely to raise, but I think that the scope of

18  the Singapore decision is important if ultimately it is deemed

19  that that decision is what binds us to ownership.  So if we have

20  those 1,000 photographs that are at issue in the U.S. case, the

21  Singapore court ruled as to ownership or right to use in the

22  context of those 900, it is very possible that down the line

23  Your Honor will -- or the Court will decide that Singapore law

24  was the -- is binding, and then we only have to -- you know,

25  that co-defendants only have to litigate ownership -- still have

Proceedings                    16

1   to litigate ownership and rights as to those last 100

2   photographs.

3           THE COURT:  That's why I thought it was important, but

4   then I was hearing that the defense position was it's sort of

5   irrelevant what happened in Singapore.  It seems to me that

6   being a question of Singapore law, that is going to drive the

7   decision here -- although maybe, you know, a defendant will come

8   up with some theory as to why it doesn't.

9           But we -- we are in a weird position where it seems

10  like Ms. Remore's counterparts in Singapore must know what

11  photographs were at issue in that case; plaintiff's counterparts

12  in Singapore must know, but nobody in this room seems to know.

13  And I'm not really sure how that can be.  Like, why don't you

14  just ask your clients?

15          MS. REMORE:  If I may, Your Honor, Remore again.  I

16  just received copies of all of the photographs that were at

17  issue in the Singapore case a day or two ago, and we are in the

18  process of going through them.  The issue on our end is the --

19  what overlaps with the U.S. case and the lack of clarity in a

20  lot of cases that we have there, but we're in the process of

21  comparing that.

22          Like I said in my letter, based on our calculations

23  way back in 2016, 2017, there were a little over 3,000

24  photographs at issue in the U.S. case, and there is 2300 at

25  issue in the Singapore case.  So we're just trying to figure out

1  what's what.

2          THE COURT:  So is there a way to compare the two sets

3  of photographs without actually having some poor person sit and

4  look at each one and say, oh, I remember seeing that one?  I

5  mean, it seems like plaintiffs are in the best position to tell

6  us the difference between the photographs they are suing on here

7  and the photographs that were the subject of the Singapore case.

8          MR. BERG:  My understanding is that there is a hundred

9  percent overlap with the photographs that were litigated in

10 Singapore.  That group is also a hundred percent at issue here.

11          To the extent that there are more, that's what we are

12 racing to get to the bottom of.  We believe that there will be

13 more, but we don't know yet exactly.  That's what we hope

14 initial disclosures will reveal.  We also --

15          THE COURT:  Well, how are you racing to get to the

16 bottom of it?  Why can't you just ask your client?

17          MR. BERG:  Well, our client believes that all of the

18 photographs at issue in Singapore are at issue in this case.

19          THE COURT:  Well, that -- it sounds like that's

20 probably true, but there is another 700 that are at issue in

21 this group of cases that were not litigated in Singapore, and it

22 would be important to know which 700.

23          MR. BERG:  Right.  We can -- she will get to the

24 bottom of that quickly.  To be honest, Your Honor, we thought it

25 was a hundred percent overlap, a hundred percent overlap; that's

1  what we understood, but we are hearing now there is more.  And

2  so we need to go back to our client, and as I said earlier, we

3  are in the process of getting the entire file from the Singapore

4  lawyers right now; and this is exactly why we needed the stay

5  lifted, so we can get going and get initial disclosures.  We can

6  work together with the defendants.  There is a unity of interest

7  on this point to get to the bottom of it.

8         THE COURT:  It seems like it's -- it's not your

9  client -- well, your client's a corporation -- it's not -- it's

10  not Ms. Lee.  It's the lawyers who represented her in Singapore

11  or who represented the corporation in Singapore who can tell you

12  what photographs were at issue there, but somebody on your side

13  is going to have to compare that to what's attached to every one

14  of these complaints and see what's left over.

15         MR. BERG:  We understand that.

16         THE COURT:  Okay.  Yes, Ms. Oakley?

17         MS. OAKLEY:  Thank you, Your Honor.

18         So just a couple of points to directly respond to your

19  question about whether the Singapore action controls here.  We

20  will take the -- anticipate taking the position that it does not

21  necessarily control on all issues.  One thing that's quite

22  peculiar in reading the grounds of decision, which plaintiffs

23  counsel just provided with their reply letter, is it appears

24  that only 242 photographs were actually at issue in terms of

25  liability, and so -- but we've also got an unknown as to what

112923.2                          Proceedings                          19

1  those photographs are and how those relate to the other

2  photographs that were subject of suit.

3          So if this Court should decide that the Singapore

4  rulings are influential or binding, we need to know that.  We

5  are not conceding that they should be influential or binding,

6  but we do feel that it is important that at the end of the day

7  to understand what was litigated there, what was not litigated

8  there.  We understand that Your Honor's charge to Wave was to go

9  to Singapore and litigate as to all that was at issue.

10          And then in terms of what all is at issue,

11  unfortunately, we can't tell from the complaints against our

12  various clients exactly which photos our clients are alleged to

13  have infringed.  So we have a big question mark both on the, you

14  know, the target of the allegation; and now in addition, on, you

15  know, this universe of what went on in Singapore, and then there

16  is another big black box here, which is what was settled.

17          There was a statement regarding a settlement in

18  Singapore that was referenced in the plaintiff's letter to the

19  Court.  We understand that GHM's counsel has requested that that

20  settlement agreement be disclosed to all of the defendants, and

21  thus far, it has not been disclosed even pursuant to the

22  protective order.

23          So lots of uncertainties that it would seem very

24  reasonable and orderly to have resolved before we march forward

25  on the next steps for the case.

1          THE COURT:  I want to back up to one thing you said,

2    which is at least some of the clients are not clear on what

3    photographs they've alleged to have infringed?

4          MS. OAKLEY:  That's correct.

5          THE COURT:  Why is that, apart from the handful where

6    there were no pictures attached?

7          MS. OAKLEY:  Because the allegations in the complaint

8    actually are quite, quite vague.  They cite to a number of

9    registrations, but they don't say which photos in each

10   registration.  So each registration covers a large number of

11   photos.  We don't know which registration -- excuse me -- which

12   photograph in which -- for which registration.  And then there

13   is an allegation, not in all the complaints, not in two of the

14   complaints, but in the earlier, earliest complaint there is an

15   allegation that examples of the alleged infringement are

16   attached, and so it's only -- at least the allegation is

17   examples, not a definitive list, and then when you look at the

18   attachments, you can't be certain whether it's every photograph

19   that shows up in that attachment, one of them.

20          So it's incredibly unclear from the -- from any of the

21   complaints which photographs are alleged to have been infringed.

22          THE COURT:  And is that also a function of there being

23   so many defendants?  You know, if there is a complaint against

24   12 defendants, you don't know which defendant is accused of

25   which photograph?

1          MS. OAKLEY:  Absolutely, Your Honor.

2          THE COURT:  So -- and we don't need to criticize

3   previous counsel, but it does seem like you've got some cleaning

4   up to do in terms of figuring out not only what claims are

5   settled and what claims were ruled on in Singapore, but exactly

6   who you are suing for what.

7          MR. SILBERFELD:  Roman Silberfeld.  Your Honor, in

8   reading through the 14 letters, we actually agree with some of

9   the points raised by the defendants, and one of them is the idea

10  of cleaning up the complaints.  The suggestion I think was made

11  by someone -- if not, I will make it -- and that is to have a

12  master complaint for all of the cases so that as we look forward

13  from here, we don't have 11, 14 or whatever it is motions to

14  dismiss.  We have one against a master complaint, and we are

15  prepared to work with the defendants on the level of specificity

16  of that master complaint because, as Mr. Berg pointed out, we do

17  have a unity of interest about this to get right the number of

18  photographs at issue here and what was dealt with in Singapore.

19          But a master complaint --

20          THE COURT:  My only concern about a master complaint

21  is literally the volume.  You know, if it's going to have, you

22  know, 3,000 photographs attached to it, it's going to crash the

23  U.S. government's clunky system, but maybe there is a way to

24  have appendicis and charts and such, and it seems to me it would

25  be very helpful to have in one place, okay, here are all the

1  pictures we are talking about.  Here is the copyright

2  registration.  Here is the defendant that we think infringed,

3  and how, and I think that would be very helpful for everybody.

4          Let me go off the record for a second.

5          (Discussion off the record)

6          THE COURT:  So let's go back on the record.

7          We've had some discussions off the record.  It's clear

8  that before we can really move forward here, both sides would

9  benefit from some clarity specifying as to each defendant

10 exactly which photographs are alleged to have been infringed --

11 when, where and how -- and plaintiff's not having -- plaintiff's

12 counsel, not having been in the case all along, want that

13 information as much as defendants do, and then they are

14 proposing a master complaint, which I think we all agree would

15 be helpful.

16         What timeframe, Mr. Silberfeld, Mr. Berg, do you think

17 you would need to compile this document?

18         MR. SILBERFELD:  A master complaint is something we

19 could have ready for filing roughly by the middle of January, I

20 would think, given the holidays coming up.

21         THE COURT:  The middle of January?

22         MR. SILBERFELD:  Yes, 15th.  If that's a workday, I'm

23 not sure.

24         THE COURT:  Let's see, the 15th, I think that's MLK

25 Day.  So the 16th?

1          MR. SILBERFELD:  Perfect.

2          THE COURT:  January 16, 2024.  And, obviously, you are

3   free to convey the information to any defendant sooner than that

4   when you get it, but what I am hoping for is something that will

5   put kind of in spreadsheet form as to each defendant what photo,

6   how long.  I guess most -- almost all of these it's on the

7   website.  If it's other than on the website, what you -- you

8   know, how it was infringed.

9          And, you know, to the extent there are defendants with

10  only a handful of photos, I was about to say maybe we can get

11  rid of a lot of them.  That doesn't sound very polite.  You

12  could resolve as to them pretty early on.  And then the bigger

13  ones might take longer, but I agree that that -- that is the

14  first step.

15         I think right now these cases are related, but they

16  are not consolidated, and I'm not sure that it really matters at

17  this stage.  If anybody thinks differently, they can let me

18  know.

19         MR. SILBERFELD:  Roman Silberfeld.  There is one other

20  case in a different court in this building.

21         THE COURT:  Yeah.  And, you know, I forget exactly how

22  that worked out, but it seemed to me at the time, since my case

23  was dead or so I thought, that it would stay with Judge Román.

24  Is that still percolating?

25         MR. SILBERFELD:  It is, and a scheduling order in that

1    case is about to be submitted to that Court.  Frankly --

2            THE COURT:  You would like me to reel that one back

3    in?  I will see what I can do.  Do you have a docket number

4    handy?

5            MR. SILBERFELD:  We can get that in a matter of

6    minutes.

7            MR. BERG:  We will get that to the Court immediately.

8    It's actually on our phones, which are being held hostage

9    downstairs at the moment, but we will get it to you.

10           THE COURT:  All right.  Well, I'm glad to hear that

11   you think it will only take you about six weeks to get the

12   information everybody has been dying for since 2013 or '16 or

13   whatever.

14           What I would propose is, after that, that you work out

15   a settlement before we start having answers and motions to

16   dismiss and all that.

17           MS. DODD:  Your Honor, before we get too far along the

18   path of planning procedure going forward.  Citibank did raise a

19   separate issue.

20           Our case was just filed last year in 2022, and given

21   just what a mess this is with so many defendants and so many

22   photographs, we suggest that our case remain stayed so some of

23   this stuff can get sorted out because there can be issues that

24   would moot or eliminate our case, you know, copyright validity,

25   that sort of thing, and you know --

1              THE COURT:  I don't see any reason to carve out one or

2   two late-filed cases.  I don't even know how that would help.

3              I know there were some service issues that some people

4   raised; you know, somebody hasn't been properly served.  I guess

5   that's another thing you want to clean up.  But I did see in a

6   couple of the letters some of the newer defendants saying, Leave

7   me alone.  Let me sit to the side, but I don't really -- you

8   know, especially if we are going to have a master complaint, see

9   why that would be helpful.  It may well be that there are events

10  that affect Citibank or whoever else it was, but they are going

11  to affect everybody else, so I don't see any reason not to keep

12  them all together.

13             Mr. Clark found the Judge Román case, Trivago?

14             MR. BERG:  That's the one.

15             THE COURT:  Yes.  And if I remember, was there a TRO

16  or something that you sought in that case?

17             MR. BERG:  Yes.

18             THE COURT:  Probably why I didn't want it because who

19  wants to deal with that?  Probably it came in on a Friday in the

20  summertime, which seems to be when TRO applications materialize.

21             And what happened with that?

22             MR. BERG:  The Court denied the TRO.  Basically, that

23  was the holding and did a thorough analysis of it, and --

24             THE COURT:  Where are you now?

25             MR. BERG:  We are at the stage where we have a

1  scheduling -- proposed scheduling order due tomorrow.

2           THE COURT:  Okay.  Yes.  Ms. Oakley, and then

3  Mr. Bauer.

4           MS. OAKLEY:  Thank you.  If we could also have by

5  January 16th, or shortly thereafter, given Your Honor's

6  suggestion of early settlement discussions, thereafter would be

7  the complete story about what did happen in Singapore, which

8  photographs were the subject of the case, and which photographs

9  are the 242 that were used in the magazine and were actually

10 litigated on liability.  So we would like that information and

11 also a copy of the settlement agreement.

12          MR. BERG:  We will take it all under advisement.  Most

13 of it is probably acceptable.  The settlement agreement we have

14 to get clearance from several people to give it to the

15 defendants, so we can't say that now.

16          And just as an aside, Judge Román did seem open to

17 letting that case come back here, just for the record.

18          THE COURT:  All right.  Well, then I will give him a

19 ring.

20          So -- I'm not forgetting about you, Mr. Bauer -- the

21 giant spreadsheet that you are going to prepare on plaintiff's

22 side, maybe it can include whether or not a given photograph was

23 either subject of the settlement if your -- if you get the okay

24 to do that, and if it was a subject of the litigation.  I'm a

25 little confused, Ms. Oakley.  There were 2300 photos at issue,

1  but there was only a finding of liability on 242 of them?

2          MS. OAKLEY:  Yes, Your Honor.  There was only a --

3  this is just from my reading of the grounds of decision.  So we

4  all have that same thing --

5          THE COURT:  I can't claim I read every word.

6          MS. OAKLEY:  There -- with respect to liability, there

7  were -- my reading of this is that there were 242 photographs

8  that were used in a series of magazines that GHM created that

9  used 242 photos, and so on my reading of this decision is that

10 there was only a finding of infringement as to 242 photos.

11         THE COURT:  And was there any finding with respect to

12 the other 2100 and change?

13         MS. OAKLEY:  There were statements regarding

14 conclusions regarding ownership and the defenses and laches,

15 yes, Your Honor.

16         THE COURT:  So you want to say anything different,

17 Mr. Silberfeld?

18         MR. SILBERFELD:  Well, Your Honor, the -- Roman

19 Silberfeld.  The 242, our reading of the decision is that only

20 applies to those 242 that were used in the magazine, but in

21 fact, the Court found ownership in Wave of all 2300;

22 infringement by the defendant in that case of all 2300.  That's

23 what the Court found, and then there was a specific finding

24 about 242.  Counsel is right.  It's on page 90 of the grounds of

25 decision.  But that 242, as we understand it, only applies to

1  the magazine infringement if you will.

2          THE COURT:  Do you have a different view, Ms. Remore

3  of what was decided in Singapore?

4          MS. REMORE:  My understanding, Your Honor, is

5  consistent with Ms. Oakley's; that the Singapore case was

6  brought on the grounds of infringement in GHM, the magazine, but

7  the scope of the litigation encompassed the photo shoots that

8  generated those 242 photographs, and I think that's what is a

9  little unclear.

10         I would concur with Ms. Oakley that my understanding

11 from my counterparts in Singapore, my understanding of -- I have

12 seen the settlement agreement.  I can't share it with anyone,

13 but my understanding is that the finding of liability was to the

14 242 photographs, and that ownership and other such issues were

15 discussed, but not the subject of specific infringement claims

16 as opposed to taking the claims that were the subject of all of

17 these U.S. actions and filing them in Singapore to the extent

18 they relate to GHM, that did not happen.

19         THE COURT:  Is it fair to say that the findings that

20 were made with respect to the rest of the 2300 would derive the

21 same result?  I mean, is there any reason -- putting aside

22 whether it's applicable here or not, the -- if the decision was

23 plaintiff owns all of them, plaintiff has the right to all of

24 them, and there was infringement as to 242, seems like if the

25 court had to make a finding about all 2300, it's already made

1  the underlying findings that would lead to the same outcome.

2          MS. REMORE:  I would venture to say that that -- I

3  would say that that only applies to the first stage of a

4  copyright infringement analysis, which is validity and

5  ownership, not the next step because at least in the U.S.

6  case -- and I am not going to speak as to Singapore law -- but

7  it's a two-stage analysis where validity -- validity and

8  ownership, and then infringement.  And I think that we don't

9  have a question -- we don't have an answer on infringement if

10 the Court were to determine -- if there's 242 photographs that

11 we have a determination on infringement on, and the Court

12 determines that that's binding, great.  I will leave it to the

13 defendants -- to my co-defendants to argue whether that's

14 appropriate, but we don't have a finding as to infringement as

15 to the remainder is my understanding which --

16         THE COURT:  But that sounds like the easy part to

17 prove.  I mean, if all that was at issue here was -- was not

18 validity, was not ownership, it was just:  Did the plaintiff's

19 picture end up on the defendant's website, that's probably the

20 least controversial point.

21         MS. OAKLEY:  Your Honor, if I may, just the point of

22 validity I don't believe was litigated in Singapore.  So just it

23 was ownership and whether there were implied licenses and

24 whether certain defenses applied, just to be very precise.

25 Thank you.

1          THE COURT:  All right.  Well, you are all copyright

2     lawyers, so you are more precise than I am.

3          Mr. Bauer, you have been waiting patiently.

4          MR. BAUER:  Thank you, Your Honor.  I just want to

5     clarify procedurally what's going on.  The letters -- it

6     appeared to be there would be a two-step process.  The first

7     step of the process would be for the plaintiffs to actually

8     inform the defendants what was at issue in Singapore, and then

9     for each defendant identify where's the allegedly infringing

10    pictures.  Once that hurdle was met, the next step would be to

11    lift the stay and file the complaint.  So my question is --

12         THE COURT:  I guess I am sort of mushing those two

13    things together.  They are going to inform me of that through

14    the complaint.

15         MR. BAUER:  Exactly.  That's -- and there is my

16    confusion, and what I would like to bring up is that for

17    Emergent Travel, the complaint with respect to what Emergent

18    Travel posted, there are quote exemplary photographs, and then

19    there is an additional two counts of the complaint that said

20    that ETG, Emergent Travel, then distributed these photographs.

21    There is no photographs shown.

22         So if, in fact, we now conflate those two steps to

23    just filing a complaint, Emergent Travel, like other defendants,

24    is now going to have to incur costs in terms of basically motion

25    to dismiss, or for a more -- more information from the

1  complaint, and is there a possibility to adopt what the

2  defendants had suggested would be a two-step motion -- motion

3  practice first so at least we can all know what is at issue and

4  then lift the stay?

5          THE COURT:  Well, I'm going to lift the stay today.  I

6  don't see any reason why the stay needs to be in place.  How we

7  move forward, you know, is really what matters.

8          But I am a little confused.  I thought the

9  information -- that the plaintiffs have agreed that the

10 information you are looking for is going to go in the amended

11 complaint, so you won't have a situation where the amended

12 complaint says Emergent Travel infringed copyright number '222,

13 and you will be at sea as to which photographs within it you're

14 alleged to have infringed or when.  You are going to have a

15 spreadsheet that's going to say, which -- for each photograph

16 who allegedly infringed it, and when.  I mean, I don't care if

17 plaintiffs do it photograph by photograph, or they do it by

18 defendant by defendant, but -- and it would be very helpful, now

19 that I thinking about it, is if everybody -- since it's going to

20 be some form of spreadsheet, could get the -- not just a pdf of

21 the spreadsheet, but the spreadsheet because if you don't do it

22 defendant by defendant, everybody is going to want to play with

23 it to come out -- to find which photographs they are accused of.

24         If you do it defendant by defendant, some people may

25 want to know, well, who else is accused of this same photo?  So

1  it would be helpful if they got the raw materials so they could

2  play with it.

3          MR. BERG:  Sorry, Berg.  I haven't been doing that.

4  Sorry for that.

5          THE REPORTER:  That's okay.

6          MR. BERG:  Let me add one component to this that will

7  make life easy for every defendant.  We are talking about

8  probably 30 to 40 upscale hotels at which these photographs were

9  shot.  If you go to your clients and say, are we advertising

10 this hotel and marketing this particular hotel? you have

11 narrowed the universe down to what you are looking for.  So

12 there is that point, and we will give you every hotel name.  We

13 have no problem doing that.  That facilitates the process that

14 we are all trying to get to.

15         The issue for us is, we don't know all, and they do,

16 and this is why.  The hotel-by-hotel process of advertising and

17 marketing these photographs changes about every 30 days, and so

18 we will see one one day, it goes out on another day, but their

19 libraries will shed light on all infringement, on every

20 infringement, to the extent they didn't then distribute them to

21 somebody who did something else with them.

22         THE COURT:  Well, they may know what they have

23 infringed, but what they really want to know is what you think

24 you can prove they infringed.

25         MR. BERG:  For sure.

```
 1              THE COURT:  So they are entitled to know what the
 2    claims are.  So, you know, if your client -- to use a fictitious
 3    hotel -- did a shoot at the White Lotus in Sicily, sure, they
 4    might know whether they never advertised the White Lotus in
 5    Sicily, but they want to know which photographs are you claiming
 6    they used without permission?
 7              MR. BERG:  Right.  And we will do that to the extent
 8    we know, and we have --
 9              THE COURT:  I think you need to know to bring the
10    claim.  I don't think you can just say, they infringed a whole
11    bunch of photographs; I'm not telling you which ones.
12              MR. BERG:  We have many, many examples.  I'm not
13    saying that we don't have a basis for the claim.  What I am
14    suggesting is when photos are taken down off of the Internet
15    every 30 days, we can't know all without discovery.  That's my
16    point.  We can give you -- we can certainly state a claim as to
17    every defendant in numerous, numerous photographs.
18              THE COURT:  Well, now -- I thought I heard earlier
19    that you were going to identify which photos you are arguing
20    were infringed.
21              MR. BERG:  We are.  We have a library of photographs
22    that -- we have thousands and thousands of photographs that we
23    have that show infringement.  We have that.  That's -- and we
24    are going to --
25              THE COURT:  If in the course of discovery you learn
```

1  more, and you want to amend to add those, you can do that, or

2  you can ask to do that.  Depends.  A lot depends.  But I don't

3  think right now we are going to get anywhere if this master

4  complaint just says essentially what the current complaint says.

5          MR. BERG:  We completely understand your point.  We

6  are going to divulge everything that we know is infringing; that

7  much we will divulge.  There is no other purpose to a master

8  complaint than that as far as we are concerned.

9          THE COURT:  Good.  So Mr. Bauer is going to be able to

10 look at the complaint and understand what his client is accused

11 of doing with respect to which photo and how?

12         MR. BERG:  Yes.  To the extent we know it, yes.

13         THE COURT:  Okay.  So on X day, this photo was on your

14 website, and you didn't have permission.

15         MR. BERG:  Yes.

16         THE COURT:  Okay.  So I think what we should do -- I

17 think where we left off was, once you have the information -- I

18 gather both sides are at least willing to have early settlement

19 discussions once they know.  Obviously, if you see the complaint

20 and, you know, you realize it's not what you thought, you know,

21 nobody is committing to anything yet.  But what I would like to

22 do is build in some time for you to have those conversations

23 before we have to start dealing with answers and motions to

24 dismiss because I do think this is one of those situations where

25 it may be more cost effective for defendants to settle than to

1    litigate even if they think they didn't do anything wrong, and

2    even if these are very fancy photos that cost a lot.  Or at the

3    very least, we can perhaps get the number of defendants down to

4    a more manageable number.

5             So I'm open to suggestion as to the best way to have

6    those conversations.  Do you want a private mediator?  Do you

7    want a magistrate judge?  Is it something you can do on your

8    own?  Is the GHM settlement sort of going to be a template that

9    might be helpful for the other defendants?

10            I know they all think that GHM is the real bad guy

11   here, so I assume they would be looking not to pay as much as

12   GHM, but what do you think, Mr. Silberfeld?

13            MR. SILBERFELD:  Roman Silberfeld.  Your Honor, we

14   don't have a preference really as between private mediation or

15   magistrate judge.  I tend to think that if we all together over

16   the course of the next six weeks while we are fashioning the

17   master complaint began a conversation about what to do after

18   January 16th, that if we had 90 days after that to actually have

19   some settlement talks, and have a status conference with the

20   Court call it April some date, I think we would probably be able

21   to report some progress unless earlier than that there is a

22   complete breakdown about the master complaint, then we can come

23   back to the Court sooner.

24            I will say that I don't think the GHM settlement is

25   going to be, you know, the marker here for the rest of the

```
 1  defendants, but --
 2          THE COURT:  They are probably relieved to hear that.
 3          MR. SILBERFELD:  I will leave it at that.
 4          THE COURT:  I assume that means that's good for the
 5  rest of the defendants and not bad.
 6          What does the defense side think about a 90-day window
 7  for discussions post master complaint before any answers or
 8  motions?
 9          MR. VAN DUSEN:  Your Honor, that sounds reasonable,
10  but I think the one thing -- I don't know if Your Honor was
11  joking about the appendix to crash the government's website.
12  Are we going to have something attached to this complaint to see
13  it?  Or I don't know how they are going to do that, Your Honor.
14          THE COURT:  Well, if every photograph was attached, it
15  would probably crash the government's website.
16          MR. VAN DUSEN:  Because --
17          THE COURT:  But maybe --
18          MR. VAN DUSEN:  It's going to be public, right?  Your
19  Honor, that's the only thing like --
20          THE COURT:  I mean, maybe they are going to have to
21  file it in many small pieces.
22          MR. BERG:  We will figure that out, and if it comes to
23  a chart attached to a complaint that's six pages, and we then
24  give the defendants what we are talking about separately in a
25  share file or something, that could work.
```

1              MR. VAN DUSEN:  I am fine.  I just didn't know if Your

2    Honor was okay with that with the public's right to see the

3    complaint or whatever.  That's all.

4              THE COURT:  Well, we will figure something out.  The

5    public does have that right.  Although, then it's just making

6    the plaintiff's photos even more available.  But yeah, I mean,

7    there -- I'm not techie enough to know how to do it, but

8    maybe -- I don't know if there is a way to docket a zip file or

9    maybe just for the public's right to know we can just put hard

10   copies in the court file if they really can't be e-filed.

11             MR. SILBERFELD:  I don't know if it's possible at the

12   trial court level, but in the appellate courts we often

13   hyperlink things, and we could hyperlink these.

14             THE COURT:  That would work.  I think that works.

15             All right.  So let me ask Mr. Clark to find a

16   conference in April.  If you do want a magistrate judge, your

17   original judge, Judge Davison, is happily retired, and his

18   successor Vickie Reznik was redesignated, and you will really

19   like working with her if you go that route.  Very smart, very

20   fair, very pleasant, very used to massive litigations since she

21   comes from the mortgage-backed securities world.

22             Yes, Ms. Oakley.

23             MS. OAKLEY:  Thank you, Your Honor.

24             In terms of private mediator versus magistrate, just

25   given the number of parties and trying to work with the private

1  mediator, I think we would go like to work with the magistrate

2  to at least kick things off.

3          MR. VAN DUSEN:  I would agree, Your Honor.

4          THE COURT:  You folks, you are going to have this

5  conversation between now and January 16th, and if you -- why

6  don't you at the same time, I will make the responsibility the

7  plaintiff's, but send me a status letter as to the state of your

8  discussions about how to proceed and whether you want to try on

9  your own first; whether you want to go the magistrate; whether

10 you want to do a private mediator.  We also have court mediators

11 who are volunteers who can sometimes spend more time with the

12 parties than a magistrate judge can but don't cost anything.  So

13 you can let me know at that point.  It may be that, you know,

14 you will get demands that are so reasonable that you think you

15 can work this out either one by one or globally.

16          So let's see what Mr. Clark came up with.

17          THE DEPUTY CLERK:  April 11, 2024, at 11:15 a.m.

18          THE COURT:  All right.  Don't take this the wrong way,

19 but I hope I don't see you then because I hope you are working

20 something out.  And, you know, if it gets to be around that

21 time, and you think with a little more time you can get to yes,

22 and you want to put that off, you can let me know.

23          But I think we have at least our first steps, and if

24 it gets to be April and, you know, you are not getting anywhere,

25 then we will talk about answers and motions and all that

 1  unpleasant stuff.

 2          All right.  Anything else we should do now?

 3          MR. SILBERFELD:  Just to be clear, Your Honor, is the

 4  stay lifted?

 5          THE COURT:  The stay is lifted.

 6          MR. SILBERFELD:  Thank you, Your Honor.

 7          THE COURT:  In the main case and all related cases.

 8          MR. SILBERFELD:  Would the Court issue an order about

 9  the Trivago case if the Trivago case comes over?

10          THE COURT:  I think you will probably just see a

11  reassignment on the docket.

12          MR. SILBERFELD:  Thank you.

13          MS. MENKOVA:  Your Honor, if I may?

14          (Reporter clarification)

15          THE COURT:  Come up and speak at the podium, please.

16  You can go to the podium behind you.  Just tell me your name.

17          MS. MENKOVA:  Absolutely.  Anna Menkova from Pollock

18  Cohen, P.C.  We represent the Trip.com defendants in that

19  Trivago case.  We just wanted to make sure we put on the record

20  that we oppose any consolidation of our case with this one and

21  just wanted to make that clear.

22          THE COURT:  And do you want to tell me your reasons?

23          MS. MENKOVA:  First of all, we have jurisdictional

24  defenses in that case.  We have international clients who are

25  going to be moving to dismiss on jurisdictional grounds, which I

1  believe Judge Román had noted previously were, you know, strong

2  grounds for dismissal.

3          The case against our defendants was filed

4  approximately ten years later, and although I recognize that --

5  as with the Citibank defendants -- it's in a similar situation,

6  but, you know, we have not been involved in this case for over a

7  decade and don't think that we should be on the same track.

8          THE COURT:  All right.  Well, I will take it under

9  advisement.

10          MS. MENKOVA:  Thank you, Your Honor.

11          THE COURT:  Do either Mr. Silberfeld or Mr. Berg want

12  to tell me anything on that subject before we part?

13          MR. BERG:  Just that the recitation that was just

14  given is not a reason not to consolidate.  They just have --

15  they claim to have defenses.  There are plenty of international

16  defendants in this case, and they are here.  So I will leave it

17  at that.

18          THE COURT:  Okay.

19          MS. OAKLEY:  Your Honor, Oakley for the record.  One

20  question:  Do we understand that all discovery is still stayed,

21  and we are not going to go down that path until after we have

22  gotten past complaints and --

23          THE COURT:  No discovery, no answers due.

24          MS. OAKLEY:  Thank you.

25          THE COURT:  None of that.

1              MS. REMORE:  As to -- this is Remore for GHM.  As to

2  any service issues, I assume plaintiff will work that out prior

3  to our April 11th conference when the complaint is filed?

4              THE COURT:  I assume they don't really want to be

5  bothered with motions to dismiss based on service when that

6  happens, so -- and now it seems like almost everybody has a

7  lawyer, so I assume you will mop up any outstanding service

8  issues.

9              MR. SILBERFELD:  We will.

10             THE COURT:  Okay.  Thank you all.

11                            -o0o-

12

13

14

15

16

17

18

19

20

21

22

23

24

25