```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2
    ------------------------------------x
 3  THE WAVE STUDIO, LLC,

 4                          Plaintiff(s),

 5                                  13 CV 9239 (CS)(VR)
         -vs-
 6                              DISCOVERY CONFERENCE

 7
    GENERAL HOTEL MANAGEMENT, LTD., et al.,
 8
                            Defendant(s).
 9  ------------------------------------x

10
         *Proceedings recorded via digital recording device*
11

12                              United States Courthouse
                                White Plains, New York
13
                                Thursday, February 29, 2024
14

15  Before:  THE HONORABLE VICTORIA REZNIK,
                         Magistrate Judge
16
    A P P E A R A N C E S:
17

18  ROBINS KAPLAN, LLP
         Attorneys for Plaintiff
19  BY:  GABRIEL A. BERG
         ROMAN SILVERFELD
20       ZACHARY COHEN

21
    GIBSON, DUNN & CRUTCHER, LLP
22       Attorneys for Defendant American Airlines, Inc.
    BY:  HOWARD S. HOGAN
23

24  AKIN, GUMP, STRAUSS, HAUER & FELD, LLP
         Attorneys for Defendant American Express Company
25  BY:  ERICA E. HOLLAND
         ANTHONY T. PIERCE
```

```
 1  A P P E A R A N C E S: (Continued...)

 2  CROWELL & MORING, LLP
         Attorneys for Defendant British Airways
 3  BY:  ANDREW S. McELLIGOTT

 4
    MORGAN, LEWIS & BOCKIUS, LLP
 5       Attorneys for Defendants Booking Holdings, Inc., Kayak
         Software, Southwest Airlines
 6  BY:  CARLA B. OAKLEY
         MEAGHAN H. KENT
 7

 8  NIXON PEABODY
         Attorneys for Defendant Cathay Pacific Airways Ltd.
 9  BY:  ANDREW WEINTRAUB

10
    STRIKOWSKY, DRACHMAN & SHAPIRO, PLLC
11       Attorneys for Defendant Delta Airlines
    BY:  SIM R. SHAPIRO
12

13  KILPATRICK, TOWNSEND & STOCKTON, LLP
         Attorneys for Defendants Despegar.com Corp. and
14  Despegar.com USA, Inc.
    BY:  JAMES A. TRIGG
15       BRIGGS M. WRIGHT

16
    NELSON, MULLINS, RILEY & SCARBOROUGH, LLP
17       Attorneys for Defendant Emerging Travel, Inc.
    BY:  JOHN BAUER
18       ASHLEY B. SUMMER

19
    CHIESA, SHAHINIAN & GIANTOMASI, P.C.
20       Attorneys for Defendant General Hotel Management Ltd.
    BY   ABIGAIL RAMORE
21

22  DAVIS, WRIGHT & TREMAINE, LLP
         Attorneys for Defendant Groupon, Inc.
23  BY:  JAMES E. ROSENFELD

24
    ALLEN & OVERY, LLP
25       Attorneys for Defendant Qatar Airways
    BY:  SAPNA PALLA
```

```
 1  A P P E A R A N C E S:   (Continued...)

 2

    GOLDBERG SEGALLA, LLP
 3       Attorneys for Defendant Setai Owners, LLC
    BY:  MATTHEW S. TROKENHEIM
 4

 5  WEITZMAN LAW OFFICES, LLC
         Attorneys for Defendant Signature Travel Network
 6  BY:  KENNETH S. WEITZMAN
         RICHARD STRAUSSMAN
 7

 8  DROHAN LEE, LLP
         Attorneys for Defendant Tablet, Inc.
 9  BY:  VIVIAN RIVIERA DROHAN

10

    FENWICK & WEST, LLP
11       Attorney for Defendant Travix Travel USA
    BY:  TODD R. GREGORIAN
12

13  POLLOCK COHEN, LLP
         Attorneys for Defendant Trip.com Group Ltd.
14  BY:  ANNA MENKOVA
         ADAM L. POLLOCK
15

16  SMITH, GAMBRELL & RUSSELL, LLP
         Attorneys for Defendant Trivago N.V.
17  BY:  ROBERT J. MALDONADO

18

    CLAUSEN MILLER P.C.
19       Attorneys for Defendants VFM Leonardo, Inc., et al
    BY:  HARVEY HERMAN
20

21  LEWIS, ROCA, ROTHBERGER & CHRISTIE, LLP
         Attorneys for Defendant Visa, Inc.
22  BY:  MICHAEL J. McCue

23

24

25
```

1            THE COURT:  All right, good morning, everyone.  This

2  is The Wave Studio case.

3            So for fear of this taking the rest of our time up,

4  I'm going to do a very quick roll call, because I know it took a

5  long time just to gather all of you here today, but I want to

6  make sure I understand who's on the call.

7            So for Wave Studio, can you identify yourself, please.

8            MR. BERG:  Sure.  This is Gabriel Berg, with my

9  partner Roman Silberfeld and our colleague Zac Cohen, for The

10 Wave Studio.

11           THE COURT:  Thank you.

12           For Visa, Inc., who's on?

13           MR. McCUE:  Good morning, your Honor.  Michael McCue

14 from Lewis Roca on behalf of Visa, Inc.

15           THE COURT:  Good morning.

16           For VFM Leonardo, et al., there are a number of other

17 entities you represent, who is that?

18           MR. HERMAN:  Harvey Herman of Clausen Miller.

19           THE COURT:  Okay.

20           And who is on for Trivago?

21           MR. MALDONADO:  Roger Maldonado from Smith Gambrell.

22           THE COURT:  Okay.

23           For Trip.com?

24           MS. MENKOVA:  Good morning, your Honor.  This is Anna

25 Menkova from Pollock Cohen, with Adam Pollock.

```
 1              THE COURT:  Okay.

 2              For Travix Travel USA?

 3              MR. GREGORIAN:  Good morning, your Honor.  Todd

 4  Gregorian of Fenwick & West.

 5              THE COURT:  Okay.

 6              For Tablet, Inc.

 7              MS. DROHAN:  Good morning.  This is Vivian Rivera

 8  Drohan from Drohan Lee.

 9              THE COURT:  Okay, good morning.

10              For Signature Travel Network?

11              MR. WEITZMAN:  Good morning, your Honor.  This is

12  Kenneth Weitzman and Richard Straussman from Weitzman Law

13  Offices.

14              THE COURT:  Okay.

15              For Setai Owners?

16              MR. TROKENHEIM:  Good morning, your Honor.  This is

17  Matt Trokenheim from Goldberg Segalla, and my clients, Bill

18  Olshan and Claire Leonard, are also on the line.

19              THE COURT:  Okay.

20              For Emerging Travel?

21              MR. BAUER:  Good morning.  This is John Bauer and

22  Ashley Summer from Nelson Mullins.

23              THE COURT:  Okay.

24              For Qatar Airways?

25              MS. PALLA:  Good morning, your Honor.  Sapna Palla
```

1  from Allen & Overy.

2              THE COURT:  Okay.

3              Kayak Software?

4              MS. OAKLEY:  Good morning, your Honor.  This is Carla

5  Oakley.  My colleague Meaghan Kent is also on the line.  We

6  represent Booking Hotels, its affiliates, and also Southwest

7  Airlines.

8              THE COURT:  Okay, thank you.

9              For General Hotel Management?

10             MS. RAMORE:  Good morning, your Honor.  Abigail Ramore

11 from Chiesa, Shahinian & Giantomasi, representing General Hotel

12 Management.

13             THE COURT:  Okay.

14             Despegar.com?

15             MR. TRIGG:  Good morning, your Honor.  James Trigg

16 from Kilpatrick Townsend on behalf of the two Despegar entities,

17 and I'm joined by Briggs Wright.

18             THE COURT:  Okay.

19             For Delta Air Lines?

20             MR. SHAPIRO:  Good morning, your Honor.  Sim Shapiro

21 from the law firm of Strikowsky, Drachman & Shapiro.

22             THE COURT:  For American Airlines and British Airways?

23 Or is that doing business as?  I'm sorry if I got that wrong.

24             MR. McELLIGOTT:  Good morning, your Honor.  This is

25 Drew McElligott, representing British Airways, from Crowell &

1  Moring.  I believe Mr. Hogan was chiming in as well.

2          Howard?

3          MR. HOGAN:  Yes, thank you.

4          THE COURT:  Okay.

5          MR. HOGAN:  Good morning, your Honor.  This is Howard

6  Hogan, from Gibson, Dunn & Crutcher, on behalf of American

7  Airlines, separately represented.

8          THE COURT:  I see, okay.

9          For Groupon?

10          MR. ROSENFELD:  Good morning, your Honor.  Jim

11  Rosenfeld from Davis, Wright, Tremaine.

12          THE COURT:  For Amex?

13          MS. HOLLAND:  Good morning, your Honor.  Erica

14  Holland, and I'm joined by Anthony Pierce, from Akin Gump,

15  representing American Express.

16          THE COURT:  Okay.

17          And for Cathay Pacific?

18          MR. WEINTRAUB:  Good morning, your Honor.  Andrew

19  Weintraub, from Nixon Peabody, representing Cathay Pacific.

20          THE COURT:  Okay.

21          Did I miss anyone?  Speak now.

22          MS. DODD:  Your Honor, this is Kimberly Dodd, Foley &

23  Lagner, on behalf of the City.  We're on the 22 5141 case.

24          THE COURT:  Okay.

25          Anyone else who I did not call?  All right, well,

1 welcome, everyone.

2          So let me just start with a quick disclosure, because

3 in preparing for this conference, I noticed that one of the

4 counsel for the Defendants, Howard Hogan, is someone that I was

5 a classmate with in law school and we had similar or overlapping

6 social circles.  It's been probably over 20 years since I've had

7 any contact with Mr. Hogan, but I figured I would disclose it to

8 the group.  I don't view this as a conflict of any kind, but

9 nevertheless, I wanted to disclose it at the outset before we

10 get into the weeds.

11          So with that, I understand that Judge Seibel has put

12 sort of a pause on any discovery or motion practice in your

13 cases so that you can have room to have some sort of settlement

14 conference or settlement discussions, so I read through your

15 joint letter with your respective proposals on how best to

16 accomplish that given the number of parties involved, and it

17 certainly seems like a threshold issue is, you know, what is the

18 most efficient way to organize a settlement conference; is there

19 some manageable way to proceed with some subset of parties based

20 on similar allegations or some other way in which you can group

21 yourselves.

22          So I see that Plaintiff at least has suggested one

23 way, which is to focus on a subset of Defendants they call

24 display-only infringement Defendants, and I understand from the

25 Defendants at least that they don't yet know who that would be,

1  so I guess the first question I wanted to ask the Plaintiffs is,

2  is it still your view that, one, is the most efficient way to

3  proceed with a settlement conference or group of settlement

4  conferences would be to focus on this subset of Defendants.

5          MR. BERG:  Yes, your Honor -- this is Gabriel Berg for

6  the Plaintiff -- we do believe that that is the best way to

7  proceed just so that we're not -- it's not a free-for-all.  We

8  have the display-only infringers and Defendants targeted,

9  they'll soon know who they are just as soon as we can make sure

10 we're not leaving anybody out, and we also intend to make a

11 demand of this subset group probably early next week, if we can.

12         And so from our position, it makes sense to focus on

13 display-only because the breadth of everything else is enormous.

14 It's distribution, marketing, advertising, and it's worldwide,

15 the infringement, as we see it, obviously, and so we think this

16 is the most efficient way to start.  Hopefully, we can start

17 shrinking the number of Defendants and make progress in a

18 mediation with your Honor, so that's, that's our suggested

19 approach.

20         With all the other Defendants that we -- that are the

21 larger group of infringers, it's just much more complicated.

22         THE COURT:  So from your perspective, there are

23 overlapping factual issues that are more narrow that would make

24 sense to start with them, sort of the low-hanging fruit, so to

25 speak?

 1           MR. BERG:  Yes, your Honor, and with that, we can make

 2  demands of that group.  We're not sure we're in a position yet,

 3  but we're working hard with the client to make sure that this is

 4  right, to make demands of the overbroad infringers.  We're -- we

 5  still can, we're just working hard to get through that, and

 6  that's, that's a big process.

 7           THE COURT:  Okay.

 8           So there are a lot of Defendants on the line.  I don't

 9  know if you've all collectively spoken with one another and have

10  a representative who wants to speak for the group or if I should

11  speak to each one of you individually, but do you have any --

12  assuming Plaintiffs identify this group to you so you know who

13  you are --

14           (Brief interruption)

15           THE COURT:  All right, we've already started losing

16  people.

17           So if we start -- is there any reason if you're -- if

18  it becomes known to you who you are among these display-only

19  infringement group, does the Defendant group have any objections

20  to us starting settlement discussions and conferences with that

21  subset?

22           Is there someone from the group who wants to start?  I

23  don't know who that would be.

24           MS. OAKLEY:  Your Honor, this is Carla Oakley from

25  Morgan Lewis, representing Booking Holdings and its affiliates,

1  and also Southwest.

2          I think it's a threshold matter and I cannot speak for

3  all of the other Defendants, but as a threshold --

4          (Brief interruption)

5          THE COURT:  Go ahead.

6          MS. OAKLEY:  From our perspective, number one, it's

7  just impossible to evaluate the proposal without knowing who

8  these Defendants are, because we don't know -- you know, we just

9  don't know whether it includes one of our clients or how they

10 might be related to any of the other Defendants, so that is a

11 real threshold issue.

12         And then secondly, we've outlined in the letter to

13 your Honor the various types of information that we think are

14 critical not only to evaluating the claims, but to coming up

15 with a proposal to assist with this settlement process.  We

16 think that there may be some other ways to organize the process,

17 you know, different grouping of Defendants, different grouping

18 of claims, but for reasons that still are not clear to us,

19 Plaintiff's counsel has declined to provide the handful of

20 things that we've identified in the letter that are, are

21 critical to understanding the full scope of the claims and which

22 Defendants are being accused of doing what.

23         So we think it's a little putting the cart before the

24 horse to come up with a proposal for the -- you know, how is

25 this going to play out until we have all of that information.

1          THE COURT:  Okay.

2          So do any other defendants want to address that or

3  have anything different to add?

4          MR. BAUER:  Yes, this is John Bauer for ETG.

5          As Ms. Oakley explained in the letter and at the

6  November 29th hearing as well, as did I, it was very clear that

7  at this stage of the litigation, the Defendants do not really

8  know what they're being accused of infringement and there were

9  specific requirements that the judge put on Wave in order

10 basically for the Defendants to be put on notice as to what

11 they're being accused of infringement, namely, pictures of the

12 photographs alleged to infringe, pictures of the photographs

13 that were alleged to be dispute -- to be distributed.

14         You will note that Wave has tried to basically

15 classify these Defendants into two groups: display-only is one,

16 and the other is display-only and distribution.  You will note

17 that nowhere in Wave's submissions is there any photograph which

18 is alleged to have been distributed, and I think what Ms. Oakley

19 has articulated before the Court, and clearly ETG is on board

20 with that, that, in fact, Wave is putting the cart before the

21 horse.

22         This case has been pending for years and Wave is still

23 saying that they are not -- they are insufficiently prepared to

24 comply with what was expressly requested from them at that

25 earlier hearing.

1          THE COURT:  Okay, understood.

2          Let me just make it clear to everyone that my question

3  about whether or not there's an efficient way to group parties

4  for settlement should not be viewed as not also believing that

5  the parties need to share a great deal of information just to be

6  in a position to start settlement discussions, so I definitely

7  will address that, but is there anything else that anyone wants

8  to add?

9          I think I understand the position.  It seems to me

10  that a primary gating issue is making sure that the parties have

11  the necessary information and data to be able to proceed with

12  meaningful discussions, because you haven't really had the

13  sharing of information that -- it appears that you haven't

14  shared the information that Judge Seibel assumed you would share

15  to be able to have these conversations.  I think that is, you

16  know, my primary concern, and I don't think I want to waste

17  anyone's time with settlement conferences before you all have

18  the necessary information to be able to evaluate your settlement

19  positions and get adequate settlement authority and to

20  understand the basis for that authority.

21          So I guess let me then -- so if that's true, and at

22  least the Defendants seem to be saying, that data and

23  information that is now missing will inform or help inform how

24  settlement conference -- how settlement discussions should

25  proceed, let's start with an understanding of what the parties

1  need by way of information and exchanging of data to be in a

2  position to have a settlement discussion.

3          So let me start with the Plaintiff.  From what I could

4  tell in your letter, you said that you needed information from

5  the Defendants relating to their insurance coverage, including

6  the names of their insurers, policy limits, and their

7  reservation of rights.  Is that correct?

8          MR. BERG:  That is correct, and -- this is Gabriel

9  Berg.  May I address the broader question and when you're ready,

10 I have a -- I just want to let the Court know what we've done to

11 date and what we've invited the Defendants to do to date.

12         THE COURT:  Okay, before we get there, can you tell

13 me, is there any other information from your perspective that

14 you would need from the Defendants to be able to be in a

15 position to draft settlement demands to them that would

16 separately for each Defendant explain your rationale for your

17 demand and whatever other information relates to, you know, what

18 claim, what photographs, et cetera.

19         MR. BERG:  Yes.  There is information that we would

20 like to get from Defendants, but I -- it really does start with

21 the following.

22         We filed a master complaint, and in the master

23 complaint, we identified by photograph number per hotel, and

24 when I say per hotel, these infringements relate to about

25 thirty, 35 high-end hotels and we identified by photograph, by

1 Defendant, by picture number, and then delivered all the

2 pictures to them in PDF form.  And the biggest gripe I've heard

3 so far is that the PDF form doesn't allow them to search, but

4 what we would need from the Defendants is the following.  We

5 invited this -- and this is in our master complaint.  We invited

6 all Defendants to do the following.

7           To allow us to deliver to them in electronic form all

8 the photographs that we are say -- that we say are being

9 infringed per hotel, and what, then, the Defendants could do is

10 go back to their clients and search their library of

11 photographs, and let me stop and say why we think that's

12 necessary.

13           The infringement as we've identified it is not the

14 complete universe.  We do not have the Defendants' libraries of

15 photographs to identify as much of the infringement as we can,

16 and the reason we don't have that are -- is twofold.  One, these

17 photographs get taken down and reposted on -- what we can tell,

18 about every thirty days or so, so the easiest way to accomplish

19 the Defendants knowing exactly how they're infringing is for us

20 to deliver the photographs to them and let them search their own

21 libraries.

22           Now, we have had -- we've invited that for each and

23 every Defendant and all but, I think, one, which is Trivago, has

24 said, "no, we're not going to do it that way, you have to tell

25 us how we're infringing."  We've done that to the extent that we

1  can in our master complaint, by photograph, by Defendant, by

2  hotel, but it isn't the universe, and the amount of information

3  that we did gather in a short amount of time -- and I should

4  mention that my firm, Robbins Kaplan, is pretty new to the case,

5  so we haven't been here -- we've only been in the case since

6  last April or so, so if the Defendants were to do what we

7  invited, they would know the universe of infringement before we

8  would know the universe of infringement, and we're going to get

9  this in discovery anyway.

10         So they could also take the photographs that we did

11  provide as part of the master complaint and begin this process.

12  We have told them, there it is, a hotel in Miami, I'll use Setai

13  as an example, okay, Setai, your hotel is infringing the

14  following 15, 20, whatever the number is, photographs, please go

15  take our library and see if there aren't more, because you're

16  the only one in possession of those photographs.

17         Now, with all that said, your library photographs,

18  with all of -- let me also add, it's not hard per hotel, it

19  shrinks the universe to about 30 or 35 hotels, and that makes

20  it, from where we sit, manageable, but the overarching point

21  that I'm hearing, your Honor, is, it makes perfect sense to

22  start with the display-only photographs for all the reasons we

23  are discussing now.  They should -- the display-only is

24  identified.  It is not as complicated as identifying the rest of

25  the universe, and we are prepared to make a demand on those

1  parties because it's not as complicated.

2        So I -- what I'm hearing from Defendants so far is a

3  reason to go about it with this first group, display-only,

4  first.

5        THE COURT:  Okay.  When you're referring to delivering

6  to Defendants electronically the photos by hotel, by Defendant,

7  those are tied to your master complaint already, those are

8  photos that you've identified in your master complaint?

9        MR. BERG:  I would -- I believe that's right.  I think

10  it's gotta be the vast majority of them.  I don't know that it's

11  a hundred percent, but it, it certainly -- we know that universe

12  of photographs because, from our position, and I don't know that

13  Defendants agree or disagree with this, the number of

14  photographs at issue in the Singapore case is identifiable and

15  there -- that number we have.  And we're prepared to give --

16  it's actually about 3,000 photographs.  We're prepared to give

17  the Defendants our library so that they can go back and compare

18  it against their own library to identify the infringement.

19  Again, it's what we would get in discovery anyway, and it would

20  happen very quickly as it did with, to their (indiscernible)

21  credit, Trivago.

22        THE COURT:  So if I understand you correctly, you know

23  some -- you have some photographs that you already identified as

24  infringing or being the basis for infringement by Defendant and

25  that's in your master complaint, and what you're proposing is to

1  deliver to Defendants sort of the whole universe of photos

2  beyond what's in your master complaint, identified by Defendant,

3  and have them search their libraries to see if they also may

4  have infringed those?  Or -- is that what you're suggesting?

5          MR. BERG:  That is what I'm suggesting, and it

6  actually goes back to something Judge Seibel said at our, our

7  conference in November.

8          She basically said ownership is decided over all these

9  call it 3,000 photographs and Wave owns these photographs.  She

10 said it seems real easy as a matter of proving the case because

11 either the Defendant has the picture and has it on their website

12 or had it on their website at one point or not, and that seems

13 -- seemed to her to be a pretty easy thing to, to find out, and

14 we agreed and that's why we made the proposal we made.

15         THE COURT:  Okay, and so it -- the Defendants, though,

16 I'm assuming, are in opposition to this because it sounds like

17 they think you're having them do the homework of figuring out

18 your claims for you, like, which photos you think they've

19 infringed, beyond what you've already identified in the master

20 complaint.

21         Is that fair to say?

22         MR. BERG:  Well -- I'm sorry.

23         THE COURT:  I mean, I can ask the Defendants to speak

24 to this, but it seems like you have a universe you identified in

25 your master complaint, and it sounds like you don't want to

1  proceed with settlement discussions about that limited universe

2  because you think there are more out there that are infringing,

3  and that's something you would, of course, learn in discovery,

4  but haven't learned yet, so you'd like as part of the

5  settlement-discussion process for Defendants to go out, do some

6  limited discovery essentially of identifying in their search

7  library which photos they may also have infringed and then

8  identify that for you, so that you can then include that as part

9  of your settlement discussions.

10           Is that right?

11           MR. BERG:  That's, in part, true, because at our last

12  conference, each just -- not each, but most Defendants stood up

13  and said "we don't know how we're being accused of infringement,

14  we'd really like to know the answer to that," and the answer to

15  that is, we'll give you our photographs, you'll discover as much

16  of the universe as you can using your own library of photographs

17  to get to the answer that you say you want and one we would get

18  in discovery anyway.

19           We're not asking anyone to go off and do our work for

20  us.  It's based on the statements in open court that the

21  Defendants really wanted to know the answers to these questions.

22  That's one.  And, two, we have identified thousands and

23  thousands of photographs that are infringing as part of our

24  master complaint to put them on notice of what our claims are.

25  You can't receive the library of photographs that we provided

1   without at least being on notice of -- as much as we know, of

2   the infringement.  It's quite a bit as much as we know, but it

3   isn't the universe, and to get the universe, this is the easiest

4   way to do it.  So that's, that's all we're saying.

5           We're not saying we're not prepared to negotiate with

6   other folks.  That's not what we're saying.  We, we just think

7   it's going to be harder, as opposed to the display-only who get

8   a list of the photographs we have and a demand, and that, that

9   seems, to us, to be the beginning point.

10          THE COURT:  Okay.  I guess when I read Judge Seibel's

11  -- I mean, the transcript, I don't know if you've had -- the

12  transcript that I reviewed was dated November 29th.  Did you

13  have a conference with her after that date?

14          MR. BERG:  We did not.

15          THE COURT:  Okay.  So I read that transcript and I

16  guess what -- my takeaway from that was that she felt, heh, that

17  it was still the Plaintiff's responsibility to identify their

18  claims, what photographs they believe were being infringed upon

19  by which Defendant and when, and she contemplated that you would

20  be providing that information as part of your master complaint

21  in some handy-dandy spreadsheet form that could be searched by

22  Defendants, ideally in a native form, so that if they wanted to,

23  they could sort it and figure out how to slice and dice the data

24  that you've collected and it would be on that basis that

25  settlement discussions would move forward.

1            And I think you pointed out, I think it was you, or

2    someone from the Plaintiff's, that, well, there's more out

3    there, and if I'm not mistaken, Judge Seibel's view was, yes,

4    that's something you would get in discovery and if you needed

5    to, you could amend your complaint or amend and add them later,

6    but I didn't read her to say that you could -- that it was

7    Defendants' obligation, at least at this stage, to try to

8    identify your claims for you or identify the infringement for

9    you.

10           So I understand that your view is that that's going to

11   help you in formulating your settlement demand, but I guess

12   that's sort of the nature of having a settlement discussion at

13   an early stage of discovery.  You're -- that happens in every

14   case.  You have settlement discussions at a certain point with

15   some limited data and information, and based on that, you

16   formulate a settlement demand or evaluate your settlement

17   position and what you might want.

18           And I take it that your concern is that number's going

19   to be artificially low because you think there's a larger

20   infringement out there, but I guess we have to balance here the

21   need for efficiency at this early stage of the case where you

22   haven't had discovery into that and also your obligation to just

23   sort of go with the information you have and proceed from there.

24           So I guess your point, though, is the way to do that

25   would be to -- you could avoid the search library step if you'd

1  focused on display-only Defendants.  Is that right?

2          MR. BERG:  That's right, but I also have to say we

3  have actually done what Judge Seibel asked us to do and put

4  Defendants on notice, per Defendant, per photograph.  The only

5  thing that we couldn't do is give them a handy-dandy

6  spreadsheet, because that doesn't exist.  There are literally

7  1,500 separate spreadsheets which, when printed out, would look

8  like exactly what we delivered to the Defendants, so we did what

9  we had to do to give notice per Defendant, per photograph, which

10 is what we were driving at with Judge Seibel.  We don't have the

11 ability to have that handy-dandy spreadsheet.

12          But, again, what you said is exactly right, your

13 Honor.  This is all a reason to proceed first with the

14 display-only group, because it's just much more efficient and

15 easier.

16          THE COURT:  Okay.  So from what I heard from you, to

17 be able to make a demand, in the first instance, you want

18 insurance coverage information from each Defendant, and in order

19 to be able to do demands on each Defendant beyond just the

20 display-only Defendants, you would want to deliver to Defendants

21 electronically photos -- your photo library, have them each

22 search their photo library, and then identify for you which

23 additional photos they may be infringing.

24          Do I have that right?

25          MR. BERG:  Absolutely, yes.

1          THE COURT:  Okay.  And that's it, okay.  So is there
2 anything else that you think you need to be in a position to
3 provide settlement demands to Defendants?
4          MR. BERG:  I don't believe so, but I would ask Mr.
5 Silberfeld to weigh in if he disagrees with me.
6          MR. SILBERFELD:  Nothing additional, your Honor.
7          THE COURT:  Okay.
8          So let me turn to Defendants, and I don't know if it's
9 Ms. Oakley who will be speaking or if others want to chime in.
10          Based on your statements in the letter and what that
11 I'm hearing today, for you to be able to move forward, you have
12 a number of requests.  You want a native version of the PDF
13 spreadsheets that were attached to the master complaint, for
14 one.  Is that right?
15          MS. OAKLEY:  Yes, this is Carla Oakley, and, yes,
16 that's the top priority.
17          THE COURT:  Okay.  And at this point, you only have a
18 PDF version; is that the issue?
19          MS. OAKLEY:  That is correct.  We only have what was
20 attached to the master complaint, which is a PDF version, which
21 cannot be sorted in any way, shape, or form.
22          THE COURT:  Okay.
23          So, Mr. Berg, Mr. Silberfeld, why can't you provide a
24 native version?  What is the holdup?  Explain why this is a
25 negating issue for you.

1              MR. BERG:  Sure.  Sure, this is Gabriel Berg.

2              The real answer is, you know, there's nothing really

3    to sort.  The spreadsheet, and there are, again, about 1,500 of

4    them, when printed out, look exactly like what the Defendants

5    already have in their possession.  There's not -- if you tried

6    to sort the spreadsheet itself, it wouldn't do anything.  They

7    have the photograph number, but it's not linked to a picture,

8    it's not linked to evidence of a website that is exactly in --

9    as we, we captured it per Defendant.  Those things aren't linked

10   together.

11             What we have provided are a printout of the

12   spreadsheet which identifies exactly what the spreadsheet itself

13   identifies, and that is photograph numbers and we've provided

14   photograph numbers per hotel to each Defendant so that they can

15   know.  Certainly they know now the photographs that we are

16   saying they are infringing photographs.  They know that.  As we

17   know it.  So I'm not sure the spreadsheets will help them.

18             If they want 1,500 spreadsheets that aren't linked to

19   anything and are sortable for whatever reason, I guess we can

20   give that to them, but I'm not sure it's going to help.

21             THE COURT:  Okay, so what I'm hearing from you is,

22   there's no reason you can't provide it to them other than you

23   don't think it will be helpful to them.  Is that right?

24             MR. BERG:  Let me ask Mr. --

25             THE COURT:  It's feasible to do it, it's feasible; you

1  just don't think it -- you question whether it would be helpful.

2  Am I right about that?

3           MR. BERG:  I think that's right.  I think that's

4  right.  I will just ask Mr. Cohen to confirm.

5           That's right, isn't it?

6           (Brief pause)

7           MR. BERG:  Well, I believe that's right, your Honor.

8           THE COURT:  Okay.  So in my view, I don't see why you

9  shouldn't provide it.  They want it, it seems to be what they

10 need to be able to move forward, and it's of top priority.  It

11 seems silly to withhold it if it becomes an impediment to having

12 settlement discussions, so I think you should provide the native

13 versions of these spreadsheets to the Defendants.

14          So at the end of this, I'll set -- my goal is to set

15 deadlines for the exchange of all the data that's necessary to

16 formulate settlement demands.  I will set deadlines for that.

17 I'm going to set deadlines for Plaintiff to make demands for --

18 on the Defendants and for Defendants to respond, but I'll take

19 each of these issues one by one initially, I just want to tell

20 you what my end game is here, but -- so for the native version,

21 I think that needs to be provided.  I don't hear a reason why it

22 shouldn't be.

23          Okay, the second issue that I see is the asserted

24 photographs in a format that can be searched or organized, so

25 perhaps the Defendants, maybe Ms. Oakley, can explain to me what

1  exactly you need and why you need it.

2          MS. OAKLEY:  Yes, thank you, your Honor.  This is

3  Carla Oakley again.

4          And so the way the photos were provided so far are

5  multiple --

6          (Brief interruption)

7          MS. OAKLEY:  Multiple photos on individual sheets that

8  are JPEGs or -- excuse me, PDFs that we cannot search.  What we

9  need to be able to do is to easily locate the photos, match them

10 up with what's been identified per registration certificate, and

11 then, ideally, we are also asking for the alleged infringements

12 themselves so that we can match up what's the original and

13 what's the --

14         (Brief interruption)

15         THE COURT:  All right, Ms. Oakley, go ahead.

16         MS. OAKLEY:  We have been informed by Mr. Berg that --

17         (Brief interruption)

18         MS. OAKLEY:  Goodness, there are a lot of people are

19 going in and out here.

20         We've been informed by Mr. Berg that Plaintiff does,

21 indeed, have a library or some kind of share file of JPEGs of

22 these photos that could be provided, they just haven't been

23 provided for reasons not clear to us, but they -- it would help

24 us, again, tremendously just to be able to line up the data and

25 ascertain, you know, what's being alleged.

1         THE COURT:  So the asserted photographs at this point

2   --

3         (Brief interruption)

4         THE COURT:  -- that you need are in PDF form and not

5   in jpg form?  Is that the format issue?

6         MS. OAKLEY:  Correct, and, in fact, it's multiple

7   thumbnails on each page and then several pages per PDF, and

8   there are thirty different PDFs, so if you want to find a

9   particular photo, you can't do any kind of search --

10        (Brief interruption)

11        THE COURT:  You were saying you can't do any kind of

12  search that --

13        MS. OAKLEY:  So -- correct.

14        THE COURT:  Okay.

15        MS. OAKLEY:  If we look at the spreadsheet and it

16  identifies photo no. 4 from registration certificate X, Y, Z, we

17  would not be able to find that actual photograph and look at it

18  in the J -- in the PDFs that were found.  That's why we need the

19  JPEGs of the photos.

20        THE COURT:  Okay.  And that would help you for

21  purposes of linking which photograph applies to each defendant

22  and each infringement.  I thought that --

23        (Brief interruption)

24        THE COURT:  What I understood was the master

25  spreadsheet or -- in the master complaint already provides you

1  with the photographs per Defendant.  Is that not accurate?

2       MS. OAKLEY:  It identifies it only by number and by

3  registration certificate, but we don't see the actual

4  photograph, so to link up what is the photograph itself to the,

5  you know, to the number that's identified in the spreadsheet

6  into something searchable so that we can locate it, and then as

7  the second step, once we are provided the actual alleged

8  infringements, and those also have not been provided, we will

9  then be able to compare what's the original and what's the

10 alleged infringement.

11      THE COURT:  And when you say "the alleged

12 infringement," you're talking about something other than the

13 photograph at issue?

14      MS. OAKLEY:  Correct.  So we have the photograph at

15 issue, which is the photograph that Wave claims ownership in,

16 and then we have the alleged usage by each of the different

17 Defendants and so that would be the alleged infringement, and --

18      THE COURT:  And in what format would you expect them

19 to provide that to you?

20      MS. OAKLEY:  So we have requested that the alleged

21 infringement be actually linked to the spreadsheet.

22      We under -- Mr. Berg has said here today that they

23 don't have it in that fashion, but at the very least, we should

24 get, you know -- if we don't have it linked in that manner, we

25 should get a printout of each one of the alleged infringements.

```
 1          THE COURT:  You were moving to the third issue, so I
 2  understood the second issue we were talking about were the
 3  asserted photographs in a format that can be searched or
 4  organized, so that's this library that you're talking about that
 5  you want in JPEG form that you can search and --
 6          MS. OAKLEY:  Correct.
 7          THE COURT:  -- THEN separately you want active links
 8  to or screen shots of the alleged infringements themselves in
 9  some form.
10          MS. OAKLEY:  Correct.  Correct.
11          THE COURT:  And --
12          MS. OAKLEY:  And, again, we're told they exist, and
13  for some reason, they don't want to give them to us.
14          THE COURT:  Okay.  So, Mr. Berg, is that -- can you
15  explain what this issue is and where you stand?
16          MR. BERG:  Sure.  Thank you, your Honor.  This is
17  Gabriel Berg again.
18          What we've given allows them to see the photograph
19  that we say is infringing.  Let me start with that.  Our library
20  electronically that we delivered to Trivago, we can deliver
21  presumably to all Defendants.  I don't think that's a problem at
22  all.
23          The, the missing facts are, A, to satisfy all 90-plus
24  Defendants, that we have screen shots of their infringement, is
25  something that we have that will take a really long time to
```

1  compile.  It's fine, if that's the way the Court wants to go,

2  it's just going to take forever, because there are hundreds of

3  thousands, if not more, of these infringing photographs, but

4  what's more efficient is what we started with, and I'm going to

5  give another fact as to why, if we deliver our library and they

6  compare it against their own library, then we get closer to the

7  universe and it takes -- probably took Trivago about two weeks?

8  Three weeks?  Something like that.  The most.  And they got

9  their heads around what we said is the infringement.

10         But more importantly than anything, if we deliver to

11 the Defendants in electronic form the photographs that we own,

12 they can go and look currently, and this is something we've

13 spot-checked from time to time, currently, these photographs are

14 being used to promote the thirty-plus hotels, upscale hotels, on

15 almost every Defendant's website.  That's what the goal was

16 with, with some of the Defendants, they wanted to take the

17 photos down so that we can't come back later and say we sued on

18 day one, and on day 400, the photograph was still up.

19         So what we are suggesting, the method we are

20 suggesting, is one of efficiency and also should be something

21 the Defendants want so that they can take these photographs down

22 sooner rather than later.  To the extent that Ms. Oakley wants

23 screen captures of all the infringements of each Defendant, that

24 is going to take a really long time for us to compile per

25 Defendant.  I would say it would take months and months.

1          So, again, most of her clients are in the category of

2    not display-only, there are a host of Defendants, I think the

3    number's about 37, 38, who are display-only, and if we're going

4    to be ordered to produce now all the infringements that we know

5    in screen captures, then this is even more reason to do this in

6    phases because it is to the detriment of the most efficient

7    process, which is the one that I've described.

8          THE COURT:  Okay, so taking it one step at a time, the

9    first issue is with the asserted photographs in a format that

10   can be searched or organized, and what I understood from the

11   Defendants was that an electronic library of those photographs

12   would be sufficient for their purposes.

13         Am I right about that, Ms. Oakley?

14         MS. OAKLEY:  Yes, your Honor.

15         THE COURT:  Okay.

16         And what I heard from you, Mr. Berg, is that you have

17   that electronic library and that you are happy to provide that

18   to all of the Defendants and it's easy for you to provide, or

19   relatively easy.  Is that right?

20         MR. BERG:  I think that's correct.  I, I need to make

21   -- if you can give me some time so that I'm not saying something

22   wrong, I think that's correct, but I would need a day or two to

23   confirm that just with some folks who I need to speak to who are

24   sort of in charge of this library.

25         I believe it is correct that we can do that because I

1  believe we did it with Trivago, but I don't know that I should

2  -- that I can say we have it for each and every one of the

3  photographs that we know is infringing, but maybe it's true, I

4  just need a day to figure that out.

5        THE COURT:  Okay.

6        Okay, and so then the third issue that I was trying to

7  address is this alleged infringements.  Defendants are asking

8  for these active links or screen shots.  What have you provided

9  up till now that describes or puts the Defendants on notice of

10  the alleged infringement?

11        MR. BERG:  Yeah, what we've provided now is we've

12  broken down the photographs per hotel.  We've given them

13  numbers.  We have said to each and every Defendant, you are

14  promoting hotel X, and what -- from what we know, since we own

15  all 3,100 photographs, we have identified the following

16  photographs on your website at various points in time and we

17  have delivered, delivered a -- I think it's a huge file of

18  pictures with the number that we say is infringing that

19  corresponds to the hotel and to the Defendant and to the

20  website.  We've written that in our master complaint.

21        What we --

22        THE COURT:  And that was also based on -- oh, go

23  ahead, I'm sorry, Mr. --

24        MR. BERG:  That's okay.

25        THE COURT:  So you gave them a website.  Did you tell

1  them the date or when it was infringing?  Was that part of it?

2          MR. BERG:  It -- we, we have it at various points in

3  time along the continuum, literally over the last ten years, and

4  we did make that clear in our complaint.

5          THE COURT:  Okay.

6          MR. BERG:  What I think, what I think Ms. Oakley is,

7  is really searching for is the thing that's going to take months

8  and months and months, and it's something I agree they would

9  certainly get in discovery, which are the screen shots when,

10  again, most of these photographs are being displayed today.

11          THE COURT:  Okay.

12          So, Ms. Oakley, why do you need the screen shots

13  themselves or the active links if you have at the moment a

14  description of the photos that were allegedly infringing and the

15  websites that had the photo and dates or periods of time which

16  that photo appeared?  Why is that at least not sufficient for

17  initial settlement discussions?

18          MS. OAKLEY:  So as a first off, we disagree and, and

19  dispute that the photos are currently in use, so we have a

20  fundamental disagreement on that point.

21          Secondly, to the -- when you look at the spreadsheet,

22  there are -- you know, sometimes, it's a, a domain name,

23  sometimes it's a longer kind of a URL, but if you go to those,

24  those websites, you don't find those photos.  They're historic,

25  so they aren't something that we can immediately go use that

1    information to even find them.

2            To the extent it's something other than just a website

3    domain, it's a longer kind of URL or a string, to the extent

4    that we have, you know, spot-checked those, they're not even

5    active, we can't find them, so the identification that was

6    provided --

7            (Brief interruption)

8            MS. OAKLEY:  -- does not actually allow us to look at

9    the alleged infringement, so that's why we're saying, okay,

10   Plaintiff, you, you must know -- you must have in your

11   possession whatever it is that you identified in this

12   spreadsheet, just give it to us so that we can see.

13           Because, again, this is, this is historic, this is

14   old, they should have it, and we're just asking for them to

15   provide to us what they have, because we really cannot identify

16   what they contend is an alleged infringement, and there -- as

17   far as we know, there are no current infringements going on,

18   notwithstanding the contentions to the contrary.

19           THE COURT:  So is it your position that all of the

20   links or whatever URLs they provided in this spreadsheet aren't

21   working?  Are some working, but --

22           MS. OAKLEY:  Right.

23           THE COURT:  -- not others, or are none of them

24   working --

25           MS. OAKLEY:  Right.

1           THE COURT:  -- or able to be opened?

2           MS. OAKLEY:  So there are no links and the URLs, I'll

3    call them that, that are there just are -- you know, don't exist

4    anymore, they're old, and so that's why we're not able to

5    identify what is alleged to be an infringement.

6           THE COURT:  Okay.

7           So, Mr. Berg, when you put together the master

8    spreadsheet, those URLs were tied to something, I imagine, so

9    what's the underlying data that they're pointing to and where

10   does that exist?

11          MR. BERG:  There are screen captures over the years

12   that do identify at a specific moment in time the infringement.

13   However, this is what Ms. Oakley and I were discussing the other

14   day, we -- they're going to get that in discovery, every single

15   page that we have of infringement, and it's absolutely enormous

16   and we -- they're going to get it.  I do think that will take

17   months.

18          What I do think is more efficient is for us to provide

19   our library to the Defendants electronically and they will see,

20   I showed Ms. Oakley this the other day, that most of these

21   photographs are still being used with these hotel -- in the

22   promotion of these hotels.

23          Historical URLs that connect to nothing does not mean

24   that that same photograph is not up today.  This was a moment in

25   time and we spot-check it from time to time, or have done that

1   over the past ten years, which is why there is so much

2   information, but that snapshot in time doesn't tell the full

3   story.  It doesn't tell the story of how long it was up, whether

4   it's still up, when it came down, why it came down.  We are the

5   ones who are hunting and pecking, and that's why we have what we

6   have.  Certainly enough to satisfy the master complaint and put

7   everybody on notice.  We've done that.

8           What we -- is more complicated is to give them every

9   single page of a, of a screen shot, a moment in time when,

10  again, the easiest and most efficient way for them to know the

11  universe of infringement is to take our library, compare it

12  against theirs over the years, historically, and they will know,

13  and we will get it in discovery, exactly each allegation of

14  infringement.

15          We know some, we know snapshots, we've let them know

16  that, and it is far, far, far from the whole story, and that's

17  why we're suggesting this, this approach, so that's, that's --

18          THE COURT:  So, Mr. Berg, where do these snapshots

19  that you currently have exist?  How do they exist, and in what

20  format?

21          MR. BERG:  They -- the ones that I have seen exist in

22  PDF form, but it's, it's real easy to identify a picture, and

23  that's, that's sort of the easy part.

24          We have a Wave photograph, we have a Defendant, we

25  have their website up and we have a screen capture, and we link

1  it to a copyright registration number.  That, we have.  But we

2  have it in droves and droves and droves.  That's the problem, is

3  it will take months to produce all of that to each of the

4  Defendants, and it -- again, it tells a tenth of the story

5  because it's a snapshot in time.  And we did update it from time

6  to time, but it, it does not tell the complete story and far

7  from it, and --

8          THE COURT:  I'm still trying to understand how it

9  exists.  Is it in a database that's searchable?  How -- in what

10 format do you have these screen shots or these screen captures?

11 And are they --

12          MR. BERG:  Well, I --

13          THE COURT:  -- searchable, identifiable by Defendant?

14          I'm not saying -- I'm just wondering, I don't

15 understand yet in what format or how they exist in your records

16 at this stage.

17          MR. BERG:  The ones, the ones I've seen exist in PDF

18 form, those are the ones I've seen, that show the Defendant's

19 website that, show a date, that show a picture matched to

20 another picture.  That's -- those are the ones that I have seen

21 to show historically the infringement.

22          THE COURT:  Okay, and for each -- and so each PDF,

23 does it -- is it, is it clear which Defendant it's talking about

24 and --

25          (Brief interruption)

1          THE COURT:  -- which (indiscernible) about the date.

2          MR. BERG:  Yes, it does have that information as I've

3    seen it, for sure.

4          THE COURT:  Okay, so --

5          MR. BERG:  And that is the information that will take

6    months and months and months to compile per Defendant or to at

7    least disclose to them in way that I think they'll be able to

8    understand what we are saying, which I -- again, is not even

9    half the story, given what they know and given the photographs

10   that they have.

11         THE COURT:  So I guess I'm trying to understand why

12   these PDFs will take months and months to compile.  If they

13   exist in some form in a -- you know, on a database somewhere,

14   why, what's the reasoning behind them taking months to compile?

15         You're saying to slice and dies them by Defendant is

16   what would take long?  To have someone sort them and collate

17   them?  Because they haven't been -- because there's not

18   sufficient metadata to sort them or something, or there's no

19   vendor who can do that for you?  What exactly would take so

20   long.

21         MR. BERG:  I think it's all of the above, but I, I

22   need -- honestly, I need to speak to my technical folks to give

23   you a more precise answer.  I'm saying months and months and

24   months based on just what I've seen.

25         Maybe there are other ways to do it more efficiently;

1    I don't think so, but -- given the way I've seen it stored, but,

2    you know, I, I'm happy -- again, give me a couple days, I will

3    talk to our IT specialists and see if there is some easier way

4    to do that.

5              THE COURT:  Okay, so --

6              MR. BERG:  And, again --

7              THE COURT:  -- here's what I'm thinking.  I mean,

8    I...it sounds like at least with the asserted photographs in a

9    format that can be searched or organized, you have that in an

10   electronic library that you can provide or at least think you

11   can provide, so -- but you need a couple days to confirm that.

12             This active links or screen shot issue, it sounds to

13   me like we need more information to understand the format that

14   it's in and what's actually involved in providing it in some

15   form or fashion and what work goes into putting it together.

16             I'm not ruling here that you have to provide it.  What

17   I would like to know and have a better understanding is, like,

18   what backs up your view that it's going to take months and

19   months to provide, because, like, it just doesn't make sense to

20   me that it would, to produce a bunch of data.  What might take

21   time, I imagine, is if it's not in some searchable form that can

22   be organized easily, but in this day and age, with electronic

23   databases and vendors and a case of this scale and magnitude,

24   it's hard for me to imagine that there isn't some efficient way

25   to try to organize that data.

1          That's going to have to be done in discovery in any

2  case, but obviously I don't want to hold up -- if we hear from a

3  vendor that it's going to take months and months for some

4  reason, I don't want that to necessarily hold up your ability to

5  engage in settlement discussions, but I think we need more

6  information.

7          MR. BERG:  And that's all I'm trying to say is I want

8  to get you that information and --

9          THE COURT:  Okay, but I'm going to -- I think you --

10 I'd like you to get that information and I will circle back to a

11 deadlines about that, but I think it's important for us to

12 understand that before -- but my leaning right now is to have

13 some form of that information provided, absent some, you know --

14 if we can figure out an efficient way to do it.

15         Maybe it's some subset we can talk about, but it seems

16 to me they need to understand -- if they can't understand the

17 alleged infringement based on the spreadsheet you've provided so

18 far with these URLs that aren't working, I think they need to be

19 able to understand what it is you're talking about, and you have

20 that information, it just sounds like it's a lot of work to

21 compile and put in a format that can be produced.

22         So let's try to understand what that looks like to see

23 if there's some way to cut through it and maybe provide

24 something, perhaps short of, you know, whatever would take

25 months and months to compile.

1          MR. BERG:  Yes, I'm in the process of figuring that

2    out and I will figure that out and let the Court know.

3          THE COURT:  Okay.

4          MR. BERG:  But I do think we've given them enough

5    information that they can take the photographs they have and go

6    back to their own (indiscernible) --

7          THE COURT:  Okay.

8          MR. BERG:  -- and tell us more.

9          THE COURT:  Okay.  And so the other issues the

10   Defendants raise, but I wanted to understand the search.

11         So we've covered at least three of the issues that the

12   Defendants believed Judge Seibel ordered, or at least were

13   discussed with Judge Seibel, and those are ones that the

14   Defendants believe they need in order to proceed with settlement

15   discussions.

16         Am I right about that, Ms. Oakley?

17         MS. OAKLEY:  Yes, your Honor, and if I may, just two

18   quick things.

19         One is just to correct this notion that the Defendants

20   all have some kind of a library.  I just don't -- you know, Mr.

21   Berg has referenced that multiple times.  We haven't refuted it

22   or discussed it, but I just don't want to let that go, any

23   misunderstanding about it.  I think he's misconceiving what

24   exactly exists on the defense side.

25         I do want to -- I know I've sort of monopolized the

1  discussion here on behalf of Defendants, but Abby Ramore has had

2  the longest history.  She has the understanding of the past

3  discovery.  I think it would be useful to hear from her if she

4  has anything to add at this point.

5          THE COURT:  Sure, and I don't mean to exclude any

6  Defendants who want to speak up if there's more that needs to be

7  said.  I was just deferring to Ms. Oakley because it seemed like

8  they were nominating you to do that.

9          MS. OAKLEY:  Fair enough.

10          THE COURT:  Okay.

11          So go ahead, anyone else?  I guess that's Ms. --

12          MS. RAMORE:  Yes, thank you.

13          THE COURT:  Yeah, go ahead.

14          MS. RAMORE:  All right, thank you, Carla.  This is

15  Abigail Ramore, representing General Hotel Management, and as in

16  the letter and I think as Carla referenced, I am the person

17  that's been around as far as attorneys and been involved the

18  longest of everyone.

19          I do want to address and, perhaps, if it's okay with

20  your Honor, ask Mr. Berg some questions, because I have seen

21  some screen shots in the context of discovery as to the

22  threshold issue.

23          They're, of course, incredibly old.  They were

24  provided to my predecessor counsel in 2013 in a basically one

25  set of document production that was in individual PDFs, none of

1  which were searchable.  A lot of them were screen shots.  Some

2  of them were e-mails.  It was a mess.  It exists somewhere on a

3  hard drive.  I assume Plaintiff has a copy of the same hard

4  drive.

5          But it -- the vast majority did not have a date as to

6  when the screen shots were taken and things like that and did

7  not have, you know, sufficient information for us to kind of be

8  able to say, okay, I can run a search and send Ms. Oakley's

9  clients all of the ones that I have, because they just simply

10  weren't searchable, they were individualized PDFs and really not

11  -- so it -- I would be interested if Mr. Berg has additional

12  screen shots, or perhaps native files, that would be more

13  helpful to what the rest of the Defendants are looking for from

14  the perspective of the infringements.

15          THE COURT:  Right.  It sounds like -- and I'll let Mr.

16  Berg speak, but it sounds like what he was saying is he needs to

17  find out more information about that.

18          But, Mr. Berg, I don't mean to speak for you.  Do you

19  have more to add?

20          MR. BERG:  No, I just -- exactly what you said.  I

21  need some time to figure out exactly what it -- how we can get

22  it produced and if it is just PDF screen shots.  I've seen some

23  PDF screen shots as well, and I've also, I believe, seen some

24  electronic screen shots, I'm not a hundred percent sure though.

25  I just need more time.  Is the answer.

Wave v. General

1           THE COURT:  Okay.  And Ms. Ramore --

2           MS. RAMORE:  And then I also --

3           THE COURT:  -- did you have anything else to add?

4           MS. RAMORE:  Yes.  Thank you, your Honor.

5           I also want to address, and perhaps request some

6  clarification, with respect to Mr. Berg's proposal regarding

7  providing the library of the Plaintiff's photographs and having

8  the Defendants compare them with their, you know, to the extent

9  that they have libraries or whatever that looks like.

10          So I want to be clear that at least -- and I think I

11 can speak for the Defendants, but -- the rest of the Defendants,

12 but I will allow them to contradict me, but what was proposed

13 before Judge Seibel and what was proposed before in Mr. Berg's

14 letter of December 13th to the Defendants was not exactly as

15 what's being described here.  What we were asked to agree to

16 was, we will send you a list of all of the hotels and we want

17 you, Defendants, to send us every picture of that hotel that you

18 have, and I think that is...well outside the scope of what the

19 Plaintiffs would get in discovery because there might be -- you

20 know, these pictures, I think the most recent one, was taken in

21 2008.  I might have a picture of the Setai that was taken

22 yesterday.  I don't think the Plaintiffs are entitled to that

23 unless Wave took it.

24          And so I just would like some clarity from the

25 perspective of what exactly the Plaintiffs are looking for and

1  -- because, to me, what Mr. Berg just explained is entirely

2  different from what was requested of us, what was discussed

3  before Judge Seibel in November and she said no to, and what was

4  requested of us in December and that we all said no to.

5          If -- I think it would be helpful for us to be able to

6  respond to what Plaintiff's actually asking for if it's

7  different than what they asked for in November and December.

8          MR. BERG:  Yeah, I'm happy to address that

9  (indiscernible).

10          THE COURT:  Sure, go ahead.

11          MR. BERG:  What we had offered was to work

12  collaboratively, that's the best way to do this, literally to

13  sit down together, and using Wave's photographs in electronic

14  form, compare them against Defendants' library, to see where

15  there's a match.  I don't care if that is we give you our

16  photographs and Defendants do the search or we do it

17  collaboratively together or you give us your library and we'll

18  do it.  That was the offer and still is the offer.

19          If we have to do it, with the Defendants' library in

20  our hands, we'll do it.  If the Defendants are going to say,

21  "well, you wouldn't get that in discovery," then let's move to

22  another way to do it, which is for the Defendants to identify it

23  or to work together to identify closer to the universe of

24  infringements, as simple as that, and the answer was not -- was

25  no by most of the Defendants, that's absolutely true.

1          So, you know, putting the onus on us is fine, because
2    we're the Plaintiff and we're going to have to produce and
3    identify the infringement ultimately, but if there really were a
4    genuine desire to get your head around the universe of
5    infringement, one of the three options that I proposed, working
6    together, we do it with Defendant's library or they do it with
7    our library, those are -- those seem, to me, to be the most
8    efficient and best way for all parties to get these photographs
9    down off the internet and the infringement stopped.
10          MS. RAMORE:  Mr. Berg, I -- again, this is Abigail
11    Ramore -- I do just want to clarify that your letter of
12    September 13th expressly set forth what you wanted and it was
13    only one of those, give us your entire library.  As long as the
14    Defendants that are on this call are understanding that that's
15    not necessarily what your proposal is now, I think they can
16    evaluate it effectively.
17          And then just -- I also want to clarify and, again, I
18    apologize for sort of, for sort of taking over here, but I think
19    that it's helpful if we all understand what we're talking about
20    from the perspective of the distinction between the photograph
21    -- the universe of photographs and the universe of
22    infringements.
23          So as I understand it, the universe of photographs is
24    limited to photographs that were taken by or at the direction of
25    Wave of these hotels, and so that is narrow, right?  That's that

1  -- and, again, please correct me, Mr. Berg, if I'm wrong, the

2  photographs are different than the infringements.

3          So the universe of photographs, not every photo that's

4  ever been taken of the Setai or whatever hotel it is by any

5  photographer ever or maybe I was a guest there and took it with

6  my iPhone, the universe of photographs is the universe of

7  photographs that are set forth in the registration.  Is what

8  you're alleging -- what we're trying to get at here, I think, is

9  the universe of infringements of those photographs.

10         Is that an accurate characterization of where your

11 argument is as well?  That there's a -- we know what the

12 universe of photographs is, but we don't necessarily know what

13 the universe of infringements is.  Is that what Plaintiff's

14 alleging?

15         MR. BERG:  Yes.  We know the universe of photographs.

16 We have some idea on the Plaintiff's side of the universe of

17 infringement.  We have the ability in any of the three options

18 that I gave, and I did speak to this, also, at the conference we

19 were -- we attended when I stood up and said you all can learn

20 right now, we can give you the list of hotels, we can deliver

21 the photographs and you can go back to your clients and search.

22 That was another option that we also gave.  So the answer is,

23 the Defendants will make the universe more complete and that

24 will happen in discovery under any circumstances.

25         If we ask for libraries of photographs that the

1  Defendants have and we identify that they are our photographs,

2  that's discoverable, obviously.  What I was trying to do in

3  moving this along and maybe settling with a bunch of the

4  Defendants so that we can minimize or reduce the number of

5  Defendants was to --

6           (Brief interruption)

7           MR. BERG:  -- was to suggest ways principally to work

8  together to get to the universe of infringement and that's what

9  I've -- I was surprised to get a lot of resistance about,

10 frankly.

11          THE COURT:  So, Ms. Ramore, Ms. Oakley, any or

12 Defendant, with that understanding, do the Defendants feel that

13 they want to confer and decide whether they would be amenable to

14 the Plaintiff's suggestion as part of settlement discussions for

15 them to deliver to Defendants electronically their photo

16 library, which was going to be part of what I was going to order

17 anyway, the asserted photographs, in a format that can be

18 searched or organized and then Defendants can search that

19 against their library of photos, so essentially it would be

20 working together to find matches and using it as a way forward

21 in settlement discussions.

22          Is that something that's still on the table as an

23 option?

24          MS. OAKLEY:  This is Abigail --

25          MS. RAMORE:  No, your Honor.  This -- oh, I'm sorry.

1   I was going to defer to you anyway, so please go ahead.

2              THE COURT:  Okay.

3              MS. OAKLEY:  So this is Carla Oakley, and, no, your

4   Honor, that really just is not workable.

5              First of all, again, there's this misconception

6   regarding libraries.  The real critical point here going back to

7   is we need to know what the Plaintiffs currently intend is an

8   alleged infringement, and that should be the starting point,

9   that is what Judge Seibel identified as the starting point, that

10  is where this discussion should start.

11             THE COURT:  Right, and as I understood it, that was

12  identified in the spreadsheet of the master complaint, but the

13  URLs that were provided for you to see the screen shots or

14  whatever else was -- aren't workable so that you can't visually

15  see them, but at least in terms of text form, they've told you

16  that it was on this website on this date and this is the photo.

17             Is that right?

18             MS. OAKLEY:  That's what they did, but that doesn't

19  help us because we can't actually see the photograph that's

20  alleged to be an infringement of, of the original, so if they

21  have it, they ought to provide it.  It's as simple as that.

22             THE COURT:  Right, but I guess what I'm wondering --

23             MR. BAUER:  Your Honor, this is --

24             THE COURT:  Go ahead, yep.  Who is that?

25             MR. BAUER:  This is John Bauer from ETG.  I just want

1    to clarify -- you know, I have a transcript in front of me and I

2    want to underscore Ms. Oakley's point.

3            The issue that was squarely before Judge Seibel was

4    what was the burden on Wave to produce -- to prove its

5    infringement case, and, and on page 32, you know, line 22, THE

6    COURT:  Well, they may know, referring to Wave, I'm sorry, to

7    the Defendants, what they have infringed, but what they really

8    want to know is what you think you can prove they infringed."

9    And from that, and what is consistent with that transcript, was

10   that the burden of proof was on Wave to bring a complaint in a

11   manner that allowed the Defendants to know what they infringed.

12           And what we subsequently heard from Wave, and what has

13   been reiterated by Wave today, is that somehow now the parties

14   should cooperate together, mainly that the Defendants now have

15   to basically engage in discovery and do a significant amount of

16   work to help Wave present its case, and I think that is the

17   pushback that Wave got in the correspondence between the parties

18   and the pushback that you're hearing today.

19           THE COURT:  Okay.  Understood.  I think -- you know,

20   I've read the transcript as well, and I agree that the Court

21   expected the Plaintiffs to identify which photographs they're

22   claiming were used.  And I -- but what I don't know is whether

23   the Court understood how complicated it seemed -- or, or to what

24   extent it wasn't going to be enough to provide the photos

25   themselves and identify the date of infringement and which

1 website, that that alone doesn't seem to be enough for, for the

2 Defendants to be able to identify the alleged infringement with

3 enough specificity it sounds like to me.

4         But I hear your point, I think I do agree that Judge

5 Seibel assumed that the burden was going to be on Plaintiff in

6 the first instance to identify that information.

7         MR. BERG:  And --

8         THE COURT:  So what I'm going -- what I think we need

9 to do is find out more information from the Plaintiff about how

10 these screen shots exist and in what form and the feasibility of

11 compiling that data so I can understand better whether it will,

12 in fact, take months and months to compile or that there's some

13 short circuit to that process to enable this to move forward

14 more efficiently.

15         So I'm going to move on to the next issue, which

16 unless you want to be here all day with me, but I actually some

17 other things to do, too, and I want to resolve this --

18         MS. MENKOVA:  Your Honor, if you don't mind --

19         THE COURT:  Yeah.

20         MS. MENKOVA:  -- this is Anna Menkova for the Trip.com

21 Defendants.

22         I just want to make one more point, which is that the

23 2023 Defendants don't even have as much information as has been

24 provided in the master complaint.  The master complaint just

25 points us back to the complaint in our 2023 action, so we would

1  certainly appreciate, you know, Plaintiff and your Honor working

2  together and figuring out how to get that information to us,

3  but, you know, we don't even have what was provided here and

4  also have the argument that there's no jurisdiction over our

5  Defendants.

6          So I just wanted to get those points in before we move

7  on.  Thank you.

8          THE COURT:  Sure.  Thank you for that.

9          So --

10         MR. BAUER:  One thing, your Honor, if I may, John

11  Bauer from ETG.

12         THE COURT:  Yes.

13         MR. BAUER:  It is my understanding that that master

14  complaint, master complaint supersedes the other complaints.  Is

15  that correct?  By Plaintiff?

16         THE COURT:  I guess that's a question for Mr. Berg.

17         MR. BERG:  I, I'm sorry, the question is whether the

18  master complaint supersedes the other complaint?  It was not --

19         MR. BAUER:  Correct.

20         MR. BERG:  It does not technically supersede in a

21  strict, legal way.  We were trying to put everything in one

22  place so that motion practice isn't unwieldy, so that's the

23  answer to that.  But more importantly, the idea was to try to

24  make it all efficient.  That, that's what we were going for with

25  the master complaint.

```
 1              THE COURT:  Okay.  I want to just wrap up by trying to
 2   figure out whether there's additional information that the
 3   Defendants need in order for us to proceed with settlement
 4   discussions.  The additional asks that they had related to
 5   Plaintiff identifying the specific photographs litigated in the
 6   Singapore action.
 7              Is that still something the Defendants believe they
 8   need in order to proceed with settlement?
 9              MS. OAKLEY:  Yes, your Honor.  This is Carla Oakley,
10   yes.  And that should be easy.
11              THE COURT:  Okay.  And Plaintiffs, is that something
12   that you're unwilling to provide for some reason?
13              MR. BERG:  No.  It's not.
14              THE COURT:  You can provide that.
15              MR. BERG:  We've made the --
16              THE COURT:  That would be helpful.
17              MR. BERG:  I mean, they have a lot.  They have the
18   vast majority of it in what we have delivered already.  It's
19   just being a little...overstated what they think they don't
20   have.  We did do what Judge Seibel asked us to do.
21              THE COURT:  Okay.  So that's, from your perspective,
22   is a non-issue.  It's something that can be provided.  I know
23   you dispute whether it's already been provided, but it's not an
24   issue that needs to keep us from talking about settlement.
25              MR. BERG:  Yes.
```

1          THE COURT:  The second request was Plaintiff to

2   provide the Singapore case settlement agreement.  Is that

3   something that Defendants still feel they need absolutely to

4   proceed with settlement discussions, and why?

5          MS. OAKLEY:  This is Carla Oakley.  I'll jump in here

6   again and --

7          THE COURT:  Okay.

8          MS. OAKLEY:  -- take the lead.  I guess I've been

9   nominated.

10          Yes, your Honor, we do believe that that would be

11   helpful and very simple to provide and something we would get.

12          For example, it avoids a situation where you have

13   double payments, it's important for us to know the scope of the

14   claims that were actually resolved, it's relevant to

15   understanding and having some context for the monetary payment

16   that was made, so, yes, we think it, it's quite relevant.

17          Plaintiff has said it involves the same photographs,

18   it's, it would be useful for the discussion purposes and we

19   request that it be produced.

20          THE COURT:  Okay.  So, Plaintiffs, is it something

21   you're unwilling to provide, and if so, why?

22          MR. BERG:  So far we have been unwilling to provide it

23   simply because there's a confidentiality provision and that was

24   an important component to the settlement agreement, and

25   secondly, there's a dissent decree that gives the Defendants the

1   material information, and what I think I'm hearing is they just
2   want to be able to argue that the settlement as to GHM is a
3   settlement as to all.  That's, I think, what they're really
4   driving at.  And, obviously, that is going to be a heavily
5   disputed claim because it's -- the -- because it is going to be
6   a -- that's just not the case.  We didn't settle with all
7   Defendants.  And there are inconsistent letters that were
8   written by numerous Defendants, they were in a hurry to get to
9   trial, and now that we've prevailed, they're in a hurry to say,
10  "well, you prevailed, but GHM is all of us."

11          And that's going to be disputed and I think it's, it's
12  for another day.  It shouldn't have anything to do with
13  settlement.

14          THE COURT:  But I guess -- so the, so the first point
15  was confidentiality.  The second was relevance, I guess.  As to
16  confidentiality, is that still a hurdle?  And whose
17  confidentiality?

18          I guess I read in the letters that at least -- was it
19  GHM?  Who...

20          MR. BERG:  Yes.

21          THE COURT:  Waived that provision, so then that just
22  means the Plaintiffs haven't waived it.

23          MR. BERG:  That's correct, and I'm not in a position
24  to say now that we can.  I told, I believe it was Ms. Oakley,
25  that we were going to talk to our client about that, and we are

1  going to talk to our client about that, but I'm just not in a

2  position right this second to say anything else.  I mean, we're

3  still discussing it.

4          THE COURT:  Well, if you weren't able to provide the

5  entire settlement agreement, would be willing to provide at

6  least, you know, the relevant provisions about the scope of the

7  settlement, what claims were settled by whom and for how much.

8          MR. BERG:  Well, they know how much.  It's -- actually

9  nobody's asked us that, and I...need -- I need to think about it

10  and go back to our client with that.  That may be doable, but

11  let me just -- let me ask.  I think that's a little bit better

12  way, to ask for...

13          THE COURT:  Right.

14          MR. BERG:  What --

15          THE COURT:  If I understand it, Ms. Oakley, it's

16  relevant how much was paid and whether or not -- what the scope

17  of the settlement covered, right?  What the claims were, what

18  photographs, so the scope.  Those are the key provisions, am I

19  correct, or are there other provisions that I'm missing that you

20  think would be relevant?

21          MS. OAKLEY:  Those are the provisions that we can

22  imagine are in this agreement, but without seeing the agreement

23  in its entirety, and we are having a hard time appreciating or

24  understanding what could be so hotly confidential.  We requested

25  this back in November and in -- and Mr. Berg has been saying

1  since that November conference that he would talk to his client

2  about it.  It's been months.  We haven't heard what is so

3  incredibly sensitive and confidential that cannot be disclosed.

4          THE COURT:  Well, it sounds like he's thinking that

5  you're -- that it's going to be used to argue that somehow this

6  settles everything against everyone and there is no case?

7          Is that what I'm hearing from you, Mr. Berg?  Is that

8  what you're concerned about?

9          MR. BERG:  It's not, it's not what I'm concerned

10 about; it's what I know they're going to argue.  Now, I think

11 we're going to ultimately prevail on that, but that's, that's

12 way down the line, and, you know, again, what your Honor's

13 articulated is something a little bit -- is not the complete

14 agreement being declared no longer confidential.  Let me go back

15 and deal with that.

16         I've been working since November, we've been working

17 since November, and talking about this issue, but we're not

18 there yet and what your Honor suggested is a little different,

19 and perhaps a little bit better in my view, and we'll go see if

20 we can't do that, but the -- what you will hear, and I'm, I'm

21 going to just be willing to bet we're going to hear this, is,

22 well, GHM settled and we all settled and the photographs, as

23 Judge Seibel rightly pointed out, if they're on your website

24 today, then you're -- and she didn't say it this way, you're

25 likely infringing, what else could it mean.

 1          So, you know, that, that's -- let us go talk about

 2  that, but it's not as critical to where we are now in our view.

 3  It's just something they want so they can start making

 4  arguments.  That's all.

 5          THE COURT:  Okay.  And, I guess, beyond

 6  confidentiality, do you anticipate that you're going to resist

 7  production of that in discovery altogether?

 8          MR. BERG:  I have no idea.

 9          THE COURT:  Okay.

10          MR. BERG:  I just don't know.

11          THE COURT:  Okay.

12          MR. BERG:  I can't --

13          THE COURT:  So let's move on to the -- I mean, the

14  last two issues, I think, are just Plaintiff to identify the

15  display-only infringers and to make a formal detailed settlement

16  demand.

17          So going back to that issue, Mr. Berg, you at the

18  outset suggested identifying the display-only infringers and

19  starting with them.  How long -- and at some point along the way

20  at this conference, you mentioned 37 to 38 possible Defendants

21  fit into that category.  How long would it take you to identify

22  the discipline-only infringers and provide that information to

23  the Defendants?

24          MR. BERG:  Not long.  We've been working on that,

25  we're making a lot of progress on it.  I would suggest that if

1  we had a week and a half to two weeks, we could do that.

2         THE COURT:  Okay.  And then it -- similarly, how much

3  time -- would two weeks be sufficient to make a formal detailed

4  settlement demand to each Defendant?  Along with identification

5  of the display-only infringers?

6         MR. BERG:  Yes.  It's one in the same -- the process

7  to determine those things is one in the same, and we're, we're

8  -- they're proceeding in parallel.

9         THE COURT:  Okay.  So here's what I think -- is there

10  anything else that I didn't cover in what the Defendants believe

11  they need in order to have settlement discussions proceed?

12         MR. HOGAN:  Your Honor, this is Howard Hogan for

13  American Airlines.  I don't think I'm going to add additional

14  information, but I want to make sure that we're all clear on a

15  piece of the puzzle that will be important for any settlement

16  discussions.

17         I can only speak for American Airlines, but I assume

18  many of the other Defendants are similarly situated, in that

19  American Airlines does not have a hotel booking service.  It had

20  a website where other online travel agents could post, you know,

21  information in response to specific searches, so American

22  Airlines does not have a library of photographs or a database

23  that it can search.  It relied on other Defendants.

24         The screen shots that have been produced to date in

25  some cases identify which of the online travel agents were at

1  issue and in some cases don't, so from the perspective of a

2  company that I think -- I can't confirm this, Mr. Berg maybe

3  knows better, I think American Airlines is a display-only

4  Defendant and should be treated as one, but we don't know which

5  other Co-Defendants we need to look for contribution or

6  indemnification without having the full library of screen shots

7  so that we know who was posting these photographs on our

8  website.

9       THE COURT:  Understood.  And the full library, is that

10  not one and the same with the electronic library that the

11  Plaintiffs said they would produce in electronic form?

12       MR. HOGAN:  Yes, exactly.  I believe that if they

13  produced the screen shots that they have, we can at least know

14  which, which other online travel agents were responsible for

15  posting the photographs.

16       I guess I raised it at this juncture because when we

17  talk about a schedule for having intelligent settlement

18  discussions with display-only Defendants, it's hard to do that

19  discussion in a vacuum for those of us who are the most

20  tangentially related to the display of these photographs.

21       THE COURT:  I understand.  So let me make sure I

22  understand your point.

23       Was -- is your -- because it seemed like it was

24  combining the electronic photo library and also the screen-shot

25  issue, which I thought were kind of separate.  Am I right about

1  that?  So what you were talking about is an electronic library

2  of the photographs which the Plaintiffs are going to provide.

3  Separately, you wanted screen shots of the alleged infringement.

4           Is that what you also need as part of this discussion?

5           MR. HOGAN:  I was more focused on the screen shots,

6  because even if we get the library of their photographs, we have

7  no database to compare it to.  The only thing we can do is look

8  at the alleged infringements.

9           I mean, if I go on American Airlines vacations today,

10 I can't find these photographs.  I, I don't, I don't dis -- I'm

11 not disputing what Mr. Berg said earlier, maybe he's got a way

12 to, to do a search that will make them show up, but I couldn't

13 find them, and so knowing what exists is the only way a

14 display-only Defendant like American Airlines can find out who

15 else was involved in the display of the photograph.

16          THE COURT:  Okay.

17          And, Mr. Berg, when it comes to this category,

18 display-only Defendants, that you're talking about, do you know

19 how many of them would probably be in the same position as

20 American Airlines, in the sense that they're sort of a step

21 removed from the process?  Or is that --

22          MR. BERG:  Yeah, I, I --

23          THE COURT:  Go ahead.

24          MR. BERG:  I think the answer's very few, but whatever

25 -- I'm sure once we get into negotiations with this subgroup

 1  that we've been identifying today, I am sure we will become

 2  laser focused on 37 Defendants instead of 90-plus and be able to

 3  get whatever information is claimed not, not to be available,

 4  along --

 5          THE COURT:  Okay.

 6          MR. BERG:  -- the lines of what's been discussed for

 7  American Airlines once we get into this, but I think the

 8  answer -- short answer is very few.

 9          THE COURT:  Okay, so here's what we should do.  The

10  order of operations for us to proceed is for there to be a

11  meaningful exchange of information by both sides to allow the

12  parties to be in a position to get settlement authority,

13  evaluate their settlement position, and have settlement

14  discussions.

15          So the Plaintiffs indicated that they need information

16  about insurance coverage.  Do any of the Defendants have a -- I

17  haven't had asked this, objections to providing that at this

18  stage?  Under Rule 408.

19          MS. MENKOVA:  Your Honor, the Trip.com Defendants,

20  they are all but one international Defendants and do, you know,

21  object to providing that insurance information when we don't

22  believe that there's jurisdiction over our clients in the first

23  place.

24          THE COURT:  Okay.  Anyone else?  Okay.

25          So --

```
 1              MS. OAKLEY:  Your Honor, we're --

 2              THE COURT:  Go ahead.

 3              MS. OAKLEY:  -- we're just -- I'm sorry, this is Carla

 4  Oakley.  We're just going to need to double-check with our

 5  clients on that.

 6              THE COURT:  Okay.

 7              MS. OAKLEY:  So we're not in a position, I'm sorry, to

 8  say at this time.

 9              THE COURT:  Okay.

10              MS. PALLA:  Your Honor, this is Sapna Palla for Qatar

11  Airways.  We were just brought into this case last week.  We

12  also need to check with our client.

13              MR. SHAPIRO:  This is Sim Shapiro.  Same.

14              MS. HOLLAND:  This is Erica Holland for American

15  Express.  The same.

16              (Indiscernible as multiple parties speaking

17  simultaneously)

18              THE COURT:  Okay, all right.

19              MR. BAUER:  This is John Bauer for ETG.

20              I think for all the Defendants, obviously we're not in

21  a position to make a decision on the record today, that we would

22  just need some time to confer with our clients.

23              THE COURT:  Okay.  I mean, my expectation -- you can

24  confer with your clients and explain to me the basis for why you

25  would object, but I don't see how you could have a strong basis,
```

1  because under initial disclosures rules, you're supposed to

2  provide information about insurance coverage just automatically,

3  so this isn't outside the scope of what you'd have to provide in

4  the early stages of discovery in any case and it's clearly

5  relevant to the Plaintiffs going forward, so the Court is

6  inclined to order the parties to provide this kind of

7  information to the Plaintiffs as part of moving forward in this

8  settlement discussion.

9          But I will allow the parties -- so I'll give the

10 parties, the Defendants, time to, you know, submit -- to confer

11 with their clients to determine whether this is an issue and

12 whether or not they want to object, and if they do object,

13 Defendants should submit a letter to the Court by March 7th,

14 which is one week from today, setting forth the business for

15 your objections to providing the relevant insurance coverage

16 information.  Not hearing -- not having a letter received, I

17 will assume that the Defendants will produce that data to the

18 Plaintiffs by the end of next week, which is March 8th.

19         With respect to -- I'm going to put on hold...okay, so

20 the next issue of exchange, Plaintiffs are going to provide a

21 native version of the PDF spreadsheets that are attached to the

22 master complaint to the Defendants, along with the electronic

23 library of asserted photographs in a format that can be searched

24 or organized to all Defendants.

25         I -- so, Mr. Berg, can you confirm how long that would

1  take you to provide?

2         MR. BERG:  Uh...let me just...if I can have two to

3  three weeks on that, I could -- I think I can get that done.

4         THE COURT:  Okay.

5         MR. BERG:  It may be sooner, I'm just -- I don't have

6  to give you the wrong date and not be able to comply.

7         THE COURT:  Okay, so I'm going to set a deadline for

8  Friday, March 15th.  If there is an issue with that for some

9  reason, then reach out to me and explain the basis for why you

10 can't do it by that date and propose an alternative in terms of

11 active links to or screen shots of the alleged infringements.

12        So, Mr. Berg, you're going to go back and figure out

13 what exists, in what format, and I want to know more, so will

14 you be able to provide me with that information -- or how long

15 do you think it would take to provide it to me?  Is a week

16 enough time to figure that out or do you --

17        MR. BERG:  Yeah.

18        THE COURT:  So -- it is, okay, so I want you to get

19 back to me in a letter explaining what you've learned about the

20 active links to or screen shots of the alleged infringements by

21 Friday, March 8th, and we'll take it from there, once I see

22 what, what you say.

23        By...I think I'd like you to identify the specific

24 photograph litigated in the Singapore action to the Defendants

25 by March 8th.  Is there an issue with producing it by then?

```
 1          MR. BERG:  It will be whatever that electronic library
 2  that we supply will be...
 3          THE COURT:  It's, it's in that one, it's the same.
 4          MR. BERG:  Yeah.
 5          THE COURT:  One in the same?  Okay.
 6          MR. BERG:  Mm-hmm.
 7          THE COURT:  And I can't recall just what date I told
 8  you to produce that by.  The 15th?
 9          MR. BERG:  Yes.
10          THE COURT:  Okay.  In terms of the --
11          MS. OAKLEY:  With respect to -- I apologize.  This is
12  Carla Oakley.
13          To be very clear, the Singapore action involved 2,381
14  photographs, and then there was a finding of infringement as to
15  242 photographs.  What we are asking for is to know which of the
16  photos in the database --
17          (Brief interruption)
18          MS. OAKLEY:  -- which of those photos in the database
19  constitute those 2,381 and which constitute the 242.
20          THE COURT:  Okay.  So I -- that's what I understood
21  Mr. Berg was going to be providing, so --
22          MS. OAKLEY:  Okay.
23          THE COURT:  -- did you have -- what were you referring
24  to, Mr. Berg?  I mean, what I want you to do is identify the
25  specific photographs litigated in the Singapore action, which
```

1  you said you could do.  Is that not correct?

2         MR. BERG:  That's correct, but what Ms. Oakley said's

3  a little different in that there are -- well, let me just say it

4  this way, it'll be simple.

5         What we provide in electronic form is what we believe

6  was at issue in the Singapore case.  How about that?  I think

7  that's the best and easiest way to say it.  That's how I was

8  thinking about it anyway.

9         THE COURT:  So you're saying that the entire library

10 that you're going to produce is exactly what was litigated in

11 the Singapore action?

12        MR. BERG:  That's correct.

13        THE COURT:  Okay.  And so is there -- so, Ms. Oakley,

14 do you have any response to that?  I guess you're saying there's

15 some -- what I understood is, there was a universe, but then the

16 Court ruled on a subset of those.

17        MS. OAKLEY:  And so -- that --

18        THE COURT:  Go ahead, Ms. Oakley.  So what you want to

19 know --

20        MS. OAKLEY:  I'm sorry.

21        THE COURT:  -- is which of the -- what is the subset

22 among the universe?

23        MS. OAKLEY:  So in the U.S. cases, the Plaintiffs have

24 said there are 2,381 published photographs at issue and there

25 are, I think it's 756 unpublished photographs at issue.  What we

1  would like to -- and in the Singapore case, the decision talked

2  about 2,381 photographs.  We would like to know which of the

3  3,000-plus supposedly at issue here in the US, which of those

4  are the two hundred -- 2,381 that were identified by the

5  Singapore court and also the 242 that were identified as

6  infringements.

7          THE COURT:  Okay.

8          So, Mr. Berg, it sounds like your electronic database

9  will be broader and include more photographs than what were

10  litigated in the Singapore action, and so is -- will it identify

11  for the Defendants which of those were litigated in the

12  Singapore action specifically as well as the subset that the

13  Court found infringed?

14         MR. BERG:  It's, it's two answers.  The -- what was

15  litigated in Singapore was ownership over the entire three

16  thousand call it one hundred or 3,200 photos and ownership is

17  where we start.  All of those were at issue in the Singapore

18  case.

19         As to the 242 that were found to be infringing as to

20  GHM alone, that's a subset that may require more time for us to

21  identify; I don't know, because I wasn't involved in the

22  Singapore, but what I can tell you is, when we deliver the 3,100

23  or two hundred photographs that were published and unpublished

24  that were at issue from our perspective in Singapore, that is

25  the universe at issue in this case.  That's a starting point.

1          As to the subset of 242 infringements as to GHM alone,

2  I don't know if I can do that by the 15th, but I can certainly

3  try.  It just seems unnecessary, I guess, is my point.

4          THE COURT:  I guess I'm trying to understand why it

5  would be difficult.  They didn't identify them by photograph or

6  registration number in some specific way so that you should be

7  able to know which they were?  I mean --

8          MR. BERG:  It's --

9          THE COURT:  -- why -- I guess I'm trying to understand

10 why it's so com -- why it's complicated.

11         MR. BERG:  No, I -- we can get that.  I just don't

12 know if I can get that by the 15th, because I have to deal with

13 the Singapore file and figure out which 242 they are.  I might

14 be able to do it, I just don't know.  And it's not -- I'm not

15 trying to not give it to them, I'm just trying to make it so

16 that the timeline stays the same.  And it's not --

17         THE COURT:  Okay.

18         MR. BERG:  -- clear to me why they would need that for

19 this purpose.

20         THE COURT:  Okay.

21         Ms. Oakley, why -- is this really a gating issue?  Why

22 do we need to get this before we engage further in settlement?

23         MS. OAKLEY:  So the 242 is not quite as critical, but

24 it, it does seem to us that it should be both easy and is

25 critical to know out of the universe of the 3,000-plus that are

1  coming which ones are the 2,381 that were discussed in the

2  Singapore decision.

3          THE COURT:  All right.

4          MS. OAKLEY:  And that should be easy for them to do.

5          MR. BERG:  That, that --

6          THE COURT:  Okay, well, I think, for now, I'm going to

7  defer that.

8          I mean, because I think what may -- that -- I'd like

9  you to find out, Mr. Berg, what it would take for you to

10  identify that two-thousand-something subset that Ms. Oakley is

11  referring to, what work were to be involved, because it's not

12  clear to me yet whether that's -- how important that is for

13  purposes of moving forward in, in our discussions, but I'd like

14  you to look into that, and include that in the letter that

15  you're going to be sending to me when you look into the active

16  links and screen shots.

17          MR. BERG:  I will do that, your Honor.

18          THE COURT:  Okay.

19          And in terms of the settlement agreement, my proposal

20  is that Mr. Berg talk to his client and provide to the

21  Defendants the payment amount and the scope of the, the scope of

22  the settlement, what it covered, what claims, what photographs,

23  which I expect is some excerpt or certain paragraphs of the

24  settlement agreement, and that's what I would propose Plaintiffs

25  provide to the Defendants.

1          So I'm going to give you, Mr. Berg, an opportunity to

2   discuss that with your client and let me know your position, but

3   that's what I'm going to propose you provide, and you can

4   include that in the same letter that tells me about the active

5   links and screen shots.

6          I'm -- you're going to provide the Defendants with the

7   display-only infringers.  I think you told me you would need two

8   weeks to do that?  Is that right?

9          MR. BERG:  Yes, at the --

10          THE COURT:  Okay.

11          MR. BERG:  -- outside, that -- yes.

12          THE COURT:  So March 15th is what I want you to do,

13   provide that information.  If it takes longer for some reason,

14   I'd like you to explain that to me, including why.  And...let's

15   see.

16          Within...I guess by, by March 15th, will you be able

17   to provide a formal detailed settlement demand to each of the

18   Defendants?

19          (Brief interruption)

20          MR. BERG:  To each of the 37 display-only or all of

21   the Defendants?

22          THE COURT:  Well, let's start with the 37 to 38

23   display-only.

24          MR. BERG:  Yes, as to that subset, we can by the 15th.

25   As to all Defendants, it sounds like we're, we're not in a

1  position to do that yet.

2          THE COURT:  And you wouldn't be in a position because

3  you're saying you would need to do that sort of matching library

4  issue to get to the larger group?

5          MR. BERG:  Yes, and to, to have everybody collaborate

6  to figure this out.  That's one part of it.  And another part of

7  it, it sounds like the Defendants need to get from us some of

8  this information and digest it.

9          So for those two reasons, I'm not sure we'll be in a

10 position to make demands on other Defendants that quickly.

11         THE COURT:  Okay.  So, I think, let's start there, so

12 by March 15th, you'll be able to provide detailed settlement

13 demands to that subset of display-only infringers, including the

14 rationale supporting your claim.  Is that correct?

15         MR. BERG:  Correct.  Yes.

16         THE COURT:  Okay, so let's start there.

17         And the next deadline -- so once the parties get that

18 March 15th demand, I think the Defendants indicated that they

19 would need a week to respond.

20         Does anyone believe differently?  Assuming you get all

21 the information.  Or do you think you'll need longer in light of

22 when the Defendant -- the Plaintiff will be producing the other

23 data to you?

24         MS. RAMORE:  Your Honor, this is Abigail Ramore.

25         I think...it's a different answer for the Defendants

1  because not all the Defendants are going to be getting demands,

2  right?  So --

3          THE COURT:  Right, well, I'm talking -- I guess you're

4  right.

5          MR. BERG:  Yeah.

6          THE COURT:  I mean, I -- to the extent that -- let's

7  just -- you don't know yet who you are, display-only infringers.

8  I guess you could guess, so you're right, I guess I don't know.

9          So why don't we just start with the demand's going to

10  be made by March 15th.  I am going to follow up after that date

11  with pre-settlement conference calls with each of the Defendants

12  to receive a demand, so my clerk will be in touch and we will

13  setup calls.  They will be half-hour attorneys only, ex parte.

14  Plaintiff, I will do the same with you.  So that I can get a lay

15  of the land and try to understand what makes sense and how best

16  to proceed.

17          So, Plaintiff, when you send out those settlement

18  demands, as part of your letter to the Court, I also want you to

19  identify who these display-only infringers are so I know who

20  receives settlement demands.

21          MR. BERG:  Sure.  Of course.

22          THE COURT:  Okay.  So I think we'll take it from there

23  and see where we are after you make your initial settlement

24  demands and whether and we'll talk among the various Defendants.

25  If necessary, I'll convene another conference like this one with

1  everyone so we can decide whether based on the information

2  provided, the parties are on board with moving forward with this

3  process, of display-only infringers versus some other method,

4  but to me, at this point, it seems like to get things moving, we

5  at least need to exchange some vital information and see where

6  we are.

7           Does anyone have any --

8           MS. RAMORE:  Your Honor --

9           THE COURT:  -- questions see where we are or anything

10 to add before we --

11          MS. RAMORE:  Yes, your Honor.  This is Abigail Ramore.

12 I apologize for interrupting.

13          I just want to make sure that even if the display-only

14 Defendants get separate demands, will the identity of the

15 display-only Defendants be disclosed to the group as a whole.

16          THE COURT:  I assume that it would be.  Yes.

17          MR. BERG:  Yes.  Yes.

18          THE COURT:  That would be part of -- yeah, go ahead,

19 Mr. Berg.

20          MR. BERG:  The letter -- I'm sorry.  I don't mean to

21 interrupt, your Honor.

22          It'll be -- the Court's already said that the Court

23 wants to know who they are and so it'll be part of the March, I

24 think, 15th letter, if not, the March 8th letter, whichever one

25 is appropriate.  We will let everybody know.

```
 1              THE COURT:  Okay.

 2              Are there any other issues or questions that need to

 3  be addressed?  I'm almost afraid to ask at this point, but

 4  anybody, this is your chance.

 5              MR. SHAPIRO:  Your Honor, this is Sim Shapiro.  It's

 6  possible I missed your Honor saying this.  Am I correct that in

 7  the meantime, with all this going on, any answer of the amended

 8  complaint is stayed until --

 9              THE COURT:  Yes.

10              MR. SHAPIRO:  -- further notice?

11              THE COURT:  Yes.  So Judge Seibel, as I understand it,

12  has put all of that on hold for now, no discovery, no motion

13  practice, no answers, while you all discuss settlement or at

14  least figure out if there's some subset of people who might

15  settle, and then she set a conference in April, potentially, to

16  talk over what's left or what's remaining.

17              She also indicated in her -- in, I guess, her

18  transcript or discussion with you all that if you need -- if

19  things are moving in the right direction and you need more time,

20  then she's happy to adjourn that April date, so there's room in

21  the schedule right now where she's seeing if we can make this

22  work, so...you're off the hook on any answers and motion

23  practice at this moment, with the focus, a laser focus, on

24  trying to see if some portion of this case can be settled or

25  resolved.
```

1          MR. SHAPIRO:  Thank you, your Honor.

2          THE COURT:  Sure.

3          Anyone else?

4          Okay, well, with that, then I'll enter a minute entry

5    which will set out the various deadlines that I mentioned in

6    this call, and then we'll take it from there.  My hope is that

7    within a couple of weeks, we'll identify the best way to move

8    forward once you've shared some of this vital information to put

9    you in a position to have a meaningful discussion.

10          So we will adjourn for today.  Thanks very much,

11   everyone.

12          ALL:  Thank you, your Honor.

13

14   Certified to be a true and accurate

15   transcript of the digital electronic

16   recording to the best of my ability.

17   _____

18   Tabitha R. Dente, RPR, RMR, CRR

19   U.S. District Court

20   Official Court Reporter

21

22

23

24

25