# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

THE WAVE STUDIO, LLC,

               Plaintiff,

     -against-

GENERAL HOTEL MANAGEMENT LTD., et al.,

               Defendants.

Case No. 7:13-cv-09239-CS-VR

**MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO DISMISS FILED BY TRIP.COM GROUP LIMITED, TRIP.COM TRAVEL SINGAPORE PTE. LTD., SKYSCANNER LTD., AND MAKEMYTRIP, INC. AND IN SUPPORT OF CROSS MOTION FOR LEAVE TO AMEND**

**LEWIS & LIN, LLC**

Michael D. Cilento, Esq.
77 Sands Street, 6th Floor
Brooklyn, NY 11201
Michael@iLawco.com
Tel: (718) 243-9323
Fax: (718) 243-9326
*Attorneys for The Wave Studio, LLC*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.    The Trip.com Lineage. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B.    Targeting the U.S. Market. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      i.    Trip.com . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      ii.    Trip.com Singapore. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      iii.    Skyscanner . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

C.    U.S. Infrastructure Powers the Delivery—and Reproduction—of Infringing Content. . 6

D.    Plaintiff Brings Newly Accrued Copyright Claims Against Rebranded Trip.com
    Entities, Skyscanner and MakeMyTrip . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

I.    THE COURT SHOULD GRANT PLAINTIFF'S CROSS-MOTION FOR
    LEAVE TO AMEND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    A.    The Procedural Posture Justifies Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    B.    The Proposed Amendments Should Be Granted, There is Neither Undue
        Delay Nor Undue Prejudice. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    C.    Amendment is Curative and Not Futile. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

II.    THE COURT HAS JURISDICTION OVER THESE PARTIES AND CLAIMS. . . . . . 12

    A.    The Jurisdiction Movants Conduct Business in the U.S. and Must Answer
        for Their Conduct Here Under Rule 4(k)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      1.    No State Has General Jurisdiction Over the Jurisdiction Movants. . . . . . 14

      2.    Jurisdiction Comports with Due Process Because Movants Have
          Minimum Contacts With the United States. . . . . . . . . . . . . . . . . . . . . . . 17

      3.    Exercising Jurisdiction is Fair and Reasonable. . . . . . . . . . . . . . . . . . . . 19

    B.    The Copyright Act Reaches Defendants' Domestic Conduct. . . . . . . . . . . . . . . 20

III.    MOVING DEFENDANTS' MOTION TO DISMISS ON OTHER GROUNDS
    SHOULD BE DENIED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

     A.     Wave Sufficiently States Claims Against All Movants . . . . . . . . . . . . . . . . . . . . 22

     B.     Wave's Claims Were Timely Brought. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## TABLE OF AUTHORITIES

*Cases*                                                                 *Pages*

*Abbas v. Dixon*,
    480 F.3d 636 (2d Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Astor Chocolate Corp. v. Elite Gold Ltd.*,
    510 F. Supp. 3d 108 (S.D.N.Y. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
    305 F.3d 120 (2d Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Bilt–Rite Steel Buck Corp. v. Duncan's Welding & Corr. Equip., Inc.*,
    No. 90-311, 1990 WL 129970 (E.D.N.Y. Aug. 24, 1990). . . . . . . . . . . . . . . . . . . . 11

*Bray v. Purple Eagle Ent., Inc.*,
    No. 18-5205, 2019 WL 1549044 (S.D.N.Y. Jan. 18, 2019). . . . . . . . . . . . . . . . . . . .13

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
    69 F.Supp. 3d 342 (S.D.N.Y. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 25

*Carmouche v. Tamborlee Mgmt., Inc.*,
    789 F.3d 1201 (11th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Citigroup Inc. v. City Holding Co.*,
    97 F.Supp.2d 549 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Clark v. Hanley*,
    89 F.4th 78 (2d Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*DoubleLine Cap. LP v. Construtora Norberto Odebrecht, S.A.*,
    413 F. Supp. 3d 187 (S.D.N.Y. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Dow Jones & Co., Inc. v. Juwai Ltd.*,
    No. 21-7284, 2023 WL 2561588 (S.D.N.Y. Mar. 17, 2023) . . . . . . . . . . . . . . . . . . .20, 21

*Dularidze v. Turk Hava Yallario A.O.*,
    No. 20-4978, 2024 WL 3567332 (S.D.N.Y. July 28, 2024) . . . . . . . . . . . . . . . . . . 14, 17

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*Elektra Ent. Grp., Inc. v. Barker*,
    551 F. Supp. 2d 234 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Elektra Ent. Grp., Inc. v. Santangelo*,
    No. 05-2414, 2005 WL 3199841 (S.D.N.Y. Nov. 28, 2005). . . . . . . . . . . . . . . . . . . 23

*Foman v. Davis*,
    371 U.S. 178 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*Franklin Elec. Publishers, Inc. v. Unisonic Prod. Corp.*,
    763 F.Supp. 1 (S.D.N.Y.1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*George Moundreas & Co SA v. Jinhai Intelligent Mfg.*,
    2021 WL 168930 (S.D.N.Y. Jan. 18, 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14, 17

*Glidepath Holding B.V. v. Spherion Corp.*,
    No. 04-9758, 2007 WL 2176072 (S.D.N.Y. July 26, 2007) . . . . . . . . . . . . . . . . . . . . . . 24

*Glob. Network Commc'ns, Inc. v. City of New York*,
    458 F.3d 150 (2d Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Grupo Dataflux v. Atlas Glob. Grp., L.P.*,
    541 U.S. 567 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Guan v. Lash Princess 56 Inc.*,
    No. 22-2552, 2023 WL 2242050 (S.D.N.Y. Feb. 27, 2023) . . . . . . . . . . . . . . . . . . . 12, 13

*Gucci Am., Inc. v. Weixing Li*,
    135 F. Supp. 3d 87 (S.D.N.Y. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Herrmann Int'l, Inc. v. Herrmann Int'l Eur.*,
    2021 WL 861712 (W.D.N.C. Mar. 8, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Jenn–Air Prods. Co. v. Penn Ventilator, Inc.*,
    283 F.Supp. 591 (E.D. Pa. 1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Kelly–Brown v. Winfrey*,
    717 F.3d 295 (2d Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Lawson v. Full Tilt Poker Ltd.*,
    930 F. Supp. 2d 476 (S.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Lensky v. Turk Hava Yollari, A.O.*,
    2023 WL 6173334 (2d Cir. Sept. 22, 2023). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15, 18

*Leonard F. v. Israel Disc. Bank of N.Y.*,
    199 F.3d 99 (2d Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

*Live Face on Web, LLC v. Biblio Holdings LLC*,
    2016 WL 4766344 (S.D.N.Y. Sept. 13, 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20, 21

*Manik v. Avram*,
    No. 06-477, 2006 WL 2942854 (S.D.N.Y. Oct. 13, 2006) . . . . . . . . . . . . . . . . . . . . . . 23

*McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*,

295 F. Supp. 3d 404 (S.D.N.Y. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Michael Grecco Prods. v. RADesign, Inc.*,
    112 F.4th 144 (2d Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Michael Grecco Prods., Inc. v. Valuewalk, LLC*,
    345 F. Supp. 3d 482 (S.D.N.Y. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Miller v. Mercuria Energy Trading, Inc.*,
    291 F. Supp. 3d 509 (S.D.N.Y. 2018), *aff'd*, 774 F. App'x 714 (2d Cir. 2019). . . . . . . . 18

*Mrs. U.S. Nat. Pageant, Inc. v. Miss U.S. Organization*,
    875 F. Supp. 2d 211 (W.D.N.Y. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Mucha v. Volkswagen Aktiengesellschaft*,
    40 F. Supp. 3d 269 (E.D.N.Y. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Ouedraogo v. A-1 Int'l Courier Serv., Inc.*,
    No. 12-5651, 2013 WL 3466810 (S.D.N.Y. July 8, 2013) . . . . . . . . . . . . . . . . . . . . . . . 11

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
    681 F.3d 114 (2d Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Pasternack v. Shrader*,
    863 F.3d 162 (2d Cir. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Pearson Educ., Inc. v. ABC Books LLC*,
    No. 19-7642, 2020 WL 3547217 (S.D.N.Y. June 30, 2020) . . . . . . . . . . . . . . . . . . . . . 13

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    572 U.S. 663 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Porina v. Marward Shipping Co.*,
    521 F.3d 122 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 17

*RegenLab USA LLC v. Estar Techs. Ltd.*,
    335 F. Supp. 3d 526 (S.D.N.Y. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19

*Richardson v. Complex Media, Inc.*,
    No. 20-6201, 2021 WL 230192 (S.D.N.Y. Jan. 22, 2021). . . . . . . . . . . . . . . . . . . . . . . 21

*Richardson Greenshields Sec., Inc. v. Lau*,
    825 F.2d 647 (2d Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Shad v. Zachter PLLC*,
    No. 23-10724, 2024 WL 2061703 (S.D.N.Y. May 3, 2024) . . . . . . . . . . . . . . . . . . . . . . .12

*Shpak v. Curtis*,
    No. 10-1818, 2012 WL 511478 (E.D.N.Y. Feb. 14, 2012) . . . . . . . . . . . . . . . . . . . . 11, 24

*Shropshire v. Canning*,
    809 F. Supp. 2d 1139 (N.D. Cal. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Spanski Enters. v. Telewizja Polska, S.A.*,
    883 F.3d 904 (D.C. Cir. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re SPS I Fundo de Investimento de Acoes - Investimento no Exterior*,
    No. 22-118, 2024 WL 917236 (S.D.N.Y. Mar. 4, 2024) . . . . . . . . . . . . . . . . . . . . . . . . .16

*In re SSA Bonds Antitrust Litig.*,
    420 F. Supp. 3d 219 (S.D.N.Y. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14-16

*State St. Glob. Advisors Tr. Co. v. Visbal*,
    431 F. Supp. 3d 322 (S.D.N.Y. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Ticketmaster LLC v. RMG Techs., Inc.*,
    507 F. Supp. 2d 1096 (C.D. Cal. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*United States v. Livecchi*,
    711 F.3d 345 (2d Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

*Winner v. Tryko Partners, LLC*,
    333 F. Supp. 3d 250 (W.D.N.Y. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Winter v. Natural Resources Defense Council, Inc.*,
    555 U.S. 7 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

### Statutes & Rules

Fed. R. Civ. P. 4(k)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fed. R. Civ. P. 10(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Fed. R. Civ. P. 15(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

### Other Proceedings

*The Wave Studio, LLC v. Trivago N.V.*,
    Case No. 23-3586 (S.D.N.Y.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## PRELIMINARY STATEMENT

This is not a case about speculative wrongdoing or foreign-only conduct. It is about global companies operating U.S.-facing businesses, profiting from infringing content distributed to U.S. users, and now seeking to avoid accountability. The Moving Defendants seek to dismiss this action by reframing factual disputes as legal deficiencies and urging the Court to adopt their unsupported assertions as truth. That is not the standard on a Rule 12 motion. The operative question is whether Plaintiff, The Wave Studio, LLC ("Plaintiff" or "Wave") can state a plausible claim over which this Court may exercise jurisdiction—and it can.

To the extent that its allegations as to the Moving Defendants lack specificity, Wave proposes amendments to supply this detail: jurisdictional facts, time periods of infringement, and allegations of domestic predicate acts. These are not speculative allegations, but rather supported by material already present in the record and detailed throughout this brief. This is Wave's first opportunity to amend the Master Complaint as to the Moving Defendants, who had not been consolidated into the instant action when the Master Complaint was filed, and the amendments are thus both procedurally fair and substantively useful, especially given the complexity and opacity of the corporate structures at issue.

The jurisdictional argument set forth by a subset of the Moving Defendants is unavailing. As no affidavit has been submitted, nor evidence presented, to rebut Wave's allegations, the Motion's jurisdictional challenge collapses under Rule 4(k)(2). Indeed, the record and proposed allegations show deliberate, ongoing commercial activity directed at U.S. consumers, including the reproduction and distribution of infringing works via U.S.-based infrastructure.

The rest of the Motion fares no better, particularly in the face of the curative, proposed amended allegations. In sum, the Moving Defendants' attempt to shutter Wave's claims for a

failure of pleading should be rejected. The motion to dismiss should be denied, and leave to
amend granted.

<u>**STATEMENT OF FACTS**</u>

**A.    The Trip.com Lineage**

Today, Trip.com Group Ltd. is a major global online travel agency headquartered in
Shanghai with a significant and growing global footprint, including in the U.S.. Docket No. 332
¶ 86. But "Trip.com" as a brand has changed hands several times since 2010.

In 2016, Gogobot Inc, a U.S.-founded Delaware corporation, purchased the "Trip.com"
brand from Expedia, Inc. Ex. 4 at 2.[1] In November 2016, Gogobot rebranded its company and
website to Trip.com. Multinational travel company Ctrip.com International, Ltd. ("Ctrip"), then
the "second largest global online travel agency in terms of market cap," voiced interest in a
potential entry into the U.S. market. Ex. 2; *see* Ex. 1 ¶ T2.[2] In November 2017, to expand its
operations into the U.S., *see id.*, Ctrip bought two of the world's most widely used travel
sites—Trip.com and Skyscanner Holdings Limited ("Skyscanner")—in rapid succession. Ex. 3.
Ctrip inherited the Trip.com U.S. and global business and operations, took over the trip.com
domain, and incorporated Trip.com's content and technology into Skyscanner's local
recommendations and booking tools. Ex. 4 at 10-11. Ctrip then folded these new acquisitions
into a new multinational flagship brand, Trip.com Group Ltd., building a vertically integrated
booking empire. *Id.*

In 2019, Trip.com acquired a nearly 49% stake in MakeMyTrip through a share swap
deal. Ex. 5; *see* Ex. 1 ¶ T14, T27. As the largest shareholder in MakeMyTrip, Trip.com installed
Executive Chairman of the Board of Trip.com as Co-Chairman and Director of MakeMyTrip,

---

[1] Gogobot Inc. and Expedia Inc. are also named defendants in this action, and the allegations against them
have no bearing on the issues relevant to resolution of this motion to dismiss nor Wave's motion for leave.
[2] Unless otherwise specified, "Ex." references exhibits to the Declaration of Michael D. Cilento submitted
herewith on April 11, 2025.

and Trip.com CEO as Trip.com's nominee to MakeMyTrip's Board of Directors, and retained significant control over the remaining appointments. Ex. 1 ¶ T29. Together, Trip.com's platforms now dominate travel search and hotel bookings. Ex. 6 ("the Company currently operates under a portfolio of brands, including Ctrip, Qunar, Trip.com and Skyscanner, with the mission 'to pursue the perfect trip for a better world'"); *see* Ex. 1 ¶ T6.

**B.      Targeting the U.S. Market**

> **i.      Trip.com**

Trip.com runs a dedicated website for U.S. users (us.trip.com) and a geotargeted site including a locale parameter ("trip.com/?locale=en-us"). Ex. 7. The interface presents U.S.-facing travel categories and promotional content in English, clearly designed to cater to U.S. users, which displays a U.S. flag icon and features prices in U.S. dollars:



*See id*; *see also* Ex. 1 ¶ T7. The site is fully interactive, allowing users in the U.S. to browse listings, create accounts, and book hotels worldwide. *Id.* Trip.com's mobile apps are also listed in U.S.-based app stores, including Apple's App Store (Ex. 8) and Google Play (Ex. 9). Ex. 1 ¶ T7.

Trip.com employs substantial U.S.-based staff, including its Global Head of Customer Experience/Quality Assurance, who works remotely from the U.S.. Ex. 10; Ex. 1 ¶ T4. Its LinkedIn profile reflects 219 U.S.-based employees, Ex. 11, with job postings targeting U.S. roles. Ex. 12; Ex. 1 ¶ T4. The company also maintains a U.S.-based customer service address at 261 Madison Avenue, Suite 10088, New York, and operates a U.S. customer service number at (833) 896-0077. Exs. 13, 14 at 3, 15; Ex. 1 ¶ T4.

Beyond user-facing infrastructure, Trip.com transacts with U.S.-based partners. It enters into "supplier" agreements with domestic entities to facilitate U.S.-origin hotel listings and services. Ex. 16. The company also trades American Depository Shares on the NASDAQ exchange. *See* Ex. 17; Ex. 1 ¶ T3.

###    ii.        Trip.com Singapore

Far from a silent subsidiary, Trip.com Singapore serves as the technical and operational hub for the Trip.com platform. It operates the main trip.com domain and is responsible for the site's U.S.-facing configuration, as set out at the bottom of every page of its website—"Site Operator: Trip.com Singapore Pte. Ltd." Ex. 7 at 5 (website footer). It publicly identifies itself as responsible for maintaining and offering the Trip.com U.S.-facing mobile applications as well:




*See* Exs. 8 (Apple); 9 (Google Play). Trip.com Singapore also actively recruits for its Americas team and lists job openings across the U.S.. Exs. 18, 19; Ex. 1 ¶ T4. These roles include marketing, platform operations, and support functions tailored for the U.S. travel market. *Id.*

To service Trip.com's online platforms, Trip.com Singapore contracts with U.S. based vendors responsible for the digital infrastructure that enables photographs to be stored, reproduced, and transmitted from within the U.S. using U.S. servers and content delivery networks. Ex. 20. Trip.com Singapore also actively hires in the U.S. and advertises job opportunities across U.S. cities, often as part of its "Americas" team, including technical,

marketing, and customer-facing roles. *See* Proposed Allegations, Ex. 1 ¶ T4 ("Ex. 1"); *see also* Exs. 18; 19.

### iii.    Skyscanner

Skyscanner Ltd., operates one of the most widely used flight and hotel search engines globally. *See* Ex. 1 ¶ T20. Its platform, accessible at www.skyscanner.com, is expressly tailored for U.S. users:



The site features an American flag icon and automatically prompts visitors to select U.S.-specific options, including country, language, and currency. Ex. 21 at 1,2; Ex. 22; Ex. 1 ¶ T22, T24. These "Regional settings" ensure that search results, deals, and promotional material are customized for a U.S. audience as Ex. 22 ("[s]electing the country you're in will give you local deals and information"). Skyscanner distributes its mobile applications through U.S.-based app stores, including those run by Apple and Google. *See* Exs. 23 (Apple); 24 (Google Play); Ex. 1 ¶ T21.



Skyscanner's U.S. footprint extends to its business operations. The company lists a Florida-based correspondence address intended for communication with users and business partners in the U.S.. See Ex. 25; Ex. 1 ¶ T19. The company also actively studies the behavior of U.S. travelers to refine its offerings, commissioning targeted market research about consumer preferences in the U.S. Ex. 26 at 7-8.

### C.    U.S. Infrastructure Powers the Delivery—and Reproduction—of Infringing Content

Publicly available information suggests that the Moving Defendants deliver images of Wave's copyrighted works through their U.S.-based content delivery networks (CDNs). Ex. 1 ¶¶ T12, T25, T33. Trip.com uses Akamai Technologies, a leading CDN provider in Massachusetts, known for its extensive global server network designed to optimize web content delivery by caching content closer to end-users, and Skyscanner uses Amazon Web Services, relying on U.S.-based data centers to serve its image and webpage content to U.S. visitors. Ex. 20; Ex. 27; Ex. 1 ¶¶ T12, T25.

Review of a live browser session from the U.S. version of Trip.com's website (us.trip.com), shows how one of the copyrighted images at issue (chiangmai160_VA1432326) is delivered to users:



Ex. 28. This specific image request targets a photograph hosted on ak-d.tripcdn.com. The response headers confirm that this image is served via Akamai, a U.S.-based content delivery network, and that the content was pulled from an Akamai edge server located in the U.S., as

indicated by the header "X-Cdn-Pop: US." *Compare* Ex. 28 (IP Address 23.44.229.226) *with* Ex.

29 (ISP Report showing "ISP: Akamai, Region: Santa Clara"). The headers also show that when

a user visits the site, their browser retrieves the image file (GET request), receives a valid HTTP

response (200 OK), and downloads the content—creating a new local copy of the copyrighted

image on the user's device in the U.S. This will remain cached for each subsequent retrieval

(Status Code: 304 Not Modified) until the "Expires" value, which in the below screenshot is

"Mon, 09 Jun 2025":



Ex. 30. Skyscanner does the same through Amazon Web Services, tapping into its U.S.-based

data centers to push website content, including infringing images, to devices located in the U.S..

Ex. 31 ("Via: . . . cloudfront.net"), Ex. 32; Ex. 33; Ex. 1 ¶ T25.

**D.    Plaintiff Brings Newly Accrued Copyright Claims Against Rebranded Trip.com
Entities, Skyscanner and MakeMyTrip**

On April 28, 2023, Plaintiff filed suit against the Moving Defendants in *The Wave Studio,*

*LLC v. Trivago N.V.*, No. 23-3586 (S.D.N.Y.), Docket No. 1 (the "*Trivago* case"), alleging use of

copyrighted works "to generate traffic to their websites, mobile sites and apps for their own

financial gain," using "Plaintiff's photographs on their own websites, and in articles, photo

galleries, and promotional materials" and that "continu[ing] to [] infringe[] on websites, mobile

sites and apps in the hotel and travel industries." *Id.* at ¶¶ 7-10. The complaint further alleged that

"[b]ecause of the nature of their control over the content on their websites, related content

delivery networks, mobile apps, mobile sites, distribution hubs, storage mechanisms and other

electronic means," the Moving Defendants "had the right and the ability to supervise" the

infringing acts of third parties. *Id.* at 70. The case was assigned to Judge Nelson Román. *Id.*,

Text-Only Notice (May 1, 2023).[3]

On May 5, 2023, Plaintiff sought a TRO and a Preliminary Injunction, attaching nine

exhibits demonstrating ongoing acts of infringement on websites controlled by one or more of

the Moving Defendants—skyscanner.com, trip.com, and makemytrip.com, *e.g,*.



*Id.*, Docket No. 13, Sealed Exs. 1-9 (dated May 2023); *id.*, Docket No. 18.

---

[3] Plaintiff filed its first amended complaint later the same day, April 28, 2023, to correct a citation. Docket No. 6.

On May 30, 2023, the Court denied the injunctive relief on the basis that "there is a heightened standard for personal jurisdiction on a request for interlocutory injunctive relief" that Wave had not yet met. Specifically, as Wave had not provided a "certification amongst its moving papers that to its knowledge, the Remaining Defendants are not subject to general jurisdiction in another state," the Court declined to proceed with the Rule 4(k)(2) analysis. *Id.*, Docket No. 37 at 10-11. Instead, the Court ordered Plaintiff to "submit a certificate regarding whether to its knowledge the International Defendants are not subject to the general jurisdiction of another state." *Id.* Thereafter, on June 5, 2023, Plaintiff's predecessor counsel submitted a declaration certifying that "based on the public record Wave has a good faith basis to believe that no international Defendant is subject to the general jurisdiction of any state in the United States." *Id.*, No. 23-3586, Docket No. 42 (S.D.N.Y. June 5, 2023).

That same day, Plaintiff filed a second amended complaint ("SAC"), *id.*, Docket No. 41, incorporating by reference the nine exhibits to the TRO Application in support of allegations of ongoing infringement. Plaintiff subsequently filed additional exhibits to the SAC, along with an affirmation of jurisdiction. *Id.*, Docket Nos. 41 at 5 n.2 ("In compliance with this Court's May 30, 2023 Order, Plaintiff has filed its certification . . .Until formally challenged by any defendant, Wave's jurisdictional allegations are sufficient at this stage of the litigation to make a *prima facie* showing of jurisdiction"), 42, 49.

The SAC asserted direct, contributory, and vicarious copyright infringement, alleging "Defendants' unauthorized reproduction, display, distribution, publication, and utilization of Wave's photographs in connection with Defendants' promotion, advertisement, marketing and sale of hotel and travel bookings on websites across the U.S. and the world" constitutes copyright infringement under the Copyright Act. *Id.*, Docket No. 41 ¶ 1. Prior to the *Trivago* case's consolidation with this one, at a November 29, 2023 hearing before this Court, Docket No. 321,

the Court ordered Plaintiff to file a revised Master Complaint by January 16, 2024, and

predecessor counsel for Plaintiff timely filed such complaint. Docket No. 332. The Master

Complaint included brief allegations as to the Moving Defendants' unauthorized and ongoing

reproduction, display, distribution, and marketing of copyrighted photographs, alleging that they

are made available on websites accessible across the U.S., thus alleging direct, contributory, and

vicarious infringement. *See e.g., id.* ¶ 117.

On January 18, 2024, Judge Román entered an order formally consolidating the *Trivago*

case into this action. *The Wave Studio, LLC v. Trivago N.V.*, No. 23-3586 (S.D.N.Y.), Text-Only

Notice (January 18, 2024). Although the Master Complaint filing was not docketed until January

26, 2024, Wave had no further opportunity to change the allegations after the Moving Defendants

were consolidated into the case. *Compare id.*, Text-Only Notice (January 18, 2024) *with* Docket

No. 321 at 23:15-18. The Master Complaint thus does not separately allege all relevant

jurisdictional facts and details concerning infringing conduct by the Moving Defendants, who

were subsequently consolidated.

<u>**ARGUMENT**</u>

**I.    THE COURT SHOULD GRANT PLAINTIFF'S CROSS-MOTION FOR LEAVE
       TO AMEND**

**A.    The Procedural Posture Justifies Amendment**

The Moving Defendants were not formally named in this action until after Judge Román

ordered case consolidation on January 18, 2024, and Wave had no further opportunity to amend

the Master Complaint. *Supra* Statement of Facts § B. This is thus the first meaningful chance for

Wave to present fulsome allegations in the Master Complaint tailored to these entities, supported

by updated jurisdictional and factual evidence that postdates their consolidation. *Id.* Plaintiff

accordingly cross-moves for leave to amend to add targeted factual allegations—detailing

domestic predicate acts, jurisdictional contacts, and date ranges of infringement—which address

the issues raised in Defendants' Motion.[4] Under these circumstances, where the issue is detail rather than the existence of factual support, amendment is both appropriate and useful.

**B.     The Proposed Amendments Should Be Granted, There is Neither Undue Delay Nor Undue Prejudice**

Wave seeks leave only to add particularized factual allegations to bolster its existing claims, which courts regularly permit. *See, e.g., Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (collecting cases). Rule 15(a) provides that a court "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), so long as the movant evinces no "undue delay, bad faith or dilatory motive." *Foman v. Davis*, 371 U.S. 178, 182 (1962). This liberal standard for amendment "promotes judicial economy by making it possible to dispose of all contentions between parties in one lawsuit." *Bilt–Rite Steel Buck Corp. v. Duncan's Welding & Corr. Equip., Inc.*, No. 90-311, 1990 WL 129970, at *1 (E.D.N.Y. Aug. 24, 1990) (citing *Jenn–Air Prods. Co. v. Penn Ventilator, Inc.*, 283 F.Supp. 591, 594 (E.D. Pa. 1968)). Here, the court should grant leave to amend as Wave seeks leave in good faith to plead existing facts with additional particularity; discovery has not yet begun, and the amendment will thus not prejudice the moving defendants. *See Shpak v. Curtis*, No. 10-1818, 2012 WL 511478, at *9 (E.D.N.Y. Feb. 14, 2012) (collecting cases); *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017); *see Ouedraogo v. A-1 Int'l Courier Serv., Inc.*, No. 12-5651, 2013 WL 3466810, at *5 (S.D.N.Y. July 8, 2013).

**C.     Amendment is Curative and Not Futile**

The amendment is further not futile because it adds specific allegations—domestic predicate acts, jurisdictional facts, and date ranges—that directly address the issues raised in the motion to dismiss. "[T]he Court may consider the merits of the motion to dismiss in light of the

---

[4] Plaintiff's proposed amended allegations also cure the inadvertent error it made in the Master Complaint, naming as a defendant MakeMyTrip.com, Inc, instead of the correct entity, MakeMyTrip, Inc.

11

proposed amended complaint." *Guan v. Lash Princess 56 Inc*., No. 22-2552, 2023 WL 2242050, at *3 (S.D.N.Y. Feb. 27, 2023) (internal citations omitted).

It is unsurprising that the pleadings did not anticipate each of the Moving Defendants' challenges, as "[t]he pleading requirements of the Federal Rules of Civil Procedure 'do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses.'" *Clark v. Hanley*, 89 F.4th 78, 93-94 (2d Cir. 2023) (citing *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). Under these circumstances, where the issue is detail rather than the existence of factual support, amendment is both appropriate and curative. *Shad v. Zachter PLLC*, No. 23-10724, 2024 WL 2061703, at *7 (S.D.N.Y. May 3, 2024) (granting leave to amend as "[w]hen filing their amended complaint, Plaintiffs had not yet had the benefit of the Court's analysis on Defendants' motion to dismiss . . . Because the pleading deficiencies identified in the R&R might be corrected, amendment is not necessarily futile").

## II.    THE COURT HAS JURISDICTION OVER THESE PARTIES AND CLAIMS

Three of the four moving entities—Trip.com, Trip.com Singapore, and Skyscanner Ltd. ("Jurisdiction Movants")—claim that the Court lacks both territorial and personal jurisdiction, and one (MakeMyTrip, Inc.) concedes jurisdiction in this Court, merely joining the others in contesting whether Wave has sufficiently alleged infringement. Mot. at 7-8.

The Jurisdiction Movants rely heavily upon *Wave Studio, LLC v. Trivago N.V.*, No. 23-3586, 2023 WL 3720079 (S.D.N.Y. May 30, 2023) asserting that Wave's "theory of jurisdiction, as articulated in the 2023 Trivago Action" has been "repeatedly rejected by courts in New York and elsewhere, including this one." Mot. at 2. But that order does not resolve the jurisdictional question on the merits. Rather, the court declined to proceed because, at the time, Wave had not yet submitted a certification that the Jurisdiction Movants were not subject to

general jurisdiction in any other state—a procedural requirement that has since been satisfied.

*See id.*; *The Wave Studio, LLC v. Trivago et al.*, 23-3586, Docket No. 40. Moreover, the *Trivago*

court applied a "heightened standard for personal jurisdiction on a request for interlocutory

injunctive relief" not applicable here. *Trivago*, No. 23-3586, 2023 WL 3720079, at *4 (citing

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008)).

On a 12(b)(2) motion, the Court must "construe the pleadings and affidavits in the light

most favorable to plaintiffs, resolving all doubts in their favor," *Porina v. Marward Shipping Co.*,

521 F.3d 122, 126 (2d Cir. 2008), and on jurisdictional challenge, must "must accept the

allegations in the [c]omplaint as true 'to the extent they are uncontroverted' by any affidavits

submitted by the defendant." *Pearson Educ., Inc. v. ABC Books LLC*, No. 19-7642, 2020 WL

3547217, at *3 (S.D.N.Y. June 30, 2020) (citation omitted). The Jurisdiction Movants submitted

no affidavits with their moving papers, and as their "unsupported statements in their

memorandum of law have no evidentiary weight," Wave's allegations should be evaluated as

uncontroverted. *Bray v. Purple Eagle Ent., Inc*., No. 18-5205, 2019 WL 1549044, at *7

(S.D.N.Y. Jan. 18, 2019). To the extent that the existing allegations lack detail, "the Court may

consider the merits of the motion to dismiss in light of the proposed amended complaint," and

Wave submits that the proposed amendments cure any such deficiencies. *Guan*, No. 22-2552,

2023 WL 2242050, at *3.

## A.    The Jurisdiction Movants Conduct Business in the U.S. and Must Answer for Their Conduct Here Under Rule 4(k)(2)

The Motion's challenges to jurisdiction fall at the first hurdle as "[a]t the pleading

stage—and prior to discovery—a [non-movant] need only make a *prima facie* showing that

jurisdiction exists" and under Rule 4(k)(2), Wave's existing and proposed allegations show that

each Jurisdiction Movant has purposefully and systematically targeted U.S. consumers through

their travel platforms, personnel, and corporate infrastructure. *Dularidze v. Turk Hava Yallario A.O.*, No. 20-4978, 2024 WL 3567332, at *2 (S.D.N.Y. July 28, 2024). They operate interactive websites tailored for the U.S. market, enter into supplier agreements with U.S.-based companies, and maintain customer service operations and personnel here, including at least one global executive operating remotely from the U.S.. *Supra* Statement of Facts § B; Ex. 10. These contacts are purposeful and extensive—and they are more than sufficient to establish jurisdiction at the pleading stage.

Rule 4(k)(2) "extends the reach of federal courts to impose jurisdiction over the person of all defendants against whom federal law claims are made and who can be constitutionally subjected to the jurisdiction of the courts of the United States." *Astor Chocolate Corp. v. Elite Gold Ltd.*, 510 F. Supp. 3d 108, 124 (S.D.N.Y. 2020) (quoting Federal Rule of Civil Procedure 4 Advisory Committee's note to 1993 amendment). As this District explained in *George Moundreas & Co SA v. Jinhai Intelligent Mfg.*, Rule 4(k)(2) was enacted to ensure federal claims could be pursued even in transnational disputes, "to correct a gap in the enforcement of federal law in international cases." 2021 WL 168930, at *11 (S.D.N.Y. Jan. 18, 2021) (quoting *Porina*, 521 F. 3d at 127).

To satisfy Rule 4(k)(2), Wave must demonstrate that: "(1) the claim arises under federal law; (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (3) the exercise of jurisdiction is consistent with the U.S. Constitution and laws." *Id.*, at *11. As the Motion concedes that Wave's copyright infringement claims arise under federal law, Mot. at 13, the parties dispute only the remaining two factors.

### 1.    No State Has General Jurisdiction Over the Jurisdiction Movants

Under the second prong of Rule 4(k)(2), Plaintiff must certify that defendants "are not subject to general jurisdiction in another state." *In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d

219, 240 (S.D.N.Y. 2019). Wave filed its certification in support of the Second Amended

Complaint in the *Trivago* case on June 5, 2023, certifying that "no states have general

jurisdiction" over the Jurisdiction Movants, Docket No. 42, but the Jurisdiction Movants take

issue with the certification, claiming that Plaintiff must also negate specific jurisdiction in every

state. Mot. at 14. This attempt to recast Rule 4(k)(2)'s standard finds no support in the law. *Wave*

*Studio, LLC v. Trivago N.V.*, No. 23-3586, 2023 WL 3720079, at *6 (S.D.N.Y. May 30, 2023)

(finding the second prong of 4(k)(2) unsatisfied in the absence of a declaration certifying "the

Remaining Defendants are not subject to general jurisdiction in another state"); *In re SSA Bonds*

*Antitrust Litig.*, 420 F. Supp. 3d 219, 240 (S.D.N.Y. 2019) ("Because the Plaintiffs in the instant

case have not certified that the Foreign Dealer Defendants are not subject to general jurisdiction

in another state, they have not met all of the elements of Rule 4(k)(2)").[5]

    The movants rely upon *Lensky v. Turk Hava Yollari, A.O.*, contending that the court there

found the defendant was only subject to Rule 4(k)(2) because plaintiff proved it was "not subject

to either general or specific personal jurisdiction in New York . . . or in any other State's courts of

general jurisdiction." Mot. at 14 (quoting *Lensky*, 2023 WL 6173334, at *2 (2d Cir. Sept. 22,

2023)). Far from enunciating a standard, the *Lensky* court merely notes in passing that both

parties agreed the defendant was not subject to any form of jurisdiction in New York or other

states. *Lensky*, 2023 WL 6173334, at *2 (2d Cir. Sept. 22, 2023). To avail itself of Rule 4(k)(2)

jurisdiction, Wave need only show what it already has—that each movant's contacts at filing do

not give rise to general jurisdiction in any U.S. state. *In re SSA Bonds Antitrust Litig.*, 420

---

[5] As the Second Circuit has not yet weighed in, courts in this Circuit find "the plaintiff bears the burden of making out a *prima facie* case, including 'a certification that "based on the information that is readily available to the plaintiff and his counsel, the defendant is not subject to suit in the courts of general jurisdiction of any state"'" before "the burden then shifts to the defendant to produce evidence that it is subject to jurisdiction in one or more states or that its contacts with the United States generally are insufficient." *RegenLab USA LLC v. Estar Techs. Ltd.*, 335 F. Supp. 3d 526, 547 (S.D.N.Y. 2018). The Jurisdiction Movants make no such showing. *See generally* Mot. at 10-15.

F.Supp.3d 219, 240 (S.D.N.Y. 2019) ("[i]n this Circuit, plaintiffs need to certify that the foreign

defendants are not subject to jurisdiction in any other state to meet the second requirement of

Fed. R. Civ. P. 4(k)(2)").[6]

"A corporation is subject to general jurisdiction only in a state in which it is incorporated

or has its principal place of business." *In re SPS I Fundo de Investimento de Acoes - Investimento

no Exterior*, No. 22-118, 2024 WL 917236, at *2 (S.D.N.Y. Mar. 4, 2024) (finding no general

jurisdiction in New York where "Barclays NY is incorporated in the United Kingdom. And,

according to Intervenors' uncontradicted account, Barclays NY's principal place of business is

not in New York"). As Wave alleges, Trip.com's global headquarters are located in Shanghai,

China, and it does not designate any U.S. office as a principal place of business.[7] Docket No. No.

332 ¶ 86; Ex. 1 ¶ T3. While it maintains a U.S.-based customer service address in New York, Ex.

14, and a domestic phone number, Ex. 13, these contacts are plainly insufficient to meet the

threshold for general jurisdiction in New York.

The same is true for Trip.com Singapore, which is organized and incorporated in

Singapore, with its corporate offices located in Singapore. Docket No. 332 ¶ 87. While this entity

operates Trip.com's U.S.-facing website, Ex. 7 at 5, and employs staff engaged in U.S.-facing

roles, Exs. 18; 19, it does not maintain a principal place of business in any state, *id.*, Docket No.

332 ¶ 87, nor are its operations in any one state significant enough to give rise to jurisdiction.

*Compare id.* ¶ 87 *with In re SPS*, No. 22-118, 2024 WL 917236, at *2 (S.D.N.Y. Mar. 4, 2024).

Although the Motion argues that Wave alleged Skyscanner has a Florida place of

business, Mot. at 4, this allegation is no longer live—Wave amended its complaint in 2023 to

clarify that in contrast to its headquarters in the United Kingdom, Skyscanner's presence in

---

[6] The described contacts also fail to confer specific jurisdiction in any one state.
[7] Trip.com opened a Los Angeles office at the start of 2025 (Ex. 1 ¶ T4), but this does not bear on the
jurisdictional inquiry, which must be evaluated at time of filing. *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S.
567, 570 (2004) ("[t]he jurisdiction of the court depends upon the state of things at the time of the action brought").

Florida is limited to a correspondence address.[8] *See The Wave Studio, LLC v. Trivago N.V.*, No. 23-3586 (S.D.N.Y.), Docket No. 41 ¶ 19; *id.*, Docket No. 42 ¶ 8. The law, and not Wave's since-amended allegation, controls here; the law does not permit such minimal corporate presence to substantiate general jurisdiction in Florida. *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1205 (11th Cir. 2015).

### 2. Jurisdiction Comports with Due Process Because Movants Have Minimum Contacts With the U.S.

The third factor in the Rule 4(k)(2) analysis requires Plaintiff to show that a finding of jurisdiction comports with due process, and "[a] plaintiff may seek to establish contacts supporting either specific or general jurisdiction under Rule 4(k)(2)." *George Moundreas*, 2021 WL 168930, at *11 (internal citations and quotations omitted). "The Second Circuit has held that to establish general jurisdiction under Rule 4(k)(2), the plaintiff must show that the defendant had 'continuous and systematic general business contacts' with the United States." *Dularidze*, 2024 WL 3567332, at *3 (quoting *Porina*, 521 F.3d at 128).[9]

Wave does not allege claims against foreign companies whose websites incidentally reach U.S. users, as movants advocate. Mot. at 9. The Jurisdiction Movants are global travel brands that have deliberately conducted business in the U.S., Ex. 1 at ¶¶ T7, T22, T28, operating interactive websites tailored for the U.S. market, entering into supplier agreements with U.S.-based companies, and maintaining customer service operations and personnel here, including global executives operating remotely from the U.S.. *Supra,* Statement of Facts § B.i-iii. To the extent the Court finds these contacts do not rise to the level of general jurisdiction, they *prima facie* plead specific jurisdiction, which "requires that the defendant takes 'some act by which [it]

---

[8] This amendment occurred almost a year prior to Defendants' service of its Motion.

[9] "The Second Circuit has not yet had the occasion to rule on whether the Supreme Court's decision in *Daimler* supplants the 'continuous and systematic' test under Rule 4(k)(2) with *Daimler*'s 'essentially at home' test. District Courts are 'obliged to follow [Second Circuit] precedent, even if that precedent might be overturned in the near future.'" *Dularidze*, 2024 WL 3567332, at *4.

purposefully avails itself of the privilege of conducting activities within the forum,' and the plaintiff's claims 'arise out of or relate to the defendant's contacts with the forum'—here the United States." *Lensky*, 2023 WL 6173334, at *3 (internal citations omitted).

The allegations and proposed amendments show that Wave's claims arise directly out of the Jurisdiction Movants' deliberate commercial activities within the U.S.—specifically, the U.S.-targeted reproduction, display, and distribution of copyrighted images on platforms they control.  In *Winner v. Tryko Partners, LLC*, the court found that the defendant's employment of the plaintiff in New York, regular communications, and engagement in business meetings in New York also constituted sufficient minimum contacts, as these activities were purposefully directed towards the state. 333 F. Supp. 3d 250, 264 (W.D.N.Y. 2018). Here, by maintaining a customer service address and phone number within the U.S., both Trip.com parties and Skyscanner clearly intended to and did establish channels specifically designed to engage with U.S. consumers.[10]

Courts also distinguish "passive" webpages that merely make information available to viewers from "interactive" sites that permit the purchase of products online or establish online accounts, finding the latter supports personal jurisdiction. *Mrs. U.S. Nat. Pageant, Inc. v. Miss U.S. Organization*, 875 F. Supp. 2d 211, 221 (W.D.N.Y. 2012); *Citigroup Inc. v. City Holding Co.*, 97 F.Supp.2d 549, 565-66 (S.D.N.Y. 2000). "An individual who operates or maintains a comprehensive service website targeted at [forum] consumers will meet the 'transacts business' requirement." *Lawson v. Full Tilt Poker Ltd.*, 930 F. Supp. 2d 476, 484 (S.D.N.Y. 2013). Here, each of the Jurisdiction Movants operates interactive English-language websites, apps, and servers tailored to facilitate transactions with U.S. users and, as alleged, distribute infringing content into the U.S.. *See supra* Statement of Facts §B.i-iii. These contacts are not only sufficient

---

[10] Trip.com Group Ltd. also maintains American Depository Shares listed on NASDAQ, *see* Ex. 1 ¶ T3; Ex. 17, which although insufficient alone to confer jurisdiction, can evince a broader pattern of U.S.-directed activities. *Miller v. Mercuria Energy Trading, Inc.*, 291 F. Supp. 3d 509, 522 n.5 (S.D.N.Y. 2018), *aff'd*, 774 F. App'x 714 (2d Cir. 2019); *Mucha v. Volkswagen Aktiengesellschaft*, 40 F. Supp. 3d 269, 283 (E.D.N.Y. 2021).

to satisfy minimum contacts under due process—they are precisely the kind of targeted, profit-seeking, suit-related conduct that supports specific jurisdiction under Rule 4(k)(2). *Mrs. U.S. Nat. Pageant*, 875 F. Supp. 2d 211, 221; *Citigroup Inc*., 97 F.Supp.2d 549.

### 3.    Exercising Jurisdiction is Fair and Reasonable

Having established minimum contacts, "the burden shifts to the defendant to prove that the exercise of jurisdiction would be unreasonable." *RegenLab USA LLC v. Estar Techs. Ltd*., 335 F. Supp. 3d 526, 543 (S.D.N.Y. 2018); *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (favoring exercise of jurisdiction when plaintiff makes a threshold showing of minimum contacts). Only in rare cases will jurisdiction offend fair play and substantial justice. *RegenLab*, 335 F. Supp. 3d at 546.

Exercising jurisdiction here is plainly fair—the Movants are represented by U.S. counsel and operate through U.S. arms and departments, thus the burdens of litigating in this forum are minimal. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129-30 (2d Cir. 2002) (finding burden imposed on a defendant forced to litigate far from home substantially mitigated by the conveniences of modern communication and transportation); *Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 99 (S.D.N.Y. 2015). Moreover, the U.S. has a strong interest in adjudicating federal copyright claims. *DoubleLine Cap. LP v. Construtora Norberto Odebrecht, S.A.*, 413 F. Supp. 3d 187, 218-19 (S.D.N.Y. 2019) ("because this is a case brought under U.S. federal law, the judicial system has a strong interest in resolving it here"). So too does New York, where many relevant acts occurred. *McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 295 F. Supp. 3d 404, 414 (S.D.N.Y. 2017) (finding New York has a "manifest interest in providing effective means of redress for its residents"). Plaintiff's interest in redress here is substantial, and because the Court already oversees the consolidated cases, it remains the most efficient venue for resolution. *Gucci*, 135 F. Supp. 3d at 100.

### B.    The Copyright Act Reaches Defendants' Domestic Conduct

The same three defendants—Trip.com, Trip.com Singapore, and Skyscanner—also move

for dismissal on the ground that the doctrine of extraterritoriality bars any copyright claims

against them as "the allegedly infringing activity took place entirely outside of the United States

and New York[.]" Mot. at 16. Courts in this District have found that conduct online gives rise to

U.S. claims where plaintiffs allege "'plus factors' beyond mere online availability," including "(1)

the direction of copyrighted material into the United States, (2) when foreign acts are intended

to, and do, have an effect within the United States, and (3) the uploading of copyrighted materials

to servers located in the United States." *Dow Jones & Co., Inc. v. Juwai Ltd.*, No. 21-7284, 2023

WL 2561588, at *4 (S.D.N.Y. Mar. 17, 2023). Plaintiff's allegations easily satisfy these

requirements.

As described above (*supra* Statement of Facts § B), the complaint alleges that the Moving

Defendants' websites and affiliated platforms distribute infringing images to U.S.-based users.

*See* Docket No. 332 ¶¶ 244, 272, 300, 304. The proposed amendments further allege that their

content is stored on U.S.-based servers (*e.g.*, Akamai and AWS) (*see* Ex. 1 ¶ T12, T25, T33), and

that images are copied to the devices of U.S. visitors. *Id.* ¶ T13. These are not foreign-only acts;

they are domestic reproductions, displays, and distributions under the Copyright Act. *Live Face*

*on Web, LLC v. Biblio Holdings LLC*, 2016 WL 4766344, at *3 (S.D.N.Y. Sept. 13, 2016) ("In

order to constitute a copy under the Act, a work must be embodied in a medium, i.e., placed in a

medium such that it can be perceived, reproduced, etc., from that medium . . . [,] and it must

remain thus embodied for a period of more than transitory duration") (citations omitted).[11]

---

[11] Even if the acts were partially extraterritorial, they still fall squarely within the exceptions recognized in
this Circuit. *See State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 340 (S.D.N.Y. 2020). As the *Grecco*
court held, allegations of server-side storage, U.S. targeting, and accessibility within the U.S. are more than
sufficient. *Michael Grecco Prods., Inc. v. Valuewalk, LLC*, 345 F. Supp. 3d 482, 499 (S.D.N.Y. 2018)); *see Spanski*
*Enters. v. Telewizja Polska, S.A.*, 883 F.3d 904, 916 (D.C. Cir. 2018) (holding that "a foreign broadcaster that . . .
directs infringing performances into the United States from abroad commits a domestic violation of the Copyright
Act"); *see Shropshire v. Canning*, 809 F. Supp. 2d 1139, 1146 (N.D. Cal. 2011) (approving allegations that

*First*, Wave has alleged that each of the Jurisdiction Movants, through themselves and their affiliates, published the infringing images to their customers in the U.S.. *See* Docket No. 332 ¶¶ 244, 272, 300, 304. Wave further proposes allegations that the Jurisdiction Movants each use US-based servers of US-based hosting and content delivery providers to store and deliver their websites' contents to end users, and caused the infringing photographs to be uploaded to servers located in the U.S., which causes copies of the infringing photographs were made and stored in the U.S. and that they. *Id*. ¶ T12, T25, T33. Trip.com, ctrip.com, and makemytrip.com use US-based Akamai Technologies Inc. as their content delivery provider, while Skyscanner.com uses US-based Amazon.com Inc. as its provider. *Id*. ¶ T12, T25. These providers use "edge services" utilizing US IP addresses to reduce latency and enable speedy resolution of the websites to users in the U.S.. *Id*. ¶ T15, T25, T33. In order to perform these services, edge servers upload and store a copy, or cache, of the requested content locally in the U.S.. *Id*. ¶ T15, T25, T33. Courts routinely find that this conduct gives rise to a claim under the Copyright Act. *See Dow Jones & Co., Inc. v. Juwai Ltd.*, No. 21-7284, 2023 WL 2561588, at *5 (S.D.N.Y. Mar. 17, 2023) ("Where a complaint alleges 'that Defendants caused a copy of' an infringing work 'to be made on . . .servers in the United States,' the complaint 'plainly alleges an act of direct infringement in the United States' by some entity." (quoting *Richardson v. Complex Media, Inc*., No. 20-6201, 2021 WL 230192, at *2 (S.D.N.Y. Jan. 22, 2021)).

*Second*, the Jurisdiction Movants' websites also cause copies of the infringing photographs to be made on the devices of U.S.-based site visitors, which constitutes culpable reproduction within the scope of the Copyright Act. *Supra* Statement of Facts § B.4; *Live Face on Web, LLC v. Biblio Holdings LLC*, 2016 WL 4766344, at *3-5 (S.D.N.Y. Sept. 13, 2016); *Ticketmaster LLC v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096, 1105 (C.D. Cal. 2007) ("The

"Defendant's direct action led to the creation of a copy of the Grandma video on YouTube's servers in California, and to the subsequent viewing of the video by potentially thousands in the United States.")

copies of webpages stored automatically in a computer's cache or random access memory ('RAM') upon a viewing of the webpage fall within the Copyright Act's definition of 'copy.'"); *Herrmann Int'l, Inc. v. Herrmann Int'l Eur.*, 2021 WL 861712, at *13 (W.D.N.C. Mar. 8, 2021) ("When a person browses a website and views a document or other protected material, a copy of the document is made in the computer.").

*Third*, Wave sufficiently alleges that the Jurisdiction Movants directed their infringing activities into the U.S. and "intended to, and did, have an effect in the United States." The allegations show that each of the Jurisdiction Movants operates in the U.S. and one or more of the Jurisdiction Movants and their agents maintain offices in the U.S., including in New York. *Id. See* Docket No. 332 ¶¶ 77, 86, 87. Moreover, as discussed above, Internet users book travel arrangements via the U.S. version of the Jurisdiction Movants' websites to destinations around the world. For example, Skyscanner's website's regional settings allows U.S. users to customize their experience by selecting their language, country, and currency preferences. Ex. 21; Ex. 22. This provides a tailored experience to U.S. users. Furthermore, that the Jurisdiction Movants also utilize web-hosting infrastructure that relies on U.S. "edge servers" to deliver its content, using US-based IP addresses, also shows that the Jurisdiction Movants are catering to and targeting users in the U.S.. *See* Ex. 1 ¶ T15, T25, T33.

## III. MOVING DEFENDANTS' MOTION TO DISMISS ON OTHER GROUNDS SHOULD BE DENIED

### A. Wave Sufficiently States Claims Against All Movants

Movants argue that the Master Complaint fails to state a claim so long as it provides no "details on the timing of the alleged infringements." Mot. at 18. Rule 8 imposes no such requirement, and is "not meant to impose a great burden upon a plaintiff," *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005), but rather "to give fair notice of a claim and the grounds upon

which it rests so that the opposing party may identify the nature of the case, respond to the complaint, and prepare for trial." *Manik v. Avram*, No. 06-477, 2006 WL 2942854, at *3 (S.D.N.Y. Oct. 13, 2006). Indeed, courts have repeatedly held sufficient complaints that "do[] not affix a date or time of each instance of alleged infringement." *Elektra Ent. Grp., Inc. v. Barker*, 551 F. Supp. 2d 234, 239 (S.D.N.Y. 2008) ("it need not do so in order to survive a motion to dismiss"); *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F.Supp. 3d 342, 355 (S.D.N.Y. 2014) ("[p]laintiffs have stated a claim for direct copyright infringement through their allegation that Defendants reproduced Plaintiffs' copyrighted photographs and created thumbnail copies of those photographs.").

Plaintiff's allegations specified which works it claims that each of the Moving Defendants is infringing upon with charts exhibiting the hotel name, copyright registration number, number of photographs, and the nature of the infringement it contended was both current and "ongoing." *See e.g., The Wave Studio, LLC v. Trivago, N.V.*, Case No. 23-3586, Docket No. 41, ¶ 57 (emphasis added) ("To date, Wave has identified not less than 101 photographs, excluding reproductions of Wave Copyrighted Works and derivative works based upon the Copyrighted Works that **are being infringed** by Trip.com, other websites controlled by Trip.com, on multiple electronic platforms") & n.5 ("as the harm is ongoing, any statute of limitations is more than satisfied"); Docket No. 332 ¶ 105-109. These allegations of past and continuing infringement "sufficiently put[] defendant[s] on notice as to which acts—downloading and distribution of certain copyrighted recordings via online media—form the basis of the Plaintiffs' claim." *Elektra Ent. Grp., Inc. v. Santangelo*, No. 05-2414, 2005 WL 3199841, at *2 (S.D.N.Y. Nov. 28, 2005); *Franklin Elec. Publishers, Inc. v. Unisonic Prod. Corp.*, 763 F.Supp. 1, 4 (S.D.N.Y.1991) ("while plaintiff has not alleged the date defendants allegedly commenced their infringing activities, plaintiff has alleged that defendant continues to infringe").

Wave further incorporated by reference its exhibits to the TRO application, which provided then-current visual identification of infringed works as of the TRO application date in June 2023. *The Wave Studio, LLC v. Trivago, N.V.*, Case No. 23-3586, Docket No. 49. Rule 10(c) explicitly permits Wave to incorporate these allegations in the *Trivago* complaint by reference in the Master Complaint. *See* Fed. R. Civ. P. 10(c) ("a statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion"); *Glidepath Holding B.V. v. Spherion Corp.*, No. 04-9758, 2007 WL 2176072, at *9 (S.D.N.Y. July 26, 2007) (citing *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir.1999)). The proposed amendments also bolster Wave's claim for copyright infringement by offering temporal allegations of infringement of the identified works by each Moving Defendant. *See* Ex. 1 ¶¶ T17, T26, T35.

Movants' remaining arguments improperly seek factual determinations on a motion to dismiss, for example, the Motion's unfounded insistence that MakeMyTrip's website "does not have any hotel photographs on its website in the United States." Mot. at 18. Plaintiff is entitled to test this assertion through discovery, and to the extent such a claim bears out on the facts, it is a matter that should be resolved at summary judgment or trial, not at the pleadings stage. *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) ("The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits"); *Shpak*, 2012 WL 511478, at *9.

### B.   Wave's Claims Were Timely Brought

Movants' bare attorney argument that every one of Wave's claims against them must surely be stale because others previously infringed some of Wave's copyrighted works does not shift the burden on this affirmative defense to Wave. Mot. at 6. On a Rule 12(b)(6) motion, a

statute of limitations defense must be apparent on the face of the complaint. *Michael Grecco Prods. v. RADesign, Inc.*, 112 F.4th 144, 150 (2d Cir. 2024); *United States v. Livecchi*, 711 F.3d 345, 352 (2d Cir. 2013) ("affirmative defense for which" defendants "bear[ ] the burden of proof'"). The Motion's appeals to logic are based on nothing but attorney argument—to the extent this is ever determinative, it certainly is not amenable to resolution at this early stage.

In any event, under *Petrella v. Metro-Goldwyn-Mayer, Inc.*, each act of infringement Wave pleaded—including each new display, reproduction, or distribution—gives rise to a separate, actionable claim, and copyright claims accrue when the plaintiff discovers, or reasonably should have discovered, each infringement. 572 U.S. 663, 671 (2014); *see also Grecco*, 112 F.4th at 150. Plaintiff has alleged ongoing acts of infringement, and proposes amendment to consolidate complaint allegations and add the range of dates for particular violative acts. Ex. 1 ¶¶ T17, T26, T35. This suffices to avoid dismissal. *See Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012); *BWP Media*, 69 F. Supp. 3d 342, 359 (citing *Kelly–Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013) (stating that questions regarding affirmative defenses that "require [ ] consideration of facts outside of the complaint" are "inappropriate to resolve on a motion to dismiss").

## CONCLUSION

In light of the foregoing, Wave respectfully requests the Court deny the motion to dismiss in its entirety and grant Wave's cross-motion for leave to amend.

Dated: April 11, 2025          */s/ Michael D. Cilento*
       Brooklyn, New York         Michael D. Cilento, Esq.
                                    **LEWIS & LIN LLC**
                                    77 Sands Street, 6th Floor
                                    Brooklyn, NY 11201
                                    Michael@iLawco.com
                                    Tel: (718) 243-9323
                                    Fax: (718) 243-9326
                                    *Attorneys for The Wave Studio, LLC*