**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

THE WAVE STUDIO, LLC,

          Plaintiff,

    -against-

GENERAL HOTEL MANAGEMENT LTD., et al.,

        Defendants.

Case No. 7:13-cv-09239-CS-VR

**MEMORANDUM OF LAW IN OPPOSITION TO BOOKING HOLDINGS
DEFENDANTS' MOTION TO DISMISS AND IN SUPPORT OF
CROSS MOTION FOR LEAVE TO AMEND**

**LEWIS & LIN, LLC**

Michael D. Cilento, Esq.
77 Sands Street, 6th Floor
Brooklyn, NY 11201
Michael@iLawco.com
Tel: (718) 243-9323
Fax: (718) 243-9326
*Attorneys for The Wave Studio, LLC*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.    The Copyrighted Images . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B.    Wave Alleges Copyright Infringement Against Booking Holdings Entities . . . . . . . . . . . 3

C.    The Court Orders a Master Complaint, Compendium Spreadsheet and FRE 408
      Production . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

D.    The Booking Holdings Movants' Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.    THE MOTION TO DISMISS SHOULD BE DENIED IN ITS ENTIRETY . . . . . . . . . . 8

      A.    Wave's Claims are Not Time Barred . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            1.    All Claims Against Booking Defendants Relate Back to the Original
                  Complaints . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            2.    The Parties Factually Dispute When Wave Discovered Each Alleged
                  Infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            3.    Wave Alleges Separately Accruing Violations Within the Purported
                  Statute of Limitations Period for the Booking Defendants . . . . . . . . . . . 17

      B.    Wave's Claims Against Agoda and Momondo Fall Within Territorial Scope
            of the Copyright Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

            1.    Wave Alleges Agoda Company Acts Within the U.S. or Regarding
                  the Plus Factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

            2.    Wave Alleges Momondo Acts Within the U.S. or Regarding the Plus
                  Factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

II.   THE COURT SHOULD GRANT WAVE'S CROSS MOTION FOR LEAVE TO
      AMEND AS TO THE MOVING DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

      A.    The Proposed Amendment Should Be Granted . . . . . . . . . . . . . . . . . . . . . . . . . . 23

      B.    There is No Undue Delay or Bad Faith by Wave, Nor Undue Prejudice . . . . . . . 24

      C.    The Amendment Is Curative and Not Futile . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## <u>TABLE OF AUTHORITIES</u>

<em>Cases</em> <em>Pages</em>

*In re Allbrand Appliance & Television Co., Inc.*,
    875 F.2d 1021 (2d Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

*Baker v. Weber*,
    No. 19-1093, 2021 WL 4480998 (S.D.N.Y. Sept. 30, 2021). . . . . . . . . . . . . . . . . . . . .16

*Bilt–Rite Steel Buck Corp. v. Duncan's Welding & Corr. Equip., Inc.*,
    No. 90-311, 1990 WL 129970 (E.D.N.Y. Aug, 24, 1990). . . . . . . . . . . . . . . . . . . . . . .23

*Bd. of Trs. of Operating Eng'rs Pension Tr. v. JPMorgan Chase Bank, Nat. Ass'n*,
    No. 09-9333, 2013 WL 1234818 (S.D.N.Y. Mar. 27, 2013). . . . . . . . . . . . . . . . . . . . . 9

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
    69 F. Supp. 3d 342 (S.D.N.Y. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Clark v. Hanley*,
    89 F.4th 78 (2d Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*Craig v. UMG Recordings, Inc.*,
    380 F. Supp. 3d 324 (S.D.N.Y. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Dow Jones & Co., Inc. v. Juwai Ltd.*,
    No. 21-7284, 2023 WL 2561588 (S.D.N.Y. Mar. 17, 2023) . . . . . . . . . . . . . . . . . . . 19-22

*Elektra Ent. Grp., Inc. v. Barker*,
    551 F. Supp. 2d 234 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Fischer v. Forrest*,
    No. 14-1304, 2017 WL 128705 (S.D.N.Y. Jan. 13, 2017). . . . . . . . . . . . . . . . . . . . . . .13

*Foman v. Davis*,
    371 U.S. 178 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

*Grecco v. Age Fotostock Am., Inc.*,
    No. 21-423, 2021 WL 3353926 (S.D.N.Y. Aug. 2, 2021). . . . . . . . . . . . . . . . . . . . . 19, 23

*Guan v. Lash Princess 56 Inc.*,
    No. 22-2552, 2023 WL 2242050 (S.D.N.Y. Feb. 27, 2023) . . . . . . . . . . . . . . . . . . . . . 24

*Hahn v. Off. & Pro. Emps. Int'l Union, AFL-CIO*,
    107 F. Supp. 3d 379 (S.D.N.Y. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hogan v. Fischer*,
   738 F.3d 509 (2d Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Holness v. LG Chem Ltd.*,
   2021 WL 5180902 (S.D.N.Y. Nov. 8, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Ingenito v. Riri USA, Inc.*,
   89 F. Supp. 3d 462 (E.D.N.Y. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Jose Luis Pelaez, Inc. v. McGraw-Hill Glob. Educ. Holdings LLC*,
   399 F. Supp. 3d 120 (S.D.N.Y. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Kelly–Brown v. Winfrey*,
   717 F.3d 295 (2d Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Kramer v. Time Warner Inc.*,
   937 F.2d 767 (2d Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Krupski v. Costa Crociere S.p.A*,
   560 U.S. 538 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-13

*Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*,
   23 F. Supp. 3d 344 (S.D.N.Y. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*McCarthy v. Dun & Bradstreet Corp.*,
   482 F.3d 183 (2d Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*McDermott v. This Dog's Life Corp.*,
   730 F. Supp. 3d 73 (S.D.N.Y. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Michael Grecco Prods., Inc. v. RADesign, Inc.*,
   112 F.4th 144 (2d. Cir. 2024). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 15, 17

*Minden Pictures, Inc. v. Complex Media, Inc.*,
   No. 22-4069, 2023 WL 2648027 (S.D.N.Y. Mar. 27, 2023) . . . . . . . . . . . . . . . . . . 16, 17

*Noland v. Janssen*,
   2019 WL 1099805 (S.D.N.Y. Mar. 8, 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Ortiz v. Cornetta*,
   867 F.2d 146 (2d Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Ouedraogo v. A-1 Int'l Courier Serv., Inc.*,
   No. 12-5651, 2013 WL 3466810 (S.D.N.Y. July 8, 2013) . . . . . . . . . . . . . . . . . . . . . . 24

*Park v. Skidmore, Owings & Merrill LLP*,
   No. 17-4473, 2019 WL 9228987 (S.D.N.Y. Sept. 30, 2019). . . . . . . . . . . . . . 9, 15, 16, 18

*Pasternack v. Shrader*,
  863 F.3d 162 (2d Cir. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Petrella v. Metro-Goldwyn-Mayer, Inc*
  572 U.S. 663 (May 19, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Psihoyos v. John Wiley & Sons., Inc.*,
  748 F.3d 120 (2nd Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Reif v. Art Inst. of Chicago*,
  No. 24-809, 2025 WL 763424 (2d Cir. Mar. 11, 2025). . . . . . . . . . . . . . . . . . . . 8, 10, 15

*Richardson v. Complex Media, Inc.*,
  No. 20-6201, 2021 WL 230192 (S.D.N.Y. Jan. 22, 2021). . . . . . . . . . . . . . . . . . . . . . . . 22

*Richardson Greenshields Sec., Inc. v. Lau*,
  825 F.2d 647 (2d Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Rotblut v. 333 E. 66th St. Corp.*,
  No. 96-5228, 1996 WL 586353 (S.D.N.Y. Oct. 11, 1996) . . . . . . . . . . . . . . . . . . . 24, 25

*Salahuddin v. Cuomo*,
  861 F.2d 40 (2d Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*State Teachers Ret. Bd. v. Fluor Corp.*,
  654 F.2d 843 (2d Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Livecchi*,
  711 F.3d 345 (2d Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Watson v. Compagnie Financiere Richmont SA*,
  No. 18-547, 2020 WL 5027120 (S.D.N.Y. Aug. 25, 2020). . . . . . . . . . . . . . . . . . . 13, 14

*Wingspan Recs., Inc. v. Simone*,
  No. 12-2172, 2014 WL 2116191 (S.D.N.Y. May 16, 2014) . . . . . . . . . . . . . . . . . . . . . . 13

### Statutes & Rules

17 U.S.C. § 106(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fed. R. Civ. P. 8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fed. R. Civ. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-10, 24

Fed. R. Civ. P. 15(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Fed. R. Evid. 408. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Other Proceedings*

*The Wave Studio, LLC v. Amadeus North America, Inc.*,
Case No. 15-6995 (S.D.N.Y.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*The Wave Studio, LLC v. Booking Holdings Inc.*,
Case No. 21-2691 (S.D.N.Y.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## PRELIMINARY STATEMENT

Plaintiff The Wave Studio LLC ("Wave" or "Plaintiff") holds over 3,000 federally registered copyrights, and for the last decade, it has diligently pursued copyright infringement claims against entities operating under the Booking Holdings corporate umbrella. Despite Bookings Holdings' (née Priceline) multiple corporate reorganizations, Wave consistently identified and timely sued what it reasonably believed to be the controlling entity when the claims accrued: Kayak in 2013, Priceline in 2015, and ultimately Booking Holdings in 2021.

Now, Booking Holdings movants attempt to dodge liability with a premature motion to dismiss that improperly relies not on Wave's allegations, as the law requires at this stage, but rather on contested evidence produced for the purposes of settlement. The Motion construes this evidence to argue when Wave supposedly "should have known" of alleged infringements and whether the alleged infringements accrued as pleaded or were continuous harms. Courts routinely decline to resolve these fact-intensive issues without discovery, and the Motion's further attempts to artificially divide among subsidiaries Wave's collective allegations against "Booking Group Defendants" to manufacture statute of limitations defenses as to particular entities only underscores the necessity of discovery here. Dismissing Wave's timely filed infringement claims on these bases would comport with neither due process, nor the discovery rule followed by the Second Circuit.

The Booking Holdings movants also claim that two of their entities are too "international" to be culpable under the Copyright Act, but these arguments are unsupported by the allegations. As these entities maintain U.S. offices and operations, any pleadings deficiency can readily be cured by the amended allegations Wave proposes.

Booking Holdings' premature attempt to litigate disputed factual matters and artificially dissect its infringement must be rejected outright. Their motion to dismiss should be denied, and

1

Wave should be allowed to proceed to discovery. To the extent the Court identifies any deficiencies in Wave's pleadings on any ground challenged by the Motion, they are readily curable by amendment. Accordingly, Wave's concurrent cross-motion for leave to amend should be granted.

**STATEMENT OF FACTS**

**A.     The Copyrighted Images**

The Wave Studio, LLC, and its principal Junior Lee, holds over 3000 registered copyrights in photographs, across 30 registrations with the United States Copyright Office. At all times, Wave retained all rights to the copyrighted images. Docket No. 1 at ¶¶ 8, 95. In 2012, Wave began discovering its copyrighted works in international print and online publications, where without permission, entities known and unknown to Wave appeared to be displaying, distributing and reproducing the protected works throughout the global travel industry without respect nor recompense for Wave's copyrights. Docket No. 1 at ¶¶ 103-113.

Wave, a single principal company, began capturing screenshots of where the copyrighted images were appearing and ultimately determined that unauthorized parties must have been distributing and reproducing the copyrighted works based on what photo was displayed when, and who the photos might have been distributed to or from. *Compare* Docket No. 1 at ¶ 107 ("True and correct copies of representative websites displaying Plaintiff's Copyrighted Works provided by VFM are hereto attached as Exhibit 2") *with id.*, Ex. 2 at 2, 4.



2



As Wave continued to collect evidence over the next several years, these screenshots were maintained in support of Wave's allegations of infringements as they accrued, and exemplary images of this ongoing work were included as exhibits to later-filed complaints, including Exhibit 1 to the Master Complaint. *See e.g.,* Docket No. 332-1, Ex. 1; Cilento Dec. ¶ 3.

**B.    Wave Alleges Copyright Infringement Against Booking Holdings Entities**

Moving Defendants Agoda Company Pte. Ltd., AGIP LLC, Booking.com BV, Booking.com (USA) Inc., Rocket Travel, Inc., Momondo A/S, Priceline.com LLC, and HotelsCombined LLC are not unrelated third parties but rather branded subsidiaries and operating arms of Booking Holdings Inc., which is a global corporate umbrella incorporated in Delaware. Docket No. 332 at ¶ 37.[1] The travel search and booking conglomerate now known as Booking Holdings operates a complex corporate structure that offers its services through what it terms "five primary consumer-facing brands: Booking.com, Priceline, Agoda, KAYAK, and OpenTable." Ex. B;[2] *see* Ex. A ¶ B2, B3, B10.[3] Booking Holdings does not itself market or sell

---

[1] All Moving Defendants have been represented by the same firm—Morgan Lewis—since July 29, 2022. Docket No. 278.

[2] The Court can take judicial notice of public filings at government agencies, including the Securities and Exchange Commission. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)("[A] district court may take judicial notice of the contents of relevant public disclosure documents required to be filed with the SEC as facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.' Fed.R.Evid. 201(b)(2).")

[3] Unless otherwise specified, "Ex." references exhibits to the April 11, 2025 Declaration of Michael D. Cilento in Support of this opposition to this motion to dismiss and Plaintiff's cross-motion for leave to amend.

travel services to consumers directly through a single "Booking Holdings" website, instead

operating through these (and many other) constituent companies, where these brands and entity

names have changed over the years:

- Priceline.com was launched as a public company in 1999, acquiring Booking.com and Bookings B.V. in July 2005 (Ex. C); Ex. A ¶B4

- In November 2007, Priceline acquired Agoda Company, Ltd. and AGIP LLC (Ex. D); Ex. A ¶B5;

- In May 2013, Priceline acquired Kayak, and in April 2014, the company rebranded from Priceline.com Inc. to The Priceline Group, Inc. (Exs. E, F); Ex. A ¶B5;

- In February 2015, The Priceline Group acquired Rocket Travel Inc., and in July 2017, The Priceline Group acquired Momondo (Ex. G, H); Ex. A ¶B5;

- In 2018, The Priceline Group, Inc. changed its name to Booking Holdings Inc., and acquired HotelsCombined (Exs. I, J); Ex. A ¶B5.

When Wave filed its first complaint on December 31, 2013, it named the infringing companies it

could reasonably identify at that time as responsible for unauthorized use of the copyrighted

works, including Booking Holdings entities and 100 Doe Defendants, and alleged that each

named and Doe defendant infringed by "reproducing, displaying, or distributing unauthorized

copies of Plaintiff's photographs in violation of 17 U.S.C. § 501" and "one or more Defendants

have further induced the infringement of Plaintiff's Copyrighted Works by others." Docket No. 1

¶ 115. The complaint named entity "Kayak Software Corporation d/b/a kayak.com" of

then-parent Priceline, alleging based on available information that Kayak was responsible for

distributing infringing images, *id.,* and the amended complaint filed on April 23, 2014,

additionally alleged for all defendants and Does that "may each be liable for contributory

copyright infringement alleged herein to the extent that one or all may have supplied, provided,

distributed, or otherwise facilitated unfettered access by unknown third-parties to the Hotel

Photographs without Plaintiff's knowledge or authorization." Docket No. 7 ¶ 172.

On March 23 and 24, 2015, Wave filed suit against additional entities in control of various domains that appeared to display and distribute infringing content, including Priceline. In *The Wave Studio, LLC v. Amadeus North America, Inc.*, Case No. 15-6995 (S.D.N.Y.) alleging that Priceline "itself or through affiliated entities, owns and uses, and/or has owned and used" over 35 domain names, including "booking.com . . .bookingbuddy.com, . . . kayak.com, priceline.com, rezserver.com, airportshuttles.com, farecompare.com." Docket No. 1 ¶ 15-16.

By the time Wave filed suit on March 29, 2021, The Priceline Group had rebranded as Booking Holdings Inc., and publicly identified its consumer-facing operations to include Agoda, Booking.com, Priceline, KAYAK, and OpenTable. *See The Wave Studio, LLC v. Booking Holdings Inc.*, Case No. 21-2691 (S.D.N.Y.), Docket No. 1 ¶ 31. The complaint alleged violative acts of infringement Wave discovered during the course of the stay, reflecting the current corporate structure and locus of new alleged infringing acts with Booking Holdings. *Id.* at 31-44. The complaint alleged that "Booking Holdings encouraged, caused, induced, materially contributed to, and/or assisted the Booking Group's infringement of Plaintiff's Copyrighted Works by operating the Booking Group as an integrated and collaborative entity where the so-called separate brands are interdependent and cross-list accommodation providers across platforms, as well as certain brands acting as a meta-searcher" (¶ 44); that defendants "hous[ed] certain Copyrighted Works in content distribution networks that act as photo libraries, including, but not limited to, bstatic.com" and that "[t]hese content distribution networks permit other websites, such as priceline.com, agoda.com, and websites not affiliated with the Booking Group, to 'pull' the photographs from them" and "[d]espite having no permission, consent, or license to do so from Plaintiff, Defendants have used and continue to use the Copyrighted Works in violation of Plaintiff's exclusive rights as a copyright owner, and have not compensated Plaintiff

for such use," attaching examples of such use as Exhibit 3 to the complaint. *The Wave Studio, LLC v. Booking Holdings*, Case No. 21-2691 (S.D.N.Y.), Docket No. 1 ¶ 46, Exhibit 3.

## C.     The Court Orders a Master Complaint, Compendium Spreadsheet and FRE 408 Production

In an effort to streamline the proceedings before it, the Court ordered Wave to consolidate its allegations from all consolidated cases into one amended complaint. The Master Complaint provided allegations as to a group of Booking Holdings entities called the 'Booking Group,' alleging that "Booking Group, itself or through affiliated entities, has reproduced, displayed, and distributed one or more copies of Wave's Copyrighted Works" listing places of distribution as:

> desktop or mobile websites or apps at the domain names booking.com, bstatic.com, priceline.com, pclnc.com, kayak.com, agoda.com, agoda.net, rocketmiles.com, and momondo.com, other websites, related content delivery networks, mobile apps, mobile sites, distribution hubs, storage mechanisms and other electronic means, which are accessible and viewed by individuals

Docket No. 332 ¶ 153; *see* Ex. A ¶ B22. Wave prepared a voluminous set of over 1500 spreadsheets to attempt to identify which evidence of infringement pertained to various defendant groups, one of which was the Booking Holdings entities. *Id.*; Docket No. 321 (Hearing Tr.), at 22:4-15. Predecessor counsel for Wave noted to the Court that the undertaking was difficult due to the volume, but as described in the Master Complaint, the spreadsheets aimed to fulfill the Court's request that Wave include "for each photograph who allegedly infringed it, and when" (*id.*):

Docket No. 332-1, Ex. 1 at 56; Cilento Dec. ¶ 3. While the spreadsheets provide an indication of 'domain name' in-text, they do not specify the type of infringement supported by the spreadsheet (i.e., display, distribution, or reproduction). *Id.*

On its face, Wave organized the Compendium Spreadsheet using slipsheets within the body of the PDF to identify which spreadsheets pertained to particular defendants and defendant groups. *Id.* at 2. Wave consolidated evidence of the different alleged acts of infringement across previously filed complaints naming various Booking Holdings brands, and identified which photos were involved in screenshots supporting Wave's consolidated complaints against Bookings Holdings companies in pages 2 through 723 of the Compendium Spreadsheet under the cover sheet "BOOKING GROUP DEFENDANTS." *Id.* At the direction of the Court, Wave also provided the evidence backing the four relevant complaints against Booking Holdings entities in one contiguous production. Docket No. 321. The Court ordered Wave to produce these screenshots to defendants for the purposes of pre-discovery F.R.E. 408 settlement discussions.

> Case 7:13-cv-09239-CS-VR     Document 332-1     Filed 01/26/24     Page 2 of 1504
>
> BOOKING GROUP
> DEFENDANTS

**D.      The Booking Holdings Movants' Motion**

Defendants' Motion ignores the BOOKING GROUP DEFENDANTS slipsheet and invents its own version of Wave's Compendium Spreadsheet, Mot. at 14, arbitrarily parsing the spreadsheets with reference to vestigial 'bookmark' links they found in the PDF file to assign evidence of infringement to various Booking Holding entities:

All of the dates in the Compendium Spreadsheet for the BHI Case Moving Defendants are from February 28, 2012, to July 6, 2014, *long before the statute of limitations three-year cut-off of March 29, 2018*:

| Defendant | Identified Pages of Compendium Spreadsheet | Date Range in Compendium Spreadsheet Pages |
|---|---|---|
| (1) Booking Holdings Inc. | Assume 205-449 | 2/29/2012 – 7/6/2014 |
| (2) Agoda Company Pte Ltd. | 2-204 | 2/28/2012 – 7/6/2014 |
| (3) AGIP LLC | Assume 2-204 | 2/28/2012 – 7/6/2014 |
| (4) Booking.com BV | Assume 205-449 | 2/29/2012 – 7/6/2014 |
| (5) Booking.com (USA) Inc. | Assume 205-449 | 2/29/2012 – 7/6/2014 |
| (6) Rocket Travel, Inc. | Assume 205-449 | 2/29/2012 – 7/6/2014 |
| (7) Momondo A/S | 451-456 | 1/18/2013 – 6/1/2013 |

Mot. at 16. Plaintiff neither alleged nor otherwise provided the "Identified Pages of Compendium Spreadsheet," and Plaintiff's spreadsheet does not delineate entries by entity for the Booking Group. *See generally*, Docket No. 332-1, Ex. 1; Cilento Dec. ¶ 3. Rather than contend with the complaint allegations, the Motion points to fields such as "Infringer" code, which does not consistently identify a domain and, the PDF 'bookmark' links that, when visible, do not appear to consistently identify the spreadsheets, Ex. 1 at 536; Cilento Dec. ¶ 3:



## ARGUMENT

## I.     THE MOTION TO DISMISS SHOULD BE DENIED IN ITS ENTIRETY

### A.     Wave's Claims are Not Time Barred

A statute of limitations defense on a Rule 12(b)(6) motion faces a high bar. "'Dismissal under Rule 12(b)(6)' based on a statute of limitations is 'appropriate only if it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" *Reif v. Art Inst. of Chicago*, No. 24-809, 2025 WL 763424, at *2 (2d Cir. Mar. 11, 2025) (citing *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th

144, 150 (2d Cir. 2024)). But Wave does not bear the burden of proving its claims are not barred; rather, "Defendants' argument that Plaintiff's copyright infringement claims must be dismissed on statute of limitations grounds 'is an affirmative defense for which [Defendants] bear[] the burden of proof.'" *Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC,* 23 F. Supp. 3d 344, 358 (S.D.N.Y. 2014) (citing *United States v. Livecchi,* 711 F.3d 345, 352 (2d Cir. 2013)).

"In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff." *Park v. Skidmore, Owings & Merrill LLP*, No. 17-4473, 2019 WL 9228987, at *3 (S.D.N.Y. Sept. 30, 2019). Defendants attempt to avoid confronting this standard, and instead of grappling with the substance of Wave's allegations to establish whether the claims fall outside the statutory timeframe, the Motion relies instead on parsing the Compendium Spreadsheet and referencing extrinsic evidence produced during Rule 408 exchanges.

Wave disputes the propriety of Defendants' reliance on documents and screenshots produced for the limited purpose of settlement discussions. Cilento Decl. ¶ 3. At minimum, these materials are immaterial because "this Court cannot weigh the evidence on a motion to dismiss." *Bd. of Trs. of Operating Eng'rs Pension Tr. v. JPMorgan Chase Bank, Nat. Ass'n*, No. 09-9333, 2013 WL 1234818, at *11 (S.D.N.Y. Mar. 27, 2013). "While it can review certain documents attached to, or incorporated by reference in, the [complaint]," the Court "cannot now make factual findings," and the suggestion that "these documents can be used to dispense with the entirety of the claims here takes them (and what a court can do with *Twombly*) too far." *Id.*

Indeed, Defendants' reliance on materials outside the four corners of the complaint tacitly concedes the absence of a limitations bar on the face of the pleading. *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 359 (S.D.N.Y. 2014) (citing *Kelly–Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013)) ("Defendants' papers transparently cite information

9

outside the complaint to support their argument," and "[t]his tactic is not permitted at this stage of the case"). "'[S]ome doubt' as to the expiration of the limitations period 'is all that is necessary to withstand a motion to dismiss under rule 12(b)(6),'" *Reif,* 2025 WL 763424, at *2 (citing *Ortiz v. Cornetta*, 867 F.2d 146, 149 (2d Cir. 1989)), and here there is far more than "some doubt." At minimum, substantial questions of fact remain as to: (i) when the statute of limitations lapses for each defendant, (ii) on what date Wave "knew or should have known" of each alleged claim of display, distribution, and reproduction infringement, and (iii) whether the nature of any such infringement causes a claim to accrue at each event, or on a continuing basis. These unresolved factual disputes make dismissal improper.

### 1.    All Claims Against Booking Defendants Relate Back to the Original Complaints

The Motion mischaracterizes the timeline and substance of the pleadings. Each complaint Wave has filed against the Booking Holdings entities over the last 11 years—including those filed in 2013, 2015, and 2021—named those controlling entities Wave could reasonably identify as responsible for the infringing acts. As the Booking Holdings corporate structure evolved, Plaintiff refined its pleadings accordingly to reflect the true locus of operational control. *Supra* Statement of Facts § B. In 2024, when the Court requested that Wave provide a Master Complaint and accompanying "spreadsheet" showing "for each photo who infringes and when," Wave clarified what the Booking Holding defendants are responsible for under "BOOKING GROUP DEFENDANTS." Docket No. 332-1 at 2 to 723.

Defendants now seek to atomize the consolidated allegations, arguing that each entity should be assessed in isolation and bound by a three-year statute of limitations tethered to the date it was first named. Mot. at 17-19 (March 23, 2012); 13, 16 (March 29, 2018). But these entities are not strangers to one another, nor are they strangers to the conduct alleged. Wave

pleaded no 'bookmarks' or little table divvying up its charges by entity, as the Motion posits. *Id.* The claims concern coordinated conduct under common control and should be treated accordingly.

Later "pleadings that meet the requirements of Rule 15(c) are considered to 'relate back' to the date of the original complaint" for the purposes of statute of limitations so long as they meet certain criteria. *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013). The two key questions under Rule 15(c) are whether the later defendants (i) had notice of the initial allegations and (ii) understood that they were the intended targets of the allegations. *Krupski v. Costa Crociere S.p.A*, 560 U.S. 538, 541 (2010) (the inquiry "depends on what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the pleading") (citing Rule 15(c)(1)(C)(i) and (ii)). On those points, the record is unambiguous—Booking Holdings had both notice and an identity of interest with its subsidiaries, and the claims against the Booking Group entities should thus relate back to the first complaint as alleged in the Master Complaint.

To the extent that Defendants argue they did not have actual notice of suit through Booking Holdings' shared leadership and operations, they had at least constructive notice. "To satisfy the notice requirement under Rule 15(c)(1)(C)(i), a plaintiff may plead that two defendants are so 'closely related in their business activities or linked in their corporate structure' as to have an 'identity of interest'" and "'the institution of an action against one party will constitute imputed notice' to the related party later named in an amended complaint." *Hahn v. Off. & Pro. Emps. Int'l Union, AFL-CIO*, 107 F. Supp. 3d 379, 384 (S.D.N.Y. 2015) (citing *In re Allbrand Appliance & Television Co., Inc.*, 875 F.2d 1021, 1025 (2d Cir.1989)). While a standard "parent-subsidiary relationship alone may not" be enough to confer notice, the facts in this case show "that the [multiple] companies, intentionally or not, often blurred the distinction between

11

them." *Ingenito v. Riri USA, Inc*., 89 F. Supp. 3d 462, 482-83 (E.D.N.Y. 2015) ("Riri SA and Riri

USA are sometimes treated as a single entity and are often collectively referred to as 'Riri

Group'"). As alleged, Booking Holdings' entities are interoperative, and the alleged infringement

was uniformly under the control of the Booking Holdings umbrella. *Supra* Statement of Facts §

B; *The Wave Studio, LLC v. Booking Holdings*, Docket No. 1 ¶ 60 ("Booking Holdings, Booking

BV, AGIP, Agoda Company, and Rocket had actual or constructive knowledge, or should have

known, of Plaintiff's rights in and to the Copyrighted Works, and the Booking Group's

infringement of Plaintiff's Copyrighted Works, due to the following actions: . . . The Wave

Studio, LLC v. Amadeus North America, Inc., et al., . . . The Wave Studio, LLC v. General Hotel

Management Ltd."); ¶ 33 ("'Agoda Brands' means any term or keyword . . .Agoda, Booking,

Bookings, Active Hotels, or Priceline, Rentalcars, KAYAK, Opentable, Buteeq"). In *Ingenio*, the

court concluded that similarly situated parties were "united in interest to the extent that [one] can

be charged with notice of the institution of the action" against the other, where "Riri SA has

made clear that Riri USA is its distributor and agent in the United States, and Plaintiff's

connection to Riri SA is through Riri USA." *Ingenito* 89 F. Supp. 3d at 481.

  As the Booking Holding entities had at least constructive notice of the litigation, Rule

15(c)(1)(C)(ii) next probes whether defendants "should have known, within the Rule 4(m)

period, that it was not named as a defendant in that complaint only because of [plaintiff's]

misunderstanding about which []entity was in charge." *Krupski*, 560 U.S. at 554-55. Wave's

allegations express its intent to sue the entities responsible for multiple interrelated

websites—including Booking.com, Priceline.com, Kayak.com, and others—all of which operate

under a unified infrastructure. *Supra* Statement of Facts § B. In *Krupski*, the Supreme Court

accepted such complaint allegations as demonstrative of plaintiff's intent "to sue the company

that 'owned, operated, managed, supervised and controlled' the ship on which she was injured.'"

*Fischer v. Forrest*, No. 14-1304, 2017 WL 128705, at *9 (S.D.N.Y. Jan. 13, 2017) (quoting *Krupski*, 560 U.S. at 554-55)). Likewise, such "misunderstanding about which [Booking] entity was in charge of the [infringement]" as "clearly a 'mistake concerning the proper party's identity.'" *Krupski*, 560 U.S. at 554-55; *Watson v. Compagnie Financiere Richmont SA*, No. 18-547, 2020 WL 5027120, at *11 (S.D.N.Y. Aug. 25, 2020) (finding facts suffice to show mistake" and substantiate relation back under the federal rule where a party's "role in the organizational structure—and involvement in the conduct at issue—was not known to Plaintiff when the Complaint was filed").[4]

Were relief under Rule 15(c)(1)(C) not available, the circumstances here warrant relation back under New York law as well. Relation back under New York Civil Practice Law and Rules § 203 requires (1) claims arising from the same conduct, (2) unity of interest between the old and new defendants, and (3) that the new defendant knew or should have known that it would have been sued but for a mistake. *Holness v. LG Chem Ltd.*, 2021 WL 5180902, at *4 (S.D.N.Y. Nov. 8, 2021). Booking Holdings entities satisfy each prong for the reasons stated above. *See Wingspan Recs., Inc. v. Simone*, 2014 WL 2116191, at *5 (S.D.N.Y. May 16, 2014).

Thus, under Rule 15(c)(1)(C), as well as New York's more forgiving standard for relation back, the claims against Booking Holdings entities are not barred by the statute of limitations because the allegations against the Booking Group relate back to the 2021, 2015, and 2013 complaints.

---

[4] The Booking Group's conduct further undermines any claim of surprise. To this day, no Booking Holding entity has filed a Rule 7.1 statement disclosing their corporate structure. Cilento Decl. ¶ 3. Movants have litigated the case through shared counsel, and maintained control over the infringing platforms, which were repeatedly referenced in the earlier pleadings. *See supra* Statement of Facts § B; Ex. A ¶ B5; *Watson*, No. 18-547, 2020 WL 5027120, at *11 (citation omitted) ("RI is represented by the same counsel and [has] been aware of this action since its inception. [Indeed,] CFR's motion to dismiss is based largely on the argument that Plaintiff mistakenly named CFR because it is a holding company with no operations. These circumstances justify application of the relation-back doctrine").

This is the rational result in equity as well: the "the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial," and the controlling entities received such notice with each complaint. *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (citing Fed. R. Civ. P. 8); *Watson*, No. 18-547, 2020 WL 5027120, at *11. If the Court granted Defendants' request to dismiss hundreds of Plaintiff's claims on this ground, it would encourage closely-held corporate parents like Booking Holdings to hide behind a rotating cast of subsidiaries and nominal defendants to evade liability until the clock runs out—despite having been on notice of claims brought in good faith by a plaintiff.

As the operative statute of limitations date for the movants is grounded in the 2013 complaint against Kayak, the Court need not wade in to the Fed. R. Evid. 408 document production—no claim against any movant is vulnerable to the Defendants' statute of limitations defense as none of the documents produced predate 2012. *See generally,* Docket No. 332-1; Cilento Dec. ¶ 3.

### 2.    The Parties Factually Dispute When Wave Discovered Each Alleged Infringement

Even assuming that parent Booking Holdings (then-Priceline) was only on notice of Wave's claims when Wave filed the 2015 suit against Priceline, the Motion could only attempt to challenge claims accruing prior to March 23, 2012 (three years prior to filing). Presuming the earliest date reflected in the Compendium Spreadsheet for the movants is February 28, 2012, Mot. at 16, the operative question then becomes whether Wave, having seen webpage screenshots on February 28, 2012, knew or should have known before March 23, 2012 (the next 3 weeks) that a network of sites and platforms was infringing her works through distribution.

Per the Second Circuit's 'discovery rule,' "copyright infringement claims do not accrue until actual or constructive discovery of the relevant infringement," *Psihoyos v. John Wiley & Sons., Inc.*, 748 F.3d 120, 125 (2nd Cir. 2014), and whether a plaintiff "knew or should have known" of infringement often requires an analysis of credibility, access, and opportunity, none of which can be probed on this Motion.[5] *Reif*, 2025 WL 763424, at \*2. Defendants ask the Court to find as a matter of law that Wave did discover infringement before March 23, 2012, and did so within a span of days—despite pleadings alleging that the scope and scale of Booking Holdings' networked infringement only emerged after months if not years of investigation. These are not conclusions the Court can or should reach at this stage.

**First,** Defendants contend that Wave alleges "the date Plaintiff visited the identified domain" amounts to "actual notice of the alleged infringing conduct" because "the dates in the Compendium Spreadsheet correspond to the 'date range in which the infringement occurred'" and "these dates also are when Ms. Lee claims to have captured evidence of the alleged infringements." Mot. at 12.[6] But their Motion points to no allegation within the Master Complaint that **conclusively** supports their "speculat[ion] that Plaintiff's theory might be time-barred because" Wave discovered all types of pleaded infringements immediately upon viewing isolated screenshots. *Park,* 2019 WL 9228987, at \*7. Even the Compendium Spreadsheets present no definitive information proving when Wave discovered each

---

[5] Priceline and HotelsCombined acknowledge as much. *See* Mot. at 13 n8 ("the Compendium Spreadsheet also identifies alleged unauthorized use of certain photographs with dates that only fall within the statute of limitations period. These two Moving Defendants are not seeking here to dismiss Plaintiff's claims as to those photographs on statute of limitations grounds but reserve the right to assert limitations as a defense once they take discovery").

[6] "The pleading requirements of the Federal Rules of Civil Procedure do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses." *Clark v. Hanley,* 89 F.4th 78, 93-94 (2d Cir. 2023). "Timeliness" is "not an element of a copyright infringement claim" and "[t]he lapse of a limitations period is an affirmative defense that a defendant must plead and prove." *Grecco Prods., Inc.*, 112 F.4th 144, 154 (2d Cir. 2024).

infringement.[7] *Supra* Statement of Facts § B. As "a limitations defense must be apparent on the face of that pleading," the Court should deny the Motion. *Park,* 2019 WL 9228987, at *7 (denying motion to dismiss).

      ***Second***, Plaintiff alleges that in addition to infringing display use, the various Booking Defendants have reproduced and distributed copies of its protected works to users and affiliates across the many Booking platforms, including via server-side storage, "related content delivery networks, mobile apps, mobile sites, distribution hubs, storage mechanisms and other electronic means, which are accessible and viewed by individuals." *See e.g. The Wave Studio, LLC v. General Hotel Management Ltd et al.,* Docket No. 332, ¶¶ 153-155. These allegations state a distinct claim under 17 U.S.C. § 106(3) that does not depend upon whether a visual display occurred at any given time. *See Jose Luis Pelaez, Inc. v. McGraw-Hill Glob. Educ. Holdings LLC*, 399 F. Supp. 3d 120, 136 (S.D.N.Y. 2019) (distinguishing between untimely claims for the printing and timely claims for distributing of the same works); *Baker v. Weber*, No. 19-1093, 2021 WL 4480998, at *12 (S.D.N.Y. Sept. 30, 2021) (determining separate statute of limitations for each time defendants published and sold one work). Indeed, as courts in this Circuit have held, infringing distribution may occur even when a work is made available or cached without visible display. *See, e.g.*, *Elektra Ent. Grp., Inc. v. Barker*, 551 F. Supp. 2d 234, 244 (S.D.N.Y. 2008).

      ***Third,*** Defendant attempts to characterize Wave as a "sophisticated plaintiff" who evidently should have known of each act of infringement because Wave "licenses its content" and used simple search tools to identify instances of its photos online. Mot. at 9-10 (citing *Minden Pictures, Inc. v. Complex Media, Inc.*, No. 22-4069, 2023 WL 2648027, at *1 (S.D.N.Y. Mar. 27,

---

      [7] In fact, the Compendium Spreadsheet appears to have inadvertently omitted the most recent evidence of infringement by now-parent Booking Holdings, examples of which are attached as exhibits to the complaint in the 2021 case. *See Booking*, Case No. 21-2691, Docket No. 1, Ex. 3.

2023)). But the Second Circuit cautioned *against* application of *Minden* court's higher expectation of a "sophisticated plaintiff's" knowledge on an undeveloped record. *Grecco Prods., Inc.*, 112 F.4th 144, 152 (2d Cir. 2024) (*Minden*'s application of a different standard of discovery to "sophisticated plaintiffs" without significant factual evaluation "has no mooring to our cases"). Single proprietor Wave does not allege information sufficient to conclude that a higher standard of knowledge is appropriate here, and "[t]he limited record at this motion-to-dismiss stage does not permit the Court to draw the conclusion that meets the 'should-have-known' test. Further development of the factual record may demonstrate otherwise, but that is an issue for another day." *McDermott v. This Dog's Life Corp.*, 730 F. Supp. 3d 73, 80 (S.D.N.Y. 2024).

### 3.    Wave Alleges Separately Accruing Violations Within the Purported Statute of Limitations Period for the Booking Defendants

The Motion pays little more than lip service to its argument that Wave's allegations of prior infringement of a single photo by HotelsCombined and Priceline somehow bar all subsequent claims involving the same work. Mot. at 18. The Moving Defendants do not identify which allegations in the operative complaint they believe fall outside the statutory period, nor do they engage with the factual distinctions between separately accruing uses. *Id.* Instead, they offer a sweeping and conclusory statement that "those domains that allegedly displayed the same" photographs previously are now merely continuing the "same type of use to market the same hotels." Mot. at 17-19.

This superficial framing ignores the factual and legal nuances necessary to determine whether the challenged conduct constitutes a continuing violation or discrete acts of infringement. In *Petrella v. Metro-Goldwyn-Mayer, Inc.*, the Supreme Court found that "the separate-accrual rule attends the copyright statute of limitations," and "when a defendant commits successive violations, the statute of limitations runs separately from each violation,"

including "[e]ach time an infringing work is reproduced or distributed." 572 U.S. 663, 671 (2014). This District later applied *Petrella*, finding uncompelling a defendant's effort to frame the supposed continued access of infringing images as "merely continu[ing] a violation," as the "Supreme Court plainly instructed in *Petrella* that '[e]ach time an infringing work is reproduced'—which Plaintiff alleges occurred every time the infringing plans were loaded into RAM—'the infringer commits a new wrong.'" *Park*, 2019 WL 9228987 at *7 (quoting 572 U.S. at 671). Likewise, the Master Complaint alleges that Wave discovered its images were not merely displayed on a single site but reproduced and distributed among multiple interconnected domains, affiliates, and storage networks. Docket No. 332 at 111-112, 114; *id.,* Ex. 1 at 2-723.

Defendants do not analyze the later alleged uses to consider whether they are technically or temporally distinct, whether new platforms or URLs are involved, or whether new distribution, reproduction, or display occurred—each of which is distinct under the Copyright Act. *See generally* Mot. Nor do they attempt to reconcile their position with the well-settled rule that each act of infringement gives rise to a new, separately accruing claim. *See Petrella*, 572 U.S. at 671. Without tethering their argument to specific facts or law, the Motion invites the Court to assume that any allegation involving the same image must stem from a continuous course of conduct. This flips the Rule 12 standard on its head—at the pleading stage, all inferences must be drawn in Wave's favor, not the Defendants', and on the face of the complaint and proposed allegations, the infringements alleged are distinct in time, context, and technical implementation. *See* Proposed Allegations, Ex. A ¶ B15, B16 ("Ex. A"). Defendants' statute of limitations defense depends on disputed facts and should be resolved on a full record. *Park*, 2019 WL 9228987 at *7.

**B.    Wave's Claims Against Agoda and Momondo Fall Within Territorial Scope of the Copyright Act**

Agoda Company Pte. Ltd ("Agoda Company") and Momondo A/S ("Momondo") additionally invoke the presumption against extraterritorial application of the Copyright Act, arguing it bars claims against them as "foreign corporations." Mot. at 20. This misstates Agoda and Momondo's connections with U.S. commerce, and the existing and proposed allegations of direct and predicate violative acts within the United States.

"Plaintiffs seeking to bring copyright claims for works found on foreign websites are required to allege additional 'plus factors' beyond mere online availability" which can include "(1) the direction of copyrighted material into the United States, (2) when foreign acts are intended to, and do, have an effect within the United States, and (3) the uploading of copyrighted materials to servers located in the United States." *Dow Jones & Co., Inc. v. Juwai Ltd.*, No. 21-7284, 2023 WL 2561588, at *4 (S.D.N.Y. Mar. 17, 2023). Defendants cite *Grecco v. Age Fotostock Am., Inc.*, for the proposition that "[i]t is not a sufficient predicate act that a copyrighted work is made available online to United States users," but the allegations here are not so-limited and do allege at minimum more than one requisite "plus factor". No. 21-423, 2021 WL 3353926, at *4 (S.D.N.Y. Aug. 2, 2021).

**1.    Wave Alleges Agoda Company Acts Within the U.S. or Regarding the Plus Factors**

The Master Complaint alleges that "Agoda Company operates affiliated companies" including companies in the U.S. and that it "registers, owns, and uses" websites in the U.S., as well as "provid[ing] content for" websites "agoda.com and agoda.net," as well as "transacts or solicits business in this District" through "content delivery networks" and "mobile apps." Docket No. 332, ¶ 30. These are express allegations about domestic actions that substantiate the three plus factors. The Motion also dismisses Wave's "attempts to lump Agoda Company into the

'Booking Group,'" Mot. at 22, but well-pleaded allegations that a foreign-based company acted in concert with U.S. and other foreign companies to "reproduce[], display[], and distribute[] one or more copies of Wave's Copyrighted Works" through "content delivery networks, mobile apps, mobile sites, distribution hubs, storage mechanisms" for access and viewing by "individuals. . . in the United States and in this District," Docket No. 332 ¶ 153, constitute support for the first and third plus factors of "uploading of copyrighted materials to servers located" in the U.S. and "direction of copyrighted material into the U.S." *Dow Jones*, 2023 WL 2561588, at *4.

Wave's Cross Motion to Amend re-pleads allegations from *The Wave Studio, LLC v. Booking Holdings Inc.* complaint in the attached proposed allegations (Ex. A), additionally alleging that "Agoda Company has opened an office in New York" (¶ 32) (Exs. K, A ¶¶ B22, B33); that the Agoda Company Chairman confirmed "s[elling] rooms in Asia to Europeans, Middle Easterners, and Americans," in other words selling product to U.S. customers (¶ 32); and that "Agoda Company employs more than 4,000 staff" including "in the United States." Case No. 21-2691, Docket No. 1 ¶ 31. Agoda also maintains a Los Angeles office, which opened in August 2017. Ex. L. Under the law, proposed allegations about U.S. staff "marketing" "from within the United States" standing alone can establish domestic predicate acts. *Noland v. Janssen*, No 17-5452, 2019 WL 1099805, at *4 (S.D.N.Y. Mar. 8, 2019).

But Wave further proposes new allegations describing Agoda Company's use of servers located in the United States, including Agoda Company's use of US-based servers through its chosen US-based hosting and content delivery provider, Akami Technologies Inc., to distribute and display the copyrighted works. Ex. M; Ex. A ¶ B20. Wave proposes allegations that Agoda Company uses servers in the U.S. to provide its "agoda.com" website which "is operated by Agoda Company Pte Ltd, a Singaporean company that is managed by a multi-national team" including tailored widgets on the sites that display an American flag icon and direct U.S.

customers to make purchases. *See* Exs. N (2013); O (2025) (localized to "United States"); Ex. A ¶ B20. Agoda Company further maintains and provides access to its services through mobile applications marketed to U.S. users in U.S. app stores—the Apple app store listing notes on its face that the app "Seller" is "Agoda Company Pte. Ltd.". Exs. P (Apple); Q (Google Play); Ex. A ¶ B20.

Wave proposes additional allegations regarding Agoda Company's claim for copyright protection over the sites it maintains for U.S. users, further directing in Terms and Services webpage that "FOR COPYRIGHTS GRANTED BY THE UNITED STATES," rightsholders should send "[c]opyright infringement notifications" to "Agoda Company Pte. Ltd. Attention: IP Counsel 30 Cecil Street, Prudential Tower #19-08, Singapore 049712, legal@agoda.com." Exs. R at 3, A ¶ B24. These additional allegations would easily clear the low bar of extraterritoriality for Agoda Company. *See Craig v. UMG Recordings, Inc*., 380 F. Supp. 3d 324, 332 (S.D.N.Y. 2019) (holding that "[a]s a matter of law, sending a digital photograph to someone abroad enables that foreign user to make additional infringing copies").

### 2.    Wave Alleges Momondo Acts Within the U.S. or Regarding the Plus Factors

The Master Complaint alleges that Momondo utilizes servers in the United States to deliver content to their customers, *see* Master Compl. ¶¶ 66, 153, which this District has found sufficiently alleges direct infringement under the third plus factor. *Dow Jones*, 2023 WL 2561588, at *5 ("The Court concludes that Dow Jones has adequately stated a claim of direct copyright infringement by alleging Juwai's website used the CloudFront servers to store and distribute copies of the infringed works in the United States").

Wave's Cross-Motion to Amend proposes to further allege Momondo's use of the US-based servers and its US-based hosting and content delivery provider Fastly Inc. Ex. A.

¶ B30. These providers use "edge services" utilizing US IP addresses to reduce latency and enable speedy resolution of the websites to Momondo users in the United States. *Id*. ¶ 30. Based on publicly available information, such edge servers must necessarily upload and store a copy, or cache, of the requested content in the United States, *id*. ¶ 30; *see also* Ex. A ¶ B13, which is precisely the sort of conduct that gives rise to a claim under the Copyright Act. *See Dow Jones*, 2023 WL 2561588, at *5 (quoting *Richardson v. Complex Media, Inc.*, 20-6201, 2021 WL 230192, at *2 (S.D.N.Y. Jan. 22, 2021)) ("Where a complaint alleges 'that Defendants caused a copy of' an infringing work 'to be made on ... servers in the United States,' the complaint 'plainly alleges an act of direct infringement in the United States' by some entity").

Wave proposes additional allegations describing how Momondo not only posts remote U.S. job opportunities for specialized roles such as Frontend Engineer, Senior Data Scientist, and Senior Frontend Software Engineer, which require uploading and serving content on U.S. servers, but also maintains physical office locations including the "Global Technology HQ" office in Cambridge, Massachusetts, from which it likely maintains its websites and other infringing services. Exs. S, A ¶ B28. Wave's allegations include descriptions of Momondo's U.S. web services, including those provided through U.S. mobile application stores. Exs. T (Apple); U (Google Play); A ¶ B27. Momondo's website at https://www.momondo.com/ is available to users in the U.S. and provides search and comparison services tailored to users in the U.S. Ex. V, A ¶ B29. The site includes terms of service and a privacy policy directed to U.S. users (Ex. W), and the site itself is emblazoned with an American flag icon (Ex. A ¶ B29). Defendant's own terms of service there select New Haven, Connecticut as their choice of forum. *Id.*; Ex. W at 1, 9.

Momondo also holds a U.S. trademark in MOMONDO, applied for in November 04, 2010 (Ex. X at 2), for which it filed a Declaration of Use under § 71 of the Lanham Act on January 30, 2017 contending that the mark was "in use in commerce" in the U.S. with attached

specimens showing the momondo.com site serving search results to U.S. users in the stream of U.S. commerce. Exs. Y at 5, 6, A ¶ B31.[8] These proposed allegations are more than sufficient to establish domestic infringement under even the precedent movants rely upon. *Grecco*, No. 21-423, 2021 WL 3353926, at *4 (S.D.N.Y. Aug. 2, 2021) ("Grecco sufficiently alleges a domestic act of copyright infringement, because Grecco alleges that AF America maintained the website that displayed and distributed the Photos from within the United States").

## II.   THE COURT SHOULD GRANT WAVE'S CROSS MOTION FOR LEAVE TO AMEND AS TO THE MOVING DEFENDANTS

Having demonstrated that its claims are timely and directed at the appropriate parties, Plaintiff cross-moves against Moving Defendants and respectfully requests that the Court grant leave to amend its Master Complaint to provide additional particularized allegations regarding the Moving Defendants' distribution practices and domestic conduct, including predicate acts by Agoda and Momondo. *See* Ex. A (Proposed Allegations).

### A.    The Proposed Amendment Should Be Granted

Rule 15(a) provides that a court "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), which "promotes judicial economy by making it possible to dispose of all contentions between parties in one lawsuit." *Bilt-Rite Steel Buck Corp. v. Duncan's Welding & Corr. Equip., Inc.*, No. 90-311, 1990 WL 129970, at *1 (E.D.N.Y. Aug. 24, 1990). Courts typically deny leave only for undue delay, bad faith, futility, or prejudice. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). None of those grounds are present here.

---

[8] 37 C.F.R. § 7.37(a) (Section 71 declaration must include a statement that the registered mark is in use in commerce and must be supported by a specimen of use); 37 C.F.R. § 7.37(e) ( if the mark is not in use in U.S. commerce, the registrant must submit a claim of excusable nonuse).

**B.      There is No Undue Delay or Bad Faith by Wave, Nor Undue Prejudice**

Wave requests leave to amend in good faith to add further factual detail—not new

claims—based on evidence already in the record.[9] Courts routinely allow such amendments, even

years later, *see, e.g., Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir.

1987) (collecting cases), particularly where, as here, the motion comes well before the close of

discovery. *See Pasternack v. Shrader*, 863 F.3d 62, 174 (2d Cir. 2017). Indeed, the case remains

in its early stages due to consolidation and a pending stay. Docket No. 67. Discovery has not

begun as to the movants, the Court has not issued a scheduling order, and the parties have not

even exchanged initial disclosures. Courts typically decline to find undue prejudice where the

parties are still in the discovery phase. *See Ouedraogo v. A-1 Int'l Courier Serv., Inc.*, No.

12-5651, 2013 WL 3466810, at *5 (S.D.N.Y. July 8, 2013) (finding no prejudice where, although

the case was pending for some time, the action was still in the discovery phase). The amendment

will not delay discovery or limit Moving Defendants' opportunity to defend the claims; indeed,

the Court even has the discretion to test Wave's proposed allegations against Moving Defendants'

pending Motion to Dismiss. *See Guan v. Lash Princess 56 Inc.*, No. 22-2552, 2023 WL 2242050,

at *3 (S.D.N.Y. Feb. 27, 2023) (citation omitted) (where "the primary claims remain the same

between the proposed amended complaint and the complaint which a defendant has moved to

dismiss, the Court may consider the merits of the motion to dismiss in light of the proposed

amended complaint").

**C.      The Amendment Is Curative and Not Futile**

Amendment is not futile here. "In addressing the proposed futility of an amendment, the

proper inquiry is comparable to that required upon a motion to dismiss pursuant to Fed. R. Civ. P.

12(b)(6)": whether the proposed amendments contain "sufficient factual matter" which, if

---

[9] "[A]bsent a showing of bad faith or undue prejudice, [mere delay] does not provide a basis for a district court to deny the right to amend." *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981).

accepted as true, state a claim that is "plausible on its face." *Rotblut v. 333 E. 66th St. Corp.*, No. 96-5228, 1996 WL 586353, *1 (S.D.N.Y. Oct. 11, 1996) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009)). As discussed above in the Opposition, the additional allegations proposed further support Wave's pleaded claims—clarifying timelines, detailing acts of infringement, and reinforcing the Moving Defendants' U.S.-directed conduct. These are precisely the types of additions Rule 15 was designed to permit.

## <u>CONCLUSION</u>

In light of the foregoing, Wave respectfully requests the Court deny the motion to dismiss in its entirety and grant Wave's cross-motion for leave to amend.

Dated: April 11, 2025
   Brooklyn, New York        */s/ Michael D. Cilento*
                   Michael D. Cilento, Esq.
                   **LEWIS & LIN LLC**
                   77 Sands Street, 6th Floor
                   Brooklyn, NY 11201
                   Michael@iLawco.com
                   Tel: (718) 243-9323
                   Fax: (718) 243-9326
                   *Attorneys for The Wave Studio, LLC*