# EXHIBIT A

## Proposed Amended Allegations as Booking Group Defendants

B1.  The following allegations (XX to XX) are made upon information and belief, as well as information from publicly available sources.

**Booking Group Defendants**

B2.  Booking Holdings, Inc. ("BHI") is a travel search and booking conglomerate, managing and coordinating among its multiple subsidiary online travel agency brands, including making decisions on what brands to add to its collection of affiliates. BHI is a publicly traded United States company incorporated in the State of Delaware with its headquarters in Norwalk, Connecticut. In its Q4 2024 earnings call, BHI reported gross bookings of $166 billion for the year. BHI is currently ranked the largest online travel company based on market cap, 84% larger than its nearest competitor. Substantially all of BHI's revenue is from online accommodations and related travel services.

B3.  BHI touts itself as "the world leader in online travel and related services" connecting consumers who wish to make travel reservations—including accommodation, dining, and car rentals—with providers of travel services around the world through its various brands' online platforms. BHI's services also permit consumers to compare travel reservation information from hundreds of online travel platforms at once through its meta-search services, the heart of which include brands, and wholly owned subsidiaries such as Defendants Kayak Software Corporation (KAYAK.com), Priceline.com LLC (priceline.com), Agoda Company Pte. Ltd. (agoda.com and agoda.net), Hotels Combined LLC (hotelscombined.com), Booking.com B.V. (booking.com), Rocket Travel, Inc. (rockettravel.com and rocketmiles.com), Getaroom.com, and Momondo A/S (Momondo.com and Cheapflights.com) as well as FareHarbor B.V. (FareHarbor.com), Booking.com Transport Limited (rentalcars.com), and OpenTable, Inc. (OpenTable.com).

B4.     BHI was initially founded in 1997 as Priceline.com, Inc., publicly launching Priceline.com in March 1999, rebranding in April 2014 as "The Priceline Group, Inc." and then again as "Booking Holdings, Inc." in 2018.

B5.     Between 2005 and 2017 BHI, then known as Priceline, purchased the following domains and companies, all listed as defendants in this action: Booking.com and Bookings B.V. (July 2005), Agoda Company, Ltd. and AGIP LLC (November 2007), Kayak Software Corporation (May 2013), Rocket Travel, Inc. (February 2015), and Momondo A/S (July 2017). After changing its name in 2018, BHI purchased defendants HotelsCombined LLC (December 2018) and Getaroom.com (December 2021) (collectively hereinafter, all such named defendants are referred to as the "Booking Group defendants"). BHI and its affiliated companies first had actual or constructive knowledge of Plaintiff's claims on December 31, 2013 when Plaintiff named BHI wholly-owned subsidiary Kayak Software Corporation as a defendant in *The Wave Studio, LLC v. General Hotel Management Ltd.; et al.*, No. 7:13-cv-09239-CS. On March 24, 2015, when BHI was operating as Priceline.com Inc., Plaintiff named another of its wholly-owned subsidiaries, Priceline.com LLC, as a defendant in *The Wave Studio, LLC v. Amadeus North America, Inc.*, et al., No. 7:15-cv-06995-CS; which transferred to this Court on September 4, 2015. Plaintiff there alleged Priceline.com LLC, "itself or through affiliated entities, owns and uses, and/or has owned and used, at least the domain names . . . booking.com . . . kayak.com, priceline.com," among other affiliated websites.

B6.     In January 2017, longtime BHI executive Glen Fogel was named Chief Executive Officer of BHI, and with BHI controlling the brands and subsidiaries, continued to advance the agenda developed during his preceding tenure as BHI's Head of Worldwide Strategy and Planning, a position he held from November 2010 to December 2016. As a result of many acquisitions by

BHI, including of defendants during the pendency of this litigation, BHI furthered its vision to run as an integrated and collaborative entity amongst its many brands across the globe. Indeed, as set forth in BHI's 2019 10-K, by "increasing the collaboration, cooperation and interdependency among our brands" was to be able to "provide consumers with the best and most comprehensive services." The 2019 public disclosure of this cohesive integration provided by way of example that "hotel reservations available through Booking.com are also generally available through Agoda and Priceline."

B7.    In August 2019, on an analyst call discussing BHI's second-quarter 2019 financial results, Forgel was referring to this integration of all brands under BHI as the "Connected Trip" concept, emphasizing the benefits offered by defendants Priceline, Agoda and Kayak having been integrated into the overall BHI operations:

> Priceline has extensive capabilities in the flight product and has recently developed a world-class packaging product that can be leveraged across our brand companies. Agoda brings extensive knowledge of the APAC region and years of data science and machine learning on merchandising. KAYAK's knowledge at operating a multi-product global meta business helps us to better understand how to better serve our customers…

During this same call, Fogel discussed the benefits of sharing resources across the many BHI brands.

B8.    One example of such benefits to and amongst BHI and its brands is the utilization of common resources to provide the images used to entice consumers to book hotel rooms. Such resources include common repositories of photographs, located at bstatic.com and agoda.net, which are used by all the Booking Group defendants to access photographs for distribution by and amongst themselves, to third parties, and/or for display on one or more of the many domains under the BHI umbrella. This repository of high quality images of hotels is a core component of

3

BHI's business, and the collective databases it maintains contain over 450 million images of properties worldwide.

B9.    BHI with and through its consumer facing and subsidiary brands, also benefits from the display of images and other information about hotels and properties used to entice travelers to book accommodations at the relevant property. BHI derives booking fees from such activity, and such fees constitute a substantial source of revenue to BHI. Thousands of domains and URLS are controlled by BHI, and in this ever evolving rotation of displayed images of hotels those to which Plaintiff holds the copyright have been displayed, altered, redisplayed, time and again in violation of Plaintiff's rights.

B10.    According to the current "fact sheet" for BHI, available on BHI's website, in 2024, BHI offered an extensive selection of lodging reservations totalling approximately 3.4 million properties in over 220 countries. As "across Booking Holdings," which is identified as "five primary consumer-facing brands: Booking.com, Priceline, Agoda, KAYAK and OpenTable, as well as through a network of subsidiary brands including Rocketmiles, Fareharbor, HotelsCombined, Cheapflights and Momondo," it declares that "1.1 billion hotel rooms" were booked in 2024.

B11.    The growth experienced by BHI and its ability to obtain its status as the world leader in online travel and related services is linked to its accumulation and use of high quality images of hotels which are the lifeblood of the online travel agency business. Plaintiff alleges photographs of hotels to which it holds the copyright have been included in BHI's collective repository of high quality hotel images without authorization by or compensation to Plaintiff.

B12.    High quality images are leveraged to increase user engagement, enhance search engine optimization (SEO), drive booking transactions, and increase average daily rates. High quality

4

images may be the single greatest determinative in driving clicks and converting visitors to online travel sites. Publicly available studies have found that high quality images resulted in an increase of 63% more conversions than listings with lower quality images. Similar studies have also found the volume of high quality images also matters, where listings with more images resulted in an increase of 46% more conversions. By driving conversions, high quality images create demand, directly influencing the average daily rates charged for online bookings.

B13.    BHI deploys a structured data storage system to maintain their massive library of hotel images on their extranet, and yet have proven unwilling or unable to protect Plaintiff's photographs from infringement in this repository and on their sites. A 2023 study published in the International Journal of Information, Knowledge, and Management analyzed BHI's data storage and distribution practices, revealing that the hotel images were hosted on a content delivery domain, specifically xx.bstatic.com, where "xx" indicates a localized region code, and store image file paths in a structured format that enables external retrieval and unrestricted access.[1] The use of content delivery domains allows BHI and its brands to cache static images—like the Hotel Photographs to which Plaintiff holds the copyrights—closer to an end user's location for faster load times.

B14.    BHI's extranet allows for photographs to be made available across their family of brands. When an image is added to their extranet repository, the addition propagates to all the group's brands. Although different brands may use different front-end systems, these systems ultimately feed the same image repository. When a user views a photo on a domain affiliated with BHI or its brands, the site calls to the shared image repository or a more localized cache of the repository. BHI even makes available a Photo API that enables hotels and other distributors to quickly write

---

[1] https://www.ijikm.org/Volume18/IJIKMv18p225-249Ho9028.pdf

to their library of hotel images, including infringing copies of Plaintiff's Hotel Photographs. Prior to Photo API, photos were added to BHI's repository and affiliated sites via Content API, Photo API is just faster.

B15.	The totality of this workflow enables photos of hotels, including unauthorized copies of Plaintiff's copyrighted works, to be loaded to any affiliated sites by way of one of several front-end systems and propagated within minutes across all the BHI brands and to multiple localized caches.

B16.	The Booking Group defendants have further aggravated the global infringement on Plaintiff's copyrights by knowingly facilitating the systematic extraction and repurposing of such images by third parties, including competitors, affiliates, and data aggregators. The General Delivery Terms found on www.booking.com purport to grant the right to sublicense images of properties uploaded to their extranet. The Booking Group defendants' use of static URLs on "bstatic.com" allows third parties, including unauthorized websites, to directly access and distribute copyrighted images (including those of Plaintiff), creating a system where copyrighted works are systematically exploited without proper licensing. Any individual or automated system can access, view, and download copyrighted images simply by appending a stored relative path to the root URL, evidencing the Booking Group defendants' failure to implement adequate digital rights management (DRM) protections or access restrictions to prevent unauthorized use.

B17.	BHI and the Booking Group defendants, each and collectively, profit directly from their use and distribution of Plaintiff's high quality copyrighted hotel images, generating substantial revenue through increased bookings, advertising partnerships, and commission-based transactions, all while depriving Plaintiff of rightful licensing fees and control over its copyrighted works. Plaintiff's copyrighted Hotel Photographs have been seen and continue to be

seen by thousands, and likely millions, of visitors to BHI's various platforms in the United States and worldwide. BHI has utilized Plaintiff's images for purposes of enhancing their affiliated brands, including by promoting and advertising their bookings to the featured boutique and high-end hotels which are captured in one or more of Plaintiff's protected images.

B18. These actions, including the deliberate failure to implement access controls, authentication requirements, or technological protection measures on copyrighted images, facilitate widespread third-party infringement, directly and proximately causing Plaintiff financial and reputational harm.

**Additional Domestic Allegations Specific to Agoda Company Pte. Ltd.**

B19. Plaintiff restates and incorporates by reference the allegations contained in paragraphs XX through XX herein.

B20. Defendant Agoda Company Pte. Ltd., ("Agoda") itself or through affiliated entities, owns and operates the websites agoda.com and agoda.net, and the Agoda brand. Agoda uses servers located in the United States, including through its U.S.-based hosting and content delivery provider, Akami Technologies Inc., to deliver content to, and facilitate purchases by U.S. consumers. An American flag icon is displayed to U.S.-located visitors to Agoda's site, and transactions are executed in U.S. dollars. Agoda further maintains and provides access to its services through mobile applications marketed to U.S. users in U.S. app stores. As set forth above, Agoda, incorporated in Singapore, is a wholly owned subsidiary of BHI, a publicly traded United States company incorporated in the State of Delaware with its headquarters in Norwalk, Connecticut.

B21. Agoda uses defendant AGIP LLC, a Delaware incorporated company also based in Norwalk, Connecticut, as an agent to hold and manage the intellectual property of Agoda,

7

including trademarks Agoda uses in U.S. commerce. Agoda also operates in the United States through nonparty agent Agoda International USA LLC, a Delaware limited liability company, with its principal place of business at 350 5th Avenue, Suite 4700, New York, New York, 10118-4700, which provides customer service operations in the United States for the benefit of Agoda's customers in the United States, and by providing and facilitating Agoda's offerings of accommodation services, including by reproducing, publishing, distributing or displaying Plaintiff's copyrighted images without authorization.

B22.   Agoda also operates through defendant Rocket Travel, Inc. d/b/a Rocket Travel by Agoda, which owns and operates Rocketmiles.com, a consumer facing platform where travelers can book hotels and earn loyalty points with more than 60 brands including American Airlines, Southwest Airlines, Amazon, and more. Rocket Travel by Agoda has multiple global offices, including its headquarters in Chicago, at 641 W Lake Street, Suite 102, Chicago, Illinois, 60661-1056, and an office in New York. Rocket Travel by Agoda actively hires product and partnership personnel at those offices and remotely in the U.S.

B23.   When Agoda opened the first of its four United States offices in New York in 2018, the co-founder, former CEO, and current chairman of Agoda and strategic advisor to BHI, Rob Rosenstein stated:

> [E]ven in the early days, Agoda sold rooms in Asia to Europeans, Middle Easterners, and Americans. As the business has scaled, it should come as no surprise that these have developed into more substantial markets and there's a network effect. So as you start to sell New York to Koreans, and Seoul to New Yorkers, you start to be able to do a decent job of selling that same New Yorker a room in New York . . . .[2]

B24.   Moreover, it is Agoda that lists itself as the contact for purposes of identification of any infringement of a United States copyright on its website. Rightsholders are directed to send

---

[2] https://skift.com/2018/05/09/agoda-names-new-ceo-as-it-aims-to-go-global/

"[c]opyright infringement notifications" to "Agoda Company Pte. Ltd. Attention: IP Counsel 30 Cecil Street, Prudential Tower #19-08, Singapore 049712, legal@agoda.com."

**Additional Domestic Allegations Specific to Momondo A/S**

B25.    Plaintiff restates and incorporates by reference the allegations contained in paragraphs XX through XX herein.

B26.    Defendant Momondo A/S ("Momondo"), incorporated in Denmark, is a wholly owned subsidiary of BHI, a publicly traded United States company incorporated in the State of Delaware with its headquarters in Norwalk, Connecticut.

B27.    Momondo regularly transacts and solicits business in the United States through, inter alia, the Momondo, Cheapflights, and KAYAK brands, websites and related content delivery networks, mobile apps, mobile sites, other websites, and other means not known to Plaintiff. Momondo also offers a mobile app to United States users of both Apple and Android devices.

B28.    In the "careers" sections of its website, Momondo posts job opportunities, including positions titled as Frontend Engineer, Senior Data Scientist, and Senior Frontend Software Engineer, at two locations in Massachusetts alongside listings for remote work in the United States. Momondo also maintains its Global Technology HQ at 10 Canal Park Cambridge, Massachusetts, 02141.

B29.    The website found at https://www.momondo.com/ is available to users in the U.S. and provides search and comparison services tailored to users in the U.S. The site includes terms of service and a privacy policy directed to U.S. users, and the site itself is emblazoned with an American flag icon. Momondo's own terms of service provided on the website states that New Haven, Connecticut is Momondo's choice of forum for disputes.

B30. Momondo hosts its sites locally in the United States using a content delivery network provided by Fastly Inc., which uses "edge services" utilizing U.S. IP addresses to reduce latency and enable speedy resolution of the websites to Momondo users in the United States. On information and belief, such edge servers must necessarily upload and store a copy, or cache, of the requested content in the United States.

B31. Momondo also holds a U.S. trademark in MOMONDO, applied for on November 4, 2010. Momondo filed a Declaration of Use under § 71 of the Lanham Act on January 30, 2017 contending the mark was used in U.S. commerce for five consecutive years after the date of registration, and is still in use in commerce on or in connection with all associated goods or services, with attached specimens showing the momondo.com site serving search results to U.S. users in the stream of U.S. commerce.