# EXHIBIT C

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## FORM 10-K

**ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d)
OF THE SECURITIES EXCHANGE ACT OF 1934**

For the fiscal year ended: December 31, 2005

Commission File No.: 0-25581

## priceline.com Incorporated
(Exact name of Registrant as specified in its charter)

| | |
|---|---|
| **Delaware** | **06-1528493** |
| (State or other Jurisdiction of Incorporation or Organization) | (I.R.S. Employer Identification No.) |
| **800 Connecticut Avenue Norwalk, Connecticut** | **06854** |
| (Address of Principal Executive Offices) | (Zip Code) |

Registrant's telephone number, including area code: **(203) 299-8000**

Securities Registered Pursuant to Section 12(b) of the Act:
**None**

Securities Registered Pursuant to Section 12(g) of the Act:
**Common Stock, par value $0.008 per share**

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. Yes ☐ No ☒

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act. Yes ☐ No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.  Yes ☒   No  ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K.  ☒

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer.  See definition of "accelerated filer and large accelerated filer" in Rule 12b-2 of the Exchange Act (Check one):

Large accelerated filer ☐                    Accelerated filer ☒                    Non-accelerated filer ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Act). Yes ☐   No ☒

The aggregate market value of common stock held by non-affiliates of priceline.com as of June 30, 2005 was approximately $522 million based upon the closing price reported for such date on the Nasdaq National Market.  For purposes of this disclosure, shares of common stock held by persons who are known by priceline.com to own more than 5% of the outstanding shares of common stock on June 30, 2005 and shares held by executive officers

We intend to defend vigorously against the claims in all of the aforementioned proceedings. We are unable at this time to predict the outcome of these proceedings or reasonably estimate a range of possible loss, if any.

*Litigation Related to Securities Matters*

On March 16, March 26, April 27, and June 5, 2001, respectively, four putative class action complaints were filed in the U.S. District Court for the Southern District of New York naming priceline.com, Inc., Richard S. Braddock, Jay Walker, Paul Francis, Morgan Stanley Dean Witter & Co., Merrill Lynch, Pierce, Fenner & Smith, Inc., BancBoston Robertson Stephens, Inc. and Salomon Smith Barney, Inc. as defendants (01 Civ. 2261, 01 Civ. 2576, 01 Civ. 3590 and 01 Civ. 4956). Shives *et al*. v. Bank of America Securities LLC *et al*., 01 Civ. 4956, also names other defendants and states claims unrelated to priceline.com. The complaints allege, among other things, that we and the individual defendants violated the federal securities laws by issuing and selling priceline.com common stock in our March 1999 initial public offering without disclosing to investors that some of the underwriters in the offering, including the lead underwriters, had allegedly solicited and received excessive and undisclosed commissions from certain investors. By Orders of Judge Mukasey and Judge Scheindlin dated August 8, 2001, these cases were consolidated for pre-trial purposes with hundreds of other cases, which contain allegations concerning the allocation of shares in the initial public offerings of companies other than priceline.com. By Order of Judge Scheindlin dated August 14, 2001, the following cases were consolidated for all purposes: 01 Civ. 2261; 01 Civ. 2576; and 01 Civ. 3590. On April 19, 2002, plaintiffs filed a Consolidated Amended Class Action Complaint in these cases. This Consolidated Amended Class Action Complaint makes similar allegations to those described above but with respect to both our March 1999 initial public offering and our August 1999 second public offering of common stock. The named defendants are priceline.com, Inc., Richard S. Braddock, Jay S. Walker, Paul E. Francis, Nancy B. Peretsman, Timothy G. Brier, Morgan Stanley Dean Witter & Co., Goldman Sachs & Co., Merrill Lynch, Pierce, Fenner & Smith, Inc., Robertson Stephens, Inc. (as successor-in-interest to BancBoston), Credit Suisse First Boston Corp. (as successor-in-interest to Donaldson Lufkin & Jenrette Securities Corp.), Allen & Co., Inc. and Salomon Smith Barney, Inc. Priceline, Richard Braddock, Jay Walker, Paul Francis, Nancy Peretsman, and Timothy Brier, together with other issuer defendants in the consolidated litigation, filed a joint motion to dismiss on July 15, 2002. On November 18, 2002, the cases against the individual defendants were dismissed without prejudice and without costs. In addition, counsel for plaintiffs and the individual defendants executed Reservation of Rights and Tolling Agreements, which toll the statutes of limitations on plaintiffs' claims against those individuals. On February 19, 2003, Judge Scheindlin issued an Opinion and Order granting in part and denying in part the

36

issuer's motion. None of the claims against priceline.com were dismissed. On June 26, 2003, counsel for the plaintiff class announced that they and counsel for the issuers had agreed to the form of a Memorandum of Understanding (the "Memorandum") to settle claims against the issuers. The terms of that Memorandum provide that class members will be guaranteed $1 billion in recoveries by the insurers of the issuers and that settling issuer defendants will assign to the class members certain claims that they may have against the underwriters. Issuers also agree to limit their abilities to bring certain claims against the underwriters. If recoveries in excess of $1 billion are obtained by the class from any non-settling defendants, the settling defendants' monetary obligations to the class plaintiffs will be satisfied; any amount recovered from the underwriters that is less than $1 billion will be paid by the insurers on behalf of the issuers. The Memorandum, which is subject to the approval of each issuer, was approved by a special committee of the priceline.com Board of Directors on Thursday, July 3, 2003. Thereafter, counsel for the plaintiff class and counsel for the issuers agreed to the form of a Stipulation and Agreement of Settlement with Defendant Issuers and Individuals ("Settlement Agreement"). The Settlement Agreement implements the Memorandum and contains the same material provisions. On June 11, 2004, a special committee of the priceline.com Board of Directors authorized our counsel to execute the Settlement Agreement on our behalf. The Settlement Agreement is subject to final approval by the Court and the process to obtain that approval is still pending.

Subsequent to our announcement on September 27, 2000, that revenues for the third quarter 2000 would not meet expectations, we were served with the following putative class action complaints:

> Weingarten v. priceline.com Incorporated and Jay S. Walker
> 3:00 CV 1901 (District of Connecticut).
> Twardy v. priceline.com Inc.,
> Richard S. Braddock, Daniel H. Schulman and Jay S. Walker
> 3:00 CV 1884 (District of Connecticut).
> Berdakina v. priceline.com Inc.,
> Richard S. Braddock, Daniel H. Schulman and Jay S. Walker
> 3:00 CV 1902 (District of Connecticut).
> Mazzo v. priceline.com Inc.,
> Richard S. Braddock, Daniel H. Schulman and Jay S. Walker
> 3:00 CV 1924 (District of Connecticut).
> Fialkov v. priceline.com Inc.,
> Richard S. Braddock, Daniel H. Schulman and Jay S. Walker
> 3:00 CV 1954 (District of Connecticut).
> Ayach v. priceline.com Inc.,
> Richard S. Braddock, Daniel H. Schulman and Jay S. Walker
> 3:00 CV 2062 (District of Connecticut).
> Zia v. priceline.com Inc.,
> Richard S. Braddock, Daniel H. Schulman and Jay S. Walker
> 3:00 CV 1968 (District of Connecticut).
> Mazzo v. priceline.com Inc.,
> Richard S. Braddock, Daniel H. Schulman and Jay S. Walker

3:00 CV 1980 (District of Connecticut).
Bazag v. priceline.com Inc.,
Richard S. Braddock, Daniel H. Schulman and Jay S. Walker
3:00 CV 2122 (District of Connecticut).
Breier v. priceline.com Inc.,
Richard S. Braddock, Daniel H. Schulman and Jay S. Walker
3:00 CV 2146 (District of Connecticut).
Farzam et al. v. priceline.com Inc.,
Richard S. Braddock, Daniel H. Schulman and Jay S. Walker
3:00 CV 2176 (District of Connecticut).
Caswell v. priceline.com Inc.,

37

Richard S. Braddock, Daniel H. Schulman and Jay S. Walker
3:00 CV 2169 (District of Connecticut).
Howard Gunty Profit Sharing Plan v. priceline.com Inc.
Richard S. Braddock, Daniel H. Schulman and Jay S. Walker
3:00 CV 1917 (District of Connecticut).
Cerelli v. priceline.com Inc.,
Richard S. Braddock, Daniel H. Schulman and Jay S. Walker
3:00 CV 1918 (District of Connecticut).
Mayer v. priceline.com Inc.,
Richard S. Braddock, Daniel H. Schulman and Jay S. Walker
3:00 CV 1923 (District of Connecticut).
Anish v. priceline.com Inc.,
Richard S. Braddock, Daniel H. Schulman and Jay S. Walker
3:00 CV 1948 (District of Connecticut).
Atkin v. priceline.com Inc.,
Richard S. Braddock, Daniel H. Schulman and Jay S. Walker
3:00 CV 1994 (District of Connecticut).
Lyon v. priceline.com Inc.,
Richard S. Braddock, Daniel H. Schulman and Jay S. Walker
3:00 CV 2066 (District of Connecticut).
Kwan v. priceline.com Inc.,
Richard S. Braddock, Daniel H. Schulman and Jay S. Walker
3:00 CV 2069 (District of Connecticut).
Krim v. priceline.com Inc.,
Richard S. Braddock, Daniel H. Schulman and Jay S. Walker
3:00 CV 2083 (District of Connecticut).
Karas v. priceline.com Inc.,
Richard S. Braddock, Daniel H. Schulman and Jay S. Walker
3:00 CV 2232 (District of Connecticut).
Michols v. priceline.com Inc.,
Richard S. Braddock, Daniel H. Schulman and Jay S. Walker
3:00 CV 2280 (District of Connecticut).

All of these cases have been assigned to Judge Dominic J. Squatrito. On September 12, 2001, Judge Squatrito ordered that these cases be consolidated under the Master File No. 3:00cv1884 (DJS), and he designated lead plaintiffs and lead plaintiffs' counsel. On October 29, 2001, plaintiffs served a Consolidated Amended Complaint. On February 5, 2002, Amerindo Investment Advisors, Inc., who was one of the lead plaintiffs in the consolidated action, made a motion for leave to withdraw as lead plaintiff. The Court granted that motion on May 30, 2002. On February 28, 2002, we filed a motion to dismiss the Consolidated Amended Complaint. On October 7, 2004, the Court issued a Memorandum of Decision granting, in part, and denying, in part, our motion. An initial scheduling order was entered by the Court on November 2, 2004 and the parties are now proceeding with discovery. Plaintiffs filed a motion for class certification on January 7, 2005, and we have filed our opposition to that motion. We intend to defend vigorously against this action. We are unable to predict the outcome of these suits or reasonably estimate a range of possible loss, if any.

In addition, on November 1, 2000, we were served with a complaint that purported to be a shareholder derivative action against our Board of Directors and certain of our current and former executive officers, as well as priceline.com (as a nominal defendant). The complaint alleged breach of fiduciary duty and waste of corporate assets. The action is captioned Mark Zimmerman v. Richard Braddock, J. Walker, D. Schulman, P. Allaire, R. Bahna, P. Blackney, W. Ford, M. Loeb, N. Nicholas, N. Peretsman, and priceline.com Incorporated, 18473-NC (Court of Chancery of Delaware, County of New Castle, State of Delaware). On February 6, 2001, all defendants moved to dismiss the complaint for failure to make a demand upon the Board of Directors and failure to state a cause of action upon which relief can be

38

granted. Pursuant to a stipulation by the parties, an amended complaint was filed on June 21, 2001. Defendants renewed their motion to dismiss on August 20, 2001. On December 20, 2002, the Court granted defendants' motion without prejudice. On April 25, 2003, a second amended complaint, adding H. Miller, was filed and a motion seeking leave of court to file the second amended complaint was filed on July 28, 2003. That motion was fully briefed, and oral argument took place on May 9, 2005. Immediately following oral argument, the Court dismissed three of the four counts in the second amended complaint. All of the counts against defendants Allaire, Bahna, Blackney, Ford, Loeb, Miller, Peretsman and Schulman have now been dismissed. On September 8, 2005, the Court granted plaintiff leave to file the second amended complaint as to the one remaining count. Defendants filed a motion requesting that the Court certify its September 8, 2005 order for interlocutory appeal to the Delaware Supreme Court, and the Court granted that motion on October 6, 2005. On October 17, 2005, the Delaware Supreme Court accepted the interlocutory appeal. The appeal was fully briefed, and oral argument took place on February 22, 2006. Discovery in the case and the time in which Defendants are required to respond to the second amended complaint have been stayed pending the Delaware Supreme Court's entry of mandate. We intend to defend vigorously against this action. We are unable to predict the outcome of the suit or reasonably estimate a range of possible loss, if any.

On November 7, 2003, we were served with a complaint that purported to be a shareholder derivative action against our Board of Directors and certain of our current and former executive officers, as well as priceline.com (as a nominal defendant). The complaint alleged, among other things, breach of fiduciary duty, waste of corporate assets and misappropriation of corporate information. The claims in the complaint appear to be substantially repetitive of the claims pending in the derivative action in Delaware which is described above. The action is captioned Don Powell v. Richard S. Braddock, Jay S. Walker, Daniel H. Schulman, Paul A. Allaire, Ralph M. Bahna, Paul J. Blackney, William E. Ford, Marshall Loeb, N. J. Nicholas, Jr., Nancy B. Peretsman, and Heidi G. Miller and priceline.com Incorporated (Superior Court, Judicial District of Stamford/Norwalk, State of Connecticut). On January 28, 2004, defendants Blackney, Nicholas, Peretsman and Loeb moved to dismiss the complaint for lack of personal jurisdiction. On January 29, 2004, defendant Miller moved to dismiss the complaint for lack of personal jurisdiction and for insufficient service of process. On February 27, 2004, defendants Braddock, Walker, Schulman, Allaire, Bahna, Blackney, Loeb, Nicholas, Peretsman, Miller and priceline.com moved to dismiss the complaint for lack of subject matter jurisdiction and defendants Braddock and Schulman also moved to dismiss the complaint for lack of personal jurisdiction and insufficient service of process. At a hearing on May 3, 2004, the Court stated that it would not rule on the pending motions until the pending motions in the Delaware action described above are decided. The Court conducted a subsequent status conference on January 10, 2005, at which it requested that the parties report back no later than March 15, 2005 on the status of the Delaware derivative suit. On March 15, 2005, the parties informed the Court in writing that the oral argument in the Delaware case had been postponed until May 9, 2005, and that the parties would contact the Court with a status report after that hearing was held. The Delaware Court dismissed three of the four counts in the second amended complaint in the Delaware derivative suit. All of the counts against the defendants Allaire, Bahna, Blackney, Ford, Loeb, Miller, Peretsman and Schulman have now been dismissed. The parties in the Connecticut action advised the Connecticut Court of the Delaware Court's ruling by letter dated June 6, 2005. The Delaware Court subsequently granted plaintiff leave to file the second amended complaint as to the one remaining count. Defendants sought an interlocutory appeal of the Delaware Court's order, and the Delaware Supreme Court accepted that appeal. The parties in the Connecticut action advised the Connecticut Court of those developments by letter dated November 3, 2005. We intend to defend vigorously against this action. We are unable to predict the outcome of this suit or reasonably estimate a range of possible loss, if any.

*Other Litigation*

On January 6, 1999, we received notice that a third party patent applicant and patent attorney, Thomas G. Woolston, purportedly had filed in December 1998 with the United States Patent and Trademark Office a request to declare an interference between a patent application filed by Woolston and our U.S. Patent 5,794,207. We are currently awaiting information from the Patent Office regarding whether it will initiate an interference proceeding.

39

From time to time, we have been and expect to continue to be subject to legal proceedings and claims in the ordinary course of business, including claims of alleged infringement of third party intellectual property rights by it. Such claims, even if not meritorious, could result in the expenditure of significant financial and managerial resources, divert management's attention from our business objectives and could adversely affect our business, results of operations, financial condition and cash flows.

**Item 4.  Submission of Matters to a Vote of Security Holders**

No matters were submitted for a vote of stockholders of priceline.com during the fourth quarter of the year ended December 31, 2005.

40

PART II

**Item 5.  Market for the Registrant's Common Stock, Related Stockholder Matters and Issuer Purchases of Equity Securities**

**Price Range of Common Stock**

Our common stock has been quoted on the Nasdaq National Market under the symbol "PCLN" since our initial public offering on March 29, 1999. Prior to such time, there was no public market for our common stock. The following table sets forth, for the periods indicated, the high and low

sales prices per share of the common stock as reported on the Nasdaq National Market:

| **2005** | | | | |
|---|---|---|---|---|
| First Quarter | $ | 27.08 | $ | 20.51 |
| Second Quarter | | 27.00 | | 22.22 |
| Third Quarter | | 25.29 | | 18.57 |
| Fourth Quarter | | 25.03 | | 18.20 |
| **2004** | | | | |
| First Quarter | $ | 27.58 | $ | 18.00 |
| Second Quarter | | 29.52 | | 22.27 |
| Third Quarter | | 26.95 | | 17.42 |
| Fourth Quarter | | 26.15 | | 19.65 |
| **2003** | | | | |
| First Quarter | $ | 12.02 | $ | 6.78 |
| Second Quarter | | 25.91 | | 9.60 |
| Third Quarter | | 39.81 | | 21.32 |
| Fourth Quarter | | 34.00 | | 16.12 |

**Holders**

As of February 23, 2006, there were approximately 1,135 stockholders of record of priceline.com's common stock, although we believe that there are a significantly larger number of beneficial owners.

**Dividend Policy**

We have not declared or paid any cash dividends on our capital stock since our inception and do not expect to pay any cash dividends for the foreseeable future. We currently intend to retain future earnings, if any, to finance the expansion of our business. Under the terms of the certificate of designation relating to our Series B Preferred Stock, we cannot issue any dividends on shares of our common stock unless full cumulative dividends have been paid on the Series B Preferred Stock for all dividend periods ending on or prior to the proposed date of payment of a dividend on our common stock.

41

**Warrants**

In March 2003, in connection with the renewal of a marketing agreement with Marriott International, Inc., we issued Marriott 833,333 warrants to purchase shares of our common stock at $9.84 per share. The warrants, which were not transferable, were fully vested, non-forfeitable, and would have become exercisable no earlier than three years from the date of issuance (subject to certain limited exceptions in the event of a reorganization, recapitalization, merger or consolidation involving priceline.com). In connection with the issuance of the warrants, we recorded a charge in the first quarter of 2003 of approximately $6.6 million, or $(0.17) of earnings per share. In December 2005, we repurchased the warrants at their then current fair value of $12.2 million. The repurchase price was paid in cash and upon repurchase all of the warrants were cancelled.

Delta Air Lines holds warrants to purchase our common stock at an exercise price of $17.81 per share (the "Delta Warrants"). Delta may exercise the Delta Warrants only by surrendering shares of our Series B Redeemable Preferred Stock. If, however, the closing sales price of our common stock has exceeded $53.44 (subject to adjustment) for 20 consecutive trading days, the Delta Warrants will automatically be exercised. In such event, the exercise price will be paid by surrendering shares of Series B Redeemable Preferred Stock. The Delta Warrants are exercisable at any time prior to February 6, 2007. Please see Note 15 to our Consolidated Financial Statements for more information about the Delta Warrants. Delta also holds warrants to purchase 779,166 shares of our common stock at an exercise price of $28.31 per share. These warrants became exercisable in November 2004.

**Equity Compensation Plan Information**

Information required by Part II, Item 5, relating to Equity Compensation Plan Information will be included in our Proxy Statement relating to our 2006 annual meeting of stockholders to be filed with the Securities and Exchange Commission within 120 days after the end of our fiscal year ended December 31, 2005.

In the fourth quarter of 2005, our Board of Directors authorized the repurchase of up to $50 million of our common stock from time to time in the open market or in privately negotiated transactions. Under this program, we repurchased warrants for $12.2 million (see Note 16) in December 2005.

42

Item 6.  Selected Financial Data

**SELECTED FINANCIAL DATA**

The following selected consolidated financial data presented below are derived from the Consolidated Financial Statements and related Notes of the Company, and should be read in connection with those statements, some of which are included herein. The information set forth below is not necessarily indicative of future results and should be read in conjunction with Item 7, "*Management's Discussion and Analysis of Financial Condition and Results of Operations.*"  See also Notes 3 and 18 to the Company's Consolidated Financial Statements. All share amounts have been adjusted to reflect the one-for-six reverse stock split implemented in June 2003.

|  | Year Ended December 31, | | | | |
|---|---|---|---|---|---|
|  | 2005 | 2004 | 2003 | 2002 | 2001 |
|  | (In thousands, except per share amounts) | | | | |
| Total revenues | $ 962,660 | $ 914,372 | $ 863,661 | $ 1,003,606 | $ 1,171,753 |
| Total costs of revenues | 694,797 | 716,217 | 717,716 | 845,240 | 978,847 |
| Gross profit | 267,863 | 198,155 | 145,945 | 158,366 | 192,906 |
| Total operating expenses | 231,979 | 167,733 | 137,927 | 181,690 | 206,793 |
| Operating income (loss) | 35,884 | 30,422 | 8,018 | (23,324) | (13,887) |
| Total other income (expense) | (181) | 1,405 | 1,567 | 3,009 | 6,033 |
| Income tax benefit | 156,277 | 193 | — | — | — |
| Equity in income (loss) of investees and minority interests | 749 | (511) | 2,331 | 1,131 | 551 |
| Net income (loss) | 192,729 | 31,509 | 11,916 | (19,184) | (7,303) |
| Net income (loss) applicable to common stockholders | 190,875 | 29,997 | 10,425 | (21,528) | (15,866) |
| Net income (loss) applicable to common stockholders per basic common share | 4.87 | 0.78 | 0.28 | (0.57) | (0.46) |
| Net income (loss) applicable to common stockholders per diluted share | 4.21 | 0.76 | 0.27 | (0.57) | (0.46) |
| Total assets | 754,028 | 542,082 | 337,784 | 211,162 | 262,190 |
| Long-term obligations and redeemable preferred stock | 313,942 | 268,562 | 139,063 | 14,185 | 28,183 |
| Total liabilities | 371,487 | 329,469 | 175,207 | 66,042 | 90,134 |
| Total stockholders' equity | 369,071 | 199,143 | 149,107 | 131,650 | 146,711 |

43

Item 7. Management's Discussion and Analysis of Financial Condition and Results of Operations

The following discussion should be read in conjunction with our financial statements, including the notes to those statements, included elsewhere in this Form 10-K, and the Section entitled "Special Note Regarding Forward-Looking Statements" in this Form 10-K.  As discussed in more detail in the Section entitled "Special Note Regarding Forward-Looking Statements," this discussion contains forward-looking statements which involve risks and uncertainties.  Our actual results may differ materially from the results discussed in the forward-looking statements.  Factors that might cause those differences include, but are not limited to, those discussed in "Risk Factors."

**Overview**

*General*.  We are a leading online travel company that offers our customers a broad range of travel services, including airline tickets, hotel rooms, car rentals, vacation packages and cruises.  We offer our customers a unique choice: the ability to purchase travel services in a traditional, price-disclosed manner or the opportunity to use our unique *Name Your Own Price*® service, which allows our customers to make offers for travel services at discounted prices.  At present, we derive substantially all of our revenues from the following sources:

- Transaction revenues from our *Name Your Own Price*® airline ticket, hotel room and rental car services, as well as our vacation packages service;

- Commissions earned from the sale of price-disclosed hotel rooms, rental cars, cruises and other travel services;

- Customer processing fees charged in connection with the sale of both *Name Your Own Price*® and price-disclosed airline tickets, hotel rooms and rental cars service;

- Worldspan, L.P. reservation booking fees related to both our *Name Your Own Price*® airline ticket, hotel room and rental car service, and price-disclosed airline tickets and rental car service;

- Transaction revenue from our price-disclosed hotel room service; and

• Other revenues derived primarily from selling advertising on our websites.

*Trends*. The online sale of travel services has been one of the fastest growing sectors of the Internet since the late 1990s. While the online market for travel services continues to experience significant annualized growth, we believe that the domestic market share of third-party distributors, like priceline.com, has declined over the recent past and that the growth of the domestic online market for travel services has slowed. We believe the decline in market share is attributable, in part, to a concerted initiative by travel suppliers to direct customers to their own websites in an effort to reduce distribution expenses and establish more direct control over their pricing. In addition, over the course of 2005, airlines and hotel chains have generally experienced year-over-year increases in load factors (a common metric that measures airplane customer usage) and occupancy rates (a common metric that measures hotel customer usage), respectively, which leaves them with less excess inventory to provide third party intermediaries like priceline.com. Notwithstanding these trends, we continue to believe that the market for online travel services is an attractive market with continued opportunity for growth, in particular, in certain international markets.

Because we believe that an opportunity for growth exists in certain international markets, and since prior to the fourth quarter of 2004, substantially all of our revenue was generated in the U.S., we have taken steps to expand the markets we serve. In September 2004, we acquired Active Hotels Ltd., a U.K. based online hotel service. Active Hotels gives us a strong presence in the U.K.'s online hotel

44

market. Furthermore, in July 2005, we acquired Amsterdam-based Bookings B.V., one of Europe's leading Internet hotel reservation services, with offices primarily in Amsterdam, Barcelona, Berlin, Loule, Paris, Rome and Pisa. All of our European operations, including Active Hotels and Bookings, are majority-owned by us. A minority interest in our European business is held by our managers responsible for that business. We work with a range of chain-owned and independently owned hotels across Europe and in major cities around the world to provide hotel reservations on various websites in multiple languages.

Our European operations are an important contributor to our business and we expect that over the course of 2006, they will represent a growing percentage of our total gross bookings and net income. In addition to the ongoing businesses of our European operations, which consist primarily of offering European hotel rooms to European customers, over the course of 2006, we intend to offer European customers access to our U.S. based travel services and to enhance the European travel services that we currently offer U.S. customers.

As our European operations become more meaningful contributors to our results, we have seen, and expect to continue to see, changes in certain of our operating expenses and other financial metrics. For example, because our European operations utilize online affiliate marketing and Internet search engines, principally through the purchase of travel-related keywords, as principal means of generating traffic to their websites, our online advertising expense has increased significantly since our acquisition of those companies, a trend we expect to continue throughout 2006. In addition, and as discussed in more detail below, since the acquisitions of Active Hotels and Bookings, we have seen the effects of seasonal fluctuation on our results change as a result of different revenue recognition policies that apply to our European hotel service (as well as our domestic retail hotel service) and the increased importance European hotel bookings to our results of operations.

Our overall financial prospects and, in particular, the financial prospects of our domestic business, have been and continue to be significantly dependent upon the sale of leisure airline tickets and, as a result, the health of our business has been directly related to the health of the airline industry. Most domestic airlines, and many of our major suppliers, have experienced, and continue to experience, significant losses. These losses have been compounded by competition from low-cost carriers and, more recently, by high fuel prices, which we believe increase the possibility of the additional bankruptcy and/or the liquidation of one or more of the major domestic airlines. As a result of these and other factors, many of the major airlines have deeply discounted retail airline tickets to maintain market share, simplified fare structures by removing restrictions associated with certain airline tickets and, as discussed in more detail in "*Other*" below, put pressure on third-party intermediaries like us to reduce airline distribution costs. These actions have had, and continue to have, a detrimental effect on our overall airline business and, in particular, our *Name Your Own Price*® airline ticket service, which historically represented a significant portion of our total airline ticket revenues.

As a result of the continued decline in sales of *Name Your Own Price*® airline tickets over the last several years, we have taken and expect to continue to take steps to diversify our revenue among "non-opaque" services, such as allowing our customers to purchase price-disclosed retail airline, hotel and rental car travel services, which we believe will help broaden our customer appeal.

We intend to continue to execute on our strategy of diversifying our service offerings and markets, through both continued internal development of services and, if appropriate, acquisitions. As a result of the diversification described above, the growth rates for our "agency" businesses, which are generally comprised of our price-disclosed retail services, have, over the recent past, significantly exceeded the growth rates for our "merchant" businesses, which are comprised primarily of our slower-growing *Name Your Own Price*® services.

45

*Other*. A number of travel suppliers, particularly airlines, have indicated publicly that, as part of an effort to reduce distribution costs, they intend to reduce their dependence over time on what they view to be "expensive" distribution channels such as global distribution systems (GDSs). A number of travel suppliers have reached agreements with travel distributors that require rebates of all or part of the fees received from the GDS. We have agreed to rebate certain GDS costs to certain suppliers in exchange for contractual considerations such as those relating to inventory pricing and availability, and expect to continue to do so in the future. Additionally, travel suppliers are encouraging third-party travel intermediaries, such as us, to