# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| The Wave Studio, LLC,<br><br>         Plaintiff,<br><br> -against-<br><br>General Hotel Management Ltd., et al.,<br><br>         Defendants. | Case No. 7:13-cv-09239-CS-VR<br><br>**DECLARATION OF GORDON IONWY DAVID LLEWELYN IN SUPPORT OF OPPOSITION TO TRIP DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLAIMS ON *FORUM NON CONVENIENS* GROUNDS** |

# DECLARATION OF GORDON IONWY DAVID LLEWELYN

I, Gordon Ionwy David Llewelyn, declare as follows:

1. I am Professor (Practice) in the Yong Pung How School of Law at Singapore Management University. In addition, I am Managing Director of David Llewelyn & Co LLC ("**DLLLC**"), a Singapore law firm, and Professor of Intellectual Property Law at King's College London. I have been retained by the Plaintiff, The Wave Studio, LLC, to provide my expert opinion in response to the Memorandum of Law In Support of Trip Defendants' Motion to Dismiss Plaintiff's Claims on *Forum Non Conveniens* Grounds and insofar as it concerns copyright law and civil proceedings in Singapore. DLLLC is being compensated for my work on this case at my standard charge-out rate. This compensation is not contingent upon the results of my analysis or the substance of my testimony.

2. I have a Bachelor of Laws degree with honours from the University of Southampton, England, and a Bachelor of Civil Law (postgraduate) degree from the University of Oxford. I qualified as a solicitor of the Supreme Court of England and Wales in April 1985 and practised as a solicitor in London until March 2010 (when I moved to live in Singapore). From April 2010 to December 2012, I was Of Counsel in the Singapore office of White & Case. In 2017 I was called to the Bar as an advocate and solicitor in Singapore.

3. In London I specialised in the fields of intellectual property (IP) and commercial law, both contentious and non-contentious, from my qualification in 1985 until 2010. From 1999 to 2010 I was a partner and head of the London office's IP department at the international law firm White & Case. Prior to that (in reverse order), I was the founding partner of specialist litigation and IP firm of solicitors Llewelyn Zietman (1994–1999), partner in the commercial department of McKenna & Co Solicitors (as it then was) (1988–1994) and trainee and assistant solicitor in the IP department, in turn, at Linklaters & Paines solicitors (as it then was) (1982–1988).

4. In March 2019 I set up David Llewelyn & Co LLC, a Singapore law firm specialising in commercial and IP law.

5. From 1982 to 2012 and from 2017 to date I have combined the practice of law in the IP field with teaching in that area (between 2012 and 2017 I was Deputy Dean of the School of Law at Singapore Management University, although did occasional legal consultancy work). From 1982 to 1988 I was a visiting lecturer on the Master of Laws (LLM) programme at the London School of Economics, from 1988 to 2002 held various visiting positions on the Masters of Law programme at Queen Mary College University of London, and from 2002 to 2004 had the position of Visiting Professor at King's College

1

London. In 2004 I was appointed to the tenured position of Professor of IP Law at King's College London, which I still hold on a fractional appointment.

6. From 2004 to 2007 I was Director of the IP Academy Singapore and from 2007 to 2012 its External Director & Deputy Chairman.

7. I have written extensively on IP law and other legal subjects. Pertinently, I am the joint author of *Modern Law of Copyright in Singapore* (2023); *Kerly's Law of Trade Marks and Trade Names* (13th, 14th, 15th, 16th and 17th editions); and of *Intellectual Property: Patents, Copyright, Trade Marks & Allied Rights*. Legal journal articles I have written on Singapore IP law have been cited with approval by the Singapore Court of Appeal and the Singapore High Court.

8. Since moving to Singapore in 2010 I have taught in the Yong Pung How School of Law at Singapore Management University (SMU), initially as a part-time Visiting Professor (Practice) and from 2011 to date as Professor (Practice). From academic year 2012/13 to 2017/18, I was Deputy Dean of the School of Law.

9. For the past fifteen years I have taught courses in the SMU School of Law on (a) Singapore IP law (including copyright) and (b) the international commercialisation of IP rights, to students enrolled in the Bachelor of Laws (LLB) and Juris Doctor (JD) programmes. Every year since 1982 I have also taught one or more IP law subject(s) on the London Master of Laws (LLM) programme. Additionally, I have regularly given presentations on both UK/EU and Singapore IP law topics both in Singapore and elsewhere, including at the Fordham International IP conference in New York.

11. Since 2016 I have been one of the IP Office of Singapore (IPOS) IP Adjudicators (having been renewed in that position every two years); this position requires me to give first-instance IPOS decisions on matters of Singapore law, with a right of appeal to the High Court. I am also a Member of the Copyright Tribunals and have been appointed by the Singapore Court of Appeal as independent counsel on five occasions to assist it on questions of IP law including in the leading case on subsistence and infringement of copyright *Global Yellow Pages*.

12. In *The Wave Studio, LLC v General Hotel Management, Ltd. et al.* (Case No. 7:13-cv-09239) ("**First Wave US Complaint**"), I provided expert evidence on Singapore copyright law. Subsequently, I acted as co-counsel with Messrs Drew & Napier LLC for The Wave Studio Pte Ltd, Ms Lee Kar Yin, and the Plaintiff, in the proceedings in Singapore in the first instance (HC/S 175/2018) and on appeal (AD/CA 12/2022; AD/CA 46/2022) ("**Singapore Wave Proceedings**") against General Hotel Management (Singapore) Pte Ltd ("**GHM Singapore**") and General Hotel Management, Ltd ("**GHM BVI**").

13. I have received the following documents:

    (a) the Defendants' Memorandum of Law In Support of Trip Defendants' Motion to Dismiss Plaintiff's Claims on *Forum Non Conveniens* Grounds dated 25 August 2025 ("**Memorandum**"); and
    (b) the Summary Order in *The Wave Studio, LLC v General Hotel Management Ltd*, (712 Fed. Appx. 88) (2d Cir. 2018), dated 26 February 2018 ("**Summary Order**")
    (c) the *Creative Technology, Ltd. v Aztech System Pte, Ltd*, 61 F.3d 696 (9th Cir. 1995) opinion cited within the Summary Order.

I have reviewed the abovementioned documents and respectfully offer my opinion in response thereto based on my knowledge of and expertise on the laws of Singapore.

14. Notwithstanding the fact that both the United States and Singapore are states party to the Berne Convention for the Protection of Literary and Artistic Works ("**Berne Convention**"), issues of copyright law remain subject to the respective national laws of both jurisdictions.

15. I am instructed by the Plaintiff that the U.S. dispute concerns alleged online infringements by the Defendants of the Plaintiff's U.S. copyrights in certain photographs, registered with the U.S. Copyright Office. Before setting out my opinion, I consider it is of the utmost importance to emphasise the nature of copyright and how it applies to works made publicly available on the World Wide Web.

## The nature of copyright

16. Copyright law is a creature of statute and protected as a national right: copyright subsists in a work only if the statutory requirements for subsistence under the applicable local legislation are satisfied, and protection is conferred on the copyright work only to the extent provided thereunder.

17. The primary legislation governing Singapore's copyright regime, the new and updated Copyright Act 2021 (2020 Rev. Ed.) ("**CA2021**"), came into force on 21 November 2021 and applies to both works existing before 21 November 2021 as well as works coming into existence after that date. The CA2021 replaced the Copyright Act (Cap. 63), which was the applicable legislation in the Singapore Wave Proceedings.

18. Under the CA2021 copyright subsists in a particular work only if the material thing in respect of which copyright protection is sought falls within a category of work listed in the Act. A photograph is specifically listed as a form of artistic work.[1]

19. The acts comprised in the copyright of an artistic work are:[2]

    (a) to make a copy of the work;
    (b) to publish the work if it is unpublished; and
    (c) to communicate the work to the public.

20. By Section 146 of the CA2021, copyright is infringed if a person (who neither owns the copyright nor has the licence of the copyright owner) "does *in Singapore*, or authorises the doing *in Singapore* of, any act comprised in the copyright" (emphasis added).

21. While a Singapore copyright arising in a work under the Act accords its owner certain rights capable of being protected and enforced in Singapore only, by virtue of the various international conventions to which Singapore is a party the Singapore copyright gives rise automatically to protection as an equivalent national right under the local law in most other countries.[3] However, as recognised in Article 5(2) of the Berne Convention, "apart from the provisions of this Convention, the extent of protection, as well as the means of redress afforded to the author to protect his rights, shall be governed exclusively by the laws of the country where protection is claimed".

22. This was emphasised by Minister for Law Mr Edwin Tong (then-Second Minister for Law) during the Second Reading of the Copyright Bill (that became the CA2021):[4]

    "A fundamental point is that copyright laws are territorial. They protect copyright within the territory, that is, Singapore. Our copyright regime allows rights owners to enforce against acts of infringement that occur in Singapore, regardless of whether they are by a local or a foreigner. But the key point is that these are infringements that take place within our jurisdiction.

    Likewise, other countries have similar copyright regimes which allows rights owners in Singapore to take action against acts of infringement that might occur in their countries."

23. Consequently, in the case of a copyright work made globally available on websites through the access made possible by the World Wide Web, there may be separate acts of

---

[1] Copyright Act 2021, Section 20(1). <https://sso.agc.gov.sg/Act/CA2021>
[2] Copyright Act 2021, Section 113. <https://sso.agc.gov.sg/Act/CA2021>
[3] David Llewelyn, Gladys Tan, Estelle Moh Huixuan, Ng Hui Ming, *Modern Law of Copyright in Singapore* (Academy Publishing, 2023) at para 2.1.
[4] Singapore Parliamentary Debates, Vol 95 (13 September 2021).

infringement under the relevant, local copyright legislation in each of many different countries (for example, in each country where there has been a communication to the public of an unauthorised copy of the work).

24. To enforce its rights in the work in a particular jurisdiction, a claimant (or, to use the term in the United States, plaintiff) would therefore need to commence an infringement action in that jurisdiction and satisfy the specific legal requirements under that jurisdiction's copyright law to avail itself of the remedies for each act of infringement in that jurisdiction.

### The doctrine of *forum non conveniens* and its application in Singapore

25. The doctrine of *forum non conveniens* in Singapore seeks to benefit defendants who may be unfairly dragged into litigation in Singapore where there is another forum/jurisdiction that is clearly more appropriate. Where a defendant pleads that Singapore is *forum non conveniens*, a court will decline jurisdiction over (and stay) the action if there is available a more appropriate forum for the trial of the action.

26. In considering whether the doctrine applies, the Singapore Court adopts the two-stage test established in the House of Lords decision in *Spiliada Maritime Corporation v Cansulex Ltd* [1987] AC 460 ("***Spiliada***"), summarised by the Singapore Court of Appeal in *CIMB Bank Bhd v Dresdner Kleinwort Ltd* [2008] 4 SLR(R) 543. (For clarification as to this reference to a decision of the British House of Lords, the legal system in Singapore as a former British colony is based on the English common law tradition and many foundational legal principles were inherited from English law. Although Singapore has had its own national legal system since Independence in 1965, English case law remains of persuasive value and is often cited, especially in areas where local jurisprudence is still developing or absent.)

27. In the first stage of the *Spiliada* test, the defendant must establish not only that Singapore is not the natural or appropriate forum, but also that there is available another forum which is clearly or distinctly more appropriate than Singapore for the trial of the action. The natural forum is one with which the action has the most real and substantial connection. If at this stage the court concludes that there is no other available forum which is clearly more appropriate for the trial of the action, it will ordinarily hear the action.

28. If, on the other hand, the court concludes that there is some other forum available which *prima facie* is clearly more appropriate for the trial of the action, it will grant a stay of the action unless there are compelling circumstances by reason of which justice requires that a stay should nevertheless be refused.

5

29. In the case of proceedings brought in Singapore concerning alleged acts of infringement of *U.S. registered copyright* that have taken place (and/or are taking place) *in the United States*, and therefore involve determinations of U.S. copyright law, an application by a defendant (whether incorporated in Singapore or elsewhere) for stay of such proceedings by reason of Singapore being *forum non conveniens* would, in my opinion, in all likelihood succeed. It would seem to me beyond reasonable doubt that the U.S. Courts are the most appropriate and convenient forum for the resolution of such a dispute, which necessarily involves determinations of U.S. substantive and procedural matters.

30. To my knowledge, there has been no case in which a Singapore Court has decided or even considered a case of alleged copyright infringement through acts occurring overseas. For this reason, as I explain at [23] – [24] above, the advent of the internet and the possibility of online copyright infringement has led as a matter of fact and law to the possibility of multiple parallel actions in a number of different countries.

31. In this connection, I note that in *Creative Technology, Ltd. v Aztech System Pte, Ltd,* 61 F.3d 696 (9th Cir. 1995) ("**Creative Technology**"),[5] the Ninth Circuit, in affirming the order of the district court that High Court of Singapore is an adequate alternative forum in which to adjudicate Creative's U.S. copyright infringement claim, held that the "lack of extraterritorial reach should not prevent the High Court of Singapore from subsuming the amount of damages incurred by Aztech Labs' alleged illegal distribution of pirated sound cards within the United States in the amount of damages awarded under the Singapore Copyright Act for Aztech's alleged infringing acts occurring in Singapore".

32. With the greatest of respect to the Honourable Court, Singapore law is not as it appears the *Creative Technology* court in the United States believed it to be. Although the *Creative Technology* court stated that Singapore courts can award damages for acts of copyright infringement that have occurred outside the territory, this is not the case. I do not consider it is open to a Singapore Court in a copyright infringement claim under the CA2021 to award damages for acts of infringement other than those that take place within Singapore.

33. Further, it is in my opinion not open to a Singapore Court to grant an injunction with extraterritorial effect vis-à-vis a foreign copyright (ie, a foreign property right). For example, in the case of mobile applications available for download on Google Play Store, the only injunction that a Singapore Court could grant is an injunction to cease any act of copyright infringement within the territory of Singapore (which would be complied with so long as the mobile application is not accessible to users in Singapore, for example through geo-blocking). This would have no effect against an infringer of the equivalent U.S. registered copyright making available the applications for download in the United States. As a result, even a successful plaintiff in Singapore would be forced to commence

---

[5] Referred to by Judge Cathy Seibel in the Summary Order.

6

fresh proceedings in the United States under the U.S. Copyright Act in order to obtain relief there.

34. In point of fact, this is illustrated by the Singapore proceedings between Creative Technology and Aztech, the two companies before the Ninth Circuit in the *Creative Technology* case. After the U.S. *forum non conveniens* decision, the parties continued litigation before the Singapore courts, but in neither the High Court[6] decision nor the Court of Appeal[7] decision was infringement of U.S. copyrights even considered or any suggestion made that U.S. copyright law be applied. The only issues considered and decided upon by the Singapore Courts concerned alleged infringements by Aztech of Creative Technology's software programs in Singapore under Singapore copyright law.

### Singapore Wave Proceedings

35. It bears highlighting that the Singapore Wave Proceedings were commenced only as a result of the stay of the Plaintiff's First US Wave Complaint.

36. In the First US Wave Complaint, it was clear (and no party questioned) that Singapore law applied to the determination of first ownership of copyright in the Hotel Photographs as well as the interpretation of the contracts and contractual relationship between the parties. Singapore was held by Judge Siebel to be the natural forum to determine these incidental issues arising between the Plaintiff and the GHM entities, and the claims in the United States against the other defendants in the First US Wave Complaint were stayed pending the resolution of these issues by the Singapore Court as they would in turn affect the resolution of the Plaintiff's claims against the other defendants.[8]

37. As in the Singapore proceedings between Creative Technology and Aztech, the claims decided by the Singapore Court in the Singapore Wave Proceedings concerned only:

    (a) declarations on the ownership of the copyright in the Hotel Photographs (being the Singapore copyright and all other equivalent national copyrights) and the assignment of all such copyright;
    (b) declarations on the scope of permission granted to GHM Singapore and/or GHM BVI to use the Hotel Photographs;
    (c) declarations that GHM Singapore and/or GHM BVI had infringed the copyright in the Hotel Photographs by acts taking place in Singapore.[9]

---

[6] *Aztech Systems Pte Ltd v Creative Technology Ltd* [1995] SGHC 294.
[7] *Creative Technology Ltd* v *Aztech Systems Pte Ltd* [1996] SGCA 71.
[8] Opinion and Order of Judge Cathy Seibel dated 10 March 2017.
[9] *The Wave Studio Pte Ltd & Ors v General Hotel Management (Singapore) Pte Ltd & Ors* [2022] SGHC 142, at [150].

38. It bears repetition that no submissions were made by any party that any law other than Singapore law applied to the issues before the court in the Singapore Wave Proceedings.

39. The issue of ownership was determined in favour of the plaintiff Wave, and affirmed on appeal.

### Comment relating to the civil procedure in Singapore

40. Finally, I note in the Memorandum the Defendants' argument, on "the practical costs of litigating foreign disputes in New York", that "where documents and testimony are in foreign languages, translation costs and delays weigh heavily toward dismissal" of the Plaintiff's claim before the U.S. Court. This is spurious as all documents filed or used in the Singapore courts must be in the English language; all documents which are not in the English language must be accompanied by a translation to the English language certified by a court interpreter or verified by an affidavit of a person qualified to translate the document.[10] Therefore, on the possible cost of translating any documents into the English language for use in proceedings in the United States, this would be no different in Singapore.

41. I further attached hereto Exhibits A to D to this declaration:

- Exhibit A is a true and correct copy of *Aztech Systems Pte Ltd v Creative Technology Ltd* [1995] SGHC 294, dated October 24, 1995.
- Exhibit B is a true and correct copy of *Creative Technology Ltd v Aztech Systems Pte Ltd* [1996] SGCA 71, dated November 12, 1996.
- Exhibit C is a true and correct copy of "Opinion and Order of Judge Cathy Seibel," dated March 10, 2017.
- Exhibit D is a true and correct copy of *The Wave Studio Pte Ltd & Ors v General Hotel Management (Singapore) Pte Ltd & Ors* [2022] SGHC 142 issued by the Singapore High Court, dated June 16, 2022.

I declare, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed on this 21st day of September 2025 at Singapore.

Gordon Ionwy David Llewelyn

---

[10] Order 3, Rule 7 of the Rules of Court 2021. <https://sso.agc.gov.sg/SL-Supp/S914-2021>

8